1    LATHAM & WATKINS LLP
         Steven M. Bauer (Bar No. 135067)
2            steven.bauer@lw.com
         Margaret A. Tough (Bar No. 218056)
3            margaret.tough@lw.com
     505 Montgomery Street, Suite 2000
4    San Francisco, California  94111-6538
     Telephone:  +1.415.391.0600
5    Facsimile:  +1.415.395.8095

6    ORRICK, HERRINGTON & SUTCLIFFE LLP
         Walter F. Brown, Jr. (Bar No. 130248)
7            wbrown@orrick.com
         Eric M. Hairston (Bar No. 229892)
8            ehairston@orrick.com
     The Orrick Building
9    405 Howard Street
     San Francisco, California 94105-2669
10   Telephone:  +1.415.773.5700
     Facsimile:  +1.415.773.5759

11

12   Attorneys for Defendant
     PACIFIC GAS AND ELECTRIC COMPANY

13

                        UNITED STATES DISTRICT COURT
14
                       NORTHERN DISTRICT OF CALIFORNIA
15
                          SAN FRANCISCO DIVISION

16

17   UNITED STATES OF AMERICA,                CASE NO. CR-14-00175-TEH

18                   Plaintiff,               **NOTICE OF MOTION AND MOTION
                                              BY DEFENDANT PACIFIC GAS AND
19            v.                              ELECTRIC COMPANY TO STRIKE
                                              INAPPROPRIATE ALLEGATIONS**
20   PACIFIC GAS AND ELECTRIC COMPANY,

21                   Defendant.               **Judge:    Hon. Thelton Henderson
                                              Date:      September 22, 2014
22                                            Time:      2:30 PM
                                              Place:     Courtroom 2, 17th Floor**

23

24

25

26

27

28

1

<b><u>TABLE OF CONTENTS</u></b>

2
<u>Page</u>

3

I.      **INTRODUCTION**................................................................................................ 1

4

II.     **THE COURT SHOULD STRIKE IRRELEVANT OR PREJUDICIAL ALLEGATIONS CONCERNING THE EXPLOSION AND ENHANCED**

5

      **FINES**................................................................................................................... 2

6

     A.     **Governing Legal Principles**........................................................................ 2

7

     B.     **The Court Should Strike References To The San Bruno Accident As Immaterial, Prejudicial Surplusage**............................................... 5

8

9

          1.     The San Bruno References Are Immaterial To The Crimes Charged............................................................................................... 5

10

          2.     The Explosion Is Immaterial To The Obstruction Allegation .................. 8

11

          3.     Striking These Allegations Is Important For A Fair Trial ...................... 11

12

     C.     **The Court Should Strike The Alternative Fines Act Sentencing Allegations** ............................................................................................. 12

13

          1.     Facts Establishing An Alternative Maximum Fine Must Be Alleged In The Indictment ...................................................................... 13

14

15

          2.     The Indictment Does Not Allege The Required Facts, Proximate Cause, Or Financial Gains Or Losses................................... 14

16

III.    **CONCLUSION** ......................................................................................... 16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

PG&E'S MOTION TO STRIKE
INAPPROPRIATE ALLEGATIONS
Case No. CR-14-00175-TEH

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Apprendi v. New Jersey*,
530 U.S. 466 (2000) ................................................................................ 13, 14, 16

*Jones v. United States*,
526 U.S. 227 (1999) ................................................................................ 13

*Major v. CSX Trans.*,
278 F. Supp. 2d 597 (D. Md. 2003) ....................................................... 10

*Nebraska Press Ass'n v. Stuart*,
427 U.S. 539 (1976) ................................................................................ 2

*Russell v. United States*,
369 U.S. 749 (1962) ................................................................................ passim

*Southern Union Co. v. United States*,
132 S. Ct. 2344 (2012) ............................................................................ 13, 14, 15, 16

*United States v. BP Prods. N. Am.*,
610 F. Supp. 2d 655 (S.D. Tex. 2009) .................................................... 14, 15

*United States v. Brighton Bldg. & Maint. Co.*,
435 F. Supp. 222 (N.D. Ill. 1977) .......................................................... 4

*United States v. Buddenberg*,
No. CR-09-00263, 2010 U.S. Dist. LEXIS 78201 (N.D. Cal. July 12, 2010) ....................... 3

*United States v. Cecil*,
608 F.2d 1294 (9th Cir. 1979) ................................................................ 3, 5

*United States v. Cooper*,
384 F. Supp. 2d 958 (W.D. Va. 2005) ..................................................... 5, 11

*United States v. Du Bo*,
186 F.3d 1177 (9th Cir. 1999) ................................................................ 3

*United States v. Espy*,
989 F. Supp. 17 (D.D.C. 1997) ............................................................... 4, 8

*United States v. Gerlay*,
No. 09-085, 2009 U.S. Dist. LEXIS 107475 (D. Alaska Nov. 17, 2009) ........................... 12

*United States v. Groos*,
616 F. Supp. 2d 777 (N.D. Ill. 2008) ...................................................... 11

*United States v. Hubbard*,
474 F. Supp. 64 (D.D.C. 1979) ............................................................... 4, 8, 12

*United States v. Jenkins*,
785 F.2d 1387 (9th Cir. 1986) ................................................................ 6

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

PG&E'S MOTION TO STRIKE
INAPPROPRIATE ALLEGATIONS
Case No. CR-14-00175-TEH

*United States v. Miller,*
 26 F. Supp. 2d 415 (N.D.N.Y. 1998) ................................................................................. 4

*United States v. Poindexter,*
 725 F. Supp. 13 (D.D.C. 1989) .................................................................................... 4, 8

*United States v. Quinn,*
 401 F. Supp. 2d 80 (D.D.C. 2005) ............................................................................. 10, 11

*United States v. Rainey,*
 946 F. Supp. 2d 518 (E.D. La. 2013) ............................................................................. 10

*United States v. Reese,*
 92 U.S. 214 (1876) ............................................................................................................ 13

*United States v. Sanford Ltd.,*
 878 F. Supp. 2d 137 (D.D.C. 2012) ........................................................................... 14, 15

*United States v. Sine,*
 493 F.3d 1021 (9th Cir. 2007) ......................................................................................... 10

*United States v. Terrigno,*
 838 F.2d 371 (9th Cir. 1988) ............................................................................................ 4

*United States v. Tomasetta,*
 429 F.2d 978 (1st Cir. 1970) ............................................................................................. 3

*United States v. Torres-Gonzalez,*
 526 F. Supp. 2d 210 (D.P.R. 2007) ................................................................................. 11

*United States v. Vastola,*
 670 F. Supp. 1244 (D.N.J. 1987) ................................................................................ 4, 7, 8

*United States v. Victor Teicher & Co., L.P.,*
 726 F. Supp. 1424 (S.D.N.Y. 1989) .................................................................................. 4

*United States v. Williams,*
 203 F.2d 572 (5th Cir. 1953) ............................................................................................. 7

**STATUTES**

18 U.S.C. § 3571(d) .................................................................................................... 14, 15

49 U.S.C. § 60123 ............................................................................................................... 5

**RULES**

Fed. R. Crim. P. 7(c) ............................................................................................................ 2

Fed. R. Crim. P. 7(d) ........................................................................................................ 2, 4

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

PG&E'S MOTION TO STRIKE
INAPPROPRIATE ALLEGATIONS
Case No. CR-14-00175-TEH

Fed. R. Evid. 404(b)............................................................................................................. 12

Fed. R. Evid. 803(8)............................................................................................................. 10

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v

PG&E'S MOTION TO STRIKE
INAPPROPRIATE ALLEGATIONS
Case No. CR-14-00175-TEH

1

## **NOTICE OF MOTION AND MOTION**

2      PLEASE TAKE NOTICE that on September 22, 2014, at 2:30 p.m., Defendant Pacific

3  Gas and Electric Company ("PG&E") will and hereby does move this Court for an order

4  granting its Motion to Strike Inappropriate Allegations.

5      PG&E respectfully requests that this Court issue an order striking certain allegations from

6  the superseding indictment in this matter:  paragraphs 5, 54, and 76 in their entirety, and all

7  references to San Bruno and the explosion in paragraphs 3, 22, 34, 35, 43, 45, 46, 50, and 61.

8  The motion will be based on this Notice of Motion and accompanying Memorandum of Points

9  and Authorities, the Declaration of Nicole C. Valco, the files and records of this case, and such

10 other argument and evidence as the Court may consider.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

PG&E'S MOTION TO STRIKE
INAPPROPRIATE ALLEGATIONS
Case No. CR-14-00175-TEH

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

The superseding indictment refers to the tragic San Bruno pipeline accident 11 times and alleges that "the victims suffered losses of approximately $565 million."  On a first reading, it is perfectly natural for one to assume that the grand jury has alleged that criminal conduct caused the explosion and the losses.  Indeed, that appears to be the point of the indictment.  But a closer reading reveals that the grand jury does not actually allege that any of the 28 charged felonies caused either the accident or any victim losses.  This suggests that, after the government's years-long investigation, the grand jury did not find probable cause to believe that any Pipeline Safety Act violation caused the San Bruno explosion.

The grand jury's failure to allege a causal connection between the charged crimes and the explosion is not surprising.  The September 9, 2010 San Bruno pipeline explosion was a terrible accident which devastated many people and harmed an entire community.  A pipe with a faulty weld was placed in service in 1956, where it performed safely for 54 years.  Then, suddenly, it failed catastrophically at a pressure less than its historical capacity.  PG&E accepted legal and financial responsibility by conceding negligence, compensating those affected by the incident in civil settlements, and providing tens of millions of dollars to the San Bruno community.  But PG&E believes that none of its employees committed a crime – a knowing and willful violation of pipeline safety regulations – that caused the accident.  Now, after two indictments, it appears that the grand jury agrees.  The combined federal, state and local prosecution team did not obtain an indictment from the grand jury that alleges that any crime caused the San Bruno explosion.

The indictment, however, frequently refers to the accident – once describing its effects in detail, other times as the reason for the investigation, and many times just to identify the date of September 9, 2010.  These repeated references create the incorrect impression that the explosion is relevant to the charges in this case when, in fact, the indictment never alleges a direct connection between the charged offenses and the accident.

Basic U.S. Constitutional principles require that unless the grand jury found and alleged a causal connection between a particular crime and the explosion, the Court should strike

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

PG&E'S MOTION TO STRIKE
INAPPROPRIATE ALLEGATIONS
Case No. CR-14-00175-TEH

references to the explosion as irrelevant.[1]  By this motion, we respectfully ask the Court to examine the indictment's precise allegations and strike those concerning the San Bruno explosion, because they are inappropriate surplusage under Federal Rule of Criminal Procedure 7(d) and basic Fifth and Sixth Amendment principles.

Additionally, the indictment requests an enormous fine for victim losses in an amount that appears to be based on the San Bruno explosion.  Yet there is nothing indicating that the grand jury found that any of the 28 alleged crimes caused any loss in any particular amount.  These vague charges violate the Constitution's mandate that an enhanced fine requires that the grand jury find and allege facts indicating that a particular crime proximately caused a particular victim loss or defendant gain, and in an identified and supported amount.  On these basic facts, this indictment is silent.  Since the grand jury did not find facts supporting the alleged maximum fine and state those facts in the indictment, the penalty allegations cannot stand and we respectfully ask the Court to strike them as well.

## II.   THE COURT SHOULD STRIKE IRRELEVANT OR PREJUDICIAL ALLEGATIONS CONCERNING THE EXPLOSION AND ENHANCED FINES

### A.   Governing Legal Principles

An indictment must be "a plain, concise, and definite written statement of the essential facts constituting the offense[s] charged."  Fed. R. Crim. P. 7(c).  It is a charging document bound by Fifth and Sixth Amendment requirements which are designed to ensure a fair trial.  *Russell v. United States*, 369 U.S. 749, 763-72 (1962); *see also Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 551 (1976).  The Supreme Court has required that an indictment must:

- establish that a grand jury found probable cause with respect to each of the elements of the offense;

- furnish the defendant with a sufficient description of the charges against him to enable him to prepare his defense;

---

[1]  This motion addresses one important deficiency in the superseding indictment.  The defendant expects to challenge other deficiencies after receiving complete discovery, and reserves its right to do so.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

PG&E'S MOTION TO STRIKE
INAPPROPRIATE ALLEGATIONS
Case No. CR-14-00175-TEH

1

- ensure that the defendant is prosecuted on the basis of facts presented to the grand

2

jury;

3

- enable the defendant to plead jeopardy against a later prosecution; and

4

- inform the court of the facts alleged so that it can determine the sufficiency of the

5

charge.

6 *Russell*, 369 U.S. at 763, 768 n.15, 771; *see also United States v. Du Bo*, 186 F.3d 1177, 1179

7 (9th Cir. 1999); *United States v. Cecil*, 608 F.2d 1294, 1296-97 (9th Cir. 1979), *abrogated in*

8 *part on other grounds as stated in United States v. Cooper*, No. CR-09-00156, 2014 U.S. Dist.

9 LEXIS 105617, at *12-13 (N.D. Cal. July 31, 2014).

10 Courts frequently have granted challenges to insufficient allegations. For example, in

11 *United States v. Cecil*, the Ninth Circuit reversed convictions for conspiracy to distribute

12 marijuana because, other than tracking the language of the offenses and specifying a few facts –

13 such as the coconspirators' names and the crimes' locations – the indictment "fail[ed] to state

14 any other facts or circumstances pertaining to the conspiracy or any overt acts done in

15 furtherance thereof." 608 F.2d at 1296-97. As a result, the *Cecil* indictment failed "to facilitate

16 the proper preparation of a defense and to ensure that the defendants were prosecuted on facts

17 presented to the Grand Jury." *Id.* at 1297. Likewise, in *United States v. Buddenberg*, the court

18 dismissed a count charging defendants with violation of the Animal Enterprise Terrorism Act

19 because, although it tracked the statute and identified a time frame and geographic boundary,

20 "[i]t allege[d] no facts identifying what each defendant is alleged to have done, to whom, where

21 or when." No. CR-09-00263, 2010 U.S. Dist. LEXIS 78201, at *8 (N.D. Cal. July 12, 2010). In

22 *United States v. Tomasetta*, the court dismissed an indictment charging the defendant with

23 knowingly and willfully participating in extortionate means, yet lacking specifics about the

24 victim, location of the offense, or description of the extortionate means. 429 F.2d 978, 979 (1st

25 Cir. 1970). The vague allegations did not allow the defendant to adequately prepare for trial, and

26 impermissibly permitted "a prosecutor to obtain a conviction based wholly on evidence of an

27 incident completely divorced from that upon which the grand jury based its indictment." *Id.* at

28 980.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

PG&E'S MOTION TO STRIKE
INAPPROPRIATE ALLEGATIONS
Case No. CR-14-00175-TEH

1    At the same time, an indictment should not contain irrelevant, inflammatory, or

2  prejudicial statements.  Under Federal Rule of Criminal Procedure 7(d), a trial court has

3  discretion to strike "surplusage" from the indictment in order "to protect a defendant against

4  prejudicial or inflammatory allegations that are neither relevant nor material to the charges."

5  *United States v. Terrigno*, 838 F.2d 371, 373 (9th Cir. 1988) (quotation marks omitted); Fed. R.

6  Crim. P. 7(d).

7    Courts have granted motions to strike many types of surplusage, often where the

8  language suggests allegations and theories that are not properly charged as part of the case.  *See*

9  *United States v. Hubbard*, 474 F. Supp. 64, 82 (D.D.C. 1979) (striking language that "may

10  encourage the jury to draw inferences that the defendants are believed to be involved in activities

11  not charged in the indictment"); *United States v. Poindexter*, 725 F. Supp. 13, 35 (D.D.C. 1989)

12  (striking language that "could improperly indicate to a jury that the defendant[] [is] charged with

13  offenses and conduct in addition to those actually listed in the indictment"); *United States v.*

14  *Vastola*, 670 F. Supp. 1244, 1255 (D.N.J. 1987), *aff'd in part and reversed in part on other*

15  *grounds*, 899 F.2d 211 (3d Cir. 1990), *vacated*, 497 U.S. 1001 (1990) ("Anything in the

16  indictment that allows the jury to infer involvement with uncharged crimes . . . is improper.");

17  *United States v. Miller*, 26 F. Supp. 2d 415, 420 (N.D.N.Y. 1998) (striking language that

18  improperly implies a defendant's involvement in uncharged acts of violence); *United States v.*

19  *Victor Teicher & Co., L.P*, 726 F. Supp. 1424, 1441 (S.D.N.Y. 1989) (striking a defendant's

20  name from a paragraph in the indictment, where it created the inference that he was accused of

21  uncharged counts of mail fraud); *United States v. Espy*, 989 F. Supp. 17, 35 (D.D.C. 1997) ("To

22  expect the jury to assume that the . . . language . . . does not charge the defendant[] with

23  additional crime merely because it is contained in [the indictment] . . . is to ascribe to a jury of

24  laymen an ability to draw distinction that even lawyers have difficulty making."); *United States*

25  *v. Brighton Bldg. & Maint. Co.*, 435 F. Supp. 222, 230-31 (N.D. Ill. 1977) (granting motion to

26  strike where surplusage "allow[ed] the jury to draw the inference that the defendant is accused of

27  crimes not charged in the indictment" because the government "may not use the indictment as a

28  vehicle to persuade the jury that the crime alleged has great and hidden implications").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

PG&E'S MOTION TO STRIKE
INAPPROPRIATE ALLEGATIONS
Case No. CR-14-00175-TEH

One final point on the requirement for specific allegations:  This mandate is rooted in a defendant's Fifth and Sixth Amendment right to be prosecuted only on the basis of facts found by the grand jury.  Therefore, a bill of particulars cannot cure an indictment's failure in this regard.  *Russell*, 369 U.S. at 769-70.  As the Supreme Court explained:

> A grand jury, in order to make that ultimate determination, must necessarily determine what the question under inquiry was.  To allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure.  For a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him.

*Id.* at 770; *see also Cecil*, 608 F.2d at 1296 ("If a bill of particulars were allowed to save an insufficient indictment, the role of the grand jury as intervenor would be circumvented.").

With this as background, let us take a close look at the superseding indictment's San Bruno surplusage and Alternative Fines Act inadequacies.

## B.     The Court Should Strike References To The San Bruno Accident As Immaterial, Prejudicial Surplusage

### 1.     The San Bruno References Are Immaterial To The Crimes Charged

The superseding indictment makes the San Bruno accident its centerpiece, referring to it 11 times (including 10 times in "introductory" allegations).  "SI" at ¶¶ 3, 5, 22, 34, 35, 43, 45, 46, 50, 54, 61.  There is no allegation, however, that any charged criminal act caused the accident.  These allegations, then, are immaterial to the allegations for trial and should be stricken.

First of all, none of the 28 charges in the indictment requires proof of the San Bruno accident as an *element* of any offense.  The accident predates the obstruction charge in Count One (*id.* at ¶¶ 5, 54).  Each regulatory charge in Counts 2 through 28 concerns a knowing and willful violation of detailed pipeline regulations under 49 U.S.C. § 60123; none requires proof of a subsequent pipeline failure.  The Court could strike the introductory San Bruno statements on this ground alone.  *See United States v. Cooper*, 384 F. Supp. 2d 958, 960 (W.D. Va. 2005) ("[T]he question is whether [the language] is 'unnecessary' in making out a *prima facie* pleading

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

PG&E'S MOTION TO STRIKE
INAPPROPRIATE ALLEGATIONS
Case No. CR-14-00175-TEH

1  of the violation."); *see also United States v. Jenkins*, 785 F.2d 1387, 1392 (9th Cir. 1986)

2  ("Insofar as the language of an indictment goes beyond alleging elements of the crime, it is mere

3  surplusage that need not be proved.").

4        Second, the San Bruno references in the indictment are factually disconnected from the

5  grand jury's findings of probable cause.  The government's effort to finesse this issue starts on

6  the very first page of the indictment.  In paragraph five, the superseding indictment states that:

7              On September 9, 2010, at approximately 6:11 p.m., a portion of
             Line 132 (Segment 180) ruptured in a residential neighborhood of
8              the City of San Bruno (the "San Bruno explosion").  Gas escaping
             from the rupture ignited, causing a fire that killed eight people and
9              injured 58 others.  The fire also damaged 108 homes, 38 of which
             were completely destroyed.

10  SI at ¶ 5.  After this graphic description of a terrible tragedy, however, the indictment never

11  alleges a causal connection between the explosion and any of the crimes charged.  There is no

12  charge that a knowing and willful failure, for example, to integrate pipeline records led to the

13  explosion.  There is no charge that a planned pressure increase caused the accident.  The

14  explosion may well be the reason the prosecution team was assembled – but the grand jury did

15  not return an indictment alleging any crime was the reason for the explosion.

16        Although the Court's analysis must focus on the words of the indictment itself, it bears

17  noting that the only mention of the San Bruno accident in the U.S. Attorney's press release

18  seems to acknowledge the lack of any connection, with this carefully worded statement:

19              PSA violations were uncovered in the course of an investigation
             initiated after the fatal San Bruno natural gas pipeline explosion in
20              2010.

21  April 1, 2014 press release (Valco Decl. Ex. 1).  The press release announcing the superseding

22  indictment is similar, referring to the accident solely because it led to a National Transportation

23  Safety Board ("NTSB") investigation:  "The superseding indictment alleges that PG&E

24  obstructed the NTSB's investigation that began immediately after the deadly San Bruno

25  explosion."  July 29, 2014 press release (Valco Decl. Ex. 2).  Even when the prosecution group

26  put pen to paper for public relations, it did not claim that any regulatory crime caused the

27  explosion.

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

PG&E'S MOTION TO STRIKE
INAPPROPRIATE ALLEGATIONS
Case No. CR-14-00175-TEH

Yet the indictment returns to the San Bruno accident as a constant refrain.  In introductory paragraphs 43-46, the indictment refers several times to the explosion in alleging inaccuracies in PG&E's records regarding Segment 180 of Line 132 (the pipeline segment involved in the accident), but never claims this was a cause of the accident.  For example, Paragraph 43 notes that Segment 180 was "the portion of Line 132 that ruptured" and that it was "located in an HCA and ran through a densely populated suburban development in the City of San Bruno."  SI at ¶ 43.  The indictment then describes the alleged record inaccuracies, and states that "[a]t no time between installation of [Segment 180] and the San Bruno explosion did PG&E check or confirm whether its records accurately reflected the data relevant to assessing the integrity of Segment 180, even though PG&E knew that GIS contained incomplete and inaccurate data."  SI at ¶¶ 44-46.  The implied conclusion is almost unavoidable – an uninitiated reader is left to *infer* that records shortcomings led to the San Bruno accident.  But the indictment the grand jury returned never makes such an allegation.  Without this essential finding, the explosion allegations are improper surplusage and should be stricken.  *See, e.g., United States v. Williams*, 203 F.2d 572, 574 (5th Cir. 1953) (stating that courts may strike "[i]ndirect expressions, implied allegations, argumentative statements, and uncertainty due to generalizations in the language"); *Russell*, 369 U.S. at 770.

Third, several times in the 17-page introduction, the indictment uses the San Bruno accident as a time-marker, apropos of nothing.  Paragraphs 22, 34-35, and 50 make four more references to the San Bruno accident, using it to define a date range rather than saying "September 9, 2010."  SI at ¶¶ 22, 34-35, 50.  For example, in paragraph 34, the superseding indictment alleges that PG&E conducted planned pressure increases "from 2003 until the San Bruno explosion."  *Id.* at ¶ 34.  There is no factual claim that an alleged knowing and willful violation somehow occurred the day before the explosion and ceased the day after.  It appears that the government chose the San Bruno accident as a time-marker for prejudicial effect and for no other reason.

Unsurprisingly, there is an abundance of legal authority striking inflammatory references that add nothing to the substance of an indictment.  In *Vastola*, for example, the district court

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

PG&E'S MOTION TO STRIKE
INAPPROPRIATE ALLEGATIONS
Case No. CR-14-00175-TEH

granted a defendant's motion to strike the entire five-page introduction to the indictment.  670 F. Supp. at 1254-55.  The introduction included a descriptive paragraph for each of the charged defendants and, like the indictment here, additional narrative information not included in the charged counts themselves.  *Id.*  The court expressed concern that the introductory portion of the indictment "contains information which may be meaningful to a jury's consideration of the guilt of the defendants."  *Id.* at 1254.  The court struck the introduction, finding that "the jury's deliberations will be unduly influenced by [it]."  *Id.*  The same concern applies here:  As in *Vastola*, the government's introductory allegations are separate from the sections dedicated to the charges themselves.  *Compare* SI at ¶¶ 1-60 (introductory paragraphs) *with* SI at ¶¶ 61-76 (setting forth the charges and the AFA allegations).  And, just as in *Vastola*, the references to the tragic San Bruno accident are very likely to be "meaningful to a jury's consideration of the guilt" and to "unduly influence[]" their deliberations.  *See Vastola*, 670 F. Supp. at 1254.  These allegations should be stricken.  *See also Hubbard*, 474 F. Supp. at 83 (striking "prejudicial and unnecessarily loaded" terms such as "infiltrate," "cover up," "covertly," and "illegally" because "the use of such colorful words to describe the allegations in the indictment is improper where less colorful and more accurate words would suffice"); *Poindexter*, 725 F. Supp. at 36 (striking the term "cover up" as inflammatory); *Espy*, 989 F. Supp. at 37 (striking the allegation that a defendant received gratuities from "prohibited sources").

### 2.      The Explosion Is Immaterial To The Obstruction Allegation

The primary change from the original to the superseding indictment is the addition of an obstruction charge as Count One.  In sum, the indictment alleges that a correction to a single document response in the San Bruno NTSB accident investigation, made months before that investigation concluded, somehow obstructed the NTSB's work.[2]  Adding this charge, however, should not open the door to repeated San Bruno explosion allegations.

In paragraph 54, the indictment states the NTSB investigation began immediately after the accident, and then in paragraph 61, the indictment describes the investigation as being

---

[2]   We will likely challenge the sufficiency of these allegations after receiving discovery on this new charge.

1   directed at "the cause of the San Bruno explosion and PG&E's Integrity Management program."

2   Neither the fact of an explosion nor the reason the NTSB began an investigation is an element of

3   the offense.  In these paragraphs, the explosion is being used to set the time or the context in an

4   extremely prejudicial fashion.  Simply alleging that an NTSB investigation was underway

5   satisfies the Fifth and Sixth Amendment notice requirements without tainting the jury with a

6   prejudicial allegation.

7        Here, as in the pipeline regulation charges, it is crucial to note the absence of any

8   allegation linking the obstruction charge to the cause of the accident.  The indictment does not

9   allege that PG&E withheld information material to the NTSB's findings regarding the cause of

10  the accident.  SI at ¶¶ 57-60.  Instead, the obstruction charge concerns an alleged engineering

11  practice that is not related to the accident – and the indictment does not tie it to the accident.  *Id.*

12  at ¶ 60.  Once again, a close reading of the superseding indictment reveals a glimpse of what is

13  really happening here:  Following the San Bruno accident, the NTSB performed a wide-ranging

14  investigation, examining and eliminating many possible causes of the explosion.  The new

15  obstruction charge concerns a document about a pipeline engineering topic that no one –

16  especially not the grand jury – alleges caused the accident.  It would be deeply misleading to

17  imply that the obstruction allegation has anything whatsoever to do with the cause of the

18  accident.

19       The indictment has added a sentence that implies the alleged obstruction concerns the

20  accident – an extraneous characterization that the NTSB report concluded that PG&E's Integrity

21  Management program was deficient and ineffective, and a probable cause of the accident.  *Id.* at

22  ¶ 54.  Again, a quick reading might suggest that this is a sufficient allegation of causation.

23       But let us look more carefully.  The government's summary does not say the NTSB

24  concluded that any federal violation caused the accident.  First, this is not surprising, since an

25  NTSB investigation does not identify or allege federal crimes – its mandate is to "quickly"

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

PG&E'S MOTION TO STRIKE
INAPPROPRIATE ALLEGATIONS
Case No. CR-14-00175-TEH

1    determine the causes of an accident.[3] *See* http://www.ntsb.gov/investigations/process.html

2    (Valco Decl. Ex. 3).  Second, an integrity management program is made up of a wide array of

3    pipeline maintenance and safety policies, so the characterization does not identify any particular

4    act, policy, or person that caused the accident.  Third, asserting that the NTSB viewed something

5    as a probable cause of the accident is quite different from a grand jury finding that a criminal act

6    actually caused the accident.  Fourth, this allegation should be stricken in any event because the

7    NTSB itself directs that its "analysis of factual information and its determination of probable

8    cause cannot be entered as evidence in a court of law."[4]  *Id.*

9         Very recently, a trial court struck similar allegations in the Department of Justice's

10   prosecution of a British Petroleum employee.  *United States v. Rainey,* 946 F. Supp. 2d 518, 544

11   (E.D. La. 2013).  There, the grand jury charged the defendant with obstructing a congressional

12   investigation of the Deepwater Horizon accident.  As in this case, the grand jury did not allege

13   any causal connection between the crimes charged and the accident itself.  *Id.* at 544-45.  Also as

14   here, the indictment contained a description of the dramatic accident that led to the investigation.

15   *Id.* at 544.  The indictment stated that, for example, "gas from the blowout ignited and quickly

16   caused explosions that killed 11 men onboard."  *Id.*  The district court granted a motion to strike

17   this language as surplusage.  *Id.* at 545.  In so doing, the district court reasoned that "[r]eferring

18   in the opening words of the indictment to the eleven men killed and to the millions of gallons of

19   oil that . . . ultimately discharged into the Gulf can only serve to inflame passions and prejudice

20   the defendant."  *Id.*

21        *Rainey* is not the only example of a court striking prejudicial context allegations.  In

22   *United States v. Quinn*, the defendant was charged with violating a trade embargo against Iran.

23

---

24        [3]  In fact, one NTSB finding was that PG&E's *adherence to the existing PSA regulations* contributed to the accident, and it recommended that the regulations be changed.  NTSB Report,

25   Finding Nos. 16-18 (Excerpt in Valco Decl. Ex. 4 at 125).

26        [4]  This allegation is also inappropriate because an NTSB report (even if quoted fairly and correctly) is inadmissible hearsay in a criminal case.  Fed. R. Evid. 803(8); *United States v. Sine*,

27   493 F.3d 1021, 1037 (9th Cir. 2007); *Major v. CSX Trans.*, 278 F. Supp. 2d 597, 603-04 (D. Md. 2003).  The government cannot inject hearsay into the jury's deliberations by simply putting it in

28   the indictment.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

PG&E'S MOTION TO STRIKE
INAPPROPRIATE ALLEGATIONS
Case No. CR-14-00175-TEH

401 F. Supp. 2d 80, 98-99 (D.D.C. 2005).  In the indictment, the government included

introductory allegations describing the reasons for the embargo policy.  *Id.*  The district court

struck these allegations, reasoning that "the crime that defendants are charged with is no more or

less criminal because of the *reasons* the embargo is in place." *Id.* at 98. (emphasis in original).

Here, the obstruction crime alleged is no more or less viable because of the reasons for the

NTSB's investigation.[5]

### 3.   Striking These Allegations Is Important For A Fair Trial

We have discussed why striking the explosion allegations is necessary as a matter of

Constitutional procedure.  It is also a necessary first step in ensuring a fair trial.  By striking the

San Bruno explosion allegations now, the Court would clear away a major distraction to both

sides' trial preparation and preserve both parties' ability to make a fair first impression on the

jury.  *See Cooper*, 384 F. Supp. 2d at 961 (noting that "indictments are public documents that . . .

often are widely reported through the media," so that "when an indictment contains surplusage

that goes beyond its limited purpose of charging a party . . . , that surplusage operates much like

an extrajudicial statement in its likely impact and potential for prejudice").  On the other hand,

were the Court to preserve these allegations, they necessarily would be at the center of trial

preparation – and if the jury is permitted to hear or read the superseding indictment as written,

they will be misled about what this case is really about.  It will be impossible to un-ring this bell.

Of course, striking inappropriate surplusage does not bind the Court in making

evidentiary decisions before trial.  After reviewing evidence and argument, a Court could

conclude that some particular evidence could be admissible as a relevant fact or as prior acts

evidence.  *See*, *e.g.*, *id.* at 960; *United States v. Torres-Gonzalez*, 526 F. Supp. 2d 210, 212-13

(D.P.R. 2007) (striking irrelevant and prejudicial allegations from the indictment but noting that

evidence relating to the same facts could still be admissible at trial under Fed. R. Evid. 403);

*United States v. Gerlay*, No. 09-085, 2009 U.S. Dist. LEXIS 107475, at *4 (D. Alaska Nov. 17,

---

5   Likewise, in *United States v. Groos*, the district court struck portions of an indictment describing the historical and legal context of antiterrorism statutes.  616 F. Supp. 2d 777, 789 (N.D. Ill. 2008).  The court found that these introductory allegations did "not contain information relevant to the elements of the charges." *Id.*

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

11

PG&E'S MOTION TO STRIKE
INAPPROPRIATE ALLEGATIONS
Case No. CR-14-00175-TEH

2009) (striking irrelevant and prejudicial introductory allegations where "[s]triking this language from the indictment does not preclude the government from seeking to offer Rule 404(b) evidence" later); *Hubbard*, 474 F. Supp. at 83 ("Without resolving the evidentiary question at this time, the Court will order these references struck in order to assure that the jury will not be prejudiced should this evidence later be held to be inadmissible.").  Enforcing the Constitutional indictment requirements is not the final word on evidence admissibility.  The Court should preserve its ability to decide the appropriate scope of the trial based on the evidence, and not allow surplus allegations to dictate the scope and tenor of the trial.

The possibility of prejudicially misleading the jury here is not mere speculation.  One can rely on more than common sense to conclude that this indictment will lead jurors to believe the charges concern the San Bruno explosion.  For example, in reporting on the first indictment, the San Francisco Chronicle announced:  "PG&E indicted on 12 criminal charges in San Bruno blast case," and incorrectly described the indictment as including "allegations that [PG&E] did not conduct required inspections that could have prevented the disaster."  Valco Decl. Ex. 5.  The jury and prospective witnesses will draw the same mistaken conclusions if the indictment is left to stand as it is.

### C.    The Court Should Strike The Alternative Fines Act Sentencing Allegations

In stark contrast to the indictment's repeated San Bruno accident references, its Alternative Fines Act allegations are minimalist.  The superseding indictment requests vastly increased fines beyond the statutory maximums with this sole allegation:

> [The defendant] derived gross gains of approximately $281 million, and the victims suffered losses of approximately $565 million.

SI at ¶ 76.  This allegation falls far short of the Constitutional requirements of what a grand jury must find before the government can seek an enhanced penalty.[6]  The appropriate remedy is for the Court to strike the penalty allegations and revert to the standard available statutory penalties.

---

[6]  PG&E requested by letter on July 30, 2014 that the government provide additional information about the methods used to calculate these figures.  *See* Valco Decl. Ex. 6.  The government refused to provide any additional information, asserting that it could not "comment on the grand jury deliberations."  *See* Valco Decl. Ex. 7.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

PG&E'S MOTION TO STRIKE
INAPPROPRIATE ALLEGATIONS
Case No. CR-14-00175-TEH

1.   <u>Facts Establishing An Alternative Maximum Fine Must Be Alleged In The Indictment</u>

To invoke the Alternative Fines Act ("AFA"), the government is required both to plead supporting facts in the indictment and to prove them to the jury beyond a reasonable doubt.  This rule results from the Supreme Court's progression from requiring such proof for maximum penalties, and then for sentencing enhancements, and now for the enhanced fines we have here.

First, there were maximum penalties:  "[U]nder the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt."  *Jones v. United States* 526 U.S. 227, 243 n.6 (1999).  In *Jones*, the Supreme Court reversed a carjacking conviction when the trial court increased the maximum sentence when "serious bodily injury occurs," because the jury did not consider whether the defendant had inflicted serious bodily injury.  The Supreme Court held that the serious-bodily-injury fact should have been "charged by indictment, proven beyond a reasonable doubt, and submitted to a jury for its verdict."  *Id*. at 252.

A year later*,* the Court extended the rule to penalty enhancements generally.  In *Apprendi v. New Jersey*, the Supreme Court reaffirmed the holding in *Jones* that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt," and applied it to state statutes enhancing criminal penalties.  530 U.S. 466, 490 (2000).  The *Apprendi* Court held that facts enhancing a sentence must be pled in an indictment, which "must contain an allegation of every fact which is legally essential to the punishment to be inflicted."  *Id.* at 490 n.15. (quoting *United States v. Reese*, 92 U.S. 214, 232 (1876) (Clifford, J., dissenting)).

Recently, the Supreme Court extended the *Apprendi* rule to any allegations that increase a defendant's maximum criminal fine.  *Southern Union Co. v. United States*, 132 S. Ct. 2344, 2348-49 (2012).  In *Southern Union*, the jury convicted the defendant for knowingly storing liquid mercury without a permit, but was not asked to determine the duration of the violation.  *Id.* at 2349.  The defendant argued that any increased penalty based on the number of days of the

PG&E'S MOTION TO STRIKE
INAPPROPRIATE ALLEGATIONS
Case No. CR-14-00175-TEH

1    violation had to be found by the jury pursuant to *Apprendi*.  The Court agreed and concluded

2    there was "no principled basis under *Apprendi* for treating criminal fines differently."  *Id.* at

3    2350.  Although the penalty provision at issue was not the AFA, the opinion expressly included

4    the AFA in its discussion of statutes to which *Apprendi* applied.  *Id.* at 2351 n.4.

5            Turning to the Alternative Fines Act itself, the statute provides:

6                (d) Alternative Fine Based on Gain or Loss.— If any person
             **derives pecuniary gain from the offense**, or if **the offense results**
7            **in pecuniary loss** to a person other than the defendant, the
             defendant may be fined not more than the greater of twice the
8            gross gain or twice the gross loss, unless imposition of a fine under
             this subsection would unduly complicate or prolong the sentencing
9            process.

10   18 U.S.C. § 3571(d) (emphasis added).  Applying the Supreme Court's *Apprendi* rule to the AFA

11   should be a straightforward exercise.  Before imposing an enhanced fine under the AFA, the

12   indictment must allege, and the jury find beyond a reasonable doubt, facts establishing that

13   (1) the charged offenses were the proximate cause of (2) a specific pecuniary gain or loss.

14   *United States v. Sanford Ltd.*, 878 F. Supp. 2d 137, 146-53 (D.D.C. 2012) (explaining "the

15   government's burden to prove to the jury beyond a reasonable doubt that any before-tax profits

16   earned by [the defendant] were earned as a *proximate* result of the charged offenses"); *United*

17   *States v. BP Prods. N. Am.*, 610 F. Supp. 2d 655, 688-89 (S.D. Tex. 2009).

18           Applying these rules here, the indictment must allege facts establishing a causal chain:

19   (a) that the charged offenses proximately caused some events, (b) that caused identified financial

20   losses or gains, (c) in a specified amount.  Eventually, the jury will have to find that chain of

21   evidence beyond a reasonable doubt.  *See Southern Union*, 132 S. Ct. at 2350.

22           2.    The Indictment Does Not Allege The Required Facts, Proximate Cause,
                   Or Financial Gains Or Losses
23

24           This indictment has none of the detail the Constitution requires.  The superseding

25   indictment does not allege that any offenses caused the San Bruno explosion, as we have

26   discussed.  It does not allege that any offense caused any identified gain or loss, much less

27   specify which particular offenses caused which particular gains or losses.  It does not identify the

28   type of loss or gain.  It does not allege how that loss or gain was calculated.  And, on top of each

LATHAM&WATKINS℠
ATTORNEYS AT LAW
SAN FRANCISCO

14

PG&E'S MOTION TO STRIKE
INAPPROPRIATE ALLEGATIONS
Case No. CR-14-00175-TEH

of those failings, the indictment does not allege a single fact establishing any of those unidentified and unalleged theories.

The court in *Sanford*, which follows *Southern Union*, addressed causation and accounting in details that this indictment does not approach.  In *Sanford*, the defendant was charged with several felony counts relating to pollution from one of its ships, failure to maintain accurate records, and obstruction of justice, among other charges.  878 F. Supp. 2d at 141.  Seeking an enhanced fine, the government sought to introduce evidence of $24 million in gross revenue, which was the amount that the defendant had earned from that particular vessel.  *Id.*  The court held that the gross revenue figure could only be presented to the jury if part of a larger analysis of actual gains (i.e., profits) derived from that particular ship.  *Id.* at 147 ("In other words, the government may not present evidence of the $24,045,930.79 gross revenue figure in a vacuum for the purpose of establishing 'gross gain.'"); *id.* at 154.  This is so because "the probative value of any monetary proceeds evidence in this case is necessarily cabined by the definitions of 'gross gain' and 'derive[d] . . . from' as those terms are used in 18 U.S.C. § 3571(d)."  *Id.* at 147.  In other words, the court would not admit general evidence of gains without proof of its source or cause and proof of the accounting behind the alleged gain amount.  In our case, none of these details is alleged in the indictment, so there is no indication that the grand jury made factual findings in the required detail.

In the *BP Products* case, the victims urged the court to base a significant alternative fine on the refinery's profits for a period of time before the explosion.  610 F. Supp. 2d at 699.  The court rejected that argument, explaining that "the victims have not identified a factual or legal basis for finding that all of BP Product's profits from the Texas City refinery for the fourteen months – or six years – preceding the accident were derived from the offense."  *Id.*[7]

---

[7]   The *BP* court was also concerned with the ability to conduct this analysis without unduly prolonging or complicating the sentencing process, noting it would need to determine "what part of these profits were either costs saved or additional revenues generated by the failure to implement the process safety measures that are the basis of the offense" and "[m]aking this determination – even estimating it – would require a lengthy and prolonged sentencing process to try to separate the costs avoided or additional revenues received from failing to establish or implement these safety measures from the total profits on all or part of the refinery."  *Id.*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

PG&E'S MOTION TO STRIKE
INAPPROPRIATE ALLEGATIONS
Case No. CR-14-00175-TEH

1  Interestingly, there the Department of Justice argued against the victims' position and in favor of

2  applying the causation and specificity requirements that *Southern Union* later confirmed.

3          Before the government can seek enhanced penalties above the statutory maximum,

4  *Southern Union* and *Apprendi* require detailed factual and causal allegations by the grand jury.

5  Because the superseding indictment fails every step of the *Apprendi* test, it violates the

6  defendant's Fifth Amendment right to have the necessary allegations presented to and found by a

7  grand jury.  It also makes defending the allegations very difficult, since neither the causal links

8  nor any basis for the amounts are discernable in the charging document.  And, because these are

9  Constitutional requirements, the government cannot cure the failing with a prosecutor-crafted bill

10  of particulars. *Russell*, 369 U.S. at 770.  Finally, as described in footnote 6, the government has

11  refused to disclose anything about the grand jury's findings on this important point.

12  **III.       CONCLUSION**

13          Enforcing the Constitutional grand jury pleading requirements is an important first step in

14  ensuring the defendant receives a fair trial in this case.  For the above reasons, we respectfully

15  request the Court to strike paragraphs 5, 54, and 76 in their entirety, and all references to San

16  Bruno and the explosion in paragraphs 3, 22, 34, 35, 43, 45, 46, 50, and 61.

17  Dated:  August 29, 2014                              /s/  Steven M. Bauer

18                                                                Steven M. Bauer
                                                                  Margaret A. Tough

19                                                                LATHAM & WATKINS LLP
                                                                  505 Montgomery Street, Suite 2000

20                                                                San Francisco, CA 94111-6538
                                                                  Tel: +1.415.391.0600

21                                                                Fax: +1.415.395.8095

22                                                                *Attorneys for Defendant*
                                                                  *Pacific Gas and Electric Company*

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

PG&E'S MOTION TO STRIKE
INAPPROPRIATE ALLEGATIONS
Case No. CR-14-00175-TEH

1   Dated:  August 29, 2014                                /s/  Walter F. Brown, Jr.
2                                                          Walter F. Brown, Jr.
                                                           Eric M. Hairston
3                                                          ORRICK, HERRINGTON & SUTCLIFFE LLP
                                                           The Orrick Building
4                                                          405 Howard Street
                                                           San Francisco, California 94105-2669
5                                                          Telephone:  +1.415.773.5700
                                                           Facsimile:  +1.415.773.5759

6                                                          *Attorneys for Defendant*
                                                           *Pacific Gas and Electric Company*
7

8

                                              SIGNATURE ATTESTATION
9
            In accordance with Civil Local Rule 5-1(i), I hereby attest that I have obtained the
10
    concurrence of Walter F. Brown, Jr. in filing of this document.
11
                                                           /s/  Steven M. Bauer
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

PG&E'S MOTION TO STRIKE
INAPPROPRIATE ALLEGATIONS
Case No. CR-14-00175-TEH