LATHAM & WATKINS LLP
    Steven M. Bauer (Bar No. 135067)
        steven.bauer@lw.com
    Margaret A. Tough (Bar No. 218056)
        margaret.tough@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095

CLARENCE, DYER & COHEN LLP
    Kate Dyer (Bar No. 171891)
        kdyer@clarencedyer.com
899 Ellis Street
San Francisco, California 94109-7807
Telephone: +1.415.749.1800
Facsimile: +1.415.749.1694

Attorneys for Defendant
PACIFIC GAS AND ELECTRIC COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR-14-00175-TEH |
| Plaintiff, | **DEFENDANT'S MOTION #1: TO COMPEL RULE 16 AND BRADY MATERIAL** |
| v. | **Judge: Hon. Thelton Henderson** |
| PACIFIC GAS AND ELECTRIC COMPANY, | **Date: June 1, 2015** |
| | **Time: 10:00 A.M.** |
| Defendant. | **Place: Courtroom 2, 17th Floor** |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEF.'S MOT. #1: TO COMPEL RULE 16
AND BRADY MATERIAL
Case No. CR-14-00175-TEH

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT on June 1, 2015, at 10:00 a.m., Defendant Pacific Gas and Electric Company ("PG&E") will and hereby does move this Court for an order granting its Discovery Motion #1 to Compel Rule 16 and Brady Material.

  Defendant respectfully requests that this Court issue an order requiring the government to search for and produce certain materials from the Pipeline Hazardous Materials and Safety Administration ("PHMSA"), the National Transportation Safety Board ("NTSB"), and the California Public Utilities Commission ("CPUC"), as well as several categories of additional materials. This includes (1) evidence of interpretations of the regulations; (2) evidence of other operators' behavior; (3) NTSB communications regarding RMI-06; (4) evidence of PG&E's prior dealings with regulators; (5) materials relating to the San Bruno accident; (6) certain third party materials; (7) witness testimony, statements, and notes; and (8) outstanding PG&E discovery requests. For the Court's convenience, Exhibit 27 of the Declaration of Nicole C. Valco contains a chart listing PG&E's specific requests. The motion will be based on this Notice of Motion and the accompanying Memorandum of Points and Authorities, the Declaration of Nicole C. Valco ("Valco Decl."), the files and records of this case, and such other argument and evidence as the Court may consider.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEF.'S MOT. #1: TO COMPEL RULE 16
AND BRADY MATERIAL
Case No. CR-14-00175-TEH

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................... 1

II.  THE GOVERNMENT'S DISCOVERY OBLIGATIONS ............................. 2

    A.   Rule 16 Obligations ........................................................................ 3

    B.   What The Government Possesses ..................................................... 3

    C.   *Brady* Obligations .......................................................................... 4

III. WHAT THE GOVERNMENT HAS PUT AT ISSUE IN THIS
     PROSECUTION ........................................................................................ 5

    A.   Counts 2 and 3: Records Management Under 49 C.F.R.
         § 192.917(b) ..................................................................................... 5

    B.   Count One: Obstruction ................................................................... 7

IV.  THE DEFENDANT IS ENTITLED TO ADDITIONAL DISCOVERY
     UNDER RULE 16 AND *BRADY* ............................................................ 8

    A.   The Government Must Inquire Well Beyond The Investigators
         Working On This Case ...................................................................... 8

    B.   The Defendant Is Entitled To Materials from PHMSA ................... 9

         1.   The Government Has Knowledge of, Access to, and the
              Obligation to Investigate Discovery from PHMSA ................. 9

         2.   The Requested PHMSA Information is Material to the
              Defense ................................................................................... 12

    C.   The Defendant Is Entitled to Materials from the NTSB ............... 14

         1.   The Government is Required to Produce Material from the
              NTSB ....................................................................................... 14

         2.   The Requested NTSB Information is Material to the
              Defense ................................................................................... 14

              a.   NTSB communications, internal and external,
                   concerning the regulations at issue ............................... 15

              b.   Communications relating to RMI-06 and the April 6
                   letter ............................................................................... 15

    D.   The Court Should Compel Disclosure of CPUC Materials ........... 16

         1.   The Government is Required to Produce Material from the
              CPUC Under *Brady* ............................................................. 16

         2.   The Requested Information is Material to the Defense ........... 17

LATHAM&WATKINS LLP   SF\5966254.2
ATTORNEYS AT LAW
SAN FRANCISCO

i

DEFENDANT'S DISCOVERY MOTION #1:
RULE 16 AND BRADY MATERIAL
Case No. CR-14-00175-TEH

| | E. | Third Party Subpoenas and Third Party Productions | 17 |
| | F. | Supplemental Discovery of Testimony, Statements, and Notes | 18 |
| | G. | Outstanding Requests for Discovery | 18 |
| **V.** | **CONCLUSION** | | 19 |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEF.'S MOT. #1:  TO COMPEL RULE 16
AND BRADY MATERIAL
Case No. CR-14-00175-TEH

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Brady v. Maryland,*
    373 U.S. 83 (1963)................................................................................4

*Bryan v. United States,*
    524 U.S. 184 (1998)..............................................................................6

*Collins v. NTSB,*
    351 F.3d 1246 (D.C. Cir. 2003)..........................................................14

*Giglio v. United States,*
    405 U.S. 150 (1972)..............................................................................4

*Kyles v. Whitley,*
    514 U.S. 419 (1995)..............................................................................5

*Safeco Ins. Co. of Am. v. Burr,*
    551 U.S. 47 (2007)................................................................................6

*United States v. Agurs,*
    427 U.S. 97 (1976)................................................................................4

*United States v. Amado,*
    758 F.3d 1119 (9th Cir. 2014)..........................................................4, 5

*United States v. Antone,*
    603 F.2d 566 (5th Cir. 1979)..............................................................16

*United States v. Bergonzi,*
    216 F.R.D. 487 (N.D. Cal. 2003).....................................................3, 13

*United States v. Bonds,*
    No. 11-10669, 2015 WL 1842752 (9th Cir. Apr. 22, 2015) (per curiam) (en
    banc).....................................................................................................7

*United States v. Bryan,*
    868 F.2d 1032 (9th Cir. 1989) .................................................4, 10, 11

*United States v. Budziak,*
    697 F.3d 1105 (9th Cir. 2012) .................................................3, 12, 15

*United States v. Cerna,*
    633 F. Supp. 2d 1053 (N.D. Cal. 2009) ...................................10, 11, 16

*United States v. Doe,*
    705 F.3d 1134 (9th Cir. 2013) ............................................................13

*United States v. Grace,*
    401 F. Supp. 2d 1069 (D. Mont. 2005).................................................14

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

DEF.'S MOT. #1:  TO COMPEL RULE 16
AND BRADY MATERIAL
Case No. CR-14-00175-TEH

*United States v. Hernandez-Meza,*
   720 F.3d 760 (9th Cir. 2013) ................................................................ 3, 13

*United States v. Jennings,*
   960 F.2d 1488 (9th Cir. 1992) ................................................................ 14

*United States v. Liu,*
   731 F.3d 982 (9th Cir. 2013) .................................................................. 6

*United States v. McGregor,*
   2012 U.S. Dist. LEXIS 171324 (N.D. Cal. Dec. 3, 2012) ...................... 11

*United States v. Poindexter,*
   727 F. Supp. 1470 (D.D.C. 1989) .......................................................... 17

*United States v. Price,*
   566 F.3d 900 (9th Cir. 2009) .................................................................. 4, 12

*United States v. Prokop,*
   2012 U.S. Dist. LEXIS 86655 (D. Nev. June 22, 2012) ........................ 13

*United States v. Santiago,*
   46 F.3d 885 (9th Cir. 1995) .................................................................... 11, 16

*United States v. Stever,*
   603 F.3d 747 (9th Cir. 2010) .................................................................. 3, 4, 11

*United States v. Wood,*
   57 F.3d 733 (9th Cir. 1995) .................................................................... 10, 11

**STATUTES**

49 U.S.C. § 1111 ........................................................................................ 14

49 U.S.C. § 60102(a) ................................................................................. 10

49 U.S.C. § 60105(a) ................................................................................. 17

49 U.S.C. § 60123(a) ................................................................................. 6

5 U.S.C. App. § 6 ....................................................................................... 10

**RULES**

Fed. R. Crim. P. 16(a)(1)(E) .................................................................... 3, 17

**REGULATIONS**

49 C.F.R. § 190.303 ................................................................................... 10

49 C.F.R. § 192.917(b) .............................................................................. 5

49 C.F.R. § 192.917(e) .............................................................................. 14

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

DEF.'S MOT. #1:  TO COMPEL RULE 16
AND BRADY MATERIAL
Case No. CR-14-00175-TEH

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The prosecution has accepted the burden to prove beyond a reasonable doubt that unnamed PG&E employees knowingly and willfully violated seven detailed pipeline maintenance regulations over the course of 40 years and, further, that these criminal violations caused the awful San Bruno explosion.  We know this from the government's September 5, 2014 opposition to our motion to strike.  Having taken up the task of enforcing pipeline maintenance regulations with the criminal law, the U.S. Attorney now shoulders significant Rule 16 and *Brady* obligations.  Yet 12 months into this prosecution, and on the eve of the discovery motions due date, the government still cannot affirm that it has disclosed all evidence from government agencies concerning the case or all evidence favorable to the defense to which it has access.  Hence, the defendant seeks the Court's assistance.

Obtaining discovery from the government agencies is especially crucial for a fair trial in this arcane, technical subject matter.  While the prosecution has disclosed millions of pages of documents, they are predominantly documents previously produced by the defendant itself in various related proceedings.  The government has disclosed little concerning previous interpretations of these pipeline regulations by federal and state agencies, analyses indicating negligence or reckless acts rather than knowing and willful conduct, regulatory audits of other gas pipeline operators on relevant topics, factual evidence of causation regarding the explosion, or the accounting analysis supporting the huge fine request—just to name a few examples.

The defendant's original discovery requests elicited only the assurance that:

> The government is aware of its discovery obligations under Fed. R Crim. P. 16(a), as well as its separate disclosure obligations under *Brady*, *Giglio*, and the Jencks Act, and has and will continue to abide by them.

Valco Decl., Ex. 6.  We recognize that the U.S. Attorney's Office may see a case through different eyes than a defendant or its lawyers.  So we turned many of our defense theory cards face-up, and sent detailed letters to the prosecution specifically describing the information the defendant sought.  Rather than respond directly to many of the specific categories requested, the government repeated a diluted version of its previous response:

The government is aware of its obligations under Rule 16 of the Federal Rules of Criminal Procedure as well as its *Brady* obligations and intends to comply with them.

Valco Decl., Ex. 24. It raised no objection to any of our requests, engaged in no discussion, and now seems to admit that as of the discovery motion date, it has not complied even with its own view of its obligations—only that it "intends" to do so at some unspecified future date.

Thus, with due apologies to the Court for having made no progress in party-to-party discussions, we move to compel disclosure of eight categories of discovery. We also respectfully request that the Court direct the government to respond to our remaining requests so that we can determine whether a further motion is needed.

As the Court is likely aware, PG&E conceded negligence in the civil litigation following the San Bruno explosion and paid over $500 million to settle every single civil case brought by the accident's victims, buy back destroyed homes, and provide a trust fund to San Bruno, among other things. Its sole regulator, the CPUC, recently announced a proposed fine and penalties of $1.6 billion (sixteen times more than any pipeline explosion case in history), which the defendant has announced it will pay in full and not appeal. Additionally, the defendant has spent several billion dollars on pipeline safety improvement measures since the explosion. But when the U.S. Attorney decided to step in to enforce CPUC-administered pipeline regulations with the federal criminal law, PG&E pleaded not guilty, believing that none of its employees knowingly and willfully committed any crime. The first step in our defense is asking that the Court require the government to disclose defense evidence relevant to the technical charges it has brought.

## II. THE GOVERNMENT'S DISCOVERY OBLIGATIONS

Three basic principles underlie the government's discovery obligations in this case: First, Rule 16 requires the government to disclose all evidence it possesses pertaining to the subject matter of the allegations. Second, for both Rule 16 and *Brady* purposes, the government possesses evidence in the files of the relevant government agencies, not just documents from the particular agents or agencies on the "prosecution team." Third, the government's *Brady* obligation requires it to affirmatively search for information which is reasonably likely to lead to evidence favorable to the defense.

**LATHAM&WATKINS**LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEFENDANT'S DISCOVERY MOTION #1:
RULE 16 AND BRADY MATERIAL
Case No. CR-14-00175-TEH

## A.      Rule 16 Obligations

The government must disclose all documents, data, or tangible items in its "possession, custody, or control" that "are material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E). The Ninth Circuit considers Rule 16 a "broad right to discovery," *United States v. Stever*, 603 F.3d 747, 752 (9th Cir. 2010), and has strongly encouraged the government "to turn over whatever evidence it has pertaining to the case." *United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013). Failure to turn over Rule 16 material can result in dismissal of an indictment with prejudice. *Id.* at 769.

A defendant's Rule 16 "threshold showing of materiality" is "low." *Hernandez-Meza*, 720 F.3d at 768 (citation omitted). Evidence is "material" so long as "the information" would "help[]" the defendant develop "a possible defense," *United States v. Budziak*, 697 F.3d 1105, 1111 (9th Cir. 2012), or "cause[] a defendant to completely abandon a planned defense and take an entirely different path," *Hernandez-Meza*, 720 F.3d at 768 (quotation marks and citation omitted). Evidence that will "play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal" is material under Rule 16. *United States v. Bergonzi*, 216 F.R.D. 487, 501 (N.D. Cal. 2003) (quotation marks and citation omitted).

The Ninth Circuit has addressed the common situation where a prosecutor contends that nothing is material in the requested evidence. A court "should not merely defer to government assertions that discovery would be fruitless." *Budziak*, 697 F.3d at 1112-13. "While we have no reason to doubt the government's good faith in such matters, criminal defendants should not have to rely on the government's word that further discovery is unnecessary." *Id.* at 1113. For that reason, we sent detailed requests to the government, even though doing so revealed a great deal about our defense strategy, more than a year before trial will begin.

## B.      What The Government Possesses

The prosecution must produce information "within the government's possession, custody, or control." Fed. R. Crim. P. 16(a)(1)(E). For both Rule 16 and *Brady* purposes, this extends far beyond documents that happen to be before the prosecutor and her team of lawyers and agents.

Rather, "[i]nformation is in the possession of the government" so long as "the prosecutor has knowledge of and access to the documents sought by the defendant." *Stever*, 603 F.3d at 752 (citation omitted). As a matter of law, a "prosecutor will be deemed to have knowledge of and access to anything in the possession, custody or control of any federal agency participating in the same investigation of the defendant." *United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1989). Indeed, limiting possession to the prosecutors "unfairly allow[s] the prosecution access to documents without making them available to the defense." *Id.* at 1036-37.

## C. *Brady* Obligations

The Fifth Amendment's Due Process Clause grants defendants an independent, constitutional right to receive all "evidence favorable to the accused" that is "material either to guilt or to punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *United States v. Agurs*, 427 U.S. 97, 107 (1976).[1] As with Rule 16, "[t]he prudent prosecutor [should] resolve doubtful questions in favor of disclosure." *Agurs*, 427 U.S. at 108.[2] The Ninth Circuit is at the forefront of ensuring that this right has meaning in the real world of criminal prosecutions. Before trial, *Brady* evidence is anything "which might reasonably be considered favorable to the defendant's case even if the evidence is not admissible so long as it is reasonably likely to lead to admissible evidence." *United States v. Price*, 566 F.3d 900, 913 n.14 (9th Cir. 2009) (citations omitted). Evidence is "favorable" to the defendant's case if it "helps bolster the defense case or impeach the prosecutor's witnesses." *Id.* Further, "[t]he prosecution's duty to reveal favorable, material information extends to information that is not in the possession of the individual prosecutor

---

[1] In this motion, "*Brady* material" is meant to include all exculpatory material under *Brady* and its progeny. *See, e.g.*, *Giglio v. United States*, 405 U.S. 150, 154 (1972) (extending *Brady* to impeachment materials); *United States v. Amado*, 758 F.3d 1119, 1134 (9th Cir. 2014) ("Favorable evidence is not limited to evidence that is exculpatory"; it includes evidence that "impeaches a prosecution witness.").

[2] The Department of Justice provides similar guidance to its prosecutors, urging them to "err on the side of inclusiveness when identifying the members of the prosecution team for discovery purposes" and explaining that "[c]arefully considered efforts to locate discoverable information are more likely to avoid future litigation over *Brady* and *Giglio* issues and avoid surprises at trial." David Ogden, Deputy Attorney General, Department of Justice, Memorandum for Department Prosecutors on Guidance for Prosecutors Regarding Criminal Discovery (Jan. 4, 2010) ("Ogden Memo") (Step 1.A), *available at* http://www.justice.gov/dag/memorandum-department-prosecutors.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEFENDANT'S DISCOVERY MOTION #1:
RULE 16 AND BRADY MATERIAL
Case No. CR-14-00175-TEH

trying the case." *United States v. Amado*, 758 F.3d 1119, 1134 (9th Cir. 2014). Rather, a prosecutor has a constitutional "duty to learn of any favorable evidence known to the others acting on the government's behalf in the case." *Id.* (quoting *Kyles v. Whitley*, 514 U.S. 419, 437 (1995)). "Because the prosecution is in a unique position to obtain information known to other agents of the government, it may not be excused from disclosing what it does not know but could have learned." *Id.* at 1134 (citation omitted).

## III. WHAT THE GOVERNMENT HAS PUT AT ISSUE IN THIS PROSECUTION

The superseding indictment charges 27 counts of knowing and willful violations of seven different pipeline maintenance regulations, ranging at least from 1970 to 2010. The new prosecution team also added a charge of obstruction based on a letter to the NTSB correcting one of the defendant's responses to an NTSB data request. We will not consume the dozens of pages that would be necessary to explain in detail the relevant discovery for each charge. So the Court can appreciate why we believe our discovery requests are appropriate, however, we will go into detail on two charges that are representative of the others.

### A. Counts 2 and 3: Records Management Under 49 C.F.R. § 192.917(b)

For all of the pipeline maintenance counts, the regulations at issue were written by engineers for engineers—and for no one with a short attention span. Consider Counts Two and Three governing records management. The allegation is that unnamed engineers knowingly and willfully "failed to gather and integrate existing data and information that could be relevant to identifying and evaluating all potential threats on covered segments[.]" SI ¶ 63. The regulation itself provides that, "[i]n performing this data gathering and integration, an operator must follow the requirements in ASME/ANSI B31.8S, section 4." 49 C.F.R. § 192.917(b). It continues:

> At a minimum, an operator must gather and evaluate the set of data specified in Appendix A to ASME/ANSI B31.8S, and consider both on the covered segment and similar non-covered segments, past incident history, corrosion control records, continuing surveillance records, patrolling records, maintenance history, internal inspection records and all other conditions specific to each pipeline.

Turning next, as one must, to Section 4 and Appendix A of ASME/ANSI B31.8S, they say, in part, that:

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEFENDANT'S DISCOVERY MOTION #1:
RULE 16 AND BRADY MATERIAL
Case No. CR-14-00175-TEH

[a] survey of all potential locations that could house these records may be required . . . action to obtain the data can be planned and initiated relative to its importance . . . [e]xisting [] geographic information system (GIS) databases . . . are also useful data sources, . . . [a]nother data collection consideration is whether the age of the data invalidates its applicability to the threat . . . [and] [i]ndividual data elements shall be brought together and analyzed in their contents.

Valco Decl., Ex. 28.

It will not surprise the Court that a likely defense to these allegations is that the defendant's engineers did not knowingly and willfully violate any of this. Factually, they tried to understand the regulations based on information like engineering studies, statements by regulators, positions taken by regulators in audits or legal actions around the country, actions by other operators, regulatory history, and particular conditions in the field. When the regulatory guidance was vague or contradictory or confusing or did not make sense, they used their professional judgment.

Legally, the government faces many more hurdles. First, the government will have to show that its interpretations of the regulations are correct. Second, because the government must identify a "knowing[] and willfull[]" violation of the regulations, 49 U.S.C. § 60123(a), it must prove that the defendant's interpretations were "objectively unreasonable." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007) (holding that a defendant did not violate a statute "willfully" where its "reading of the statute, albeit erroneous, was not objectively unreasonable"). If an engineer's interpretation was objectively reasonable, he cannot be found guilty under the statute. *See id.* at 70 n.20 ("Where . . . the statutory text and relevant court and agency guidance allow for more than one reasonable interpretation, it would defy history and current thinking to treat a defendant who merely adopts one such interpretation as a knowing or reckless violator."). Finally, the government must also prove beyond a reasonable doubt that the engineers knew the "facts that constitute[d] the offense," *Bryan v. United States*, 524 U.S. 184, 193 (1998), and that they knew the duty imposed on them by the relevant regulation and acted with the "specific intent to violate" a "known legal duty." *United States v. Liu*, 731 F.3d 982, 989, 990 (9th Cir. 2013).

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEFENDANT'S DISCOVERY MOTION #1:
RULE 16 AND BRADY MATERIAL
Case No. CR-14-00175-TEH

1   What does this mean for the defendant's discovery rights?  It means that evidence is

2   material when it suggests ambiguity in the regulations, differing interpretations accepted by

3   agencies, changes in the agencies' interpretations, or debate among the regulators or the

4   regulated.  The government set the boundaries of its discovery obligations when it charged

5   criminal knowing and willful violations of these technical regulations.

6       **B.      Count One: Obstruction**

7       The second example we will discuss is the new Count One of the superseding indictment.

8   There, the government alleges that a letter correcting a previous response to an NTSB

9   information request (one of more than 550 such requests) was a criminal obstruction of justice.

10  SI ¶ 61.  Interestingly, the alleged omission in the April 6 letter had no bearing on the San Bruno

11  rupture the NTSB was investigating.  Still, the government must prove that the letter was

12  material to the NTSB investigation into the root cause of the explosion.  And it must do so in the

13  face of the Ninth Circuit's guidance that "[a] single truthful but evasive or misleading statement

14  can never be material."  *United States v. Bonds*, No. 11-10669, 2015 WL 1842752, at *8 (9th

15  Cir. Apr. 22, 2015) (per curiam) (en banc) (N.R. Smith, J., concurring).

16      What does this mean for the defendant's discovery rights?  At a minimum, the defendant

17  is entitled to the investigative notes and files of the NTSB.  These documents will show if this

18  letter had any material effect on the investigation.  The defendant is also entitled to all

19  communications from anyone involved in the investigation that relate to the letter or to the

20  engineering procedures to which it refers.  If few people discuss it, the absence of discussions is

21  itself strong evidence that those parties did not consider it material.  Again, it is the scope of the

22  government's allegations that defines the scope of its disclosure obligations.  It cannot allege that

23  a data response is material to an investigative proceeding and then refuse to disclose information

24  from the actual proceeding to test that assertion.

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEFENDANT'S DISCOVERY MOTION #1:
RULE 16 AND BRADY MATERIAL
Case No. CR-14-00175-TEH

## IV. THE DEFENDANT IS ENTITLED TO ADDITIONAL DISCOVERY UNDER RULE 16 AND *BRADY*

With that background, we will discuss specifically the eight requests (containing subpoints) that are the subject of this motion.[3] The requests are grouped by their primary focus.

### A. The Government Must Inquire Well Beyond The Investigators Working On This Case

As the government produced discovery, the defendant became concerned that the prosecution's review of materials from the various relevant agencies was incomplete. The defendant thus asked the government which agencies it would gather and disclose materials from to fulfill its discovery obligations. Valco Decl., Ex. 4. In a subsequent letter, the defendant explained that it was seeking all materials "in the possession, custody, or control of," *inter alia,* the Department of Transportation ("DOT") (including PHMSA and the NTSB) and the CPUC. Valco Decl., Ex. 6. In response, the government asserted that the "prosecution team" was "the United States Attorney's Office for the Northern District of California, the California Attorney General's Office, the San Mateo District Attorney's Office, the FBI, the DOT's Office of Inspector General, and the San Bruno Police Department." Valco Decl., Ex. 7. The government took the position that the "prosecution team" "does *not* include the NTSB, PHMSA, [or] the CPUC." *Id.* Therefore, the government contends, it will disclose materials from these three agencies only to the extent it "may rely on these materials in its case-in-chief." *Id.*

On March 25, 2015, the defendant again made very specific requests of the types of information that are material to the defense, and requested that the government obtain such "*Brady* and other defense-favorable evidence" from PHMSA, the NTSB, and the CPUC. Valco Decl., Ex. 19. This is when the government gave its "we intend to comply" at some unspecified future date response quoted above.

---

[3] We respectfully reserve the right to seek additional discovery in the future and to engage the Court's assistance in doing so. We chose these items at this time because of their immediate importance.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEFENDANT'S DISCOVERY MOTION #1:
RULE 16 AND BRADY MATERIAL
Case No. CR-14-00175-TEH

The government's "prosecution team" view of its disclosure obligations is fundamentally flawed and cannot be reconciled with controlling precedent and Department of Justice guidance. Here, PHMSA and the CPUC are charged with administering the Pipeline Safety Act ("PSA") regulations. The NTSB conducted the investigation into the San Bruno explosion that the defendant is charged with obstructing. And all three agencies played a critical role in the prosecution's multi-year investigation that culminated in the superseding indictment either through active participation or by providing access to documents. The prosecution has already mined the respective agency files for documents material to its case-in-chief; it is required to do the same for the defense. There is every reason to believe that PHMSA, NTSB, and CPUC files contain evidence that would help the defendant develop a possible defense, and that those files contain at least some information favorable to the defendant's case.

### B. The Defendant Is Entitled To Materials from PHMSA

#### 1. The Government Has Knowledge of, Access to, and the Obligation to Investigate Discovery from PHMSA

The government has provided only one reason for failing to produce the requested PHMSA materials: the "prosecution team" purportedly does not include PHMSA. Valco Decl., Ex. 7. This government designation, however, does not matter for discovery purposes because PHMSA is one of the investigating agencies.

First, PHMSA unquestionably participated in this investigation. The Department of Justice admitted in a press release that the "prosecution is the result of a three-year investigation conducted by the U.S. Attorney's Office for the Northern District of California, the California Attorney General's Office, the San Mateo County District Attorney's Office, the United States Department of Transportation Office of Inspector General, the FBI, *the Pipeline and Hazardous Material Safety Administration*, and the city of San Bruno Police Department."[4] The

---

[4] Valco Decl., Ex. 29, Press Release, U.S. Dep't of Justice, PG&E Charged With Multiple Violations Of The Natural Gas Pipeline Safety Act (Apr. 1, 2014), available at http://www.justice.gov/usao-ndca/pr/pge-charged-multiple-violations-natural-gas-pipeline-safety-act (emphasis added).

Department of Transportation (of which PHMSA is a part) admitted this as well.[5] And the Department of Justice repeated this admission in a press release about the superseding indictment.[6] Agency politics and public relations aside, PHMSA clearly "consulted with the prosecutor in the steps leading to prosecution" of this case, and therefore falls within the prosecution's discovery obligations. *United States v. Wood*, 57 F.3d 733, 737 (9th Cir. 1995).

Where the government has announced in a press release that an agency has participated in an investigation, the prosecutors cannot later unilaterally limit its discovery obligations by artificially excluding that agency from the "team." *United States v. Cerna*, 633 F. Supp. 2d 1053, 1055, 1058-59 (N.D. Cal. 2009) (holding that the "official press release . . . made clear that at least four federal agencies must be deemed 'agents' involved in the investigation for *Brady* purposes" and rejecting government's attempt to "unilaterally" and "artificial[ly] limit" the "universe in which it must search for *Brady* materials" to two of the four agencies) (emphasis omitted); *see also Bryan*, 868 F.2d at 1036-37 (limiting possession to the prosecution "unfairly allows the prosecution access to documents without making them available to the defense") (citation omitted).[7]

Second, PHMSA is "charged with administration of" the PSA and crafting the regulations thereunder. *See* 49 U.S.C. § 60102(a); 49 C.F.R. § 190.303 (delegating

---

[5] Valco Decl., Ex. 30, Press Release, U.S. Dep't of Transp. Office of Inspector Gen., PG&E Charged With Multiple Violations Of The Natural Gas Pipeline Safety Act (Apr. 1, 2014), available at https://www.oig.dot.gov/library-item/28702 ("We are investigating this case jointly with the San Mateo District Attorney's Office, San Bruno Police Department, and Federal Bureau of Investigation, with assistance from the Pipeline and Hazardous Materials Safety Administration.").

[6] Valco Decl., Ex. 31, Press Release, U.S. Dep't of Justice, PG&E Charged With Obstruction Of The Investigation Of the National Transportation Safety Board and Additional Violations Of The National Gas Pipeline Safety Act (July 29, 2014), available at http://www.justice.gov/usao-ndca/pr/pge-charged-obstruction-investigation-national-transportation-safety-board-and.

[7] Even if PHMSA were somehow not part of the investigation or prosecution, the DOT Office of the Inspector General ("OIG") admittedly is. As a member of the prosecution team, the OIG has knowledge of and access to all of PHMSA's records *and* NTSB records for purposes of Rule 16. By statute, the OIG for each agency has "access to all records, reports, audits, reviews, documents, papers, recommendations, or other material available to the applicable establishment which relate to programs and operations with respect to which that Inspector General has responsibilities." 5 U.S.C. App. § 6. Accordingly, records from PHMSA and the NTSB are discoverable even under the government's cramped view of its discovery obligations.

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT'S DISCOVERY MOTION #1:
RULE 16 AND BRADY MATERIAL
Case No. CR-14-00175-TEH

administration of the PSA to PHMSA). "[U]nder *Brady*[,] the agency charged with administration of the statute, which has consulted with the prosecutor in the steps leading to prosecution, is to be considered as part of the prosecution in determining what information must be made available to the defendant charged with violation of the statute." *Wood*, 57 F.3d at 737.

Third, there can be no dispute that the prosecution has both "knowledge of" and "access to" the PHMSA documents "sought by" the defendant. *Stever*, 603 F.3d at 752 (quoting *United States v. Santiago*, 46 F.3d 885,893 (9th Cir. 1995)). As an initial matter, the "prosecutor will be deemed to have knowledge of and access to anything in the possession, custody or control of any federal agency participating in the same investigation of the defendant." *Bryan*, 868 F.2d at 1036; *see Santiago*, 46 F.3d at 893-84. As detailed above, PHMSA unquestionably "participat[ed] in the . . . investigation" of the defendant. *See* April 1, 2014 DOJ Press Release, *supra* n.4; April 1, 2014 DOT Press Release, *supra* n.5.

But even more fundamentally, regardless of whether PHMSA was involved in the investigation, we know that the government has "knowledge of" and "access to" PHMSA's documents because it examined those same files for evidence favorable to *the prosecution* and because it produced *that* evidence to the defense. *Santiago*, 46 F.3d at 893-94 (agency involvement in the investigation is "sufficient, but not necessary" because the test is "knowledge of and access to" the documents). Indeed, where an agency has given "the federal prosecutor 'access to its files for the purpose of pulling items of interest to a federal investigation,'" those "documents can be considered to be in the possession or control of the federal prosecutor." *United States v. McGregor*, 2012 U.S. Dist. LEXIS 171324, at *4 (N.D. Cal. Dec. 3, 2012) (quoting *Cerna*, 633 F. Supp. 2d at 1060).

Here, in their November 7, 2014 letter, the prosecutors indicated that they "have reached out to the Department of Transportation and relayed [defendant's] request. Once we receive materials from PHMSA we will produce these materials to you." Valco Decl., Ex. 16. The government's ability to simply request PHMSA documents shows that it is in possession of such documents for purposes of Rule 16 and *Brady*.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT'S DISCOVERY MOTION #1:
RULE 16 AND BRADY MATERIAL
Case No. CR-14-00175-TEH

Defendant has requested several categories of information from PHMSA.  For example, Defendant has requested: (1) information regarding the regulations at issue, *see* March 25 Letter (items 2.b, 3, 9, 10, 14, and 16); (2) information regarding other pipeline operators' interpretation of the regulations at issue and PHMSA's audit and enforcement actions with respect to those operators, *id.* (items 1.b, 1.f, 4, 5, and 6); and (3) materials referencing PG&E or the San Bruno accident, before and after the explosion, *id.* (item 1.d, 1.e, and 2.a).[8]  This information is material to the defense under both Rule 16 and *Brady*.[9]  While the government has produced a number of documents from PHMSA, the production is noticeably missing information from the requested categories.

This type of information would clearly "help" the defendant develop "a possible defense," *Budziak*, 697 F.3d at 1111, and "might reasonably be considered favorable" to the defense, *Price*, 566 F.3d at 913 n.14.  PHMSA is the agency that crafted the regulations charged in the superseding indictment, and is charged with enforcing them on many of the nation's pipelines.  The requested materials could reveal that PHMSA interpreted the regulations differently than the prosecution does now; that there were multiple interpretations advanced internally at PHMSA before settling on a final interpretation; or that regulators were inconsistent in their assessment of operator compliance.  Similarly, information regarding other operators may indicate that they interpreted the regulations in a manner consistent with the defendant's engineers, that they interpreted the regulations differently than the prosecutors here, or that they were simply unsure as to what the regulations required; or that PHMSA provided inconsistent or

---

[8]    PG&E's March 25, 2015 letter contains all the specific requests and examples of the type of information PG&E requested the government obtain from PHMSA, NTSB and the CPUC.
[9]    There can be no dispute that this type of information exists.  The government has already produced some documents discussing PHMSA's interpretation of 49 C.F.R. section 192.199, Valco Decl., Ex.. 32, as well as a document discussing the development of certain Frequently Asked Questions ("FAQs"), Valco Decl., Ex. 33.  And while the government has not produced *anything* relating to other natural gas pipeline operators, that is not because it does not exist.  For example, PG&E is aware of a letter that BP Pipelines sent to PHMSA regarding its interpretation of section 192.917.  *See* Valco Decl., Ex. 34.  There is every reason to believe that additional information exists within these broad categories; the government, for its part, has not suggested otherwise.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

DEFENDANT'S DISCOVERY MOTION #1:
RULE 16 AND BRADY MATERIAL
Case No. CR-14-00175-TEH

contradictory interpretations of the regulations to other operators.  *See United States v. Prokop*,

2   2012 U.S. Dist. LEXIS 86655, at *7-8 (D. Nev. June 22, 2012) (holding that audit files could be

3   material to showing Defendant's conduct was lawful if the IRS "concluded that the credits and

4   deductions were legitimate").

5       If favorable, this information would tend to show that the defendant's engineers'

6   interpretation of the regulations was correct or was (at the very least) objectively reasonable, or

7   that the defendant did not act with the requisite "knowing" and "willful" intent.  *See, e.g.*, *United*

8   *States v. Doe*, 705 F.3d 1134, 1151 (9th Cir. 2013) (finding error in denial of Rule 16 request for

9   documents that could "help establish [defendant's] state of mind"); *Bergonzi*, 216 F.R.D. at 499

10  (ordering disclosure under Rule 16 and *Brady* of materials that "bear[] directly on [the] defenses

11  of lack of criminal knowledge and intent").  But even if some information proves to be less

12  favorable to the defense, it is still material under Rule 16 because it may "cause[]" the defendant

13  "to 'completely abandon'" one or more of its "planned defense and take an entirely different

14  path.'"  *Hernandez-Meza*, 720 F.3d at 768 (citation omitted).

15      Additional materials regarding the San Bruno accident including documents post-dating

16  the event are also material because they could include PHMSA's understanding of what the

17  cause of the accident was, discussions regarding the motives behind and propriety of the

18  defendant's integrity management program, or discussions about the competency of the CPUC

19  and the NTSB.  Such information could bear on the quality of the defendant's integrity

20  management program, assist in impeaching or rebutting any PHMSA witness testimony, show

21  that the defendant's actions comported with an objectively reasonable interpretation of the

22  regulations, or help establish a defense to the Alternative Fine Act allegations.[10]

23

24

---

25  [10]   The government has already produced PHMSA documents that post-date the accident, but

26  the production was limited to documents one PHMSA employee forwarded to a DOT agent.  *See*
    Valco Decl., Ex. 35.  The government has not asserted that these are the only documents

27  PHMSA had regarding the San Bruno accident and PG&E.  Instead, in a response to an in-person
    inquiry, the government simply indicated that "PHMSA did not provide us with post explosion

28  materials relating to the San Bruno explosion."  Valco Decl., Ex. 16.

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

DEFENDANT'S DISCOVERY MOTION #1:
RULE 16 AND BRADY MATERIAL
Case No. CR-14-00175-TEH

**C.      The Defendant Is Entitled to Materials from the NTSB**

        **1.      The Government is Required to Produce Material from the NTSB**

The government is also obligated to produce materials from the NTSB under Rule 16 and *Brady*.  We know that the government has knowledge of and access to NTSB files because it has said precisely that.  *See, e.g.*, Valco Decl., Ex. 3 (noting that it had access to and possession of "NTSB analyses, reports, photos and other investigatory materials"); Valco Decl., Ex. 15 ("noting that it was "reviewing and processing materials that [it] received from the NTSB").  We also know that the government has the requisite access because it has, in fact, produced materials from the NTSB—just not those actually responsive to the defendant's specific requests.  *See* Valco Decl., Ex. 16.

"The prosecution may not simply ask for information it wants while leaving behind other, potentially exculpatory information within agency files."  *United States v. Grace*, 401 F. Supp. 2d 1069, 1079 (D. Mont. 2005).  The fact that the government "asked for and received documents and information from [the NTSB] . . . shows knowledge on the part of the government that the agenc[y] hold[s] information relevant to this case."  *Id*.  And the fact that "[t]he agenc[y] supplied the requested information to the prosecution . . . shows the prosecution has access."  *Id*; *see Santiago*, 46 F.3d at 894 (holding that the prosecution had knowledge of and access to Bureau of Prison files because the government had previously been able to obtain the defendant's prison file).  With such access comes responsibility.  The government cannot seek only information for its case-in-chief; it must also search for *Brady* material for the defense.[11]

        **2.      The Requested NTSB Information is Material to the Defense**

The defendant has requested that the government produce only two categories of materials from the NTSB: (1) all materials discussing the regulations the defendant is alleged to have violated, March 25 Letter (item 2.e); and (2) all materials relating to the allegedly

---

[11]    Even if the facts on the ground did not conclusively demonstrate that the prosecution has access to NTSB files, the government could not "evade[]" its *Brady* obligations "by claiming a lack of control over the files or procedures of other executive branch agencies," such as the NTSB.  *United States v. Jennings*, 960 F.2d 1488, 1490-91 (9th Cir. 1992); *see* 49 U.S.C. § 1111; *Collins v. NTSB*, 351 F.3d 1246, 1251 (D.C. Cir. 2003).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

DEFENDANT'S DISCOVERY MOTION #1:
RULE 16 AND BRADY MATERIAL
Case No. CR-14-00175-TEH

obstructive data response and letter, *id.* (items 2.d and 11).

        a.      <u>NTSB communications, internal and external, concerning the regulations at issue</u>

        The NTSB investigated the San Bruno accident and subsequently issued safety recommendations to PHMSA, the CPUC, and PG&E. In doing so, the NTSB presumably had a number of internal discussions regarding the very regulations at issue in this case.[12] The NTSB may have also obtained information from PHMSA regarding its interpretations of the regulations. For the same reasons discussed above, the defendant is entitled to information from NTSB regarding those interpretations. This category of missing information is material for the same reasons the PHMSA information (discussed above) is material: this information may support the defendant's interpretation of the regulations, demonstrate that the defendant's engineers' interpretation was objectively reasonable, or prove that the defendant did not act "knowingly" and "willfully." *See Budziak*, 697 F.3d at 1111 (stating that evidence is material if it would "help" the defendant develop "a possible defense").

        b.      <u>Communications relating to RMI-06 and the April 6 letter</u>

        The second category of information (*i.e.*, all materials relating to the allegedly obstructive data response and letter) is material for a different reason. As discussed above, an essential element of the obstruction charge is that the alleged obstructive conduct was "material" to the NTSB and NTSB communications can show if the April 6 letter had any material effect on the investigation. *See supra* Section III.B.[13]

---

[12] This is more than speculation. The Final Pipeline Accident Report, for example, contained an entire section discussing 49 C.F.R. § 192.917(e). Valco Decl., Ex. 36 at 36-38. Yet, the government has produced minimal materials from the NTSB discussing that regulation or the NTSB's interpretation of it.

[13] The government's limited discovery to date provides reasons to believe that additional information of this sort is available. The government produced, without any bates stamp numbers, documents that included (among other things) a handful of e-mails from NTSB investigator Ravi Chhatre and a draft memo to file regarding the allegedly obstructive letter. At a minimum, PG&E is entitled to documents relating to discussions between NTSB investigators about the different versions of "RMI-06" and how the versions affected the NTSB's investigation, as well as documents collected from NTSB employees other than Ravi Chhatre. PG&E also noticed a dearth of documents from 2011, even though the NTSB investigation was ongoing during that time.

**D.    The Court Should Compel Disclosure of CPUC Materials**

    1.    **The Government is Required to Produce Material from the CPUC Under *Brady*[14]**

On the facts here, to meet its *Brady* obligations, the government must also request material from the CPUC.  Although the CPUC is a state agency, it appears that the prosecution has requested and been given "access to [the CPUC's] files for the purpose of pulling items of interest to [the defendant] investigation."  *Cerna*, 633 F. Supp. 2d at 1060.  For example, the prosecution has indicated that it had access to materials from the "CPUC archive" (Valco Decl., Ex. 17; Valco Decl., Ex. 16), and that it had received materials from the CPUC about, *inter alia*, "Baseline Assessment Plans," and "Missing Strength Test Pressure Records" (Valco Decl., Ex. 2), and other CPUC documents from various enforcement proceedings.  Valco Decl., Ex. 15.  It also appears that each CPUC witness was voluntarily interviewed by the government, including one witness who sat for five interviews.  Valco Decl., ¶ 43.  And the interview notes also indicate that the CPUC and government investigators traded e-mails back and forth regarding documents and information supporting the government's case-in-chief.  Valco Decl., Ex. 37-39.

Given the government's seemingly unfettered access to CPUC materials to seek out evidence favorable to the prosecution, it is obligated to similarly search for *Brady* materials "within the same universe of files."  *Cerna*, 633 F. Supp. 2d at 1060.  "Imposing a rigid distinction between federal and state agencies which have cooperated intimately from the outset of an investigation would artificially contort the determination of what is mandated by due process."  *United States v. Antone*, 603 F.2d 566, 570 (5th Cir. 1979).  As one district court has explained:  "Once inside the stacks with permission to rummage about for prosecution evidence, the federal authorities must search for and retrieve defense evidence bearing on the same question."  *Id.*; *see id.* (Even if "access is only by mere requests, . . . the federal prosecutor must ask for *all* information on the same subject, pro and con.").  This is consistent with the DOJ's

---

[14]   The Ninth Circuit has held that, under Rule 16, "federal prosecutors are never deemed to have access to material held by state agencies."  *Santiago*, 46 F.3d at 894.  PG&E seeks the CPUC materials under *Brady*, not Rule 16

1  own guidance, which provides that "if a regulatory agency is not part of the prosecution team but

2  is conducting an administrative investigation or proceeding involving the same subject matter as

3  a criminal investigation, prosecutors may very well want to ensure that those files are reviewed"

4  to "locate discoverable information," in addition to "inculpatory information."  Ogden Memo

5  (Step 1.B(4))

6        **2.**  **The Requested Information is Material to the Defense**

7    Defendant requests three categories of CPUC information:  (1) information regarding the

8  regulations defendant is alleged to have violated, (March 25 Letter, item 3); (2) information

9  regarding other pipeline operators' interpretation of the regulations defendant is alleged to have

10  violated and the CPUC's audit and enforcement actions with respect to those operators, *id.* (items

11  1.b, 1.f, 4, 5, and 6); and (3) all materials referencing defendant's integrity management

12  program, defendant pressure test records, and defendant leak records, or the San Bruno accident,

13  *id.* (item 1.d, 1.e, and 9).  The categories of information the defendant is requesting from the

14  CPUC are identical to the materials the defendant is requesting from PHMSA.  *See* Section IV.

15  A. *supra.*  Indeed, because of California's submission of state certifications under 49 U.S.C.

16  § 60105(a), the CPUC is charged with exclusive enforcement authority over the intrastate gas

17  pipelines at issue in this case.  The reasons the requested PHMSA information is material apply

18  equally here.  *See United States v. Poindexter*, 727 F. Supp. 1470, 1477 (D.D.C. 1989) (noting

19  that "proof that the activities were known by many in government could help defendant's claim

20  that he reasonably believed them to be legal").

21    **E.**  **Third Party Subpoenas and Third Party Productions**

22    The government has not provided any information concerning third party subpoenas,

23  privilege logs provided to the government by third parties, or evidence of agreements to limit

24  production of documents.  When the government seeks to fulfill its discovery obligations by

25  purportedly giving the defense all of some kinds of documents, the defense should be entitled to

26  learn what that means.  Such information could lead to the defendant uncovering additional

27  admissible evidence material to its defense.  *See* Fed. R. Crim. P. 16 (a)(1)(E).  If there are 25

28  boxes of documents from the plaintiffs in the civil tort case, the defense does not know if

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

DEFENDANT'S DISCOVERY MOTION #1:
RULE 16 AND BRADY MATERIAL
Case No. CR-14-00175-TEH

anything was withheld on privilege grounds or by some agreement with the government. If the third party provided a privilege log, we would like a copy. If there was an agreement limiting production, we would like to review that agreement. Otherwise, the defense does not know what it might be missing in the huge productions, and whether or not it should seek additional information from those third parties.

### F. Supplemental Discovery of Testimony, Statements, and Notes

The defendant is aware that the government is still issuing subpoenas for documents related to Line 132 and interviewing witnesses concerning those documents. Yet the most recent interview report the government has produced is dated November 3, 2014. Valco Decl. ¶ 46. Though the government has stated that it intends to comply with its ongoing *Brady* and Rule 16 obligations, the last time the defendant received any interview notes, witness testimony, or related documents was on January 2, 2015. (Valco Decl., Ex. 18). Accordingly, we also request that the Court order the production of any remaining documents, interview reports, or testimony concerning Line 132 or other topics relevant to the superseding indictment.

### G. Outstanding Requests for Discovery

The defendant has a number of outstanding discovery requests to which the government has not responded. These include all grants of immunity from prosecution, and evidence of any statements to the effect that the government believed a witness was being untruthful. March 25 letter (items 7, 8). We ask the Court to order the government to respond to all outstanding requests. We can then assess whether further motions are required.

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

DEFENDANT'S DISCOVERY MOTION #1:
RULE 16 AND BRADY MATERIAL
Case No. CR-14-00175-TEH

# V. CONCLUSION

For the foregoing reasons, the defendant respectfully requests that the Court order production of the items listed in the accompanying Notice of Motion and Motion within 30 days.

Dated:  April 27, 2015                                              Respectfully submitted,

By _____/s/_____

Steven M. Bauer
Margaret A. Tough
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Tel.: +1.415.391.0600
Fax: +1.415.395.8095

Kate Dyer
CLARENCE, DYER & COHEN LLP
899 Ellis Street
San Francisco, California  94109-7807
Telephone:  +1.415.749.1800
Facsimile:  +1.415.749.1694

*Attorneys for Defendant*
*Pacific Gas and Electric Company*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

DEFENDANT'S DISCOVERY MOTION #1:
RULE 16 AND BRADY MATERIAL
Case No. CR-14-00175-TEH