1   LATHAM & WATKINS LLP
        Steven M. Bauer (Bar No. 135067)
2           steven.bauer@lw.com
        Margaret A. Tough (Bar No. 218056)
3           margaret.tough@lw.com
    505 Montgomery Street, Suite 2000
4   San Francisco, California  94111-6538
    Telephone:  +1.415.391.0600
5   Facsimile:  +1.415.395.8095

6   CLARENCE, DYER & COHEN LLP
        Kate Dyer (Bar No. 171891)
7           kdyer@clarencedyer.com
    899 Ellis Street
8   San Francisco, California  94109-7807
    Telephone:  +1.415.749.1800
9   Facsimile:  +1.415.749.1694

10  Attorneys for Defendant
    PACIFIC GAS AND ELECTRIC COMPANY

11

12              UNITED STATES DISTRICT COURT
13            NORTHERN DISTRICT OF CALIFORNIA
                SAN FRANCISCO DIVISION
14

15  UNITED STATES OF AMERICA,          CASE NO. CR-14-00175-TEH

16                Plaintiff,           **DEFENDANT'S MOTION #2:**
                                       **TO OBTAIN CERTAIN GRAND JURY**
17          v.                         **TRANSCRIPTS**

18  PACIFIC GAS AND ELECTRIC           **Judge:    Hon. Thelton Henderson**
    COMPANY,                           **Date:     June 1, 2015**
19                                     **Time:     10:00 AM**
                  Defendant.           **Place:    Courtroom 2, 17th Floor**
20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEF.'S MOT. #2:  TO OBTAIN CERTAIN GRAND
JURY TRANSCRIPTS
Case No. CR-14-00175-TEH

1

## NOTICE OF MOTION AND MOTION

2      PLEASE TAKE NOTICE that on June 1, 2015, at 10:00 a.m., Defendant Pacific Gas and

3 Electric Company ("PG&E") will and hereby does move this Court for an order granting its

4 Motion to Obtain Certain Grand Jury Transcripts.

5      Defendant respectfully requests that this Court issue an order requiring the government to

6 produce transcripts of grand jury proceedings reflecting the following:  all legal instructions

7 given to the grand jury (including responses to grand jury questions regarding legal issues); all

8 statements by the prosecution or government agents conveying evidence or argument regarding

9 obstruction (Count 1), pressure test recordkeeping (Counts 24-28), and the Alternative Fines Act

10 allegations (sentencing allegations); and statements relating to a deadline or timing for the

11 superseding indictment.  The motion will be based on this Notice of Motion and accompanying

12 Memorandum of Points and Authorities, the Declaration of Nicole C. Valco, the files and records

13 of this case, and such other argument and evidence as the Court may consider.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEF.'S MOT. #2:  TO OBTAIN CERTAIN GRAND
JURY TRANSCRIPTS
Case No. CR-14-00175-TEH

# TABLE OF CONTENTS

Page

I.    INTRODUCTION .................................................................................................. 1

II.   BACKGROUND ................................................................................................... 2

      A.    Count One:  Obstruction ........................................................................... 2

      B.    Counts 24 through 28:  Knowing and Willful Failure to Maintain
            Pressure Test Records ............................................................................... 3

      C.    Sentencing Allegation:  Alternative Fines Act ........................................ 4

      D.    Other Discovery and Procedural History ................................................. 5

III.  DISCUSSION ....................................................................................................... 6

      A.    Governing Legal Principles ...................................................................... 6

      B.    The Court May Grant Disclosure of the Legal Instructions Given to
            the Grand Jury Without A Showing Of Particularized Need ................... 8

      C.    Any Continued Need for Secrecy Is Minimal At Best .............................. 10

      D.    The Particularized Need to Obtain Grand Jury Transcripts
            Outweighs Any Remaining Need for Grand Jury Secrecy ....................... 11

            1.    Erroneous or Misleading Instructions or Information Likely
                  Prejudiced the Grand Jury's Decision to Charge
                  Obstruction ................................................................................... 12

            2.    Erroneous or Misleading Instructions or Information Likely
                  Prejudiced the Grand Jury's Decision to Charge Violations
                  of Pressure Test Record Regulations ............................................ 15

            3.    Erroneous or Misleading Instructions or Information Likely
                  Prejudiced the Grand Jury's Decision to Charge an
                  Alternative Fine ............................................................................ 17

      E.    The Request Is Narrowly Tailored to Cover Only Necessary
            Materials ................................................................................................... 20

      F.    The Court Should Order Disclosure of Records of the Start and
            End of Any Grand Juries that Have Investigated PG&E .......................... 21

II.   CONCLUSION .................................................................................................... 21

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

DEF.'S MOT. #2:  TO OBTAIN CERTAIN GRAND
JURY TRANSCRIPTS
Case No. CR-14-00175-TEH

1

## <u>TABLE OF AUTHORITIES</u>

2

Page(s)

3

## CASES

4

*Bank of Nova Scotia v. United States*,
    487 U.S. 250 (1988)........................................................................................7

5

*Douglas Oil Co. of Cal. v. Petrol Stops Nw.*,
    441 U.S. 211 (1979).............................................................................. 6, 8, 10

6

*In re Special Grand Jury (Anchorage, Alaska)*,
    674 F.2d 778 (9th Cir. 1982) .....................................................................21

7

8

*Petrol Stops Northwest v. Continental Oil Co.*,
    647 F.2d 1005 (9th Cir. 1981) .....................................................................8

9

*U.S. Indus., Inc. v. U.S. Dist. Ct.*,
    345 F.2d 18 (9th Cir. 1965) .........................................................................6

10

11

*United States v. Alter*,
    482 F.2d 1016 (9th Cir. 1973) .....................................................................8

12

*United States v. Basurto*,
    497 F.2d 781 (9th Cir. 1974) .......................................................................7

13

14

*United States v. Belton*,
    No. 14-cr-00030-JST2015, 2015 U.S. Dist. LEXIS 52426 (N.D. Cal. Apr. 21,
    2015) ..................................................................................................... 9, 10

15

16

*United States v. Bonds*,
    No. 11-10669, 2015 WL 1842752 (9th Cir. Apr. 22, 2015) (per curiam) (en
    banc) .............................................................................................. 1, 12, 14

17

18

*United States v. BP Prods. N. Amer. Inc.*,
    610 F. Supp. 2d 655 (S.D. Tex. 2009) ........................................... 17, 18, 19

19

*United States v. Caruto*,
    663 F.3d 394 (9th Cir. 2011) .......................................................................6

20

21

*United States v. Consortium de Realisation S.A. (In re Grand Jury)*,
    117 Fed. Appx. 527 (9th Cir. 2004)........................................................ 10, 11

22

*United States v. Diaz*,
    236 F.R.D. 470 (N.D. Cal. 2006)........................................................... 9, 21

23

24

*United States v. Dionisio*,
    410 U.S. 1 (1973)........................................................................................6

25

*United States v. Dynavac, Inc.*,
    6 F.3d 1407 (9th Cir. 1993) .......................................................................10

26

27

*United States v. Fowlie*,
    24 F.3d 1059 (9th Cir. 1994) ............................................................... 6, 10

28

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
SAN FRANCISCO

ii

DEF.'S MOT. #2:  TO OBTAIN CERTAIN GRAND
JURY TRANSCRIPTS
Case No. CR-14-00175-TEH

*United States v. Fuentes,*
   No. 07-0248, 2008 WL 2557949 (E.D. Cal. 2008)................................................. 9

*United States v. Hogan,*
   712 F.2d 757 (2d Cir. 1983)........................................................................................ 7

*United States v. Jack,*
   No. 07-0266, 2009 WL 435124 (E.D. Cal. 2009)................................................... 9

*United States v. Larrazolo,*
   869 F.2d 1354 (9th Cir. 1989) .................................................................................... 7

*United States v. Larson,*
   No. 07CR304S, 2012 U.S. Dist. LEXIS 133250 (W.D.N.Y. Sept. 18, 2012)....................... 9

*United States v. Laurins,*
   857 F.2d 529 (9th Cir. 1988) .................................................................................... 12

*United States v. Mahoney,*
   495 F. Supp. 1270 (E.D. Pa. 1980) ......................................................................... 10

*United States v. Marcucci,*
   299 F.3d 1156 (9th Cir. 2002) .................................................................................... 6

*United States v. Morales,*
   No. S-05-0443 WBS , 2007 U.S. Dist. LEXIS 18013, (E.D. Cal. Feb. 26,
   2007) .............................................................................................................................. 9

*United States v. Murray,*
   751 F.2d 1528 (9th Cir. 1985) .................................................................................... 8

*United States v. Peralta,*
   763 F. Supp. 14 (S.D.N.Y. 1991) .............................................................................. 7

*United States v. Plummer,*
   941 F.2d 799 (9th Cir. 1991) ................................................................................ 8, 11

*United States v. Samango,*
   607 F.2d 877 (9th Cir. 1979) .................................................................................. 6, 7

*United States v. Sanford LTD,*
   878 F. Supp. 2d 137 (D.D.C. 2012) .................................................................... 17, 19

*United States v. Stevens,*
   771 F. Supp. 2d 556 (D. Md. 2011) .......................................................................... 7

*United States v. Sun Myung Moon,*
   532 F. Supp. 1360 (S.D.N.Y. 1982) .......................................................................... 7

*United States v. Talao,*
   No. 97-0217, 1998 WL 1114043 (N.D. Cal. Aug. 14, 1998) .................................... 9

*United States v. Tam Ho,*
   No. 08-00337, 2009 U.S. Dist. LEXIS 73763 (D. Haw. Aug. 20, 2009) .............. 7, 12

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

DEF.'S MOT. #2:  TO OBTAIN CERTAIN GRAND
JURY TRANSCRIPTS
Case No. CR-14-00175-TEH

*United States v. Thomas,*
    612 F.3d 1107 (9th Cir. 2010) ..................................................................... 12, 21

*United States v. Twersky,*
    92 Cr. 1082, 1994 U.S. Dist. LEXIS 8744 (S.D.N.Y. June 29, 1994)................... 7

*United States v. Vetere,*
    663 F. Supp. 381 (S.D.N.Y. 1987)........................................................................ 7

*United States v. Wilde,*
    2012 U.S. Dist. LEXIS 111513 (N.D. Cal. Aug. 8, 2012)................................... 12

*West v. United States,*
    No. 08-cr-669, 2010 U.S. Dist. LEXIS 33315 (N.D. Ill. Apr. 5, 2010)................. 7

*Wood v. Georgia,*
    370 U.S. 375 (1970) ............................................................................................. 6

## STATUTES

18 U.S.C. § 1505 ....................................................................................................... 2

18 U.S.C. § 3571(d) ................................................................................................... 2

18 U.S.C. § 60123 ................................................................................................. 2, 15

## RULES

Fed. R. Crim. P. 6(e)(3)(E) ....................................................................................... 6

Fed. R. Crim. P. 6(e)(3)(E)(ii) ............................................................................... 6, 8

## REGULATIONS

49 C.F.R. § 192.505 ................................................................................................. 15

49 C.F.R. § 192.507 ................................................................................................. 15

49 C.F.R. § 192.517 ................................................................................................... 2

49 C.F.R. § 192.517(a).............................................................................................. 15

49 C.F.R. § 192.619 ................................................................................................. 15

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

DEF.'S MOT. #2:  TO OBTAIN CERTAIN GRAND
JURY TRANSCRIPTS
Case No. CR-14-00175-TEH

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.     INTRODUCTION

3       The Grand Jury Clause of the Fifth Amendment requires that the grand jury find probable

4 cause that a defendant committed the crime charged.  A grand jury can only do this job if

5 provided with accurate legal instructions and evidence.  Here, a review of the superseding

6 indictment and the available grand jury testimony raises the question:  Did the prosecution team

7 provide the grand jury with testimony and legal instructions sufficient to comply with the Grand

8 Jury Clause?

9       By this motion, defendant PG&E requests that the Court take a measured first step

10 toward ensuring such compliance by permitting disclosure of relevant portions of the grand jury

11 transcript record.  Any arguments favoring continued secrecy have little weight in these

12 circumstances, especially following indictment and release of *Jencks* material.  In any event, they

13 are easily outweighed by the compelling and particularized need to avoid injustice.  To the extent

14 any secrecy concerns remain, the defense is willing to review the transcripts under a counsel-

15 only protective order.

16       The available record raises serious questions whether the superseding indictment can

17 withstand scrutiny under the Grand Jury Clause.  For instance, the Count One obstruction charge

18 does not state a material omission that would comply with the standard recently affirmed by the

19 en banc Ninth Circuit in *United States v. Bonds*, No. 11-10669, 2015 WL 1842752 (9th Cir.

20 Apr. 22, 2015) (per curiam) (en banc).  In fact, Count One does not allege materiality at all.

21       For another example, the superseding indictment charges failures to retain various

22 pressure test records, but does not allege that pressure tests were required, which (unnamed)

23 segments are at issue, or whether a pressure test record was ever created.  The grand jury would

24 need legal instruction and factual evidence on all of these points before it could conclude that an

25 absence of a record shows that it was subsequently "knowingly" and "willfully" destroyed.

26       Similarly, the Alternative Fines Act ("AFA") allegations leave the defendant guessing

27 about what evidence or instructions could have produced the substantial but unexplained fine

28 amounts in the superseding indictment, and the government's discovery sheds no light.  Whether

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEF.'S MOT. #2:  TO OBTAIN CERTAIN GRAND
JURY TRANSCRIPTS
Case No. CR-14-00175-TEH

1  those charges must be dismissed for violations of the Grand Jury Clause based on improper legal

2  instructions or presentation of evidence will be proven or disproven by reviewing the transcripts

3  of legal instructions and of testimony of factual summary witnesses.

4       This Court has the authority to allow disclosure of grand jury transcripts.  We do not

5  endorse the cynical adage that "a grand jury would indict a ham sandwich."[1]  Our experience is

6  that grand juries, like petit juries, make thoughtful decisions—provided they receive appropriate

7  legal instructions and accurate evidence.  It is incumbent upon the prosecution, the defense

8  lawyers, and this Court to ensure that the Grand Jury Clause's requirements have been fulfilled.

9  This motion, we submit, is a modest first-step to protect an important, indeed fundamental,

10  constitutional right.

11  **II.    BACKGROUND**

12       On April 1, 2014, a grand jury returned an indictment charging PG&E with twelve counts

13  of knowing and willful violations of federal pipeline regulations under 18 U.S.C. § 60123.  Five

14  of the counts related to Line 132, one 28-foot segment of which tragically ruptured in San Bruno

15  in September 2010.  On July 29, 2014, a grand jury—possibly a different one—issued a

16  superseding indictment with 28 counts.[2]  The superseding indictment added, among other things:

17  (i) an obstruction charge under 18 U.S.C. § 1505; (ii) five counts of knowingly and willfully

18  failing to retain pressure test records under 49 C.F.R. § 192.517; and (iii) an allegation of gains

19  and losses to support an alternative maximum fine under 18 U.S.C. § 3571(d) (the "Alternative

20  Fines Act" or "AFA").  The circumstances surrounding each of these new charges suggest

21  irregularities in the grand jury proceedings that produced them.

22       **A.    Count One:  Obstruction**

23       In Count One, the grand jury charged PG&E with obstructing the National Transportation

24  Safety Board's ("NTSB's") investigation into the root cause of the explosion that occurred on

---

25

26  [1]    The origin of the adage is Judge Wachtler, who made the statement to the New York Daily News in 1985.  *See* http://www.nydailynews.com/news/politics/chief-judge-wanted-abolish-grand-juries-article-1.2025208.

27

28  [2]    PG&E requested that the government confirm the identities of the grand juries that have investigated and indicted PG&E.  The government has not yet responded.  Valco Decl. Ex. 26.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEF.'S MOT. #2:  TO OBTAIN CERTAIN GRAND
JURY TRANSCRIPTS
Case No. CR-14-00175-TEH

1   Segment 180 of Line 132.  SI ¶¶ 53-54, 61.  The superseding indictment alleges that PG&E

2   obstructed the NTSB investigation by providing a misleading response to one specific data

3   request that the NTSB had sent PG&E.  SI ¶¶ 57-61.  The data request in question (not recited in

4   the indictment) asked PG&E to provide:  "copies of all policies, standards, procedures, etc.

5   related to PG&E's practice of reestablishing [maximum allowable operating pressure

6   ("MAOP")] on its pipelines."  Valco Decl. Ex. 40.  Also missing from the indictment is the fact

7   that the NTSB issued approximately 550 data requests to PG&E over the course of 11 months.

8   Valco Decl. ¶ 47.

9        PG&E's original response to the data response at issue provided, among other things, a

10  copy of a PG&E document titled Risk Management Instruction 06 ("RMI-06") relating to data

11  collection for certain of its transmission pipeline segments.  SI ¶ 57; Valco Decl. Ex. 40.  A few

12  months later, PG&E discovered that it had mistakenly sent an unapproved draft revision of RMI-

13  06 under the cover sheet for the approved version then in place.  SI ¶¶ 57-59.  On April 6, 2011,

14  PG&E sent a letter to the NTSB withdrawing the unapproved draft, and providing the two

15  approved versions from 2008 and 2011.  SI ¶ 59; Valco Decl. Ex. 41.

16       The indictment alleges that PG&E's attempt to correct that error contained two omissions

17  that obstructed the NTSB's investigation.  SI ¶ 60; *see also id.* at ¶¶ 57-58.  The indictment does

18  not allege that any of the statements in the April 6 letter were inaccurate or false.  Instead, it

19  alleges misleading statements in the letter.  *Id.*

20   **B.    Counts 24 through 28:  Knowing and Willful Failure to Maintain Pressure
21           Test Records**

22       The grand jury charged PG&E with knowingly and willfully failing to retain pressure test

23  records with required information for the useful life of five of its pipelines.  SI ¶ 75.  These

24  counts incorporate by reference paragraphs 1-10, 20-27, and 44-46.  SI ¶ 74.  None of the

25  incorporated paragraphs alleges facts supporting a knowing and willful failure by anybody at

26  PG&E to retain any records of pressure tests that were required, performed, and documented on

27

28

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEF.'S MOT. #2:  TO OBTAIN CERTAIN GRAND
JURY TRANSCRIPTS
Case No. CR-14-00175-TEH

1   segments of any of the five lines charged.[3]  Paragraph 75's conclusory allegation that the

2   defendant knowingly and willfully failed to retain pressure test records for certain lines is all the

3   indictment says about PG&E's employees specific conduct for these counts.

4         **C.**     **Sentencing Allegation:  Alternative Fines Act**

5         In Paragraph 76, the superseding indictment charges that the defendant is subject to a fine

6   under the Alternative Fines Act based on its gross gains and losses with respect to the charges,

7   including gains of approximately $281 million and losses of approximately $565 million.  The

8   indictment does not contain any further information about how the grand jury came up with these

9   two numbers.

10        On July 30, 2014, when the defendant first received the superseding indictment, it asked

11  the government to explain how these gains and losses had been calculated as PG&E had a

12  quarterly earnings announcement the next day.  Valco Decl. Ex. 12.  The government responded

13  that it could not comment on the grand jury deliberations.  Valco Decl. Ex. 13.

14        The following month, the defendant moved to strike the sentencing allegation from the

15  superseding indictment for lack of factual specificity.  *See* PG&E Mot. to Strike, filed 8/29/2014,

16  Dkt. 33.  In opposing defendant's motion, the government apparently resolved its concerns about

17  commenting on grand jury deliberations.  With regard to the loss figure, the government stated:

18  "The loss amount of $565 million is based upon PG&E's own filings with the Securities and

19  Exchange Commission ["SEC"] as to what PG&E has paid to claimants related to the San Bruno

20  explosion."  Opp. to Mot. to Strike, filed 9/5/2014, Dkt. 36 ("MTS Opp."), at 19:23-24.  It also

21  stated:  "The gains alleged in the indictment are taken from PG&E's own submissions to the

22

23

---

24  [3]   Paragraphs 1 through 10 are introductory allegations describing the explosion on Segment
25  180 of Line 132 and background on the enactment and promulgation of statutes and regulations
relating to pipeline safety.  *See* SI ¶¶ 1-10.  Paragraphs 20 through 27 include (a) a summary of
26  the regulations relating to pressure test records; (b) general statements that PG&E learned that it
did not have complete data and that it did not maintain pressure test records for the life of every
gas transmission pipeline; and (c) a description of how PG&E created a Geographic Information
27  System database that it intended to maintain pressure test data.  *See* SI ¶¶ 20-27.  Paragraphs 44
through 46 allege that PG&E had some incorrect or missing data for Segment 180 of Line 132,
28  including that it had no record of a pressure test for that segment.  *See* SI ¶¶ 44-46.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEF.'S MOT. #2:  TO OBTAIN CERTAIN GRAND
JURY TRANSCRIPTS
Case No. CR-14-00175-TEH

1   [CPUC] as to what PG&E plans to spend to bring its pipeline system in compliance with federal

2   regulations."  MTS Opp. at 19:25-27.

3         Finding nothing in the government's discovery to substantiate those figures, on

4   March 31, 2015, the defense again asked the government about the loss and gain calculations

5   and, additionally, requested grand jury transcripts relevant to these allegations.  Valco Decl.

6   Ex. 21.  On April 3, the government again declined to give PG&E any specifics and simply

7   stated that it had provided discovery with respect to the Alternative Fines Act, and that it would

8   provide "any relevant grand jury transcripts when [it] provide[s] prior statements of agents."

9   Valco Decl. Ex. 22.  (It has indicated that it will provide those statements sometime in October.)

10   **D.**    **Other Discovery and Procedural History**

11         On April 24, 2014, this Court granted the government's request for an order allowing the

12   production of grand jury transcripts and related exhibits of "all former and current PG&E

13   employees who testified in the grand jury during the course of the investigation."  Order re Mot.

14   to Authorize Disclosure, Dkt. 13, at 2.  The government has represented that it has produced all

15   of grand jury transcripts of PG&E's employees and former employees that testified during

16   investigation of this case.  Valco Decl. ¶ 50, Ex. 24.  The government has not produced any

17   additional grand jury transcripts.  On January 12, the government told the Court that it has

18   completed production consistent with its Rule 16 and *Brady* obligations.[4]  Valco Decl. Ex. 47.

19         On April 10, 2015, PG&E again asked the government to produce transcripts of its

20   agents' testimony and statements before the grand jury.  Valco Decl. Ex. 23.  On April 17, the

21   government responded that it would produce prior statements of trial witnesses in October

22   2015—five months before the trial begins, and long after discovery and pre-trial motions are due.

23   Valco Decl. Ex. 24.

24

25

---

26   [4]   As set forth in detail in the concurrently filed motion for Rule 16 and *Brady* material, that
production is incomplete in several respects and the government has not, in fact, complied with

27   its discovery obligations under Rule 16 or *Brady*.  The government appears to concede as much,
stating in a April 17, 2015 letter that it "intends" to comply with those obligations by some

28   undisclosed date.  Valco Decl. Ex. 24.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEF.'S MOT. #2:  TO OBTAIN CERTAIN GRAND
JURY TRANSCRIPTS
Case No. CR-14-00175-TEH

### III.   DISCUSSION

Throughout this Nation's history, the grand jury "has been regarded as a primary security to the innocent against hasty, malicious and oppressive persecution; it serves the invaluable function in our society of standing between the accuser and the accused . . . to determine whether a charge is founded upon reason or was dictated by an intimidating power or by malice and personal ill will." *United States v. Caruto*, 663 F.3d 394, 398 (9th Cir. 2011) (quoting *United States v. Marcucci*, 299 F.3d 1156, 1161 (9th Cir. 2002)).  The Grand Jury Clause "presupposes an investigative body acting independently of either prosecuting attorney or judge," *id.* (quoting *United States v. Dionisio*, 410 U.S. 1, 16 (1973)), whose responsibilities "include both the determination whether there is probable cause to believe a crime has been committed and the protection of citizens against unfounded criminal prosecutions." *United States v. Samango,* 607 F.2d 877, 882 (9th Cir. 1979).  To ensure that "the independence of the grand jury in performing its historical function is" not "substantially infringed," *Caruto*, 663 F.3d at 398, and that "the grand jury is [able] to accomplish" both of its "essential functions," *Samango*, 607 F.2d at 882, it is essential that the grand jury remain both "independent and informed." *Wood v. Georgia*, 370 U.S. 375, 390 (1970).

### A.   Governing Legal Principles

Although grand jury proceedings are generally secret in nature, that rule is by no means "absolute." *U.S. Indus., Inc. v. U.S. Dist. Ct.,* 345 F.2d 18, 22 (9th Cir. 1965).  In certain circumstances, "justice . . . demand[s]" that portions of grand jury transcripts be made available to a criminal defendant. *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 219-20 (1979); *United States v. Fowlie*, 24 F.3d 1059, 1065 n.5 (9th Cir. 1994).  Federal Rule of Criminal Procedure 6(e)(3)(E) expressly authorizes disclosure of "matters occurring before the grand jury . . . where the court so directs." *U.S. Indus.*, 345 F.2d at 22.

Rule 6(e)(3)(E)(ii), in particular, provides that a court "may authorize disclosure . . . at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii); *Fowlie*, 24 F.3d at 1065-66; *West v. United States*, No. 08-cr-669, 2010 U.S. Dist. LEXIS 33315, at *9-16, (N.D.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEF.'S MOT. #2:  TO OBTAIN CERTAIN GRAND
JURY TRANSCRIPTS
Case No. CR-14-00175-TEH

1    Ill. Apr. 5, 2010).  An indictment may be dismissed for errors in grand jury proceedings when

2    they result in actual prejudice to the defendant, *i.e.*, when the "'violation substantially influenced

3    the grand jury's decision to indict,' or [when] there is 'grave doubt' that the decision to indict

4    was free from the substantial influence of such violations." *United States v. Larrazolo*, 869 F.2d

5    1354, 1358 (9th Cir. 1989) (quoting *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256

6    (1988)).  In other words, a court may dismiss an indictment when the grand jury's independence

7    was undermined so that "it could not make an informed and unbiased determination of probable

8    cause." *Larrazolo*, 869 F.2d at 1359.

9            Various grounds may exist to dismiss an indictment because of a matter that occurred

10   before the grand jury including, for example:  (i) that the prosecutor provided erroneous or

11   misleading legal instructions to the grand jury, *see, e.g.*, *United States v. Stevens*, 771 F. Supp.

12   2d 556, 566-68 (D. Md. 2011) (dismissing indictment for erroneous instruction to grand jury

13   about advice of counsel defense); *United States v. Peralta*, 763 F. Supp. 14, 21 (S.D.N.Y. 1991)

14   (possibly erroneous and misleading legal instructions, among other things, amounted to

15   "prosecutorial impairment of the grand jury's independent role" and required dismissal);[5] (ii) that

16   the prosecutor or a government agent misrepresented facts or provided misleading evidence, *see,*

17   *e.g., Samango*, 607 F.2d at 882-85 (affirming dismissal of indictment because of prejudice

18   caused by presentation of misleading testimony to grand jury);[6] and/or (iii) a prosecutor's

19   _____

20   [5]   *See also United States v. Twersky*, 92 Cr. 1082, 1994 U.S. Dist. LEXIS 8744, at *15
     (S.D.N.Y. June 29, 1994) ("[A]n instruction may be so misleading due to mistakes or omissions,
21   that the ensuing indictment will not be permitted to stand even though it is supported by legally
     sufficient evidence"); *United States v. Peralta*, 763 F. Supp. 14, 21 (S.D.N.Y. 1991) (possibly
22   erroneous and misleading legal instructions, among other things, amounted to "prosecutorial
     impairment of the grand jury's independent role" and required dismissal); *United States v. Sun*
23   *Myung Moon*, 532 F. Supp. 1360, 1364-65 (S.D.N.Y. 1982) (court has power to review for
     dismissal or disclosure of prosecutor's instructions to determine whether grand jury was misled
24   as to applicable law); *cf. United States v. Tam Ho*, No. 08-00337, 2009 U.S. Dist. LEXIS 73763,
     at *1-2, 6-7 (D. Haw. Aug. 20, 2009) (granting *in camera* review of government instructions to
25   grand jury because court could not "rule out that the government did not properly instruct the
     grand jury" regarding an element of the offense).

26   [6]   *See also United States v. Hogan*, 712 F.2d 757, 761-62 (2d Cir. 1983) (reversing conviction
     because of prejudice caused by misleading statements and false or misleading testimony to the
27   grand jury); *United States v. Basurto*, 497 F.2d 781, 786-87 (9th Cir. 1974) (reversing conviction
     when indictment obtained on the basis of false testimony presented by government to grand
28   jury); *United States v. Vetere*, 663 F. Supp. 381, 386-87 (S.D.N.Y. 1987) (dismissing indictment

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEF.'S MOT. #2:  TO OBTAIN CERTAIN GRAND
JURY TRANSCRIPTS
Case No. CR-14-00175-TEH

1    comments to the grand jury about meeting a deadline to indict, *see, e.g., id.* at 879, 881-83

2    (dismissing indictment because prosecutor left 1,000 pages of transcripts and a prepared

3    superseding indictment with a third grand jury and informed it of an eight-day deadline to

4    indict).

5          Generally speaking, a party seeking disclosure of grand jury transcripts under Rule

6    6(e)(3)(E)(ii) must demonstrate "that a 'particularized need' exists that outweighs the policy of

7    grand jury secrecy." *United States v. Murray*, 751 F.2d 1528, 1533 (9th Cir. 1985).  The district

8    court may "lift[] the secrecy of grand jury proceedings" when "the desired material will avoid a

9    possible injustice" and "the need for disclosure is greater than the need for continued secrecy."

10   *United States v. Plummer*, 941 F.2d 799, 806 (9th Cir. 1991).  In doing so, however, the court

11   should only disclose "relevant parts of the transcript." *Id.*  "As the considerations justifying

12   secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser

13   burden in showing justification." *Petrol Stops Nw. v. Continental Oil Co.*, 647 F.2d 1005, 1008

14   (9th Cir. 1981) (quoting *Douglas Oil*, 441 U.S. at 223).  "When the defense shows a

15   particularized need for grand jury transcripts that outweighs the need for secrecy, the trial

16   judge's function is reduced to eliminating only extraneous material or issuing protective orders

17   in unusual situations." *Plummer*, 941 F.2d at 806.

18   **B.    The Court May Grant Disclosure of the Legal Instructions Given to the
19           Grand Jury Without A Showing Of Particularized Need**

20         The legal instructions given to the grand jury (or juries) here are critical to evaluating

21   whether PG&E was fairly charged.  The Court may order them to be disclosed without any

22   further showing of particularized need.  Although the "[t]he proceedings before the grand jury

23   are secret, . . . the ground rules by which the grand jury conducts those proceedings are not."

24   *United States v. Alter*, 482 F.2d 1016, 1029 n.21 (9th Cir. 1973).  Because "such grounds rules

25   are not secret," and "because their disclosure would not reveal the substance or essence of the

26   grand jury proceedings," courts within the Ninth Circuit have held that instructions given to the

27
28   after guilty verdict because of prejudice caused by presentation of false or misleading facts to the
     grand jury).

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEF.'S MOT. #2:  TO OBTAIN CERTAIN GRAND
JURY TRANSCRIPTS
Case No. CR-14-00175-TEH

1    grand jury "do not fall within the bar of Rule 6(e)," and have ordered the government to disclose

2    such instructions to defendants without requiring any additional showing of particularized need.

3    *United States v. Diaz*, 236 F.R.D. 470, 477-78 (N.D. Cal. 2006); *United States v. Talao*, No. 97-

4    0217, 1998 WL 1114043, at *12 (N.D. Cal. Aug. 14, 1998); *see also United States v. Jack*, No.

5    07-0266, 2009 U.S. Dist. LEXIS 133638, at *13 (E.D. Cal. Feb. 20, 2009) (ordering disclosure

6    of "transcript of the instructions and charges to the grand jury" and noting that government did

7    not oppose request); *United States v. Fuentes*, No. 07-0248, 2008 U.S. Dist. LEXIS 50425, at

8    *10 (E.D. Cal. June 24, 2008) (ordering disclosure of same and rejecting government's argument

9    that defendant must show "particularized need").

10          Although some courts have drawn a distinction between the so-called "ground rules" and

11   more specific "legal instructions,"[7] the better view is that any instructions given to the grand jury

12   are subject to disclosure without a showing of particularized need.  In both instances, disclosure

13   does not implicate the secrecy concerns outlined above and would not reveal the substance or

14   essence of any grand jury proceeding.  A Northern District of California case very recently held

15   precisely that.  *See United States v. Belton*, No. 14-cr-00030-JST2015, 2015 U.S. Dist. LEXIS

16   52426, at *7-8 (N.D. Cal. Apr. 21, 2015).  In *Belton*, the defendant sought disclosure of the legal

17   instructions given to the grand jury on both the original and the superseding indictment.  *Id.* at

18   *8.  The court rejected the government's argument that "specific legal instructions" should be

19   treated differently for disclosure purposes than the "general instructions that were at issue in

20   *Alter*."  *Id.* Instead, the court explained that "the legal instructions given to the grand jury

21   regarding the charges on which they are deliberating are a part of the 'ground rules' by which the

22   grand jury conducts its proceedings."  *Id.* at *9. The court continued:  "[t]hose instructions do not

23   reveal the substance of the grand jury's deliberative process or other information that would

24   compromise the secrecy that Rule 6 seeks to protect."  *Id.*  Because the reasons for grand jury

25   secrecy did not apply, the court held that the defendant was "entitled to disclosure of these

26

27   [7]   *See, e.g.*, *United States v. Morales*, No. S-05-0443 WBS , 2007 U.S. Dist. LEXIS 18013,
      at *11 (E.D. Cal. Feb. 26, 2007); *United States v. Larson*, No. 07CR304S, 2012 U.S.
28   LEXIS 133250, at *14 (W.D.N.Y. Sept. 18, 2012).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEF.'S MOT. #2:  TO OBTAIN CERTAIN GRAND
JURY TRANSCRIPTS
Case No. CR-14-00175-TEH

1  instructions even without a showing of particularized need." *Id.*  The Court should follow *Belton*

2  and order disclosure of all of the legal instructions given to the grand juries in this case.[8]

3  **C.    Any Continued Need for Secrecy Is Minimal At Best**

4  With respect to witness testimony, the protection provided by Rule 6(e) is meant to serve

5  particular interests:  (a) to promote voluntary testimony by prospective witnesses; (b) to promote

6  full and frank testimony; (c) to prevent those about to be indicted from trying to flee; (d) to

7  prevent those about to be indicted from attempting to influence grand jurors; and (e) to protect

8  persons who are accused and exonerated by the grand jury.  *Douglas Oil Co.*, 441 U.S. at 218-

9  19; *Fowlie*, 24 F.3d at 1065 n.5.  Where the grand jury has already returned an indictment, the

10  considerations weighing in favor of secrecy are less relevant and the threshold for justifying

11  disclosure is correspondingly reduced.  *See Douglas Oil*, 441 U.S. at 223; *United States v.*

12  *Consortium de Realisation S.A.* (*In re Grand Jury*), 117 Fed. Appx. 527, 530 (9th Cir. 2004)

13  (holding that the "district judge . . . properly exercised his discretion in granting disclosure . . . ,

14  in part, because the close of the grand jury investigation mitigated much of the need for

15  continued secrecy"); *United States v. Mahoney*, 495 F. Supp. 1270, 1273, 1276 (E.D. Pa. 1980)

16  ("need for secrecy is greatly reduced [where] grand jury has completed its work and returned an

17  indictment").  The government has represented that it will be proceeding on the existing

18  superseding indictment, so there is no concern that any of the information disclosed will affect a

19  subsequent grand jury in this case.  *See* Valco Decl. Ex. 45 at 3:21-4:1. Accordingly, the interests

20  served by grand jury secrecy are largely absent here.  *See Douglas Oil*, 441 U.S. at 218-19.

21  To be sure, grand jury secrecy may also impact the functioning of future grand juries.

22  *See Douglas Oil*, 441 U.S. at 218-19; *United States v. Dynavac, Inc.*, 6 F.3d 1407, 1412 (9th Cir.

23  1993) ("When the grand jury investigation is already terminated and an indictment has been

24  issued, only 'institutional' concerns are implicated by documentary disclosure.").  But that

25  concern is not meaningfully implicated by the defendant's request.  The government has already

26

27  [8]   To the extent this Court concludes that a showing of particularized need is nevertheless required before disclosing the legal instructions, the arguments set forth in Part D, *infra*, readily

28  satisfy that standard.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

DEF.'S MOT. #2:  TO OBTAIN CERTAIN GRAND
JURY TRANSCRIPTS
Case No. CR-14-00175-TEH

1   produced all grand jury testimony from PG&E witnesses.  Valco Decl. Ex. 24.  And the

2   government told the defense that it *will* produce its agents' grand jury testimony (at least with

3   respect to those who will be testifying at trial), but not until October 2015—after the agreed-

4   upon and court-ordered pre-trial motions deadline.  *Id.*

5        The government, moreover, has not hesitated to disclose information about grand jury

6   matters when it suits its interests.  In opposing defendant's motion to strike and during the

7   hearing on that motion, the government did not rest on the superseding indictment; it elaborated

8   on its legal theories and evidence it previously claimed were grand jury matters.  In these

9   circumstances, ordering timely disclosure of discrete, additional portions of the grand jury

10  transcript record (some of which *will* be disclosed at some point regardless) will have no real

11  impact on grand jury secrecy.

12       More fundamentally, PG&E seeks only disclosure of government agent and attorney

13  statements to the grand jury about the governing law and facts.  There is no reason to fear

14  chilling *government* attorneys and witnesses in future grand jury proceedings.  Indeed, disclosure

15  would have the benefit of encouraging the government to provide the grand jury with the tools it

16  needs to effectuate its constitutional function:  accurate instructions regarding the governing law

17  and evidence that is neither false nor misleading.

18       Finally, any remaining secrecy concerns can be easily mitigated here by issuing a

19  protective order.  *See Plummer*, 941 F.2d at 806 ("when the defense shows a particularized need

20  for grand jury transcripts that outweighs the need for secrecy, the trial judge's function is

21  reduced to eliminating only extraneous material or issuing protective orders[.]"); *see also*

22  *Consortium de Realisation S.A.* (*In re Grand Jury*), 117 Fed. Appx. at 530 (noting that court's

23  order created procedural protections that were structured narrowly enough to limit disclosure of

24  the material needed to prevent unauthorized or overbroad disclosure).

25   **D.   The Particularized Need to Obtain Grand Jury Transcripts Outweighs Any
          Remaining Need for Grand Jury Secrecy**

26

27       The facts alleged (and not alleged) in the indictment, the materials produced in discovery,

28  and the government's pre- and post-indictment statements demonstrate that the government may

LATHAM&WATKINS
ATTORNEYS AT LAW
SAN FRANCISCO

11

DEF.'S MOT. #2:  TO OBTAIN CERTAIN GRAND
JURY TRANSCRIPTS
Case No. CR-14-00175-TEH

1   have misled the grand jury with respect to the charges added in the superseding indictment

2   (namely, obstruction (Count 1), knowing and willful failure to retain pressure test records

3   (Counts 24-28), and the Alternative Fines Act (sentencing allegation)), and that these

4   irregularities likely substantially influenced the grand jury's decision to indict.  The facts here

5   thus demonstrate a particularized need to obtain grand jury transcripts to support a motion to

6   dismiss the indictment based on one or more of the following three grounds:  (i) the prosecution

7   provided erroneous or misleading legal instructions to the grand jury, (ii) the prosecution

8   misrepresented facts or provided misleading evidence to the grand jury, and/or (iii) the

9   prosecution informed the grand jury of a deadline for indictment.

10        The defendant therefore seeks:  (i) any legal instructions to the grand jury, including any

11  questions from the grand jury regarding legal requirements and responses (see Part C, *supra*);

12  (ii) any statements by the prosecution or government agents conveying evidence or argument

13  relating to the identified issues; and (iii) any statements relating to a deadline or timing for the

14  indictment.   Disclosure of relevant portions of the grand jury transcripts is necessary to confirm whether

15  grounds for dismissal on those bases in fact exist.  *See Tam Ho*, 2009 U.S. Dist. LEXIS 73763,

16  at *1-2; *United States v. Wilde*, No. CR-12-0144, 2012 U.S. Dist. LEXIS 111513, at *1-4 (N.D.

17  Cal. Aug. 8, 2012); *Samango*, 607 F.2d at 879, 881-83.

18              1.    **Erroneous or Misleading Instructions or Information Likely**
19                    **Prejudiced the Grand Jury's Decision to Charge Obstruction**

20        Count One charges PG&E with obstructing the NTSB investigation into the root cause of

21  the San Bruno explosion.  As the government has conceded, materiality is an essential element of

22  that obstruction charge.  MTS Opp. at 11 ("The obstruction charge will require the government

23  to prove beyond a reasonable doubt . . . that PG&E provided false or misleading information that

24  was material to the NTSB's investigation[.]"); *see United States v. Thomas*, 612 F.3d 1107,

25  1128-29 (9th Cir. 2010).[9]

26  _____

27  [9]   Although *Thomas* and some of the other cases cited below (such as the en banc Ninth
    Circuit's recent decision in *Bonds*) were decided under a different obstruction statute than the
    one charged here, the language is similar and cases "interpreting section 1503 are relevant to
28  construction of section 1505."  *United States v. Laurins*, 857 F.2d 529, 536 (9th Cir. 1988).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

DEF.'S MOT. #2:  TO OBTAIN CERTAIN GRAND
JURY TRANSCRIPTS
Case No. CR-14-00175-TEH

1       Based on the language and timing of the superseding indictment, as well as the evidence

2   produced in discovery, there are compelling reasons to think that the prosecution (1) misstated

3   the legal standard for proving that a defendant corruptly obstructed an investigation by either

4   omitting the materiality element entirely or describing it incorrectly, or (2) misled the grand jury

5   about the context and substance of the NTSB's requests to PG&E and/or the connection between

6   the NTSB investigation and the information PG&E allegedly failed to disclose.

7       The language of the superseding indictment itself strongly suggests that the grand jury

8   was misled with respect to the materiality element of the obstruction offense and may well have

9   been unaware that such an essential element even existed.  It contains *no* allegations regarding

10  materiality.  It does not allege that the purportedly obstructive "omissions" in PG&E's April 6,

11  2011 letter were "material" to the NTSB investigation.  And it does not include any facts that

12  would support such an allegation.  For example, the indictment does not allege that the NTSB

13  sent any follow-up requests regarding PG&E's adherence to a "10%" practice (the NTSB did

14  not), nor does it allege that the NTSB's ultimate findings about the rupture in San Bruno were in

15  any way influenced—or even capable of being influenced—by what PG&E allegedly "did not

16  disclose."  Indeed, nothing in the indictment connects the draft language in RMI-06 or the

17  supposedly undisclosed practices of PG&E's IM group to the segment of Line 132 that ruptured

18  in San Bruno.

19      The conclusions to be drawn from the indictment's telling silence are further confirmed

20  by the discovery the government has provided to the defense.  The materials produced to date are

21  devoid of any evidence indicating that the NTSB was even remotely focused on the purported

22  "omissions" in PG&E's April 6, 2011 response letter.  To the contrary, memoranda of interviews

23  that the government conducted in mid-July 2014 of members of the NTSB San Bruno

24  investigation team confirm that they did not focus on the 10% question at the time of the

25  investigation and that they did not follow-up with PG&E about the April 6, 2011 letter.  Valco

26  Decl. Exs. 49-51.  Indeed, the allegedly "omitted" information was not even within the scope of

27  the NTSB data request.  Although not alleged in the indictment, the request to which PG&E was

28  responding asked for "*all policies, standards, procedures*, etc. related to PG&E's practice of

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

DEF.'S MOT. #2:  TO OBTAIN CERTAIN GRAND
JURY TRANSCRIPTS
Case No. CR-14-00175-TEH

1    reestablishing MAOP on its pipelines." Valco Decl. Ex. 40 (emphasis added). The NTSB did

2    not request information about PG&E's draft policies, unapproved "practices," or understandings

3    about whether its practices or draft policies violated the applicable regulations. It is difficult to

4    conceive of how PG&E's response could have the natural and probable consequence of

5    influencing the NTSB investigation if the NTSB *itself* was neither seeking nor focused on the

6    alleged omissions.

7            The recent guidance about the materiality requirement in *Bonds* only serves to raise

8    additional concerns about how (or if) the prosecution presented the materiality instructions

9    and/or the evidence to the grand jury. The allegedly misleading omissions involved a single

10   response to one of more than 550 data responses issued by NTSB to PG&E. *See Bonds*, 2015

11   WL 1842752, at *7 (Smith, J., concurring) ("The Government may not isolate a single statement,

12   prove it misleading or evasive, and argue that the statement is material based solely on that

13   fact."); *id.* at *6, 8 ("Applying the materiality standard a single truthful but evasive or misleading

14   statement can never be material."); *cf. id.* at *5 (Kozinski, J., concurring) ("Because some non-

15   responsive answers are among the road hazards of witness examination, any one such statement

16   is not, standing alone, 'capable of influencing . . . the decision of [a] decisionmaking body.'")

17   (citation omitted). The NTSB never asked any follow-up questions or requested clarification of

18   that particular response. *Id.* at *7 (Smith, J. concurring) ("The 'natural and probable effect' of a

19   single truthful but evasive or misleading statement is merely to prompt follow-up questions.").

20           In light of these circumstances, there are compelling reasons to believe that the grand jury

21   was misled as to the law or facts or both and that, absent such misleading statements, the grand

22   jury would not have returned an indictment for obstruction. The Court should order the

23   government to disclose all legal instructions relating to the obstruction count, and all prosecution

24   or government agent statements or testimony related to the same.

25

26

27

28

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

14

DEF.'S MOT. #2: TO OBTAIN CERTAIN GRAND
JURY TRANSCRIPTS
Case No. CR-14-00175-TEH

2.      **Erroneous or Misleading Instructions or Information Likely Prejudiced the Grand Jury's Decision to Charge Violations of Pressure Test Record Regulations**

Counts 24 through 28 charge PG&E with knowingly and willfully failing to retain pressure test records for unspecified segments on five of its pipelines.  To prove that charge, the government must establish that:  (i) the defendant is an "operator" under the pipeline safety regulations; (ii) (a) a pressure test was required by 49 C.F.R. §§ 192.505 or 192.507,[10] and (b) a pressure test was performed; (iii) the defendant created a pressure test record with certain required information; (iv) the defendant failed to retain that record for the useful life of the pipeline; and (v) the defendant did so knowingly and willfully.  *See* 49 C.F.R. § 192.517(a); 18 U.S.C. § 60123.[11]

Based on the language of the superseding indictment, as well as the government's pre-indictment statements, there are compelling reasons to think that the prosecution (1) misstated the elements or legal standards for proving that a defendant knowingly and willfully failed to retain such a record, (2) misled the grand jury about the state of PG&E's records and/or any conduct that may have resulted in the failure to retain records, or (3) rushed the grand jury to indict.

*First*, the language of the superseding indictment itself strongly suggests that the grand jury was misled with respect to the elements of the offense.  The superseding indictment contains *no* factual (or other) allegations concerning whether a pressure test was required for segments of the charged pipelines, whether a pressure test was ever performed for those segments, whether (if performed) a pressure test record was created, or whether a record that was created was knowingly and willfully discarded or destroyed.  Indeed, the only allegation asserting the absence of a pressure test record for any specific segment is for Segment 180 of Line 132.  SI

---

[10]   A pressure test is only required by Sections 192.505 and 192.507 if the segment was installed after 1970, when the regulations were first issued.  Segments installed before 1970 are subject to a grandfather clause.  49 C.F.R. § 192.619.

[11]   Section 192.517(a) also prohibits the failure to create a pressure test record, but the government has only charged PG&E with failing to "retain" such a record.  SI ¶ 75.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

DEF.'S MOT. #2:  TO OBTAIN CERTAIN GRAND
JURY TRANSCRIPTS
Case No. CR-14-00175-TEH

¶ 45.  But the indictment also alleges that PG&E installed Segment 180 in 1956 (SI ¶ 43).  That was 14 years before the enactment of Sections 192.505, 192.507, or 192.517, and at a time when pressure tests (let alone the maintenance of pressure test records) were not required.  *See* note 10, *supra*.

*Second*, the government made statements in the weeks before the superseding indictment suggesting that it was relying primarily on one document to support these charges:  a summary spreadsheet prepared by PG&E in August 2012 containing information about portions of pipelines for which PG&E was still searching for pressure test records.  *See*, *e.g.*, Valco Decl. Exs. 5, 8, 10.

The government plainly recognized that the August 2012 list was outdated by the time it was presenting evidence to the grand jury.  On June 16, 2014, the government served a subpoena on PG&E requesting it, in essence, to update the August 2012 list.  Valco Decl. Exs. 6, 42, 43.  Referring to this nearly two-year old spreadsheet, the subpoena sought any pressure test records that had since been located for the identified segments and testimony from a custodian of records.  *Id.*  In a follow-up letter, the government explained that it had subpoenaed those records because "[o]bviously . . . [it] would not want to charge PG&E for any records that it was actually able to locate."  Valco Decl. Ex. 8.  On July 9, 2014, PG&E produced the requested pressure test records—nearly 8,500 pages.  Valco Decl. Ex. 9.

Then, two weeks before presenting the superseding indictment to the grand jury, the government told PG&E that it was unable to "decipher" the thousands of pages of additional pressure test records that PG&E produced and could not tell "which, if any, of the strength test pressure records actually correspond to pipeline segments on the list that was attached to the subpoena."  Valco Decl. Ex. 10.  The government also requested attorney work product identifying the pipeline segment to which the documents pertained or, alternatively, a corporate representative witness to explain the thousands of pages.  *Id.*  PG&E objected to both requests.  Valco Decl. Ex. 11.  PG&E received no response to its letter, and no PG&E witness testified to the grand jury about the pressure test records produced on July 9.  Valco Decl. ¶ 15.  Accordingly, as of the date of the superseding indictment, the government had not spoken to any

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

DEF.'S MOT. #2:  TO OBTAIN CERTAIN GRAND
JURY TRANSCRIPTS
Case No. CR-14-00175-TEH

1    PG&E witnesses about the 8,500 pages of supplemental pressure test records that it complained

2    it could not decipher.  Apparently undeterred by any need to determine whether the missing

3    records had in fact been located (let alone whether they were required or created in the first

4    place), the government proceeded to seek charges against PG&E.  One session later, the grand

5    jury returned the superseding indictment.

6        *Third*, the pressure test records list itself provides no information that would allow the

7    grand jury to conclude that any PG&E employee had the requisite knowing and willful intent to

8    destroy or discard a previously created pressure test record.  The list (at best) documents the bare

9    absence of particular records; it does not speak to *why* the pressure test record does not exist or

10    even whether it was created in the first place.  The following scenarios are equally possible for

11    any given segment on the list:  (1) a pressure test never occurred; (2) a test occurred but a record

12    was never made; or (3) a record was made but was inadvertently or negligently lost over time.

13    None of these factual scenarios would support a knowing and willful failure to retain a record of

14    a required pressure test.

15        In these circumstances, it is more than likely that the grand jury was given erroneous or

16    misleading legal instructions regarding the elements of the offense, misled regarding the

17    evidence supporting such charges (including the content and accuracy of the 2012 list), and/or

18    not given adequate time or information to examine the significant amount of technical data

19    dumped in its lap at the last minute.  Absent misleading statements to the grand jury about the

20    law or facts, it is probable the grand jury would not have indicted these counts.

21        3.    **Erroneous or Misleading Instructions or Information Likely**
22            **Prejudiced the Grand Jury's Decision to Charge an Alternative Fine**

23        Imposing an enhanced fine under the AFA requires the government to prove, and the jury

24    to find beyond a reasonable doubt, facts establishing that (i) *the charged offenses* were the

25    proximate cause of (ii) a *pecuniary* gain or loss.  *United States v. Sanford Ltd.*, 878 F. Supp. 2d

26    137, 146-53 (D.D.C. 2012); *United States v. BP Prods. N. Am. Inc.*, 610 F. Supp. 2d 655, 683,

27    688 (S.D. Tex. 2009) (rejecting arguments that but-for causation alone or non-pecuniary gains or

28    losses can support an enhanced fine under the AFA).  The superseding indictment alleges that

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

DEF.'S MOT. #2:  TO OBTAIN CERTAIN GRAND
JURY TRANSCRIPTS
Case No. CR-14-00175-TEH

1   PG&E "derived gross gains of approximately $281 million, and the victims suffered losses of

2   approximately $565 million."  SI ¶ 76.  Presumably, then, *someone* testified before the grand

3   jury regarding both of those figures and the grand jury received legal instructions to the effect

4   that both figures (however calculated) were properly considered "gains" and "losses" under the

5   AFA.  Based on the language of the superseding indictment, as well as the government's post-

6   indictment statements, there are compelling reasons here too to believe that the prosecution

7   (1) misstated the legal standard for proving a pecuniary gain or loss caused by the charged

8   conduct, or (2) misled the grand jury about the nature of the gains or losses that form the basis of

9   the figures alleged.

10                              *a.       $565 Million in Losses*

11          The indictment itself contains virtually no information about the allegation that victims

12   suffered $565 million in losses as a proximate result of the charges.  In Paragraph 5, it describes

13   the casualties and damage caused by the San Bruno explosion, but no other allegations describe

14   the nature of the losses that comprise the $565 million calculation.

15          Since the indictment, the government has represented that the alleged $565 million in

16   losses is based on the amount PG&E reported to the SEC that it would pay claimants related to

17   the San Bruno explosion.  MTS Opp. at 19.  PG&E's SEC disclosure states, in relevant part, that

18   PG&E recorded cumulative charges of $565 million as an estimate of probable loss for third-

19   party claims, including "various lawsuits . . . seek[ing] compensation for personal injury and

20   property damage, and other relief, including punitive damages."  Valco Decl. Ex. 44 at 28.

21          But civil tort settlements, by their nature, are not pecuniary losses.  Indeed, civil tort

22   settlements are not an appropriate measure for AFA losses because, among other reasons, they

23   compensate for non-pecuniary harm, like pain and suffering, emotional distress, and punitive

24   damages.  *See BP Prods.*, 610 F. Supp. 2d at 702-03 (holding that aggregate civil settlement

25   amount could not constitute "gross loss" for AFA purposes because "[s]uch settlements are just

26   that—settlements—and they include non-pecuniary damages such as pain and suffering,

27   emotional distress, loss of consortium, and punitive damages").  So too here:  the $565 million

28   that PG&E reported in its SEC filings plainly includes payments for alleged non-pecuniary harm.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

DEF.'S MOT. #2:  TO OBTAIN CERTAIN GRAND
JURY TRANSCRIPTS
Case No. CR-14-00175-TEH

The civil plaintiffs sought damages for pain and suffering, emotional distress, loss of consortium, and punitive damages.  *See* Valco Decl. Ex. 44 ($565 million included "compensation for personal injury and property damage, *and other relief*, *including punitive damages*") (emphasis added).  Thus, the $565 million that PG&E has paid is necessarily higher than any measure of actual pecuniary loss caused by the charged violations of pipeline regulations.

For this $565 million to form the basis for the AFA allegation in the indictment, one or both of the following likely occurred:  (i) the government improperly instructed the grand jury that non-pecuniary harms can form the basis of a calculation of losses for purposes of the AFA or omitted the pecuniary harm requirement altogether, or (ii) the government or its agents misrepresented to the grand jury the harms for which the $565 million in settlement payments were intended as compensation.

b.    *$281 Million in Gains*

The indictment contains even less information about the allegation that PG&E "gained" $281 million with respect to the charges.  According to the government's argument opposing the defendant's motion to strike, the $281 million is the amount that PG&E is now spending to bring "its *pipeline system* in compliance" with an unidentified set of regulations.  MTS Opp. at 19 (emphasis added).  That is not a proper measure of gains proximately caused by the charged offenses for two reasons:  (i) it includes amounts expended to bring PG&E into compliance with regulations not charged in the indictment, and (ii) it includes amounts expended on pipelines that are part of the larger "pipeline system" but that are not the subject of any of the charges in the indictment.

Gains supporting an alternative maximum fine must be confined to those proximately resulting from the charged conduct.  *See BP Products*, 610 F. Supp. 2d at 699 (holding that alternative fine cannot be based on the refinery's profits because "the victims have not identified a factual or legal basis for finding that all of BP Product's profits from the Texas City refinery for the fourteen months—or six years—preceding the accident were derived from the offense"); *Sanford*, 878 F. Supp. 2d at 147 (holding that alternative fine cannot be based on gross revenue from fishing efforts on the ship at issue because the gross gain derived "from [the defendant's]

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

DEF.'S MOT. #2:  TO OBTAIN CERTAIN GRAND
JURY TRANSCRIPTS
Case No. CR-14-00175-TEH

1  crimes is a measure that is less than gross revenue[;] . . . the government may not present

2  evidence of the . . . gross revenue figure in a vacuum for the purpose of establishing 'gross

3  gain'").  Money that PG&E is spending on charged pipelines to bring them into compliance with

4  uncharged regulations, or on pipelines not included in the indictment at all, cannot serve as the

5  basis for calculating an alternative fine.

6          Moreover, despite its best efforts, PG&E has been unable to determine the source of this

7  $281 million gain figure, and the government has refused to say any more about it except to say

8  it is in the discovery.  The defense has reviewed that discovery;  in none of these documents does

9  PG&E indicate that it plans to spend approximately $281 million "to bring its pipeline system in

10 compliance with the federal regulations."  MTS Opp. at 19.

11         Accordingly, for this $281 million to form the basis for the AFA allegation in the

12 indictment, one or both of the following likely occurred:  (i) the government did not properly

13 instruct the grand jury regarding what kinds of gains can form the basis of an alternative fine

14 allegation, or (ii) mischaracterized the amount that PG&E has projected to spend on improving

15 the pipelines charged in the indictment to purportedly bring them into compliance with the

16 charged regulations.

17         **E.     The Request Is Narrowly Tailored to Cover Only Necessary Materials**

18         PG&E limits its request to the materials necessary to assess whether grand jury

19 irregularities occurred in the government's presentation of the law and evidence regarding the

20 topics raised in this motion.  As detailed above, this includes all legal instructions given to the

21 grand jury (including responses to grand jury questions regarding legal issues); all statements

22 and testimony by the prosecution and its agents regarding obstruction (Count 1), pressure test

23 recordkeeping (Counts 24-28), and the AFA allegations (sentencing allegations); and all

24 statements regarding any deadline or other timing requirement with respect to when the

25 superseding indictment should issue.  There is no more narrowly tailored option to ensure that

26 the Grand Jury Clause has been complied with in this case.

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

DEF.'S MOT. #2:  TO OBTAIN CERTAIN GRAND
JURY TRANSCRIPTS
Case No. CR-14-00175-TEH

**F.     The Court Should Order Disclosure of Records of the Start and End of Any Grand Juries that Have Investigated PG&E**

The government first informed PG&E that it was under investigation in 2011. It appears, therefore, that more than one grand jury was involved in the investigation that led to these charges.  The defense has also asked for records documenting the start and end of any of the grand juries that have investigated the company.  We requested these materials from the government on April 22, 2015, but have not yet received a response.  Valco Decl. Ex. 26. Although we are hopeful that the government will voluntarily provide these ministerial records in the ensuing weeks, we did not want today's filing deadline to go by without formalizing its request.

Under the common-law right of access to public records, PG&E is entitled to production of certain ministerial records.  *See In re Special Grand Jury (Anchorage, Alaska)*, 674 F.2d 778, 780-81 (9th Cir. 1982).  PG&E seeks orders or records concerning the identification, commencement, extension, and termination of any grand juries that have investigated PG&E. Ministerial records with this information, such as orders reflecting the beginning terms and extension of the terms of the grand juries, relate only to the procedural aspects of their impaneling and operation and do not reveal the substance or essence of the grand juries' investigation or deliberations.  *See id.* at 781; *Fuentes*, 2008 U.S. Dist. LEXIS 50425, at *4-8; *United States v. Thomas*, 545 F. Supp. 2d 1018, 1026 (N.D. Cal. 2008); *Diaz*, 236 F.R.D. at 476, 478-79.  Thus, they are not covered by the general rule of grand jury secrecy and are properly subject to disclosure.  *Id.*

## II.     CONCLUSION

Based on the above, PG&E respectfully asks the Court to grant its narrowly tailored request to obtain grand jury transcripts evidencing any government testimony, argument, or legal instructions as set forth in the proposed order.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

DEF.'S MOT. #2:  TO OBTAIN CERTAIN GRAND
JURY TRANSCRIPTS
Case No. CR-14-00175-TEH

1    Dated:  April 27, 2015                    Respectfully submitted,

2                                          By _____/s/_____

3                                             Steven M. Bauer
                                             Margaret A. Tough
4                                             LATHAM & WATKINS LLP
                                             505 Montgomery Street, Suite 2000
5                                             San Francisco, CA 94111-6538
                                             Tel.: +1.415.391.0600
6                                             Fax: +1.415.395.8095

7                                             Kate Dyer
                                             CLARENCE, DYER & COHEN LLP
8                                             899 Ellis Street
                                             San Francisco, California  94109-7807
9                                             Telephone:  +1.415.749.1800
                                             Facsimile:  +1.415.749.1694

10                                            *Attorneys for Defendant*
11                                            *Pacific Gas and Electric Company*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22

DEF.'S MOT. #2:  TO OBTAIN CERTAIN GRAND
JURY TRANSCRIPTS
Case No. CR-14-00175-TEH