# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>　　　　　Defendant. | Case No. 14-cr-00175-TEH<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S DISCOVERY MOTIONS** |

This matter comes before the Court on Defendant Pacific Gas & Electric ("PG&E")'s motions to compel disclosure of various discovery materials. The Court heard oral argument on June 1, 2015, after which the parties submitted supplemental briefing and declarations. After carefully considering the parties' written and oral arguments, the Court now GRANTS IN PART and DENIES IN PART Defendant's motions, for the reasons set forth below.

## BACKGROUND

On September 9, 2010, a gas line owned and operated by PG&E ruptured, causing a fire that killed eight people and injured 58 others. Additionally, the fire damaged 108 homes, thirty-eight of which were completely destroyed. Ind. ¶ 5 (Docket No. 22). On April 1, 2014, a grand jury returned a twelve-count indictment against PG&E for violating the Natural Gas Pipeline Safety Act ("Pipeline Safety Act"). (Docket No. 1). In July of 2014, a grand jury returned a superseding indictment (the "Indictment") charging PG&E with twenty-seven counts of violating the Pipeline Safety Act and one count of obstructing the Government's investigation of the explosion. The Government also seeks a fine exceeding the statutory maximum for these offenses under the Alternative Fines Act. Ind. ¶ 23.

The National Transportation Safety Board ("NTSB") began an investigation the day

of the explosion, examining the cause of the explosion, the characteristics and history of the failed pipeline, the adequacy of PG&E's emergency response, and PG&E's operations. *Id.* ¶ 54. The investigation allegedly revealed a number of deficiencies in PG&E's record keeping, integrity management program, and maintenance practices as they related to various sections of the pipeline, including Line 132, the line that ruptured – all alleged violations of the Pipeline Safety Act. *Id.*

As a natural gas pipeline operator, PG&E is subject to both state and federal regulations. The relevant federal regulations were enacted and are enforced by the Pipeline and Hazardous Materials Safety Administration ("PHMSA"). *Id.* ¶ 9. At the state level, PG&E is regulated by the California Public Utilities Commission ("CPUC"). *See id.* ¶ 23. The Government obtained materials from both agencies in the course of its investigation of PG&E, and may rely on them in its case in chief at trial. *E.g.*, June 27, 2014 Letter from Kim A. Berger to Steven M. Bauer, Ex. 7 to Valco Decl. at 2 (Docket No. 72-7). Both agencies regulate other pipeline operators in addition to PG&E. *E.g.*, Mayberry Decl. at 2 (Docket No. 98-2).

For the purpose of determining the maximum alternative fine pursuant to Title 18, United States Code, Section 3571(d) (the "Alternative Fines Act"), the Indictment also alleged that PG&E derived gross gains of approximately $281 million, and the victims suffered losses of approximately $565 million. Ind. ¶ 76.

**LEGAL STANDARDS**

### I. Rule 16 and *Brady* Material

In relevant part, Federal Rule of Criminal Procedure 16(a)(1)(E) requires the Government to allow a defendant to "inspect and to copy . . . documents, data, [and other items] . . . if the item is within the government's possession, custody or control and: (i) the item is material to preparing the defense; . . . ." "Materiality is a low threshold; it is satisfied so long as 'the information . . . would have helped' [to] prepare a defense. Information is material even if it simply causes a defendant to 'completely abandon' a

planned defense and 'take an entirely different path.'" *United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013) (citation omitted).

The Government has a separate due process obligation to disclose "evidence favorable to an accused . . . [that] is material either to guilt or to punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). "The prosecution's duty to reveal favorable, material information extends to information that is not in the possession of the individual prosecutor trying the case." *Amado v. Gonzalez*, 758 F.3d 1119, 1134 (9th Cir. 2014). "[B]ecause the prosecution is in a unique position to obtain information known to other agents of the government, it may not be excused from disclosing what it does not know but could have learned." *Id.* However, the federal Government "is not obligated to review state law enforcement files not within its possession or control." *United States v. Dominguez-Villa*, 954 F.2d 562, 566 (9th Cir. 1992). Furthermore, the Government's *Brady* obligation is a "self-executing responsibility on the part of the prosecutor. . . . [T]here is no need for a court order to require compliance with *Brady*[]." *United States v. Flores*, No. 08-0730-WHA, 2011 WL 1100137, at *1 (N.D. Cal. Mar. 24, 2011); *see also United States v. Jennings*, 960 F.2d 1488, 1491-92 (9th Cir. 1992) (admonishing courts to avoid interfering with executive branch's *Brady* obligations unless there is "a clear basis in law or fact to believe that [interference is] necessary . . . .").

## II.  Grand Jury Material

Federal Rule of Criminal Procedure 6(e)(2)(B) imposes a general rule that certain parties, including attorneys for the Government, "must not disclose a matter occurring before the grand jury." However, Rule 6(e)(3)(E)(ii) allows the court to order disclosure of a grand jury matter "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." "Parties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured

to cover only material so needed." *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 222 (1979). For non-ministerial grand jury materials, the defendant must show a "particularized need" for disclosure, such as specific facts constituting prosecutorial misconduct; "mere speculation" is not enough. *United States v. Ferreboeuf*, 632 F.2d 832, 835 (9th Cir. 1980); *United States v. Diaz*, 236 F.R.D. 470, 480 (N.D. Cal. 2006).

## III.     Rule 404(b) Other Acts Evidence

Federal Rule of Evidence 404(b) provides for the admissibility of a "crime, wrong, or other act" for limited purposes. "On request by a defendant in a criminal case, the prosecutor must: (A) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and (B) do so before trial . . . ." *Id.* What constitutes reasonable notice "will depend largely on the circumstances of each case." Fed. R. Evid. 404(b) advisory committee's note to 1991 amendment.

## DISCUSSION

PG&E brings four discovery motions seeking production of a wide range of evidence. Much of this evidence, such as certain investigation materials regarding PG&E from the federal regulatory agencies, was disclosed during the pendency of this motion. Rule 16/*Brady* Opp'n at 6 (Docket No. 78); June 1, 2015 Tr. at 20 (Docket No. 96). However, the Government still disputes its obligation to produce regulatory materials concerning other pipeline operators, materials from the state regulatory agency, and grand jury materials. Rule 16/*Brady* Opp'n at 8-11; Grand Jury Opp'n at 1 (Docket No. 77). Also, the Government stated it will "make notes prepared by agents available for review by the defense for a reasonable time," Witness Notes Opp'n at 1 (Docket No. 80), but PG&E argues that actual production of Bates-numbered pages is appropriate. Witness Notes Reply at 2 (Docket No. 88). Finally, the parties disagree about the date by which the Government should provide notice of the other acts evidence it intends to introduce at trial. *Compare* Other Acts Mot. at 2 (Docket No. 71) (requesting notice by June 15, 2015), *with*

Other Acts Opp'n at 2 (Docket No. 76) (stating intention to provide notice by November 2, 2015). Each of these disputes is discussed in turn, below.

## I.  Evidence Regarding Other Pipeline Operators

PG&E seeks production of agency materials concerning other pipeline operators. The agencies at issue are PHMSA, a division of the U.S. Department of Transportation, and the CPUC, a state regulator. These agencies had regulatory authority over PG&E both before and after the San Bruno explosion. Rule 16/*Brady* Mot. at 9; Rule 16/*Brady* Opp'n at 2. PG&E seeks the following materials from these agencies regarding other pipeline operators:

> Documents from audits of other operators related to the regulations PG&E allegedly violated . . . .
>
> Evidence that other operators engaged in similar actions and were not the subject of any Notice of Proposed Violation, Notice of Amendment, Warning Letter, or Letter of Concern to, nor initiated a federal criminal action against, including instances where the operators objected to such warning or notice and no subsequent corrective action was ultimately taken, or that other operators shared PG&E's opinion on the regulations . . . .
>
> Evidence that exceedances of MOP and MAOP were not the result of willful conduct, were a problem faced by other operators, were the subject of efforts to improve, and/or were disclosed to regulators and consultants . . . .

Proposed Order on Rule 16/*Brady* Mot. at 2, 4, 6 (Docket No. 68-1).

### A.  Rule 16 request

Rule 16 requires the Government to disclose evidence that is "material to preparing the defense . . . ." Fed. R. Crim. P. 16(a)(1)(E)(i). As noted above, "[m]ateriality is a low threshold; it is satisfied so long as 'the information . . . would have helped' [to] prepare a defense." *Hernandez-Meza*, 720 F.3d at 768.

Although Rule 16 creates a "broad right to discovery," *United States v. Stever*, 603 F.3d 747, 752 (9th Cir. 2010), the right is not unlimited, and courts will scrutinize the

materiality of the requested evidence more closely when it appears that production would impose an undue burden on the Government. *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990). In *Mandel*, a case about illegal exports, the district court ordered the production of "all records of the Department of Commerce relied upon by the Secretary of Commerce in promulgating commodity control categories 1584A, 1565A, and 1529A as they existed during the years 1982 and 1983," but the Government declined to follow the production order, and the district court excluded from trial all evidence that the commodities at issue were on the export control list. *Id.* at 1218. The court of appeals reversed, holding that the district court abused its discretion by ordering disclosure without making a threshold finding of materiality under Rule 16. *Id.* at 1219. The Ninth Circuit explained that, "[p]articularly where, as here, the government has shown that complying with the request would be unduly burdensome, it is incumbent on the district court to consider the government interests asserted in light of the materiality shown." *Id.*

A government organization's decision not to bring enforcement actions against other individuals in circumstances similar to a defendant's is evidence that the defendant's behavior conformed with the law. *See United States v. Prokop*, No. 09-cr-22-MMD-RJJ, 2012 WL 2375001, at *3 (D. Nev. June 22, 2012). In *Prokop*, a case about tax fraud through software, the district court found that audits of taxpayers who used the defendant's software and claimed certain credits and deductions, and against whom the IRS did not then bring enforcement actions, were material under Rule 16, "because the IRS concluded that the credits and deductions were legitimate," which "tends to show that Defendants' product is not fraudulent." *Id.* However, the court also found that ordering the IRS to review over 65,000 individual tax-years of documents to find all such audits would be "unduly burdensome," and a smaller production of roughly 4,500 tax-years of documents would still provide an appropriate sample size. *Id.* at *7.

Moreover, in some cases the law itself may be so uncertain or debatable that a defendant cannot be said to have willfully violated it, even where the defendant's subjective intent suggests guilt. *E.g.*, *United States v. James*, 366 U.S. 213, 221-222

(1961). In *James*, the Supreme Court reversed a conviction for willfully embezzling funds and failing to report income, where the law had been called into question by earlier Court precedent. 366 U.S. at 222. In partial dissent, Justices Harlan and Frankfurter argued that the case should be remanded for a new trial, rather than reversed outright, because evidence of the defendant's "devious financial arrangements" tended to show concealment, and therefore willful violations. *Id.* at 244. The majority disagreed, ordering reversal outright. *Id.* at 221-22. The Court explained, "the element of willfulness could not be proven . . . so long as the statute contained the gloss placed upon it by [the Court's precedent] at the time the alleged crime was committed. Therefore, we feel that petitioner's conviction may not stand and that the indictment against him must be dismissed." *Id.*

The Ninth Circuit has repeatedly applied this principle, often in the tax prosecution context, where regulatory language may be byzantine or ambiguous. In *United States v. Dahlstrom*, 713 F.2d 1423 (9th Cir. 1983), *cert. denied*, 466 U.S. 980 (1984), the court of appeals reversed convictions for tax offenses where the legality of the defendants' scheme of using foreign trusts as tax shelters was "highly debatable" at the time of their convictions. *Id.* at 1427. "It is settled that when the law is highly debatable, a defendant— actually or imputedly—lacks the requisite intent to violate it." *Id.* at 1428 (quoting *United States v. Critzer*, 498 F.2d 1160, 1162 (4th Cir. 1974)) (ellipses omitted); *see also United States v. George*, 420 F.3d 991, 995 (9th Cir. 2005).[1]

---

[1] In its motion and reply, PG&E argued that the Supreme Court's decision in *Safeco Insurance Company v. Burr*, 551 U.S. 47 (2007), requires the Government to prove that PG&E's interpretations of the regulations were not "objectively unreasonable," in order to prove that PG&E "willfully" violated those regulations. Mot. at 6; Reply at 2, 4, 5. *Safeco* was a civil case in which the Court held that a company could not be found to have acted willfully, which in the civil context of that case included reckless disregard for a statutory duty, where the company's interpretation of the statute was not objectively unreasonable. 551 U.S. at 70. Although *Safeco* was a civil case, and willfulness does not include recklessness as applied to PG&E's criminal prosecution, the Court's reasoning regarding objective reasonableness is applicable to the criminal context in cases where the relevant law is "highly debatable."

1    Here, PG&E argues that the regulations it is alleged to have violated were

2    ambiguous, preventing a finding that any of its employees willfully violated them.  Rule

3    16/*Brady* Mot. at 6.  PG&E's chief example is Title 49 of the Code of Federal Regulations,

4    section 192.917(b), a regulation requiring pipeline operators to gather data on pipeline

5    maintenance from the sources set out in the American Society of Mechanical Engineers'

6    Code for Pressure Piping, B31.8S.  PG&E argues that, even though its engineers attempted

7    to comply with the wide range of data types and sources contained in that code, the code's

8    complexity may preclude a finding of willfulness in this case.  Rule 16/*Brady* Mot. at 6.

9    The question of whether the regulations at issue in this case are so unclear as to

10   preclude a finding of willfulness is not now before the Court.  Rather, the question is

11   whether agency statements regarding these regulations to other pipeline operators, and

12   evidence of other operators' interpretations of these regulations, are material to the

13   preparation of PG&E's defense.  The answer is certainly "yes."

15        **1.    PHMSA**

16   Communications from PHMSA to other operators regarding the regulations at issue

17   could allow PG&E to argue that its interpretations of the regulations were condoned, for

18   example if any PHMSA inspections revealed that other operators shared PG&E's

19   interpretation and PHMSA took no action against them.  Moreover, although it is less

20   probative of the reasonableness of an interpretation, evidence of how other operators

21   interpreted the regulations could also allow PG&E to argue that its own interpretations

22   were reasonable – especially if any other operators supported their interpretations with

23   explanations that would not be obvious to a layperson.

24   Of course, the mere fact that other people engaged in similar conduct does not

25   necessarily prove the reasonableness of that conduct, much less its legality.  Also, it may

26   turn out that the regulations at issue are sufficiently clear that they are only susceptible to

27   the Government's interpretation.  However, at this point in the litigation, evidence of

28   PHMSA's statements and actions regarding other operators, and other operators'

interpretations of the regulations, is material to PG&E's defense, because the clarity of the regulations and the reasonableness of PG&E's interpretations are still at issue.

Having found that PHMSA materials regarding other operators would be material to PG&E's defense, the Court now considers whether production of all such materials would be unduly burdensome. Although the Government submitted no evidence regarding this burden prior to the hearing, it did provide a declaration on this issue in its supplemental briefing. Mayberry Decl. (Docket No. 98-2). The Government has shown that PHMSA regulates 3209 pipeline operators of various types. *Id.* at 2. Over the last four years, PHMSA conducted between 1,330 and 1,500 inspections of these operators each year. *Id.* Prior to 2013, almost all inspections were memorialized in a "Post-Inspection Memorandum;" however, these memoranda are not centrally compiled. *Id.* at 3. PHMSA does not compile the correspondence between its inspectors and pipeline operators, nor does it have software to efficiently search through such correspondence. *Id.* PHMSA's representative stated that, "the discovery request would cause significant disruption of agency functions and would require thousands of man-hours from many different PHMSA employees to satisfy." *Id.* at 2. "Considered as a whole, Defendant's request would consume enormous agency resources that would have to be re-directed from its core function of public safety and protection of the environment." *Id.* at 4.

In its supplemental briefing, PG&E argues that PHMSA's estimate is exaggerated because it includes hundreds of pipeline operators that are dissimilar to PG&E, such as municipalities and gas distribution pipeline operators. Def.'s Supp. Brief at 5-6 (Docket No. 102). PG&E also argues that PHMSA cannot extrapolate from the search it already conducted for PG&E documents, because that was a much broader request. *Id.* at 6-7. And, PG&E argues that it should not be prejudiced by PHMSA's own recordkeeping deficiencies, such as failing to compile its documents or use effective software. *Id.* at 7-8. PG&E suggests that disclosure of the Post-Inspection Memoranda would be "a good place to begin a search for relevant documents," and that the Government could review such Memoranda for the "major transmission pipeline operators in each region, and identify

those that involved any of the four regulations at issue." *Id.* at 8.  Moreover, at the hearing, PG&E suggested that only documents since 2004 would be relevant, since that was the year in which the relevant regulations were enacted.  Tr. at 10.

The Court agrees that a phased disclosure process would not be unduly burdensome in this case.  The parties shall meet and confer regarding a definition of "major transmission pipeline operator" for the purposes of this disclosure within ten days of the entry of this Order.  Thereafter, as soon as practicable, the Government shall produce to PG&E copies of all PHMSA Post-Inspection Memoranda for inspections of major transmission pipeline operators since January 1, 2004.  PG&E may then review these Memoranda for those that involve the relevant regulations, and may thereafter meet and confer with the Government regarding the disclosure of additional documents that will be material to its defense, such as communications between PHMSA and a major transmission pipeline operator.  Only after such a meet and confer will the Court entertain a further motion to compel any such evidence.  In this way, the Court finds that PG&E will be able to obtain evidence to which it is entitled under Rule 16, while preventing an undue burden on the Government.

## 2.    CPUC

Rule 16 only applies to documents and materials that are in the "custody, possession, or control" of the Government.  *See* Fed. R. Crim. P. 16(a)(1)(E).  In *United States v. Fort*, 472 F.3d 1106 (9th Cir. 2007), the Ninth Circuit held that the Government is not deemed "to have knowledge or access to anything generated by a state or local actor that is not *actually* known by and in the possession of the prosecutor."  478 F.3d 1099, 1100 (9th Cir. 2007) (order denying reh'g *en banc*).  "*Fort* establishes no principle of constructive possession."  *Id.*; *see also United States v. Chavez-Vernaza*, 844 F.2d 1368, 1375 (9th Cir. 1987) ("[T]he federal government had no duty to obtain from state officials documents of which it was aware but over which it had no actual control.").  Consequently, documents in the possession of the CPUC, and not in the actual possession

of the Government, do not fall within the ambit of Rule 16.

### B. *Brady* request

#### 1. PHMSA

In addition to Rule 16, PG&E also seeks information relating to other pipeline operators in the possession of PHMSA under *Brady*, which is not limited by concerns of undue burden. Rule 16/*Brady* Mot. at 7 (citing *United States v. W.R. Grace*, 401 F. Supp. 2d 1069, 1076 (D. Mont. 2005) ("The prosecutor's obligation to seek out exculpatory evidence in the government's possession is not tempered by considerations of reasonableness or undue burden."); *United States v. McVeigh*, 954 F. Supp. 1441, 1450 (D. Colo. 1997) (*Brady* violation "is not excused by inconvenience, expense, annoyance or delay")).

Under *Brady v. Maryland*, 373 U.S. 83 (1963), a defendant has a right to the production of exculpatory evidence in the possession of the Government. *Id.* at 87. Regarding PG&E's request as it pertains to PHMSA, "under *Brady*[,] the agency charged with administration of the statute, which has consulted with the prosecutor in the steps leading to prosecution, is to be considered as part of the prosecution in determining what information must be made available to the defendant charged with violation of the statute." *United States v. Wood*, 57 F.3d 733, 737 (9th Cir. 1995). Because PHMSA is charged with administration of the Pipeline Safety Act, and consulted with the prosecution team on this case, it follows that the Government must disclose *Brady* materials in PHMSA's possession. *See* 49 U.S.C. § 60102(a); 49 C.F.R. § 190.303 (providing PHMSA administer the Pipeline Safety Act); Rule 16/*Brady* Mot. at 9-10 (compiling press releases demonstrating cooperation between the prosecution team and PHMSA in this case).

The Court's supervisory authority is limited by our government's separation of powers. *Jennings*, 960 F.2d at 1491. Accordingly, the judicial branch "interferes in the practices of the executive branch only when there is a clear basis in fact and law for doing so." *Id.* (quotation marks omitted). Here, the Government's official position is that the

11

requested PHMSA documents are categorically immaterial. *See* Opp'n to Rule 16/*Brady* Mot. at 9 ("The recordkeeping practices of other pipeline operators have no bearing . . . . [T]he way in which other pipeline operators evaluated the integrity of their pipelines is irrelevant . . . . The practice of other operators is also irrelevant . . . ."). As provided above, the Court disagrees. *See supra* (finding other pipeline operators' understanding of the regulations potentially relevant to whether PG&E's actions constituted "willful" violations of the Pipeline Safety Act). Consequently, the Government shall comply with its *Brady* obligations with respect to PHMSA documents in light of the Court's determinations as set forth in this Order. However, "[a]bsent a violation of a recognized right under the Constitution, a statute, or a procedural rule[,]" *Jennings*, 960 F.2d at 1491, the Court declines to specify the procedures that the Government must follow to comply with its *Brady* responsibilities as provided in this Order. *Cf. United States v. Miller*, 722 F.2d 562, 565 (9th Cir. 1983) ("[C]ourts . . . should avoid creating broad rules that limit traditional prosecutorial independence.").

## 2. NTSB

Regarding PG&E's request as it pertains to the NTSB, the Government has already acknowledged that it has access to NTSB files. *See, e.g.*, Ex. 3 to Valco Decl. (Docket No. 72-3) (stating that Government had received from NTSB certain "NTSB analyses, reports, photos and other investigatory materials"); Ex. 15 to Valco Decl. (Docket No. 72-15) (stating that Government was "reviewing and processing materials that [it] received from the NTSB"). Even if this were not the case, the Ninth Circuit warns that a federal prosecutor's *Brady* obligations "cannot be evaded by claiming lack of control over the files or procedures of other executive branch agencies." *United States v. Jennings*, 960 F.2d 1488, 1490 (9th Cir. 1992). Consequently, the Court finds that the Government's *Brady* obligation extends to NTSB files.

### 3. CPUC

While CPUC documents do not fall within the purview of Rule 16, *Brady* creates a more searching obligation on the part of the Government with respect to state files. Where federal and state agencies have "cooperated intimately from the outset of an investigation," at least one circuit court has found that "[i]mposing a rigid distinction" between them "would artificially contort the determination of what is mandated by due process." *United States v. Antone*, 603 F.2d 566, 570 (5th Cir. 1979). In *United States v. Cerna*, a court in this district held, "When state police gives a federal investigator access to its files for the purpose of pulling items of interest to a federal investigation, *Brady* requires that the prosecution team review as well for *Brady* materials within the same universe of files." 633 F. Supp. 2d 1053, 1060 (N.D. Cal. 2009). The court explained, "The reason is that the state has invited the federal authorities into its file room and given access to the evidence. Once inside the stacks with permission to rummage about for prosecution evidence, the federal authorities must search for and retrieve defense evidence bearing on the same question." *Id.* Importantly, *Cerna* noted that this is true even where the access "is only by mere requests," whereupon the Government "must ask for *all* information on the same subject, pro and con." *Id.* However, *Cerna* also cautioned that its holding does not mandate that federal prosecutors "scour the entirety of local police storerooms looking for defense evidence," and that Rule 17 subpoenas "narrowly directed and reasonable" in scope may be a better mechanism for securing production of relevant documents. *Id.*

Here, while the CPUC is a state regulatory agency, rather than state police, the rationale of *Cerna* applies. In order to determine the Government's level of access to CPUC materials, the Court asked the Government at oral argument to explain in greater detail the nature of its document requests to the CPUC.[2] The Government responded:

---

[2] Specifically, the Court asked: "What was the nature of the requests for evidence that the Government sent to the CPUC? How many such requests were made? How many requests were denied?" May 28, 2015 Order Re: June 1, 2015 Hearing at 1 (Docket No. 92).

> Your Honor, CPUC has been cooperative completely with the Government; however, it is not like the Defense says. The Government does not have unfettered access to CPUC files. We do not have open access. . . .
>
> Your Honor, the Government cannot answer your question, frankly, with any specificity because it is true that we have made numerous requests; but what we can say is that everything they gave us when we were investigating to determine whether or not criminal charges should be brought against the defendant, both favorable to bring [sic] criminal charges and unfavorable, everything was provided to the Defense.

Tr. at 25:20-26:8. It appears to the Court that the Government was met with no resistance when making requests for documents to the CPUC. While the Court disagrees with Defendant's characterization of this level of access as "unfettered," as requests were still a necessary prerequisite to accessing CPUC "storerooms," the Court finds that this level of access is sufficient to require that the Government "ask for *all* information on the same subject, pro and con[,]" whenever requests are made. *See Cerna*, 633 F. Supp. 2d at 1060.

Accordingly, the Government shall review all previous requests made to the CPUC to ensure that they sought all information on the subjects requested, both inculpatory and exculpatory. No later than three weeks after the entry of this Order, the Government shall file a declaration indicating the completion of this review. Furthermore, when making future requests to the CPUC, the Government shall request both exculpatory and inculpatory information related to the subject matter of the requests. As the Court does not find that the Government had "unfettered access" to the CPUC's documents, Defendant provides no authority requiring further action by this Court with respect to the CPUC.

## II. PG&E Has Not Shown a Particularized Need Sufficient to Overcome the Presumption of Secrecy for Grand Jury Materials

PG&E also requests various materials concerning the grand jury (or juries) that returned the indictment and superseding indictment. In particular, PG&E requests:

> 1. All legal instructions given to the grand jury, including any questions from the grand jury regarding legal requirements and responses;

14

2. All statements by the prosecution or government agents conveying evidence or argument regarding obstruction (Count 1), pressure test recordkeeping (Counts 24-28), and the Alternative Fines Act allegations (sentencing allegations); and

3. All statements relating to a deadline or timing for the superseding indictment.

Proposed Order on Grand Jury Mot. at 2 (Docket No. 69-1).

These requests are best evaluated for two categories of grand jury materials: substantive materials and ministerial records.

## A. Substantive grand jury materials are kept secret absent a particularized need

Rule 6(e) creates a presumption in favor of protecting the secrecy of any "matter occurring before the grand jury," which a defendant can only overcome by showing a "particularized need" for disclosure, such as prosecutorial misconduct which would justify dismissing the indictment. *See* Fed. R. Crim. P. 6(e); *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 222 (1979).

"Mere unsubstantiated, speculative assertions of improprieties in the proceedings do not supply the 'particular need' required to outweigh the policy of grand jury secrecy." *United States v. Ferreboeuf*, 632 F.2d 832, 835 (9th Cir. 1980) (internal quotation omitted). There is a presumption of regularity in grand jury proceedings, *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 300 (1991), and courts routinely find that assertions that a grand jury returned an indictment too quickly or that the government misled the grand jury, without more, fall short of the particularized need requirement. *E.g.*, *Ferreboeuf*, 632 F.2d at 835 (speed with which indictment was returned was "mere speculation" of misconduct); *United States v. Morales*, Cr. No. S-05-443 WBS, 2007 WL 628678, at *4 (E.D. Cal. Feb. 28, 2007) (defendant could not use his own evaluation of the evidence to compel production of grand jury instructions; "This sort of deductive reasoning is insufficient to overcome the presumption of regularity.").

Rather, particularized need is more often shown where the defendant becomes aware of specific facts suggesting severe misconduct that jeopardized the independence of

15

the grand jury. For example, particularized need for further disclosure has been found where a defendant already received *some* grand jury materials, and those materials revealed that the prosecution misrepresented the evidence. *United States v. Mahoney*, 495 F. Supp. 1270, 1273 (E.D. Penn. 1980); *see also United States v. Kilpatrick*, 575 F. Supp. 325, 326-339 (D. Colo. 1983) (summaries of grand jury transcripts and court's *in camera* review revealed wide range of prosecutorial misconduct).

However, "[a]s the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification." *Petrol Stops Nw. v. Continental Oil Co.*, 647 F.2d 1005, 1008 (9th Cir. 1981). This is especially true where the grand jury has already returned an indictment. *See United States v. Consortium de Realisation S.A. (In re Grand Jury)*, 117 F. App'x 527, 530 (9th Cir. 2004) (holding it within a judge's discretion to grant disclosure of grand jury materials where "the close of the grand jury investigation mitigated much of the need for continued secrecy").

The defendant's particularized need must show that a "ground may exist *to dismiss the indictment* because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii) (emphasis added). Therefore, the standard for dismissing an indictment is relevant to the standard for disclosure of grand jury materials. *See United States v. Fowlie*, 24 F.3d 1059, 1065-66 (9th Cir. 1994). "[D]ismissal of the indictment [for prosecutorial error] is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988).

An indictment must be a "plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ." Fed. R. Crim. P. 7(c). An indictment is sufficient if it: (1) contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend; and (2) contains sufficient facts to

1   allow a defendant to raise a double jeopardy bar to subsequent prosecutions arising from

2   the same actions. *United States v. Lazarenko*, 564 F.3d 1026, 1033 (9th Cir. 2009).

3       The Government does not need to present exculpatory evidence to the grand jury.

4   *United States v. Williams*, 504 U.S. 36, 55 (1992). Nor does a prosecutor need to instruct

5   the grand jury on the law in order to secure an indictment. *United States v. Kenny*, 645

6   F.2d 1323, 1347 (9th Cir. 1981). Even where instructions are provided, "the prosecutor

7   has no duty to outline all the elements of [the offense] so long as the instructions given are

8   not flagrantly misleading or so long as all the elements are at least implied." *United States*

9   *v. Larrazolo*, 869 F.2d 1354, 1359 (9th Cir. 1989) (overruled on other grounds by *Midland*

10  *Asphalt Corp. v. United States*, 489 U.S. 794 (1989)). "Erroneous grand jury instructions

11  do not automatically invalidate an otherwise proper grand jury indictment." *Larrazolo*,

12  869 F.2d at 1359 (quotation and citation omitted).

13      A small number of district courts outside of the Ninth Circuit have found

14  government instructions to the grand jury to be so misleading that dismissal of the

15  indictment was warranted. In *United States v. Peralta*, 763 F. Supp. 14 (S.D.N.Y. 1991),

16  the court dismissed an indictment where the prosecutor had broadly misstated the concept

17  of constructive possession of contraband, and compounded that prejudice by relying

18  heavily on hearsay testimony. *Id.* at 19-20. And in *United States v. Stevens*, 771 F. Supp.

19  2d 556 (D. Md. 2011), the court found that the government's misleading response to a

20  grand juror's question about whether relying on the advice of counsel raised a defense in a

21  false statement prosecution, which was "akin to asking about an elephant in the room,"

22  was so prejudicial that dismissal of the indictment was warranted. *Id.* at 568.

23      However, such cases continue to be rare, in large part because almost any prejudice

24  a defendant suffers from an improper grand jury proceeding is rendered harmless by a

25  conviction or acquittal at trial. *See United States v. Mechanik*, 475 U.S. 66, 71-72 (1986).

26      An *in camera* review is an appropriate way to resolve the competing concerns of

27  grand jury secrecy and the defendant's interest in production. In *Fowlie*, an unauthorized

28  government agent appeared before the grand jury, in violation of Rule 6(d). 24 F.3d at

17

1065.  The defendant claimed that this misconduct entitled it to production of the grand

jury transcript.  *Id.*  The district court and the court of appeals both reviewed the materials

*in camera* and rejected this argument.  *Id.*  "[W]hether such action is necessary is left to

the discretion of the trial judge."  *Ferreboeuf*, 632 F.2d at 835.

Here, PG&E argues it has shown a particularized need for further disclosure of the

grand jury materials for three categories of charges: obstruction, certain pressure test

record-keeping violations, and the Alternative Fines Act allegations.  All of these

arguments fail.

As a preliminary consideration of the relevant burden PG&E must meet to secure

disclosure of the requested grand jury documents, PG&E argues that the need for

continued secrecy surrounding the grand jury proceedings in this case is minimized

because an indictment has already been issued, therefore lowering the required showing

necessary to secure production of grand jury documents.  Grand Jury Mot. at 10-11 (citing,

among other cases, *Petrol Stops Nw.*, 647 F.2d at 1008 ("As the considerations justifying

secrecy become less relevant, a party asserting a need for grand jury transcripts will have a

lesser burden in showing justification."); *United States v. Dynavac, Inc.*, 6 F.3d 1407, 1412

(9th Cir. 1993) ("When the grand jury investigation is already terminated and an

indictment has been issued, only 'institutional' concerns are implicated by documentary

disclosure.")).  However, the Supreme Court, in reviewing a Ninth Circuit decision to

allow disclosure of grand jury documents after conclusion of the grand jury investigation,

was quick to note that such closure of proceedings does not automatically lower the

standard of proof required for disclosure under Rule 6(e); in determining whether to order

disclosure it is therefore necessary to consider the factual context and individual

circumstance of the case.  *Douglas Oil Co. of California v. Petrol Stops Nw.*, 441 U.S. 211,

223 n.14 (1979).  In this regard, it is important to note that while the grand jury on the

present Indictment has concluded, the Government notified the Court that a grand jury

investigation into matters involving PG&E continues.  Grand Jury Opp'n at 7.  While the

Government has already produced the grand jury testimony of PG&E's witnesses, and

intends to produce the grand jury testimony of its own agents, the Court is still mindful of protecting the necessary secrecy surrounding these ongoing proceedings.

Next, PG&E argues that the Government likely misled the grand jury on whether "materiality" is a required element of obstruction. PG&E argues that the Indictment itself does not use the word "material," or allege facts suggesting that its alleged omission was material to the NTSB investigation, such as follow-up requests by the NTSB for more information or statements indicating that the NTSB's conclusion was influenced by the omission. Grand Jury Mot. at 13. PG&E also argues that the draft report it submitted was not covered by NTSB's request, because such draft reports or unapproved practices are not "policies, standards, procedures, etc." *Id.* at 13-14. And PG&E argues that the recent Ninth Circuit case of *United States v. Bonds*, --- F.3d ---, 2015 WL 1842752 (9th Cir. Apr. 22, 2015), which held that Barry Bonds' evasive testimony during his trial was not sufficient to convict him of obstruction of justice, means that PG&E cannot be liable for its omission in response to just one of many data requests in the NTSB investigation. Grand Jury Mot. at 14.

PG&E has not shown a particularized need for disclosure regarding the obstruction count. The mere fact that the word materiality does not appear in the Indictment is very weak evidence that the Government misled the grand jury on this charge. Nor did the Government need to explicitly instruct the grand jury on this element, so long as the Government did not flagrantly mislead the grand jury. Nothing in PG&E's argument overcomes the presumption of regularity of grand jury proceedings for this count.

Nor does the recent *Bonds* case show otherwise. First, *Bonds* was decided in April of this year, so the Government had no way of applying its guidance in the grand jury proceedings against PG&E in 2014. Second, *Bonds* was a case about an individual defendant's oral testimony at trial. The extent to which that case's reasoning applies to omissions made during the course of a massive investigation against a large corporate defendant has yet to be determined. PG&E has not shown that any uncertainty, created

19

only recently, means that the Government's instructions to the grand jury were flagrantly misleading.

Second, PG&E has not shown a particularized need for the pressure test record-keeping counts. Here, its argument is even weaker: the Indictment does not include allegations that specific pressure test records were required, and the age of the relevant pipeline suggests it could have been grandfathered in such that no records were required. Grand Jury Mot. at 16. PG&E also argues that the timing of the Indictment is suspicious, because it was returned shortly after PG&E produced 8,500 pages of pressure test records, which the Government stated it could not "decipher." *Id.* at 16-17. And PG&E argues that the records do not explain *why* a pressure test record might not be conducted. *Id.* at 17.

However, the Indictment itself need not contain all of these allegations, and the Government does not need to present exculpatory evidence to the grand jury, such as the pressure test records or the age of the pipeline. In fact, PG&E does not even argue that the pressure test records were exculpatory; it admits that the records might reveal the absence of pressure tests, but argues that there is no way the grand jury could have understood all of that evidence before it returned the Indictment. Grand Jury Mot. at 17. This is mere speculation, and it falls far short of the particularized need required to disclose grand jury materials.

Third, PG&E has not shown a particularized need for the grand jury materials related to the Alternative Fines Act allegations. PG&E argues that a penalty under the Alternative Fines Act can only be based on the *pecuniary* loss or gain that a defendant caused or enjoyed, but the allegations in the Indictment appear to be based on PG&E's civil settlement with the victims of the San Bruno explosion, which included recovery for various *non-pecuniary* losses, such as loss of consortium and pain and suffering. *Id.* at 18. PG&E argues that the Government must have either omitted the pecuniary requirement, or misstated the evidence to the grand jury. *Id.* at 19. It also argues that the Government likely misrepresented the facts or the law regarding the profit PG&E enjoyed by virtue of its alleged violations. *Id.*

The Government has previously stated that "[t]he loss amount of $565 million is based upon PG&E's own filings with the Securities and Exchange Commission as to what PG&E has paid to claimants related to the San Bruno explosion." Opp'n to Mot. to Strike at 19 (Docket No. 36). The Government has not argued that the amount only includes pecuniary losses. However, even assuming that this amount does include non-pecuniary payments, this is not a sufficient particularized need to justify disclosure of the grand jury materials. First, PG&E has provided no authority for the proposition that incorrect fine allegations warrant dismissing an indictment, which is the relevant standard under Rule 6(e)(3)(E)(ii). Nor does it make sense that it would – the petit jury will ultimately need to find facts in support of such a fine, and since clearly some portion of the $565 million figure is based on pecuniary losses, PG&E will suffer no prejudice from the grand jury's reliance on this estimate. *See Mechanik*, 475 U.S. at 71-72. And second, even in spite of the possible discrepancy between total loss and pecuniary loss, PG&E has not shown that using the civil settlement amount as an estimate of the loss caused by the explosion was flagrantly misleading. This does not amount to a particularized need for these grand jury materials.

PG&E has not shown a particularized need for any of the grand jury materials it requests. Its speculation about what happened in front of the grand jury is not sufficient to overcome the presumption of secrecy for these materials.

**B. There is no presumption of secrecy for ministerial grand jury records**

Although "[t]he proceedings before the grand jury are secret, [] the ground rules by which the grand jury conducts those proceedings are not." *United States v. Alter*, 482 F.2d 1016, 1029 n.21 (9th Cir. 1973). Additionally, the public has a limited right of access to the "ministerial records" of a grand jury, meaning those that "generally relate to the procedural aspects of the impaneling and operation of the . . . Grand Jury, as opposed to records which relate to the substance of the . . . Grand Jury's investigation." *In re Special Grand Jury (for Anchorage, Alaska)*, 674 F.2d 778, 779 n.1, 780 (9th Cir. 1982).

Several district courts have applied this rule and ordered the disclosure to criminal defendants of ministerial records relating to particular grand juries, such as their empaneling instructions and their dates of service. *E.g.*, *United States v. Jack*, No. CR.S-07-0266 FCD, 2009 WL 435124, *3-4 (E.D. Cal. Feb. 20, 2009); *United States v. Diaz*, 236 F.R.D. 470, 477-79 (N.D. Cal. 2006).

A split of authority has developed regarding whether the legal instructions provided by the prosecutor to the grand jury are the kind of "ground rules" subject to disclosure, or rather whether they go to the substance of the grand jury's deliberation and are therefore afforded a presumption of secrecy. The Ninth Circuit has not yet addressed this precise question.

Two cases in this district have held that legal instructions to the grand jury are not subject to the ordinary rule of grand jury secrecy. In the recent case of *United States v. Belton*, No. 14-cr-30-JST, 2015 WL 1815273 (N.D. Cal. Apr. 21, 2015), the court held that the legal instructions given to the grand jury do not go to the substance of the grand jury's deliberative process, and therefore were subject to disclosure even without a showing of particularized need. *Id.* at *3. And in the case of *United States v. Talao*, No. CR-97-217-VRW, 1998 WL 1114043 (N.D. Cal. Aug. 14, 1998), the court stated, without further analysis, that the legal instructions provided to the grand jury fall within the "ground rules" contemplated by *Alter*. *Id.* at *12.

Other courts outside of this district have gone the other way, though. In *United States v. Barry*, 71 F.3d 1269 (7th Cir. 1995), the Seventh Circuit held that a district court did not abuse its discretion in denying production of the legal instructions to a grand jury where the defendant did not show a need for them. *Id.* at 1274. And in *United States v. Welch*, 201 F.R.D. 521, the court reasoned that "[t]he instructions to the grand jury are intimately associated with the deliberation and judgement [sic] aspects of the grand jury function. Therefore, the instructions are matters occurring before the grand jury and require meeting standards for release of grand jury information." *Id.* at 523. Other district courts have adopted this reasoning. *E.g.*, *United States v. Larson*, No. 07CR304S, 2012

22

WL 4112026, at *4-5 (W.D.N.Y. Sept. 18, 2012); *United States v. Zhitlovsky*, No. 03-40032-01-SAC, 2003 WL 21939024, at *2 n.1 (D. Kan. July 29, 2003); *see also United States v. Morales*, Cr. No. S-05-443 WBS, 2007 WL 628678, at *4 (E.D. Cal. Feb. 28, 2007).

Some courts have ordered an *in camera* review of such legal instructions, as a way to protect against inadvertent disclosure of secret materials. *E.g.*, *United States v. Twersky*, No. S2 92 Cr. 1082 (SWK), 1994 WL 319367, at *5 (S.D.N.Y. June 29, 1994).

Clearly, the dates that the relevant grand juries were impaneled and excused, as well as their empaneling instructions, are ministerial records which are not entitled to secrecy. Those records shall be disclosed to PG&E, if they have not been disclosed already.

However, the Court does not believe that the legal instructions provided to the grand jury are necessarily separate from the substance of the grand jury's deliberations. Whether the instructions go to the substance will depend to some extent on the format of their presentation – for example, whether they are distributed as a discrete printout with no relation to the evidence, or presented in a colloquy while the prosecutor makes connections to the evidence. It is impossible to know at the outset whether instructions can be disclosed without compromising the secrecy of the grand jury's deliberations.

Accordingly, the Court finds that *in camera* review of the legal instructions that the Government provided to the grand jury is appropriate. The Government shall submit to the Court all records of the legal instructions it gave to the grand jury, including copies of any documents and transcript excerpts containing such instructions and explanations. The Government shall submit this material to the Court no later than two weeks after the entry of this Order.

At the June 1 hearing, PG&E requested an opportunity to submit supplemental briefing on its position on the grand jury materials, should the Court decide to perform an *in camera* review. Tr. at 48. PG&E shall submit a brief of no longer than seven pages, within two weeks after the entry of this Order.

After conducting its *in camera* review, the Court will determine whether production of the legal instructions to PG&E is appropriate.

### III.    It is Sufficient for the Government to Make Agents' Witness Interview Notes Available for PG&E's Inspection

In response to PG&E's request for production of the Government's witness interview notes, the Government has agreed to make these notes "available for review by the defense for a reasonable time at the United States Attorney's Office." Interview Notes Opp'n at 1. The Government also claims that it has "produced all recordings of witness interviews taken by the prosecution team." *Id.* However, it declines to produce recordings of interviews conducted by the CPUC or other agencies.

In response to the Government's commitment to make its agents' interview notes available in the U.S. Attorney's office, PG&E argues that "authentic copies" of the notes should actually be provided. Interview Notes Reply at 1. In support of this argument, PG&E cites to one District of Montana case, and a handful of out-of-circuit cases where actual production was ordered. *Id.* at 2 (citing *United States v. W.R. Grace*, 401 F. Supp. 2d 1087, 1091 (D. Mont. 2005); *United States v. Clark*, 385 F.3d 609, 619 (6th Cir. 2004); *United States v. Molina-Guevara*, 96 F.3d 698, 705 (3d Cir. 1996); *United States v. Vallee*, 380 F. Supp. 2d 11, 15 (D. Mass. 2005)). However, none of these cases actually addressed the issue of whether prosecutors are required to *produce* copies of requested materials, as opposed to merely making them available for inspection. The fact that other courts have ordered production does not mean that the Government's offer is procedurally insufficient.

The language of Rule 16 does not require production. Instead, Rule 16 says the Government must make relevant materials "available for inspection, copying, or photographing[.]" Fed. R. Crim. P. 16(a)(1)(B). PG&E's argument for production instead of mere disclosure, therefore, is premised solely on its insistence that production is needed so that the notes are "readily available for trial preparation and trial examinations," as well as to avoid disputes over authenticity. Interview Notes Reply at 1-2. The Court finds this

24

argument unpersuasive, as PG&E's attorneys can review the requested documents at the U.S. Attorney's Office and request official copies of any specific documents it intends to use at trial, as suggested by the Government. *See* Tr. at 59:9-11 ("Once they discover what they believe to be *Brady* material, they can flag it and we will copy it for them so they can use it at trial."). The Court will not impose upon the Government procedural obligations that have no basis in law.[3]

Accordingly, the Court finds that the Government's offer to make these interview notes available for inspection in its office "for as long as [PG&E] need[s] to determine if there's *Brady* material" is sufficient under the dictates of Rule 16. *Id.* at 59:18-19.

As with the agency materials regarding other operators discussed above, the Government's obligation to disclose CPUC witness notes and recordings depends upon whether the Government has made any requests that might encompass that subject matter. If the Government has requested CPUC witness notes or recordings, it must ensure that it sought both inculpatory and exculpatory evidence in that regard, and provide any exculpatory evidence to PG&E within a reasonable time as dictated by *Brady*.

## IV. The Government Must Provide Any Rule 404(b) Evidence by Friday, September 18, 2015.

The Government does not dispute its obligation to provide adequate notice of its prior bad acts evidence. The only dispute is what constitutes a "reasonable" deadline for such notice. *See* Fed. R. Evid. 404(b)(2)(A)-(B) ("On request by a defendant in a criminal case, the prosecutor must: (A) provide **reasonable notice** of the general nature of any such evidence that the prosecutor intends to offer at trial; and (B) do so before trial . . . .")

---

[3] The Court notes that the Government must actually produce copies of any interview notes that contain exculpatory information under *Brady*. *See Milke v. Ryan*, 711 F.3d 998, 1003 (9th Cir. 2013) ("The law requires the prosecution to produce *Brady* and *Giglio* material whether or not the defendant requests any such evidence."). However, the Court presumes that the Government will comply with its *Brady* obligations and obey the law, absent evidence to the contrary. *See In re Hergenroeder*, 555 F.2d 686, 686 (9th Cir. 1977) (per curiam) (court should presume that government will obey the law).

1  (emphasis added).  The Government offers a November 2, 2015 deadline to provide

2  disclosure of its 404(b) evidence, 404(b) Opp'n at 2, while PG&E previously requested a

3  June 15, 2015 deadline – a date which has now passed.

4       The reasonableness of any deadline "will depend largely on the circumstances of

5  each case." Fed. R. Evid. 404(b), advisory comm. note to 1991 amendment.  The

6  Government contends that its proffered deadline is reasonable because it is "four months in

7  advance of trial, and two months before *in limine* motions are due." 404(b) Opp'n at 2.

8  Conversely, PG&E asserts that an earlier deadline is necessary to investigate the intended

9  404(b) evidence and prepare its defense before the motions *in limine* deadline of January 4,

10  2016.  404(b) Mot. at 6-7; *see also* March 11, 2015 Order for Pretrial Preparation at 4

11  (Docket No. 64).  Both sides cite cases that have found varying deadlines reasonable, all

12  within the context of the individual case's complexity.  *See, e.g.*, *United States v. Benvin*,

13  No. 11-0099, 2013 WL 2154390, at *3 (D. Nev. May 17, 2013) (setting the 404(b) notice

14  date in light of "the complexity of the case and the voluminous amounts of discovery").

15  Given the fact that this is a matter of individualized analysis, it is unnecessary to survey

16  those cases here; however, the deadlines in those cases ranged from one week to six

17  months before trial.  *See, e.g.*, *United States v. Alex*, 91 F. Supp. 723, 729 (N.D. Ill. 1992)

18  (ordering notice seven days before RICO trial); *United States v. Peggs*, No. 07-0239, 2009

19  WL 104295 (W.D. Mich. Jan. 14, 2009) (ordering notice six months before trial).

20       In setting a 404(b) disclosure deadline, the Court considers the potential that PG&E

21  will need additional discovery from the Government after the initial 404(b) disclosure,

22  PG&E's need to conduct an independent investigation of the alleged acts, and the

23  complexity and scope of the case.  The Government estimates that it will present its case

24  against PG&E, which includes twenty-seven counts of knowing and willful violations of

25  several different, highly technical pipeline regulations, over the course of six weeks.

26  Should some of this evidence, under Rule 404(b), include allegations related to prior

27  pipeline incidents, it is likely that extensive discovery and investigation will be necessary.

28  The Government's primary argument is that the deadline should be after the last round of

substantive motions so that the Government "can give a refined notice of what it seeks to admit as evidence at trial." Tr. at 60:15-16. An earlier date, the Government contends, will result in notice that "will be inherently broad . . . ." *Id.* at 60:18. However, PG&E appears to have weighed the risk of receiving "broad" notice, and determined that it would rather have the additional time to investigate the evidence than the more refined notice that would result from a later disclosure.

The last round of substantive motions must be noticed by September 7, 2015. March 11, 2015 Order at 3. By this point, the Government should have a clearer picture of the evidence it intends to use to prove its case at trial. Accordingly, the Court ORDERS the Government to provide notice to PG&E of any Rule 404(b) evidence by Friday, September 18, 2015.

## V. OTHER MATTERS

In its reply, PG&E argues that there are several outstanding discovery requests to which the Government has replied either incompletely or not at all. Rule 16/*Brady* Reply at 11-12. The Court addresses these requests as follows.

First, regarding "[i]nterpretations of the regulations by PHMSA or NTSB," the Court finds that such materials are material under Rule 16, as discussed above. The Government stated that it "has asked the NTSB to confirm that they have produced to the government all non-privileged materials related to their San Bruno investigation," Rule 16/*Brady* Opp'n at 5, and that it has requested and will produce "internal communications within PHMSA about rulemaking . . . ." *Id.* at 6. It is not clear whether the Government's requests and disclosures included all of the material interpretations. *See* Def.'s Supp. Brief at 2-4. The Government must produce all evidence that contains such interpretations. This production shall be made as soon as practicable. To the extent such interpretations are discussed in PHMSA enforcement actions against other pipeline operators, the parties shall follow the phased discovery approach discussed above.

Second, regarding "NTSB communications regarding RMI-06," the Government

has stated that it has "requested that the NTSB confirm that they have turned over all non-privileged information to the government concerning their investigation of the San Bruno explosion. To the extent that there is anything additional produced by the NTSB, the government will produce that to the defense immediately." Rule 16/*Brady* Opp'n at 10. The Government has also stated that it will produce a privilege log from the NTSB, once completed. Tr. at 20. The Court finds that this adequately addresses PG&E's second outstanding request.

Third, regarding "PHMSA evidence regarding PG&E's prior dealings with PHMSA," the Government has stated that "PHMSA has engaged in an exhaustive search of its files, and has produced to the government emails between PHMSA officials and PG&E employees both before and after the San Bruno explosion, as well as other documents and materials, including discussions about the San Bruno explosion and other incidents relating to pipelines owned and operated by PG&E," and that it will produce such materials, as well as a privilege log, to PG&E. Rule 16/*Brady* Opp'n at 8; Tr. at 20. The Court finds that this response adequately addresses PG&E's third outstanding request.

Fourth, regarding "[a]ll PHMSA and NTSB evidence relating to the San Bruno explosion," the Court finds that the Government's responses to the second and third requests discussed immediately above adequately respond to this fourth request.

Fifth, regarding "[m]aterials obtained from Third Parties," it appears that PG&E is referring to subpoenas sent to third parties, as well as any agreements limiting production and privilege logs. Ex. 27 to Valco Decl. The Government stated that it has "produced to PG&E all materials produced pursuant to such subpoenas," and that it is "not aware of materials that were withheld as privileged or agreements to narrow the scope of such subpoenas." Rule 16/*Brady* Opp'n at 13. PG&E submits no argument as to why it is entitled to anything more, and the Court therefore concludes that this response is adequate.

Sixth, regarding "[c]omplete production of witness statements," the Government has stated that it "will continue to produce to the defense any new materials consistent with

its obligations under Rule 16 and *Brady*." Rule 16/*Brady* Opp'n at 12. The Government shall produce all such materials as soon as practicable after they are obtained.

Finally, PG&E requests an order that the Government respond to PG&E's outstanding discovery requests. Rule 16/*Brady* Reply at 12. A court may "grant . . . appropriate relief" in order to regulate discovery. Fed. R. Crim. P. 16(d). PG&E has offered to provide "a comprehensive list" of the requests that it considers to be outstanding. Rule 16/*Brady* Reply at 12 n.8. PG&E shall provide such a list to the Government no later than one week after entry of this Order. The Government shall respond to the requests therein as soon as practicable.

**CONCLUSION**

For the reasons set forth above, PG&E's discovery motions are GRANTED IN PART and DENIED IN PART, as follows:

The Government shall produce all NTSB evidence containing interpretations of the regulations at issue as soon as practicable, as well as a privilege log from the NTSB as soon as it is completed.

The Government shall produce materials from PHMSA as described above, as well as a privilege log from PHMSA as soon as it is completed.

The Government shall review its requests for information from the CPUC in order to ensure compliance with its *Brady* obligations, and file a declaration stating that it has completed its review within three weeks of entry of this Order.

The Government shall submit the legal instructions that it gave to the relevant grand juries to the Court for *in camera* review within two weeks of entry of this Order.

PG&E shall file a supplemental brief of no more than seven pages regarding the Court's *in camera* review of the grand jury's legal instructions no later than two weeks after entry of this Order.

The Government shall produce to PG&E the empaneling instructions and dates of service of the relevant grand juries as soon as practicable.

The Government shall make copies of its witness interview notes available for PG&E to inspect and to copy for as long as PG&E requires to ensure that all *Brady* material has been disclosed.

The Government shall provide notice of its Rule 404(b) other acts evidence by **September 18, 2015**.

The Government shall produce new witness statements as soon as practicable after such statements are obtained.

PG&E shall provide a list of outstanding discovery requests to the Government within one week of entry of this Order. The Government shall respond to the requests therein as soon as practicable.

PG&E's motions are otherwise DENIED.

**IT IS SO ORDERED.**

Dated:   06/29/15

_____
THELTON E. HENDERSON
United States District Judge