LATHAM & WATKINS LLP
  Steven M. Bauer (Bar No. 135067)
    steven.bauer@lw.com
  Margaret A. Tough (Bar No. 218056)
    margaret.tough@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095

LATHAM & WATKINS LLP
  Melissa Arbus Sherry (*pro hac vice*)
    melissa.sherry@lw.com
555 11th Street, NW, Suite 1000
Washington, DC 20004-1304
Telephone: +1.202.637.2200
Facsimile: +1.202.637.2201

CLARENCE, DYER & COHEN LLP
  Kate Dyer (Bar No. 171891)
    kdyer@clarencedyer.com
899 Ellis Street
San Francisco, California 94109-7807
Telephone: +1.415.749.1800
Facsimile: +1.415.749.1694

Attorneys for Defendant
PACIFIC GAS AND ELECTRIC COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>    Defendant. | CASE NO. CR-14-00175-TEH<br><br>**DEFENDANT'S MOTION TO DISMISS COUNTS 4, 5 AND 24-28 AS BARRED BY THE STATUTE OF LIMITATIONS**<br><br>Judge:   Hon. Thelton Henderson<br>Date:    August 17, 2015<br>Time:    10:00 A.M.<br>Place:   Courtroom 2, 17th Floor |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT'S MOTION TO DISMISS COUNTS
BARRED BY STATUTE OF LIMITATIONS
Case No. CR-14-00175-TEH

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on August 17, 2015, at 10:00 a.m., Defendant Pacific Gas and Electric Company ("PG&E") will and hereby does move this Court for an order dismissing Counts 4, 5 and 24 through 28 of the superseding indictment as barred by the statute of limitations. The Motion will be based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Charles F. Taylor, the files and records of this case, and such other argument and evidence as the Court may consider.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEFENDANT'S MOTION TO DISMISS COUNTS
BARRED BY STATUTE OF LIMITATIONS
Case No. CR-14-00175-TEH

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ...................................................................................................................1

II. BACKGROUND .....................................................................................................................2

    A. The Statute of Limitations ........................................................................................ 2

    B. The Allegations of Counts 4, 5 and 24 through 28 ................................................. 2

    C. The Timing of Pipeline Maintenance Laws and Regulations ................................ 4

III. DISCUSSION ..........................................................................................................................5

    A. The Recordkeeping Counts Should Be Dismissed Before Trial............................. 5

        1. Counts 4 and 5: Repair Records................................................................ 6

        2. Counts 24 through 28: Pressure Test Records ......................................... 7

        3. The End Dates Do Not Save the Charges .................................................. 8

    B. The Continuing Offense Theory Does Not Apply ................................................... 9

    C. Any Exception to the Statute of Limitations Fails Under the Rule of Lenity ................................................................................................................. 12

IV. CONCLUSION .....................................................................................................................13

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

DEFENDANT'S MOTION TO DISMISS COUNTS
BARRED BY STATUTE OF LIMITATIONS
Case No. CR-14-00175-TEH

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Bridges v. United States*,
    346 U.S. 209 (1953) ................................................................................................................ 6

*Loughrin v. United States*,
    134 S. Ct. 2384 (2014) .......................................................................................................... 10

*Russell v. United States*,
    369 U.S. 749 (1962) ................................................................................................................ 9

*Russello v. United States*,
    464 U.S. 16 (1983) ................................................................................................................ 10

*Russello v. United States*,
    464 U.S. 16, 23 (1983) .......................................................................................................... 10

*Toussie v. United States*,
    397 U.S. 112 (1970) ........................................................................................................ *passim*

*United States v. Austin*,
    448 F.2d 399 (9th Cir. 1971) .................................................................................................. 6

*United States v. Drebin*,
    557 F.2d 1316 (9th Cir. 1977) ................................................................................................ 5

*United States v. Dunne*,
    324 F.3d 1158 (10th Cir. 2003) ...................................................................................... 10, 12

*United States v. Eklund*,
    733 F.2d 1287 (8th Cir. 1984) .............................................................................................. 11

*United States v. Gammill*,
    421 F.2d 185 (10th Cir. 1970) ................................................................................................ 6

*United States v. Gilchrist*,
    215 F.3d 333 (3d Cir. 2000) ................................................................................................... 5

*United States v. Gross*,
    159 F. Supp. 316 (D. Nev. 1958) ........................................................................................... 6

*United States v. Hitt*,
    249 F.3d 1010 (D.C. Cir. 2001) .......................................................................................... 8, 9

*United States v. Kubrick*,
    444 U.S. 111 (1979) ................................................................................................................ 5

*United States v. Levine*,
    658 F.2d 113 (3d Cir. 1981) ................................................................................................... 5

*United States v. Lopez*,
    No. 10CR5155 BTM, 2012 U.S. Dist. LEXIS 5893 (S.D. Cal. Jan. 19, 2012) ...................... 6

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii   DEFENDANT'S MOTION TO DISMISS COUNTS
BARRED BY STATUTE OF LIMITATIONS
Case No. CR-14-00175-TEH

*United States v. Marolf*,
    173 F.3d 1213 (9th Cir. 1999) ............................................................................................. 5

*United States v. Millis*,
    621 F.3d 914 (9th Cir. 2010) ............................................................................................ 12

*United States v. Nash*,
    115 F.3d 1431 (9th Cir. 1997) ........................................................................................... 9

*United States v. Nukida*,
    8 F.3d 665 (9th Cir. 1993) ................................................................................................. 6

*United States v. Pease*,
    No. CR-07-757-PHX-DGC, 2008 U.S. Dist. LEXIS 27331
    (D. Ariz. Mar. 24, 2008) .................................................................................................... 6

*United States v. Sloan*,
    389 F. Supp. 526 (S.D.N.Y. 1975) ............................................................................... 5, 12

*United States v. Smith*,
    740 F.2d 734 (9th Cir. 1984) ......................................................................................... 5, 6

*United States v. Tavarez-Levario*,
    788 F.3d 433 (5th Cir. 2015) ..................................................................................... 10, 13

*United States v. Universal C.I.T. Credit Corp.*,
    344 U.S. 218 (1952) ......................................................................................................... 12

*United States v. W.R. Grace*,
    429 F. Supp. 2d 1207 (D. Mont. 2006) .............................................................................. 6

**STATUTES**

18 U.S.C. § 3282(a) ................................................................................................................ 1, 2

18 U.S.C. § 3284 ....................................................................................................................... 10

22 U.S.C. § 618(e) .................................................................................................................... 10

49 U.S.C. § 60122(a)(1) ........................................................................................................... 10

49 U.S.C. § 60123 ....................................................................................................................... 4

49 U.S.C. § 60123(a) ................................................................................................................ 10

50 U.S.C. App. § 453 ................................................................................................................ 11

50 U.S.C. App. § 462(d) ....................................................................................................... 1, 10

Pub. L. No. 96-129, 93 Stat. 989 ................................................................................................ 4

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii    DEFENDANT'S MOTION TO DISMISS COUNTS
BARRED BY STATUTE OF LIMITATIONS
Case No. CR-14-00175-TEH

**RULES**

Fed. R. Civ. Proc. 12(b) ................................................................................................................. 6

**REGULATIONS**

35 Fed. Reg. 13248 ....................................................................................................................... 4

35 Fed. Reg. 13273 ....................................................................................................................... 4

49 C.F.R. § 190.223(a)................................................................................................................ 12

49 C.F.R. § 190.291(a)................................................................................................................ 12

49 C.F.R. § 192.505 ...................................................................................................................... 7

49 C.F.R. § 192.507 ...................................................................................................................... 7

49 C.F.R. § 192.517 ...................................................................................................................... 2

49 C.F.R. § 192.517(a).................................................................................................................. 7

49 C.F.R. § 192.709 .................................................................................................................. 2, 6

49 C.F.R. § 192.709(a).................................................................................................................. 6

49 C.F.R. § 192.907(a).................................................................................................................. 5

68 Fed. Reg. 4278 ......................................................................................................................... 5

77 Fed. Reg. 26822 ....................................................................................................................... 4

77 Fed. Reg. 26823 ....................................................................................................................... 4

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv    DEFENDANT'S MOTION TO DISMISS COUNTS
BARRED BY STATUTE OF LIMITATIONS
Case No. CR-14-00175-TEH

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

A fundamental principle of our justice system is that a person cannot be charged for a crime allegedly committed outside the statute of limitations that Congress has set.  As the Supreme Court has explained, congressionally imposed time limits ensure that prosecutors act promptly to protect defendants "from having to defend themselves against charges where the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past."  *Toussie v. United States*, 397 U.S. 112, 114-15 (1970), *superseded in part by statute in* 50 U.S.C. App. § 462(d).  Most federal crimes, including those charged here, must be brought within five years.  18 U.S.C. § 3282(a).  In this prosecution, the limitations period is actually almost seven years (six years and 349 days, to be exact) because PG&E voluntarily agreed to give the government more time to investigate its case.  The government cannot prosecute the defendant for acts that occurred before 2007.

Yet, the superseding indictment seeks to do precisely that.  It accuses the defendant of committing knowing and willful criminal acts concerning recordkeeping 45 years ago ("[s]tarting in or about August 1970") or earlier still ("[s]tarting on a date unknown").  These allegations reach back well outside the effective seven-year limitations period.  While the government may wish to present evidence of recordkeeping that occurred when rotary phones and 8-track tapes were still the norm, basic principles of law and fairness bar it from doing so; the alleged crimes are simply too far in the past and too remote to support a modern-day prosecution.  The recordkeeping counts should accordingly be dismissed.

The government presumably has some theory for why the law would allow these evidently stale charges to proceed.  Perhaps the government thinks it is entitled to an exception to the statute of limitations because (it might argue) misplacing or discarding a pipeline record decades ago is an ongoing act that persists—and may be prosecuted—for so long as the records are missing.  Such a theory, however, would vastly expand criminal liability and undermine the whole point of the statute of limitations.  (Moreover, it ignores the fact that the crime requires a "knowing" and "willful" violation, which describes a discrete act.)  The Supreme Court has

made it clear that courts may not craft exceptions to the statute of limitations: only Congress can create a "continuing offense" crime and it must do so clearly. Congress did not do that here. The limitations period began to run as soon as the alleged crime happened and the government could have brought a case.

On the face of the superseding indictment, the alleged recordkeeping offenses were complete, and the statute of limitations ran, many years before the return date. Weeks of trial and months of preparation about stale allegations therefore can (and should) be eliminated by applying basic statute of limitations law and dismissing the recordkeeping counts.

## II. BACKGROUND

### A. The Statute of Limitations

The governing statute of limitations provides that, "no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found . . . within five years next after such offense shall have been committed." 18 U.S.C. § 3282(a). At the government's request, the defendant voluntarily extended this limitations period to approximately seven years.[1] Accordingly, for charges in the original indictment, including Counts 4 and 5, the limitations period reaches back to April 17, 2007. For charges in the superseding indictment, including Counts 24 through 28, the limitations period reaches back to July 29, 2007.

### B. The Allegations of Counts 4, 5 and 24 through 28

Each of these counts concerns regulations—enacted in 1970—about how operators should handle records concerning their underground pipelines. Counts 4 and 5 involve repair records. *See* Superseding Indictment ("SI") ¶ 65; 49 C.F.R. § 192.709. Counts 24 through 28 involve pressure test records. *See* SI ¶ 75; 49 C.F.R. § 192.517. There is quite a lot to be debated about these regulations such as: what they might mean, how operators have interpreted them and, ultimately, whether they can ever be the proper subject of a criminal prosecution. *See* Order Granting in Part and Denying in Part Defendant's Discovery Motions ("Order") 5-9 (Dkt.

---

[1] The defendant signed an agreement suspending the statute of limitations as of April 17, 2012, and repeatedly renewed that agreement until the government brought its original indictment. *See* Taylor Decl. Exs. 1-4.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2    DEFENDANT'S MOTION TO DISMISS COUNTS
BARRED BY STATUTE OF LIMITATIONS
Case No. CR-14-00175-TEH

103).[2] For this motion, what matters about the specific recordkeeping counts are the acts that the defendant is alleged to have knowingly and willfully performed and the time alleged for those acts. They are as follows:

| Counts/Allegations | Action | Time of Action |
|---|---|---|
| Counts 4 and 5 (SI ¶ 65) | "*knowingly and willfully failed to maintain records* concerning the date, location, and description of each repair made to [Lines 132 and 109]" | "Starting on a date unknown to the grand jury and continuing until at least on or about September 9, 2010" Line 132: January 22, 2010 Line 109: January 22, 2010 |
| Counts 24 through 28 (SI ¶ 75) | "*knowingly and willfully failed to retain* . . . a strength test pressure record" | "Starting in or about August 1970, and continuing through the date of this indictment" |
| General recordkeeping allegations (SI ¶¶ 22-24) | "did not have complete data . . . due to missing records and errors and omissions in existing records" "did not create a recordkeeping system . . . that would ensure that pipeline records were accessible, traceable, verifiable, accurate, and complete" | "Starting at a time unknown to the grand jury, and continuing until the San Bruno explosion" |
| General allegation (SI ¶ 33) | "had not maintained a record of . . . a pressure test" | "When the IM regulations went into effect [in 2004]" |

That is the sum total of all references to the time at which the acts underlying the recordkeeping charges allegedly occurred.

The superseding indictment does not make any of the specific kinds of allegations typically seen in an indictment, such as "on or about January X, 2009, Engineer Y knowingly and willfully failed to retain pipeline records by destroying records of the January Z, 2009 pressure test on Line 1001, Segment 837." The closest the indictment comes is when it pairs the

---

[2] The defense will address those distinct issues after the government complies with the Court's Order on our discovery motions. Order (Dkt. 103). We respectfully reserve the right to bring other challenges to these counts.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3   DEFENDANT'S MOTION TO DISMISS COUNTS
BARRED BY STATUTE OF LIMITATIONS
Case No. CR-14-00175-TEH

allegation that the defendant "knowingly and willfully failed to maintain records concerning the date, location, and description of each repair made to" Lines 109 and 132, with a seemingly random date (January 22, 2010). SI ¶ 65. But January 22, 2010 does not correspond to the start date ("a date unknown") or the end date ("September 9, 2010") for Counts 4 and 5. The same date is repeated throughout the superseding indictment in relation to the integrity management counts and, as best we can tell, it may relate to the date of a 2010 "baseline assessment plan," discussed further below.

### C. The Timing of Pipeline Maintenance Laws and Regulations

Although the recordkeeping regulations charged were first adopted in 1970,[3] violation of those regulations had no federal criminal consequences at that time. Congress did not enact the criminal statute at issue in this case until November 30, 1979. Pub. L. No. 96-129, 93 Stat. 989, 992 (1979); 49 U.S.C. § 60123. Accordingly, any conduct before 1979 cannot be a federal crime.

Two other regulations describe exceptions to these regulations and are important in understanding transmission pipeline recordkeeping. First, the 1970 Grandfather Clause regulation provides generally that if pipeline pressure test records (such as those alleged in Counts 24 through 28) did not exist before 1970, operators could continue to operate their pipelines at or below their maximum historical pressure without any such records. *See* 35 Fed. Reg. at 13273. As PHMSA has explained, "the 'grandfather clause[]' allow[ed] pipelines that had safely operated prior to [1970] to continue to operate under similar conditions without retroactively applying recordkeeping requirements or requiring pressure tests." 77 Fed. Reg. 26822, 26823 (May 7, 2012).

Second, from the beginning, the integrity management regulations were intended to guide an evolving and improving process of managing buried gas pipelines. The regulations themselves state that operators should begin with a basic "framework" that, over time, "will evolve into a more detailed and comprehensive program, as information is gained and incorporated into the program." 49 C.F.R. § 192.907(a); *see also* 68 Fed. Reg. 4278, 4312 (Jan.

---

[3]   *See* 35 Fed. Reg. 13248, 13270; 13273 (Aug. 19, 1970).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4   DEFENDANT'S MOTION TO DISMISS COUNTS
BARRED BY STATUTE OF LIMITATIONS
Case No. CR-14-00175-TEH

28, 2003) ("Two essential elements of the integrity management program are that an operator continually assesses and evaluates the pipeline's integrity, and performs an analysis that integrates all available information about the pipeline's integrity. The process of planning, assessment and evaluation will provide operators with better data on which to judge a pipeline's condition and the location of potential problems that must be addressed.").

## III. DISCUSSION

### A. The Recordkeeping Counts Should Be Dismissed Before Trial

All of the recordkeeping counts should be dismissed for failing to allege a violation within the limitations period. The general rule is that the limitations period starts to run as soon as the alleged crime is committed. "[S]tatutes of limitations normally begin to run when the crime is complete." *Toussie*, 397 U.S. at 115; *see also United States v. Smith*, 740 F.2d 734, 736 (9th Cir. 1984) (same). "A crime is complete when each element of the crime has occurred" (*Smith*, 740 F.2d at 736), or, in other words, "the moment the crime is sufficiently complete to enable the government to initiate prosecution" (*United States v. Sloan*, 389 F. Supp. 526, 529 (S.D.N.Y. 1975)). *See also United States v. Drebin*, 557 F.2d 1316, 1333 (9th Cir. 1977) ("The crime is complete as soon as every element in the crime occurs.").

Statutes of limitations "represent[] a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that 'the right to be free of stale claims in time comes to prevail over the right to prosecute them.'" *United States v. Marolf*, 173 F.3d 1213, 1217-18 (9th Cir. 1999) (quoting *United States v. Kubrick*, 444 U.S. 111, 117 (1979)). Further, "[l]imitations statutes . . . are intended to foreclose the potential for inaccuracy and unfairness that stale evidence and dull memories may occasion in an unduly delayed trial." *United States v. Gilchrist*, 215 F.3d 333, 338 (3d Cir. 2000) (omission in original) (quoting *United States v. Levine*, 658 F.2d 113, 127 (3d Cir. 1981)).

Now is the time to address the limitations failings in the indictment—before further pretrial preparation and before trial. A statute of limitations defense "bars prosecution." *Smith*, 740 F.2d at 739. And courts routinely dismiss indictments before trial when the crime charged is time-barred. *See, e.g.*, *Bridges v. United States*, 346 U.S. 209, 227-28 (1953) (stating that "[t]he

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5 DEFENDANT'S MOTION TO DISMISS COUNTS
BARRED BY STATUTE OF LIMITATIONS
Case No. CR-14-00175-TEH

motion to dismiss [the indictment] should have been granted when first made" before trial); *Smith*, 740 F.2d at 739 (affirming pre-trial dismissal on limitations grounds); *United States v. Nukida*, 8 F.3d 665, 669 (9th Cir. 1993) ("Rule 12(b) motions are appropriate to consider 'such matters as . . . statute of limitations[.]'" (citation omitted)).[4]

### 1. Counts 4 and 5: Repair Records

The superseding indictment charges the defendant with knowingly and willfully violating Section 192.709(a) of the Code of Federal Regulations by failing to maintain records for unspecified repairs on Lines 132 and 109. The indictment does not identify any particular repairs or records, or any specific act of failing to maintain such a record. Rather, it generally alleges that the violation occurred "[s]tarting on a date unknown to the grand jury." SI ¶ 65. Because Section 192.709 took effect in 1970, and because the federal criminal statute was enacted in 1979, these counts appear to allege acts that occurred many decades ago.

The government could have "initiate[d] prosecution" for knowingly and willfully failing to maintain a repair record as soon as the record was discarded or destroyed. There are no allegations in the indictment specifying when that act supposedly occurred. Indeed, the government has not alleged a single willful act within the limitations period. That is a critical flaw: the crime charged requires "knowing" and "willful" conduct. This describes a discrete act; an individual must knowingly and willfully discard or destroy a record previously created. Although an indictment need not include "exact dates," it must charge an offense "within the statute of limitations." *United States v. Austin*, 448 F.2d 399, 401 (9th Cir. 1971); *see also United States v. Gammill*, 421 F.2d 185, 186 (10th Cir. 1970) (indictment was insufficient because omission of the year the alleged conduct took place "prevents the indictment from charging an offense within the statute of limitations"). This the government has failed to do.

---

[4] *See also United States v. Lopez*, No. 10CR5155 BTM, 2012 U.S. Dist. LEXIS 5893, at *16 (S.D. Cal. Jan. 19, 2012) (granting motion to dismiss on statute of limitations ground), *aff'd*, 576 F. App'x 680 (9th Cir. 2014); *United States v. Gross*, 159 F. Supp. 316, 322 (D. Nev. 1958) (same); *United States v. Pease*, No. CR-07-757-PHX-DGC, 2008 U.S. Dist. LEXIS 27331, at *7-8 (D. Ariz. Mar. 24, 2008) (granting, in part, motion to dismiss on statute of limitations ground); *United States v. W.R. Grace*, 429 F. Supp. 2d 1207, 1245 (D. Mont. 2006) (same).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6   DEFENDANT'S MOTION TO DISMISS COUNTS
BARRED BY STATUTE OF LIMITATIONS
Case No. CR-14-00175-TEH

There is one date within the limitations period identified in relation to Counts 4 and 5: January 22, 2010. *See* SI ¶ 65. But that date is untethered to the repair recordkeeping allegations. As noted above, it appears that January 22 is meant to reference the date on which the 2010 version of the defendant's "baseline assessment plan" (a document used in planning integrity assessments on select transmission pipelines) was completed. And that same date is repeated throughout the superseding indictment with respect to the integrity management counts. Perhaps, then, the government is trying to tie the 1970 repair recordkeeping regulation to the 2004 integrity management regulations and suggest, *sub silentio*, that the defendant knew as of January 22, 2010 that it had missing records. If so, that does not save the government's case.

As an initial matter, the defendant created its first baseline assessment plan in 2004 and, consistent with the integrity management regulations, has updated that plan annually thereafter, *see* 49 C.F.R. § 192.905(c). Any gaps in the relevant repair records for these lines likely would have become known during the creation of the initial plan—three years outside the limitations period. There is nothing special about the 2010 update such that it would have revealed missing records that prior updates had not. More to the point, any claimed recordkeeping violation was complete, and the government could have brought its case, as soon as the records were discarded or destroyed (with the requisite knowing and willful intent). Unless that happened on January 22, 2010 or on another date within the limitations period, and unless those facts are alleged in the indictment (which they are not), Counts 4 and 5 are time-barred.

### 2. Counts 24 through 28:  Pressure Test Records

The superseding indictment also charges the defendant with knowingly and willfully violating Section 192.517(a) of the Code of Federal Regulations by failing to "retain for the useful life of the pipeline, a record for each [pressure] test performed under § 192.505 and 192.507" containing certain specified information for five transmission lines. *See* SI ¶ 75.[5]

As with Counts 4 and 5, the indictment does not identify any particular pressure test or any particular person who destroyed a pressure test record. It alleges only that the offense occurred beginning in 1970—some 45 years ago. The indictment fails to allege any relevant

---

[5]   Lines 132, 109, 153, 191-1 and DFM 1816-01. SI ¶ 75.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7   DEFENDANT'S MOTION TO DISMISS COUNTS
BARRED BY STATUTE OF LIMITATIONS
Case No. CR-14-00175-TEH

1  conduct within the limitations period. To the contrary, the only other date mentioned in relation
2  to pressure test records (although, notably, not incorporated into Counts 24 through 28), is
3  paragraph 33, which alleges that, "[w]hen the IM regulations went into effect" (*i.e.*, in 2004), the
4  defendant had *already* failed to "maintain[]" pressure test records. SI ¶ 33. At best, all that
5  would mean is that the act of failing to retain the records occurred before January 14, 2004
6  (when the integrity management regulations became effective). It would also mean that the
7  government may have charged the defendant with failing to retain records that did not need to be
8  maintained under the Grandfather Clause.[6]

### 3. The End Dates Do Not Save the Charges

Alleging that the repair and pressure test recordkeeping violations continued until "at least on or about September 9, 2010" (SI ¶ 65) or "through the date of this indictment" (SI ¶ 75), respectively, cannot rescue the defective indictment. "The government . . . cannot simply charge an offense by using the general language of the statute or the common law, but must accompany the generic language with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." *United States v. Hitt*, 249 F.3d 1010, 1025 (D.C. Cir. 2001) (citation and quotation marks omitted). As set forth above, the superseding indictment contains no specific allegations of relevant acts within the limitations period—*i.e.*, between April 17, 2007 and September 9, 2010 for Counts 4 and 5; between July 29, 2007 and July 29, 2014 for Counts 24 through 28.

The D.C. Circuit's decision in *United States v. Hitt* is instructive. There, the indictment alleged that the charged conspiracy persisted until March 1995—a date within the limitations period. 249 F.3d at 1024. But the indictment contained no "specific allegations" of conduct taken in furtherance of that conspiracy after September 1994, one month outside the limitations period. *Id.* at 1017. The D.C. Circuit explained that "the Fifth Amendment requires that criminal prosecutions be limited to the unique allegations of the indictments returned by the grand jury." *Id.* at 1016 (citing *Russell v. United States*, 369 U.S. 749, 768-71 (1962)). Because

---

[6] The Court noted this point. *See* Order 20 (Dkt. 103) ("[T]he Indictment does not include allegations that specific pressure test records were required, and the age of the relevant pipeline suggests it could have been grandfathered in such that no records were required.").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8  DEFENDANT'S MOTION TO DISMISS COUNTS
BARRED BY STATUTE OF LIMITATIONS
Case No. CR-14-00175-TEH

the specific allegations did not show that the conspiracy persisted into the limitations period, the indictment had to be dismissed. *Id.* at 1024-26. The same is true here.

### B. The Continuing Offense Theory Does Not Apply

These statute of limitations violations are so plain that the prosecution must be relying on some theory that (it believes) warrants an exception to the general rule. No such theory is stated on the face of the superseding indictment but, in the interests of prompting a complete legal discussion, we will venture a guess.

It may be that the government is seeking to invoke the so-called "continuing offense" doctrine by using phrases like "starting on . . . and continuing." SI ¶¶ 65, 75. Perhaps the government thinks that the failure to maintain or retain records is a crime that continues for so long as the records are missing and, in that sense, are "continuing offenses." If so, the government misunderstands this very limited exception to the general rule that the limitations period begins to run as soon as the prosecution can bring its case.

The Supreme Court is clear that the continuing offense doctrine "should be applied in only limited circumstances." *Toussie*, 397 U.S. at 115. And there is a simple reason this case is not one of those "limited circumstances"—only Congress can define a continuing offense crime. An offense cannot be continuing unless: (1) "the explicit language of the substantive criminal statute compels such a conclusion"; or (2) "the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." *Id.*; *see United States v. Nash*, 115 F.3d 1431, 1441 (9th Cir. 1997) ("[T]here is a presumption against finding continuing violations unless the language of the statute compels such a conclusion or the nature of the crime involved is such that Congress 'must assuredly have intended that it be treated as a continuing one.'" (citation omitted)). The criminal statute here quickly fails under both prongs.

The language of the statute says only that a person "knowingly and willfully violating . . . a regulation prescribed . . . under this chapter shall be fined under title 18, imprisoned for not more than 5 years, or both." 49 U.S.C. § 60123(a). Nothing there suggests a continuing offense, let alone "compels" such a conclusion. When Congress passes a continuing offense crime, it says so. For example, the bankruptcy concealment statute states: "The concealment of assets of

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9   DEFENDANT'S MOTION TO DISMISS COUNTS
BARRED BY STATUTE OF LIMITATIONS
Case No. CR-14-00175-TEH

a debtor in a case under title 11 shall be deemed to be a continuing offense . . . ." 18 U.S.C. § 3284. The Foreign Agents Registration Act says: "Failure to file any such registration statement or supplements thereto . . . shall be considered a continuing offense for as long as such failure exists, notwithstanding any statute of limitation or other statute to the contrary." 22 U.S.C. § 618(e). And, after the Supreme Court's decision in *Toussie* (discussed above and below), Congress amended the military draft registration statute to clarify that it is now continuing. *See* 50 U.S.C. App. § 462(d).

Here, there is no need to make a guess about Congress's intent: one need look no further than the Pipeline Safety Act itself. Congress did allow for a continuing violation—*but only in civil cases*. In its civil penalty provision, the Act states that "a separate violation occurs for each day the violation continues." 49 U.S.C. § 60122(a)(1). By contrast, the criminal provision contains no analogous language. 49 U.S.C. § 60123(a). "[W]hen 'Congress includes particular language in one section of a statute but omits it in another,'" courts generally presume "that Congress intended a difference in meaning." *Loughrin v. United States*, 134 S. Ct. 2384, 2390 (2014) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)). "If Congress had intended [the criminal offense to be a continuing one], it could have clearly stated so." *United States v. Dunne*, 324 F.3d 1158, 1164 (10th Cir. 2003); *see also United States v. Tavarez-Levario*, 788 F.3d 433, 437-38 (5th Cir. 2015). Congress knew how to create a continuing offense crime and chose not to.

Nor does anything about the "nature" of the statutory offense mean that Congress "assuredly" must have intended it to be continuing—even though it didn't say so explicitly. *Toussie*, 397 U.S. at 115. The statute at issue only criminalizes, at a very general level, a knowing and willful violation of dozens of regulations "prescribed . . . under [the Pipeline Safety Act.]" 49 U.S.C. § 60123(a). There is nothing "inherent in the act" of violating unspecified regulations promulgated (or to be promulgated) under the Pipeline Safety Act indicating that Congress intended for it to be a continuing offense.

That marks the end of the analysis. But, since we are already predicting what the government might say in response, one could imagine the government invoking the specific

regulations charged and arguing that the regulations themselves somehow create a continuing offense. Any such argument would run head first into the Supreme Court's seminal decision in *Toussie*. There, the Court considered whether a defendant's failure to register for the draft constituted a continuing offense. The statute made it the duty of men between the ages of eighteen and twenty-six to "submit to registration at such time or times and place or places, and in such manner, as shall be determined by . . . rules and regulations prescribed hereunder." 397 U.S. at 113 (quoting 50 U.S.C. App. § 453). The implementing regulations required all men to register within five days of their eighteenth birthday, *id.*, but also specified that "[t]he duty of every person subject to registration . . . shall continue at all times," and that "if for any reason any such person is not registered [within five days], he shall immediately present himself for and submit to registration," *id.* at 116.

The government argued that this regulation demonstrated that the duty to register was a continuing one and the failure to register a continuing offense. *Id.* at 115-16. The Supreme Court disagreed. Although "the statute admittedly might be construed as the Government urges," the Court concluded that the statute itself did not compel the government's interpretation. *Id.* at 116. And "[w]hile … the regulation d[id] in explicit terms refer to registration as a continuing duty," the Court refused to permit the regulation to itself create a continuing offense for limitations purposes. *Id.* at 120-21. "Since such offenses are not to be implied except in limited circumstances, and since questions of limitations are fundamentally matters of legislative not administrative decision," the Court explained, the regulation could not "stretch a five-year statute of limitations into a 13-year one, unless the statute itself, apart from the regulation, justifie[d] that conclusion." *Id.* at 121; *see also United States v. Eklund*, 733 F.2d 1287, 1299 (8th Cir. 1984) ("[W]hether an offense is a continuing one is for Congress to determine, and not contingent on administrative regulations.").

In any event, there is nothing explicit in the language of the recordkeeping regulations— or inherent in the nature of those regulations—to support a continuing offense theory. PHMSA's civil and criminal enforcement regulations mirror the statutory dichotomy between the civil violation (which is continuing) and the criminal offense (which is not). *Compare* 49 C.F.R.

1  § 190.223(a) (civil violations "continue[]" until the violation has been remedied), *with* 49 C.F.R.
2  § 190.291(a). And the knowing and willful failure to "maintain" or "retain" a record (of a repair
3  or a pressure test) does not "contemplate[] a prolonged course of conduct." *Dunne*, 342 F.3d at
4  1165. Indeed, *United States v. Sloan*, 389 F. Supp. 526 (S.D.N.Y. 1975), teaches that even when
5  *Congress* (not an agency) has criminalized the failure to maintain certain records—and thus the
6  two-prong test from *Toussie* applies—that is insufficient to establish a continuing crime.[7]

      **C.    Any Exception to the Statute of Limitations Fails Under the Rule of Lenity**

Finally, in trying to determine what the prosecution's theory might be and what it might say in response to our motion, we want to remind the Court about the rule of lenity. As the Supreme Court has explained, "when [a] choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before . . . choos[ing] the harsher alternative, to require that Congress should have spoken in language that is clear and definite." *Toussie*, 397 U.S. at 122 (quoting *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 221-22 (1952)); *see also United States v. Millis*, 621 F.3d 914, 916-17 (9th Cir. 2010) ("[T]he rule of lenity requires courts to limit the reach of criminal statutes to the clear import of their text and construe any ambiguity against the government.") (citation and quotation marks omitted); *Tavarez-Levario*, 788 F.3d at 441 n.6 (same).

This rule applies equally to ambiguity regarding the precise contours of a criminal limitations period. Thus, in *Toussie* itself, "faced with the task of construing a somewhat ambiguous statute in one of two ways"—to either "limit institution of prosecution to a period of

---

[7] In *Sloan*, the government argued that the statute of limitations had not run on the crime of making or maintaining false records. The defendants were charged with "*maintaining* the inaccurate records" and the government asserted that the "crime would not be complete until that required preservation period elapsed." 389 F. Supp. at 528 (emphasis in original). Looking to *Toussie*, the court rejected the government's argument because nothing in the statute extended the time beyond the moment the crime was "sufficiently complete to enable the government to initiate prosecution." *Id.* at 529. The court explained that "there can be no question that the government could have commenced prosecution the day after the false entries were made." *Id.* Similarly, "if defendants had made true entries and thereafter destroyed them, . . . the government . . . could have initiated prosecution the moment the records were destroyed." *Id.* Either way, the statute of limitations began to run the day the wrongful conduct took place and expired five years later. *Id.*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12   DEFENDANT'S MOTION TO DISMISS COUNTS
BARRED BY STATUTE OF LIMITATIONS
Case No. CR-14-00175-TEH

five years following the initial violation, [or] effectively extend the final date for prosecution until as late as 13 years after the crime is first complete"—the Court chose the more lenient construction. 397 U.S. at 122. Here too, if there were any ambiguity as to whether the alleged regulatory violations are continuing offenses or not, or whether some other exception might apply, the rule of lenity requires the Court to answer in the negative and to dismiss the stale charges.

## IV.   CONCLUSION

For the foregoing reasons, the defendant respectfully asks the Court to dismiss Counts 4, 5 and 24 through 28 of the superseding indictment.

Dated:  July 27, 2015                             Respectfully submitted,

By _____/s/_____
Steven M. Bauer
Margaret A. Tough
Melissa Arbus Sherry
LATHAM & WATKINS LLP

Kate Dyer
CLARENCE, DYER & COHEN LLP

*Attorneys for Defendant*
*Pacific Gas and Electric Company*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13   DEFENDANT'S MOTION TO DISMISS COUNTS
BARRED BY STATUTE OF LIMITATIONS
Case No. CR-14-00175-TEH