BRIAN J. STRETCH (CABN 163973)
Acting United States Attorney

DAVID R. CALLAWAY (CABN 121782)
Chief, Criminal Division

HALLIE MITCHELL HOFFMAN (CSBN 210020)
OWEN P. MARTIKAN (CABN 177104)
HARTLEY M. K. WEST (CABN 191609)
Assistant United States Attorneys

MARK ROMLEY (CABN 240655)
Trial Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7129
    Fax: (415) 436-7234
    hallie.hoffman@usdoj.gov
    owen.martikan@usdoj.gov
    hartley.west@usdoj.gov
    mark.romley@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 14-00175 TEH |
| Plaintiff, | MOTION TO COMPEL PACIFIC GAS AND ELECTRIC COMPANY TO PROVIDE NOTICE OF ADVICE-OF-COUNSEL DEFENSE |
| v. | |
| PACIFIC GAS AND ELECTRIC COMPANY, | Hearing: October 19, 2015 |
| Defendant. | Time: 2:30 p.m. |

MTN. TO COMPEL PG&E TO PROVIDE NOTICE OF ADVICE OF COUNSEL DEFENSE; [PROPOSED] ORDER
CR 14-00175 TEH

## I. INTRODUCTION

The United States moves this Court to compel PG&E to provide notice of, and reciprocal discovery concerning, any advice-of-counsel defense by November 9, 2015. While PG&E has thus far declined to state whether it intends to assert such a defense, the government believes it is a possibility because PG&E's attorneys were likely involved in the drafting of letter at the center of the obstruction charge. Raising this defense would expand PG&E's discovery obligations under Federal Rule of Criminal Procedure 16(b)(1)(A) to include any materials relating to such a defense. Advance notice is necessary to allow the United States adequate time to review discovery and prepare for trial, as well as to resolve potential conflicts of interest between PG&E and its counsel. The Court should exercise its authority to require such notice in the interests of justice and judicial economy.

## II. BACKGROUND

On September 9, 2010, a PG&E natural gas pipeline exploded in a residential neighborhood of San Bruno, California, killing eight people and injuring fifty-eight more. Dkt 22, Superseding Indictment ("SI") ¶¶ 2-5. On April 1, 2014, a grand jury indicted PG&E on twelve counts of violating the Natural Gas Pipeline Safety Act, arising out of this explosion. A Superseding Indictment filed July 30, 2014, charged PG&E with obstructing the investigation of this explosion by the National Transportation Safety Board ("NTSB"), in violation of 18 U.S.C. § 1505 a. SI ¶ 61.

### A. The Planned Pressure Increases

As the Superseding Indictment alleges, federal regulations required PG&E to assess the integrity of its pipeline segments for manufacturing threats, such as seam defects or corrosion, and to maintain records regarding such assessments and their results. SI ¶¶ 9-21. Regulations deemed segments high-risk if they exhibited "unstable" manufacturing threats, including where (a) a pipeline's operating pressure exceeded a segment's maximum operating pressure for five years ("5-year MOP") before that segment was identified as being in a highly populated area – known as a high consequence area ("HCA"), or (b) the maximum allowable operating pressure ("MAOP") for the pipeline increased. SI ¶ 15. PG&E was required to conduct costly and time-intensive testing and analysis of any segment designated as high-risk. SI ¶¶ 14-17.

In 2003, PG&E adopted a practice of planned pressure increases ("PPIs"), which entailed raising the pressure on several old, highly-pressurized gas transmission pipelines located in HCAs to their MAOPs for two hours. SI ¶ 34. In so doing, PG&E at times exceeded the pipelines' 5-year MOP and/or MAOP. *Id.* To avoid having to conduct the expensive testing for high-risk lines, PG&E chose to disregard federal regulations and relevant agency guidance and instead consider a manufacturing threat unstable only if the pressure on the pipeline exceeded the 5-year MOP by at least 10%. SI ¶¶ 38, 58.

**B.     The NTSB Investigation**

The NTSB is an independent federal agency dedicated to promoting aviation, railroad, highway, marine, pipeline, and hazardous materials safety. SI ¶ 53. The NTSB's investigation of PG&E's 2010 pipeline explosion in San Bruno included on-site investigation, collection of records, witness interviews, and a three-day public hearing. SI ¶ 54. The investigation revealed that, among other deficiencies, PG&E's records relating to the establishment and calculation of the 5-year MOP and MAOP for Line 132, the pipeline that exploded, were incomplete and inaccurate. SI ¶ 55.

The NSTB issued document requests to PG&E between September 2010 and January 2011 seeking information about how PG&E set and maintained its MOP and MAOP. SI ¶¶ 55, 56. Specifically, the NTSB requested records concerning instances in which PG&E had exceeded the 5-year MOPs and /or MAOPs of pipelines in HCAs. SI ¶ 56. In a response dated February 22, 2011, PG&E submitted a document titled "Risk Management Instruction-0" ("RMI-06"), setting forth PG&E's policy of considering a manufacturing threat unstable only if pressure on the pipeline exceeded the 5-year MOP by 10% ("the 10% Version"). SI ¶ 57. The coversheet indicated that the 10% Version was prepared in February 2008 and approved in March 2008. SI ¶ 57.

On April 6, 2011, PG&E sent the NTSB a letter claiming that the 10% Version of RMI-06 it had submitted was merely an unapproved draft. SI ¶59. PG&E's representative to the NTSB, William Hayes, signed the April 6, 2011 letter ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. In fact, PG&E followed the practice set forth in the 10% Version from 2009 through approximately April 2011. SI ¶ 59. This April 6, 2011 letter forms the basis of the Superseding Indictment's obstruction charge (Count One).

### C. PGE's Reliance on Counsel and Invocation of the Attorney-Client Privilege

Since November 2014, PG&E has refused to produce certain documents and excerpts of documents on the ground that this material is protected by the attorney-client privilege. Indeed, as of May 2015, PG&E has asserted the attorney-client privilege as to approximately 40,000 documents. Based on Hayes' testimony that attorneys were likely involved in the drafting of the April 6, 2011 letter, the government presumes that PG&E has withheld records and communications pertaining to the letter pursuant to the attorney-client privilege and/or the work product doctrine.

Beginning weeks after the original Indictment and in four letters following the Superseding Indictment – dated September 12, 2014, September 22, 2014, March 31, 2015 and April 17, 2015 – the government asked PG&E's counsel for notice as to whether it intended to assert an advice-of-counsel defense and, if so, seeking discovery relevant to that defense. The government's letters also raised the concern that an advice-of-counsel defense could trigger a potential conflict of interest. PG&E responded in letters dated September 24, 2014 and April 4, 2015, refusing to give notice and denying the government's request for reciprocal discovery relevant to that defense.

Having failed to receive a response concerning PG&E's potential assertion of an advice-of-counsel defense, the government now moves to compel PG&E to provide notice of this defense, should it choose to assert it, and to produce all relevant evidence.

### III. DISCUSSION

### A. Proving Good Faith Reliance on the Advice of Counsel

A defendant who reasonably relies on the advice of counsel may "not be convicted of a crime which involves wilful and unlawful intent." *Williamson v. United States*, 207 U.S. 425, 453 (1908). "Advice of counsel is not regarded as a separate and distinct defense but rather as a circumstance indicating good faith which the trier of fact is entitled to consider on the issue of fraudulent intent." *Bisno v. United States*, 299 F.2d 711, 719 (9th Cir. 1961). A defendant who seeks an advice-of-counsel instruction must show that he made a "full disclosure to his attorney of all material facts" and that he relied "in good faith on the specific course of conduct recommended by the attorney." *United States v. Ibarra-Alcarez*, 830 F.2d 968, 973 (9th Cir. 1987). *See also* Ninth Circuit Model Criminal Jury Instruction 5.9 (2010 ed.) ("Unlawful intent has not been proved if the defendant, before acting, made

full disclosure of all material facts to an attorney, received the attorney's advice as to the specific course of conduct that was followed, and reasonably relied on that advice in good faith.").

A defendant who asserts a good-faith defense based on the advice of counsel waives the attorney-client privilege as to communications relating to the advice. *See United States v. Bilzerian*, 926 F.2d 1285, 1292-93 (2d Cir. 1991) (followed by *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992)); *United States v. Quiel*, 595 Fed. Appx. 692, 694 (9th Cir. 2014) (concluding that defendants waived attorney-client privilege by relying on "an advice-of-counsel defense"). *See also United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999) (quoting *Chevron Corp.*, 974 F.2d at 1162) (party may implicitly waive attorney-client privilege by raising "'a claim which in fairness requires disclosure of the protected communication'"). This rule stems from the principle that a party may not use the attorney-client privilege "both as a sword and a shield." *United States v. Ortland*, 109 F.3d 539, 543 (9th Cir. 1997) (quoting *Chevron Corp.*, 974 F.2d at 1162).

**B.     The Court Should Require PG&E to Provide Notice of Intent to Rely on Advice of Counsel**

While the Federal Rules of Criminal Procedure do not require notice of an advice-of-counsel defense, district courts have concluded that they have the inherent authority to order a defendant to provide notice of an intent to rely on this defense. *See United States v. Mubayyid*, 2007 WL 1826067, at *2 (D. Mass. June 22, 2007) (early notice may be warranted where it is "reasonably necessary to ensure a fair and reasonably efficient trial"). *See also United States v. Hatfield*, 2010 WL 183522, at *13 (E.D.N.Y. Jan. 8, 2010); *United States v. Cooper*, 283 F. Supp. 2d 1215, 1225 (D. Kan. Aug. 21, 2003).

Advance notice of an advice-of-counsel defense will promote judicial efficiency and the public's right to a speedy trial. Assertion of such a defense will likely require PG&E to produce thousands of documents it previously withheld. In the context of Count One, emails surrounding the April 6, 2011 letter likely were withheld on the basis of attorney-client privilege. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ The government will then require substantial time to review these records, as well as to interview witnesses and perhaps seek additional discovery. Only after such investigation can the United States assess whether PG&E has satisfied the criteria for an advice-of-

counsel instruction – disclosure of all material facts to its attorneys and good faith reliance on the attorneys' recommended course of conduct. Notice sufficiently in advance of trial, as requested by the government, will permit such production, review, and investigation without jeopardizing the trial date.

Moreover, requiring advance notice will not unfairly prejudice PG&E. It is not entitled to protection under the attorney-client privilege if it intends to rely on the advice of counsel. *Ortland*, 109 F.3d at 543. And it already has all the information needed to determine whether to pursue such a defense – the communications it had with its attorneys and the actions it subsequently took.

### C. PG&E's Reliance on an Advice-of-Counsel Defense Raises a Potential Conflict of Interest

"A criminal defendant is entitled to counsel whose undivided loyalties lie with his client." *United States v. Ellison*, 798 F.2d 1102, 1106-07 (7th Cir. 1986). A conflict of interest exists between a defense attorney and his client where the legal interests of the two are incompatible. *See Plumee v. Masto*, 512 F.3d 1204 (9th Cir. 2008). Where a prosecutor becomes aware before trial of a potential conflict between a defendant and his counsel, the prosecutor is obligated to bring the potential conflict to the attention of the Court. *See Mannhalt v. Reed*, 847 F.2d 576, 583-84 (9th Cir. 1988).

An attorney cannot ethically testify against his or her client. "If attorney's testimony . . . [would be] adverse to a defense that a defendant might have offered, a conflict of interest exist[s]." *United States v. Miskinis*, 966 F.2d 1263, 1269 (9th Cir. 1992). "The conflict would [be] particularly acute if the advice . . . [the attorney would give] would have constituted a violation of the rules of professional ethics." *Id.* Where an attorney cannot act in his or her client's best interests without fearing possible self-incrimination, such as an admission of malpractice, an actual conflict of interest exists. *Ellison*, 798 F.2d at 1107 ("Any contention by counsel that defendant's allegations were not true would . . . contradict his client," making him "both counselor and witness for the prosecution."). *See also Mannhalt*, 847 F.2d at 581.

In this case, a potential conflict exists between PG&E and the attorney(s) who may have drafted the misleading April 6, 2011 letter underlying Count One. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ If PG&E chooses to pursue an advice-of-counsel defense to Count

One, it may need to call as witnesses the attorney or attorneys responsible for drafting the letter – or the government may choose to call them. An actual conflict would exist if the attorney(s) would testify adversely to PG&E's advice of counsel theory, *Miskinis*, 966 F.2d at 1269, or could not act in PG&E's best interests without concern of admitting malpractice or another form of self-incrimination, *Ellison*, 798 F.2d at 1107.

The existence of this potential conflict adds urgency to the government's request for notice and further supports this Court's exercise of authority in granting that request.

## IV.   CONCLUSION

Not only is requiring advance notice an appropriate exercise of this Court's authority – as it will promote judicial economy and satisfy the public's interest in a speedy trial without prejudicing the defense – but it is essential to resolve the potential conflict of interest. The Court should therefore order PG&E to notify the government whether it intends to offer an advice-of-counsel defense, and to provide discovery concerning the same, no later than November 9, 2015.

DATED: September 7, 2015

Respectfully submitted,

BRIAN J. STRETCH
United States Attorney

HALLIE M. HOFFMAN
Assistant United States Attorney

[PROPOSED] ORDER

FOR GOOD CAUSE SHOWN, IT IS HEREBY ORDERED THAT PG&E shall notify the government whether it intends to offer an advice-of-counsel defense, and shall provide discovery concerning the same, no later than November 9, 2015.

IT IS SO ORDERED.

DATED: September __, 2015

_____
HON. THELTON E. HENDERSON
SENIOR U.S. DISTRICT JUDGE