1  LATHAM & WATKINS LLP
       Steven M. Bauer (Bar No. 135067)
2           steven.bauer@lw.com
       Margaret A. Tough (Bar No. 218056)
3           margaret.tough@lw.com
   505 Montgomery Street, Suite 2000
4  San Francisco, California  94111-6538
   Telephone:  +1.415.391.0600
5  Facsimile:  +1.415.395.8095

6  LATHAM & WATKINS LLP
       Melissa Arbus Sherry (*pro hac vice*)
7           melissa.sherry@lw.com
   555 11th Street, NW, Suite 1000
8  Washington, DC  20004-1304
   Telephone:  +1.202.637.2200
9  Facsimile:  +1.202.637.2201

10 CLARENCE, DYER & COHEN LLP
       Kate Dyer (Bar No. 171891)
11          kdyer@clarencedyer.com
   899 Ellis Street
12 San Francisco, California  94109-7807
   Telephone:  +1.415.749.1800
13 Facsimile:  +1.415.749.1694

14 Attorneys for Defendant
   PACIFIC GAS AND ELECTRIC COMPANY
15

16              UNITED STATES DISTRICT COURT
17            NORTHERN DISTRICT OF CALIFORNIA
                 SAN FRANCISCO DIVISION
18

19 UNITED STATES OF AMERICA          CASE NO. CR-14-00175-TEH

20      v.                           **DEFENDANT'S MOTION TO DISMISS
                                     FOR FAILURE TO STATE AN
21 PACIFIC GAS AND ELECTRIC COMPANY, OFFENSE: COUNTS 2-28**

22      Defendant.

23                                   **Judge:    Hon. Thelton Henderson
                                     Date:     October 19, 2015
24                                   Time:     10:00 A.M.
                                     Place:    Courtroom 2, 17th Floor**

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEF.'S MOT. TO DISMISS FOR FAILURE TO
STATE AN OFFENSE: COUNTS 2-28
Case No. CR-14-00175-TEH

1

## NOTICE OF MOTION AND MOTION

2   PLEASE TAKE NOTICE that on October 19, 2015, at 10:00 a.m., Defendant Pacific Gas

3 and Electric Company ("PG&E") will and hereby does move this Court for an order granting its

4 Motion to Dismiss Counts 2-28 of the Superseding Indictment For Failure to State An Offense.

5   Defendant respectfully requests that this Court issue an order dismissing Counts 2-28 of

6 the superseding indictment.  The motion will be based on this Notice of Motion and

7 accompanying Memorandum of Points and Authorities, the files and records of this case, and

8 such other argument and evidence as the Court may consider.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
SAN FRANCISCO

DEF.'S MOT. TO DISMISS FOR FAILURE TO
STATE AN OFFENSE: COUNTS 2-28
Case No. CR-14-00175-TEH

# TABLE OF CONTENTS

Page

I.     **INTRODUCTION** ................................................................................................ 1

II.    **DISCUSSION** .................................................................................................... 2

     A.    Procedural Background .............................................................................. 2

     B.    Congress Authorized States to Assume Exclusive Regulatory and
Enforcement Authority over Intrastate Pipelines ...................................... 3

     C.    The CPUC Has Exclusive Regulatory Authority over Intrastate
Pipelines in California ............................................................................... 6

     D.    Because of California's Exclusive Authority over the Intrastate
Pipelines, the Indictment Does Not Allege a Federal Offense ............................ 7

     E.    The Pipeline Safety Act Is Consistent with Other Cooperative
Federalism Regimes ................................................................................ 11

     F.    The Rule of Lenity Resolves Any Claimed Ambiguity in the
Statute .................................................................................................... 12

III.    **CONCLUSION** ............................................................................................. 13

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

DEF.'S MOT. TO DISMISS FOR FAILURE TO
STATE AN OFFENSE: COUNTS 2-28
Case No. CR-14-00175-TEH

## <u>TABLE OF AUTHORITIES</u>

### CASES

Page(s)

*City & Cty. of San Francisco v. U.S. Dep't of Transp.*,
  2015 U.S. App. LEXIS 13274 (9th Cir. July 30, 2015)...............................................*passim*

*Cleveland v. United States*,
  531 U.S. 12 (2000)............................................................................................................ 13

*Crandon v. United States*,
  494 U.S. 152 (1990).......................................................................................................... 12

*Intri-Plex Techs., Inc. v. Crest Grp., Inc.*,
  499 F.3d 1048 (9th Cir. 2007) ........................................................................................... 1

*TRW Inc. v. Andrews*,
  534 U.S. 19 (2001).............................................................................................................. 9

*United States v. Boren*,
  278 F.3d 911 (9th Cir. 2002) ............................................................................................. 3

*United States v. Broncheau*,
  597 F.2d 1260 (9th Cir. 1979) ........................................................................................... 3

*United States v. Carroll*,
  2015 U.S. Dist. LEXIS 62914 (N.D. Cal. May 13, 2015) .................................................. 3

*United States v. Cogswell*,
  637 F. Supp. 295 (N.D. Cal. 1985) ................................................................................... 3

*United States v. Granderson*,
  511 U.S. 39 (1994)............................................................................................................ 13

*United States v. Millis*,
  621 F.3d 914 (9th Cir. 2010) ........................................................................................... 13

*United States v. Miranda-Lopez*,
  532 F.3d 1034 (9th Cir. 2008) ......................................................................................... 12

*United States v. Santos*,
  553 U.S. 507 (2008).......................................................................................................... 12

*United States v. Yuri Sidorenko*,
  2015 U.S. Dist. LEXIS 52452 (N.D. Cal. Apr. 21, 2015) ................................................. 3

### STATUTES

18 U.S.C. § 1519 ...................................................................................................................... 3

29 U.S.C. § 666(e) ................................................................................................................. 11

29 U.S.C. § 667(b)-(c) ........................................................................................................... 11

29 U.S.C. § 667(e) ................................................................................................................. 11

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
SAN FRANCISCO

ii

DEF.'S MOT. TO DISMISS FOR FAILURE TO
STATE AN OFFENSE: COUNTS 2-28
Case No. CR-14-00175-TEH

30 U.S.C. § 1253(a) ................................................................................................ 11

30 U.S.C. § 1268(e) ................................................................................................ 11

30 U.S.C. § 1271(b) ................................................................................................ 11

33 U.S.C. § 1319(c)(1)(A) ...................................................................................... 12

33 U.S.C. § 1319(c)(2)(A) ...................................................................................... 12

33 U.S.C. § 1319(c)(3)(A) ...................................................................................... 12

33 U.S.C. § 1342(b) ................................................................................................ 12

33 U.S.C. § 1342(i) ................................................................................................. 12

42 U.S.C. § 6926(b) ................................................................................................ 12

42 U.S.C. § 6928(d)(4) ........................................................................................... 12

42 U.S.C. § 6928(d)(5) ........................................................................................... 12

42 U.S.C. § 7410(a) ................................................................................................ 11

42 U.S.C. § 7410(c) ................................................................................................ 11

42 U.S.C. § 7413(c) ................................................................................................ 11

49 U.S.C. § 60105 ................................................................................................... 10

49 U.S.C. § 60105(a) ................................................................................... 4, 7, 8, 11

49 U.S.C. § 60105(b)(2) ........................................................................................... 4

49 U.S.C. § 60105(b)(5)-(7) ..................................................................................... 4

49 U.S.C. § 60105(f) ............................................................................................... 10

49 U.S.C. § 60114 ..................................................................................................... 8

49 U.S.C. § 60114(b) ............................................................................................ 7, 9

49 U.S.C. § 60114(e) ................................................................................................ 9

49 U.S.C. § 60118(a) ................................................................................................ 7

49 U.S.C. § 60121 .................................................................................................... 9

49 U.S.C. § 60121(a)(1) ........................................................................................... 9

49 U.S.C. § 60121(c) ........................................................................................... 9, 10

49 U.S.C. § 60122 .................................................................................................... 9

49 U.S.C. § 60123(a) ..................................................................................... 3, 7, 9, 11

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEF.'S MOT. TO DISMISS FOR FAILURE TO
STATE AN OFFENSE: COUNTS 2-28
Case No. CR-14-00175-TEH

49 U.S.C. § 60128 ....................................................................................................... 7

Cal. Pub. Util. Code § 701 ......................................................................................... 7

Cal. Pub. Util. Code § 957 ......................................................................................... 6

Fed. R. Crim. P. 12(b) ............................................................................................... 2

Fed. R. Crim. P. 12(b)(3)(B)(v) ............................................................................... 2

H.R. Rep. No. 90-1390 (1968), *as reprinted in* 1968 U.S.C.C.A.N. 3223 .............. 3, 4

Natrual Gas Pipeline Safety Act, Pub. L. No. 90-481, 82 Stat. 720 ........................ 3, 4

S. Rep. No. 96-182 (1979), *as reprinted in* 1979 U.S.C.C.A.N. 1971 ...................... 5

**OTHER AUTHORITIES**

*About U.S. Natural Gas Pipelines*, U.S. Energy Info. Admin.,
   http://www.eia.gov/pub/oil_gas/natural_gas/analysis_publications/ngpipeline/
   intrastate.html (last visited Sept. 6, 2015)................................................................. 1

Investigation into the Operations & Practices of Pac. Gas & Elec. Co. in
   Connection with the San Bruno Explosion, No. 12-01-007 (Cal. Pub. Util.
   Comm'n Apr. 9, 2015) (decision on fines and remedies),
   http://docs.cpuc.ca.gov/PublishedDocs/Published/G000/M150/K990/
   150990886.PDF ....................................................................................................... 1

Investigation into the Operations & Practices of Pac. Gas & Elec. Co. with
   Respect to Records, No. 11-02-016  (Cal. Pub. Util. Comm'n Feb. 24, 2011)
   (modified presiding officer's decision), http://docs.cpuc.ca.gov/
   PublishedDocs/Efile/G000/M148/K364/148364509.PDF...................................... 7

*Natural Gas Pipeline Safety Regulations:  Hearings on S. 1166 Before the S.
   Comm. on Commerce*, 90th Cong. 11 (1967) (testimony of Alan S. Boyd,
   Sec'y of Transp.)...................................................................................................... 5

*Pipeline Safety Since San Bruno and Other Incidents:  Hearing Before the S.
   Subcomm. on Surface Transp. and Merchant Marine Infrastructure, Safety,
   and Sec. of the Comm. on Commerce, Science, and Transp.*, 112th Cong. 16
   (2011) (statement of Cynthia L. Quarterman, Adm'r, Pipeline and Hazardous
   Materials Safety Admin., U.S. Dep't of Transp.) .................................................... 5

Press Release, U.S. Dep't of Justice, PG&E Charged with Multiple Violations of
   the Natural Gas Pipeline Safety Act (April. 1, 2014), *available at*
   http://www.justice.gov/usao-ndca/pr/pge-charged-multiple-violations-natural-
   gas-pipeline-safety-act. ........................................................................................... 2

Robert L. Fischman*, Cooperative Federalism and Natural Resources Law*, 14
   N.Y.U. Envtl. L.J. 179 (2005)................................................................................ 11

**REGULATIONS**

49 C.F.R. pt. 192................................................................................................... 7

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

DEF.'S MOT. TO DISMISS FOR FAILURE TO
STATE AN OFFENSE: COUNTS 2-28
Case No. CR-14-00175-TEH

1

## CONSTITUTIONAL PROVISIONS

2

Cal. Const., art. XII, § 6 ........................................................................................................... 7

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v

DEF.'S MOT. TO DISMISS FOR FAILURE TO
STATE AN OFFENSE: COUNTS 2-28
Case No. CR-14-00175-TEH

1                      <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.       INTRODUCTION**

Last April, the State of California, through its Public Utilities Commission ("CPUC"), penalized PG&E $1.6 billion for state regulatory violations concerning its recordkeeping practices, integrity management programs, and the San Bruno explosion.[1]  The CPUC imposed the penalty after thirty months of regulatory discovery and thirty-two days of hearings, including hearings to determine the maximum penalty PG&E could bear without imperiling its ability to provide gas and electric power to California residents.  Justified as fulfilling the CPUC's "intention to penalize PG&E for its violations and to deter similar behavior and violations in the future," this unprecedented penalty was forty-two times larger than any previous CPUC safety-related penalty and fifteen times larger than any penalty ever imposed after a gas pipeline accident anywhere in the nation.[2]

The CPUC imposed this penalty, not the federal Department of Transportation or some other federal agency.  This is because Congress deliberately gave States the option to assume exclusive responsibility for regulating natural gas pipelines, like the defendant's, that do not cross state lines.[3]  As the Ninth Circuit recently held, Congress has allowed California, through the CPUC, to "assume[] exclusive regulatory jurisdiction over most intrastate pipelines within its borders."  *City & Cty. of San Francisco v. U.S. Dep't of Transp.*, No. 13-15855, 2015 U.S. App. LEXIS 13274, at *5 (9th Cir. July 30, 2015).  Recognizing the CPUC's exclusive regulatory

---

[1]  *See* Investigation into the Operations & Practices of Pac. Gas & Elec. Co. in Connection with the San Bruno Explosion, No. 12-01-007, at 1-2 (Cal. Pub. Util. Comm'n Apr. 9, 2015) (decision on fines and remedies), http://docs.cpuc.ca.gov/PublishedDocs/Published/G000/M150/K990/150990886.PDF ("CPUC Decision on Fines and Remedies").

[2]  CPUC Decision on Fines and Remedies at 3.

[3]  Defendant PG&E is one of the more than 90 intrastate natural gas pipeline operators in the country.  *About U.S. Natural Gas Pipelines*, U.S. Energy Info. Admin., http://www.eia.gov/pub/oil_gas/natural_gas/analysis_publications/ngpipeline/intrastate.html (last visited Sept. 6, 2015).  Although the cited website is not incorporated into the superseding indictment, as a publication of a federal administrative agency it is a "'matter[] of public record'" of which the Court may take judicial notice, "as long as the facts noticed are not 'subject to reasonable dispute.'"  *Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007) (citation omitted).

authority, PG&E did not appeal the penalty.  Instead, the company ceased its legal challenges and continued its focus on becoming the safest energy provider in America.[4]

And yet, the federal government is now seeking an additional $1.13 billion penalty. Almost four years after the accident, the United States Department of Justice brought this case alleging violations of the same safety standards and declaring the same justifications (safety, deterrence, and punishment) underlying the CPUC's $1.6 billion penalty.[5]  How is it that the federal government can seek a duplicate penalty after it has officially certified that the State has exclusive authority to regulate pipeline safety on intrastate pipelines in California?

We submit that exclusive means exclusive, and that federal prosecutors and the Department of Justice cannot seek a second penalty.  The State of California has exclusive authority to regulate intrastate pipeline facilities within its borders, and it has done so here.  The Ninth Circuit recently affirmed this principle in *City & County of San Francisco*.  There, the federal government responded to San Francisco's lawsuit urging greater federal oversight of the CPUC by arguing that the CPUC holds "exclusive regulatory authority over the intrastate pipelines" within the State.[6]  That argument carried the day, with the Ninth Circuit ruling that "the federalism structure of the Pipeline Safety Act favors state assumption of jurisdiction."  *City & Cty. of San Francisco*, 2015 U.S. App. LEXIS 13274, at *22.  Now, less than two months later, the same rationale applies.  Therefore, the defendant respectfully requests that the Court dismiss Counts 2 through 28.

## II.    DISCUSSION

### A.    Procedural Background

Federal Rule of Criminal Procedure 12(b) permits a defendant to move to dismiss an indictment for failure to state an offense.  Fed. R. Crim. P. 12(b)(3)(B)(v).  The district court

---

[4]  Because this is a motion to dismiss based on the face of the indictment and judicially noticeable facts, at this point defendant will refrain from submitting evidence of its pipeline safety improvement efforts of the past five years.

[5]  *See* Press Release, U.S. Dep't of Justice, PG&E Charged with Multiple Violations of the Natural Gas Pipeline Safety Act (April. 1, 2014), *available at* http://www.justice.gov/usao-ndca/pr/pge-charged-multiple-violations-natural-gas-pipeline-safety-act.

[6]  Oral Argument at 17:11-17:25, *City & Cty. of San Francisco*, 2015 U.S. App. LEXIS 13274 (No. 13-15855), http://www.ca9.uscourts.gov/media/view_video.php?pk_vid=0000007688.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEF.'S MOT. TO DISMISS FOR FAILURE TO
STATE AN OFFENSE: COUNTS 2-28
Case No. CR-14-00175-TEH

must "accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged."  *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002).  If the charges within the indictment fail to state an offense against the United States, "a district court is deprived of jurisdiction and must dismiss the defective claims."  *United States v. Carroll*, No. CR-13-0566 EMC, 2015 U.S. Dist. LEXIS 62914, at *3 (N.D. Cal. May 13, 2015) (citing *United States v. Broncheau*, 597 F.2d 1260, 1262 n.1 (9th Cir. 1979)).  Many courts in this district and elsewhere have dismissed indictments after determining that the alleged conduct did not state a federal offense.  *See, e.g.*, *id.* at *12 (dismissing several counts of the indictment after finding that a car was not a "tangible object" under 18 U.S.C. § 1519 and therefore the actions alleged in those counts did not state a criminal offense); *United States v. Yuri Sidorenko*, No. 3:14-cr-00341-CRB, 2015 U.S. Dist. LEXIS 52452, at *19, 24 (N.D. Cal. Apr. 21, 2015) (dismissing the indictment after finding that the charged statute did not apply extraterritorially); *United States v. Cogswell*, 637 F. Supp. 295, 298-99, 300 (N.D. Cal. 1985) (dismissing the indictment after finding that the charged statute did not contain a duty to report transactions under $10,000 and, therefore, did not criminalize the conduct alleged in the indictment).

The indictment here alleges violations of 49 U.S.C. § 60123(a), which makes it a crime to "knowingly and willfully violat[e] . . . a regulation prescribed or order issued under this chapter." The indictment alleges that each of the charged counts occurred within the Northern District of California.  Superseding Indictment ("SI") ¶¶ 63, 65, 67, 69, 71, 73, 75.

### B. Congress Authorized States to Assume Exclusive Regulatory and Enforcement Authority over Intrastate Pipelines

When Congress adopted the Pipeline Safety Act in 1968, it entered a field that the States had long dominated.  *See* Natural Gas Pipeline Safety Act of 1968, Pub. L. No. 90-481, 82 Stat. 720; H.R. Rep. No. 90-1390, at 13 (1968), *as reprinted in* 1968 U.S.C.C.A.N. 3223, 3228 (noting that, at the time of passage, nearly every State had adopted a natural gas regulatory scheme); *City & Cty. of San Francisco*, 2015 U.S. App. LEXIS 13274, at *4 ("Although interstate pipelines have been subject to federal regulation since 1938, states retained exclusive jurisdiction over regulation of pipelines wholly within their borders until 1968.").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEF.'S MOT. TO DISMISS FOR FAILURE TO
STATE AN OFFENSE: COUNTS 2-28
Case No. CR-14-00175-TEH

1    Congress's goal was to establish a core set of common, national standards without

2    usurping the States' traditional regulation of natural gas pipelines with their borders.  So

3    Congress set up a "cooperative federalism scheme" that assigned the federal government a

4    comparatively passive role.  *City & Cty. of San Francisco*, 2015 U.S. App. LEXIS 13274, at *5.

5    The federal government would provide core safety standards and default enforcement

6    mechanisms that apply in the absence of state participation, but the States could choose to retain

7    their traditional exclusive regulatory and enforcement authority by certifying to the Secretary of

8    Transportation that they had adopted their own safety standards, at least as stringent as the

9    federal ones, along with a set of specified enforcement options.  Natural Gas Pipeline Safety Act

10   of 1968, Pub. L. No. 90-481, § 5(a), 82 Stat. 720, 722-23.[7]

11   The idea behind this structure, as Congress explained, was "that State law and State

12   enforcement replace the Federal law for local facilities where the State agency has undertaken

13   conscientiously and effectively to adopt and enforce the Federal standards."  H.R. Rep. No. 90-

14   1390, at 29, 1968 U.S.C.C.A.N. at 3245.  On this, the Pipeline Safety Act today is very clear:

15/16/17/18
>    Except as provided in this section and sections 60114 and 60121 of this title, the Secretary of Transportation *may not prescribe or enforce safety standards and practices for an intrastate pipeline facility or intrastate pipeline transportation* to the extent that the safety standards and practices are regulated by a State authority . . . that submits to the Secretary annually a certification for the facilities and transportation that complies with subsections (b) and (c) of this section.

19   49 U.S.C. § 60105(a) (emphasis added).  Under subsection (b), the state authority must certify,

20   among other things, that it has certain specified enforcement authority and has "adopted, by the

21   date of certification, each applicable standard prescribed under this chapter."  *Id.* § 60105(b)(2),

22   (5)-(7).  Subsection (c) imposes certain reporting requirements.  *Id.* § 60105(c).  Thus, once the

23   State certifies its adoption of the necessary standards and enforcement authorities, the Secretary

24

25/26/27/28
---
[7]    That section provided that "the provisions of this Act shall not apply to pipeline facilities and the transportation of gas . . . within a State when the safety standards and practices applicable to same are regulated by a State agency (including a municipality) which submits to the Secretary an annual certification that such State agency (1) has regulatory jurisdiction over the safety standards and practices of such pipeline facilities and transportation of gas; (2) has adopted each Federal safety standard applicable to such pipeline facilities and transportation of gas established under this Act as of the date of the certification; [and] (3) is enforcing each such standard."

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4                    DEF.'S MOT. TO DISMISS FOR FAILURE TO
STATE AN OFFENSE: COUNTS 2-28
Case No. CR-14-00175-TEH

1   of Transportation can exercise no regulatory authority over intrastate pipeline facilities or

2   transportation (outside the narrow exceptions provided in Section 60114 and 60121).

3         There is no controversy about this proposition.  For example:

4         **Congress** has modified the Pipeline Safety Act numerous times in the past nearly half-

5   century, but its intention that "pipeline facilities subject to . . . State jurisdiction [under the

6   Pipeline Safety Act] are not subject to Federal regulation and enforcement" has not wavered.

7   S. Rep. No. 96-182, at 11-12 (1979), *as reprinted in* 1979 U.S.C.C.A.N. 1971, 1981-82

8   (explaining that an amendment to "the opening language of section 5(a)" was adopted "to reflect

9   more accurately the intent of the [Pipeline Safety Act] that, with certain exceptions, pipeline

10  facilities subject to a section 5(a) State jurisdiction are not subject to Federal regulation and

11  enforcement").

12        The **Secretary of Transportation**, during hearings on the 1968 Pipeline Safety Act, was

13  asked if there would be "dual enforcement of the safety code" by both state and federal

14  governments.  He testified:  "No sir.  We have every hope that we will be able to effect

15  agreements, as I mentioned in my testimony, whereby there will be some single agency

16  enforcement, which in some cases may be Federal and others State, but not duplicating."[8]

17        The head of the **Pipeline and Hazardous Materials Safety Administration**

18  ("PHMSA"), the Department of Transportation's ("DOT") primary pipeline safety regulator,

19  testified before Congress in 2011 that once the DOT certifies a State's compliance with those

20  requirements, the DOT "is prohibited by statute from regulating the safety standards or practices

21  for an intrastate pipeline facility."[9]

22        The **Department of Justice**, as mentioned above, representing the DOT, opposed a local

23  lawsuit by the City and County of San Francisco seeking greater federal oversight of the CPUC,

24  contending that once a State "issue[s] a certification . . . that satisfies § 60105(b) and (c), then

25  _____

26  [8]  *Natural Gas Pipeline Safety Regulations:  Hearings on S. 1166 Before the S. Comm. on Commerce*, 90th Cong. 11 (1967) (testimony of Alan S. Boyd, Sec'y of Transp.).

27  [9]  *Pipeline Safety Since San Bruno and Other Incidents:  Hearing Before the S. Subcomm. on Surface Transp. and Merchant Marine Infrastructure, Safety, and Sec. of the Comm. on*

28  *Commerce, Science, and Transp.*, 112th Cong. 16 (2011) (statement of Cynthia L. Quarterman, Adm'r, Pipeline and Hazardous Materials Safety Admin., U.S. Dep't of Transp.).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5   DEF.'S MOT. TO DISMISS FOR FAILURE TO
STATE AN OFFENSE: COUNTS 2-28
Case No. CR-14-00175-TEH

under § 60105(a) they automatically take over exclusive regulatory authority over the intrastate pipelines."  Oral Argument at 17:11-17:25, *City & Cty. of San Francisco*, 2015 U.S. App. LEXIS 13274 (No. 13-15855).  The Department of Justice wrote that "States . . . have exclusive enforcement authority over those facilities."  Brief for Appellees at 4, *City & Cty. of San Francisco*, 2015 U.S. App. LEXIS 13274 (No. 13-15855).

The **Ninth Circuit** unequivocally endorsed the federal government's position that the State has exclusive regulatory and enforcement authority.  The Court recognized that "[i]f a state certifies that it has adopted the minimum federal safety standards and is enforcing those standards, the state assumes *exclusive regulatory jurisdiction* over most intrastate pipelines within its borders."  *City & Cty. of San Francisco,* 2015 U.S. App. LEXIS 13274, at *5 (emphasis added).

### C.   The CPUC Has Exclusive Regulatory Authority over Intrastate Pipelines in California

When Congress authorized state exclusivity over pipeline safety regulations, California promptly assumed this exclusive authority.  "California has participated in this cooperative federalism scheme for decades."  *Id.* at *7; *see also City & Cty. of San Francisco v. U.S. Dep't of Transp.*, No. C 12-0711 RS, 2013 U.S. Dist. LEXIS 27854, at *3 (N.D. Cal. Feb. 28, 2013) ("Since the 1970s, California has, through the [California Public Utilities Commission], submitted an annual certification to the Secretary to regulate all intrastate natural gas pipelines in the state, except for certain pipelines that are beyond the scope of its authority, which remain subject to federal regulation.").

The details underlying California's participation in the Pipeline Safety Act's cooperative federalism scheme show two things:  First, California has a long-time commitment to prescribe and enforce pipeline safety regulations under state law that are consistent with the federal standards.  Indeed, California's standards exceed the federal standards.  *See, e.g.*, Cal. Pub. Util. Code § 957 (imposing automatic shutoff valve requirements that go beyond those required by federal law).  Second, the federal government has long recognized California's sole authority.  Shortly after promulgation of the federal pipeline safety standards in 1970, the CPUC adopted

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

those standards—laid out in 49 C.F.R. pt. 192—as part of its General Order 112-C.[10]  Until 1995, the CPUC regularly updated General Order 112 to reflect updates to the federal safety standards.  *Id.*  Then, in 1995, the CPUC adopted General Order 112-E, which includes a provision that "automatically incorporated any revisions to the" federal standards.  *See id.*  The CPUC explained that, "[a]s soon as the final order adopting [changes to the federal standards] is published in the Federal Register, the changes will automatically be effective in California," as a matter of state law, through General Order 112-E.  *Pac. Gas & Elec. Co.*, No. 93-08-053, at 9 (Cal. Pub. Util. Comm'n Aug. 11, 1995), http://docs.cpuc.ca.gov/PUBLISHED/Graphics/ 1284.PDF.  General Order 112-E remains in effect today.

There is no dispute that we have in California a regulatory system where "the safety standards and practices are regulated by a State authority" that has submitted "a certification" in compliance with Section 60105(a).  Accordingly, as the Ninth Circuit held, California has assumed "exclusive regulatory jurisdiction over most intrastate pipelines within its borders." *City & Cty. of San Francisco,* 2015 U.S. App. LEXIS 13274, at *5.

### D.    Because of California's Exclusive Authority over the Intrastate Pipelines, the Indictment Does Not Allege a Federal Offense

The next question for this motion is:  How is this principle reflected in the specific statutes and allegations in this case?  The government here must prove that a "person knowingly and willfully violat[ed] section 60114(b), 60118(a), or 60128 of this title *or a regulation prescribed* or order issued *under this chapter*."  49 U.S.C. § 60123(a) (emphasis added).  The government does not allege a violation of sections 60114(b), 60118(a), or 60128; it alleges only violations of regulations prescribed under the Pipeline Safety Act.  From the discussion above, however, we know that the regulations applicable to PG&E are prescribed and enforced not by the federal government, but by the State of California, pursuant to the California Constitution and California Public Utilities Code.  *See* Cal. Const., art. XII, § 6; Cal. Pub. Util. Code § 701.

---

[10]   *See* Investigation into the Operations & Practices of Pac. Gas & Elec. Co. with Respect to Records, No. 11-02-016, at 31 (Cal. Pub. Util. Comm'n Feb. 24, 2011) (modified presiding officer's decision), http://docs.cpuc.ca.gov/PublishedDocs/Efile/G000/M148/K364/ 148364509.PDF.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEF.'S MOT. TO DISMISS FOR FAILURE TO
STATE AN OFFENSE: COUNTS 2-28
Case No. CR-14-00175-TEH

1  Recall that the Pipeline Safety Act specifically says that the regulations applicable to the

2  pipelines at issue here cannot be prescribed by the federal government, since it has certified the

3  State as the sole regulator:

> Except as provided in this section and sections 60114 and 60121 of this title, the
> Secretary of Transportation *may not prescribe or enforce safety standards and
> practices for an intrastate pipeline facility or intrastate pipeline transportation* to
> the extent that the safety standards and practices are regulated by a State authority
> . . . that submits to the Secretary annually a certification for the facilities and
> transportation that complies with subsections (b) and (c) of this section.

8  49 U.S.C. § 60105(a) (emphasis added).

9  Because the pipelines here are intrastate pipelines and California is a certifying state, the

10 regulations that directly govern PG&E's conduct are the CPUC regulations.  California has

11 adopted as its own the safety standards described in the federal regulations, and added more

12 itself.  Thus, under the cooperative federalism scheme Congress adopted in the Pipeline Safety

13 Act, it is the CPUC-prescribed regulations that apply in this case.  The federal regulations by

14 themselves do not apply of their own force to PG&E's intrastate pipelines.  This is how the

15 Pipeline Safety Act's cooperative federalism regime works, and why the Ninth Circuit ruled that

16 that the State has "exclusive regulatory jurisdiction."  *City & Cty. of San Francisco,* 2015 U.S.

17 App. LEXIS 13274, at *5.  For that reason, the Pipeline Safety Act counts of the superseding

18 indictment—which require a violation of regulations prescribed by the federal government,

19 rather than regulations prescribed and enforced pursuant to the California Constitution and

20 California Public Utilities Code—should be dismissed.

21 To be thorough, let us examine the exceptions to the general rule stated in section

22 60105(a).  We will see that they do not apply to this case, but that their language confirms that

23 the Pipeline Safety Act counts should be dismissed.  Section 60105(a) specifies that it applies to

24 state-regulated intrastate facilities "[e]xcept as provided in this section and sections 60114 and

25 60121."  The first exception, under Section 60114, authorizes the Secretary to prescribe

26 standards for a one-call notification system through which pipeline operators are required to

27 mark pipeline locations to protect them from construction occurring nearby.  *See* 49 U.S.C.

28 § 60114.  Where an intrastate pipeline operator fails to comply—even in a certifying State—the

LATHAM&WATKINS<sup></sup>
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEF.'S MOT. TO DISMISS FOR FAILURE TO
STATE AN OFFENSE: COUNTS 2-28
Case No. CR-14-00175-TEH

1   Secretary may bring an administrative enforcement action under Section 60122 or request that

2   the Attorney General bring a civil enforcement action under Section 60120. *Id.* § 60114(e).  And

3   the criminal enforcement provision, Section 60123(a), separately and expressly makes the

4   pipeline operator's failure to mark the locations upon request a criminal offense, subject to

5   prosecution in the Attorney General's discretion. *See id.* § 60123(a) (criminalizing a knowing

6   and willful violation of Section 60114(b)).  This, of course, is significant, because it shows that

7   when Congress intended to preserve the federal government's authority to regulate and enforce a

8   particular provision, it knew how to do so, and said so directly.

9          The second exception comes in Section 60121.  That provision contains the Act's citizen-

10   suit provision, which allows a private party to seek an injunction against violations "of this

11   chapter or a regulation prescribed or order issued under this chapter." *Id.* § 60121(a)(1).

12   Tailoring that provision to violations that occur in certifying States, Congress provided that "*[i]n*

13   *this section*, a violation of a safety standard or practice of a State *is deemed to be* a violation of

14   this chapter or a regulation prescribed or order issued under this chapter only to the extent the

15   standard or practice is not more stringent than a comparable minimum safety standard prescribed

16   under this chapter." *Id.* § 60121(c) (emphasis added).  This provision is significant, again,

17   because it shows that a violation of "a safety standard or practice" in a certifying State *is not* "a

18   violation of this chapter or a regulation prescribed or order issued under this chapter."  Violations

19   in certifying States must be "deemed to be" violations of the federal standards for purposes of the

20   citizen-suit provision.  Where Congresses intended to "deem" a violation of a state regulation to

21   be a violation of a "regulation prescribed or order issued under this chapter," it said so directly.

22          Neither exception applies here.  And "'[w]here Congress explicitly enumerates certain

23   exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of

24   evidence of a contrary legislative intent.'" *TRW Inc. v. Andrews*, 534 U.S. 19, 29 (2001)

25   (citation omitted).  The superseding indictment charges violations of regulations that, under

26   Section 60105, do not apply to intrastate pipelines in a certifying State.  Unlike the citizen-suit

27   provision, moreover, the criminal provision contains no language "deem[ing]" violations of state

28

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEF.'S MOT. TO DISMISS FOR FAILURE TO
STATE AN OFFENSE: COUNTS 2-28
Case No. CR-14-00175-TEH

1    law to be violations of "regulation[s] prescribed or order[s] issued under this chapter."  49 U.S.C.

2    § 60121(c).

3        This is a basic example of cooperative federalism—the federal government making sure

4    that the States retain their traditional authority to regulate conduct within their borders.  Here, as

5    described above, California rigorously enforced its regulations (which by law are and must be *at*

6    *least* as stringent as the federal regulations that would apply in non-certifying States), requiring

7    additional safety and maintenance measures and imposing record-setting penalties after lengthy

8    legal hearings.  The CPUC has adopted state-law standards that mirror the federal safety

9    standards, and has sole authority to impose substantial fines for their violation.  As the Ninth

10   Circuit has said, "the federalism structure of the Pipeline Safety Act favors state assumption of

11   jurisdiction."  *City & Cty. of San Francisco*, 2015 U.S. App. LEXIS 13274, at *22.

12       Finally, be assured that Congress's use of cooperative federalism does not leave the

13   federal government powerless to correct safety and regulatory problems in a certifying State.

14   Whenever the Secretary is dissatisfied with the State's performance, he may "reject the

15   certification" and "assert United States Government jurisdiction" after giving the State "notice

16   and an opportunity for a hearing."  49 U.S.C. § 60105(f); *see City & Cty. of San Francisco*, 2015

17   U.S. App. LEXIS 13274, at *5-6.  At that point, intrastate pipelines would again become directly

18   subject to the federal regulations.  But as long as the State is certified, it retains exclusive

19   regulatory and enforcement authority.  The federal government cannot come in after the fact to

20   enforce federal regulations that have been displaced by state law, let alone seek to impose

21   duplicate penalties.

22       In sum, Congress's decision in Section 60105 to give certifying States exclusive

23   regulatory and enforcement authority prevents this second enforcement action by federal

24   prosecutors.  Counts 2 through 28 allege that PG&E violated federal pipeline safety regulations

25   promulgated by PHMSA on certain of PG&E's pipelines.  All of the charged lines, however, are

26   intrastate pipelines, and the Department of Transportation has affirmatively disclaimed any

27   authority to prescribe safety standards or practices on an intrastate pipeline.  The Department of

28   Justice cannot bring a federal enforcement action for violating federal regulations when the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

DEF.'S MOT. TO DISMISS FOR FAILURE TO
STATE AN OFFENSE: COUNTS 2-28
Case No. CR-14-00175-TEH

charged conduct is exclusively regulated by the State instead. *See* 49 U.S.C. §§ 60105(a), 60123(a).

**E.      The Pipeline Safety Act Is Consistent with Other Cooperative Federalism Regimes**

To persons familiar with regulatory and criminal law enforcement, this is not an anomalous situation. For more than half a century, Congress has used similar regimes to obtain the benefits of local regulation and enforcement while also pursuing coordinated federal purposes. *See, e.g.*, Robert L. Fischman, *Cooperative Federalism and Natural Resources Law*, 14 N.Y.U. Envtl. L.J. 179, 184 (2005) ("Since the New Deal, cooperative federalism typically appears as congressional or administrative efforts to induce (but not coerce or commandeer) states to participate in a coordinated federal program." (footnote omitted)). In numerous comparable statutory schemes, Congress has ceded regulatory authority and corresponding criminal enforcement responsibilities to States that wish to assume them.

For example, under the Occupational Safety and Health Act ("OSHA"), a State may submit a plan for the development and enforcement of safety standards within its borders. 29 U.S.C. § 667(b)-(c). Once the Secretary of Labor approves a State's plan, OSHA's federal criminal enforcement provision no longer applies. *See id.* §§ 666(e), 667(e). Another example is the Clean Air Act, where States that prefer their own approach to achieving national ambient air quality standards may develop a State Implementation Plan. *See* 42 U.S.C. § 7410(a); *see also id.* § 7410(c) (providing for creation of federal standards in States that do not develop plans). If the Administrator of the Environmental Protection Agency ("EPA") approves a State's plan, the federal government then gives up its authority to bring a criminal enforcement action for violations of the implementation plan in most circumstances. *See id.* § 7413(c). A third example is the Surface Mining Control and Reclamation Act ("SMCRA"). There, States may "assume exclusive jurisdiction over the regulation of surface coal mining and reclamation operations," subject to certain exceptions. 30 U.S.C. § 1253(a). With exclusive state regulation, SMCRA's federal civil and criminal enforcement provisions are inapplicable to violations of the state program. *See id.* § 1268(e); *id.* § 1271(b).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

DEF.'S MOT. TO DISMISS FOR FAILURE TO
STATE AN OFFENSE: COUNTS 2-28
Case No. CR-14-00175-TEH

1    In other situations, by contrast, Congress has chosen to make it a federal crime to violate

2  a state regulatory regime.  Where it takes that route, however, it does so expressly.  Under the

3  Clean Water Act, for example, interested States can request authority from the EPA

4  Administrator to issue discharge permits.  *See* 33 U.S.C. § 1342(b).  The Clean Water Act

5  specifically provides that it is a federal crime to violate "any permit condition . . . in a permit

6  issued under section 1342 of this title . . . by a State," *id.* § 1319(c)(1)(A), (c)(2)(A), (c)(3)(A),

7  and that the grant of permitting authority to a State shall not "be construed to limit the authority

8  of the Administrator to take action pursuant to" the statute's enforcement provisions, *id.*

9  § 1342(i).  Similarly, the Resource Conservation and Recovery Act authorizes States to

10 "administer and enforce a hazardous waste program . . . in lieu of the Federal program," 42

11 U.S.C. § 6926(b), but it extends the statute's criminal enforcement provision to violations of

12 "regulations promulgated under this subchapter (*or by a State in the case of an authorized State*

13 *program*)," *id.* § 6928(d)(4) (emphasis added); *see also id.* § 6928(d)(5) (same).

**F.     The Rule of Lenity Resolves Any Claimed Ambiguity in the Statute**

15    Sections 60105(a) and 60123(a) seem quite clear.  But if the government were to argue

16 there is some kind of ambiguity about what "enforce" or "prescribe" or "regulation" means, the

17 Counts should still be dismissed.  The rule of lenity requires that "any ambiguity in the ambit of

18 the statute's coverage" be resolved against the government.  *Crandon v. United States*, 494 U.S.

19 152, 158 (1990); *see also United States v. Miranda-Lopez*, 532 F.3d 1034, 1040 (9th Cir. 2008)

20 ("The 'longstanding' rule of lenity requires us to resolve any ambiguity in the scope of a criminal

21 statute in favor of the defendant." (citation omitted)).  "This venerable rule not only vindicates

22 the fundamental principle that no citizen should be . . . subjected to punishment that is not clearly

23 prescribed," but "also places the weight of inertia upon the party that can best induce Congress to

24 speak more clearly and keeps courts from making criminal law in Congress's stead."  *United*

25 *States v. Santos*, 553 U.S. 507, 514 (2008) (plurality opinion).  Where, as here, the "text,

26 structure, and history [of the Act] fail to establish that the Government's position is

27

28

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

12

DEF.'S MOT. TO DISMISS FOR FAILURE TO
STATE AN OFFENSE: COUNTS 2-28
Case No. CR-14-00175-TEH

1    unambiguously correct," the Court must "resolve the ambiguity in [the defendant's] favor."

2    *United States v. Granderson*, 511 U.S. 39, 54 (1994).[11]

3           The rule of lenity, we note, arises repeatedly in our discussions of the allegations in this

4    case.  In fact, it figures prominently in the analysis of each count of this indictment.  One reason

5    is that the government is asserting so many novel and untested prosecution theories—in a case

6    requiring knowing and willful intent.  As relevant here, this case appears to be the first and only

7    time in the Pipeline Safety Act's 47-year history that the federal government has ever sought to

8    bring a criminal case against an intrastate pipeline operator for regulatory violations in a State

9    with a certified regulator.  When the government posits a creative theory in a criminal case, the

10    rule of lenity may require dismissal.

11    **III.    CONCLUSION**

12           The State of California has imposed huge penalties and significant reforms concerning

13    the regulatory violations alleged here.  The federal Department of Justice now seeks to add

14    another layer to the punishment already imposed by the defendant's rightful regulator.  Because

15    Congress has left the State with exclusive authority to regulate intrastate pipelines within its

16    borders, however, Counts 2 through 28 fail to state a violation of federal law.  The defendant

17    respectfully requests that the Court dismiss those counts from the superseding indictment.

18

19

20

21

22

---

23    [11]   To head off one last possible government argument, note that it makes no difference, for

24    purposes of the lenity doctrine, that state law imposes requirements identical to the federal regulations.  In *Cleveland v. United States*, for example, Louisiana law criminalized the making

25    of false statements in applications for gaming licenses.  531 U.S. 12, 23, 24 (2000).  In resolving whether those same false statements violated *federal* law, however, the Supreme Court found the

26    rule of lenity "especially appropriate," and "'require[d] that Congress . . . sp[eak] in language that is clear and definite'" before the Court would convert the state offense into a federal one.  *Id.*

27    at 25 (citation omitted); *cf. United States v. Millis*, 621 F.3d 914, 918 (9th Cir. 2010) ("Millis likely could have been charged under a different regulatory section, [but] that is not the question

28    presented here.  The only question is whether the rule of lenity should be applied to the offense charged.  We conclude that it does apply . . . .").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13    DEF.'S MOT. TO DISMISS FOR FAILURE TO
STATE AN OFFENSE: COUNTS 2-28
Case No. CR-14-00175-TEH

Dated:  September 7, 2015                Respectfully submitted,

                                         By _____/s/_____
                                            Steven M. Bauer
                                            Margaret A. Tough
                                            Melissa Arbus Sherry
                                            LATHAM & WATKINS LLP

                                            Kate Dyer
                                            CLARENCE, DYER & COHEN LLP

                                            *Attorneys for Defendant*
                                            *Pacific Gas and Electric Company*