LATHAM & WATKINS LLP
   Steven M. Bauer (Bar No. 135067)
      steven.bauer@lw.com
   Margaret A. Tough (Bar No. 218056)
      margaret.tough@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California  94111-6538
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095

LATHAM & WATKINS LLP
   Melissa Arbus Sherry (*pro hac vice*)
      melissa.sherry@lw.com
555 11th Street, NW, Suite 1000
Washington, DC  20004-1304
Telephone: +1.202.637.2200
Facsimile: +1.202.637.2201

CLARENCE, DYER & COHEN LLP
   Kate Dyer (Bar No. 171891)
      kdyer@clarencedyer.com
899 Ellis Street
San Francisco, California  94109-7807
Telephone: +1.415.749.1800
Facsimile: +1.415.749.1694

Attorneys for Defendant
PACIFIC GAS AND ELECTRIC COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>                    Defendant. | CASE NO. CR-14-00175-TEH<br><br>**DEFENDANT'S MOTION TO DISMISS FOR MULTIPLICITY: COUNTS 3, 7, 8, 10-14, 16-18, AND 20-23**<br><br>**Judge:** Hon. Thelton Henderson<br>**Date:** October 19, 2015<br>**Time:** 10:00 A.M.<br>**Place:** Courtroom 2, 17th Floor |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEF.'S MOT. TO DISMISS
FOR MULTIPLICITY
Case No. CR-14-00175-TEH

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on October 19, 2015, at 10:00 a.m., Defendant Pacific Gas and Electric Company ("PG&E") will and hereby does move this Court for an order dismissing Counts 3, 7, 8, 10 through 14, 16 through 18, and 20 through 23 of the superseding indictment as multiplicitous.  The Motion will be based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the files and records of this case, and such other argument and evidence as the Court may consider.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEF.'S MOT. TO DISMISS
FOR MULTIPLICITY
Case No. CR-14-00175-TEH

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ..................................................................................................................1

II.    BACKGROUND ...................................................................................................................2

III.    DISCUSSION........................................................................................................................4

IV.    CONCLUSION .....................................................................................................................9

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

DEF.'S MOT. TO DISMISS
FOR MULTIPLICITY
Case No. CR-14-00175-TEH

# TABLE OF AUTHORITIES

Page(s)

### CASES

*Bell v. United States*,
   349 U.S. 81 (1955) ............................................................................................................... 7

*Brown v. United States*,
   623 F.2d 54 (9th Cir. 1980) ..................................................................................... 1, 4, 7, 9

*Sanabria v. United States*,
   437 U.S. 54 (1978) ............................................................................................................... 4

*United States v. Clements*,
   471 F.2d 1253 (9th Cir. 1972) ............................................................................................. 4

*United States v. Keen*,
   104 F.3d 1111 (9th Cir. 1996) ............................................................................................. 1

*United States v. Personal Finance Co.*,
   174 F. Supp. 871 (S.D.N.Y. 1959) ............................................................................. 6, 7, 8, 9

*United States v. Sherman*,
   821 F.2d 1337 (9th Cir. 1987) ............................................................................................. 1

*United States v. UCO Oil Co.*,
   546 F.2d 833 (9th Cir. 1976) ............................................................................................... 1

*United States v. Universal C.I.T. Credit Corp.*,
   344 U.S. 218 (1952) ..................................................................................................... *passim*

*United States v. Universal C.I.T. Credit Corp.*,
   102 F. Supp. 179 (W.D. Mo. 1952) ................................................................................... 5

*United States v. Zalapa*,
   509 F.3d 1060 (9th Cir. 2007) ............................................................................................. 4

### STATUTES

18 U.S.C. § 3571(c)(3) ................................................................................................................. 3

18 U.S.C. § 922(a)(6) ................................................................................................................... 7

49 U.S.C. § 60109(c)(1) ............................................................................................................... 8

49 U.S.C. § 60123 ........................................................................................................................ 8

49 U.S.C. § 60123(a) ............................................................................................................ 2, 3, 7

50 U.S.C. App. § 2133 ................................................................................................................ 6

Pub. L. No. 96-129, 93 Stat. 989 (1979) ..................................................................................... 8

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

DEF.'S MOT. TO DISMISS
FOR MULTIPLICITY
Case No. CR-14-00175-TEH

**REGULATIONS**

49 C.F.R. § 192.901 ................................................................................................................. 2

49 C.F.R. § 192.907(a) ......................................................................................................... 2, 8

49 C.F.R. § 192.909(a) ............................................................................................................ 8

49 C.F.R. § 192.917 ................................................................................................................. 2

49 C.F.R. § 192.917(a) ............................................................................................................ 3

49 C.F.R. § 192.917(b) ............................................................................................................ 3

49 C.F.R. § 192.917(e)(3) ........................................................................................................ 3

49 C.F.R. § 192.917(e)(4) ........................................................................................................ 3

49 C.F.R. § 192.919 .............................................................................................................. 2, 3

68 Fed. Reg. 4278 (Jan. 28, 2003) ........................................................................................... 8

68 Fed. Reg. 69778 (Dec. 15, 2003) ........................................................................................ 8

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

DEF.'S MOT. TO DISMISS
FOR MULTIPLICITY
Case No. CR-14-00175-TEH

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The superseding indictment alleges that PG&E adopted two unlawful practices and created one allegedly incomplete report in connection with its integrity management program, and thereby violated five federal regulations. But the government charges PG&E with committing *twenty* crimes as a result, on the theory that each "pipeline" purportedly affected by a practice, or inadequately described in a report, constitutes a separate offense. That multiplication of crimes has no basis in the statute. The government might just as easily have charged thousands of counts, treating every foot of pipeline, every PG&E employee, or every page of the report as a separate crime.

It is settled law that each course of conduct that is alleged to violate a regulation gives rise to one, single crime—no matter how many times that course of conduct is repeated—unless Congress provides otherwise in "clear and definite" language. Take, for example, an employer who wrongly refuses to pay for time spent cleaning up after shifts, and as a consequence underpays every employee in every paycheck over several months. Is that a separate violation for every underpaid employee? For every paycheck? No—it is one violation, for adopting the unlawful policy. *See United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 224-25 (1952). A felon who is legally barred from possessing any firearm or ammunition is found in possession of a loaded shotgun. One crime or two? *See United States v. Keen*, 104 F.3d 1111, 1119-20 (9th Cir. 1996) (one). A defendant makes multiple false statements on one purchase form for a gun (*e.g.*, he lies about his name and his criminal history). One crime per false statement or one per form? *See Brown v. United States*, 623 F.2d 54, 59 (9th Cir. 1980) (one per form).

The prosecution is not entitled to "pyramid by a multi-count indictment" the punishment provided by Congress for a single offense, *United States v. UCO Oil Co.*, 546 F.2d 833, 835 (9th Cir. 1976), or to prejudice the defendant with the jury by making one alleged crime look like many, *United States v. Sherman*, 821 F.2d 1337, 1340 (9th Cir. 1987). The multiplicitous counts should be dismissed.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEF.'S MOT. TO DISMISS
FOR MULTIPLICITY
Case No. CR-14-00175-TEH

## II. BACKGROUND

Counts 2, 3, and 6 through 23 of the superseding indictment allege violations of the integrity management regulations for natural gas transmission pipelines. Superseding Indictment ("SI") ¶¶ 62-63, 66-73. These regulations address what a natural gas pipeline operator is required to do to maintain the integrity of the segments of its transmission pipelines that could, in the event of failure, affect certain densely populated areas; these segments are referred to as "covered segments." *See* 49 C.F.R. § 192.901 *et seq.* The regulations provide that pipeline operators should develop a basic "framework" that, over time, "will evolve into a more detailed and comprehensive program," as information is gained and incorporated into the program. 49 C.F.R. § 192.907(a).

In 49 U.S.C. § 60123(a), Congress made it a crime to "knowingly and willfully violat[e] a regulation prescribed or order issued under [the Pipeline Safety Act]," which includes these integrity management regulations. The relevant counts charge the defendant with committing this crime twenty times by violating five different regulatory requirements. Counts 2 and 3, 6 through 8, and 15 through 23 allege that PG&E knowingly and willfully violated four subsections of 49 C.F.R. § 192.917 by (i) failing to gather and integrate existing data and information that could be relevant to covered segments on two of its pipelines (Counts 2-3), SI ¶ 63; (ii) failing to identify and evaluate potential threats to covered segments on three of its pipelines (Counts 6-8), SI ¶ 67; and (iii) failing to appropriately prioritize for assessment certain covered segments on six pipelines (Counts 15-23), SI ¶¶ 71, 73. Counts 9 through 14 allege that PG&E knowingly and willfully violated 49 C.F.R. § 192.919 by failing to include in an assessment plan all potential threats to covered segments, and the most suitable assessment method to assess those threats, on six of its pipelines. SI ¶ 69.

The superseding indictment charges all of these violations on a pipeline-by-pipeline basis. So it includes one count for each pipeline about which the defendant allegedly failed to gather and integrate existing data and information, *see* SI ¶ 63, one count for each pipeline as to which the defendant allegedly failed to identify and evaluate potential threats, *see* SI ¶ 67, and so on. With a maximum fine of $500,000 for each count (fines under the Alternative Fines Act

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEF.'S MOT. TO DISMISS
FOR MULTIPLICITY
Case No. CR-14-00175-TEH

aside),[1] these twenty counts expose the defendant to up to $10 million in criminal fines.  *See* 49 U.S.C. § 60123(a); 18 U.S.C. § 3571(c)(3).

The factual allegations, however, claim that PG&E's integrity management program failures resulted not from distinct pipeline-by-pipeline decisions, but from two practices or policies, and one plan—each of which was adopted by PG&E once, for its entire system.

- PG&E allegedly failed to "gather and integrate existing data and information" regarding covered segments on two pipelines, as required by 49 C.F.R. § 192.917(b), (**Count 2 plus Count 3**), because of its "failure to create a recordkeeping system for gas operations that would ensure that pipeline records were accessible, traceable, verifiable, accurate, and complete."  SI ¶ 24; *see also* SI ¶ 22-28.

- PG&E allegedly failed to "identify and evaluate potential threats" to covered segments on three pipelines based on such data, as required by 49 C.F.R. § 192.917(a), (**Count 6 plus Counts 7 and 8**), because of the same alleged shortcomings in its recordkeeping.  *See* SI ¶ 22-28.

- PG&E allegedly failed to include in its January 22, 2010 baseline assessment plan "all potential threats" to covered segments on six pipelines and the "most suitable assessment method to assess" those threats, (**Count 9 plus Counts 10, 11, 12, 13, and 14**), in violation of 49 C.F.R. § 192.919.  SI ¶ 69.

- PG&E allegedly failed to prioritize for assessment certain covered segments posing threats of manufacturing defects on four pipelines, as required by 49 C.F.R. § 192.917(e)(3), (**Count 15 plus Counts 16, 17, and 18**), because of its alleged policy of "consider[ing] a manufacturing threat unstable if the pressure on the pipeline exceeded the 5-year MOP by 10% or more."  SI ¶¶ 37-38.

- PG&E allegedly failed to prioritize for assessment certain covered segments containing low frequency electric resistance welded pipe on five pipelines, as required by 49 C.F.R. § 192.917(e)(4), (**Counts 19 plus Counts 20, 21, 22, and 23**), because of the exact same alleged policy about when manufacturing threats should be considered unstable.  *See* SI ¶¶ 37-38.

Without the pipeline-by-pipeline multiplication of counts, that would allege five crimes—one for each integrity management regulation PG&E allegedly violated.  The maximum exposure for those five integrity management counts (and, again, setting the alternative fines to the side) would be $2.5 million.

---

[1] See the defendant's motion to dismiss for erroneous legal instructions to the grand jury and motion to dismiss the Alternative Fines Act sentencing allegations, both filed concurrently with this motion.

## III. DISCUSSION

The integrity management counts are multiplicitous. The superseding indictment alleges that, by following two allegedly unlawful company policies and practices and creating one integrity management report, the defendant knowingly and willfully violated five regulatory provisions and committed twenty crimes. It accomplishes that multiplication by charging each regulatory violation on a pipeline-by-pipeline basis—*i.e.*, by charging PG&E with a separate crime for carrying out its system-wide policies with respect to the integrity management of each of several different pipelines, and for inadequately addressing each of several pipelines in the same annual report.

When a defendant is accused of committing multiple violations of the same provision of law through a single course of conduct, a court's task is to determine the statutorily defined "unit of prosecution."[2] The question is whether Congress intended to exercise its power to authorize "cumulative punishments" for the defendant's single course of conduct or single transaction. *Brown*, 623 F.2d at 57 (quoting *United States v. Clements*, 471 F.2d 1253, 1254 (9th Cir. 1972)). And the long-settled rule is that, without a "clear and definite" contrary statement, Congress is presumed to intend only a single crime, and a single punishment, for each course of conduct that violates the law.

*C.I.T.* is the Supreme Court precedent on point. As noted above, the Court considered there whether the unit of prosecution for criminal violation of the Fair Labor Standards Act's minimum-wage, maximum-hours, and recordkeeping provisions was a separate offense for each employee, each week they were underpaid, overworked, or under-documented, or one offense for each course of conduct that led to those failures. *See C.I.T.*, 344 U.S. at 219-21. The Act's

---

[2] This is distinct from a case in which a defendant contends it is multiplicitous to charge the same course of conduct under *multiple* criminal provisions. The question in that case is whether the provisions define distinct criminal offenses. That question is typically answered by applying the so-called *Blockburger* test, asking whether "each charge requires proof of an element not required by the other." *United States v. Zalapa*, 509 F.3d 1060, 1062 n. 1 (9th Cir. 2007). Here, the defendant does not assert that the charges under different integrity management regulations are multiplicitous of each other, and thus the *Blockburger* test has no application. *Id.* at 1062; *see also Sanabria v. United States*, 437 U.S. 54, 70 n. 24 (1978).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEF.'S MOT. TO DISMISS
FOR MULTIPLICITY
Case No. CR-14-00175-TEH

criminal provision made it unlawful for "[a]ny person . . . to violate any of the provisions of section 6 or section 7, [or] to violate any of the provisions of section 11(c)." *Id.* at 219 n. 1. Section 6, at the time, required an employer to pay "to each of his employees" a minimum wage of "not less than 75 cents an hour." *Id.* Section 7 prohibited "employ[ing] any of his employees . . . for a workweek longer than forty hours." *Id.* And § 11(c) required the employer to "make, keep, and preserve . . . records of the persons employed by him and of the wages." *Id.* Prosecutors had charged 32 counts, but the district court concluded that they had alleged only three distinct courses of conduct (one for each the relevant substantive provisions), and dismissed all but one count for each provision. *See United States v. Universal C.I.T. Credit Corp.*, 102 F. Supp. 179, 184, 187 (W.D. Mo. 1952).

The Supreme Court affirmed. The Court framed the "only issue" before it as "[w]hat *Congress* has made the allowable unit of prosecution." *C.I.T.*, 344 U.S. at 221 (emphasis added). It explained that it would "seize[] every thing from which aid c[ould] be derived" to determine Congress's intent in that regard, but "before [it] ch[o]se the harsher alternative," it would "require that Congress should have spoken in language that is clear and definite." *Id.* at 221-22 (citation omitted). After reviewing the text and legislative history of the FLSA, the Court concluded that "[i]t would be self-deceptive to claim that only one answer is possible to our problem." And in the presence of ambiguity, the interpretation most favorable to the defendant had to be adopted.

Because Congress was not "decisively clear" in the FLSA, the Court held that "[t]he offense made punishable under the [Act] is a course of conduct." *Id.* at 224. Thus, the Court would treat "as one offense all violations that arise from that singleness of thought, purpose or action." *Id.* (citation omitted). For example, "a wholly unjustifiable managerial decision that a certain activity was not work and therefore did not require compensation under [the Act] cannot be turned into a multiplicity of offenses by considering each underpayment in a single week or to a single employee as a separate offense." *Id.* Because the information appeared to do precisely that, the Court affirmed the district court "without prejudice to amendment of the information . . .

to charge as separate offenses separate courses of conduct as to each substantive provision." *Id.* at 225-26.

In *United States v. Personal Finance Company*, a district court applied *C.I.T.* to circumstances remarkably similar to the ones before this Court. 174 F. Supp. 871 (S.D.N.Y. 1959). The government charged a bank with multiple violations of several subsections of a regulation (Regulation W) governing the extension of consumer credit during the Korean War. *See id.* at 872. One subsection set maximum loan values, one established maturity limitations, and one required a signed statement of the borrower. *See id.* The Defense Production Act of 1950 made it a crime for "'any person' [to] willfully violate[] 'any provision' of [the Act] or any regulation issued thereunder." *Id.* at 873 (quoting 50 U.S.C. App. § 2133). The information included 200 counts—charging violations of each regulatory provision on a loan-by-loan basis. *See id.* at 872. The defendant moved to dismiss all but one count under each regulatory provision, arguing that the remaining counts were multiplicitous. *Id.*

The district court agreed and granted the motion. As in *C.I.T.*, the court asked whether the "allowable unit of prosecution" for such a violation was "a course of conduct or an individual act," and recognized that "the harsher alternative" could not be chosen unless Congress "declared its purpose in language that is clear and definite." *Id.* at 872-73. After examining the text of the Defense Production Act and Regulation W, the court reasoned that "[a] clear and unambiguous purpose to make the unit of prosecution an individual act or transaction is no more definitely or unmistakably to be read from the wording of the statute and regulation [t]here involved" than in the Fair Labor Standards Act provisions considered in *C.I.T. Id.* at 873. "Indeed," the court noted, "it is difficult to ascribe any specific intent on this issue to *Congress* at all." *Id.* (emphasis added). Congress had merely provided for criminal punishment should any person willfully violate "any regulation or order issued" by the Federal Reserve Board under the Defense Production Act. *Id.* Since the Board could have written the regulations in any number of ways, "it [wa]s not possible to conclude that *Congress* clearly and unambiguously declared its purpose that the individual act rather than the course of conduct was the proscribed offense." *Id.* (emphasis added). The court dismissed all but one count for each substantive provision,

1  "without prejudice to an amendment of the information before trial in accordance with the theory
2  that the unit of prosecution is a course of conduct." *Id.* at 876.
3       In *Brown*, the Ninth Circuit applied these principles to criminal charges arising from the
4  creation of a single document—there, a purchase form for a firearm.  The court considered
5  whether multiple false statements contained in the same form could lead to multiple violations of
6  a statute that prohibited knowingly "mak[ing] any false or fictitious oral or written statement" "in
7  connection with the acquisition . . . of any firearm," 18 U.S.C. § 922(a)(6).  *See Brown*, 623 F.2d
8  at 55.  The Ninth Circuit acknowledged that unless it could find a "clearly expressed . . . intent"
9  by Congress, it could not impose multiple punishments "for [the] creation of a single document
10 containing two false statements." *Id.* at 57, 58.  The court of appeals concluded that the statute
11 "contain[ed] no language to suggest that Congress intended cumulative punishment for a single
12 document that contained two false statements." *Id.* at 58.  Nor was there anything apparent in the
13 broader statutory scheme or the legislative history.  *See id.* at 58-59.
14      The ancient rule that all ambiguities in criminal statutes are resolved in the defendant's
15 favor plays a central role in these cases.  Because Congress "has no difficulty in expressing
16 it[self]" when it wants a single act or policy to constitute multiple separate crimes, when
17 Congress *does not* speak clearly "the ambiguity should be resolved in favor of lenity." *Bell v.*
18 *United States*, 349 U.S. 81, 83 (1955).  "Unless [the court] can find from the face of the Act or
19 from its legislative history *a clear indication* that Congress intended to authorize multiple
20 punishments," it is "obliged to construe the Act against the harsher penalties that result from
21 cumulative punishments." *Brown*, 623 F.2d at 57 (citation omitted) (emphasis added).
22      The superseding indictment plainly violates these principles.  Congress has not "in
23 language that is clear and definite" indicated that the appropriate unit of prosecution for knowing
24 and willful violations of the integrity management regulations is anything other than a single
25 course of conduct.  *C.I.T.*, 344 U.S. at 222.  Indeed, "it is difficult to ascribe any specific intent
26 on this issue to Congress at all." *Personal Finance*, 174 F. Supp. at 875.  The charged statutory
27 provision merely criminalizes, at a very general level, a knowing and willful violation of any
28 "regulation prescribed or order issued" under the Pipeline Safety Act.  49 U.S.C. § 60123(a).  At

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEF.'S MOT. TO DISMISS
FOR MULTIPLICITY
Case No. CR-14-00175-TEH

the time the criminal penalties were added to the Act, the integrity management regulations did not even exist. *Compare* Pub. L. No. 96-129, 93 Stat. 989, 992 (1979) (enacting predecessor to 49 U.S.C. § 60123), *with* 68 Fed. Reg. 69778 (Dec. 15, 2003) (adopting integrity management regulations). Nothing about that general provision's text or history provides any hint of what Congress intended to be the unit of prosecution for regulations promulgated 25 years later.

As *Personal Finance* makes clear, Congress's failure to speak to the issue in 1979 is dispositive. Each course of conduct that allegedly violated the Pipeline Safety Act regulations constitutes a single offense. But it bears mention that the subsequent 2002 legislation directing the Secretary of Transportation to promulgate integrity management regulations clearly contemplated that each pipeline operator would create a *single* integrity management program that covered the operator's entire pipeline system. The statute directed the Secretary to promulgate regulations "prescribing standards to direct an operator's . . . adoption and implementation of *an* integrity management program." 49 U.S.C. § 60109(c)(1) (emphasis added). The regulations the Secretary promulgated similarly speak of a single integrity management program. They provide that an operator "must develop and follow *a* written integrity management program that contains all the elements described in [the regulations] and that addresses the risks on each covered transmission pipeline segment." 49 C.F.R. § 192.907(a) (emphasis added). They require that an operator's "initial integrity management program . . . consist, at a minimum, of *a* framework that describes . . . how information gained from experience will be continuously incorporated into *the* program." *Id.* (emphasis added). And they explain how an operator may make "any change to *its* program." 49 C.F.R. § 192.909(a) (emphasis added); *see also* 68 Fed. Reg. 4278, 4283 (Jan. 28, 2003) ("[A] systemwide approach . . . is a more effective and, in most cases, more efficient means of evaluating pipeline integrity.")

Indeed, the government's pipeline-by-pipeline approach has no basis in the statutory or regulatory structure at all. PG&E administers a pipeline *network*, consisting of a single backbone pipeline that runs the length of the State and numerous transmission and distribution lines that branch off from that backbone and rejoin it in complex ways. Transmission lines

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEF.'S MOT. TO DISMISS
FOR MULTIPLICITY
Case No. CR-14-00175-TEH

throughout the network are joined together through crossties.  PG&E labels portions of its network with pipeline numbers for ease of administration and management, but it could just as easily have declared the entire network a single "pipeline," or divided it into a thousand or more distinct numbered units.  Congress obviously did not intend for criminal punishment to turn on such arbitrary labeling decisions.

In short, there certainly is no basis for finding a "clear and definite" intention by Congress, *C.I.T.*, 344 U.S. at 222, to treat an operator's allegedly unlawful system-wide policies and practices as *separate* criminal offenses every time a policy or practice is followed with regard to a separate pipeline, or to multiply offenses for the creation of a single integrity management report for each pipeline it addresses.  As with the employee-by-employee counts in *C.I.T.* and the loan-by-loan counts in *Personal Finance*, the pipeline-by-pipeline counts here unjustifiably multiply a handful of allegedly unlawful practices and policies into twenty federal crimes.  As in *Brown*, Counts 9-14 charge the defendant with six criminal offenses for performing *a single act*—the creation of the January 22, 2010 plan.  Crimes cannot be charged this way unless "Congress clearly and unambiguously declared its purpose" to allow it.  *Personal Finance*, 174 F. Supp. at 875.  Congress has not done so.  Accordingly, the court should dismiss all but one count under each substantive regulatory provision.

## IV.    CONCLUSION

For the foregoing reasons, the defendant respectfully asks the Court to dismiss Counts 3, 7, 8, 10 through 14, 16 through 18, and 20 through 23 of the superseding indictment.

Dated:  September 7, 2015

Respectfully submitted,

By _____/s/_____
Steven M. Bauer
Margaret A. Tough
Melissa Arbus Sherry
LATHAM & WATKINS LLP

Kate Dyer
CLARENCE, DYER & COHEN LLP

*Attorneys for Defendant*
*Pacific Gas and Electric Company*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEF.'S MOT. TO DISMISS
FOR MULTIPLICITY
Case No. CR-14-00175-TEH