LATHAM & WATKINS LLP
  Steven M. Bauer (Bar No. 135067)
    steven.bauer@lw.com
  Margaret A. Tough (Bar No. 218056)
    margaret.tough@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California  94111-6538
Telephone:  +1.415.391.0600
Facsimile:  +1.415.395.8095

LATHAM & WATKINS LLP
  Melissa Arbus Sherry (*pro hac vice*)
    melissa.sherry@lw.com
555 11th Street, NW, Suite 1000
Washington, DC  20004-1304
Telephone:  +1.202.637.2200
Facsimile:  +1.202.637.2201

CLARENCE, DYER & COHEN LLP
  Kate Dyer (Bar No. 171891)
    kdyer@clarencedyer.com
899 Ellis Street
San Francisco, California  94109-7807
Telephone:  +1.415.749.1800
Facsimile:  +1.415.749.1694

Attorneys for Defendant
PACIFIC GAS AND ELECTRIC COMPANY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA <br><br> v. <br><br> PACIFIC GAS AND ELECTRIC COMPANY, <br><br> Defendant. | CASE NO. CR-14-00175-TEH <br><br> **DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE AN OFFENSE:  COUNT ONE** <br><br> **Judge:** **Hon. Thelton Henderson** <br> **Date:** **October 19, 2015** <br> **Time:** **10:00 A.M.** <br> **Place:** **Courtroom 2, 17th Floor** |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEF.'S MOT. TO DISMISS FOR FAILURE TO
STATE AN OFFENSE:  COUNT ONE
Case No. CR-14-00175-TEH

1

## NOTICE OF MOTION AND MOTION

2        PLEASE TAKE NOTICE that on October 19, 2015, at 10:00 a.m., Defendant Pacific Gas

3 and Electric Company ("PG&E") will and hereby does move this Court for an order dismissing

4 Count One of the superseding indictment because (i) the National Transportation Safety Board's

5 investigation of the San Bruno accident is not a "pending proceeding . . . before any department

6 or agency of the United States" convened for "the due and proper administration of the law"

7 under 18 U.S.C. § 1505; and (ii) 18 U.S.C. § 1505 either does not reach the conduct alleged in

8 the superseding indictment or is unconstitutionally vague as applied to that conduct.  The Motion

9 will be based on this Notice of Motion and Motion, the accompanying Memorandum of Points

10 and Authorities, the Declaration of Nicole C. Valco, the files and records of this case, and such

11 other argument and evidence as the Court may consider.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEF.'S MOT. TO DISMISS FOR FAILURE TO
STATE AN OFFENSE:  COUNT ONE
Case No. CR-14-00175-TEH

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ............................................................................................................. 1

II.  SUMMARY ..................................................................................................................... 1

III.  BACKGROUND .............................................................................................................. 4

    A.  The National Transportation Safety Board ......................................................... 4

    B.  The NTSB Investigation of the Cause of the San Bruno Accident ...................... 6

    C.  The Allegations of Count One ............................................................................. 7

IV.  DISCUSSION .................................................................................................................. 8

    A.  The Court Should Dismiss Count One Because an NTSB
        Investigation Is Not a "Proceeding" Within the Meaning of § 1505 .................... 8

        1.  A Mere Agency Investigation Unconnected to any
            Adjudicative Proceeding Is Not a Proceeding to
            "Administer" the Law ............................................................................. 8

        2.  The NTSB San Bruno Accident Investigation Was Not a
            Proceeding Under § 1505 Because It Was Not Within the
            Scope of Any Adjudicative or Rulemaking Power ................................. 13

        3.  The Rule of Lenity and Fair Warning Considerations
            Preclude Any Expansion of the "Proceedings" Covered by
            § 1505 ................................................................................................... 15

    B.  The Court Should Also Dismiss Count One Because § 1505 Either
        Does Not Reach the Conduct Alleged in the Superseding
        Indictment or Is Unconstitutionally Vague as Applied to That
        Conduct ............................................................................................................ 16

        1.  Governing Legal Principles .................................................................. 16

        2.  Section 1505 Cannot Constitutionally Be Applied to the
            Conduct Alleged in the Superseding Indictment ................................... 18

V.  CONCLUSION ............................................................................................................... 22

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

i

DEF.'S MOT. TO DISMISS FOR FAILURE TO
STATE AN OFFENSE:  COUNT ONE
Case No. CR-14-00175-TEH

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Arthur Andersen LLP v. United States*,
544 U.S. 696 (2005) ........................................................................... 3, 15, 16, 19

*Bailey v. United States*,
516 U.S. 137 (1995) ........................................................................................ 10

*Barnhart v. Sigmon Coal Co.*,
34 U.S. 438 (2002) ......................................................................................... 10

*City of Chicago v. Morales*,
527 U.S. 41 (1999) ......................................................................................... 16

*Connally v. Gen. Constr. Co.*,
269 U.S. 385 (1926) ....................................................................................... 16

*Kolender v. Lawson*,
461 U.S. 352 (1983) .................................................................................... 16, 20

*McBoyle v. United States*,
283 U.S. 25 (1931) ......................................................................................... 16

*Nat'l R.R. Passenger Corp. v. Consol. Rail Corp.*,
698 F. Supp. 951 (D.D.C. 1988) ...................................................................... 13

*Pettibone v. United States*,
148 U.S. 197 (1893) ......................................................................................... 8

*Ratzlaf v. United States*,
510 U.S. 135 (1994) ....................................................................................... 19

*Rice v. United States*,
356 F.2d 709 (8th Cir. 1996) ........................................................................... 11

*Skilling v. United States*,
561 U.S. 358 (2010) ....................................................................................... 16

*United States v. Adams*,
335 F. App'x 338 (4th Cir. 2009) ................................................................ 10, 11

*United States v. Aguilar*,
515 U.S. 593 (1995) ................................................................................. *passim*

*United States v. Ballestas*,
No. 97 MAG. 0843, 1997 U.S. Dist. LEXIS 6405 (S.D.N.Y. May 9, 1997) ....... 12

*United States v. Batten*,
226 F. Supp. 492 (D.D.C. 1964) ................................................................ 11, 12

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*United States v. Bonds*,
   784 F.3d 582 (9th Cir. 2015) ..................................................................... 4, 19

*United States v. Brown*,
   688 F.2d 596 (9th Cir. 1982) ............................................................................ 2

*United States v. Browning, Inc.*,
   572 F.2d 720 (10th Cir. 1978) ....................................................................... 11

*United States v. Cisneros*,
   169 F.3d 763 (D.C. Cir. 1999) ....................................................................... 20

*United States v. Edgemon*,
   No. 3-95-cr-43, 1997 U.S. Dist. LEXIS 23820 (E.D. Tenn. Aug. 18, 1997) ............... 11, 12

*United States v. Ermoian*,
   752 F.3d 1165 (9th Cir. 2013) ......................................................................... 9

*United States v. Fruchtman*,
   421 F.2d 1019 (6th Cir. 1970) ....................................................................... 13

*United States v. Higgins*,
   511 F. Supp. 453 (W.D. Ky. 1981) ............................................................... 9, 10

*United States v. Kanchanalak*,
   37 F. Supp. 2d 1 (D.D.C 1999) ................................................................... 17, 20

*United States v. Kelley*,
   36 F.3d 1118 (D.C. Cir. 1994) ...................................................................... 12

*United States v. Kowalewski*,
   No. 13-CR-045, 2014 U.S. Dist. LEXIS 165404 (N.D. Ga. Oct. 7, 2014) ................ 20

*United States v. MacPherson*,
   424 F.3d 183 (2d Cir. 2005) .......................................................................... 19

*United States v. Markiewicz*,
   No. 89-CR-88, 1989 U.S. Dist. LEXIS 13722 (N.D.N.Y. Nov. 17, 1989) ............... 14

*United States v. McDaniel*,
   No. 12-CR-0028, 2013 U.S. Dist. LEXIS 110475 (N.D. Ga. Jan. 29, 2013) .............. 11

*United States v. Messer*,
   No. 97-4504, 1998 U.S. App. LEXIS 5008 (4th Cir. 1998) ................................ 20

*United States v. Millis*,
   621 F.3d 914 (9th Cir. 2010) ......................................................................... 15

*United States v. North*,
   910 F.2d 843 (D.C. Cir. 1990) .................................................................. 3, 15, 19

*United States v. Ogle*,
   613 F.2d 233 (10th Cir. 1979) ....................................................................... 17

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

DEF.'S MOT. TO DISMISS FOR FAILURE TO
STATE AN OFFENSE:  COUNT ONE
Case No. CR-14-00175-TEH

*United States v. Poindexter*,
    951 F.2d 369 (D.C. Cir. 1991) .......................................................................*passim*

*United States v. Price*,
    951 F.2d 1028 (9th Cir. 1991) .................................................................... 13

*United States v. Pugh*,
    404 F. App'x 21 (6th Cir. 2010) ................................................................ 12

*United States v. Rainey*,
    No. 2:12-cr-00291 (E.D. La.) ..................................................................... 21

*United States v. Ramos*,
    537 F.3d 439 (5th Cir. 2008) ....................................................................... 9

*United States v. Reeves*,
    752 F.2d 995 (5th Cir. 1985) ................................................................. 15, 17

*United States v. Safavian*,
    528 F.3d 957 (D.C. Cir. 2008) .................................................................... 21

*United States v. Senffner*,
    280 F.3d 755 (7th Cir. 2002) ................................................................... 9, 12

*United States v. Starks*,
    472 F.3d 466 (7th Cir. 2006) ..................................................................... 20

*United States v. Stickle*,
    355 F. Supp. 2d 1317 (S.D. Fla. 2004) ...................................................... 13

*United States v. Technic Servs.*,
    314 F.3d 1031 (9th Cir. 2002) .................................................................... 13

*United States v. Vixie*,
    532 F.2d 1277 (9th Cir. 1976) .................................................................... 13

*United States v. Wright*,
    704 F. Supp. 613 (D. Md. 1989) ................................................................ 11

## STATUTES

16 U.S.C. § 7212(a) ............................................................................................. 15

18 U.S.C. § 1001 ............................................................................................. 2, 15

18 U.S.C. § 1001(a) .............................................................................................. 9

18 U.S.C. § 1503 ............................................................................................. 8, 15

18 U.S.C. § 1505 ........................................................................................*passim*

18 U.S.C. § 1512 ................................................................................................... 9

18 U.S.C. § 1515(a)(1)(C) ................................................................................... 9

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

DEF.'S MOT. TO DISMISS FOR FAILURE TO
STATE AN OFFENSE:  COUNT ONE
Case No. CR-14-00175-TEH

18 U.S.C. § 1515(b) ............................................................................................. 3

18 U.S.C. § 1519 ............................................................................................ 9, 15

18 U.S.C. § 1621 ............................................................................................ 2, 15

49 U.S.C. § 1111 ................................................................................................ 4

49 U.S.C. § 1113(a)(4) ...................................................................................... 6

49 U.S.C. § 1154(b) .......................................................................................... 6

49 U.S.C. § 60102(a)(2) .................................................................................... 5

5 U.S.C. § 1113(4) ........................................................................................... 15

5 U.S.C. § 504 *et seq.* ....................................................................................... 5

## OTHER AUTHORITIES

142 Cong. Rec. S11608 (1996) ....................................................................... 21

142 Cong. Rec. S4857 (1996) ......................................................................... 21

142 Cong. Rec. S4858, S11605-09 (1996) ..................................................... 17

AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (5th ed. 2015)
    (https://www.ahdictionary.com/word/search.html?q=improper&submit.x=46
    &submit.y=26) (accessed September 2, 2015) .................................................. 19

BLACK'S LAW DICTIONARY 1841 (10th ed. 2014) ........................................... 9

DICTIONARY.COM UNABRIDGED, Random House, Inc. 2015
    (http://dictionary.reference.com/browse/improper?s=t) (accessed September 2,
    2015) ............................................................................................................... 20

http://www.ntsb.gov/investigations/process/Pages/default.aspx ................................. 4

http://www.washingtonpost.com/archive/local/1988/05/26/ex-engineer-pleads-
    guilty-to-us-charge-in-amtrak-crash/3a8498af-620f-41f9-b662-dc9c8a156224/ ................ 14

MERRIAM-WEBSTER.COM (http://www.merriam-
    webster.com/dictionary/improper) (accessed September 2, 2015) ....................... 20

MERRIAM-WEBSTER.COM (http://www.merriam-
    webster.com/dictionary/administer) (accessed September 2, 2015) ..................... 8

OED ONLINE. June 15. Oxford University Press
    (http://www.oed.com/view/Entry/2531?rskey=v2e09a&result=2&isAdvanced
    =false) (accessed September 2, 2015) ........................................................... 8

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v

DEF.'S MOT. TO DISMISS FOR FAILURE TO
STATE AN OFFENSE:  COUNT ONE
Case No. CR-14-00175-TEH

1

## REGULATIONS

2    49 C.F.R. § 800.2 ......................................................................................................... 4

3    49 C.F.R. § 800.2(i) ..................................................................................................... 5

4    49 C.F.R. § 800.3 ......................................................................................................... 5

5    49 C.F.R. § 801.32 ....................................................................................................... 5

6    49 C.F.R. § 831.11 ....................................................................................................... 6

7    49 C.F.R. § 831.12 ..................................................................................................... 14

8    49 C.F.R. § 831.4 ......................................................................................................... 5

9    49 C.F.R. § 831.9 ......................................................................................................... 6

10   49 C.F.R. § 835.3 ......................................................................................................... 6

11   49 C.F.R. § 845.2 ......................................................................................................... 5

12   49 C.F.R. § 845.40 ....................................................................................................... 5

13   49 C.F.R. § 845.41 ....................................................................................................... 6

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1     <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2 **I.    INTRODUCTION**

3       We have previously noted that Count One fails to allege materiality, which is an essential

4 element of the crime of obstruction. The Court has instructed that we save that challenge for

5 trial. But Count One is defective for other reasons that are plain on the face of the superseding

6 indictment and ripe for adjudicating now. The first problem stems from the observation that this

7 is the first reported § 1505 prosecution in the history of the National Transportation Safety Board

8 ("NTSB"). To be sure, there could be false statement cases, document destruction cases, and

9 perjury cases in connection with NTSB investigations. These all, however, are governed by

10 more specific statutes that do not, as § 1505 does, require intentional obstruction of a

11 "proceeding" "before" an agency that is convened to "administer" the law. Is this novel § 1505

12 charge appropriate under the law?

13       The answer lies in the fact that an NTSB investigation, by its nature (and statutory

14 authority), is not a proceeding pursuant to any adjudicatory power to which § 1505 applies. That

15 is, an NTSB investigation is not a proceeding administering the law to determine the rights and

16 obligations of parties or violations of the law. It is a pure investigation with no adverse parties,

17 charged with reporting on facts relating to accidents, determining the probable causes of such

18 accidents, and issuing recommendations to government and private parties that may tend to

19 prevent future accidents. Other criminal statutes may apply to conduct in the course of an NTSB

20 investigation, but the § 1505 charge here does not.

21       Furthermore, § 1505 cannot be applied to the conduct charged in the indictment in a way

22 that is consistent with Due Process. If the Court narrowly construes the word "corruptly" to

23 avoid unconstitutional vagueness, then the indictment must be dismissed because it does not

24 charge a crime. But if the Court declines to adopt an appropriate narrowing construction,

25 Count One must be dismissed as unconstitutionally vague as applied to the conduct alleged here.

26 **II.    SUMMARY**

27       A wide variety of laws criminalize providing false statements to government officials, or

28 failing to cooperate with them in the performance of their official duties. For example, there are

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEF.'S MOT. TO DISMISS FOR FAILURE TO
STATE AN OFFENSE: COUNT ONE
Case No. CR-14-00175-TEH

1   laws that criminalize knowingly and willfully making materially false statements or concealing

2   or falsifying material facts in any matter within the jurisdiction of federal government (18 U.S.C.

3   § 1001), or knowingly making false material statements under oath (18 U.S.C. § 1621).  Many of

4   those laws apply in the context of NTSB accident investigations, and ensure that the NTSB has

5   the tools it needs to protect the integrity of its investigations.  The government has not charged

6   the defendant under these statutes because it has not alleged that the defendant intentionally

7   made any false statements to the NTSB or refused to respond to any subpoena.

8          Obstruction of justice is a very different, very specific, and much more serious crime

9   historically tied to interference with the "administration of justice," a phrase that traditionally

10  encompasses only formal pending *judicial* proceedings.  It has never been obstruction of justice

11  to "utter[] false statements to an investigating agent," *United States v. Aguilar*, 515 U.S. 593, 600

12  (1995), for example, or to "interfere[] with the execution of a search warrant in connection with a

13  police investigation," *United States v. Brown*, 688 F.2d 596, 598 (9th Cir. 1982).  In *Aguilar*, the

14  Supreme Court held that the defendant—a federal judge accused of corruption—was entitled to

15  acquittal as a matter of law, even though he intentionally lied to Federal Bureau of Investigation

16  ("FBI") investigators and even though he knew that a grand jury had already been convened,

17  because he did not know that those particular FBI agents would testify before the grand

18  jury.  515 U.S. at 600.

19         18 U.S.C. § 1505 was designed to extend traditional obstruction principles to the federal

20  agency context.  *See United States v. Poindexter*, 951 F.2d 369, 380 (D.C. Cir. 1991) (explaining

21  the history).  But the statute's structure makes clear that it was intended to preserve the

22  traditional distinction between mere investigations and adjudicatory or quasi-adjudicatory

23  proceedings.  Hence the defendant must "corruptly" or through threats or force "influence[],

24  obstruct[], or impede[] . . . the due and proper administration of the law under which any pending

25  proceeding is being had before any department or agency of the United States."  18 U.S.C.

26  § 1505.  That language recognizes that a great deal of what the employees of federal agencies do

27  is not the "administration of the law" and is not undertaken in connection with a "pending

28  proceeding" "before" the agency that was convened to administer the law.  And the D.C. Circuit

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEF.'S MOT. TO DISMISS FOR FAILURE TO
STATE AN OFFENSE:  COUNT ONE
Case No. CR-14-00175-TEH

1  has repeatedly recognized that the statute would be unconstitutionally vague and overbroad if it

2  is read too broadly. A great many things that Americans do to "impede" or "influence" the

3  activities and conclusions of federal agencies are widely understood to be lawful—even if

4  undertaken for selfish reasons or other purposes that might be characterized as improper. As

5  Judge Silberman pointed out in *United States v. North*, if § 1505 is read too expansively "we

6  might as well convert all of Washington's office buildings into prisons." 910 F.2d 843, 942

7  (D.C. Cir. 1990) (concurring); *see also Poindexter*, 951 F.2d at 377-78.

8       Section 1505 is confined to lawful bounds by two requirements, neither of which is

9  sufficiently alleged by the superseding indictment. First, there must be a "pending proceeding

10  . . . before an agency" under which the law is being "administ[ered]." That means an agency

11  proceeding that will determine the rights and obligations of parties or violations of the law. A

12  mere *investigation*, unconnected with a proceeding that will actually administer the law, has

13  never been sufficient for obstruction. There certainly is no indication that in § 1505 Congress

14  meant to turn interference with agency investigators into "obstruction of justice" when

15  interference with FBI investigators is not. An accident investigation conducted by the NTSB is

16  not an adjudicatory proceeding and it does not "administer" the law. Indeed, those investigations

17  are much further removed from the administration of justice than police and FBI

18  investigations—which are at least a prelude to criminal charges and a judicial proceeding.

19       Second, the defendant must act "corruptly," which is defined as having an "improper

20  purpose." 18 U.S.C. § 1515(b). But the superseding indictment alleges only that the defendant

21  did not disclose two pieces of information to the NTSB: (1) that its integrity management group

22  followed the practices in an unapproved version of an internal instruction document and (2) that

23  it knew the unapproved version violated a federal regulation. The indictment does not allege that

24  the defendant violated any legal duty by failing to provide the information, or even that the

25  NTSB requested it. Other than the allegation that the defendant acted "corruptly," there is no

26  indication that the grand jury concluded that any of the purportedly "obstructive" conduct was

27  wrongful, or in violation of any duty. As the Supreme Court explained when rejecting another

28  flawed prosecution under the obstruction laws in *Arthur Andersen LLP v. United States*,

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEF.'S MOT. TO DISMISS FOR FAILURE TO
STATE AN OFFENSE:  COUNT ONE
Case No. CR-14-00175-TEH

1  withholding "testimony or documents from a Government proceeding or Government official is

2  not inherently malign" absent a duty to produce them.  544 U.S. 696, 703-04 (2005).  The D.C.

3  Circuit recognized in *Poindexter* that words like "corruptly" and "improper" are far too vague to

4  put the public on notice that it has suddenly become a serious crime to answer only the questions

5  asked, or to withhold documents that there is no legal duty to produce.  951 F.2d at 377-79.  A

6  reading that broad also "does not meaningfully cabin the kind of conduct that is subject to

7  prosecution" and invites arbitrary selective enforcement.  *United States v. Bonds*, 784 F.3d 582,

8  584 (9th Cir. 2015) (en banc) (Kozinski, J, concurring).  Section 1505 could be constitutional

9  only as applied to cases in which the defendant's "improper purpose" involves an attempt to gain

10  some advantage inconsistent with legal duty or the rights of others—which is the traditional

11  meaning of the word "corruptly" in the criminal law.  *See Poindexter*, 951 F.2d at 385-86

12  (holding that § 1505 is unconstitutionally vague outside a narrow "core" of application).  If the

13  statute is interpreted in that appropriate and narrow way, the superseding indictment fails to

14  allege a crime.  If the statute is read more broadly, it is impermissibly vague as applied here.

15  Either way, the count must be dismissed.

16  **III.    BACKGROUND**

17       **A.    The National Transportation Safety Board**

18       Count One concerns alleged obstruction of an accident investigation by the NTSB.  The

19  NTSB is an independent establishment of the United States.  49 U.S.C. § 1111; 49 C.F.R.

20  § 800.2.  It is neither a part of the Department of Transportation ("DOT"), nor affiliated with any

21  of its modal agencies.[1]  Thus, the NTSB has no power or responsibility to develop, implement,

22  or enforce the regulations promulgated by the DOT or its subagencies.[2]  *Cf.* 49 U.S.C.

23

24

---

25  [1]    http://www.ntsb.gov/investigations/process/Pages/default.aspx.

26  [2]    The government has conceded as much, stating:  "With regard to the NTSB's interpretations of regulations, because the NTSB is not a regulator, the NTSB does not issue guidance or

27  interpretations of safety and performance regulations."  Valco Decl. Ex. 16.  The NTSB's Deputy General Counsel made a similar statement in a declaration provided to the defendant in

28  the course of this prosecution:  "The NTSB does not issue regulations that set safety or vehicle performance standards for the transportation industry."  Valco Decl. Ex. 17 ¶ 3.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4                    DEF.'S MOT. TO DISMISS FOR FAILURE TO
STATE AN OFFENSE:  COUNT ONE
Case No. CR-14-00175-TEH

§ 60102(a)(2) ("The Secretary [of Transportation] shall prescribe minimum safety standards for pipeline transportation and for pipeline facilities.").

The primary function of the NTSB is to promote safety in transportation by gathering information and making reports and recommendations.  49 C.F.R. § 800.3.  The NTSB's Office of Pipeline and Hazardous Materials Safety is tasked with the following responsibilities: (a) conducting investigations of significant pipeline and hazardous materials accidents; (b) preparing reports setting forth the facts and circumstances of such accidents, including a recommendation as to the probable cause(s); (c) determining the probable cause of accidents when delegated authority to do so; (d) initiating safety recommendations to prevent future accidents, including to Federal, State, and local agencies and private organizations; and (e) conducting special investigations into selected accidents involving safety issues of concern to the NTSB.  49 C.F.R. §§ 800.2(i), 800.3.

NTSB accident investigations aim to respond as quickly as possible to the scene of an accident.[3]  Accident investigations are conducted to determine the facts, conditions, and circumstances relating to an accident and its probable cause(s).  49 C.F.R. § 831.4.  "These results are then used to ascertain measures that would best tend to prevent similar accidents or incidents in the future," which the NTSB terms safety recommendations.  *Id.*  Accident investigations are "fact-finding proceedings with no formal issues and no adverse parties."  *Id.* "They are not subject to the provisions of the Administrative Procedure Act (5 U.S.C. § 504 *et seq.*), *and are not conducted for the purpose of determining the rights or liabilities of any person*."  *Id.* (emphasis added).  The same is true of any transportation accident hearings convened by the NTSB.  49 C.F.R. § 845.2.  Often, safety recommendations are issued before an investigation is complete, immediately after a deficiency is discovered.[4]

The investigation results in a narrative report or "brief" of the accident, reporting the facts, conditions, and circumstances, and the NTSB's determination of the probable causes of the accident.  49 C.F.R. §§ 800.3, 801.32, 831.4, 845.40; Superseding Indictment ("SI") ¶ 53.  A

---

[3]   *Supra* n.1.
[4]   *Supra* n.1.

DEF.'S MOT. TO DISMISS FOR FAILURE TO
STATE AN OFFENSE:  COUNT ONE
Case No. CR-14-00175-TEH

party may file a petition for reconsideration or modification of the NTSB's findings and determination of probable cause with the NTSB, only if based upon the discovery of new evidence or a showing that the findings are erroneous.  49 C.F.R. § 845.41.  The regulations provide no other means of appealing any findings in the report.  To ensure that NTSB investigations focus only on improving transportation safety, its analysis of factual information and determinations of probable cause cannot be entered into evidence in a court of law.[5]  Its accident reports are not admissible in any suit for damages arising from the accident, reflecting Congress's "strong desire to keep the Board free of the entanglement of such suits" and to ensure that it does not exert an undue influence on litigation.  49 C.F.R. § 835.3; *see also* 49 U.S.C. § 1154(b).[6]

There are specific rules governing an NTSB accident investigation.  These investigations must employ a party system.  The investigator-in-charge of any accident investigation designates party-participants.  49 C.F.R. § 831.11.  The party system is a way for the NTSB to leverage resources to enhance its investigative abilities with persons that can provide necessary information to the investigation.[7]  Party-participants shall be responsive to the direction of the NTSB, and "may lose party status if they do not comply with their assigned duties and activity proscriptions or instructions, or if they conduct themselves in a manner prejudicial to the investigation."  *Id.*  If an individual or entity does not participate in the investigation or cooperate with the investigators, the NTSB may issue a subpoena to obtain testimony or evidence. 49 C.F.R. § 831.9.  If a person disobeys a subpoena, order, or inspection notice, the NTSB may bring a civil action to enforce it.  49 U.S.C. § 1113(a)(4).

## B.   The NTSB Investigation of the Cause of the San Bruno Accident

The NTSB began an investigation of the cause of the San Bruno rupture immediately after it occurred on September 9, 2010.  SI ¶ 54.  On January 3, 2011, it issued three safety

---

[5]   *Supra* n.1.

[6]   The statutory mandate that "[n]o part of a report of the Board, related to an accident or investigation of an accident, may be admitted into evidence or used in a civil action for damages" (49 U.S.C. § 1154(b)) raises the question of whether the indictment's references to the NTSB finding are appropriate.

[7]   *Supra* n.1.

LATHAM&WATKINS
ATTORNEYS AT LAW
SAN FRANCISCO

6                    DEF.'S MOT. TO DISMISS FOR FAILURE TO
STATE AN OFFENSE:  COUNT ONE
Case No. CR-14-00175-TEH

1   recommendations.  SI ¶ 55.  The NTSB sent approximately 550 "data request" questions to the

2   defendant (a party to the investigation) over the course of the investigation.  Valco Decl. ¶ 26.

3   On August 30, 2011, it issued an accident report.  SI ¶ 54.

4       **C.**    **The Allegations of Count One**

5       The superseding indictment charges that PG&E "did corruptly influence, obstruct, and

6   impede, and did endeavor to influence, obstruct, and impede the due and proper administration

7   of the law under . . . an investigation by the National Transportation Security [sic] Board into the

8   cause of the San Bruno explosion and PG&E's Integrity Management program."  SI ¶ 61.  It

9   alleges that, "as part of its response to the NTSB's data requests," PG&E sent the NTSB a

10  version of an internal instruction document on February 22, 2011, which it withdrew by letter on

11  April 6, 2011, "claiming it was an unapproved draft."  SI ¶¶ 57, 59.  The letter attached the

12  original version of the document approved in 2008, and a version approved in April 2011.  SI

13  ¶ 59.  The letter stated that the defendant "had recently discovered that" the version it submitted

14  to the NTSB included the cover sheet for the original version approved in 2008, but that it "had

15  no indication that the version [submitted in February 2011] was ever approved."  SI ¶ 59.

16      The indictment alleges that the letter "did not disclose" that the defendant's integrity

17  management group followed the practice set forth in the draft version, or that it knew that the

18  withdrawn version was in violation of a federal regulation and guidance issued by the federal

19  regulator.  SI ¶ 60.  But the indictment does not allege that the NTSB had requested the

20  information that the defendant "did not disclose" or that the defendant was otherwise obliged to

21  provide it.  It does not allege that any statements in the defendant's letter were false or

22  misleading.  It does not allege that the defendant acted intentionally or with the purpose of

23  obstructing the investigation, or that its alleged nondisclosure would naturally have that result.

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEF.'S MOT. TO DISMISS FOR FAILURE TO
STATE AN OFFENSE:  COUNT ONE
Case No. CR-14-00175-TEH

## IV.     DISCUSSION

### A.     The Court Should Dismiss Count One Because an NTSB Investigation Is Not a "Proceeding" Within the Meaning of § 1505

#### 1.     A Mere Agency Investigation Unconnected to any Adjudicative Proceeding Is Not a Proceeding to "Administer" the Law

Section 1505 is a companion to the traditional obstruction statute, 18 U.S.C. § 1503, which (*inter alia*) establishes penalties for anyone who "corruptly or by threats of force . . . influences, obstructs, or impedes . . . the due administration of justice." The Supreme Court held as early as *Pettibone v. United States*, 148 U.S. 197, 207 (1893), that "obstruction can only arise when justice is being administered." "[I]f the defendant lacks knowledge that his actions are likely to affect the judicial proceeding, he lacks the requisite intent to obstruct." *Aguilar*, 515 U.S. at 599. Under those principles, for example, it has long been settled law that intentional interference with a police investigation is not obstruction. Judge Aguilar's acquittal by the Supreme Court is but one dramatic example.

When Congress enacted § 1505 it imported the same traditional language and limitations, modified only slightly to fit the agency context. Section 1505 punishes anyone who "corruptly, or by threats of force . . . influences, obstructs, or impedes … the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States." 18 U.S.C. § 1505. Merriam-Webster's Dictionary defines "administer" as "to provide or apply (something, such as justice) : to put (something) into effect." MERRIAM-WEBSTER.COM.[8] The Oxford English Dictionary defines it as "to perform or execute." OED ONLINE, June 15, Oxford University Press.[9] A mere investigation can only expose—it does not apply, effectuate, or execute law. A proceeding *administering* the law therefore is a proceeding that applies law to fact and determines legal rights and obligations—the agency equivalent of the judicial and quasi-judicial proceedings covered by § 1503. *See, e.g.*, BLACK'S LAW DICTIONARY

---

[8]   http://www.merriam-webster.com/dictionary/administer (accessed September 2, 2015).

[9]   http://www.oed.com/view/Entry/2531?rskey=v2e09a&result=2&isAdvanced=false (accessed September 2, 2015).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEF.'S MOT. TO DISMISS FOR FAILURE TO
STATE AN OFFENSE:  COUNT ONE
Case No. CR-14-00175-TEH

1841 (10th ed. 2014) (defining "administrative proceeding" as "[a] hearing, inquiry, investigation, or trial before an administrative agency, usu. adjudicatory in nature but sometimes quasi-legislative"); *United States v. Higgins*, 511 F. Supp. 453, 455 (W.D. Ky. 1981) (explaining that the FTC, unlike the FBI, "is an agency which by law possesses both investigative and adjudicative functions" and "[i]ts mission is to regulate conduct in the economic marketplace, not merely to investigate such conduct"); *see also United States v. Senffner*, 280 F.3d 755, 761 (7th Cir. 2002) (observing that the purpose of the SEC's investigation of securities law violations "was not solely to investigate those violations for the sake of exposing them, but also to identify and recover [] funds involved in the violations to remedy them").

The phrase "*before* any department or agency of the United States" further confirms that § 1505 is limited to adjudicative agency proceedings, not mere investigations. 18 U.S.C. § 1505 (emphasis added). "The use of the preposition 'before' suggests an appearance in front of the agency sitting as a tribunal." *United States v. Ermoian*, 752 F.3d 1165, 1171 (9th Cir. 2013) (concluding that an FBI investigation was not an "official proceeding" under § 1512 because it was a mere criminal investigation).[10] It implies "some formal convocation of the agency in which parties are directed to appear, instead of any informal investigation conducted by any member of the agency." *Id.*, quoting *United States v. Ramos*, 537 F.3d 439, 462-63 (5th Cir. 2008). Congress knows how to criminalize interference with any "matter within the jurisdiction" of a federal agency when it wants to. *See* 18 U.S.C. §§ 1519, 1001(a).[11]

Two other features of the statute confirm that §1505 does not embrace mere agency investigations. First, § 1505 *separately* makes it a crime to "falsif[y] any documentary material, answers to written interrogatories, or oral testimony" "with intent to avoid, evade, prevent or obstruct compliance . . . with any civil investigative demand . . . under the Antitrust Civil Process

---

[10]   In *Ermoian*, the court was construing the meaning of "official proceeding" in 18 U.S.C. § 1512. We recognize that "official proceeding" does not necessarily have the same meaning as "proceeding," but the court's discussion of the significance of the preposition "before" was in the context of 18 U.S.C. § 1515(a)(1)(C), which defines "official proceeding" as "a proceeding before a Federal Government agency which is authorized by law."

[11]   These statutes, while not limited to a "proceeding" to "administer" justice, are far narrower and less vague than § 1505.  Section 1519 is confined to deliberate document destruction and § 1001 to knowing and willful false statements or writings.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEF.'S MOT. TO DISMISS FOR FAILURE TO
STATE AN OFFENSE:  COUNT ONE
Case No. CR-14-00175-TEH

1   Act."  18 U.S.C. § 1505.  That provision would be entirely superfluous if an agency investigation

2   was itself a "pending proceeding" "administ[ering]" the law.  *See Bailey v. United States*, 516

3   U.S. 137, 143 (1995) ("Judges should hesitate . . . to treat [as surplusage] statutory terms in any

4   setting, and resistance should be heightened when the words describe an element of a criminal

5   offense.") (internal citation and quotations omitted).

6          Second, § 1505 specifically criminalizes obstruction of Congress—"the due and proper

7   exercise of the power of inquiry under which any inquiry or investigation is being had by . . .

8   Congress."  18 U.S.C. § 1505.  That provision shows that Congress understood the difference

9   between proceedings that administer the law, and mere "inquiry or investigation."  Interference

10  with purely investigative activities *by Congress* is covered, but such language is conspicuously

11  absent in the agency section.  *See Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 452 (2002)

12  ("[W]hen Congress includes particular language in one section of a statute but omits it in another

13  section of the same Act, it is generally presumed that Congress acts intentionally and purposely

14  in the disparate inclusion or exclusion.") (internal citation and quotations omitted).

15         Against that backdrop, numerous courts have recognized that mere agency investigations

16  are not covered by § 1505, absent a proceeding involving adjudicative or (perhaps) rulemaking

17  power.[12]  The leading case is *Higgins*, which held in 1981 that an investigation by the FBI was

18  not an agency "proceeding" within the meaning of § 1505 because the FBI has no power to

19  engage in rulemaking or adjudication, and dismissed the § 1505 count before trial.  511 F. Supp.

20  at 454-56.[13]  The court held that "the meaning of 'proceeding' in § 1505 must be limited to

21  actions of an agency which relate to some matter within the scope of the rulemaking or

22  adjudicative power vested in the agency by law."  *Id.* at 455.  It also observed that "each reported

23  decision applying the statute has involved an agency with rulemaking or adjudicative authority in

24  addition to investigative functions."  *Id.* (collecting cases); *see also United States v. McDaniel*,

25  ─────────────────

26  [12]    Many of the decisions state in dicta that adjudicative *or* rulemaking proceedings are required, but to our knowledge the question of whether § 1505 would apply in a pure rulemaking context has never arisen.  That issue has no significance for the present case.

27  [13]    *See also United States v. Adams*, 335 F. App'x 338, 342 (4th Cir. 2009) (stating the government conceded that a criminal investigation by the DEA and FBI is not a "pending proceeding" within the scope of § 1505 for purposes of the appeal).

28

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEF.'S MOT. TO DISMISS FOR FAILURE TO
STATE AN OFFENSE:  COUNT ONE
Case No. CR-14-00175-TEH

No. 12-CR-0028, 2013 U.S. Dist. LEXIS 110475, at *1, *4-12 (N.D. Ga. Jan. 29, 2013) (granting motion to dismiss and holding that an FBI investigation is not a 1505 "proceeding" because the FBI lacks adjudicative, rulemaking, or civil enforcement powers).

*United States v. Wright* built on *Higgins* and held that an investigation by a U.S. Attorney's Office was not a "proceeding" under § 1505 because it too was an investigative agency with no rulemaking or adjudicative authority, and dismissed the count before trial. 704 F. Supp. 613, 614-15 (D. Md. 1989). The court explained that "[t]he *ratio decidendi* of *Higgins* is that the agency to which the false information is submitted must be one with rule-making or adjudicative authority, before a § 1505 offense can occur." *Id.* at 615. Similarly, in *United States v. Edgemon*, the court concluded that an investigation by the Inspector General of the Tennessee Valley Authority was not a § 1505 "proceeding" because it was an investigative agency that lacked adjudicative powers, and granted a motion for acquittal. No. 3-95-cr-43, 1997 U.S. Dist. LEXIS 23820, at *11-13 (E.D. Tenn. Aug. 18, 1997) (explaining that in *Higgins*, "the court first addressed the definition of 'proceeding' in the context of an agency with solely investigative authority").

A number of cases have struggled with determining when § 1505 becomes applicable when the agency in question *does* have adjudicative authority. The leading case held that § 1505 applies to SEC investigations only when they are "directed by a formal order of the Commission, at which a designated officer takes testimony under oath." *United States v. Batten*, 226 F. Supp. 492, 494 (D.D.C. 1964). Other decisions appear to suggest that any investigation conducted in anticipation of an agency exercising its adjudicative or rulemaking authority is covered. *See, e.g., Rice v. United States*, 356 F.2d 709, 712 (8th Cir. 1996) ("Congress clearly intended to punish any obstruction of the administrative process . . . at any stage of the proceedings, be it adjudicative or investigative."); *United States v. Browning, Inc.*, 572 F.2d 720, 723-24 (10th Cir. 1978) (concluding that Customs Service investigation to uncover false invoices was a "proceeding" that led to a criminal indictment); *Wright*, 704 F. Supp. at 615 ("As long as the agency has such power, it is immaterial that the obstruction occurred in the course of an investigation, rather than during an adjudicative or rule-making proceeding."); *United States v.*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

DEF.'S MOT. TO DISMISS FOR FAILURE TO
STATE AN OFFENSE: COUNT ONE
Case No. CR-14-00175-TEH

1  *Ballestas*, No. 97 MAG. 0843, 1997 U.S. Dist. LEXIS 6405, at *7-8 (S.D.N.Y. May 9, 1997)

2  ("[A]n agency's investigation of suspected criminal activity within an area of which the agency

3  also has civil enforcement responsibility cannot realistically be viewed as entirely divorced from

4  that enforcement task.").

5       We are aware of only a single case in which a court considered the issue and concluded

6  that an investigative proceeding before an agency *without* related adjudicative or rulemaking

7  power was a "pending proceeding" under § 1505.  In *United States v. Kelley*, the D.C. Circuit

8  concluded that a formal investigation by the Inspector General of USAID was a "proceeding"

9  merely because he was "empowered to issue subpoenas and to compel sworn testimony."  36

10 F.3d 1118, 1127 (D.C. Cir. 1994).  With due respect to the D.C. Circuit, that opinion ignores the

11 language, structure, and history of § 1505.  The existence of subpoena power does not conjure

12 into existence a "proceeding" "before" an agency in which the law is being "administered."  And

13 as the *Edgemon* court explained when rejecting the D.C. Circuit's reasoning, "[t]he court's

14 analysis of *Batten* in *Kelley* totally misses the mark."  1997 U.S. Dist. LEXIS 23820, at *18.

15 "The holding in *Batten* was not based on the unexercised authority of the SEC to issue subpoenas

16 and to administer oaths.  Rather, the activities of the SEC in *Batten* were found to constitute a

17 pending proceeding because the SEC actually took procedural steps that demonstrated the

18 existence of a proceeding that was pending before the obstruction occurred."  *Id.*; *see also id.* at

19 *8-9, *17.  In *Batten*, there was no question that an SEC investigation into potential violations of

20 the law could be a "proceeding" under § 1505—the SEC plainly has adjudicative power, and the

21 defendant *conceded* that § 1505 applied to a second formal proceeding following the first.  226

22 F. Supp. at 493.  A number of decisions have subsequently cited *Kelley* in dicta for the

23 proposition that a proceeding can be established *either* by adjudicatory or rulemaking authority,

24 or by subpoena power.  *See Senffner*, 280 F.3d at 761 (involving enforcement of securities laws

25 by SEC); *United States v. Pugh*, 404 F. App'x 21, 26 (6th Cir. 2010) (involving FDA inspection

26 to determine if facilities in compliance with law, which resulted in indictment).  In each of these

27 cases, however, the agency involved was indeed endowed with adjudicatory power.

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

DEF.'S MOT. TO DISMISS FOR FAILURE TO
STATE AN OFFENSE:  COUNT ONE
Case No. CR-14-00175-TEH

1   The Ninth Circuit has not yet grappled with these issues.[14]   All of its decisions under

2   § 1505 have involved investigations preliminary to the exercise of adjudicative power by the

3   agency.  *See, e.g.*, *United States v. Technic Servs.*, 314 F.3d 1031, 1044 (9th Cir. 2002) (EPA

4   investigation "into possible violations of [environmental statutes], which could lead to a civil or

5   criminal proceeding"); *United States v. Price*, 951 F.2d 1028, 1031 (9th Cir. 1991)

6   (administrative investigation by IRS to recover taxes owed); *United States v. Vixie*, 532 F.2d

7   1277, 1278 (9th Cir. 1976) (same).  This Court should follow the better reasoned decisions and

8   hold that an investigation conducted by an agency that has no power to "administer" the law is

9   not a proceeding under § 1505, just as the Supreme Court has explained that an investigation by

10  the FBI is not the "due administration of justice" under § 1503.  *See, e.g.*, *Aguilar*, 515 U.S. at

11  600-01.

12           2.      The NTSB San Bruno Accident Investigation Was Not a Proceeding
                     Under § 1505 Because It Was Not Within the Scope of Any Adjudicative
13                   or Rulemaking Power

14           Whether a particular government investigation comes within the limits of § 1505 is a

15  question of law for the court.  *United States v. Fruchtman*, 421 F.2d 1019, 1021 (6th Cir. 1970).

16  And while no court has ever analyzed whether an NTSB investigation is a proceeding before an

17  agency under § 1505,[15] the foregoing discussion should make clear that, as a matter of law, an

18  _____

19  [14]  In *United States v. Stickle*, the district court cited four cases regarding agency investigative
    activities as "proceedings," and observed that "the Eleventh Circuit would likely follow this line
20  of authority and hold that the term 'pending proceeding' includes investigations by agencies that
    have discretionary or adjudicative power, or that have the power to enhance their investigations
21  through the issuance of subpoenas or warrants."  355 F. Supp. 2d 1317, 1328 (S.D. Fla. 2004).
    Three of the cases it cites relate to proceedings before agencies with adjudicatory power.  The
22  fourth, cited as *Bailey v. United States*, 35 F.3d 1118, 1121 (9th Cir. 1994), does not exist, nor is
    there any similar Ninth Circuit case.  The description appears to fit *Kelley*, and the citation is off
23  from *Kelley*'s by one number, and thus appears to be a mistake referring to *Kelley*.  In any event,
    the *Stickle* court's prediction of what the Eleventh Circuit might hold is dicta because *Stickle*
24  involved an investigation by the U.S. Department of Transportation and Coast Guard Office of
    Compliance within the scope of their adjudicative authority.  *Id.* at 1325, 1329.

25  [15]  The NTSB investigates about 2,000 aviation accidents and incidents a year, and about 500
    accidents in the other modes of transportation—rail, highway, marine and pipeline.
26  http://www.ntsb.gov/investigations/process/Pages/default.aspx.  We have found only one other
    indictment ever brought for obstruction of an NTSB accident investigation (presumably) under
27  § 1505 (among other charges), and that was 27 years ago.  There, a railroad engineer was high on
    marijuana at the time the freight locomotives he was driving collided with a passenger train,
28  resulting in 16 fatalities.  *See Nat'l R.R. Passenger Corp. v. Consol. Rail Corp.*, 698 F. Supp.
    951, 953 (D.D.C. 1988).  He was charged and promptly pleaded guilty to "conspiring to obstruct

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13                    DEF.'S MOT. TO DISMISS FOR FAILURE TO
                          STATE AN OFFENSE:  COUNT ONE
                              Case No. CR-14-00175-TEH

NTSB accident investigation is not a "proceeding" under § 1505.  The NTSB has no rulemaking or adjudicative power relating to the subject matter of its investigations.  As an independent agency with no connection to the Department of Transportation, the NTSB does not promulgate, enforce, or "administer" federal rules governing the operation of gas pipelines.  It does not adjudicate or determine the rights or liabilities of any pipeline operator.  Its charge is to investigate and report on facts relating to accidents, determine the probable causes of such accidents, and issue recommendations to government and private parties that may tend to prevent future accidents.  That is a noble and important purpose, but it does not involve the *administration* of the law—any more than FBI investigations involve the "administration of justice."

Indeed, NTSB investigations are much farther removed from the administration of the law than the ordinary police investigations that have never been covered by obstruction law.  NTSB investigations are not adversarial.  The subject of the investigation is not the defendant or its employees—it is the probable cause of the accident and related safety issues.  The NTSB's findings and recommendations do not have the force of law, and may not be reviewed under the Administrative Procedure Act or by any other body.  The reports, while important for promoting pipeline safety throughout the pipeline industry, do not lead to further agency action or enforcement.  They cannot even be admitted in litigation relating to the accidents.

Respecting the textual and historic limits of § 1505 will not harm the NTSB's investigative functions, just as the limits on § 1503 prosecutions have not crippled the FBI.  If a party to an NTSB investigation does not comply with the instructions or proscriptions, or acts in a manner prejudicial to the investigation, the NTSB may revoke its party status.  49 C.F.R. § 831.11(a)(2).  If the NTSB issues a subpoena to an individual, organization, or government

---

the federal investigation of the accident," apparently without challenging the statutory basis for the obstruction count.  *See id.*; *see also* http://www.washingtonpost.com/archive/local/ 1988/05/26/ex-engineer-pleads-guilty-to-us-charge-in-amtrak-crash/3a8498af-620f-41f9-b662-dc9c8a156224/.  The dearth of § 1505 prosecutions regarding NTSB accident investigations is relevant to statutory interpretation.  *United States v. Markiewicz*, No. 89-CR-88, 1989 U.S. Dist. LEXIS 13722, at *40 (N.D.N.Y. Nov. 17, 1989) (finding that evidence that no individuals have been prosecuted for obstructing a civil court proceeding under § 1505 was "probative of the administrative, here prosecutorial, interpretation [of] the statute") (internal citation and quotations omitted).

LATHAM&WATKINS<sup></sup>
ATTORNEYS AT LAW
SAN FRANCISCO

DEF.'S MOT. TO DISMISS FOR FAILURE TO
STATE AN OFFENSE:  COUNT ONE
Case No. CR-14-00175-TEH

1   entity for production of documents or testimony, those subpoenas can be enforced through the

2   judicial process.  *See* 49 U.S.C. § 1113(a)(4).  Other statutes prohibit false testimony under oath

3   (18 U.S.C. § 1621), obstruction through destruction or falsification of evidence (18 U.S.C.

4   § 1519), and false statements (18 U.S.C. § 1001).  The grand jury has not alleged any such

5   conduct or charges here, but they are available as recourse in the proper circumstances.

6           3.      The Rule of Lenity and Fair Warning Considerations Preclude Any
                    Expansion of the "Proceedings" Covered by § 1505
7

8           In interpreting the broadly drafted obstruction statutes, the Supreme Court has repeatedly

9   invoked the rule of lenity and fair warning concerns.  "We have traditionally exercised restraint

10  in assessing the reach of a federal criminal statute, both out of deference to the prerogatives of

11  Congress . . . and out of concern that 'a fair warning should be given to the world in language

12  that the common world will understand, of what the law intends to do if a certain line is passed.'"

13  *Aguilar*, 515 U.S. at 600 (citations omitted); *see also Arthur Andersen*, 544 U.S. at 703 (same).

14  The context of a pending judicial or quasi-judicial proceeding supplies much of the *mens rea* and

15  fair warning for the traditional crime of obstruction.  *See, e.g.*, *North*, 910 F.2d at 941

16  (Silberman, J., concurring) ("very few non-corrupt ways to or reasons for intentionally

17  obstructing a judicial proceeding leap immediately to mind") (citing *United States v. Reeves*, 752

18  F.2d 995, 999 (5th Cir. 1985)).[16]  Extending obstruction law beyond traditional adjudicative

19  contexts poses a serious risk of  "criminaliz[ing] some innocent behavior," *id.*, and should be

20  hazarded only if Congress's intent is plain.  The rule of lenity therefore requires that any

21  ambiguity concerning the meaning of "proceeding" must be resolved in the defendant's favor.

22  *United States v. Millis*, 621 F.3d 914, 916-17 (9th Cir. 2010) ("[T]he rule of lenity requires

23

24  _____

25  [16]    In *Reeves*, the Fifth Circuit distinguished between obstruction statutes that protect grand
    juries and courts (such as 18 U.S.C. § 1503), where any obstruction is "per se unlawful and is
    tantamount to doing the act corruptly" (*id.* at 999), and those that protect broader processes such
26  as administration of the tax laws, where an impeding action may be "bad" or "improper" in a
    general sense, but may not be "corrupt" in the sense of interfering with the fair collection of
27  taxes  (*id.* at 999-1001).  The court, in analyzing a similarly broad obstruction statute prohibiting
    interference with the administration of the IRS (16 U.S.C. § 7212(a)), noted that "merely
28  prohibiting 'bad,' 'evil' and '*improper' purposes* is very probably insufficient where, as here, a
    statute reaches such a broad category of circumstances." *Id* at 999-1000 (emphasis added).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15                          DEF.'S MOT. TO DISMISS FOR FAILURE TO
                            STATE AN OFFENSE:  COUNT ONE
                            Case No. CR-14-00175-TEH

1  courts to limit the reach of criminal statutes to the clear import of their text and construe any

2  ambiguity against the government.") (citation and quotation marks omitted).

3      **B.**    **The Court Should Also Dismiss Count One Because § 1505 Either Does Not Reach the Conduct Alleged in the Superseding Indictment or Is Unconstitutionally Vague as Applied to That Conduct**

4

5      There is a second reason Count One of the superseding indictment must be dismissed:  it

6  does not allege any conduct to which § 1505 may be applied, consistent with due process.  If the

7  Court adopts an appropriate narrowing construction of the word "corruptly," requiring an

8  intentional violation of a known legal duty, then the indictment should be dismissed because it

9  does not charge a crime.  Otherwise, it must be dismissed because the statute is

10  unconstitutionally vague as applied to the conduct alleged here.

11                  1.    <u>Governing Legal Principles</u>

12      The Due Process Clause forbids punishing a defendant for conduct that it could not

13  reasonably foresee was a criminal act.  It requires that "fair warning should be given to the

14  world in language that the common world will understand, of what the law intends to do if a

15  certain line is passed." *Arthur Andersen*, 544 U.S. at 703 (quoting *McBoyle v. United States*, 283

16  U.S. 25, 27 (1931)).  "[A] statute which either forbids or requires the doing of an act in terms so

17  vague that men of common intelligence must necessarily guess at its meaning and differ as to its

18  application, violates the first essential of due process of law." *Connally v. Gen. Constr. Co.*, 269

19  U.S. 385, 391 (1926).  Thus, a penal statute must define a criminal offense "'(1) with sufficient

20  definiteness that ordinary people can understand what conduct is prohibited[;] and (2) in a

21  manner that does not encourage arbitrary and discriminatory enforcement.'" *Skilling v. United*

22  *States*, 561 U.S. 358, 402-03 (2010) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)).  A

23  law is impermissibly vague if it fails to do either. *City of Chicago v. Morales*, 527 U.S. 41, 56

24  (1999).

25      Section 1505 imposes criminal penalties on "[w]hoever *corruptly* . . . influences,

26  obstructs, or impedes or endeavors to influence, obstruct, or impede the due and proper

27  administration of the law . . . ."  18 U.S.C. § 1505 (emphasis added).  The D.C. Circuit has

28  already held that the *mens rea* term "corruptly" as used in § 1505 is unconstitutionally vague,

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

16

DEF.'S MOT. TO DISMISS FOR FAILURE TO
STATE AN OFFENSE:  COUNT ONE
Case No. CR-14-00175-TEH

and that "in the absence of some narrowing gloss, people must 'guess at its meaning and differ as to its application.'" *Poindexter*, 951 F.2d at 378. The D.C. Circuit also held that dictionary words like "'depraved,' 'evil,' 'immoral,' 'wicked,' and 'improper' are no more specific— indeed they may be less specific—than 'corrupt.'" *Id.* at 378-79. "Vague terms do not suddenly become clear when they are defined by reference to other vague terms." *Id.* at 378 (citations and internal quotations omitted). The D.C. Circuit held in *Poindexter* that § 1505 could be constitutionally applied only to a "core" set of behavior that includes "a person who, for the purpose of influencing an inquiry, influences another person (through bribery or otherwise) to violate a legal duty." *Id.* at 385-86. That holding was consistent with what Justice Scalia has described as the traditional meaning of "corruptly" in the criminal law—"an act done with an intent to give some advantage inconsistent with official duty and the rights of others"—with the added requirement that the defendant's conduct must "corrupt" someone else, rather than just be corrupt in itself. *Aguilar*, 515 U.S. at 616 (1995) (Scalia, J., dissenting) (quoting *United States v. Ogle*, 613 F.2d 233, 238 (10th Cir. 1979)); *see also Reeves*, 752 F.2d at 998-99 (same).

Congress responded to the *Poindexter* decision by amending § 1515(b) in 1996 to define "corruptly" for purposes of § 1505 as acting "with an *improper purpose*, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information." 18 U.S.C. §1515(b) (emphasis added); *see also* 142 Cong. Rec. S4858, S11605-09 (1996). That language is certainly clearer than what came before, in one respect. It gives clear notice that "corruptly" does not require corruption of a second person, and that therefore the conduct with which Admiral Poindexter was charged—intentionally lying to Congress—can now be prosecuted under § 1505. Beyond that clarification, however, the amendment does not resolve the vagueness the D.C. Circuit found. Indeed, it purports to clarify the word "corruptly" with another word, "improper," that the D.C. Circuit specifically held only made the vagueness problem worse. *Cf. United States v. Kanchanalak,* 37 F. Supp. 2d 1, 2-4 (D.D.C 1999) (suggesting that § 1515(b) may not alleviate all vagueness concerns raised in *Poindexter* but finding it constitutional as to the specific conduct in that case). A close look at the superseding indictment reveals that the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

DEF.'S MOT. TO DISMISS FOR FAILURE TO
STATE AN OFFENSE:  COUNT ONE
Case No. CR-14-00175-TEH

amendment to § 1515(b) did not fully cure the due process concerns the D.C. Circuit highlighted in *Poindexter*, as applied to the facts alleged in this indictment.

2.   <u>Section 1505 Cannot Constitutionally Be Applied to the Conduct Alleged in the Superseding Indictment</u>

As alleged in the superseding indictment, the corruption charge fails for one of two reasons.  If the Court, consistent with *Poindexter* and traditional interpretations of the word "corruptly" in criminal law, narrowly interprets the "improper purpose" required by § 1515(b) to require an intentional violation of a known legal duty, then Count One must be dismissed because it does not charge a crime.  On the other hand, if the Court construes the § 1515(b) definition of "corruptly" broadly enough cover to the alleged conduct, Count One must be dismissed as unconstitutionally vague.

The superseding indictment appears to allege that the defendant obstructed the NTSB accident investigation by allegedly not disclosing two items:  (1) that, from approximately 2009 to April 2011, its Integrity Management group followed the practices set forth in an unapproved version of an internal instruction document regarding manufacturing threats; and (2) that the defendant knew the unapproved version violated a federal regulation.  SI ¶ 60.  The indictment does *not* allege that the defendant was asked or legally compelled to provide such information, or even that it would have been responsive to any of "a series of data requests" from the NTSB concerning instances of "planned and unplanned pressure increases."  *Id.* ¶ 56.  It does not allege that the defendant violated any legal duty by failing to volunteer the identified information.  It does not even allege any discernable "improper purpose."  Other than the charge tracking the language of § 1505 (which includes the word "corruptly"), *id.* ¶ 61, there is no indication that the grand jury concluded that any of the conduct alleged in Count One of the indictment, *id.* ¶¶ 53-60, was wrongful.

These allegations are plainly outside of the "core" application of § 1505 to which the statute may constitutionally be applied under *Poindexter* and Congress's clarifying amendment.  "Core" applications of § 1505 are limited to situations in which a defendant either violated a legal duty or caused someone else to do so.  Merely failing to volunteer information or

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

DEF.'S MOT. TO DISMISS FOR FAILURE TO
STATE AN OFFENSE:  COUNT ONE
Case No. CR-14-00175-TEH

1    documents to a government proceeding is not a violation of any duty and is not even "improper."

2    As the Supreme Court has explained, withholding information or documents from the

3    government "is not inherently malign." *Arthur Andersen*, 544 U.S. at 703-04; *see also, e.g.,*

4    *Ratzlaf v. United States*, 510 U.S. 135, 144-46, 154 (1994) (holding that there is nothing

5    "obviously 'evil'" or "inherently 'nefarious'" about withholding information from a government

6    investigation), *superseded by statute* 31 U.S.C. §§ 5322, 5324, *as recognized in United States v.*

7    *MacPherson*, 424 F.3d 183, 189 (2d Cir. 2005).  A person may withhold information from the

8    government for many legitimate reasons, for example if it was not requested, not relevant, if

9    there was no duty to produce it, to avoid self-incrimination, to preserve attorney-client or a

10   marital privilege, or, as in *Andersen*, to comply with a document retention policy.  That is one of

11   the reasons why our legal system is often described as "adversarial."  *See Arthur Andersen*, 544

12   U.S. at 703-04; *Bonds*, 784 F.3d at 584 ("Stretched to its limits, section 1503 poses a significant

13   hazard for everyone involved in our system of justice, because so much of what the adversary

14   process calls for could be construed as obstruction."); *North*, 910 F.2d at 883 (per curiam)

15   (vacating conviction under § 1505 and noting that "there are myriad ways of 'impeding' or

16   'obstructing' congressional investigations that are not in themselves corrupt").

17         As the D.C. Circuit recognized in *Poindexter*, the language of § 1505 is not sufficient to

18   put persons of ordinary intelligence on notice that the legal universe has been turned upside

19   down, and that withholding information from a government proceeding is a serious felony even

20   in the absence of any legal duty to provide that information.  Redefining "corruptly" as an

21   "improper purpose" does not help, and indeed makes the problem worse.  *See Poindexter*, 951

22   F.2d at 378-79.  The plain meaning of "improper" extends to actions or conduct that are

23   "incorrect," "not suited to circumstances or needs," "abnormal," "not in accord with propriety,

24   modesty, good manners, or good taste," "inappropriate," or "erroneous."  THE AMERICAN

25   HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (5th ed. 2015)[17]; MERRIAM-

26

27

28   [17]   https://www.ahdictionary.com/word/search.html?q=improper&submit.x=46&submit.y=26
     (accessed September 2, 2015).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19          DEF.'S MOT. TO DISMISS FOR FAILURE TO
            STATE AN OFFENSE:  COUNT ONE
            Case No. CR-14-00175-TEH

1    WEBSTER.COM[18]; DICTIONARY.COM UNABRIDGED, Random House, Inc. 2015.[19]  It potentially

2    encompasses behavior that no reasonable person would understand to be criminal, and supplies

3    no clear line to separate the lawful from the unlawful or to prevent arbitrary and selective

4    enforcement.  *See Kolender*, 461 U.S. at 357-58 (vague statutes improperly permit "a

5    standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal

6    predilections") (internal quotations and citations omitted).

7           Section 1505 is frequently and appropriately invoked to prosecute conduct falling within

8    the "core" constitutional application of the statute identified by the D.C. Circuit.  This includes

9    lying to influence an adjudicative proceeding, forging or destroying documents, or withholding

10   documents the defendant has a present legal duty (such as under a subpoena) to produce.[20]  All

11   of those settings involve the knowing violation of a legal duty, which serves to put the defendant

12   on notice that the line between lawful and unlawful behavior is being crossed.  But the

13   superseding indictment in this case contains no such allegations.  Instead, it appears to charge a

14   theory of criminality under which the government could prosecute citizens for reading a

15   subpoena narrowly (but reasonably) instead of broadly, declining to cooperate with a *voluntary*

16   request for information, failing to produce a document pursuant to a lawful claim of privilege, or

17   invoking constitutional rights such as the right against self-incrimination.

18          The most sensible solution to this quandary would be to interpret "improper purpose" in

19   § 1515(b) to require the intentional violation of a known legal duty, consistent with the

20   traditional meaning of "corruptly" in the criminal law and the D.C. Circuit's reasoning in

21

22

---

23   [18]   http://www.merriam-webster.com/dictionary/improper (accessed September 2, 2015).

24   [19]   http://dictionary.reference.com/browse/improper?s=t (accessed September 2, 2015).

25   [20]   *Compare, e.g.*, *United States v. Starks*, 472 F.3d 466, 468 (7th Cir. 2006) (ripping up an incriminating affidavit and attempting to swallow it); *United States v. Cisneros*, 169 F.3d 763, 765-66 (D.C. Cir. 1999) (lying about payments and financial arrangements  to ensure cabinet

26   nomination would pass an FBI background check); *United States v. Messer*, No. 97-4504, 1998 U.S. App. LEXIS 5008, at *2-3 (4th Cir. Mar. 16, 1998) (submitting a forged document in

27   response to a DEA subpoena); *United States v. Kowalewski*, No. 13-CR-045, 2014 U.S. Dist. LEXIS 165404, at *8-9 (N.D. Ga. Oct. 7, 2014) (providing fraudulent and backdated leases to

28   SEC); *Kanchanalak,* 37 F. Supp. 2d at 2 (mutilating, discarding, hiding, and erasing files that were subject to a grand jury subpoena).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20                    DEF.'S MOT. TO DISMISS FOR FAILURE TO
                     STATE AN OFFENSE:  COUNT ONE
                     Case No. CR-14-00175-TEH

1   *Poindexter*.  Other similar statutes have been narrowed in that way, [21] and the legislative history

2   of § 1515(b) would support such a narrowing construction. [22]  If the language is construed that

3   way, the superseding indictment would have to be dismissed because it plainly fails to charge the

4   required elements of the crime.  If improper purpose is given a broader construction—indeed,

5   any construction broad enough to reach the conduct charged here—then the superseding

6   indictment must be dismissed on due process grounds, because as applied here the statute would

7   be unconstitutionally vague.

8          A court in the Eastern District of Louisiana recently confronted a similar vagueness

9   challenge in *United States v. Rainey*, No. 2:12-cr-00291.  There, a BP executive was charged

10  under § 1505 with obstructing a congressional subcommittee investigation relating to Deepwater

11  Horizon.  Specifically, he was charged with not voluntarily disclosing certain information about

12  the oil flow rates in a congressional briefing, internal memorandum, and letter to a U.S.

13  Representative.  The defendant made similar arguments as here, including that he was under no

14  legal duty to provide the information, that it had not been requested, and that § 1505, if applied

15  to a mere non-disclosure of information in response to a *voluntary* request, violates due process.

16  In an oral ruling, the court granted the defendant's motion to dismiss the obstruction count as

17  void for vagueness.  Valco Dec. Ex. 18 at 287:5-9; *see also* Mem. of Law in Support of Def.

18  David Rainey's Mot. to Dismiss Count One of the Indictment for Unconstitutional Vagueness,

19  *United States v. Rainey*, No. 2:12-cr-00291 (E.D. La. Mar. 4, 2013); Supp. Mem. of Law in

---

21  [21]   *See, e.g.*, *United States v. Safavian*, 528 F.3d 957, 964 (D.C. Cir. 2008) (concluding "there

22  must be a legal duty to disclose in order for there to be a concealment offense in violation of § 1001(a)(1)," which prohibits the falsification or concealment of a material fact).

23  [22]   The legislative history of § 1515(b) confirms that the amendment was intended to address

24  situations where, at the very minimum, the governmental body actually *sought* or *requested* the withheld or concealed documents.  *See* 142 Cong. Rec. S11608 (1996) ("This bill would correct

25  the court's nonsensical interpretation of section 1505 by making clear that the statute prohibits witnesses from engaging with improper purpose in any of the variety of means by which

26  individuals may seek to impede a congressional or other governmental investigation, whether doing so personally or through another individual, and whether by making false or misleading statements or withholding, concealing, altering, or destroying documents *sought by*

27  *congressional committees and other investigative bodies*.") (emphasis added); 142 Cong. Rec. S4857 (1996) ("This definition . . . would make it clear that this prohibition bars a person from

28  making false or misleading statements to Congress and from withholding, concealing, altering, or destroying documents *requested by Congress*.").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21                                    DEF.'S MOT. TO DISMISS FOR FAILURE TO
                                      STATE AN OFFENSE:  COUNT ONE
                                      Case No. CR-14-00175-TEH

1   Support of Def. David Rainey's Mot. to Dismiss Count One of the Second Superseding

2   Indictment for Unconstitutional Vagueness, *United States v. Rainey*, No. 2:12-cr-00291 (E.D. La.

3   Oct. 27, 2014).  This Court should do the same.

4   **V.   CONCLUSION**

5          For the foregoing reasons, the defendant respectfully asks the Court to dismiss Count One

6   of the superseding indictment.

7   Dated:  September 7, 2015                     Respectfully submitted,

8                                       By  _____/s/_____

9                                          Steven M. Bauer
                                           Margaret A. Tough
                                           Nicole C. Valco
10                                         Kala Sherman-Presser
                                           Tyler P. Young
11                                         LATHAM & WATKINS LLP

12                                         Kate Dyer
                                           CLARENCE, DYER & COHEN LLP
13

14                                         *Attorneys for Defendant*
                                           *Pacific Gas and Electric Company*

15

16

17

18

19

20

21

22

23

24

25

26

27

28