LATHAM & WATKINS LLP
   Steven M. Bauer (Bar No. 135067)
      steven.bauer@lw.com
   Margaret A. Tough (Bar No. 218056)
      margaret.tough@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California  94111-6538
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095

LATHAM & WATKINS LLP
   Melissa Arbus Sherry (*pro hac vice*)
      melissa.sherry@lw.com
555 11th Street, NW, Suite 1000
Washington, DC  20004-1304
Telephone: +1.202.637.2200
Facsimile: +1.202.637.2201

CLARENCE, DYER & COHEN LLP
   Kate Dyer (Bar No. 171891)
      kdyer@clarencedyer.com
899 Ellis Street
San Francisco, California  94109-7807
Telephone: +1.415.749.1800
Facsimile: +1.415.749.1694

Attorneys for Defendant
PACIFIC GAS AND ELECTRIC COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>         v.<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>         Defendant. | CASE NO. CR-14-00175-TEH<br><br>**DEFENDANT'S MOTION TO DISMISS THE ALTERNATIVE FINES ACT SENTENCING ALLEGATIONS**<br><br>Judge:   Hon. Thelton Henderson<br>Date:    October 19, 2015<br>Time:   10:00 A.M.<br>Place:   Courtroom 2, 17th Floor |

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEF.'S MOT. TO DISMISS THE
ALTERNATIVE FINES ACT ALLEGATIONS
Case No. CR-14-00175-TEH

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on October 19, 2015, at 10:00 a.m., Defendant Pacific Gas and Electric Company ("PG&E") will and hereby does move this Court for an order dismissing the Alternative Fines Act sentencing allegations because they would unduly complicate and prolong the proceedings. The Motion will be based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Nicole C. Valco, the files and records of this case, and such other argument and evidence as the Court may consider.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEF.'S MOT. TO DISMISS THE
ALTERNATIVE FINES ACT ALLEGATIONS
Case No. CR-14-00175-TEH

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................1

II. BACKGROUND .................................................................................................................3

    A. The Alternative Fines Act................................................................................... 3

    B. The Superseding Indictment's Alternative Fines Act Allegations ........................ 4

III. DISCUSSION .....................................................................................................................5

    A. Proving the Alleged Gains Would Be Complex and Time-Consuming ............................................................................................................. 6

    B. Proving the Alleged Losses Would Be Complex and Time-Consuming ............................................................................................................. 9

    C. The Superseding Indictment Does Not Charge a Lack of Undue Complication and Delay ...................................................................................... 11

    D. The Objectives of the Alternative Fines Act Have Already Been Met Here .................................................................................................................. 12

IV. CONCLUSION .................................................................................................................13

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

DEF.'S MOT. TO DISMISS THE
ALTERNATIVE FINES ACT ALLEGATIONS
Case No. CR-14-00175-TEH

# TABLE OF AUTHORITIES

Page(s)

### CASES

*Apprendi v. New Jersey*,
    530 U.S. 466 (2000) ................................................................................................ 4, 11, 12

*Burrage v. United States*,
    134 S. Ct. 881 (2014) ............................................................................................................ 5

*Hughey v. United States*,
    496 U.S. 411 (1990) .............................................................................................................. 6

*Jones v. United States*,
    526 U.S. 227 (1999) .............................................................................................................. 4

*Southern Union Company v. United States*,
    132 S. Ct. 2344 (2012) ........................................................................................... 4, 8, 10, 11

*United States v. BP Products North America Inc.*,
    610 F. Supp. 2d 655 (S.D. Tex. 2009) ....................................................................... 5, 6, 9, 10

*United States v. CITGO Petroleum Corporation*,
    908 F. Supp. 2d 812 (S.D. Tex. 2012) ................................................................................ 8, 9

*United States v. Gibson*,
    409 F.3d 325 (6th Cir. 2005) ................................................................................................. 8

*United States v. Paroline*,
    134 S. Ct. 1710 (2014) .......................................................................................................... 5

*United States v. Peterson*,
    538 F.3d 1064 (9th Cir. 2008) ............................................................................................... 6

*United States v. Sanford Ltd.*,
    878 F. Supp. 2d 137 (D.D.C. 2012) ............................................................................*passim*

*United States v. Spinney*,
    795 F.2d 1410 (9th Cir. 1986) ............................................................................................... 5

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ........................................................................................................ 10

### STATUTES

18 U.S.C. § 3571(c) ....................................................................................................................... 9

18 U.S.C. § 3571(c)(3) .................................................................................................................. 4

18 U.S.C. § 3571(d) .................................................................................................................. 1, 3

18 U.S.C. § 3623(c) ....................................................................................................................... 3

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

DEF.'S MOT. TO DISMISS THE
ALTERNATIVE FINES ACT ALLEGATIONS
Case No. CR-14-00175-TEH

| | |
|---|---|
| 18 U.S.C. § 3623(c)(1) | 3 |

**OTHER AUTHORITIES**

| | |
|---|---|
| CPUC's "Electric and Gas Utility Cost Report: Public Utilities Code Section 747 Report to the Governor and Legislature," April 2015 at 7-12, *available at* http://www.cpuc.ca.gov/NR/rdonlyres/A87AF775-6CBF-4076-984E-08675CE39332/0/2014AB67Final.pdf. | 7 |
| Decision on Fines and Remedies to Be Imposed on Pacific Gas and Electric Company for Specific Violations in Connection with the Operation and Practices of Its Natural Gas Transmission System Pipelines, Decision 15-04-024, dated April 9, 2015 at 80 *available at* http://docs.cpuc.ca.gov/PublishedDocs/Published/G000/M150/K990/150990886.PDF | 8 |
| News Release, "PG&E Pays San Bruno Fine," dated August 13, 2015 *available at* http://www.pge.com/en/about/newsroom/newsdetails/index.page?title=20150813_pge_pays_san_bruno_fine | 13 |
| News Release, "PG&E States It Is Liable for the San Bruno Pipeline Accident," dated December 13, 2011 *available at* http://www.pge.com/about/newsroom/newsreleases/20111213/pge_states_it_is_liable_for_the_san_bruno_pipeline_accident.shtml | 11 |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

DEF.'S MOT. TO DISMISS THE ALTERNATIVE FINES ACT ALLEGATIONS
Case No. CR-14-00175-TEH

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Alternative Fines Act, 18 U.S.C. § 3571(d), is a seldom-litigated provision that allows the government to seek fines beyond the applicable statutory maximum. Where a crime creates a pecuniary gain for the defendant or pecuniary loss for others, "the defendant may be fined not more than the greater of twice the gross gain or twice the gross loss," so long as "imposition of a fine under this subsection would [not] unduly complicate or prolong the [proceedings]." 18 U.S.C. § 3571(d). Where proceeding under the Alternative Fines Act would unduly complicate or prolong the case, however, the ordinary statutory maximum set by Congress governs.

The government has been as vague about its Alternative Fines Act allegations as about most else in this case. It appears to contend that PG&E's "gain[s]" can be calculated by reference to estimates of how much PG&E plans to spend upgrading its pipeline system, and that "pecuniary loss[es]" can be calculated by adding up the voluntary civil settlements that PG&E reached with each of more than 500 victims of the San Bruno accident. Those attempts at simplification are a mirage. Attempting to litigate the amount of any gain or loss that might have resulted from the charged offenses in this case would profoundly complicate and extend the proceedings.

In calculating alleged *gains*, the jury could not simply look to system-wide investments that PG&E is making now and will make in the coming years to improve its operations and regulatory compliance. It would have to identify—beyond a reasonable doubt—specific savings that PG&E obtained on each of the charged pipeline segments solely through non-compliance with each particular charged regulation. And even *that* would not be enough, because the regulated nature of the California natural gas industry means that when PG&E makes new investments its authorized rates also rise—in an amount decided through contested ratemaking proceedings. To decide that an alleged cost savings actually resulted in a pecuniary gain to PG&E, the jurors would have to engage in a detailed and somewhat hypothetical regulatory ratemaking analysis and attempt to determine—beyond a reasonable doubt—what, if any,

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEF.'S MOT. TO DISMISS THE
ALTERNATIVE FINES ACT ALLEGATIONS
Case No. CR-14-00175-TEH

pecuniary gain may be reflected in past or future rates set by the California Public Utilities Commission ("CPUC"). And they would do this after the CPUC—which is responsible for determining how much PG&E may charge its customers—spent years determining the maximum penalties and disallowances that it could impose without adversely impacting those customers.

Litigating the *losses* allegedly resulting from the charged offenses would be, if anything, even more convoluted and time-consuming. Even if the government could prove that the San Bruno accident was caused by one or more of the specific alleged regulatory deficiencies charged in the indictment—an effort that the defense does not believe will succeed and that by itself will greatly complicate this trial—the prior civil settlements do not establish relevant losses because they were (a) compromise agreements, (b) from a civil preponderance of the evidence standard, (c) lumping together *all* forms of damages, not just "pecuniary loss." The jury would need to consider specific evidence of the pecuniary loss for each individual, beyond a reasonable doubt, who was harmed by the San Bruno accident. The jury also would have to find that each of those losses was actually and proximately caused by the particular conduct charged in the indictment and not by any other factors. The amount of voluntary settlement payments to more than 500 civil plaintiffs does not establish individual pecuniary loss.

In short, allowing the government to proceed on its Alternative Fines Act allegations would take what will already be one of the more complex criminal trials ever tried in this district, in which a jury will be asked to master a highly complex regulatory regime and to discern obligations that the government cannot even clearly describe in the indictment—and will add on more than 500 mini-trials about civil damages, plus a mock-ratemaking proceeding in which the jurors have to learn regulatory economics and put themselves in the shoes of CPUC commissioners.

Respectfully, if all of that is not enough to trigger the Alternative Fines Act's "undue complication" limitation, it is difficult to imagine what *would* be enough.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEF.'S MOT. TO DISMISS THE
ALTERNATIVE FINES ACT ALLEGATIONS
Case No. CR-14-00175-TEH

## II. BACKGROUND

### A. The Alternative Fines Act

The Alternative Fines Act provides that "[i]f any person derives pecuniary gain from the offense, or if the offense results in pecuniary loss to a person other than the defendant, the defendant may be fined not more than the greater of twice the gross gain or twice the gross loss, unless imposition of a fine under this subsection would unduly complicate or prolong the sentencing process." 18 U.S.C. § 3571(d). Congress adopted that provision to fill a specific gap in the types of criminal fines courts can impose. As the House Judiciary Committee Report accompanying the Alternative Fines Act's predecessor statute, 18 U.S.C. § 3623(c)(1), explains, the provision was "intended to enable federal courts to impose fines that will prevent convicted offenders from *profiting from their wrongdoing*." *United States v. Sanford Ltd.*, 878 F. Supp. 2d 137, 148-49 (D.D.C. 2012) (quoting H.R. Rep. No. 98-906 at 17 (1984)) (emphasis in original). In other words, the Alternative Fines Act was meant to address the concern that, in some circumstances, the potential maximum criminal fine per count would allow the defendant to pay the fine and still make a profit from its criminal conduct. *See id.*

Congress was wary, however, of allowing this sentencing enhancement to become the dog-wagging tail of a criminal prosecution. Accordingly, it instructed that the enhanced fine would be unavailable if determining it "would unduly complicate or prolong the sentencing process." 18 U.S.C. § 3571(d). The House Report from 18 U.S.C. § 3623(c) discussed when attempting to calculate an alternative fine would be inappropriate:

> [F]or example, if determining the amount of the defendant's gain were to require a protracted hearing that would last longer than the trial, the judge could decline to base the fine on the defendant's gain. The court's determination as to whether imposing a fine based on defendant's gain or victim's loss is discretionary, and the committee is confident that federal judges will not abuse this discretion.

H.R. Rep. No. 98-906 at 17 (1984).

When the Alternative Fines Act was passed in 1987, Congress envisioned that the "sentencing process" would involve only a judge, who would find facts and calculate the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEF.'S MOT. TO DISMISS THE
ALTERNATIVE FINES ACT ALLEGATIONS
Case No. CR-14-00175-TEH

1 resulting fine by himself—and also exercise discretion about whether the process he envisioned
2 would "unduly complicate or prolong" the judicially-administered sentencing process.
3 Following the Supreme Court's decisions in *Apprendi v. New Jersey* and in *Southern Union*
4 *Company v. United States,* 132 S. Ct. 2344, 2357 (2012), however, all issues that could affect the
5 maximum punishment available at sentencing "must be charged in an indictment, submitted to a
6 jury, and proven beyond a reasonable doubt." *Apprendi*, 530 U.S. 466, 476 (2000) (quoting
7 *Jones v. United States*, 526 U.S. 227, 243 n.6 (1999)); *see also Sanford Ltd.*, 878 F. Supp. 2d at
8 152 ("The alternative fine provision refers to delay and complexity in 'the sentencing process,'
9 but in the wake of the *Southern Union* decision, the Court must consider these factors in
10 determining the admissibility at trial of evidence pertaining to gross gain."). Now, after
11 *Apprendi* and *Southern Union*, imposing a fine under the Alternative Fines Act would be
12 unconstitutional unless the gains and loss determinations are made by the jury, not the Court, and
13 by a beyond a reasonable doubt standard of proof.

### B. The Superseding Indictment's Alternative Fines Act Allegations

15 An organizational defendant charged with the counts in the superseding indictment would
16 normally face a statutory maximum fine of $500,000 per count, or $14 million total. *See* 18
17 U.S.C. § 3571(c)(3). By invoking the Alternative Fines Act and alleging that PG&E made gains
18 of $281 million and caused losses of $565 million through its regulatory violations, however, the
19 superseding indictment seeks to increase the potential total fine to $1.13 billion—more than 80
20 times higher than the otherwise applicable maximum penalty. *See* Superseding Indictment
21 ("SI") (Dkt. 22) ¶ 76.

22 The government has declined the defendant's multiple requests for further explanation
23 about how the alleged gains and losses were calculated. *See* Valco Decl. Exs. 7, 8, 19, 20.
24 (Moreover, as explained in a separate motion filed today, the government's legal instruction to
25 the grand jury was misleading and remarkably inaccurate—which alone requires that the
26 Alternative Fines Act allegations be dismissed.) Perhaps, one may assume that the government's
27 factual presentation to the grand jury is consistent with what it has said it its briefs. There, the
28 government stated that the $565 million loss figure "is based upon PG&E's own filings with the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEF.'S MOT. TO DISMISS THE
ALTERNATIVE FINES ACT ALLEGATIONS
Case No. CR-14-00175-TEH

1  Securities and Exchange Commission as to what PG&E has paid to claimants related to the San
2  Bruno explosion." Govt.'s Opp. to Def.'s Mot. to Strike (Dkt. 36) at 19. The $281 million gain
3  figure, meanwhile, is supposedly based on "PG&E's own submissions to the California Public
4  Utilities Commission as to what PG&E plans to spend to bring its pipeline system in compliance
5  with the federal regulations." *Id.*

## III.   DISCUSSION

The Alternative Fines Act claims would inject countless difficult issues into what already will be an extremely complex and lengthy trial. Because the maximum fine is based on the gain that "derive[d]" from the crime of conviction, or the loss that "result[ed]" from that crime, the government will have to prove that the exact regulatory violations alleged in the indictment caused PG&E to incur specific pecuniary gain or resulted in pecuniary loss to others, and will have to quantify those amounts—all beyond a reasonable doubt. *See Sanford Ltd.*, 878 F. Supp. 2d at 150, 152.

As the government has previously conceded in Alternative Fines Act cases, the statute's causation requirement "mandate[s] that gain or loss be both factually and proximately caused by the defendant's acts." *United States v. BP Products N. Am.*, 610 F. Supp. 2d 655, 688 (S.D. Tex. 2009) (internal quotation marks omitted); *see also United States v. Spinney*, 795 F.2d 1410, 1415 (9th Cir. 1986) ("Causation in criminal law has two requirements: cause in fact and proximate cause."). "But for" causation requires proof "that the harm would not have occurred in the absence of—that is, but for—the defendant's conduct." *Burrage v. United States*, 134 S. Ct. 881, 887-88 (2014) (internal quotation marks omitted). The requirement of proximate causation serves "to preclude liability in situations where the causal link between conduct and result is so attenuated that the consequence is more aptly described as mere fortuity." *United States v. Paroline*, 134 S. Ct. 1710, 1719 (2014). "[P]roximate causation in a criminal case presents a higher threshold for proof than proximate causation in a civil tort case." *BP Products*, 610 F. Supp. 2d at 688 (citing *Spinney*, 795 F.2d at 1416 n.2.). The jury must consider "whether there was an intervening cause and, if so, whether this intervening cause was directly related to the offense conduct." *United States v. Peterson*, 538 F.3d 1064, 1075 (9th Cir. 2008) (internal

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEF.'S MOT. TO DISMISS THE
ALTERNATIVE FINES ACT ALLEGATIONS
Case No. CR-14-00175-TEH

1  quotations and citations omitted).  Intervening causes can break the proximate causation chain,

2  as can non-criminal conduct that contributed to causing an event.  *See BP Products*, 610 F. Supp.

3  2d at 689.

4    An alternative fine must be based only on damages caused by the "offense of

5  conviction," not on "losses stemming from all conduct attributable to the defendant."  *Id.* at 688

6  (quoting *Hughey v. United States*, 496 U.S. 411, 418 (1990)).  The government would therefore

7  have to establish that the gains or losses on which a fine is ultimately based were actually and

8  proximately caused by the specific conduct underlying any counts for which PG&E is

9  convicted—not just by PG&E in a broader sense.  The government would have to put on a case

10  that would allow the jury to disaggregate gains or losses allegedly attributable to particular

11  counts, and the jury form would have to properly account for all of the possibilities.

12    Litigation over the alleged gains and losses in this case, and the jury's consideration of

13  these issues, would unduly extend and complicate this trial.  The Alternative Fines Act therefore

14  should be dismissed.

15    **A. Proving the Alleged Gains Would Be Complex and Time-Consuming**

16    Consider the alleged gains first.  The superseding indictment alleges that the charged

17  regulatory violations caused the company to gain $281 million.  The only explanation for that

18  figure that the government has ever supplied is that PG&E said at some point that it planned to

19  spend that much to upgrade its regulatory compliance across its entire pipeline system.  *See*

20  Govt.'s Opp. to Def.'s Mot. to Strike (Dkt. 36) at 19.  We have no idea what statement the

21  government is referring to, but a system-wide cost estimate for the implementation of a broad

22  regulatory compliance program obviously is not a proxy for gains associated with any "offense"

23  of conviction resulting from the specific charges in the superseding indictment.  Indeed, it is so

24  grossly and obviously overbroad that it would be completely unhelpful to the jury and should be

25  inadmissible at trial.  PG&E's ongoing efforts to upgrade its pipelines and its regulatory

26  compliance systems necessarily entail enormous expenditures that have nothing to do with any

27  conduct charged as a knowing and willful crime in this indictment.  To establish relevant gains

28  under the Alternative Fines Act the government would have to show *specifically* what, if

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEF.'S MOT. TO DISMISS THE
ALTERNATIVE FINES ACT ALLEGATIONS
Case No. CR-14-00175-TEH

anything, PG&E supposedly saved through its alleged failure to comply with the particular regulations on the particular pipeline segments actually charged.

And that would just be the beginning.  "Gross gain" means "any additional before-tax profit to the defendant that derives from the relevant conduct of the offense." *Sanford Ltd.*, 878 F. Supp. 2d at 150.  Because PG&E is a utility whose rates are set by the CPUC, costs saved do not inexorably translate into profits made.  The amount that PG&E is allowed to charge its customers is determined through multi-year rate cases litigated before the CPUC that consider, among other things, how much it will cost PG&E to operate its business and how much capital PG&E has invested.[1]  As PG&E's costs go down over time, some or all of those savings—as determined through complex administrative adjudication—are shared with its customers in the form of lower rates.  It is entirely possible, for example, that if PG&E had torn up and replaced the entirety of Line 132, as the government seems to believe it should have, the result could have been *higher* profits—after a CPUC-authorized rate hike necessary to ensure the opportunity for the company to earn a reasonable rate of return on that investment.[2]  In order to assess the "gain" that PG&E would have derived from an alleged failure to comply with specific regulations on specific lines, therefore, the jury would need to determine, beyond a reasonable doubt, how the CPUC would have set PG&E's rates in a hypothetical world in which its costs and investments were higher because it implemented the regulatory compliance programs that the government now claims it should have had on the charged lines.  That effort would require a "trial-within-a-trial" in which the jurors effectively sit as CPUC commissioners.  Moreover, the CPUC has already engaged in the type of analysis contemplated by the Alternative Fines Act in the course of determining the amount of the penalty and disallowances to be imposed on PG&E as a result

---

[1] *See generally* CPUC's "Electric and Gas Utility Cost Report: Public Utilities Code Section 747 Report to the Governor and Legislature," April 2015 at 7-12 ("Due to the increasingly varied nature of utility costs and the multitude of energy policy programs, the determination of revenue requirements and the ratesetting process at the CPUC have grown more complex over time."), *available at* http://www.cpuc.ca.gov/NR/rdonlyres/A87AF775-6CBF-4076-984E-08675CE39332/0/2014AB67Final.pdf.

[2] *See, e.g.*, *id.* at 9 ("Depreciation causes the utilities' ratebase for existing assets to decline over time, while building new plants or making capital improvements to existing plants causes their ratebase to increase.").

of the San Bruno accident.  The CPUC stated, "[W]e agree that the penalty imposed should be a combination of fines, disallowances and remedies. . . . [W]e must balance the need to set the proper penalty at the appropriate level to deter future violations with the need to ensure that any penalty imposed does not adversely impact PG&E's ratepayers."[3]

In a far less complex case, *United States v. Gibson*, the Sixth Circuit affirmed the district court's decision not to consider an alternative fine due to the complexity inherent in determining gains.  409 F.3d 325, 342 (6th Cir. 2005).  The corporate defendant, KenAmerican Resources, Inc., and some if its employees were convicted of various crimes including violations of the Mine Safety and Health Act for improper ventilation practices and the illegal use of continuous mining machines at its coal mine.  *See id.* at 330.  The district court declined to hear testimony about KenAmerican's pecuniary gain from the criminal violations because doing so would unduly complicate and prolong the sentencing.  The court stated it "might be here for a long time and still have lots of questions about the amount," and it would be "engaging in speculation and guesswork."  *Id.* at 342.  The *Gibson* court was concerned about the complexity in determining gains even in 2005, before *Southern Union*.  Now, an Alternative Fines Act jury trial to prove gains beyond a reasonable doubt would be considerably more complex than a hearing that would have been held before a sentencing judge.

Several decisions involving alleged criminal violations of environmental regulations have recognized "the myriad practical complexities that can arise in proving 'gross gain' to an organizational defendant." *Sanford Ltd.*, 878 F. Supp. 2d at 152.  In *United States v. CITGO Petroleum Corporation*, for instance, the government sought an alternative fine based on what it alleged the company gained from operating its refinery without proper emission control devices—a violation of the Clean Air Act.  908 F. Supp. 2d 812, 813 (S.D. Tex. 2012).  The district court rejected the government's request to empanel a sentencing jury to consider the Alternative Fines Act sentencing allegations, invoking the undue complication provision.  *Id.* at

---

[3] Decision on Fines and Remedies to Be Imposed on Pacific Gas and Electric Company for Specific Violations in Connection with the Operation and Practices of Its Natural Gas Transmission System Pipelines, Decision 15-04-024, dated April 9, 2015 at 80 *available at* http://docs.cpuc.ca.gov/PublishedDocs/Published/G000/M150/K990/150990886.PDF.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEF.'S MOT.  TO DISMISS THE
ALTERNATIVE FINES ACT ALLEGATIONS
Case No. CR-14-00175-TEH

818. The district court found that holding an Alternative Fines Act trial would involve 16 to 20 new witnesses, over 300 exhibits, "another flurry of motions *in limine*," and other legal rulings. *See id.* at 818. When the defendant was already set to be fined based on the amounts provided for in 18 U.S.C. § 3571(c), the possibility of the jury finding facts necessary to support an alternative fine did not justify this additional complication and delay. *CITGO*, 908 F. Supp. 2d at 818.

Likewise, in *United States v. BP Products North America Inc.*, the court recognized the enormous complexity of proving gains attributable to the Clean Air Act violation to which the defendant pleaded guilty. *See* 610 F. Supp. 2d at 660. The guilty plea there arose from a 2005 explosion at a Texas oil refinery that killed 15 people and injured many more. The victims, opposing a plea deal that included a $50 million fine, claimed that a larger alternative fine could be based on the "cost savings from a plant-wide failure to establish and implement written process safety procedures." *Id.* at 700. As in this case, however, apportioning the system-wide savings figure between charged conduct (producing relevant gains) and uncharged conduct (producing *ir*relevant gains) would have been "unduly complicated and prolonged, triggering the complexity provision" of the Alternative Fines Act. *Id.*

**B.  Proving the Alleged Losses Would Be Complex and Time-Consuming**

Calculating losses would be equally complex and time-consuming. "Gross loss" means the pecuniary or monetary damage caused to others, which does not include non-pecuniary damages "such as pain and suffering, emotional distress, loss of consortium, and punitive damages." *BP Products*, 610 F. Supp. 2d at 702-03.

The government's proposal to use the civil tort settlements as a proxy for Alternative Fines Act losses directly conflicts with the *BP Products* principles and even the government's own position in that case. Civil tort settlements are obviously inappropriate and insufficient to satisfy its burden. The civil settlements were negotiated under the preponderance-of-the-evidence standard (rather than the beyond-a-reasonable-doubt standard applicable here) and made no distinction between pecuniary harm (like property damage or lost income) and non-pecuniary harm (like pain and suffering or loss of consortium). *See id.* As the government itself

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEF.'S MOT. TO DISMISS THE
ALTERNATIVE FINES ACT ALLEGATIONS
Case No. CR-14-00175-TEH

explained in *BP Products*, calculating losses to victims "would require having a jury determine, beyond a reasonable doubt, the *pecuniary* losses of each individual victim." *Id.* at 706. (emphasis added). It follows—as the court in *BP Products* concluded—that where "there are multiple victims present, the causation issues are disputed, and the losses include significant amounts of disputed future losses, the complexity exception to calculating losses in setting a fine (or restitution) is likely to apply." *Id.*; *cf. Southern Union*, 132 S. Ct. at 2370 (Breyer, J., dissenting) ("[D]etermin[ing] fine-related sentencing facts . . . will often involve highly complex determinations. . . . And in an antitrust or an environmental pollution case, the jury may have particular difficulty assessing different estimates of resulting losses.").

Once again, there also would be extremely thorny questions of causation. The government would have to *start* by proving beyond a reasonable doubt that but for particular regulatory violations ultimately found by the jury to be criminal, the San Bruno accident would never have occurred. Even the government in *BP Products*, considering the possibility of a fine based on losses, recognized that "showing the necessary causal link between the specific Clean Air Act violations charged and the explosion . . . would require methodically and carefully structured and highly technical proof." 610 F. Supp. 2d at 689 (alterations omitted). And beyond that difficult question of but-for causation lie hundreds of even more difficult questions of *proximate* causation. The government would need to prove, with respect to each of the pecuniary losses, that there was no intervening cause of injury in addition to the alleged cause of injury which, the indictment alleges, may have occurred as long as 54 years before the accident, when Segment 180 of Line 132 was installed. *See* SI ¶ 43. Just as a class action cannot be certified in a way that limits a defendant's ability to address individualized defenses, aggregate losses cannot be combined under the Alternative Fines Act in a way that limits PG&E's ability to address individualized causal questions. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2561 (2011). A trial in which these issues are fully and fairly explored would be complex, technical, and long.

For the government to prove the "pecuniary losses of each individual victim" of the San Bruno accident would require more than 500 different mini-trials. The government would have

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

10                DEF.'S MOT. TO DISMISS THE
ALTERNATIVE FINES ACT ALLEGATIONS
Case No. CR-14-00175-TEH

to prove individualized issues like lost earnings and home values and hospital bills, all the while distinguishing the non-pecuniary harms that those victims also suffered (and for which they have been compensated).  Even if the parties devoted just an hour to each victim's case (an optimistic estimate, given the individualized proximate cause issues discussed above) and spent eight uninterrupted hours a day on the task, the loss calculation alone would require sixty-two days of trial.  In reality, such a trial would not be unlike the San Bruno accident civil cases that were coordinated before The Honorable Steven L. Dylina in San Mateo Superior Court.  Judge Dylina estimated that a trial involving all the individual plaintiffs might take a year and "would be impossible for both the jury and for the Court to keep into context."  Valco Decl. Ex. 21.  To try to design a somewhat manageable trial, the judge ordered that initial trial would consist of representative bellwether cases in four categories based on the severity of the alleged harm.  *See* Valco Decl. Ex. 22.  Still, even that streamlined proceeding involved over 200 depositions and the exchange of millions of pages of discovery.  *See* Valco Decl. ¶ 24.  Collectively, the parties filed over 110 motions *in limine*.  *See* Valco Decl. ¶ 25.  And those were civil cases, governed by the civil preponderance of the evidence standard, in which liability was uncontested.  Here, the government would have to prove, under the much higher beyond-a-reasonable-doubt standard, complex causation issues as well as the amount of pecuniary harm.  In short, trying the issues on the Alternative Fines Act loss allegations would likely last even longer than the trial on the underlying criminal liability.

### C. The Superseding Indictment Does Not Charge a Lack of Undue Complication and Delay

The foregoing discussion has focused on the statutory question of whether the Alternative Fines Act allegations will unduly complicate the proceedings in this case.  In doing so, it has assumed that this statutory determination is for the Court to make—the approach taken in other recent Alternative Fines Act cases.  That assumption, however, is questionable.  Under the Supreme Court's recent decisions on criminal sentencing, any determination that is necessary to authorize additional maximum punishment is an element of the offense that must be charged in the indictment and resolved by the jury.  *See Apprendi*, 530 U.S. at 476; *Southern Union*, 132 S.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

DEF.'S MOT.  TO DISMISS THE
ALTERNATIVE FINES ACT ALLEGATIONS
Case No. CR-14-00175-TEH

Ct. at 2356 (stating that there is no "constitutionally significant difference between a fact that is an 'element' of the offense and one that is a 'sentencing factor'").  The undue complication determination required by the Alternative Fines Act clearly fits the bill:  the prosecution can only recover fines above the otherwise-applicable statutory maximum (*i.e.*, can only increase the statutory maximum) if it proves that its Alternative Fines Act allegations will not unduly complicate the case.   There is no such allegation in the superseding indictment.  *See* SI ¶ 76.  Under the Sixth Amendment, therefore, the failure to plead the no-undue-complication element of the Alternative Fines Act in the superseding indictment means that the Alternative Fines Act allegations cannot be presented to the jury and must be dismissed.  *See Apprendi*, 530 U.S. at 476.  And if the necessary allegations *were* in the indictment, the question of whether Alternative Fines Act proof would unduly complicate or extend the trial would have to be submitted to the jury—raising the absurd specter of a preliminary trial about the trial, before the trial can begin.

The Court can avoid these weighty constitutional questions by finding that, even assuming the undue complication question is one for the Court, the government has failed to show that proceeding on the Alternative Fines Act allegations would not unduly complicate the trial.  That is the argument the defendant has addressed above.  But if the Court somehow concluded that holding a mock regulatory ratemaking proceeding and hundreds of mini-trials on pecuniary damages would not unduly complicate this case, then it would need to reach the constitutional question and dismiss the Alternative Fines Act allegations in the indictment for failure to plead a necessary element.  Either way, the Alternative Fines Act allegations cannot proceed.

**D.     The Objectives of the Alternative Fines Act Have Already Been Met Here**

Finally, it bears mention that all of the purposes of the Alternative Fines Act have been satisfied here through other means.  As noted above, the Alternative Fines Act was enacted to allow the imposition of fines large enough to prevent convicted offenders from profiting from their crimes.  *See* H.R. Rep. No. 98-906 at 17.  Here, even if the government could somehow prove the knowing and willful violations of the Pipeline Safety Act, there would be no need to impose an alternative fine because PG&E has already paid out far more in state penalties and

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

DEF.'S MOT. TO DISMISS THE
ALTERNATIVE FINES ACT ALLEGATIONS
Case No. CR-14-00175-TEH

civil settlements than any profit it could possibly have derived from the charged conduct. PG&E took responsibility for compensating the victims of the San Bruno accident, and reached civil settlements amounting to more than $500 million.[4] PG&E also chose not to appeal the $1.6 billion penalty imposed on it by its regulator, the CPUC. At this point, not even the prosecution could seriously maintain that the defendant has made a profit through the charged conduct.

## IV. CONCLUSION

For the foregoing reasons, the defendant respectfully asks the Court to dismiss the Alternative Fines Act sentencing allegations from the superseding indictment.

Dated: September 7, 2015

Respectfully submitted,

By  /s/
Steven M. Bauer
Margaret A. Tough
Melissa Arbus Sherry
Christopher J. Carlberg
Jason C. Pang
LATHAM & WATKINS LLP

Kate Dyer
CLARENCE, DYER & COHEN LLP

*Attorneys for Defendant*
*Pacific Gas and Electric Company*

---

[4] *See* News Release, "PG&E Pays San Bruno Fine," dated August 13, 2015 *available at* http://www.pge.com/en/about/newsroom/newsdetails/index.page?title=20150813_pge_pays_san_bruno_fine.

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

DEF.'S MOT. TO DISMISS THE
ALTERNATIVE FINES ACT ALLEGATIONS
Case No. CR-14-00175-TEH