LATHAM & WATKINS LLP
  Steven M. Bauer (Bar No. 135067)
    steven.bauer@lw.com
  Margaret A. Tough (Bar No. 218056)
    margaret.tough@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California  94111-6538
Telephone:  +1.415.391.0600
Facsimile:  +1.415.395.8095

LATHAM & WATKINS LLP
  Melissa Arbus Sherry (*pro hac vice*)
    melissa.sherry@lw.com
555 11th Street, NW, Suite 1000
Washington, DC  20004-1304
Telephone:  +1.202.637.2200
Facsimile:  +1.202.637.2201

CLARENCE, DYER & COHEN LLP
  Kate Dyer (Bar No. 171891)
    kdyer@clarencedyer.com
899 Ellis Street
San Francisco, California  94109-7807
Telephone:  +1.415.749.1800
Facsimile:  +1.415.749.1694

Attorneys for Defendant
PACIFIC GAS AND ELECTRIC COMPANY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>        Defendant. | CASE NO. CR-14-00175-TEH<br><br>**DEFENDANT'S MOTION TO DISMISS FOR ERRONEOUS LEGAL INSTRUCTIONS TO THE GRAND JURY:  COUNTS 2-28 AND THE ALTERNATIVE FINES SENTENCING ALLEGATION**<br><br>**Judge:**   **Hon. Thelton Henderson**<br>**Date:**    **October 19, 2015**<br>**Time:**    **10:00 A.M.**<br>**Place:**   **Courtroom 2, 17th Floor** |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEF.'S MOT. TO DISMISS FOR ERRONEOUS
LEGAL INSTRUCTIONS
Case No. CR-14-00175-TEH

1

## NOTICE OF MOTION AND MOTION

2          PLEASE TAKE NOTICE that on October 19, 2015, at 10:00 a.m., Defendant Pacific Gas

3 and Electric Company ("PG&E") will and hereby does move this Court for an order dismissing

4 Counts 2-28 and the Alternative Fines Act sentencing allegations because the government gave

5 seriously erroneous legal instructions to the grand jury on the elements of those charges.  The

6 Motion will be based on this Notice of Motion and Motion, the accompanying Memorandum of

7 Points and Authorities, the Declaration of Nicole C. Valco, the files and records of this case, and

8 such other argument and evidence as the Court may consider.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEF.'S MOT. TO DISMISS FOR ERRONEOUS
LEGAL INSTRUCTIONS
Case No. CR-14-00175-TEH

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................. 2

       A.     How We Got Here .................................................................................. 2

       B.     What We Have Learned Since the Court Ordered the Government
              to Disclose Limited Grand Jury Materials ............................................. 4

III.   DISCUSSION .................................................................................................... 5

       A.     Governing Legal Principles ................................................................... 5

       B.     Seriously Misleading Legal Instructions Require That Counts 2-28
              Be Dismissed ........................................................................................ 7

              1.     A "Collective Knowledge" Theory Cannot Be Used to
                     Prove Specific Intent ................................................................. 8

              2.     The Collective Knowledge Instruction Was Prejudicial and
                     Counts 2-28 Should Be Dismissed ........................................... 11

       C.     Seriously Misleading Legal Instruction Requires That the
              Alternative Fines Sentencing Allegation Be Dismissed ...................... 12

              1.     The Alternative Fines Act Legal Instruction Was Seriously
                     Misleading ............................................................................... 12

              2.     The Alternative Fines Act Legal Instruction Was
                     Prejudicial ............................................................................... 13

              3.     The Court Should Dismiss the Sentencing Allegations .......... 14

IV.    CONCLUSION ................................................................................................ 15

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

DEF.'S MOT. TO DISMISS FOR ERRONEOUS
LEGAL INSTRUCTIONS
Case No. CR-14-00175-TEH

# TABLE OF AUTHORITIES

Page(s)

**CASES**

Alleyne v. United States,
    133 S. Ct. 2151 (2013)................................................................................................ 15

Apprendi v. New Jersey,
    530 U.S. 466 (2000)............................................................................................... 14, 15

Bank of Nova Scotia v. United States,
    487 U.S. 250 (1988)............................................................................................. 5, 6, 12

Berger v. United States,
    295 U.S. 78 (1935)...................................................................................................... 14

Bryan v. United States,
    524 U.S. 184 (1998)...................................................................................................... 7

First Equity Corp. v. Standard & Poor's Corp.,
    690 F. Supp. 256 (S.D.N.Y. 1988) ............................................................................... 9

Ginena v. Ala. Airlines, Inc.,
    No. 04-CV-01304, 2013 U.S. Dist. LEXIS 86162 (D. Nev. June 19, 2013)............... 7, 8, 10

Glazer Cap. Mgmt., LP v. Magistri,
    549 F.3d 736 (9th Cir. 2008) ...................................................................................... 10

Gutter v. E.I. DuPont de Nemours,
    124 F. Supp. 2d 1291 (S.D. Fla. 2000) ........................................................................ 9

Hughey v. United States,
    496 U.S. 411 (1990)..................................................................................................... 12

Kern Oil & Refining Co. v. Teneco Oil Co.,
    792 F.2d 1380 (9th Cir. 1986) .................................................................................... 10

Nordstrom, Inc. v. Chubb & Son, Inc.,
    54 F.3d 1424 (9th Cir. 1995) ...................................................................................... 10

Saba v. Compagnie Nationale Air Fr.,
    78 F.3d 664 (D.C. Cir. 1996)................................................................................... 8, 10

Southern Union v. United States,
    132 S. Ct. 2344 (2012)................................................................................................ 14

Steere Tank Lines, Inc. v. United States,
    330 F.2d 719 (5th Cir. 1963) ....................................................................................... 8

United States v. Bank of New England,
    821 F.2d 844 (1st Cir. 1987).................................................................................. 7, 8, 9

United States v. BP Products N. Am.,
    610 F. Supp. 2d 655 (S.D. Tex. 2009) ................................................................... 12, 13

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii                    DEF.'S MOT. TO DISMISS FOR ERRONEOUS
                     LEGAL INSTRUCTIONS
                     Case No. CR-14-00175-TEH

*United States v. Breslin*,
   916 F. Supp. 438 (E.D. Pa. 1996) ................................................................... 13

*United States v. Larrazolo*,
   869 F.2d 1354 (9th Cir. 1989) ........................................................................ 5

*United States v. LBS Bank-New York, Inc.*,
   757 F. Supp. 496 (E.D. Pa. 1990) ................................................................... 9

*United States v. Liu*,
   731 F.3d 982 (9th Cir. 2013) .......................................................................... 7

*United States v. Navarro*,
   608 F.3d 529 (9th Cir. 2010) .......................................................................... 6

*United States v. Peralta*,
   763 F. Supp. 14 (S.D.N.Y. 1991) ................................................................... 11

*United States v. Philip Morris USA, Inc.*,
   566 F.3d 1095 (D.C. Cir. 2009) ................................................................. 7, 9

*United States v. Samango*,
   607 F.2d 877 (9th Cir. 1979) .......................................................................... 5

*United States v. Shortt Accountancy Corp.*,
   785 F.2d 1448 (9th Cir. 1986) ............................................................. 8, 9, 10

*United States v. Stevens*,
   771 F. Supp. 2d 556 (D. Md. 2011) ................................................. 6, 11, 13, 15

*United States v. Weatherspoon*,
   410 F.3d 1142 (9th Cir. 2005) ...................................................................... 14

## STATUTES

18 U.S.C. § 1512(b)(2) .................................................................................... 9

18 U.S.C. § 3571(c) ........................................................................................ 3

18 U.S.C. § 3571(d) ...................................................................................... 13

26 U.S.C. § 7206(1) ........................................................................................ 9

49 U.S.C. § 60123(a) ...................................................................................... 4

## OTHER AUTHORITIES

Thomas A. Hagemann & Joseph Grinstein, *The Mythology of Aggregate
   Corporate Knowledge: A Deconstruction*, 65 Geo. Wash. L. Rev. 210 (1997) ................... 8

LATHAM&WATKINS<small>LLP</small>
ATTORNEYS AT LAW
SAN FRANCISCO

iii

DEF.'S MOT. TO DISMISS FOR ERRONEOUS
LEGAL INSTRUCTIONS
Case No. CR-14-00175-TEH

1    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **I.    INTRODUCTION**

3         This motion is based on information about the government's conduct before the grand

4    jury that has gradually come to light, albeit over strenuous resistance from the prosecution.

5    While the picture is far from complete, materials the government was recently ordered to

6    produce suggest that the government misled the grand jury on two critical elements of this

7    case—the "knowing and willful" *mens rea* for the twenty-seven Pipeline Safety Act charges

8    (Counts 2 through 28) and the increased sentencing allegation under the Alternative Fines Act.

9         On the first, the government repeatedly told the grand jury that it could charge the

10   defendant based on a "collective knowledge" theory of intent.  In the words of the prosecutor the

11   day the grand jury returned the original indictment, "[t]he company, *not any individual*, but the

12   company through the actions of all of its employees, that that – that liability imputes to the

13   company."  This theory of criminal liability has never been applied in the Ninth Circuit, or

14   indeed, the nation, to prove a specific intent crime.  The law is clear that at least one human

15   being must intend to break the law in order to bind a company.  The government cannot instruct

16   the grand jury that it may aggregate the innocent conduct of (unnamed) employees to

17   manufacture a corporate criminal.

18        On the Alternative Fines Act, in the final hours before its extended term was to expire,

19   the lead prosecutor told the grand jury:  "And then finally, the Alternative Fines Act.  This just

20   required us to specifically allege the amount of gain or loss *that we think is appropriate*."  Based

21   on information the defendant received, it appears this was the only legal instruction the

22   prosecution provided on the Alternative Fines Act.  With one throw-away line, the government

23   urged the grand jury to increase the defendant's exposure by more than eighty times, based on

24   the government's say-so.  And it did.

25        Both the intent requirement and the Alternative Fines Act enhancements are facts that the

26   Supreme Court has held must be included in an indictment and, thus, must be determined by a

27   grand jury based on probable cause.  For it to serve its Constitutional purpose, the grand jury acts

28   as a buffer between the government and the accused.  When the voice of the government

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

1    DEF.'S MOT. TO DISMISS FOR ERRONEOUS
LEGAL INSTRUCTIONS
Case No. CR-14-00175-TEH

1   misleads citizens sitting on a grand jury about the law so gravely, and with such consequence, it

2   does an injustice.  One cannot conclude that the grand jury actually found probable cause the

3   defendant committed a crime under the laws of the United States; to the contrary, by instructing

4   the grand jury to focus on a theory of liability that clearly is not the law, the prosecution ensured

5   that the grand jury could not find probable cause that a crime was committed.  We submit that

6   this is a clear violation of the Grand Jury Clause.  The Court should dismiss Counts 2 through 28,

7   as well as the enhanced Alternative Fines Act sentencing allegations.

## II.    BACKGROUND

### A.   How We Got Here

10      As we have previously noted, the indictment is quite unusual in that it alleges in very

11   general terms decades of corporate laxity without ever identifying a person who purposefully did

12   something wrong.  This raised questions about how the government instructed the grand jury on

13   the key intent element for indicting a company on esoteric pipeline regulations:  that a specific

14   person acted willfully, by intentionally violating a clear legal duty.

15      We asked, and the government refused to tell us.  *See* Def.'s Mot. #2:  To Obtain Certain

16   Grand Jury Transcripts (Dkt. 69) at 5.  So, several months ago, we brought a motion seeking

17   selected grand jury transcripts.  *Id*.  On June 29, the Court granted the motion in part, and

18   ordered production of "all records of legal instructions [the government] gave to the grand jury"

19   so the Court could review them *in camera*.  Order Granting in Part and Denying in Part Def.'s

20   Discovery Mots. (Dkt. 103) at 23.  After that review, the Court ordered that the instructions be

21   disclosed to the defendant, as redacted by the Court.  Order Re: Disclosure of Legal Instructions

22   in Grand Jury Documents (Dkt. 110).  It also ordered the disclosure of certain grand jury

23   materials, including "ministerial records" concerning the dates of service of the relevant grand

24   juries.

25      These materials revealed that the grand jury that returned both the original and the

26   superseding indictments was empaneled on September 18, 2012, and was set to expire March 18,

27   2014.  Its term was extended twice at the behest of the government:  first to April 1, 2014, the

28   day the grand jury returned the original indictment.  That same day, the government sought and

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEF.'S MOT. TO DISMISS FOR ERRONEOUS
LEGAL INSTRUCTIONS
Case No. CR-14-00175-TEH

1    obtained a further extension, which the court limited to one session.  Declaration of Nicole

2    C. Valco in Support of Defendant's Pretrial Motions ("Valco Decl.") Ex. 1 (granting the

3    government's request, the magistrate judge handwrote:  "Date will not be extended further

4    without request from Grand Jury and showing that extension is in the public interest").

5           Thus, that second extension gave the grand jury only one working day, with no

6    intervening proceedings during the months between April 1 and July 29, to investigate and to

7    return a new indictment.  The government's hurried presentation was successful.  On July 29, the

8    grand jury returned a superseding indictment that added an obstruction charge as Count One,

9    fifteen additional counts of violations of the Pipeline Safety Act, and a sentencing enhancement

10   under the Alternative Fines Act which increased the potential fine to over $1.13 billion, an 80-

11   fold increase above the statutory maximum.[1]

12          It appears that July 29 was a busy day.  On the new obstruction charge, we know from

13   discovery that the grand jury heard from a single PG&E witness that morning, who testified

14   about the allegedly obstructive letter.  He explained that he "did not prepare the letter" and that

15   he just "sent the letter to the NTSB."  Valco Decl. Ex. 2 at USA-109778.  Presumably, agents

16   testified about the interviews the government had conducted of NTSB personnel in Washington,

17   D.C. in a single day earlier that month.  *See* Valco Decl. Ex. 3 at USA_INT-00741 ("The NTSB

18   did not pursue whether PG&E was actually using the 10% policy."); Ex. 4 at USA-

19   AGENTNOTES-00114 (agent's notes of the interview—recently produced to the defense

20   pursuant to this Court's order—further reveal that the "10% policy . . . was something that was

21   for the regulators to pursue," and not the NTSB); Ex. 5 at USA_INT-00733 ("He didn't

22   remember ever discussing the policy with anyone from PG&E. . . .  He explained he would not

23   have focused on the 10% issue because he was heavily involved in other areas of the

24

25

---

26   [1]    The original indictment charged twelve counts, each with a $500,000 maximum fine pursuant
     to 18 U.S.C § 3571(c), for a combined potential fine of $6 million.  The superseding indictment
27   increased the counts to 28, which would increase that statutory maximum to $14 million.  With
     the addition of the Alternative Fines Act, however, the potential fine was increased from $14
28   million to $1.13 billion.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3          DEF.'S MOT. TO DISMISS FOR ERRONEOUS
                      LEGAL INSTRUCTIONS
                    Case No. CR-14-00175-TEH

investigation."); Ex. 6 at USA_INT-00736 ("During the course of the NTSB's investigation, their focus was not on whether PG&E was increasing the pressure of their lines over 10%.").

On the Alternative Fines Act allegation that was added that day, the government may have provided additional testimony about those allegations, but has refused to disclose this to the defense. Valco Decl. Exs. 7, 8. What we do now know is that starting shortly before 3:00 in the afternoon, the government began instructing the grand jury on the law it was to apply in deciding whether to indict.

## B.   What We Have Learned Since the Court Ordered the Government to Disclose Limited Grand Jury Materials

The Pipeline Safety Act counts (Counts 2-28) require the government to prove that the defendant violated each charged pipeline regulation knowingly and willfully. 49 U.S.C. § 60123(a). Throughout the grand jury's term, however, the prosecution consistently instructed that this element could be met through a theory of "collective knowledge":

- On March 19, 2013, the prosecutor instructed the grand jury that: "[I]t's a rather easy standard to meet in terms of how the acts of the employees can be imputed collectively to the corporation to hold that corporation criminally liable." Valco Decl. Ex. 10 at 15.

- On November 5, 2013, the prosecutor instructed the grand jury that: "Another theory of liability is what they call the 'collective corporate knowledge doctrine' where you take the collective . . . the idea is the collective actions of employees are imputed to the corporation." Valco Decl. Ex. 11 at 7-8.

- On February 4, 2014, the prosecutor instructed the grand jury that: "And did they have that intent, whether it was collectively through the individuals or even just one individual making decisions about what to do . . . do you see in the end that this – they're willful violations by the company through the actions of its employees." Valco Decl. Ex. 12 at 6-7.

- On April 1, 2014, the day the grand jury returned the original indictment, the lead prosecutor instructed the grand jury that it did not even need to find that a single

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEF.'S MOT. TO DISMISS FOR ERRONEOUS
LEGAL INSTRUCTIONS
Case No. CR-14-00175-TEH

1  PG&E employee had to have the requisite intent:  "It's the idea that you are imputing

2  to a company the actions of all of its employees to get to the state of showing the

3  company willfully violated the law. . . .  The idea being that the company, *not any*

4  *individual*, but the company through the actions of all of its employees, that that –

5  that liability imputes to the company."  Valco Decl. Ex. 13 at 11 (emphasis added).

6  The prosecutor presented that the government's "theory of liability is for a – a good

7  part of the charges is the idea of what we call collective corporate – collective

8  corporate knowledge."  *Id.*[2]

9  Then, on July 29, 2014, the lone day the government had to persuade the grand jury to

10  accede to an increased fine, the lead prosecutor instructed the grand jury in one sentence

11  regarding the alternative fines sentencing allegation:

12  • "And then finally, the Alternative Fines Act.  This just required us to specifically

13  allege the amount of gain or loss that *we think is appropriate*."  Valco Decl. Ex. 14

14  at 14 (emphasis added).

15  **III.    DISCUSSION**

16  **A.    Governing Legal Principles**

17  The Fifth Amendment's Grand Jury Clause establishes two essential functions of a grand

18  jury:  first, to find probable cause that a defendant committed a crime, and second, to serve as a

19  buffer between the prosecution and the accused.  *United States v. Samango*, 607 F.2d 877, 882

20  (9th Cir. 1979).  In keeping with these Constitutional protections, an indictment should be

21  dismissed "upon a showing of 'flagrant error' that significantly infringes on the ability of the

22  grand jury to exercise independent judgment and actually prejudices the defendant."  *United*

23  *States v. Larrazolo,* 869 F.2d 1354, 1357 (9th Cir. 1989).  When government error "substantially

24  influenced the grand jury's decision to indict, or if there is 'grave doubt' that the decision to

25  indict was free from substantial influence of such violations," that is prejudice.  *Bank of Nova*

26  *Scotia v. United States*, 487 U.S. 250, 255-56 (1988).  A defendant is not required to show

---

27  [2]    Based on the redacted transcripts disclosed to the defense, it appears that the grand jury

28  received no further instruction about the intent element on July 29, the day it superseded.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEF.'S MOT. TO DISMISS FOR ERRONEOUS
LEGAL INSTRUCTIONS
Case No. CR-14-00175-TEH

1   willful misconduct by the government.  *See United States v. Stevens*, 771 F. Supp. 2d 556, 568

2   (D. Md. 2011) ("This is not a case in which the Government attempted to affirmatively mislead

3   the grand jury to obtain an indictment—rather it is a case in which prosecutors simply

4   misinstructed the grand jury on the law.  However, even in the absence of willful prosecutorial

5   misconduct, 'a defendant is entitled to dismissal of an indictment.'").

6          Where, as here, the improper grand jury proceedings are "brought to the attention of the

7   trial court before the commencement of the trial," the Supreme Court has held that "dismissal of

8   the indictment is appropriate 'if it is established that the violation substantially influenced the

9   grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free

10  from the substantial influence of such violations."  *Bank of Nova Scotia*, 487 U.S. at 256.[3]

11         It is with good reason that dismissal is the remedy to cure a grave infirmity before trial.

12  The grand jury's function to serve as a buffer between the accuser and the accused would be

13  essentially worthless if a conviction could absolve serious error in the grand jury process,

14  necessarily requiring a defendant to endure a trial, conviction and appeal.  Focusing only "on the

15  effect of the verdict" would "give[] judges and prosecutors a powerful incentive to delay

16  consideration of motions to dismiss" and "undermine[] adherence to the very measures that this

17  Court proposed and Congress implemented to guarantee that the grand jury is able to perform

18  properly its screening function."  *See Mechanik*, 475 U.S. at 77 (O'Connor, J., concurring)

19  (advocating for standard ultimately adopted by the Court); *see Bank of Nova Scotia*, 487 U.S. at

20  256 (adopting Justice O'Connor's proposed standard).

21

22

23  _____

24  [3]    This Court has recognized that conduct before the grand jury may warrant dismissal, but
    noted that "such cases continue to be rare, in large part because almost any prejudice a defendant
    suffers from an improper grand jury proceeding is rendered harmless by a conviction or acquittal
25  at trial."  Order on Discovery Motions (Dkt. 103) at 17 (citing *United States v. Mechanik*, 475
    U.S. 66, 71-72 (1986)).  But *Mechanik* found improper grand jury proceedings harmless when
26  they were discovered *after* a verdict had already been rendered.  *Id.* at 72-73.  The Supreme
    Court decided *Bank of Nova Scotia* two years later.  Whatever application the *Mechanik* standard
27  retains for grand jury abuse discovered post-verdict, in the Ninth Circuit it is clear:  "[I]f a
    motion to dismiss is made before the verdict, the district judge should apply the *Bank of Nova
28  Scotia* standard."  *United States v. Navarro*, 608 F.3d 529, 539 (9th Cir. 2010).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6                      DEF.'S MOT. TO DISMISS FOR ERRONEOUS
                                  LEGAL INSTRUCTIONS
                                  Case No. CR-14-00175-TEH

**B.**     **Seriously Misleading Legal Instructions Require That Counts 2-28 Be Dismissed**

The twenty-seven PSA counts require the government to prove that the defendant "knowingly and willfully" violated the charged regulations.  This means the government must prove beyond a reasonable doubt that the defendant's engineers knew the "facts that constitute[d] the offense," *Bryan v. United States*, 524 U.S. 184, 193 (1998), and that they acted with the "specific intent to violate" a "known legal duty."  *United States v. Liu*, 731 F.3d 982, 989-90 (9th Cir. 2013).  As a matter of law, when the defendant is an organization, any specific intent element must exist in the mind of at least one human person, for whom the organization is vicariously liable.  *See Ginena v. Ala. Airlines, Inc.*, No. 04-CV-01304, 2013 U.S. Dist. LEXIS 86162, at *21-26 (D. Nev. June 19, 2013); *see also United States v. Philip Morris USA, Inc.*, 566 F.3d 1095, 1122 (D.C. Cir. 2009) ("Like Defendants and other courts, we are dubious of the legal soundness of the 'collective intent' theory.") (citations omitted).  The government cannot aggregate different bits of knowledge held by distinct individuals and argue that the organization as a whole acted with specific intent.

The government here, however, instructed the grand jurors—several times—the opposite: that they could find that the defendant acted knowingly and willfully by considering the aggregate of its employees' actions.[4]  Inexplicably, the prosecutors told the grand jury that willfulness (one of the highest mental intent standards in the law) was "a rather easy standard to meet" through "collective corporate knowledge."  Valco Decl. Ex. 10 at 15.  This is a serious misstatement of the law.

---

[4]     In fact, the government instructed the grand jury that a defendant could be found to have acted knowingly and willfully by considering its employees' "actions."  Because the government should not have been instructing on "collective knowledge" at all, it is not necessary to address in depth how the government's collective knowledge instruction did not even correctly state the theory as it has ever been accepted.  Collective knowledge is supposedly about aggregating pieces of knowledge from several employees, not their individual actions.  *Compare United States v. Bank of New England*, 821 F.2d 844, 855 (1st Cir. 1987) (describing collective knowledge, "the bank's knowledge is the totality of what all of the employees *know* within the scope of their employment") (emphasis added), *with* Valco Dec. Ex. 11 at 7-8 (describing the same, the government instructed, "the idea is the collective *actions* of employees are imputed to the corporation") (emphasis added).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEF.'S MOT. TO DISMISS FOR ERRONEOUS
LEGAL INSTRUCTIONS
Case No. CR-14-00175-TEH

1.     <u>A "Collective Knowledge" Theory Cannot Be Used to Prove Specific Intent</u>

In defending its collective knowledge instruction, the government will likely resort to *United States v. Bank of New England*, 821 F.2d 844, 855 (1st Cir. 1987).  There, the First Circuit approved of a district court's "collective knowledge" jury instruction:

> [T]he bank's knowledge is the totality of what all of the employees know within the scope of their employment.  So, if Employee A knows one facet of the currency reporting requirement, B knows another facet of it, and C a third facet of it, the bank knows them all.  So if you find that an employee within the scope of his employment knew that CTRs had to be filed, even if multiple checks are used, the bank is deemed to know it.  The bank is also deemed to know it if each of several employees knew a part of that requirement and the sum of what the separate employees knew amounted to knowledge that such a requirement existed.

*Id*.  This is not the law in the Ninth Circuit, or indeed, anywhere in the country, to prove willfulness.  As a district court recently explained, "commentators and later decisions have undermined the force of *Bank of New England*'s collective knowledge doctrine" by showing that it is only applicable in certain specific factual situations.  *Ginena*, 2013 U.S. Dist. LEXIS 86162, at *21-26, citing Thomas A. Hagemann & Joseph Grinstein, *The Mythology of Aggregate Corporate Knowledge: A Deconstruction*, 65 GEO. WASH. L. REV. 210, 227 (1997) (finding "no federal court has ever employed *Bank of New England's* collective knowledge rule to uphold a conviction in a criminal case").  For instance, some cases discuss collective knowledge, but ultimately rely on the fact that at least one employee had the requisite knowledge to form the guilty intent to hold the corporation liable through traditional vicarious liability.  *See, e.g.*, *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1454 (9th Cir. 1986); *Steere Tank Lines, Inc. v. United States*, 330 F.2d 719, 721-22 (5th Cir. 1963); *see also Saba v. Compagnie Nationale Air Fr.*, 78 F.3d 664, 670 n.6 (D.C. Cir. 1996) (describing *Bank of New England* and stating that although the appellate court discussed collective knowledge, "the proscribed intent (willfulness) depended on the wrongful intent of specific employees").

"Collective knowledge," at most, could be used to prove what its name implies—knowledge.  It cannot be used to prove a corporation's specific intent, *i.e.*, the "willful" prong.  A

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEF.'S MOT. TO DISMISS FOR ERRONEOUS
LEGAL INSTRUCTIONS
Case No. CR-14-00175-TEH

1   long line of courts since *Bank of New England* has found exactly that, and no court has held to

2   the contrary. *See, e.g.*, *Philip Morris USA Inc.*, 566 F.3d at 1122 (describing as "dubious" the

3   "collective intent" doctrine in a civil RICO action seeking to establish that the defendants

4   possessed the specific intent to defraud consumers); *Gutter v. E.I. DuPont de Nemours*, 124 F.

5   Supp. 2d 1291, 1311 (S.D. Fla. 2000) ("The knowledge necessary to form the requisite

6   fraudulent intent must be possessed by at least one agent and cannot be inferred and imputed to a

7   corporation based on disconnected facts known by different agents."); *United States v. LBS*

8   *Bank-New York, Inc.*, 757 F. Supp. 496, 501 n.7 (E.D. Pa. 1990) (stating that "specific intent

9   cannot be aggregated"); *First Equity Corp. v. Standard & Poor's Corp.*, 690 F. Supp. 256, 260

10  (S.D.N.Y. 1988) ("A corporation can be held to have a particular state of mind only when that

11  state of mind is possessed by a single individual.").

12          In the prosecution of the accounting firm Arthur Andersen in the wake of the Enron

13  scandal, the parties debated the propriety of applying a "collective intent" theory to prove that

14  the firm obstructed justice by destroying documents. There, the government conceded that it had

15  to prove that the firm could only act through at least one individual employee who "corruptly

16  persuaded" another to withhold or destroy materials with intent to obstruct an official proceeding

17  in violation of 18 U.S.C. § 1512(b)(2). The government acknowledged that it could not rely on a

18  "collective intent" theory. *See* Valco Decl. Ex. 15 at 4326 ("We don't dispute the – no such

19  thing as collective intent point. We conceded that.").

20          There is no Ninth Circuit criminal case that has endorsed the idea that "collective

21  knowledge" can be used to prove willful intent. The government may attempt to rely on *Shortt*

22  *Accountancy*. That reliance would be misplaced. In *Shortt Accountancy*, which is controlling

23  law in this Circuit and decided before *Bank of New England,* the defendant corporation was

24  convicted of violating 26 U.S.C. § 7206(1), which proscribes making and submitting a false

25  income tax return. *See Shortt Accountancy*, 785 F.2d at 1451-52. On appeal, the corporation

26  argued that it could not be found guilty because the employee who actually submitted the false

27  return did not know that the return was false. The corporation's chief operating officer had

28  provided the employee with the information which the COO knew to be false. *See id.* at 1454.

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9                    DEF.'S MOT. TO DISMISS FOR ERRONEOUS
                     LEGAL INSTRUCTIONS
                     Case No. CR-14-00175-TEH

1   The Ninth Circuit rejected the corporation's argument because the COO individually "did have

2   the requisite intent." *Id.*  Although the court discussed this issue under a heading titled

3   "Collective Intent," it based its decision on the guilty *mens rea* of the COO alone.  The Ninth

4   Circuit's holding rested on the complete *mens rea* of an individual employee, and any nod to

5   collective intent was unnecessary.[5]

6          Sound logic explains why courts have uniformly rejected a "collective intent" theory in

7   criminal law.  Collective knowledge theories violate due process because they permit a

8   corporation to be imputed with a culpable *mens rea* through the aggregation of innocent

9   knowledge.  It could be argued that a corporation is negligent in not having systems in place so

10  that employees would come together and comprehend the full import of what they together

11  know, but it is not willful, morally blameworthy, or criminal unless at least one employee knew

12  what the law required and intentionally failed to follow it.  "Individual acts of negligence on the

13  part of employees—without more—cannot, . . . be combined to create a wrongful corporate

14  intent."  *Saba*, 78 F.3d at 670 n.6.  Collective knowledge cannot be used to "conflate[] 'knowing'

15  culpability with 'negligent' culpability."  *Ginena*, 2013 U.S. Dist. LEXIS 86162, at *24.  Using

16  collective knowledge to aggregate innocent pieces of information would be wrong because "then

17  liability is premised on negligence, not on the 'intentional' conduct that is at the heart of the

18  higher levels of mens rea, knowing and willful conduct."  *Id.*

19         Simply put, the required "knowing and willful" standard is not at all "a rather easy

20  standard to meet," as the government instructed, and the grand jury could not aggregate "the

21  collective actions of employees [that] are imputed to the corporation" to manufacture willful

22  intent.  The government's instruction was wholly at odds with courts' findings throughout the

23

24  [5]    Notably, the Ninth Circuit has refused to allow the collective knowledge theory to prove a
       corporation's mental intent in a civil context, applying Texas law.  *See Kern Oil & Refining Co.*
25  *v. Tenneco Oil Co.*, 792 F.2d 1380, 1386-87 (9th Cir. 1986) (ruling that a corporation could not
       be shown to have acted "intentionally or purposely" through proof that the "employees
26  collectively knew all of the relevant facts").  Further, though the Ninth Circuit has not directly
       addressed the question of collective scienter in the securities fraud context, *see Glazer Cap.*
27  *Mgmt., LP v. Magistri*, 549 F.3d 736, 743-45 (9th Cir. 2008), it rejected a similar argument in
       *Nordstrom, Inc. v. Chubb & Son, Inc.*, 54 F.3d 1424, 1435-36 (9th Cir. 1995), opining that "there
28  is no case law supporting an independent 'collective scienter' theory."

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10          DEF.'S MOT. TO DISMISS FOR ERRONEOUS
            LEGAL INSTRUCTIONS
            Case No. CR-14-00175-TEH

1    country that "collective knowledge" cannot be used to prove culpable intent.  The instruction had

2    no basis in the law and seriously misled the grand jury on the critical intent element.

3                    2.      The Collective Knowledge Instruction Was Prejudicial and Counts 2-28
                             Should Be Dismissed

4

5           With very little support for a collective knowledge theory to prove "knowing," and

6    absolutely no support to use it to find "willful" intent, the prosecution's instructions to the grand

7    jury were inappropriate and prejudicial.

8           Courts have emphasized that the prejudicial nature of misleading grand jury instructions

9    on intent should result in dismissal of charges.  In *Stevens*, the prosecution told the grand jury

10   that advice of counsel was something that could be raised as a defense once the crime was

11   charged, and not something for the grand jury to take into account at time of indictment.  771 F.

12   Supp. 2d at 564-67.  The trial court disagreed, and dismissed the indictment.  It held that the

13   erroneous advice of counsel instruction "negate[d] a defendant's wrongful intent, and [was]

14   therefore highly relevant to the decision to indict."  *Id.* at 567.  Had the grand jury been properly

15   instructed and found the defendant could have relied in good faith on advice of counsel, he

16   would lack wrongful intent.  *Id.*  The court's dismissal centered on the fact that the intent

17   instruction "went to the heart of the *intent required to indict* . . . .  [It] substantially influenced

18   the decision to indict or, at the very least, create[d] grave doubt as to that decision."  *Id.* at 568

19   (emphasis added).

20          Similarly, in *United States v. Peralta*, the prosecutor erroneously instructed on

21   constructive possession with "no mention whatsoever of the elements of knowledge and intent."

22   763 F. Supp. 14, 19 (S.D.N.Y. 1991).  The court found the government did not "merely fail to

23   instruct the grand jury on a question of applicable law," but rather, "relied on . . . misleading

24   statements on the meaning of constructive possession," which among other things, left "grave

25   doubt that the decision to indict was free from the substantial influence" of the prosecutorial

26   errors.  *Id.* at 20-21.

27          Here, as in *Stevens* and *Peralta*, the prosecution misinstructed on the critical element of

28   specific intent.  The government repeatedly advanced an unlawful theory of collective

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11                              DEF.'S MOT. TO DISMISS FOR ERRONEOUS
                                LEGAL INSTRUCTIONS
                                Case No. CR-14-00175-TEH

1   knowledge to satisfy the "knowing and willful" element.  By instructing the grand jurors that it is

2   the law that "collective corporate knowledge . . . the idea that you are imputing to a company

3   that actions of all of its employees to get to that state of showing that the company willfully

4   violated the law," the prosecutors led the grand jurors to believe that the elements of knowing

5   and willful could be met by aggregating knowledge across the corporation.  This is not just

6   misleading—it goes to the "heart of the intent required to indict."  The grand jurors' decision to

7   indict was surely affected by these flagrantly incorrect instructions.  The fact that no single

8   person or act is identified in the indictment is strong proof of that.  At a minimum, there is

9   "grave doubt."  *Bank of Nova Scotia*, 487 U.S. at 255-56.  Counts 2-28 should be dismissed.

10   **C.**    **Seriously Misleading Legal Instruction Requires That the Alternative Fines**

11          **Sentencing Allegation Be Dismissed**

12       The prosecutor's instructions to the grand jury on the alternative fines enhancement were

13   similarly misleading, substantially influenced the grand jury's decision to bring the

14   enhancement, and must be dismissed.

15        1.     The Alternative Fines Act Legal Instruction Was Seriously Misleading

16       The government's legal instruction on the day of the superseding indictment about the

17   Alternative Fines Act was seriously incorrect in at least four ways.

18       *First*, the government apparently did not give any causation instruction—that the gains or

19   losses it was asking the grand jury to charge must have been caused by the alleged conduct.  *See*

20   *United States v. BP Products N. Am.*, 610 F. Supp. 2d 655, 687-88 (S.D. Tex. 2009).  The

21   government's instruction told the grand jury to agree to the prosecutor's number, without tying it

22   to the defendant's alleged actions.

23       *Second*, the instruction did not explain that that the gain or loss figures the grand jury

24   could allege must be limited to the charged counts "to the exclusion of other [gains or] 'losses

25   stemming from all conduct attributable to the defendant, including conduct unrelated to the

26   [potential] offenses of conviction.'"  *Id.* (quoting *Hughey v. United States*, 496 U.S. 411, 418

27   (1990)).  Based on the information available to us, it appears that the government never

28   instructed the grand jurors that the gain and loss amounts must be limited by the defendant's

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12      DEF.'S MOT. TO DISMISS FOR ERRONEOUS
LEGAL INSTRUCTIONS
Case No. CR-14-00175-TEH

1   conduct specific to those covered segments—to the exclusion of any other aspect of the

2   defendant's conduct.

3       *Third*, the short text of 18 U.S.C. § 3571(d) uses the word "pecuniary" twice, but the

4   government's instruction does not once instruct on that limitation.  Nor does the instruction

5   explain that the Alternative Fines Act's limitation to "pecuniary" gains and losses means that the

6   amounts cannot include non-pecuniary damages, like pain and suffering or punitive damages.

7   *See BP Products*, 610 F. Supp. 2d at 701-03.

8       *Fourth*, and perhaps most flagrantly misleading, the prosecutor inserted personal opinion

9   into the legal instruction by stating that the amount of gain or loss the grand jury should allege

10  was based on what "we" (meaning either the government prosecutors or them together with the

11  grand jurors) "think is appropriate."  This is not a legal test.  It is essentially an assurance that the

12  grand jury should trust the prosecutor's opinion.  Nothing in the Alternative Fines Act makes the

13  prosecutor's opinion relevant.  If that was the case, the prosecutors would be testifying as to what

14  they thought the gains and losses should be.  It is separately grounds for dismissal for a

15  prosecutor to assert his or her own opinion to the grand jury.  *See United States v. Breslin*, 916 F.

16  Supp. 438, 443-47 (E.D. Pa. 1996) (dismissing an indictment because of the prosecutor's

17  insertion of personal opinion before the grand jury among other reasons).

18                  2.      The Alternative Fines Act Legal Instruction Was Prejudicial

19      The government's eleventh hour and seriously misleading legal instruction on the

20  Alternative Fines Act (increasing the defendant's exposure by 80 times over what Congress

21  contemplated for these alleged crimes) raises "grave doubt" over whether the grand jury's

22  decision was free from the substantial influence of that error.  *See Stevens*, 771 F. Supp. 2d at

23  567.  The prosecutor's insertion of personal opinion as to what gain and loss amounts the grand

24  jury should allege is patently unacceptable, and surely influenced the grand jury.  *See Breslin*,

25  916 F. Supp. at 443-44.  It is well accepted that prosecutors must not insert their personal opinion

26  before the petit jury because "the prosecutor's opinion carries with it the imprimatur of the

27  Government and may induce the jury to trust the Government's judgment rather than its own

28  view of the evidence."  *United States v. Weatherspoon*, 410 F.3d 1142, 1148 (9th Cir. 2005)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13                      DEF.'S MOT. TO DISMISS FOR ERRONEOUS
                                LEGAL INSTRUCTIONS
                              Case No. CR-14-00175-TEH

1   (quoting *Berger v. United States*, 295 U.S. 78, 88-89 (1935)).  Even worse, here, the government

2   told the grand jurors that they should "just" adopt the prosecutors' personal opinion.  *See* Valco

3   Decl. Ex. 14 at 14:15-17.  Such a casual invitation undermines the essential function of the grand

4   jury—to make an independent decision to indict.  In light of these facts, there is "grave doubt"

5   the grand jury was able to accurately—and independently—decide the alternative fines.

6                   3.        The Court Should Dismiss the Sentencing Allegations

7            Dismissal of the sentencing allegation is appropriate here.  This seems to be a matter of

8   first impression.  But that is not surprising.  Until a few years ago, the Supreme Court had never

9   held that facts supporting the maximum fine a court could impose had to be proven to a jury at

10  all.  In that world, there was no need for Alternative Fines Act allegations to be included in an

11  indictment, no opportunity for a grand jury to be misled about the basis for those allegations, and

12  no need for a district court to determine the appropriate remedy for such an error.

13           In recent years, however, that has changed.  Under the Supreme Court's decision in

14  *Apprendi v. New Jersey*, "*any* fact (other than prior conviction) that increases the maximum

15  penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a

16  reasonable doubt."  530 U.S. 466, 476 (2000) (emphasis added).  And, in *Southern Union v.*

17  *United States*, the Supreme Court explained that this is true of facts that increase either the

18  maximum imprisonment or the maximum fine that a defendant could face and it is true

19  regardless of whether the fact is described as an "element" of the crime or a "sentencing factor."

20  132 S. Ct. 2344, 2357 (2012) ("[T]he rule of *Apprendi* applies to the imposition of criminal

21  fines."); *id.* at 2356 (finding there is no "constitutionally significant difference between a fact

22  that is an 'element' of the offense and one that is a 'sentencing factor'").

23           The logic of these two Supreme Court opinions leads inescapably to the conclusion that

24  the Alternative Fines Act allegations here must be "charged in an indictment, submitted to a jury,

25  and proven beyond a reasonable doubt."  *Apprendi*, 530 U.S. at 476.  Those "facts" about the

26  pecuniary gain or loss attributable to the charged conduct are therefore elements of the charged

27

28

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
SAN FRANCISCO

14            DEF.'S MOT. TO DISMISS FOR ERRONEOUS
LEGAL INSTRUCTIONS
Case No. CR-14-00175-TEH

1  crimes.[6]  *See Alleyne v. United States*, 133 S. Ct. 2151, 2160 (2013) ("[A]ny 'facts that increase

2  the prescribed range of penalties to which a criminal defendant is exposed' are elements of the

3  crime.") (quoting *Apprendi*, 530 U.S. at 490).  As with any other element that must be included

4  in the indictment, they had to be found by the grand jury based on a finding of probable cause—

5  not whatever the prosecutor thought was "appropriate."  Because the government's legal

6  instructions to the grand jury seriously misstated the applicable law, resulting in "grave doubt"

7  that its decision to indict was absent substantial influence from this error, the Court must dismiss

8  the Alternative Fines Act allegations.  *See Stevens*, 771 F. Supp. 2d at 567.

9  **IV.     CONCLUSION**

10          For the foregoing reasons, the Pipeline Safety Act Counts (Counts 2-28) and the

11  Alternative Fines Act sentencing allegations in the superseding indictment should be dismissed.

12  Dated:  September 7, 2015                              Respectfully submitted,

13                                                          By  _____/s/_____

14                                                          Steven M. Bauer
                                                            Margaret A. Tough

15                                                          Melissa Arbus Sherry
                                                            Danielle A. Kendrick

16                                                          LATHAM & WATKINS LLP

17                                                          Kate Dyer
                                                            CLARENCE, DYER & COHEN LLP

18                                                          *Attorneys for Defendant*
                                                            *Pacific Gas and Electric Company*

19

20

21

22

23

24

25

26  _____

27  [6]     The elements of the Alternative Fines Act and *Apprendi*'s effect on the "undue complication"
    provision are discussed further in the Defendant's Motion to Dismiss the Alternative Fines Act

28  Sentencing Allegations also filed today.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15                                    DEF.'S MOT. TO DISMISS FOR ERRONEOUS
                                      LEGAL INSTRUCTIONS
                                      Case No. CR-14-00175-TEH