LATHAM & WATKINS LLP
  Steven M. Bauer (Bar No. 135067)
    steven.bauer@lw.com
  Margaret A. Tough (Bar No. 218056)
    margaret.tough@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California  94111-6538
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095

LATHAM & WATKINS LLP
  Melissa Arbus Sherry (*pro hac vice*)
    melissa.sherry@lw.com
555 11th Street, NW, Suite 1000
Washington, DC  20004-1304
Telephone: +1.202.637.2200
Facsimile: +1.202.637.2201

CLARENCE, DYER & COHEN LLP
  Kate Dyer (Bar No. 171891)
    kdyer@clarencedyer.com
899 Ellis Street
San Francisco, California  94109-7807
Telephone: +1.415.749.1800
Facsimile: +1.415.749.1694

Attorneys for Defendant
PACIFIC GAS AND ELECTRIC COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Defendant. | CASE NO. CR-14-00175-TEH<br><br>**DEFENDANT'S MOTION FOR A BILL OF PARTICULARS**<br><br>**Judge:    Hon. Thelton Henderson**<br>**Date:     October 19, 2015**<br>**Time:    10:00 A.M.**<br>**Place:    Courtroom 2, 17th Floor** |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on October 19, 2015 at 10:00 a.m., Defendant Pacific Gas and Electric Company ("PG&E") will and hereby does move this Court for an order granting its Motion for a Bill of Particulars and requiring the government to disclose the following:

1. For Count One: specify (a) which acts by the defendant allegedly obstructed or endeavored to obstruct the investigation by the National Transportation Safety Board ("NTSB") into the cause of the San Bruno accident; (b) how the allegedly obstructive acts were material to the NTSB's investigation and thereby obstructed that investigation; (c) which individual or individuals committed the obstructive acts with the requisite "corrupt" intent; (d) if the government contends that "corruptly" influencing an NTSB investigation requires a violation of some legal duty, what that duty was, how it was violated and by whom; and (e) if the government contends that acting "corruptly" requires nothing more than an "improper purpose," what the government contends that improper purpose was, who had it, and why it was improper.

2. For each of Counts 2-3 and 6-23: identify every "covered segment," by Count and by line. For example, for Count 2, identify which covered segments on Line 132 are at issue, for Count 3, which covered segments on Line 109 are at issue, and so on.

3. For each of Counts 15-23: identify the government's theory as to (a) what a pipeline operator must to do "prioritize" a segment as "high risk"; (b) whether there was a specific time period in which the defendant was required to "prioritize" a charged segment as "high risk"; and (c) how the defendant knowingly and willfully failed to "prioritize" each covered segment as "high risk."

4. For the sentencing allegations based on the Alternative Fines Act ("AFA"): specify (a) the data supporting the calculation of the gross gain of $281 million; (b) the data supporting the calculation of the victims' suffered losses of

$565 million; (c) what proportion of the $281 million in alleged gross gain was proximately caused by each of the 28 offenses in the superseding indictment and how; (d) what proportion of the $565 million in alleged losses was proximately caused by each of the 28 offenses in the superseding indictment and how; and (e) what proportion of these amounts is pecuniary.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Nicole C. Valco, the files and records of this case, and such other argument and evidence as the Court may consider.

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................ 1

II. DISCUSSION ..................................................................................................................... 2

    A. Governing Legal Standard ................................................................................... 2

    B. A Bill of Particulars Is Necessary to Understand the Government's Theory Underlying Count One .............................................................................. 4

    C. A Bill of Particulars Is Necessary to Understand Which "Covered Segments" Are at Issue in This Prosecution in Counts 2-3 and 6-23 ................... 7

    D. A Bill of Particulars Is Necessary to Understand the Government's Theory as to How the Defendant Knowingly and Willfully Violated the Integrity Management Regulations Underlying Counts 15-23 ................................................................................................................... 8

    E. A Bill of Particulars Is Necessary to Understand the Government's Theory Underlying the Alternative Fines Act Sentencing Allegation ............................................................................................................. 9

III. CONCLUSION ................................................................................................................. 10

## **TABLE OF AUTHORITIES**

Page(s)

### **CASES**

*Apprendi v. New Jersey*,
 530 U.S. 466 (2006) ................................................................................................................. 9

*Russell v. United States*,
 369 U.S. 749 (1962) ................................................................................................................. 1

*Southern Union Co. v. United States*,
 132 S. Ct. 2344 (2012) ............................................................................................................. 9

*United States v. Aguilar*,
 515 U.S. 593 (1995) ................................................................................................................. 5

*United States v. Ayers*,
 924 F.2d 1468 (9th Cir. 1991) ................................................................................................. 2

*United States v. Bonds*,
 784 F.3d 582 (9th Cir. 2015) ................................................................................................... 5

*United States v. Bortnovsky*,
 820 F.2d 572 (2d Cir. 1987) .................................................................................................... 3

*United States v. Carona*,
 No. SA CR 06-224-AG, 2008 WL 1970199 (C.D. Cal. May 2, 2008) ................................... 5

*United States v. Chen*,
 No. C 05-375 SI, 2006 WL 3898177 (N.D. Cal. Nov. 9, 2006) .............................................. 3

*United States v. Diaz*,
 No. CR 05-00167 WHA, 2006 WL 1833081 (N.D. Cal. June 30, 2006) ............................... 3

*United States v. Feil*,
 No. CR 09-00863 JSW, 2010 WL 1525263 (N.D. Cal. Apr. 15, 2010) .................................. 3

*United States v. Greater Syracuse Board of Realtors, Inc.*,
 438 F. Supp. 376 (N.D.N.Y. 1977) .......................................................................................... 8

*United States v. Inryco, Inc.*,
 642 F.2d 290 (9th Cir. 1981) ................................................................................................... 2

*United States v. Laurins*,
 857 F.2d 529 (9th Cir. 1988) ................................................................................................... 5

*United States v. Linder*,
 No. 12 CR 22-1, 2012 WL 3264924 (N.D. Ill. Aug. 9, 2012) ................................................. 5

*United States v. Nguyen*,
 No. SACR 08-251 DOC, 2010 WL 374967 (C.D. Cal. Jan. 25, 2010) ................................... 5

*United States v. R. P. Oldham Co.*,
 152 F. Supp. 818 (N.D. Cal. 1957) .......................................................................................... 3

*United States v. Rosi*,
   27 F.3d 409 (9th Cir. 1994) ................................................................................................... 1

*United States v. Ryland*,
   806 F.2d 941 (9th Cir. 1986) ................................................................................................. 2

*United States v. Trie*,
   21 F. Supp. 2d 7 (D.D.C. 1998) ............................................................................................ 7

*United States v. Trumpower*,
   546 F. Supp. 2d 849 (E.D. Cal. 2008) ............................................................................. 3, 9

*United States v. Wong*,
   No. CR 06-428 SI, 2007 WL 404807 (N.D. Cal. Feb. 2, 2007) ........................................... 3

**STATUTES**

18 U.S.C. § 1505 ............................................................................................................................ 1

18 U.S.C. § 1512(b)(1) .................................................................................................................. 5

18 U.S.C. § 1512(b)(3) .................................................................................................................. 4

18 U.S.C. § 3571(d) ....................................................................................................................... 9

**REGULATIONS**

49 C.F.R. § 192.901 ....................................................................................................................... 7

49 C.F.R. § 192.903 ....................................................................................................................... 7

49 C.F.R. § 192.917(a) ................................................................................................................... 7

49 C.F.R. § 192.917(b) .................................................................................................................. 7

49 C.F.R. § 192.917(e)(3) .......................................................................................................... 7, 8

49 C.F.R. § 192.917(e)(4) .......................................................................................................... 7, 8

49 C.F.R. § 192.919 ....................................................................................................................... 7

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

DEF.'S MOT. FOR A BILL OF PARTICULARS
Case No. CR-14-00175-TEH

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The charges in this case are novel and unprecedented. This is the first criminal prosecution of seven complex federal pipeline regulations, the first prosecution of an intrastate pipeline operator in a State that has assumed exclusive regulatory authority, and the first reported prosecution under 18 U.S.C. § 1505 for alleged obstruction of an investigation by the National Transportation Safety Board ("NTSB"). The conduct charged dates back decades, and potentially involves dozens, if not hundreds, of the defendant's employees, former employees and contractors. Yet the indictment does not identify a single person who did something wrong or a discrete act a person took that was improper.[1]

In some cases, deficiencies on the face of an indictment may be saved by reference to discovery. But while the government has produced approximately 1.98 million pages of documents,[2] much of this material is simply a re-production of what the defendant itself had produced during the underlying investigation. We have not been able to deduce the government's factual theories on four key topics.

*First*, the obstruction charge: In prior motions, we noted that the indictment does not aver that any of the allegedly obstructive conduct by the defendant was material to the NTSB's investigation. (The indictment does not identify any persons who did anything wrong or what, in fact, they did.) The government has conceded that materiality is an element it must prove at trial, and yet the discovery sheds no more light on the government's theory of materiality than the indictment did. Indeed, it suggests the opposite, *i.e.*, that the NTSB was not especially

---

[1] There are independent reasons that each of the charged counts in the indictment, as well as the enhanced sentencing allegations, should be dismissed at this stage. They are subject to other motions the defense is filing today. In light of the Court's order setting today as the final date to bring pretrial motions without leave, however, we bring this motion for a bill of particulars in the event the Court allows certain of those charges to proceed. This motion, however, stands independent of our other motions that attack fatal deficiencies in the indictment, for a bill of particulars cannot cure an otherwise insufficient indictment. *See Russell v. United* States, 369 U.S. 749, 770 (1962); *United States v. Rosi*, 27 F.3d 409, 414 (9th Cir. 1994).

[2] *See* Declaration of Nicole C. Valco in Support of Defendant's Pretrial Motions ("Valco Decl.") ¶ 27.

1 concerned about the April 2011 letter that PG&E sent correcting a response to an earlier request.
2 The indictment also does not explain *who* allegedly obstructed the NTSB or what conduct or
3 state of mind allegedly satisfies the requirement that a defendant "corruptly" interfere with
4 agency proceedings.

5   *Second*, the indictment concedes that the charged integrity management regulations apply
6 only to "covered segments" of the defendant's pipelines, but nowhere does it identify which of
7 the thousands of covered segments are at issue in this prosecution.

8   *Third*, Counts 15-23 charge crimes of knowingly and willfully failing to "prioritize
9 [unnamed segments] as high risk." Yet the indictment does not provide any factual detail about
10 what the government means by this, or what it contends the defendant should have done to
11 comply with the law.

12   *Finally*, despite numerous requests, we remain at a loss as to the government's theory
13 about the gain and loss amounts under its Alternative Fine Act ("AFA") sentencing allegations, a
14 $1.13 billion item.

15   The defendant thus moves for a bill of particulars on these four topics.

16 **II. DISCUSSION**

17   **A. Governing Legal Standard**

18   A bill of particulars has three purposes: (1) "to inform the defendant of the nature of the
19 charge against him with sufficient precision to prepare for trial"; (2) "to avoid or minimize the
20 danger of surprise at . . . trial"; and (3) to enable the defendant to plead double jeopardy in a
21 subsequent prosecution of the same offense. *United States v. Ayers*, 924 F.2d 1468, 1483 (9th
22 Cir. 1991) (citation and internal quotation marks omitted). It is "intended to supplement the
23 indictment by providing more detail of the facts upon which the charges are based." *United*
24 *States v. Inryco, Inc.*, 642 F.2d 290, 295 (9th Cir. 1981). While "[a] defendant is not entitled to
25 know all the *evidence* the government intends to produce," a defendant is entitled to know "the
26 *theory* of the government's case." *United States v. Ryland*, 806 F.2d 941, 942 (9th Cir. 1986)
27 (emphasis in original). Specifically, a defendant is entitled to notice of the government's factual
28 theory—*i.e.* what alleged conduct by the defendant, according to the government, underlies each

crime charged. *United States v. Diaz*, No. CR 05-00167 WHA, 2006 WL 1833081, at *6 (N.D. Cal. June 30, 2006).

A bill of particulars is particularly appropriate in a complex case like this with massive discovery. The "[g]overnment [does] not fulfill its obligation [of providing adequate notice of the charges] merely by providing mountains of documents to defense counsel who [a]re left unguided as to which documents would be [relevant]." *United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir. 1987). Courts in this district have ordered bills of particulars in complex cases where similar "extremely voluminous and diverse discovery produced" left the defendant with little direction as to what it was charged with. *United States v. Wong*, No. CR 06-428 SI, 2007 WL 404807, at *2 (N.D. Cal. Feb. 2, 2007) (ordering a bill of particulars for a conspiracy charge where the discovery consisted of over 200,000 pages, 111,250 TIFF images, 1,250 photographs, 5,800 minutes of audio recordings, and 900 minutes of video surveillance); *see also United States v. Chen*, No. C 05-375 SI, 2006 WL 3898177, at *3 (N.D. Cal. Nov. 9, 2006) (same); *United States v. Feil*, No. CR 09-00863 JSW, 2010 WL 1525263, at *3 (N.D. Cal. Apr. 15, 2010) (ordering a bill of particulars in a case involving multiple alleged conspiracies spanning three years and 70,000 pages of discovery).

As noted above, the indictment fails to identify what specific conduct the defendant's employees allegedly undertook, or how it violated the law. This detail is required to adequately apprise the defendant of the government's theory of the case. *See, e.g.*, *United States v. Trumpower*, 546 F. Supp. 2d 849, 852 (E.D. Cal. 2008) (ordering a supplemental bill of particulars disclosing "how and when" the alleged money laundering crimes were committed). Without information as to the government's theories of how the defendant allegedly violated each crime charged, it cannot fairly prepare a defense. Given the "complexities of this case, . . . and the generality of the allegations in the indictment, . . . a bill of particulars is necessary here to enable the defendant[] properly to prepare [its] case and avoid surprise a trial." *United States v. R. P. Oldham Co.*, 152 F. Supp. 818, 824 (N.D. Cal. 1957). In this first-time prosecution of complex engineering regulations concerning conduct by unnamed employees stretching back decades, this detail is crucial.

### B. A Bill of Particulars Is Necessary to Understand the Government's Theory Underlying Count One

Count One charges the defendant with obstructing the NTSB's investigation into the cause of the San Bruno accident. Superseding Indictment ("SI") ¶ 61. On February 22, 2011, "[a]s part of its response to the NTSB's data requests," the indictment alleges that the defendant "attached a version of RMI-06 [an internal instruction document] that provided that PG&E would only consider a manufacturing threat as unstable if the pressure on the line exceeded the 5-year [Maximum Operating Pressure ("MOP")] by 10%." *Id.* ¶ 57. On April 6, 2011, the defendant subsequently "sent a letter to the NTSB withdrawing" the version sent on February 22, "claiming it was an unapproved draft." *Id.* ¶ 59. The defendant also allegedly "did not disclose that . . . [it] followed the practice set forth in the 10% Version" or that it knew "the 10% Version was in violation of Section 192.917(e) and the guidance issued by PHMSA with respect" to that section. *Id.* ¶ 60. The indictment does not identify a single person who did something wrong.

All that can be deciphered from these allegations is that the company allegedly did not disclose two pieces of information to the NTSB: (1) that its integrity management group followed practices set forth in an unapproved draft of an internal instruction document; and (2) that the defendant knew the unapproved draft violated a federal regulation. The defendant contests the facts allegedly not disclosed, but various parts of the government's theory still remain unclear: (a) which of these acts obstructed or endeavored to obstruct the NTSB investigation; (b) how such acts or statements were material to the NTSB investigation and thereby obstructed that investigation; (c) who undertook this conduct with the requisite "corrupt" intent and what that "corrupt" actor's intent actually was. A bill of particulars is essential to properly inform the defendant as to the government's theory of obstruction.

As for the acts, courts have recognized that a bill of particulars is appropriate to identify the specific acts or statements that allegedly constituted obstruction. For example, in *United States v. Nguyen*, the court ordered the government to provide the defendant with a bill of particulars identifying the "content of all acts and statements by [the defendant] made with the alleged intent to mislead state investigators and/or obstruct the communication of information to

federal officers" in violation of 18 U.S.C. § 1512(b)(3), and any other "action taken by [the defendant] that could constitute obstruction of justice." No. SACR 08-251 DOC, 2010 WL 374967, at *3-4 (C.D. Cal. Jan. 25, 2010). In *United States v. Carona*, the court granted the defendant's request for a bill of particulars because the indictment failed to identify "the nature . . . of specific actions" by the defendant that allegedly amounted to obstruction under 18 U.S.C. § 1512(b)(1). No. SA CR 06-224-AG, 2008 WL 1970199, at *2 (C.D. Cal. May 2, 2008); *see also United States v. Linder*, No. 12 CR 22-1, 2012 WL 3264924, at *2-3 (N.D. Ill. Aug. 9, 2012) (granting motion for a bill of particulars to identify the "specific acts that [the defendant] allegedly committed which constituted [ ] corrupt persuasion" under 18 U.S.C. § 1512(b)(3)).

As for materiality, the Ninth Circuit recently reaffirmed that it is an essential element of an obstruction offense. *See United States v. Bonds*, 784 F.3d 582, 582 (9th Cir. 2015) (en banc) (per curiam).[3] Obstructive conduct is material if it bears "the natural and probable effect of interfering with" the due and proper administration of law. *United States v. Aguilar*, 515 U.S. 593, 599 (1995) (citations and internal quotation marks omitted); *see also Bonds*, 784 F.3d at 585 (explaining obstructive conduct as material if it is "capable of influencing a decisionmaking person or entity—for example, by causing it to cease its investigation, pursue different avenues or inquiry or reach a different outcome") (Kozinski, J., concurring). Here, the government has acknowledged that it must prove "beyond a reasonable doubt that PG&E provided false or misleading information that was material to the NTSB's investigation." Govt.'s Opp. to Def.'s Mot. to Strike (Dkt. 36) at 11. The indictment, however, contains no allegations identifying *how* (or even whether) any of the alleged acts by the defendant were material to the NTSB investigation.

Discovery has not helped clarify the government's theory on this critical element. Grand jury transcripts reveal that the sole PG&E witness who testified the day the grand jury returned the superseding indictment explained that he "did not prepare the letter" but rather just "sent the

---

[3] While *Bonds* involved an obstruction offense under 18 U.S.C. § 1503 and not under § 1505 (the offense charged here), the law interpreting the essential elements of § 1503 are applicable to § 1505 offenses. *See United States v. Laurins*, 857 F.2d 529, 536 (9th Cir. 1988) ("[C]ases interpreting section 1503 are relevant to the construction of section 1505.").

letter to the NTSB." Valco Decl. Ex. 2 (USA-109778). The government's interviews with various NTSB personnel—conducted in the waning weeks before the superseding indictment—reveal that the NTSB investigation was not focused on the MOP+10% issue alleged in the indictment. For example, Ravindra Chhatre, the NTSB's investigator in charge, told the prosecutors that "[t]he NTSB did not pursue whether PG&E was actually using the 10% policy." Valco Decl. Ex. 3 (USA_INT-00741). And the agent's notes of that same interview—recently produced to the defense pursuant to this Court's order—further reveals that, the "10% policy . . . was something that was for the regulators to pursue," and *not* the NTSB. Valco Decl. Ex. 4 (USA-AGENTNOTES-00114). Matthew Nicholson, an NTSB pipeline accident investigator, likewise confirmed that he "didn't remember ever discussing the [MOP+10%] policy with anyone from PG&E." Valco Decl. Ex. 5 (USA_INT-00733).

We also know that the NTSB issued over 550 requests to PG&E over the course of 11 months of investigation. Valco Decl. ¶ 26. While the allegations suggest that the government's obstruction theory is premised on the April 6, 2011 letter, the NTSB never followed up with the defendant regarding that letter or its contents, *see* Valco Decl. Ex. 3 (USA_INT-00741), and merely posted it on its docket months later.[4] If anything, the discovery suggests that the alleged conduct underlying the obstruction count could *not* have been material to the NTSB investigation.

Finally, as is clear from the face of the indictment, it does not allege that any single person had the requisite intent to "corruptly" influence the NTSB's investigation. 18 U.S.C. § 1505.[5] In the context of obstruction, the requirement that the defendant act "corruptly" is the only thing that distinguishes otherwise benign conduct from that which is unlawful. If the government has a person or persons in mind, it must disclose its theory. If it believes that

---

[4] *See* Revised Exhibit 2-AG Overpressure Requirement RMI-06 Rev 00 and Rev 01, NTSB: Docket Management System (Oct. 4, 2011), http://dms.ntsb.gov/pubdms/search/document.cfm?docID=354899&docketID=49896&mkey=77250.

[5] As explained in greater detail in the defendant's motion to dismiss Count One, absent some narrowing construction of "corruptly," § 1505 is unconstitutionally vague as applied to the defendant. Even still, the defendant is entitled to know the government's theory of obstruction that it intends to present at trial.

"corruptly" influencing an NTSB investigation requires a violation of some legal duty, it should disclose what that duty was and how it was violated. If it believes that acting "corruptly" requires nothing more than an "improper purpose," it should disclose what that purpose was, who had it, and why it was improper.

    **C.    A Bill of Particulars Is Necessary to Understand Which "Covered Segments" Are at Issue in This Prosecution in Counts 2-3 and 6-23**

As the indictment recognizes, only a specific part of a pipeline—a "covered segment"—is regulated by the integrity management regulations charged in Counts 2-3 and 6-23. SI ¶ 10. These are portions of a transmission pipeline located in certain populated areas, known as high consequence areas, or "HCAs." *See* 49 C.F.R. §§ 192.901, 192.903. Each integrity management regulation charged in Counts 2-3 and 6-23 requires a pipeline operator to take action on a covered segment-by-covered segment basis. *See, e.g.*, 49 C.F.R. §§ 192.917(a), 192.917(b), 192.919, 192.917(e)(3), and 192.917(e)(4). Covered segments are thus the building block of these regulations; whether a segment of a pipeline is "covered" determines whether that segment even falls within the reach of the regulations. Covered segments differ from each other based on varying pipe characteristics and are subject to different environmental and other conditions that make them susceptible to different threats.

On the face of the indictment, however, it is impossible to know what conduct the defendant is charged with because other than Segment 180 on Line 132, the indictment does not identify any segment (of approximately two thousand) on the six transmission pipelines identified in the indictment that is at issue. It merely parrots the language of the regulation by charging unidentified "covered segments."

The defendant certainly knows the thousands of segments on the lines mentioned in the indictment. But the question is what segments the government contends were the subject of a crime. Any contention that "the defendant knows what the government alleges that [it] did and with whom [it] dealt and therefore has all the information [it] needs" is "a premise inconsistent with the presumption of innocence." *United States v. Trie*, 21 F. Supp. 2d 7, 21 (D.D.C. 1998). A "[b]ill of [p]articulars is aimed at the facts as alleged by the [g]overnment, rather than as they

actually exist." *United States v. Greater Syracuse Bd. of Realtors, Inc.*, 438 F. Supp. 376, 379 (N.D.N.Y. 1977). It is therefore "no answer that the defendant should know the facts demanded." *Id.* If the prosecution is alleging that every covered segment on the six charged transmission lines involved a knowing and willful violation—and the grand jury was aware of this claim—the defendant is entitled to know this too. (In that case, it will be a very long trial indeed.)

The indictment leaves the defendant guessing as to which covered segments are at issue and therefore what actions the defendant is charged with intentionally failing to undertake. A bill of particulars is required to specify which of the thousands of "covered segments" the government contends are actually at issue in this case, by Count and by line.

### D. A Bill of Particulars Is Necessary to Understand the Government's Theory as to How the Defendant Knowingly and Willfully Violated the Integrity Management Regulations Underlying Counts 15-23

The indictment also fails to inform the defendant of the government's theory as to what knowing and willful conduct allegedly violated 49 C.F.R. §§ 192.917(e)(3) and 192.917(e)(4), which are the integrity management regulations that require an operator to take certain actions to address manufacturing threats on a pipeline. Counts 15-18 allege that the defendant "knowingly and willfully failed to prioritize covered segments of lines as high risk segments for the baseline assessment or a subsequent reassessment, after a changed circumstance rendered manufacturing threats . . . unstable" on certain pipelines. SI ¶ 71 (violations of (e)(3)). Counts 19-23 contain similar allegations. *Id.* ¶ 73 (violations of (e)(4)).

The only allegations supporting these counts are general ones that some unspecified manufacturing threats on some unidentified covered segments were rendered unstable due to pressure increases that exceeded the lines' respective 5-year MOPs. *See id.* ¶¶ 35-38. And with respect to what the defendant intentionally failed to do, all the indictment alleges is that "PG&E chose not to reprioritize these pipelines as high risk" and avoided "having to prioritize these pipelines as 'high risk.'" *Id.* ¶¶ 37, 38. But these allegations do not reveal the government's theory as to what it would *mean* to "prioritize" a segment as "high risk" or how the defendant knowingly and willfully failed to do so on certain covered segments.

8   DEF.'S MOT. FOR A BILL OF PARTICULARS
Case No. CR-14-00175-TEH

What does the government contend the crime is in "failing to prioritize" a segment as "high risk"? Did a "prioritization" have to be noted in a particular document? Did it have to be labeled with the words "high risk"? Does the government contend that there was a specific time period in which the defendant was required to "prioritize" as "high risk" unidentified segments of its pipelines?

To adequately prepare a defense, the defendant must be apprised of what the government contends it should have done to prioritize certain covered segments as high risk, but knowingly and willfully failed to do. Merely reciting the language of the regulations without offering any detail as to what conduct the defendant intentionally failed to undertake, or *how* that failure actually amounted to a criminal violation of the regulations charged is insufficient. *See Trumpower*, 546 F. Supp. 2d at 852.

### E. A Bill of Particulars Is Necessary to Understand the Government's Theory Underlying the Alternative Fines Act Sentencing Allegation

As we discuss at length in the concurrently filed motion to dismiss the AFA sentencing allegations, from what we can tell of the government's theories of gain and loss under the AFA, they are seriously flawed. We will not repeat those arguments here. But suffice it to say that if the government is permitted to proceed to trial with those allegations, then the defendant is entitled to information regarding which portions of the alternative maximum fine of approximately $281 million for gross gains and $565 million for victims' losses alleged in the indictment are attributable to each of the 28 offenses alleged, and why. As criminal fines under the AFA, 18 U.S.C. § 3571(d), they must be charged in the indictment, submitted to the jury, and proved beyond a reasonable doubt. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2006); *S. Union Co. v. United States*, 132 S. Ct. 2344, 2357 (2012) ("[T]he rule of *Apprendi* applies to the imposition of criminal fines."). The government cannot increase the defendant's maximum fine exposure *eighty-fold* on the premise that the charged conduct produced pecuniary gains and losses, without explaining on what theory it contends those gains and losses were calculated and how they allegedly were caused by the specific offenses charged.

1    The government therefore must disclose its theory of how each of the 28 offenses proximately caused *specific* gross gains or losses, which in aggregate, total $281 million and $565 million respectively. The discovery does not provide an answer. And the government has repeatedly declined to answer the defendant's requests for further explanation as to how the alleged gains and losses were calculated. *See* Valco Decl. Exs. 7-8, 19-20. All the government has indicated is that the alleged loss of $565 million is premised on "PG&E's own filings with the Securities and Exchange Commission as to what [it] has paid to claimants related to the San Bruno explosion," and that the alleged gain of $281 million is "taken from PG&E's own submissions to the California Public Utilities Commission as to what PG&E plans to spend to bring its pipeline system in compliance with federal regulations." Govt.'s Opp. to Def.'s Mot. to Strike (Dkt. 36) at 19. On the $281 million, we have been unable to determine the basis for that figure. Does the government contend that it reflects actual past pecuniary gains to PG&E caused and proximately caused by the specific conduct charged in the indictment? If so, how? And as to the alleged losses, does the government contend that every penny paid as compensation to a victim of the San Bruno explosion reflects "pecuniary loss" caused and proximately caused by the charged conduct?

To prepare its defense, the defendant requires the supporting data and method of calculation relied upon by the government to support its alternative fine sentencing allegations.

## III.    CONCLUSION

The sprawling and vague indictment fails to adequately apprise the defendant of the government's factual theories as to: (1) the obstruction offense alleged in Count One; (2) which covered segments underlie each of the integrity management charges; (3) how the defendant failed to "prioritize" as "high risk" certain unidentified segments on the various lines alleged in Counts 15-23; and (4) the basis for the gains and losses in the AFA sentencing allegations. Discovery has not cured these deficiencies. A bill of particulars is required to provide the defendant notice of the necessary facts to prepare its defense, avoid surprise at trial, and to preserve its ability to plead double jeopardy. For the reasons set forth above, this Court should grant the defendant's motion for a bill of particulars.

1  Dated:  September 7, 2015

Respectfully submitted,

By _____/s/_____
Steven M. Bauer
Margaret A. Tough
Melissa Arbus Sherry
Aaron T. Chiu
LATHAM & WATKINS LLP

Kate Dyer
CLARENCE, DYER & COHEN LLP

*Attorneys for Defendant*
*Pacific Gas and Electric Company*