1  BRIAN J. STRETCH (CABN 163973)
   Acting United States Attorney

2  DAVID R. CALLAWAY (CABN 121782)
3  Chief, Criminal Division

4  HALLIE MITCHELL HOFFMAN (CABN 210020)
   OWEN P. MARTIKAN (CABN 177104)
5  HARTLEY M. K. WEST (CABN 191609)
   JEFFREY B. SCHENK (CABN 234355)
6  Assistant United States Attorneys

7  MARK ROMLEY (CABN 240655)
   Trial Attorney
8
9      450 Golden Gate Avenue, Box 36055
       San Francisco, California 94102-3495
10     Telephone: (415) 436-7129
       Fax: (415) 436-7234
11     hallie.hoffman@usdoj.gov
       owen.martikan@usdoj.gov
12     hartley.west@usdoj.gov
       mark.romley@usdoj.gov
13
   Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case No. CR 14-00175 TEH |
| Plaintiff, | ) |
| | ) THE UNITED STATES' OPPOSITION TO PG&E'S |
| v. | ) MOTION TO DISMISS FOR ALLEGEDLY |
| | ) ERRONEOUS GRAND JURY LEGAL |
| PACIFIC GAS AND ELECTRIC COMPANY, | ) INSTRUCTIONS |
| Defendant. | ) |
| | ) Date: October 19, 2015 |
| | ) Time: 10:00 a.m. |
| | ) Place: Courtroom 2, 17th Floor |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ...........................................................................................................................1

THE RELEVANT FACTS ..............................................................................................................1

ARGUMENT AND AUTHORITIES ..............................................................................................3

I.  PG&E HAS FAILED TO SHOW THAT THE GOVERNMENT'S WILLFULNESS
    AND COLLECTIVE KNOWLEDGE INSTRUCTIONS ABUSED THE GRAND
    JURY ...................................................................................................................................3

    A.  The Legal Standard For Dismissal Based On Grand Jury Abuse Is High ..............3

    B.  The Grand Jury's Willfulness And Collective Knowledge Instructions Were
        Correct .....................................................................................................................5

        1.  The instructions were consistent with governing and persuasive
            precedent .....................................................................................................5

        2.  The prosecutor never gave the instructions that PG&E condemns ...........8

    C.  The Prosecutor's Willfulness Instructions Were Not Prejudicial ..........................10

II. PG&E'S CLAIM THAT THE GOVERNMENT'S ALTERNATIVE FINES ACT
    INSTRUCTION ABUSED THE GRAND JURY IS CONTRARY TO THE LAW OF
    THE CASE AND FRIVOLOUS ........................................................................................11

CONCLUSION ..............................................................................................................................12

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Apprendi v. New Jersey*, 530 U.S. 466 (2000) .................................................................. 11, 12

*Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988) ............................................. 3, 4, 10

*City of Monroe Employees Retirement System v. Bridgestone Corp.*, 399 F.3d 651 (6th Cir. 2005) ......... 7

*Ginena v. Alaska Airlines, Inc.*, No. 04-CV-01304 MMD-EWH, 2013 WL 3155306
   (D. Nev. June 19, 2013) ............................................................................................................. 9

*Glazer Capital Management, LP v. Magistri*, 549 F.3d 736 (9th Cir. 2008) ................................. 6

*Helton v. AT&T, Inc.*, 709 F.3d 343 (4th Cir. 2013) ........................................................................ 7

*Holland v. City of San Francisco*, 91 Fed. R. Evid. Serv. 173 (N.D. Cal. Apr. 16, 2013) ............ 11

*In re NVIDIA Corp. Securities Litigation*, 768 F.3d 1046 (9th Cir. 2014) ................................. 6, 7

*In re Worldcom, Inc. Securities Litigation*, 352 F. Supp. 2d 472 (S.D.N.Y. 2005) ........................ 7

*Kern Oil & Refining Co. v. Tenneco Oil Co.*, 792 F.2d 1380 (9th Cir. 1986) ................................ 6

*Southern Union Co. v. United States*, 132 S. Ct. 2344 (2012) ..................................................... 11

*Staub v. Proctor Hospital*, 562 U.S. 411 (2011) ......................................................................... 5, 8

*Steere Tank Lines, Inc. v. United States*, 330 F.2d 719 (5th Cir. 1963) ......................................... 5

*United States v. Bank of New England*, 821 F.2d 844 (1st Cir. 1987) ............................... 5, 7, 8, 9

*United States v. Kennedy*, 564 F.2d 1329 (9th Cir. 1977) ............................................................. 3

*United States v. Larrazolo*, 869 F.2d 1354 (9th Cir. 1989), *overruled on other grounds by
   Midland Asphalt Corp. v. United States*, 489 U.S. 794 (1989) ............................................... 3

*United States v. Mechanik*, 475 U.S. 66 (1986) ............................................................................ 4

*United States v. Navarro*, 608 F.3d 529 (9th Cir. 2010) ............................................................... 3

*United States v. Nearing*, 252 F. 223 (S.D.N.Y. 1918) .................................................................. 5

*United States v. One Parcel of Land Located At 7326 Highway 45 North*, 965 F.2d 311
   (7th Cir. 1992) .......................................................................................................................... 6

*United States v. Peralta*, 763 F. Supp. 14 (S.D.N.Y. 1991) ..................................................... 4, 10

*United States v. Philip Morris USA Inc.*, 566 F.3d 1095 (D.C. Cir. 2009) ................................... 8

*United States v. Science Int'l Applications Corp.*, 626 F.3d 1257 (D.C. Cir. 2010) ..................... 8

*United States v. Shortt Accountancy Corp.*, 785 F.2d 1448 (9th Cir. 1986) .................................. 7

| | |
|---|---|
| 1 | *United States v. Stevens*, 771 F. Supp. 2d 556 (D. Md. 2011) .................................................. 4, 10 |
| 2 | *United States v. T.I.M.E. - D.C., Inc.*, 381 F. Supp. 730 (W.D. Va.1974) .............................. 6, 8 |
| 3 | *United States v. Wright*, 667 F.2d 793 (9th Cir. 1982) .................................................................. 3 |

STATE CASES

*Syntex Corp. v. Lowsley-Williams & Cos.,* 79 Cal. Rptr. 2d 371 (1998) ....................................... 6

FEDERAL STATUTES

49 U.S.C. § 60123(a) ......................................................................................................................... 6

OTHER AUTHORITIES

Restatement (Third) of Agency § 5.03 (Am. Law Inst. 2006) ................................................... 1, 5

3 William M. Fletcher, *Fletcher Cyclepedia of Corporations* § 787 (1986) .............................. 6

3 William M. Fletcher, *Fletcher Cyclepedia of Corporations* § 790 (2010) ................................ 8, 9, 10

## INTRODUCTION

The grand jury abuse allegations in PG&E's motion lack factual support, and the claim that they warrant dismissal is contrary to Ninth Circuit law and the law of this case. Even if taken at face value, PG&E's claims fall far short of the high threshold that both the Supreme Court and Ninth Circuit have set for dismissal based on grand jury abuse. But the Court should not take PG&E's claims at face value, for two reasons. First, the government correctly instructed the grand jury regarding the definition of willfulness and collective corporate knowledge. The instructions were consistent with an authoritative treatise, with the Restatement of Agency, with the Ninth Circuit's recent recognition that the doctrine might be appropriate in some circumstances, with other circuit courts' express adoption of the doctrine, and with California law. Second, PG&E's Alternative Fines Act argument ignores this Court's previous ruling on PG&E's motion for discovery of grand jury material, which found that it did not "make sense" for PG&E to claim grand jury abuse in the Alternative Fines Act context when a petit jury would have to find facts supporting any potential fine regardless of the grand jury's decision.

The Court should reject PG&E's grand jury abuse claims and deny its motion to dismiss.

## THE RELEVANT FACTS

This motion arose out of PG&E's attempt, through a previous discovery motion, to obtain transcripts of government prosecutors' colloquy with the grand jury concerning obstruction of justice allegations, pressure test recordkeeping, and the Alternative Fines Act, as well as prosecutors' legal instructions to the grand jury and the grand jury's term of empanelment. The Court found that PG&E had failed to show a particularized need for access to matters before the grand jury, but agreed to allow PG&E access to some grand jury instructions following the Court's in camera review. Order of 6/29/15. The Court rejected PG&E's claim that it might be entitled to dismissal of the Alternative Fines Act count if the government had incorrectly instructed the grand jury, because a petit jury would have to find facts in support of any fine imposed under the Alternative Fines Act. *Id*. at 21.

The transcripts that the Court ordered released to PG&E show that the prosecutor instructed the grand jury that criminal violations of the Pipeline Safety Act require knowing and willful conduct, and that under Supreme Court precedent, "a person acts willfully if he acts intentionally and purposely and with the intent to do something the law forbids, that is, with the bad purpose to disobey or to disregard

the law." Valco Decl., Ex. 10 at 11-12. The prosecutor also instructed the grand jury that a corporation is criminally liable for its employees' acts or omissions done within the scope of employment and for the corporation's benefit. *Id*. at 14. The prosecutor remarked that this is "a rather easy standard to meet." *Id*. at 15.

Eight months later, the prosecutor again instructed the grand jury concerning respondeat superior, and also instructed the grand jury: "Another theory of liability is what they call the 'collective corporate knowledge doctrine' where you take the collective . . . the idea is the collective actions of the employees are imputed to the corporation, and the idea is a corporation cannot so — become so decentralized or intentionally decentralized so that in the end one person, one right hand never knows what the left hand is doing, and as a result, violations occur, or as a result, failures occur." Valco Decl., Ex. 11 at 8.

Three months later, the prosecutor instructed the grand jury that willfulness involves the breach of a known legal duty and that it is "one of the more difficult standards." Valco Decl., Ex. 12 at 5. The prosecutor told the grand jury that it would have to decide whether the company had the requisite intent, whether collectively through its employees or "even just one individual making decisions about what to do." *Id*. at 6.

Two months later, a prosecutor told the grand jury that willfulness required that the defendant company, "acting through the actions of its employees committed an act voluntarily and purposefully and with knowledge that its conduct — that their conduct was in a general sense unlawful." Valco Decl., Ex. 13 at 10. The prosecutor advised that the government's theory of liability was based on "collective corporate knowledge," meaning that the company's employees' actions could show that the company willfully violated the law. *Id*. at 11. With respect to the manufacturing threat charges, the prosecutor explained that either the collective corporate knowledge theory or a respondeat superior theory could apply, "where one employee at the company committed acts that resulted being [sic] a knowing and willful violation of the law." *Id*. at 12.

Over three months later, during the proceedings that resulted in the grand jury's return of the superseding indictment, the prosecutor told the grand jury that the Alternative Fines Act "required us to specifically allege the amount of gain or loss that we think is appropriate." Valco Decl., Ex. 14 at 14.

The government's grand jury presentation was not "hurried." PG&E Motion ("Mot.") at 3. By the day on which it returned the superseding indictment, the grand jury had heard testimony regarding PG&E for over 16 months. Valco Decl., Exs. 1-15; PG&E Mot. at 2-3. This Court noted in its previous Order that an allegation accusing the grand jury of returning an indictment too quickly could not overcome the presumption of regularity in grand jury proceedings. Order of 6/29/15 at 15.

**ARGUMENT AND AUTHORITIES**

**I. PG&E HAS FAILED TO SHOW THAT THE GOVERNMENT'S WILLFULNESS AND COLLECTIVE KNOWLEDGE INSTRUCTIONS ABUSED THE GRAND JURY**

**A. The Legal Standard For Dismissal Based On Grand Jury Abuse Is High**

This Court, in its order addressing PG&E's motion for discovery of grand jury material, noted that dismissal of an indictment for prosecutorial error "is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." Order of 6/29/15 at 16 (quoting *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988)). This is a high standard. The Ninth Circuit has held that "[o]nly in a flagrant case, and perhaps only where knowing perjury, relating to a material matter, has been presented to the grand jury should the trial judge dismiss an otherwise valid indictment returned by an apparently unbiased grand jury." *United States v. Kennedy*, 564 F.2d 1329, 1338 (9th Cir. 1977). Even "extensive prosecutorial misconduct" before the grand jury, which is not alleged here, would not justify dismissal of the indictment, though it might justify contempt, referral to the state bar or to the Justice Department. *United States v. Navarro*, 608 F.3d 529, 539 (9th Cir. 2010).

As this Court noted in its previous order, "erroneous grand jury instructions do not automatically invalidate an otherwise proper grand jury indictment." Order of 6/29/15 at 17 (quoting *United States v. Larrazolo*, 869 F.2d 1354, 1359 (9th Cir. 1989) (*overruled on other grounds by Midland Asphalt Corp. v. United States*, 489 U.S. 794 (1989))). Thus, in *United States v. Wright*, 667 F.2d 793, 796 (9th Cir. 1982), the Ninth Circuit concluded that a prosecutor's erroneous instruction about the inferences that a grand jury could draw about a defendant's taxable income from his net worth "did not significantly

infringe on the ability of the grand jury to exercise its independent judgment" given the testimony that the grand jury had heard from a government expert witness.

This Court found district court cases dismissing indictments based on misleading government instructions to the grand jury to be rare, "in large part because almost any prejudice a defendant suffers from an improper grand jury proceeding is rendered harmless by a conviction or acquittal at trial." Order of 6/29/15 at 17 (quoting *United States v. Mechanik*, 475 U.S. 66, 71-72 (1986)). The two out-of-circuit district court cases that this Court cited in its 6/29/15 Order as examples of dismissals based on erroneous grand jury instructions — *United States v. Stevens*, 771 F. Supp. 2d 556 (D. Md. 2011), and *United States v. Peralta*, 763 F. Supp. 14 (S.D.N.Y. 1991) — figure prominently in PG&E's motion. PG&E Mot. to Dismiss at 6, 11, 13, 15. In both of those cases, however, the district court dismissed because of the error's cumulative impact in conjunction with other factors. In *Stevens*, the district court found not only that the prosecutor had erroneously told the grand jury to disregard the defendant's reliance on advice of counsel, but also that the error went to the core of the charge because the defendant directed a team of lawyers and advice of counsel was a natural defense. 771 F. Supp. 2d at 568. In *Peralta*, the district court found not only that the prosecutor had erroneously instructed the grand jury about constructive possession, but also that the government witness had presented inaccurate hearsay testimony and "non-relevant, highly prejudicial, and erroneous information about the defendant's background." 763 F. Supp. at 21.

"[A] district court may not dismiss an indictment based on errors in grand jury proceedings unless such errors prejudiced the defendants." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988). In *Bank of Nova Scotia*, the Supreme Court held that isolated episodes of prosecutorial misconduct, including causing IRS witnesses to testify falsely, mistreating a defense expert witness in the presence of grand jurors, abusing its power to offer pocket immunity, and permitting witnesses to testify in tandem, during the course of a 20-month grand jury investigation "involving dozens of witnesses and thousands of documents" could not have had a substantial effect on the grand jury's decision to indict. *Id*. at 263.

**B. The Grand Jury's Willfulness And Collective Knowledge Instructions Were Correct**

The prosecutor repeatedly instructed the grand jury, over the course of 16 months, that violations of the Pipeline Safety Act must be knowing and willful, and defined willfulness as the intentional breach of a known legal duty. Valco Decl., Ex. 10 at 11-12; Ex. 12 at 5; Ex. 13 at 10. The prosecutor told the grand jury that this was "a high standard" and a difficult standard to meet. Valco Decl., Ex. 12 at 5. PG&E does not challenge the accuracy of these instructions. The prosecutor also repeatedly instructed the grand jury about respondeat superior liability. Valco Decl., Ex. 10 at 14; Ex. 13 at 12. The prosecutor remarked that respondeat superior is a "rather easy standard to meet," echoing Judge Learned Hand's remark, a century ago, that corporate vicarious liability "is a question upon which the law has always tended towards larger and larger liability." *United States v. Nearing*, 252 F. 223, 231 (S.D.N.Y. 1918). PG&E does not contest the accuracy of these instructions.

*1. The instructions were consistent with governing and persuasive precedent*

The prosecutor instructed the grand jury three times, over a 16-month period, about collective corporate knowledge. Valco Decl., Exs. 11, 12, 13. The First Circuit has held that "[a] collective knowledge instruction is entirely appropriate in the context of corporate criminal liability." *United States v. Bank of New England*, 821 F.2d 844, 856 (1st Cir. 1987) (citing cases). Just as the acts of a corporation are "simply the acts of all of its employees operating within the scope of their employment," the knowledge obtained by those employees acting within the scope of their employment "is imputed to the corporation." *Id.* (citing *Steere Tank Lines, Inc. v. United States*, 330 F.2d 719, 722 (5th Cir. 1963)). The Supreme Court recognized the continued viability of *Bank of New England* in an employment discrimination decision, where it noted but did not resolve a split among the circuit courts over whether "the malicious mental state of one agent" can be combined with the harmful action of another agent to hold the principle liable for a tort that requires both. *Staub v. Proctor Hospital*, 562 U.S. 411, 418 (2011). The Restatement (Third) of Agency provides that "[o]rganizations are treated as possessing the collective knowledge of their employees and other agents, when that knowledge is material to the agents' duties, however the organization may have configured itself or its internal practices for transmission of information." Restatement (Third) of Agency § 5.03 (Am. Law Inst. 2006).

The Ninth Circuit recently held, in the securities fraud context, that the collective corporate scienter doctrine "might be appropriate in some cases" without proof of any specific employee's willfulness, for example if "a company's public statements were so important and so dramatically false that they would create a strong inference that at least some corporate officials knew of the falsity upon publication." *In re NVIDIA Corp. Securities Litigation*, 768 F.3d 1046, 1063 (9th Cir. 2014) (citing *Glazer Capital Management, LP v. Magistri*, 549 F.3d 736, 744 (9th Cir. 2008)). PG&E claims that the Ninth Circuit "has refused to allow the collective knowledge theory to prove a corporation's mental intent in a civil context," but this is misleading because in the case on which PG&E relied, the Ninth Circuit was interpreting Texas law. PG&E Motion at 10 n.5 (citing *Kern Oil And Refining Co. v. Tenneco Oil Co.*, 792 F.2d 1380, 1386 (9th Cir. 1986)). To the extent that state law is relevant, California law requires a jury instruction, "upon a party's request, that the collective knowledge of a corporation's employees which they receive while acting within the scope of their authority and which is with reference to a matter over which their authority extends is the knowledge of the corporation." *Syntex Corp. v. Lowsley-Williams & Cos.*, 79 Cal. Rptr. 2d 371, 386 (1986).

The more relevant aspect of the Ninth Circuit's decision in *Kern Oil* was its discussion of a district court case that upheld collective corporate knowledge in the criminal context: *United States v. T.I.M.E.-D.C., Inc.,* 381 F. Supp. 730, 738-39 (W.D. Va.1974). In *T.I.M.E.*, the district court upheld the government's use of the collective corporate knowledge doctrine to prove a knowing and willful violation of federal regulations relating to interstate motor carriers, noting that "the corporation is considered to have acquired the collective knowledge of its employees and is held responsible for their failure to act accordingly." 381 F. Supp. at 738. The Ninth Circuit only distinguished *T.I.M.E.* in *Kern Oil* because *T.I.M.E.* involved a corporation's legal duty to prevent its employees' violations of federal regulations, while the civil case did not. *Kern Oil*, 792 F.2d at 1387. In this criminal case, as in *T.I.M.E.*, PG&E has a legal duty to prevent its employees' violation of federal safety regulations. 49 U.S.C. § 60123(a).

"A corporation acts through its agents. Similarly, a corporation 'knows' through its agents." *United States v. One Parcelo of Land Located At 7326 Highway 45 North,* 965 F.2d 311, 316 (7th Cir. 1992) (citing 3 William M. Fletcher, *Fletcher Cyclepedia of Corporations* § 787 (1986)). Thus, the

Seventh Circuit held that in criminal and civil cases, the knowledge of corporate employees acting within the scope of their employment is imputed to the corporation. *Id.* (citing *Bank of New England*, 821 F.2d at 856). The Fourth Circuit recently reached the same conclusion, in *Helton v. AT&T, Inc.*, 709 F.3d 343, 356 (4th Cir. 2013) (noting both that knowledge obtained by corporate employees acting within the scope of their employment is imputed to the corporation, and that corporations have constructive knowledge of the contents of their books and records). The Sixth Circuit has also held that the knowledge of corporate employees acting within the scope of their employment can be imputed to the corporation. *City of Monroe Employees Retirement System v. Bridgestone Corp.*, 399 F.3d 651, 689 (6th Cir. 2005). The Sixth Circuit emphasized the "divergence between internal reports and external statements on the same subject" as evidence supporting a "strong inference of recklessness by Bridgestone" as to the representations in its annual report. *Id.* In the securities fraud context, the Southern District of New York noted that the "case law abounds with discussions of securities fraud by accounting firms that concentrate on the firm's collective state of mind, not that of individual partners or employees." *In re Worldcom, Inc. Securities Litigation*, 352 F. Supp. 2d 472, 497 (S.D.N.Y. 2005).

PG&E argues that corporate mens rea must rely on the mens rea of a specific employee. PG&E Mot. at 8. The Ninth Circuit has never imposed this requirement. In *NVIDIA*, the Ninth Circuit noted that the opposite might be true, depending on the factual circumstances. 768 F.3d at 1063 ("Yet, the collective scienter (or corporate scienter) doctrine recognizes that it is possible to raise the inference of scienter without doing so for a specific individual . . . . we have not previously adopted a theory of collective scienter . . . . [n]evertheless, . . . the doctrine might be appropriate in some cases."). In *United States v. Shortt Accountancy Corp.*, 785 F2d 1448, 1454 (9th Cir. 1986), the Ninth Circuit held that a corporation is criminally liable for making and subscribing a false return based on the willful intent of one of its agents, even if that agent did not sign the return. Contrary to PG&E's interpretation of this case, the Ninth Circuit did not limit the corporation's mens rea to that of any specific single employee. PG&E Mot. at 10.

Professor Fletcher, in his treatise on the law of corporations, rejects outright the position that PG&E takes here, concluding that [t]he knowledge necessary to adversely affect the corporation does not have to be possessed by a single corporate agent; the cumulative knowledge of several agents can be

imputed to the corporation." 3 William M. Fletcher, *Fletcher Cyclopedia of Corporations* § 790 (2010). Professor Fletcher also recognized the danger of the rule that PG&E proposes: "corporations could avoid the adverse implications of the rule by restricting the intracorporate flow of information." Indeed, the District of Columbia Circuit found the First Circuit's application of collective corporate intent in *Bank of New England* appropriate because it would prevent corporations from avoiding criminal liability by compartmentalizing information. *United States v. Science Int'l Applications Corp.,* 626 F.3d 1257, 1275 (D.C. Cir. 2010).

PG&E also suggests that collective corporate knowledge doctrine, as described in *Bank of New England*, could support only knowledge and not willfulness. PG&E Mot. at 8-9. But the cases on which it relies are out-of-circuit decisions in civil cases that do not quite say what PG&E claims they do. While the D.C. Circuit was "dubious" that a plaintiff could prove a corporation's specific intent to defraud without identifying an employee who harbored that intent, it did not decide the issue. *United States v. Philip Morris USA Inc.,* 566 F.3d 1095, 1122 (D.C. Cir. 2009). Contrary to PG&E's claim of a solid block of consistent authority, the Supreme Court cited *Philip Morris* as an example of one side of a circuit split that did not include the Ninth Circuit, and in which *Bank of New England* held the contrary view. *Staub*, 562 U.S. at 418. And while PG&E relies on several civil district court decisions, it ignores *T.I.M.E.*, a criminal case, in which the district court approved a collective corporate knowledge theory to show a knowing and willful violation of a federal regulation. 381 F. Supp. at 738.

*2.    The prosecutor never gave the instructions that PG&E condemns*

Ultimately, PG&E raises a series of straw men that have no application to its grand-jury abuse claim, because the prosecutor never gave the specific legal instructions that PG&E challenges. The prosecutor instructed the grand jury that "the collective actions of the employees are imputed to the corporation, and the idea is a corporation cannot so — become so decentralized or intentionally decentralized so that in the end one person, one right hand never knows what the left hand is doing." Valeo Decl. Ex. 11 at 8. This is consistent with Professor Fletcher's position in his treatise, and with the precedent discussed above. 3 William M. Fletcher, *Fletcher Cyclopedia of Corporations* § 790 (2010). The prosecutor further instructed the grand jury that it would have to decide whether the company had the requisite intent, whether collectively through its employees or "even just one individual making

decisions about what to do." *Id*., Ex. 12 at 6. This is also consistent with Professor Fletcher's treatise, and with the precedent discussed above. 3 William M. Fletcher, *Fletcher Cyclopedia of Corporations* § 790.

The prosecutor later told the grand jury that the knowing and willful acts of a single PG&E employee could be imputed to the company. *Id.*, Ex. 13 at 12. The instructions were unremarkable, and none suggested that the grand jury should do what PG&E threatens that it might have done: conflate knowing with negligent culpability, convict a company based on the aggregation of innocent employee conduct, or use collective knowledge "to aggregate innocent pieces of information," PG&E Mot. at 10. PG&E cites an unpublished Nevada district court case, *Ginena v. Alaska Airlines, Inc.*, No. 04-CV-01304 MMD-EWH, 2013 WL 3155306 (D. Nev. June 19, 2013), to warn that "collective knowledge cannot be used to conflate knowing culpability with negligent culpability" (PG&E Motion at 10), but the prosecutor here never suggested that the grand jury should do this, and was clear about the standard of mens rea that the charges required.[1] Valco Decl., Ex. 10 at 11-12.

PG&E also accuses the prosecutor of telling the grand jury that the knowing and willful standard is a "rather easy standard to meet." This accusation is wrong, apparently based on a misreading of the transcript, and PG&E should retract it. PG&E Mot. at 10. The prosecutor actually told the grand jury the opposite: that proving knowing and willful conduct was "difficult" and "a high standard." Valco Decl., Ex. 12 at 5. The prosecutor, in contrast, told the grand jury that respondeat superior liability was a rather easy standard to meet because it only required proof that the employee acted within the scope of his employment and for the principal's benefit. Valco Decl., Ex. 10 at 14-15.

The Court should hold that the government did not incorrectly instruct the grand jury on the definition of willfulness or the collective corporate knowledge doctrine. The questions of whether the facts support a collective corporate knowledge instruction, and of what form such an instruction should take, are best reserved for trial, rather than through speculation about how the grand jury interpreted the prosecutor's instructions. *See, e.g., Bank of New England*, 821 F.2d at 856 ("Since the Bank had the

---

[1] Moreover, the district court in *Ginena* was predicting how the Nevada Supreme Court might apply state law in a matter of first impression; it was not applying federal law. 2013 WL 3155306 at *8 ("[t]he court predicts that the Nevada Supreme Court would not adopt *Bank of New England*'s collective knowledge doctrine in the manner Plaintiffs urge.").

1  compartmentalized structure common to all large corporations, the court's collective knowledge
2  instruction was not only proper but necessary.").

### C. The Prosecutor's Willfulness Instructions Were Not Prejudicial

The prosecutor's willfulness instructions do not raise a grave doubt, under the Supreme Court's test, that the grand jury's vote to indict PG&E was free from any violation that substantially influenced its decision. *Bank of Nova Scotia*, 487 U.S. at 256. The prosecutor repeatedly instructed the grand jury that the charged regulatory violations required knowing and willful conduct, and defined willfulness according to Supreme Court precedent that PG&E does not challenge. Valco Decl., Exs. 10 at 11, 12 at 5. The prosecutor's collective knowledge instructions did not suggest that the grand jury could find corporate willfulness based on innocent or negligent employee conduct. Valco Decl., Exs. 11 at 8, 12 at 6, 13 at 11. Indeed, the prosecutor's respondeat superior instruction informed the grand jury that it could impute a single employee's knowing and willful violation to the employer, rather than any lower mens rea standard. Valco Decl., Ex. 13 at 12.

PG&E's allegation of prejudice is based on speculation that the grand jury could not have found willful misconduct because no individual defendants were indicted. PG&E Motion at 12. This claim falls far short of the Supreme Court's threshold for prejudicial grand jury abuse, and does not compare to the types of misconduct on which the district courts in *Stevens* and *Peralta* based their dismissals. In both of those cases, the prosecutors mis-instructed the grand jury on a central issue in response to grand juror questions suggesting that the issue was central to the question of whether to indict. *Stevens*, 771 F. Supp. 2d at 564-65; *Peralta*, 763 F. Supp. at 22. In *Peralta,* the district court also found that a government witness had misrepresented the facts. *Peralta*, 763 F. Supp. at 22. The collective corporate knowledge doctrine is not "unlawful," as PG&E contends, given Judge Fletcher's recognition that "the cumulative knowledge of several agents can be imputed to the corporation." PG&E does not suggest that the grand jury could not have found PG&E's knowing and willful violation of the Pipeline Safety Act regulations, based on the evidence that it heard. 3 William M. Fletcher, *Fletcher Cyclopedia Corporations* § 790 (2010).

The Court should find that PG&E has failed to show prejudice.

1  **II. PG&E'S CLAIM THAT THE GOVERNMENT'S ALTERNATIVE FINES ACT INSTRUCTION ABUSED THE GRAND JURY IS CONTRARY TO THE LAW OF THE CASE AND FRIVOLOUS**

This Court held in its Order on PG&E's motion for grand jury transcripts relating to the Alternative Fines Act that it does not "make sense" to dismiss an indictment based on incorrect fine allegations, because "the petit jury will ultimately need to find facts in support of such a fine, and since clearly some portion of the $565 million figure is based on pecuniary losses, PG&E will suffer no prejudice from the grand jury's reliance on this estimate." Order of 6/29/15 at 21. The government's $565 million figure, the Court noted, was based on PG&E's SEC filings concerning its payments to claimants for the San Bruno explosion. *Id*.

Despite this holding, PG&E again argues that the Alternative Fines Act allegation should be dismissed for grand jury abuse. The Court should reject the argument as barred by the law of this case. *See Holland v. City of San Francisco*, 91 Fed. R. Evid. Serv. 173, *1 (N.D. Cal. Apr. 16, 2013) (rejecting a re-urged argument as contrary to the law of the case). Even if the Court were to reconsider PG&E's position, it should not alter its holding. The loss figure before the grand jury was not arbitrary or based on personal opinion, given that PG&E had reported it to the SEC. And as the Court noted before, a petit jury would have to find facts supporting any fine imposed as a result of PG&E's conviction. To suggest, as PG&E does, that the prosecutor's use of the phrase "the amount of gain or loss that we think is appropriate" means that the grand jury was influenced by the prosecutor's personal opinion is frivolous. PG&E already knew the factual basis for the loss figure that the grand jury found, and referred to it in its previous motion for grand jury discovery. PG&E Mot. at 13-14; Order of 6/29/15 at 20.

PG&E's inability to find legal authority supporting its position that the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), supports dismissal of the Alternative Fines Act allegation is unsurprising. PG&E Mot. at 14 ("This seems to be a matter of first impression."). Whereas *Apprendi* addressed a defendant's right to have a jury find every element of the charged crime beyond a reasonable doubt, the grand jury's function is merely to determine probable cause. Once the grand jury has found probable cause to allege a fine under the Alternative Fines Act, *Apprendi* guarantees that the petit jury must find facts to support the fine beyond a reasonable doubt. *Southern Union Co.v. United*

*States*, 132 S. Ct. 2344, 2357 (2012). If anything, *Apprendi*'s emphasis on the petit jury's function highlights this Court's previous ruling: PG&E cannot show prejudice from a grand jury's fine allegation. Order of 6/29/15 at 21.

## CONCLUSION

The Court should deny PG&E's motion to dismiss for alleged grand jury abuse.

DATED: September 21, 2015

Respectfully submitted,

BRIAN J. STRETCH
Acting United States Attorney


/s/ Owen Martikan
OWEN P. MARTIKAN
Assistant United States Attorney