1  BRIAN J. STRETCH (CABN 163973)
   Acting United States Attorney
2
   DAVID R. CALLAWAY (CABN 121782)
3  Chief, Criminal Division

4  HALLIE MITCHELL HOFFMAN (CABN 210020)
   OWEN P. MARTIKAN (CABN 177104)
5  HARTLEY M. K. WEST (CABN 191609)
   JEFF SCHENK (CABN 234355)
6  Assistant United States Attorneys

7       450 Golden Gate Avenue, Box 36055
        San Francisco, California 94102-3495
8       Telephone: (415) 436-7129
        Fax: (415) 436-7234
9       hallie.hoffman@usdoj.gov
        owen.martikan@usdoj.gov
10      hartley.west@usdoj.gov
        jeffrey.b.schenk@usdoj.gov
11
   Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 14-00175 TEH |
| Plaintiff, | UNITED STATES' RESPONSE TO PG&E'S MOTION FOR A BILL OF PARTICULARS |
| v. | |
| PACIFIC GAS AND ELECTRIC COMPANY, | |
| Defendant. | |

**TABLE OF CONTENTS**

I.  INTRODUCTION ...................................................................................................................1
II. SUMMARY OF RELEVANT FACTS .................................................................................1
    A.    The Indictments ............................................................................................................1
    B.    Discovery ......................................................................................................................1
    C.    The Court's Order Upholding the Sufficiency of the Indictment ..................................2
III. SUMMARY OF APPLICABLE LAW ..................................................................................3
IV. ARGUMENT ...........................................................................................................................5
    A.    The Law of the Case Doctrine Bars This Motion .........................................................5
    B.    PG&E's Specific Requests Should Be Denied ..............................................................6
        1.    Count One: Details of the Who, What, and How of PG&E's Obstruction Are Identified in the Superseding Indictment and Have Been Provided in Discovery ..............................................................................6
        2.    Counts 2-3 and 6-23: The Specific Segments Are Not Required for Counts 2-3 and the Government Will Provide Them for Counts 6-23 ...................8
        3.    Counts 15-23: The Allegations Amply Inform PG&E of the Government's Factual Theory ..............................................................................8
        4.    The AFA: The Government's Factual Theory Is Apparent and No Bill of Particulars Is Appropriate ..................................................................................10
V. CONCLUSION ......................................................................................................................11

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Cooper v. United States*, 282 F.2d 527 (9th Cir. 1960) ............................................................... 9

*Rose v. United States*, 149 F.2d 755 (9th Cir. 1945) ................................................................... 9

*Russell v. United States*, 369 U.S. 749 (1962) ............................................................................ 5

*United States v. Addonizio*, 451 F.2d 49 (3d Cir. 1972) ............................................................. 5

*United States v. Ayers*, 924 F.2d 1468 (9th Cir. 1991) ............................................................... 4

*United States v. BP Products North America Inc.*, 610 F. Supp. 2d 655 (S.D. Tex. 2009) ...... 13

*United States v. Carona*, 2008 WL 1970199 (C.D. Cal. May 2, 2008) ...................................... 9

*United States v. Chen*, 2006 WL 3898177 (N.D. Cal. Nov. 9, 2006) .......................................... 6

*United States v. Diaz*, 2006 WL 1833081 (N.D. Cal. June 30, 2006) ....................... 5, 9, 11, 12

*United States v. DiCesare*, 765 F.2d 890 (9th Cir. 1985) ........................................................... 9

*United States v. Drebin*, 557 F.2d 1316 (9th Cir. 1977) ............................................................. 5

*United States v. Feil*, 2010 WL 1525263 (N.D. Cal. April 15, 2010) ......................................... 6

*United States v. Giese*, 597 F.2d 1170 (9th Cir. 1979) ..................................................... 7, 9, 11

*United States v. Haldeman*, 559 F.2d 31 (D.C. Cir. 1976) ......................................................... 5

*United States v. Jain,* 2008 WL 3289945 (N.D. Cal. Aug. 6, 2008) ........................................... 6

*United States v. Jingles*, 702 F.3d 494 (9th Cir. 2012) ............................................................... 7

*United States v. Johnson*, 804 F.2d 1078 (9th Cir. 1986) ........................................................... 4

*United States v. Lazarenko*, 564 F.3d 1026 (9th Cir. 2009) ....................................................... 4

*United States v. Linder*, 2012 WL 3264924 (N.D. Ill. Aug. 9, 2012) ......................................... 9

*United States v. Long*, 706 F.2d 1044 (9th Cir. 1983) ................................................................ 4

*United States v. Manetti*, 323 F. Supp. 683 (D. Del. 1971) ........................................................ 5

*United States v. Mejia*, 448 F.3d 436 (D.C. Cir. 2006) .............................................................. 4

*United States v. Mitchell*, 744 F.2d 701 (9th Cir. 1984) ............................................................. 4

*United States v. Murray*, 2013 WL 183970 (N.D. Cal. Jan. 17, 2013) ....................................... 6

*United States v. Nguyen*, 2010 WL 374967 (C.D. Cal. Jan. 25, 2010) ....................................... 9

*United States v. Pacific Gas and Electric Company (PG&E)*, 2014 WL 4954040 (N.D. Cal. Sept. 29, 2014) ................................................................................................... *passim*

*United States v. Ryland,* 806 F.2d at 942 (9th Cir. 1986) .................................................................. 9

*United States v. Trumpower*, 546 F. Supp. 2d 849 (E.D. Cal. 2008) ................................................. 6

*United States v. Williams*, 2009 WL 2084798 (N.D. Cal. July 13, 2009) ........................................ 6

*United States v. Wong*, 2007 WL 404807 (N.D. Cal. Feb. 2, 2007) .................................................. 6

**FEDERAL STATUTES**

18 U.S.C. § 1505 .................................................................................................................................. 1

28 U.S.C. § 1732 .................................................................................................................................. 4

49 U.S.C. § 60123 ........................................................................................................................... 1, 8

**FEDERAL RULES**

Fed. R. Crim. P. 29 .............................................................................................................................. 8

Fed. R. Crim. P. 7(c)(1) ....................................................................................................................... 3

**FEDERAL REGULATIONS**

49 C.F.R. § 192.917(b) ........................................................................................................................ 8

49 C.F.R. § 192.917(e) ........................................................................................................................ 6

49 C.F.R. § 192.917(e)(3) .................................................................................................................... 9

49 C.F.R. § 192.917(e)(4) .................................................................................................................... 9

C.F.R. § 517(a) ..................................................................................................................................... 1

## I. INTRODUCTION

This Court has already upheld the sufficiency of every count in the superseding indictment, as well as the alternative fine allegation. *United States v. Pacific Gas and Electric Company (PG&E)*, 2014 WL 4954040, *5-7 (N.D. Cal. Sept. 29, 2014); Clerk's Record (CR) 43. Defendant PG&E seeks a redo through its Motion for a Bill of Particulars. Because the superseding indictment provides enough detail for PG&E to prepare its defense, the Court should deny the motion. The government nevertheless attaches to this response a delineation of the pipeline segments applicable to Counts 15-23.

## II. SUMMARY OF RELEVANT FACTS

### A. The Indictments

On April 1, 2014, a grand jury sitting in the Northern District of California returned a 12-count indictment charging PG&E with willful violations of the Natural Gas Pipeline Safety Act (PSA), 49 U.S.C. § 60123, and several regulations under the Minimum Federal Safety Standards: 49 C.F.R. § 192.709(a); § 192.917(a), (b), (e)(3), and (e)(4); and § 192.919. CR 1. On July 30, 2014, the grand jury returned a superseding indictment adding one charge of obstructing the National Transportation Safety Board (NTSB) investigation, in violation of 18 U.S.C. § 1505, and several additional PSA charges relating to the above regulations as well as 49 C.F.R. § 517(a). CR 22 (hereafter "SI").

The superseding indictment contains a total of seventy-six paragraphs of allegations, including sixty introductory paragraphs summarizing the alleged conduct. These introductory allegations contain specific allegations describing the PG&E pipeline explosion in San Bruno on September 9, 2010; the pertinent federal pipeline safety regulations, including detailed descriptions of PG&E's duty to identify, assess, and prioritize threats and to create and maintain records; the ways in which PG&E failed to comply with these regulatory duties; the NTSB investigation following the San Bruno explosion; and PG&E's obstruction of that investigation by intentionally misrepresenting its risk management practices. The twenty-eight charges incorporate the relevant introductory allegations.

### B. Discovery

On April 25, 2014, the United States began producing discovery. *See* Declaration of AUSA Hartley M. K. West ("West Decl.") ¶ 2. To date, the United States has produced approximately 1,022,350 pages of discovery. *Id*. Wherever possible, the United States has processed this information

1  using optical character recognition techniques that allow the discovery to be electronically searched and
2  sought to ensure that records are produced in a manner consistent with the discovery-processing
3  technology used by the defense. *Id*.

4  Moreover, the United States has provided a discovery guide that categorizes and organizes the
5  discovery. *See* West Decl. ¶ 3, Ex. 1. The latest discovery guide encompassed 74 pages and 1389
6  separate entries detailing the discovery that has been produced. *Id*.

**C.  The Court's Order Upholding the Sufficiency of the Indictment**

In an eight-page order, this Court held that the superseding indictment "sufficiently alleges all charges, as well as the basis for any penalty under the Alternative Fines Act" (AFA), denying PG&E's Motion to Strike Inappropriate Allegations. CR 33, 43; *PG&E*, 2014 WL 4954040, *5-7.

As it does here, PG&E argued in its Motion to Strike that the obstruction and PSA charges fail "to facilitate the proper preparation of a defense." CR 33. The Court found this argument "unconvincing," noting that "[o]ver the course of sixteen pages, the Indictment goes into great detail about PG&E's obligations and alleged failure to properly monitor and maintain its pipeline, including the segment that ruptured in San Bruno, as well as PG&E's obstruction of the subsequent investigation." *PG&E*, 2014 WL 4954040, *5. "These details comprise the 'essential facts' underlying the charges brought by the Government. No additional facts are needed for PG&E to respond to the PSA and obstruction charges." *Id.* The Court continued: "PG&E does not have a right to know exactly how the Government will prove its case." *Id.* The Court concluded that the superseding indictment "fairly informs PG&E of the obstruction and PSA charges against it by sufficiently alleging all of the essential elements of those offenses." *Id.*

The Court also rejected PG&E's challenge to the sufficiency of the AFA allegation in Paragraph 76. *Id.* at *6. Just as it does here, PG&E had argued that the AFA allegation "is legally insufficient because it: (1) fails to allege the essential facts justifying an alternative fine; (2) does not provide a basis for the calculation of the requested fine amount; and (3) does not provide a proximate causal connection between the charges in the Indictment and the damages alleged." *Id.* The Court found "that the essential facts are sufficiently alleged, the basis for the calculation is easily inferred, and there is no proximate cause requirement at the Indictment stage." *Id.* "Although the essential facts relating to the

U.S. RESPONSE TO PG&E'S MTN. FOR A BILL OF PARTICULARS
CR 14-00175 TEH                      2

1 AFA allegation are scattered among the earlier sections of the Indictment, they are present, and provide
2 sufficient notice to PG&E of the nature of the allegation." *Id.* The Court then reviewed the superseding
3 indictment's allegations "explain[ing] that the San Bruno explosion caused a fire resulting in the death
4 of eight people and the injury of fifty-eight others, as well as causing damage to 108 homes, thirty-eight
5 of which were completely destroyed." *Id.* It also noted that the superseding indictment's gross gains
6 figure "was apparently taken from PG&E's own submissions to the California Public Utilities
7 Commission as the amount the company plans to spend to bring the pipeline system into compliance
8 with federal regulations." *Id.* at *7. Finally, the Court rejected PG&E's "attempts to create a
9 requirement that AFA allegations explicitly allege proximate cause." *Id.*

### III. SUMMARY OF APPLICABLE LAW

An indictment should "be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "An indictment is sufficient if it: (1) contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend; and (2) enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Lazarenko*, 564 F.3d 1026, 1033 (9th Cir. 2009) (internal quotations omitted). It is generally sufficient for the indictment to set forth the charged offense in the words of the statute itself. *United States v. Johnson*, 804 F.2d 1078, 1084 (9th Cir. 1986).

A bill of particulars "is designed to apprise the defendant of the specific charges being presented to minimize danger of surprise at trial, to aid in preparation and to protect against double jeopardy." *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983). "Where an indictment is sufficient, the court is within its discretion in denying a request for a bill of particulars." *United States v. Ayers*, 924 F.2d 1468, 1484 (9th Cir. 1991); *See also Long*, 706 F.2d at 1054 ("In determining if a bill of particulars should be ordered in a specific case, a court should consider whether the defendant has been advised adequately of the charges through the indictment and all other disclosures made by the government."); *United States v. Mitchell*, 744 F.2d 701, 705 (9th Cir. 1984) (bill of particulars unnecessary if indictment provides "sufficient details" and "if the government provides full discovery"). *See also United States v. Mejia*, 448 F.3d 436, 446 (D.C. Cir. 2006) (bill of particulars properly denied where information sought was contained in discovery such that "if the defendants felt ambushed, it was not because the

government was lying in wait, but because the defendants were not looking").

"[E]vidence and legal theories are not proper subjects of bills of particulars but . . . the government's theory of the facts of a case is a proper subject of such bills." *United States v. Diaz*, 2006 WL 1833081, *6 (N.D. Cal. June 30, 2006) (examining 9th Circuit cases). The United States is not required to "weave the information at its command into the warp of a fully integrated trial theory for the benefit of the defendants." *United States v. Addonizio*, 451 F.2d 49, 64 (3d Cir. 1972).

Although addressing double jeopardy concerns is one of the traditionally stated purposes of a bill of particulars, the threat of double jeopardy has been substantially reduced by statute (28 U.S.C. § 1732), and by case law giving defendants recourse to the entire trial record should they ever have to plead former jeopardy. *See, e.g., Russell v. United States*, 369 U.S. 749, 764 (1962); *United States v. Haldeman*, 559 F.2d 31, 126 (D.C. Cir. 1976).

A bill of particulars may not be used "to compel the government to describe in detail the manner in which the crime was committed, thereby forcing the prosecution to fix irrevocably the perimeters of its case in advance of trial." *United States v. Manetti*, 323 F. Supp. 683, 696 (D. Del. 1971). The government is entitled to continue to gather evidence up to and even during trial. *See United States v. Drebin*, 557 F.2d 1316, 1325 (9th Cir. 1977) (no error in district court's admission of additional evidence not specified in indictment or bill of particulars where the evidence was discovered and produced to the defense shortly before trial). As the United States prepares for trial, additional information may come to light that will lead to the identification of previously unknown or unnamed witnesses and co-conspirators.

The cases cited by PG&E in which district courts have ordered bills of particulars generally fall into two categories: First are cases charging a multitude of defendants in broad, far-ranging conspiracies with little detail given as to each defendant's role in the conspiracy. *See, e.g., United States v. Wong*, 2007 WL 404807 at *1 (N.D. Cal. Feb. 2, 2007) (16 defendants charge in over 30 counts related to marijuana cultivation and distribution conspiracies); *United States v. Chen*, 2006 WL 3898177 at *1 (N.D. Cal. Nov. 9, 2006) (same). Second are cases where the indictment did not clearly specify an essential predicate to the charged offense. *See, e.g., United States v. Feil*, 2010 WL 1525263 at *3-4 (N.D. Cal. April 15, 2010) (failure of tax indictment to sufficiently identify method of tax deficiency);

*United States v. Trumpower*, 546 F. Supp. 2d 849, 854 (E.D. Cal. 2008) (failure of money laundering indictment to specify the underlying crime from which funds were laundered).

Here by contrast, the superseding indictment charges a single corporate entity with clearly defined crimes, accompanied by a detailed explanation of the manner in which PG&E committed them. Other courts have denied requests for bills of particulars like those made in this case. *United States v. Jain* denied the defendant's requested bill of particulars after concluding that his request for the government to particularize "each and every shipment of a counterfeit and to show who received it" amounted to a "step by step, item by item description of the information the government has about [the defendant's] activities." 2008 WL 3289945, *1 (N.D. Cal. Aug. 6, 2008); *see also United States v. Murray*, 2013 WL 183970, *4 (N.D. Cal. Jan. 17, 2013) (denying bill of particulars concerning loss calculation); *United States v. Williams*, 2009 WL 2084798, *2-3 (N.D. Cal. July 13, 2009) (denying bill of particulars requesting nature of fraudulent scheme, identity of victims, nature of harm, and amount of loss).

"[D]enial of a motion for a bill of particulars is within the discretion of the District Court; its decision will not be disturbed absent an abuse of this discretion." *United States v. Giese*, 597 F.2d 1170, 1180 (9th Cir. 1979).

## IV. ARGUMENT

### A. The Law of the Case Doctrine Bars This Motion

The "law of the case" doctrine generally precludes a court "from reexamining an issue previously decided by the same court, or a higher court, in the same case. For the doctrine to apply, the issue in question must have been decided explicitly or by necessary implication in [the] previous disposition." *United States v. Jingles*, 702 F.3d 494, 499-500 (9th Cir. 2012) (internal quotation marks and citations omitted).

This court already decided that the allegations supporting all of the counts, as well as the sentencing allegation, are sufficient. Because the allegations have been deemed sufficient, no bill of particulars is necessary or appropriate.

/ / /

/ / /

## B. PG&E's Specific Requests Should Be Denied

### 1. Count One: Details of the Who, What, and How of PG&E's Obstruction Are Identified in the Superseding Indictment and Have Been Provided in Discovery

PG&E contends that a bill of particulars is needed to clarify "(a) which . . . acts obstructed or endeavored to obstruct the NTSB investigation; (b) how such acts or statements were material to the NTSB investigation and thereby obstructed that investigation; (c) who undertook this conduct with the requisite 'corrupt' intent and what that 'corrupt' actor's intent actually was." Mtn. at 4.

The superseding indictment has well informed PG&E of the government's theory on the obstruction charge. The NTSB began investigating PG&E immediately following the San Bruno explosion on September 9, 2010, releasing a report approximately a year later. SI ¶ 54. As part of this investigation, the NTSB issued a series of data requests to PG&E. SI ¶ 56. In responding to these requests, on February 22, 2011, PG&E sent the NTSB a document known as Risk Management Instruction (RMI)-06 and cover sheet, stating that PG&E considered a pipeline manufacturing threat to be unstable only if the pressure on the line exceeded the 5-year maximum operating pressure (MOP) by 10%, and that it had adopted this policy in March 2008. SI ¶¶ 38, 57. On April 6, 2011, however, PG&E sent the NTSB a letter advising that this 10% version of RMI-06 was an unapproved draft, and attaching a different version. SI ¶ 59.

In fact, since 2009, PG&E had been following the practice described in the 10% version of RMI-06 – in direct contravention of federal pipeline regulations (49 C.F.R. § 192.917(e)) and guidance from the U.S. Department of Transportation, Pipeline and Hazardous Materials Safety Administration (PHMSA) regarding these regulations. SI ¶¶ 38, 58. The consequence of this practice was that PG&E did not properly assess many of its oldest transmission lines in high population areas, including the line that exploded in San Bruno. SI ¶¶ 5, 58. The superseding indictment alleges that "PG&E did not disclose that, from in or about 2009 through in or about April 2011, its Integrity Management group followed the practice set forth in the 10% Version by only considering manufacturing threats active and high-risk if the pressure exceeded the MOP by 10%" and "that PG&E knew the 10% Version was in violation of" federal regulations and agency guidance. SI ¶ 60. All of these allegations are expressly incorporated in the obstruction count. SI ¶ 61.

U.S. RESPONSE TO PG&E'S MTN. FOR A BILL OF PARTICULARS
CR 14-00175 TEH                    6

This is not a case where the indictment alleges only generalities. The superseding indictment spells out that PG&E knowingly and falsely represented to the NTSB, as part of the San Bruno explosion investigation, that it had complied with federal regulations and PHMSA guidance; that it intentionally mislead the NTSB by stating that its policy of ignoring pressure exceedances on pipelines in highly populated areas was an unapproved draft when it actually had been PG&E's practice for two years; that it did nothing to correct its intentional misrepresentation for the duration of the investigation; and that its noncompliance with the regulations and guidance resulted in PG&E not properly testing the pipeline that exploded in San Bruno. These specific allegations distinguish this case from the three out-of-district decisions on which PG&E relies. Mtn. at 4-5 (citing *United States v. Nguyen*, 2010 WL 374967 (C.D. Cal. Jan. 25, 2010); *United States v. Carona*, 2008 WL 1970199 (C.D. Cal. May 2, 2008); *United States v. Linder*, 2012 WL 3264924 (N.D. Ill. Aug. 9, 2012).

The law requires no more. PG&E is not entitled to an outline of the evidence that the United States will use to prove its case. *See Ryland*, 806 F.2d at 942 ("[a] defendant is not entitled to know all the evidence the government intends to produce"); *United States v. DiCesare*, 765 F.2d 890, 897-98 (9th Cir. 1985) (bill of particulars cannot be used to discover identities of co-conspirators, exact times of events or overt acts); *Cooper v. United States*, 282 F.2d 527, 532 (9th Cir. 1960) (bill of particulars cannot be used to discover identities of government witnesses).

Nor is it entitled to the government's legal theory. *See Rose v. United* States, 149 F.2d 755, 758 (9th Cir. 1945) (bill of particulars' purpose not to secure not legal theories); *see Diaz*, 2006 WL 1833081, *6 (examining 9th Circuit cases and reaching "the conclusion that evidence and legal theories are not proper subjects of bills of particulars but that the government's theory of the facts of a case is a proper subject of such bills").

Moreover, the United States has provided complete discovery in this case, including reports of interviews, correspondence, notes, and presentations, that answer all of PG&E's who, what, and how questions. *See Giese*, 597 F.2d at 1181 ("Appellant's request for the 'when, where and how' of every act in furtherance of the conspiracy was equivalent to a request for complete discovery of the government's evidence, which is not a purpose of the bill of particulars."). Any assertion by PG&E that it cannot find these materials among the discovery fails to take into account the United States' 74-page

1 discovery guide that details the location of the vast majority of these documents. *See* West Decl., Ex. 1.

2 Finally, PG&E challenges the materiality and corrupt influence elements of Count One. PG&E
3 recognizes that its challenge to the materiality allegation is premature. Mtn. to Dismiss Count One, CR
4 125 at 1 ("The Court has instructed that we save that challenge for trial."). Also premature is its
5 argument that the evidence of materiality and corrupt influence is insufficient. Mtn. at 5-7. A bill of
6 particulars is only appropriate if the indictment is insufficiently specific. The United States is sure that
7 the Court will fairly assess the evidence after the government's case-in-chief if PG&E files a motion
8 under Fed. R. Crim. P. 29.

2. <u>Counts 2-3 and 6-23: The Specific Segments Are Not Required for Counts 2-3 and the Government Will Provide Them for Counts 6-23</u>

PG&E seeks the specific segments at issue in Counts 2-3 and 6-23.

Counts 2 and 3 allege that PG&E violated 49 U.S.C. § 60123 by knowingly and willfully violating federal pipeline safety regulation 49 C.F.R. § 192.917(b), specifically by "fail[ing] to gather and integrate existing data and information that could be relevant to identifying and evaluating all potential threats on covered segments of" Line 132 (Count 2) and Line 109 (Count 3). SI ¶ 63. Regulation 192.917(b) requires that PG&E "must gather and integrate existing data and information on the entire pipeline that could be relevant to the covered segment." Thus, Counts 2 and 3 allege crimes with respect to "entire pipeline[s]." The superseding indictment's reference to a particular pipeline for each count provides full notice of the charged offense.

Counts 6 through 23 relate to particular segments of pipelines. The United States attaches a list of these segments as Exhibit 2 to the accompanying declaration.

3. <u>Counts 15-23: The Allegations Amply Inform PG&E of the Government's Factual Theory</u>

PG&E seeks a bill of particulars specifying "the government's theory" as to Counts 15 through 23. Mtn. at 8. Counts 15 through 18 allege a willful violation of 49 C.F.R. § 192.917(e)(3)'s duty to prioritize certain segments of pipeline with manufacturing or construction defects as high risk. Counts 19 through 23 allege a willful violation of 49 C.F.R. § 192.917(e)(4)'s duty to prioritize segments of pipeline with specific manufacturing defects on particular types of pipe as high risk. PG&E complains

that the government has not revealed its "theory as to what it would *mean* to 'prioritize' a segment as 'high risk' or how the defendant knowingly and willfully failed to do so." *Id.*

PG&E is not entitled to the government's legal theory or a delineation of the evidence the government will prove these counts. *See PG&E*, 2014 WL 4954040, \*5; *United States v. Diaz*, 2006 WL 1833081, \*6. And the superseding indictment contains ample information clarifying the government's factual theory.

The superseding indictment alleges that "PG&E knew that thousands of miles of its gas transmission pipelines had never been subjected to" a test to assess leaks or ruptures, known as a "Subpart J pressure test," and that "many of these pipelines had a known or potential manufacturing threat due to their age, manufacturer, and/or history." SI ¶¶ 14(1), 33. Subpart J pressure tests are expensive and inconvenient, as they involve temporarily shutting down the pipeline. SI ¶ 14(1)(ii). To avoid conducting these pressure tests, PG&E used "planned pressure increases" (PPIs)– intentionally raising the pressure in old, highly-pressurized pipelines in high-population areas to their maximum allowable operating pressures (MAOP) for two hours. SI ¶ 34. "In so doing, PG&E at times exceeded the lines' 5-year MOPs and/or MAOPs. PG&E failed to review the history of the pipelines or verify the accuracy of its data prior to executing the PPIs to determine whether intentionally increasing the pressure on these older pipelines would affect the integrity of the pipeline." *Id.* PG&E only stopped these planned pressure increases after the San Bruno explosion. *Id.*

The superseding indictment further alleges that "PG&E was aware that hundreds of covered segments totaling over 80 miles of gas transmission pipelines had never been subject to a Subpart J pressure test and had manufacturing threats that could be considered unstable due to planned and/or unplanned pressure increases that exceeded the pipelines' respective 5-year MOPs." SI ¶ 36. "These covered segments were found on numerous gas transmission pipelines operated by PG&E, including, but not limited to, segments on Lines 132, 153, 109, 191-1 and DFM 1816-01." *Id.* "For all of these covered segments, despite knowledge of the requirements of Section 192.917(e), PG&E chose not to reprioritize these pipelines as high risk and/or properly assess the integrity of each segment to determine the risk of failure." SI ¶ 37. Instead, PG&E used an external corrosion test that it knew was not capable of assessing unstable manufacturing threats. SI ¶¶ 14(3)(i), 37.

"To avoid having to prioritize these pipelines as 'high risk' and properly assess the pipelines for the known threats, PG&E chose only to consider a manufacturing threat unstable if the pressure on the pipeline exceeded the 5-year MOP by 10% or more," as documented in the RMI-06 that it disclosed to the NTSB and then withdrew with the false representation that such a policy was never adopted. SI ¶ 38. PG&E knew that PHMSA had provided that "any pressure increase, regardless of amount," destabilized a manufacturing threat and required prioritization of a pipeline as high risk and its proper assessment. *Id.*

These allegations adequately inform PG&E of the nature of the charges against it with sufficient precision to enable it to prepare for trial. The details PG&E seeks regarding how it should have designated its prioritization – a document? a label? (Mtn. at 9) – do not warrant a bill of particulars. PG&E's question as to the "specific time period" of the offense (Mtn. at 9) is answered in the counts themselves: January 22, 2010. SI ¶ 71.

### 4. The AFA: The Government's Factual Theory Is Apparent and No Bill of Particulars Is Appropriate

PG&E seeks a bill of particulars as to how the government calculated the gross gains and victim losses in the superseding indictment's alternative fine allegation. Mtn. at 9-10. PG&E has cited no cases requiring a bill of particulars to support an alternative fine, and the United States has found none.

As this Court already found, "the basis for the calculation is easily inferred" from the allegations in the Superseding Indictment. *PG&E*, 2014 WL 4954040, *6. "Although the essential facts relating to the AFA allegation are scattered among the earlier sections of the Indictment, they are present, and provide sufficient notice to PG&E of the nature of the allegation." *Id.* Specifically, Paragraph 5 alleges that PG&E's pipeline exploded in San Bruno, "causing a fire that killed eight people and injured 58 others," and "damag[ing] 108 homes, 38 of which were completely destroyed." SI ¶ 5. The Court also noted that the superseding indictment's gross gains figure "was apparently taken from PG&E's own submissions to the California Public Utilities Commission as the amount the company plans to spend to bring the pipeline system into compliance with federal regulations." *PG&E*, 2014 WL 4954040, *7. Because "this must be a reasonable calculation of the amount saved by PG&E's alleged failure to comply with the PSA as charged in the Indictment" and "avoided costs of compliance can be used to

form the basis of a gross gain for purposes of the AFA, this number is sufficiently supported by the alleged PSA violations." *Id.* (citing *United States v. BP Products North America Inc.*, 610 F. Supp. 2d 655, 695-96 (S.D. Tex. 2009)).

The allegations in the superseding indictment, together with the extensive discovery, provide sufficient details as to the government's factual theory. There is no need for a bill of particulars.

## V. CONCLUSION

The Court should deny PG&E's motion for a bill of particulars, as the Superseding Indictment is sufficiently specific and the discovery full and complete.

Dated: September 21, 2015

Respectfully submitted,

BRIAN J. STRETCH
Acting United States Attorney

/s/

HARTLEY M. K. WEST
Assistant United States Attorney