BRIAN J. STRETCH (CABN 163973)
Acting United States Attorney

DAVID R. CALLAWAY (CABN 121782)
Chief, Criminal Division

HALLIE MITCHELL HOFFMAN (CABN 210020)
OWEN P. MARTIKAN (CABN 177104)
HARTLEY M. K. WEST (CABN 191609)
JEFFREY B. SCHENK (CABN 234355)
Assistant United States Attorneys

MARK ROMLEY (CABN 240655)
Trial Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7129
    Fax: (415) 436-7234
    hallie.hoffman@usdoj.gov
    owen.martikan@usdoj.gov
    hartley.west@usdoj.gov
    mark.romley@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case No. CR 14-00175 TEH |
| Plaintiff, | ) |
| v. | ) THE UNITED STATES' OPPOSITION TO PG&E'S MOTION TO DISMISS COUNTS 2 THROUGH 28 FOR LACK OF FEDERAL JURISDICTION |
| PACIFIC GAS AND ELECTRIC COMPANY, | ) |
| Defendant. | ) Date: October 19, 2015<br>) Time: 10:00 a.m.<br>) Place: Courtroom 2, 17th Floor |

# INTRODUCTION

By this motion, PG&E asks the Court to immunize it and all of its officers and employees from felony criminal liability for knowing and willful violations of Pipeline Safety Act regulations. No fair reading of the Pipeline Safety Act or applicable precedent supports this claim. On the contrary, the Pipeline Safety Act excludes criminal sanctions from its state certification program, and restricts only the Department of Transportation in its civil enforcement of safety standards. Standard principles of reverse preemption support the conclusion that the Department of Justice has the jurisdiction to prosecute federal criminal violations of the Pipeline Safety Act that relate to pipelines subject to state pipeline safety program certifications.

PG&E's complaint that it should not face criminal charges because it paid an "unprecedented" state civil penalty is legally baseless. PG&E Motion ("Mot.") at 1. The California Public Utilities Code expressly provides that California Public Utilities Commission ("CPUC") penalties shall not bar any criminal prosecution against any public utility, or any officer, director, agent, or employee thereof, or the imposition of any other penalty. Cal. Pub. Util. Code § 2105. PG&E is without doubt aware of this statute, given its lengthy involvement with the CPUC following the San Bruno explosion.

The Court should find that the plain language of the Pipeline Safety Act's reverse preemption provision does not bar federal prosecution of federal criminal violations under 49 U.S.C. § 60123(a) ("Section 60123(a)").

# ARGUMENT AND AUTHORITIES

**THE PIPELINE SAFETY ACT'S STATE PIPELINE SAFETY PROGRAM DOES NOT PREEMPT FEDERAL CRIMINAL PROSECUTIONS UNDER SECTION 60123(a)**

**A.   The Relevant Statutory Scheme**

Congress passed the Pipeline Safety Act ("PSA") in 1992 to improve the Secretary of Transportation's regulatory and enforcement authority over pipeline facilities and pipeline safety, which had been governed by the Natural Gas Pipeline Safety Act of 1968. *Olympic Pipe Line Co. v. City of Seattle*, 437 F.3d 872, 877, n.14 (9th Cir. 2006). The PSA's preemptive authority over state or local pipeline safety regulation depends on whether the regulation addresses interstate or intrastate pipelines. *Id*. at 878. The PSA preempts all state or local regulation of interstate pipelines, meaning pipelines that

transport natural gas in interstate or foreign commerce, unless the Secretary of Transportation has entered into an agreement to share regulatory authority with a state regulator under 49 U.S.C. §§ 60106(b) or 60117. *Id*. The PSA allows state or local regulatory authorities to regulate intrastate pipelines – meaning any pipelines that are not interstate pipelines – if the state or local regulatory authority submits an annual certification to the Secretary of Transportation that meets certain requirements set forth in 49 U.S.C. § 60105 ("Section 60105"), and if the state or local guidelines meet or exceed the PSA's minimum standards. 49 U.S.C. § 60104(c).

The CPUC has assumed responsibility for regulating and enforcing a pipeline safety program for intrastate pipelines, and has submitted annual certifications to that effect. *City and County of San Francisco v. U.S. Dept. of Transportation*, 796 F.3d 993, 996 (9th Cir. 2015); Cal. Pub. Util. Code § 955(b).

Section 60105 restricts the Secretary of Transportation's ability to prescribe or enforce safety standards for intrastate pipelines subject to state regulation under the state pipeline safety program, as long as the state continues to certify its compliance with the program. 49 U.S.C. § 60105(a).[1] Section 60105 also specifies what the state certification must contain. 49 U.S.C. § 60105(b). With respect to the enforcement of safety standards, Section 60105 requires certification that the state can legally impose civil penalties and injunctive relief substantially the same as those provided in the PSA's two civil enforcement provisions, 49 U.S.C. §§ 60120 and 60122. 49 U.S.C. § 60105(b)(7). Section 60105 does not require certification that the state has a comparable criminal enforcement scheme. *Id*.

The Section 60105 restrictions on the Secretary of Transportation's enforcement jurisdiction expressly exempt two categories of civil enforcement: (1) regulation of one-call notification systems under 49 U.S.C. § 60114, which allow pipeline operators to learn about excavations or other activity that

---

[1] The provision reads as follows:

> Except as provided in this section and sections 60114 and 60121 of this title, the Secretary of Transportation may not prescribe or enforce safety standards and practices for an intrastate pipeline facility or intrastate pipeline transportation to the extent that the safety standards and practices are regulated by a State authority (including a municipality if the standards and practices apply to intrastate gas pipeline transportation) that submits to the Secretary annually a certification for the facilities and transportation that complies with subsections (b) and (c) of this section.

could threaten the integrity of a pipeline; and (2) intervention in private citizen lawsuits filed under 49 U.S.C. § 60120.  49 U.S.C. § 60105(a).

In 1979, Congress amended the Natural Gas Pipeline Safety Act of 1968 to add the criminal penalties that it later incorporated into the PSA.  Pipeline Safety Act of 1979, Pub. L. No. 96-129, 93 Stat. 989 (1979).  Its stated reason for enacting the criminal penalties was to "give[ ] recognition to those situations that require more onerous sanctions than civil penalties." S. Rep. No. 96-182, at 13 (1979), *as reprinted in* 1979 U.S.C.C.A.N. 1971, 1983.  As currently codified in Section 60123, knowing and willful violations of any regulations promulgated under the PSA's delegation of authority are punishable as Class D felonies.

### B.   The PSA's Plain Language Does Not Support PG&E's Preemption Claim

The question of whether Section 60105(a) preempts federal criminal prosecutions under 49 U.S.C. § 60123 is one of statutory interpretation, for which the primary recourse is the statute's plain language.  See *Ojo v. Farmers Group, Inc.*, 600 F.3d 1205, 1209 (9th Cir. 2010) (en banc) (resorting to the McCarran-Ferguson's plain language to determine its reverse-preemptive effect).  In this case, Section 60105(a) specifies that its reverse-preemptive effect applies to the Secretary of Transportation, not the federal government as a whole, and that it preempts the Secretary of Transportation's ability to prescribe or enforce safety standards and practices for intrastate pipeline facilities or intrastate pipeline transportation.  The Ninth Circuit presumes that Congress means what it says when specifying the reverse-preemptive scope of a federal statute.  *Ojo*, 600 F.3d at 1209.

The Ninth Circuit also presumes that Congress means what it says when specifying the federal agency that is the object of a particular statute.  In *Nijjar v. Holder*, 689 F.3d 1077, 1085 (9th Cir. 2012), the Ninth Circuit held that a statute specifying that the Attorney General had the authority to terminate grants of asylum could not be read as allowing the Secretary of Homeland Security to terminate grants of asylum, even though the Immigration and Naturalization Act allowed either the Attorney General or the Secretary of Homeland Security to grant asylum.  The Ninth Circuit applied the expressio unius est exclusio alterius doctrine to hold that the statute's specification of the Attorney General was meant to exclude other federal agencies.  *Id*. at 1084.  The Ninth Circuit quoted a treatise on statutory construction for the proposition that "[w]here a statute creates and regulates, and prescribes the mode

USA OPP TO MTD RE: FEDERAL JURISDICTION
CR 14-00175 TEH                                                    3

and names the parties granted right to invoke its provisions, that mode must be followed and none other, and such parties only may act." *Id.* at n 36 (quoting 2A Norman J. Singer & J.D. Shambie Singer, Sutherland's Statutes & Statutory Construction § 47:23 (7th ed. 2007)).

The plain language of Section 60105 cannot be read to preempt the Attorney General's ability to prosecute federal criminal violations of the PSA. The statute only specifies regulation and enforcement by the Secretary of Transportation, and nowhere mentions the Attorney General, who, unlike the Secretary of Transportation, has the authority to prosecute crimes. 49 U.S.C. § 60105. Given that the PSA names the Attorney General in other provisions, such as the citizen lawsuit provision at 49 U.S.C. § 60121(a), Congress could have named the Attorney General in Section 60105 if it had intended to remove the Attorney General's authority to prosecute criminal violations under Section 60123.

Further, the state certification requirements at Section 60105(b) do not require states to certify that they have a scheme for prosecuting criminal violations of the PSA. Rather, Section 60105 only requires states to certify that they have statutory authority to impose civil penalties and injunctive relief comparable to that found in 49 U.S.C. §§ 60120 and 60122. 49 U.S.C. § 60105(b)(7). If Congress had intended certifying states to preempt federal criminal enforcement, it would have included comparable language in this provision. Otherwise, Congress would cede federal authority to prosecute crimes with no assurance that states could pursue criminal prosecution of knowing and willful pipeline safety violations. This would be an anomalous result, given that Congress enacted federal criminal penalties in 1979 expressly to "give[ ] recognition to those situations that require more onerous sanctions than civil penalties." S. Rep. No. 96-182, at 13 (1979), *as reprinted in* 1979 U.S.C.C.A.N. 1971, 1983.

The term "enforce," as used in Section 60105, carries a specific meaning under the PSA. The methods by which the Secretary of Transportation may enforce compliance with the PSA are set forth at 49 U.S.C. § 60120, which is titled "Enforcement." This statute specifies only civil means of enforcement, and does not reference criminal penalties except to note that a court may punish a failure to obey an order to comply with a civil subpoena or inspection demand as a criminal contempt. 49 U.S.C. § 60120(b) and (c). Thus, the restriction in Section 60105 on the Secretary of Transportation's enforcement power should be read in conjunction with the statute describing the Secretary of Transportation's enforcement power, which only provides for civil remedies. Indeed, the statute's

reference to a trial for criminal contempt in this context, by specifying that such trials proceed under Fed. R. Crim. P. 42, expresses a preference for federal prosecution of criminal violations. 49 U.S.C. § 60120(b).

The two exceptions to the Section 60105(a) restriction on the Secretary of Transportation's enforcement power — the powers set forth in Sections 60114 and 60121 — support this plain language reading of Section 60105. Both sections refer to civil proceedings: Section 60114 allows the Secretary of Transportation to regulate one-call notification systems and to seek civil sanctions for violations "substantially the same as provided under sections 60120 [Enforcement] and 60122 [Civil Penalties]." 49 U.S.C. § 60114(a)(9). Section 60121 is the PSA's citizen suit provision, which allows the Secretary of Transportation or Attorney General to intervene in citizen lawsuits. 49 U.S.C. § 60121. If Congress had intended Section 60105 to restrict the Attorney General's criminal prosecution authority but to exempt one-call notification systems, then it would have specified the criminal penalty provision for failing to use a one-call notification system, which is set forth in Section 60123(d), along with the civil penalty provision in Section 60114. Otherwise, the statute would preempt criminal but not civil enforcement of the one-call notification rules, which is an absurd result. *See United States v. Thompson*, 728 F.3d 1011, 1018 (9th Cir. 2013) (statutory interpretations that produce absurd results are to be avoided).

PG&E argues that the specific exemption of Section 60114 from reverse preemption under Section 60105 "shows that when Congress intended to preserve the federal government's authority to regulate and enforce a particular provision, it knew how to do so, and said so directly." PG&E Mot. at 9. PG&E makes a similar argument with respect to the exemption for intervention in civil private citizen lawsuits under Section 60121. *Id*. This argument's flaw is that it assumes what PG&E must prove to begin with: that Congress intended Section 60105 to eliminate the federal government's power to prosecute criminal violations of the PSA. This argument also defeats PG&E's position, because if Congress intended Section 60105 to preempt federal criminal prosecutions but to preserve federal criminal prosecutions under Section 60123(d) (for not using a one-call notification system), then Congress would have referenced Section 60123(d) in Section 60105, instead of only referencing the civil penalty provision. But Congress did not, and the only natural reading of Section 60105's

exemption for specific civil actions is that the statute as a whole applies only to civil enforcement. Similarly, Section 60121 refers only to civil actions.

Ninth Circuit precedent strongly disfavors the repeal of federal criminal laws by implication. *United States v. Maes*, 546 F.3d 1066, 1069 (9th Cir. 2008). In this case, PG&E asks the Court to presume that Section 60105's limitation on the Secretary of Transportation's civil enforcement scheme implies a restriction on the Attorney General's authority to prosecute federal crimes. PG&E has cited no legal authority for this sweeping implied repeal of Section 60123. Instead, PG&E relies on the Ninth Circuit's recent decision in *City & County of San Francisco v. U.S. Department of Transportation*, which did not even reach this issue, but held that the Secretary of Transportation's certification of the CPUC was not reviewable under the Administrative Procedures Act, and that the PSA's citizen suit provision did not allow mandamus actions against the Pipeline and Hazardous Materials Safety Administration ("PHMSA"). 796 F.3d at 998, 1001.

The Ninth Circuit discussed Section 60105 in general terms, never discussing whether it preempted federal criminal enforcement under Section 60123. *Id.* at 996. Significantly, however, the Ninth Circuit examined the PSA's statutory structure and particular language to determine the breadth of the citizen suit provision, noting in particular that the term "violation" should be interpreted consistently. *Id.* at 1000. The Ninth Circuit noted that Congress could not have meant for violations under the citizen suit provision to mean something broader than the violations penalized elsewhere in the PSA. *Id.* Similarly, the word "enforce" in Section 60105 should be read consistently with "enforcement" in Section 60120, which refers to civil actions. The cross-references in both of those sections to the civil penalty provision in Section 60122, and the Secretary of Transportation's inability to bring a criminal prosecution, support the conclusion that Section 60105 was intended to restrict the Secretary of Transportation's civil enforcement power, not the Attorney General's power to bring criminal prosecutions.

To counter speculation about why Congress would implement a criminal penalty scheme and then abandon it in favor of a state civil enforcement, PG&E argues that the Secretary of Transportation could simply withdraw certification and assert federal jurisdiction over intrastate pipelines. PG&E Mot. at 10. This approach would amount to throwing the baby out with the bathwater, as the Secretary of

Transportation would be required to assert full regulatory authority over a state's intrastate gas pipelines merely to prosecute a crime that the state had no jurisdiction to pursue. Rather, the Secretary of Transportation's authority to reject certification under Section 60105(f) was meant for states that are not "enforcing satisfactorily compliance with applicable safety standards," not for states that simply do not have a criminal penalty scheme comparable to that in Section 60123.

The California Public Utilities Code does not include a felony provision for knowing and willful violations of pipeline safety regulations. The only felony in the state statutory scheme is for perjury during a CPUC hearing. Cal. Pub. Util. Code § 2114. A public utility that violates any provision of the California Public Utilities Code or fails to comply with a CPUC order is subject to misdemeanor prosecution and a maximum fine of $5,000. Cal. Pub. Util. Code § 2110. Congress enacted the criminal penalty provisions that it later incorporated into the PSA to strengthen the government's ability to pursue violations for which civil penalties were inadequate. S. Rep. No. 96-182, at 13 (1979), *as reprinted in* 1979 U.S.C.C.A.N. 1971, 1983. It could not have intended to silently forfeit those penalties without ensuring that state regulatory authorities had comparable prosecutorial powers.

### C. Other Environmental Statutes Defeat Rather Than Support PG&E's Position

PG&E argues that its position would not be "anomalous" to "persons familiar with regulatory and criminal law enforcement," and refers to various other statutes that provide for state regulations. PG&E Mot. at 11. Not only do those statutes fail to support the weight that PG&E places on them, they expose the weakness in PG&E's position. The OSHA reverse-preemption provision, for example, expressly provides that it preempts the criminal penalty statute, 29 U.S.C. § 666. 29 U.S.C. § 667(e) ("Upon making the determination referred to in the preceding sentence, the provisions of section[ ] . . . 666 of this title, . . . shall not apply"). If anything, this statute shows that where Congress intends state law to preempt a criminal penalty, it does so directly.

Similarly, the Clean Air Act is explicit concerning the federal government's authority to prosecute crimes. 42 U.S.C. § 7413(c). And the Surface Mining Control and Reclamation Act requires that states certify to both a civil and criminal enforcement scheme that meets minimum federal requirements before implementing a plan that has preemptive effect over federal regulations. 30 U.S.C.

§ 1253(a)(2) ("which sanctions shall meet the minimum requirements of this chapter, including civil and criminal actions").

Finally, with respect to the Resource Conservation and Recovery Act — which PG&E cites on page 12 of its motion — the Ninth Circuit has refused to read that statute's provision for state enforcement programs as impliedly limiting federal criminal jurisdiction. *United States v. Elias*, 2689 F.3d 1003, 1010 (9th Cir. 2001). The Ninth Circuit noted in *Elias* that if Congress had intended to impose "a hitherto unknown limitation upon the scope of its laws criminalizing permit violations, its intentions would surely have been manifested" in the statute's language. *Id*. at 1012. With particular relevance to this case, the Ninth Circuit remarked that the state criminal scheme "provide[d] only misdemeanor punishments where federal law prescribes a felony." *Id*. The Court should follow the Ninth Circuit's guidance in *Elias* and conclude that if Congress had meant to forfeit the PSA's criminal penalty scheme in favor of state civil enforcement, it would have made that intention manifest.

### D. The Rule Of Lenity Does Not Apply Here

At the end of its motion, PG&E concedes that "Sections 60105(a) and 60123(a) seem quite clear," but invokes the rule of lenity, which "requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them." *United States v. Santos*, 553 U.S. 507, 514 (2008); PG&E Mot. at 12. The rule of lenity does not apply here, for two reasons: (1) Sections 60105 and 60123 are not ambiguous; and (2) Section 60105 is not a criminal law.

The rule of lenity does not apply in the absence of a "grievous ambiguity" that requires the Court to "guess as to what Congress intended." *United States v. O'Donnell*, 608 F.3d 546, 555 (9th Cir. 2010) (quoting *Huddleston v. United States*, 415 U.S. 814, 831 (1974) (first quote), & *Ladner v. United States*, 358 U.S. 169, 178 (1958) (second quote)). As PG&E notes, Sections 60105 and 60123 are not ambiguous. The former statute sets forth the guidelines for a state pipeline safety program, and the latter statute lists crimes relating to pipeline safety violations. PG&E cannot create an ambiguity by reading into those statutes an implied repeal of federal criminal enforcement authority when the statute's plain language does not support it. *See O'Donnell*, 608 F.3d at 555 (suggesting a conceivable interpretation of a statute does not render it ambiguous).

Moreover, the rule of lenity does not apply to Section 60105 because it is not a criminal statute. The rule of lenity applies only to crimes and penalties. *Bifulco v. United States*, 447 U.S. 381, 387 (1980). Its purpose is to ensure that no one is charged with violating a statute, the reach of which is uncertain. *Santos*, 553 U.S. at 514. Section 60105 does not create a crime, or subject anyone to criminal penalties. It describes a state pipeline safety program that excludes any reference to criminal enforcement. Section 60123, in contrast, describes various crimes, but PG&E does not assert its ambiguity. The Court has no reason to apply the rule of lenity here.

## CONCLUSION

The Court should deny PG&E's motion to dismiss counts 2 through 28 for lack of federal jurisdiction.

DATED: September 21, 2015    Respectfully submitted,

BRIAN J. STRETCH
Acting United States Attorney

/s/

OWEN P. MARTIKAN
Assistant United States Attorney