LATHAM & WATKINS LLP
Steven M. Bauer (Bar No. 135067)
steven.bauer@lw.com
Margaret A. Tough (Bar No. 218056)
margaret.tough@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095

LATHAM & WATKINS LLP
J. Scott Ballenger (*pro hac vice*)
scott.ballenger@lw.com
555 11th Street, NW, Suite 1000
Washington, DC 20004-1304
Telephone: +1.202.637.2200
Facsimile: +1.202.637.2201

CLARENCE, DYER & COHEN LLP
Kate Dyer (Bar No. 171891)
kdyer@clarencedyer.com
899 Ellis Street
San Francisco, California 94109-7807
Telephone: +1.415.749.1800
Facsimile: +1.415.749.1694

Attorneys for Defendant
PACIFIC GAS AND ELECTRIC COMPANY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Defendant. | CASE NO. CR-14-00175-TEH<br><br>**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE ALTERNATIVE FINES ACT SENTENCING ALLEGATIONS**<br><br>**Judge: Hon. Thelton Henderson**<br>**Date: October 19, 2015**<br>**Time: 10:00 A.M.**<br>**Place: Courtroom 2, 17th Floor** |

## TABLE OF CONTENTS

Page

**I. INTRODUCTION** ........ 1

**II. DISCUSSION** ........ 2

A. The Question of Undue Complication or Delay Must Be Decided Before Trial ........ 2

B. The Alternative Fines Act Issues Would Unduly Complicate and Prolong These Proceedings ........ 4

C. Post-*Southern Union*, a Lack of Undue Complication and Delay Must Be Charged in the Superseding Indictment and Submitted to the Jury ........ 7

**III. CONCLUSION** ........ 9

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Almendarez-Torres v. United States*,
523 U.S. 224 (1998) .......... 3

*Apprendi v. New Jersey*,
530 U.S. 466 (2000) .......... 2, 9

*Rangel-Reyes v. United States*,
547 U.S. 1200 (2006) .......... 3

*Southern Union Company v. United States*,
132 S. Ct. 2344 (2012) .......... *passim*

*United States v. Andrews*,
600 F.3d 1167 (9th Cir. 2010) .......... 6, 7

*United States v. BP Products North America*,
610 F. Supp. 2d 655 (S.D. Tex. 2009) .......... 3, 5, 6

*United States v. CITGO Petroleum Corporation*,
908 F. Supp. 2d 812 (S.D. Tex. 2012) .......... 3

*United States v. Gibson*,
409 F.3d 325 (6th Cir. 2005) .......... 3

*United States v. Sanford Ltd.*,
878 F. Supp. 2d 137 (D.D.C. 2012) .......... 3, 4, 5

*United States v. Swor*,
728 F.3d 971 (9th Cir. 2013) .......... 6

## STATUTES

18 U.S.C. § 3571(d) .......... 4, 6, 8

18 U.S.C. § 3623(c)(1) .......... 9

## OTHER AUTHORITIES

1 J. Bishop, Criminal Procedure, § 540 (2d ed. 1972) .......... 8

H.R. Rep. No. 98-906 (1984) .......... 9

## I. INTRODUCTION

The government's opposition to PG&E's motion to dismiss the Alternative Fines Act sentencing allegations seriously misunderstands what that statute and the Constitution require in this context.

The Court cannot delay deciding whether the Alternative Fines Act issues will "unduly complicate or prolong" these proceedings until *after trial*, as the government suggests. After the Supreme Court's decision in *Southern Union Company v. United States*, 132 S. Ct. 2344 (2012), it is now clear that every determination relevant to the imposition of enhanced fines under the Alternative Fines Act must be made *by the jury*, beyond a reasonable doubt. Once the trial is complete, the undue complication and delay will already have happened. The government essentially proposes that the Court defer considering whether the barn door should be closed until after the horses have left. PG&E also is entitled to dismissal of these allegations because the undue complication issue was not charged in the superseding indictment, and that issue must be resolved now.

PG&E's motion demonstrated that trying the Alternative Fines Act allegations will add enormous further complication and length to what will already be a long and complex trial. The Alternative Fines Act requires proof, beyond a reasonable doubt, of the specific pecuniary gain or loss actually and proximately caused by the specific criminal conduct found by the jury. The superseding indictment in this case alleges that PG&E violated four gas pipeline recordkeeping and integrity management regulations on six of its pipelines. But PG&E's vast pipeline network spans thousands of miles. The indictment challenges only a small fraction of PG&E's activities and its safety and regulatory compliance program. Disentangling any specific pecuniary gain that PG&E might be thought to have experienced because of allegedly substandard compliance with any of these four regulations, on these six pipelines, from PG&E's broader activities and profits would be a challenging and speculative accounting venture—made enormously more complicated by the fact that the California Public Utilities Commission considers PG&E's costs when setting the rates it can charge. And even if the government could prove that the San Bruno explosion was caused by one or more of these specific alleged violations, determining the

pecuniary losses resulting from that tragic accident would require hundreds of mini-trials about the economic losses, property damage, and the like for each of the victims.

The government's response to all of that is unclear. The government appears to concede that the law requires proof of a tight causal relationship between the specific criminal conduct proven and specific pecuniary gains and losses. It does not deny or refute PG&E's observations about how challenging it would be to unravel those issues here. Instead, the government appears to contend that most of the necessary evidence will be admitted anyway as part of its case-in-chief, and that it can prove PG&E's gains just by introducing evidence of its overall profits, or of the amounts that PG&E plans to spend to upgrade its entire pipeline network. PG&E already explained why those proposed shortcuts cannot substitute for the careful analysis required by the Alternative Fines Act, and the government offers no real response. The government cannot satisfy its burden of proving specific gains and losses caused by the offenses of conviction, beyond a reasonable doubt, in such a slipshod manner. And even if the government *could* rest its case on such flimsy grounds, the proof that PG&E will be constitutionally entitled to present in rebuttal would massively and unduly complicate and extend this trial.

The Alternative Fines Act allegations must be dismissed.

## II. DISCUSSION

### A. The Question of Undue Complication or Delay Must Be Decided Before Trial

We should be clear on one point up front, because it affects everything else in the analysis. All of the determinations that the Alternative Fines Act establishes as prerequisites to the imposition of enhanced fines must be submitted to the jury, and found by the jury beyond a reasonable doubt. Of course that is not what Congress intended when it wrote the Alternative Fines Act, but intervening Supreme Court authority makes clear that the statute would violate the Sixth Amendment otherwise. Under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Southern Union*, every fact that affects the defendant's maximum exposure to punishment must be treated as an element of the offense. *See* Def.'s Mot. to Dismiss the Alternative Fines Act Sentencing Allegations (Dkt. 126) ("Mot.") at 11-12.[1] The government appears to accept that reality—

[1] The only exception is that facts that relate solely to the defendant's criminal history may be

acknowledging that "[t]he facts supporting any fine greater than the statutory maximum must be proved to a jury beyond a reasonable doubt." Govt.'s Opp. to Mot. to Dismiss the Alternative Fines Act Allegations (Dkt. 147) ("Opp.") at 2 (citing *Southern Union*, 132 S. Ct. at 2348-49).

That concession makes it quite difficult to understand the government's argument that the Court "should wait until the jury has delivered its verdict to determine whether the AFA allegations should proceed." Opp. at 5. At that point the jury would already have heard and considered all of the extra evidence, and the undue complication and extension of the trial would be an accomplished fact. Obviously when Congress gave district courts discretion to quash Alternative Fines Act allegations that would unduly complicate or prolong the proceedings, Congress meant for the court to exercise that discretion *before* the undue complication could occur. Back when the amount of gain or loss could be decided by the judge, post-trial, it would have been appropriate to consider the undue complication issue at that point as well. But the necessary procedures have now changed. A case cited by the government explains the point well: "The alternative fine provision refers to delay and complexity in 'the sentencing process,' but in the wake of the *Southern Union* decision, the Court must consider these factors in determining the admissibility at trial of evidence pertaining to gross gain." *United States v. Sanford Ltd.*, 878 F. Supp. 2d 137, 152 (D.D.C. 2012). There is no sensible justification for deferring consideration of whether proposed evidence will unduly complicate the trial until after the trial is over.

The government points out that several of the cases cited in PG&E's motion considered the undue complication issue after trial or when reviewing a plea agreement. *See United States v. Gibson*, 409 F.3d 325, 342 (6th Cir. 2005); *United States v. BP Products N. Am.*, 610 F. Supp. 2d 655, 690 (S.D. Tex. 2009); *United States v. CITGO Petrol. Corp.*, 908 F. Supp. 2d 812, 818 (S.D. Tex. 2012) (finding that the undue complication provision applied before empaneling a sentencing jury). But the trials and guilt determinations in those cases were all completed before

---

resolved by the judge post-trial, even if they enhance the maximum statutory punishment. The Supreme Court decided that issue before *Apprendi* in *Almendarez-Torres v. United States*, 523 U.S. 224 (1998). But "it has long been clear that a majority of [the Supreme] Court now rejects that exception." *Rangel-Reyes v. United States*, 547 U.S. 1200, 1201-02 (2006) (Thomas, J., dissenting from the denial of certiorari).

the Supreme Court issued its decision in *Southern Union*—back when it was still possible to believe that the jury need not hear and resolve the evidence bearing on gains and losses. The government states that *Sanford Ltd.* supports its position that the undue complication issue should be considered after trial. *See* Opp. at 5. But the *Sanford Ltd.* court clearly stated, *before* the trial began, that it would consider "whether allowing the government to introduce evidence in support of an alternative fine under 18 U.S.C. § 3571(d) would 'unduly complicate or prolong,' *the trial*." 878 F. Supp. 2d at 153-54 (emphasis added). The only reason the *Sanford Ltd.* court did not in fact resolve the "undue complication" issue before trial is that, four days after the court's opinion, the government formally withdrew its Alternative Fines Act allegations so that it could admit evidence of gross revenues without risking undue complication, as the court had suggested. *See* Govt.'s "Notice of Election Not to Pursue an Alternative Fine," *United States v. Sanford Ltd.*, No. 11-cr-00352-BAH (D.D.C. July 23, 2012).

To the extent the government argues that the Court should defer considering the undue complication issue until ruling on motions *in limine*, *see* Opp. at 4, efficiency and judicial economy strongly favor ruling on this issue now. This is a very complex case, and the parties are preparing very actively for a trial set to begin in March. If the case proceeds past the motions currently pending, it would not be efficient for the parties to spend the next three months preparing for a trial on the Alternative Fines Act allegations, before the Court exercises its discretion on this issue. Nor would it be efficient for the parties to burden the Court with additional motions *in limine* related to complex issues that are introduced only by the Alternative Fines Act allegations. The issue is briefed now, and should be decided now.

**B. The Alternative Fines Act Issues Would Unduly Complicate and Prolong These Proceedings**

PG&E's motion explained that a trial involving the Alternative Fines Act allegations would be extremely complicated and protracted, requiring (*inter alia*) a mock regulatory ratemaking proceeding and hundreds of mini-trials about pecuniary damages.

The government does not deny those observations. Indeed, it appears to concede all of the legal principles that would make such complex proceedings necessary. The government does

not deny, for example, that it must prove that any alleged gains or losses were "factually and proximately caused by the defendant's acts." Mot. at 5; *see also* Opp. at 5. Regarding gains, the government agrees that "gross gain" under the Alternative Fines Act is cabined to "any additional before-tax profit to the defendant that derives from the relevant conduct of the offense." Mot. at 7; *see also* Opp. at 5 (*citing Sanford Ltd.*, 878 F. Supp. 2d at 150-51). It does not dispute PG&E's explanation that calculating such profits would require a jury to fully digest the complex ratemaking procedures for California utilities—while considering other expert and documentary evidence—in order to determine if PG&E realized any gross gains at all. *See* Mot. at 7-8. Regarding losses, the government does not appear to challenge any of the defendant's legal authority. Opp. at 3-5. In particular, the government does not deny that the defendant's civil tort settlements cannot serve as a proxy for pecuniary losses and that determining the pecuniary losses suffered by each individual victim would require more than 500 mini-trials. *See* Mot. at 9-11 (*citing BP Products*, 610 F. Supp. 2d at 702-03). Nor does it dispute the defendant's estimate that those mini-trials *alone* would take sixty-two days of trial time under the (wildly optimistic) assumption that each one could be handled in an hour. *See* Mot. at 11.

Instead, the government argues that "the vast majority of the evidence" needed to prove the alleged gains and losses would be included in its case-in-chief anyway. Opp. at 3. That claim is hard to understand. Certainly the government's case-in-chief will last far longer than the six weeks it projected at the March 9 status conference, if that is true. And the government is not correct when it claims that this evidence would be necessary or admissible in a trial not involving the Alternative Fines Act allegations.

For example, even accepting (for the moment) the government's contention that it will be permitted to offer evidence that PG&E was motivated by a desire to increase profits, absent the Alternative Fines Act allegations the jury would have no need to find the precise profits that were actually and proximately caused by any specific offense(s) of conviction. The jury would have no need to determine, beyond a reasonable doubt, how the CPUC would have set PG&E's rates in a hypothetical world in which its costs and investments were higher because it implemented the regulatory compliance programs or performed the maintenance the government

alleges it should have. Those issues "would require methodically and carefully structured and highly technical proof," *Sanford Ltd.*, 878 F. Supp. 2d at 151-52 (quotations and alterations omitted), going far beyond any evidence the government would otherwise introduce merely to show that PG&E had a financial motive to spend less on regulatory compliance.

The government cannot shortcut that proof by using some estimate that PG&E allegedly gave of the costs to "bring its pipeline system into compliance with federal regulations" as a proxy for gains under the Alternative Fines Act. Opp. at 3. The superseding indictment charges PG&E with knowingly and willfully violating four regulations on specific pipelines. Even if one or more of those charges ultimately succeeds, no jury could determine, beyond a reasonable doubt, that an estimate of the costs of upgrading PG&E's entire network represents "a reasonable approximation of the economic benefit [PG&E] gained [from] not previously complying" with whatever specific regulatory obligation the jury thinks PG&E violated on these specific lines. *Id.* PG&E explained all of that in its motion, and the government offers no real response.

For the loss allegations, the government states that the Court already determined that evidence of the San Bruno accident is relevant to the government's case. *See* Opp. at 3-4. Of course the Court also pointed out that "[g]iven the deaths, injuries, and property damage that resulted from the explosion, and were reported by the media, it is common sense that these references might prejudice a jury," and that the Court anticipated extensive litigation of motions *in limine*. *See* Order on Mot. to Strike (Dkt. 43) ("Order") at 8. And even if, as the Court stated, "the fact of an explosion may be relevant" to whether PG&E violated the regulations, the specific pecuniary harm caused thereby certainly is not. Order at 7-8. The Alternative Fines Act loss allegations would require the government to prove, beyond a reasonable doubt, both specific pecuniary losses and proximate causation, such that "the causal nexus between the conduct and the loss is not too attenuated (either factually or temporally)." *United States v. Swor*, 728 F.3d 971, 974 (9th Cir. 2013) (citations omitted). The government must provide "more than just general invoices ostensibly identifying the amount of [the victims'] losses." *United States v. Andrews*, 600 F.3d 1167, 1171 (9th Cir. 2010) (alterations and citations omitted) (describing calculation of losses for a restitution order); *see also BP Products*, 610 F. Supp. 2d at 687-88

(looking to restitution law to construe the requirements of 18 U.S.C. § 3571(d)). The government must present specific proof so that the jury can determine an amount of loss that "is supported by reliable evidence." *Andrews*, 600 F.3d at 1172. A trial on the pecuniary losses caused by the accident would require fact and expert witnesses and evidence regarding damages caused by the fire, and an entirely different group of witnesses and evidence on the cause and extent of each victim's injuries. It was exactly such a trial that Judge Dylina in the San Bruno accident civil cases thought might take a year and "would be impossible for both the jury and for the Court to keep into context." *See* Mot. at 11 (citing Valco Decl. (Dkt. 129) Ex. 21). To make matters more complicated, the government here would have to prove those same issues at a much higher evidentiary standard—beyond a reasonable doubt.

The government argues that the Alternative Fines Act allegations can be resolved quickly and easily. That is just not the reality. Meeting its burden to prove specific gains and losses factually and proximately caused by specific alleged criminal violations, beyond a reasonable doubt, will require the government to introduce a great deal of evidence, well beyond what would otherwise be admissible. We still do not even know whether the government will have multiple alternative theories about what amount of the alleged gains are attributable to which counts or which counts may have caused the explosion. *See* Govt.'s Opp. to Mot. for Bill of Particulars (Dkt. 142) at 10. And all of this speculation about the government's case ignores the extensive rebuttal evidence that PG&E would be constitutionally entitled to present in its own defense, if the government opens this Pandora's box. As PG&E explained in its motion, this is already an enormously complex trial. If the additional issues raised by the Alternative Fines Act allegations are not sufficient to trigger the undue complication limitation in this case, it is difficult to imagine when that standard would be met.

### C. Post-*Southern Union*, a Lack of Undue Complication and Delay Must Be Charged in the Superseding Indictment and Submitted to the Jury

If the Court determines, in its discretion, that permitting the government to pursue the Alternative Fines Act allegations would not unduly complicate or prolong the proceedings, the Court will then face two additional issues that must be resolved pre-trial.

Both relate to the fact that the Alternative Fines Act makes the availability of enhanced fines—greatly increasing the maximum punishment to which the defendant is exposed by statute—turn on whether trying the issue of gains and losses will unduly complicate or prolong the trial. As noted above, *every* determination that affects the defendant's maximum punishment exposure must now be treated as an element of the crime, for all purposes. Here, the governing statutes provide that PG&E is exposed to at most $14 million in fines, *unless* imposition of an alternative fine would not unduly complicate or prolong the proceedings—in which case the potential maximum fine jumps *eighty-fold*, to $1.13 billion. *See* 18 U.S.C. § 3571(d). As odd as it may seem, the undue complication issue therefore must now be treated as an element of the offense. That constitutional imperative has two immediate consequences.

First, the AFA allegations must be dismissed because that element is not charged in the indictment. "[T]he indictment must . . . contain an averment of every particular thing which enters into the punishment." *Southern Union*, 132 S. Ct. at 2355 (quoting 1 J. Bishop, Criminal Procedure, § 540, p. 330 (2d ed. 1972)). To the extent the government argues that allegations about a lack of undue complication need not be in the indictment because it is a sentencing factor and not an element, *see* Opp. at 2, the Supreme Court has rejected that distinction. *See Southern Union*, 132 S. Ct. at 2356 (stating that there is no "constitutionally significant difference between a fact that is an 'element' of the offense and one that is a 'sentencing factor'").

Second, if the Court finds here that trying the Alternative Fines Acts issues would not unduly complicate or prolong the proceedings and allows the trial to include those issues, enhanced fines still could not be imposed, consistent with the Sixth Amendment, unless *the jury* also makes that same finding (beyond a reasonable doubt).[2] For all the reasons discussed above, that determination would have to be made *before* the disputed evidence is introduced—which means we would have to hold a preliminary jury trial to consider how these allegations will

---

[2] Although the Sixth Amendment requires a jury finding on every issue that enhances maximum punishment, there is nothing unconstitutional about Congress delegating authority to a judge to *dismiss* certain allegations, and thereby *reduce* the maximum punishment, on grounds like those specified in the Alternative Fines Act. And Congress plainly intended to do so. The best understanding of the Act, post-*Southern Union*, therefore is that the undue complication issue should be considered by the judge first—and then submitted to the jury if the judge believes the Alternative Fines Act allegations should proceed to trial.

affect the main trial, before the main trial even begins.

PG&E explained all of this in its motion. The government's only response is an argument that the legislative history for the Alternative Fines Act's predecessor statute, 18 U.S.C. § 3623(c)(1), assumed that the undue complication decision is for the judge to make. *See* Opp. at 2-3 (quoting H.R. Rep. No. 98-906 at 17 (1984)). Of course that is what Congress originally wanted. And of course the more convoluted procedure discussed above is not what Congress intended. But the legislative history the government cites, like the Alternative Fines Act itself, was written before *Apprendi* and *Southern Union*, when Congress "expected judges, not juries, to determine fine-related sentencing facts." *Southern Union*, 132 S. Ct. at 2370 (Breyer, J., dissenting). That procedure is no longer an option. The only question now is whether the Alternative Fines Act can be implemented in a manner consistent with what the Supreme Court has explained the Bill of Rights requires. If not, the statute is simply unconstitutional.

## III. CONCLUSION

For the foregoing reasons and those in its motion, the defendant respectfully asks the Court to dismiss the Alternative Fines Act sentencing allegations from the superseding indictment.

Dated: October 5, 2015

Respectfully submitted,

By /s/

Steven M. Bauer
Margaret A. Tough
J. Scott Ballenger
Christopher J. Carlberg
Jason C. Pang
LATHAM & WATKINS LLP

Kate Dyer
CLARENCE, DYER & COHEN LLP

*Attorneys for Defendant*
*Pacific Gas and Electric Company*