UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Defendant. | Case No. 14-cr-00175-TEH<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE AN OFFENSE: COUNT ONE** |

This matter came before the Court on October 19, 2015 for a hearing on Defendant Pacific Gas & Electric ("PG&E")'s Motion to Dismiss for Failure to State an Offense: Count One. After carefully considering the parties' written and oral arguments, the Court now DENIES Defendant's motion, for the reasons set forth below.

**BACKGROUND**

On September 9, 2010, a gas line owned and operated by PG&E ruptured, causing a fire that killed 8 people and injured 58 others. Superseding Indictment ("SI") ¶ 5 (Docket No. 22). The fire damaged 108 homes, 38 of which were completely destroyed. *Id.* On July 30, 2014, a grand jury returned a superseding indictment ("Indictment") charging PG&E with 28 counts, including one count of obstructing the National Transportation Safety Board ("NTSB") investigation that followed the explosion. *Id.* ¶ 61.

The NTSB is "an independent establishment of the United States Government," charged by Congress with "investigat[ing] and report[ing] on the safe transportation of hazardous material," including by pipeline. 49 U.S.C. §§ 1111(a), (g). The NTSB began an investigation immediately after the San Bruno explosion, examining the cause of the explosion, the characteristics and history of the failed pipe, the adequacy of PG&E's emergency response, and PG&E's operations. *Id.* ¶¶ 54-55. The investigation revealed a number of deficiencies in PG&E's recordkeeping, integrity management program, and

maintenance practices as they related to various sections of the pipeline, including the line that ruptured – Line 132. *Id.* The agency concluded that these deficiencies were a probable cause of the explosion. *Id.*

Among the issues the NTSB investigated was PG&E's practice of raising the pressure of pipelines in high consequence areas ("HCAs") – densely populated locales where a release of gas could pose a significant risk of injury or death – to levels "above the maximum operating pressure experienced by a pipeline segment in the five years before the segment was identified as being in an HCA (the '5-year MOP')," or above "the maximum allowable operating pressure ('MAOP')" for that segment. *Id.* ¶¶ 15, 56. The Indictment alleges that PG&E adopted this practice of pressure increases to avoid having to conduct the expensive testing that was required of "high risk" segments, which are pipeline segments in HCAs "with unstable manufacturing threats." *Id.* ¶¶ 15, 38. Specifically, "PG&E chose to only consider a manufacturing threat unstable if the pressure on the pipeline exceeded the 5-year MOP by 10% or more," despite the fact that PG&E knew the Pipeline Safety Act considered a pipeline segment "unstable" if there was any increase at all in the 5-year MOP. *Id.* ¶ 38.

On February 22, 2011, in response to NTSB data requests on these pressure increases, PG&E provided a copy of Risk Management Instruction-06 ("RMI-06"), a document that set forth PG&E's "10% or more" policy. *Id.* ¶ 57. Then, on April 6, 2011, PG&E sent a letter to the NTSB withdrawing the "10% or more" version of RMI-06, claiming that it was an "unapproved draft" and attaching another version of RMI-06 that did not include the "10% or more" policy. *Id.* ¶ 59. PG&E did not disclose in the letter that its integrity management group had actually followed the "10% or more" policy set forth in the original copy of RMI-06 for two years "in or about 2009 through in or about April 2011," despite knowing that the policy violated the Pipeline Safety Act. *Id.* ¶ 60.

On the basis of this conduct, the Indictment charges that PG&E "did corruptly influence, obstruct, and impede" the NTSB investigation. *Id.* ¶ 61.

2

**LEGAL STANDARD**

Under Rule 12(b) of the Federal Rules of Criminal Procedure, a defendant may "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits," including a motion to dismiss an indictment for "failure to state an offense." Fed. R. Crim. P. 12(b)(1), 12(b)(3)(B)(v).

An indictment must contain "the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated," and "a plain, concise, and definite written statement of the essential facts constituting the offense." Fed. R. Crim. P. 7(c)(1). "The sufficiency of an indictment is judged by whether the indictment adequately alleges the elements of the offense and fairly informs the defendant of the charge, not whether the Government can prove its case." *United States v. Blinder*, 10 F.3d 1468, 1471 (9th Cir. 1993) (citation and quotation marks omitted). The district court must "accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002).

**DISCUSSION**

PG&E moves to dismiss Count One of the Indictment, which charges PG&E with obstruction of the NTSB's investigation in violation of 18 U.S.C. § 1505 ("Section 1505"). Def.'s Mot. to Dismiss for Failure to State an Offense: Count One ("Mot.") (Docket No. 125). PG&E argues first that an NTSB investigation is not a "proceeding" within the meaning of Section 1505 (Mot. at 8-16), and second that Section 1505 is itself either facially void for vagueness or unconstitutional as applied to PG&E's conduct (Mot. at 16-22). The Government responds first that "[t]he plain language of the statute, case law, and legislative history establish that an investigation by a federal agency that is more than a 'mere police investigation' constitutes a 'proceeding' " within the meaning of Section 1505 (Am. Opp'n to Def.'s Mot. to Dismiss for Failure to State an Offense: Count One ("Opp'n") at 1 (Docket No. 155)), and second that Section 1505 is neither facially unconstitutional nor unconstitutional as applied to PG&E's conduct (Opp'n at 11-13).

3

United States District Court
Northern District of California

## I. The NTSB Investigation Is a Section 1505 "Proceeding"

Section 1505 states in pertinent part:

> Whoever corruptly, or by threats or force, or by any threatening letter or communication influences, obstructs, or impedes or endeavors to influence, obstruct, or impede the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States . . . [s]hall be fined under this title [or] imprisoned not more than 5 years . . . .

PG&E's motion turns on whether an NTSB investigation is a "pending proceeding . . . being had before any department or agency of the United States."

### a. The Plain Language of Section 1505 Includes Investigations

The "first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997).

PG&E contests neither that the NTSB is a "department or agency of the United States" nor that the NTSB's investigation of the San Bruno explosion was "pending" at all relevant times. Rather, PG&E argues that the NTSB investigation is not a "proceeding" for the purposes of Section 1505 because "[a] mere *investigation*, unconnected with a proceeding that will actually administer the law, has never been sufficient for obstruction." Mot. at 3 (emphasis in original).

But even the definition of "proceeding" advanced by PG&E (*see* Mot. at 8-9) includes investigations: Black's Law Dictionary defines "administrative proceeding" as "[a] hearing, inquiry, *investigation*, or trial before an administrative agency, usu. adjudicatory in nature but sometimes quasi-legislative." Black's Law Dictionary 1841 (10th ed. 2014) (emphasis added). Adopting PG&E's definition therefore directs a finding that the plain meaning of "proceeding" includes "investigations," such as the one conducted by the NTSB in San Bruno.

### b. The Case Law Supports the Plain Meaning of "Proceeding"

No court has spoken on whether an NTSB investigation is a "proceeding" under

4

1  Section 1505. One of the first cases to examine the meaning of "proceeding" was *United*
2  *States v. Batten*, 226 F. Supp. 492 (D.D.C. 1964). There, the defendant challenged a
3  Section 1505 charge for obstructing a Securities and Exchange Commission ("SEC")
4  investigation, on the basis that it "was not in reality a proceeding contemplated by" Section
5  1505. 226 F. Supp. at 492-93. But the district court noted that Congress "specifically
6  empowers [SEC] investigations to be conducted and witnesses to be sworn at such
7  investigations," making the proceeding at issue "more than a mere police investigation."
8  *Id.* at 494. Given the extensive powers authorized by Congress, the court held that:

> To say that a person may not be punished under this statute for inducing a witness to commit perjury at such an investigation, in which an oath is administered by authority of law, and to limit the statute only to formal hearings before an Examiner or a member of the Commission, would defeat a part of the purpose of Congress.

*Id.* The court therefore found that "proceeding . . . should be construed broadly enough to include any investigation directed by a formal order of the [SEC], at which a designated officer takes testimony under oath." *Id.* The court recognized that there is a "distinction between adjudicative and investigative proceedings of the [SEC]," but reasoned that "[i]t would seem to follow that both types of proceedings are . . . covered by the statute involved here." *Id.*

The Ninth Circuit has also held that "proceeding" is broad enough to include investigative actions, but like the district court in *Batten*, has so held only in cases involving agencies that also had adjudicative or rulemaking authority. *See, e.g.*, *United States v. Technic Servs.*, 314 F.3d 1031, 1044 (9th Cir. 2002) (holding that an Environmental Protection Agency "investigation into a possible violation of the Clean Air Act or Clean Water Act, which could lead to a civil or criminal proceeding is a kind of [Section 1505] proceeding") (citations omitted); *United States v. Vixie*, 532 F.2d 1277, 1278 (9th Cir. 1976) (holding that an Internal Revenue Service "administrative investigation is a proceeding within the meaning of [Section] 1505").

Only one circuit court has directly addressed whether an investigative proceeding

before an agency *without* related adjudicative or rulemaking power is a "proceeding" under Section 1505. In *United States v. Kelley*, 36 F.3d 1118 (D.C. Cir. 1994), the D.C. Circuit found that an investigation conducted by the Office of Inspector General ("OIG") for the United States Agency for International Development was a "proceeding" under Section 1505. 36 F.3d at 1127. After carefully considering *Batten* and several "other courts [that] have held [] agency investigative activities are proceedings within the scope of [Section] 1505," the court noted that these cases "typically have involved agencies with some adjudicative power, or with the power to enhance their investigations through the issuance of subpoenas or warrants." *Id.* Because the OIG "is empowered to issue subpoenas and to compel sworn testimony in conjunction with an investigation of agency activities," the court found that its investigation of the defendant was a "proceeding" within the meaning of Section 1505, even though the OIG lacks either adjudicatory or rulemaking power. *Id.*

PG&E argues that the Court should ignore the D.C. Circuit's holding in *Kelley*, in favor of a handful of district court cases that have held otherwise. PG&E argues that the "leading case" is *United States v. Higgins*, 511 F. Supp. 453 (W.D. Ky. 1981). Mot. at 10. There, the Western District of Kentucky held that an investigation by the FBI was not a "proceeding" because the FBI was not vested with rulemaking or adjudicative power. 511 F. Supp. at 456. But much of the court's discussion of Section 1505 pertained to its concern that the statute had "never [before] been applied to a criminal investigation by a federal law enforcement agency." *Id.* at 455. On this score, the court found the legislative history of 18 U.S.C. § 1510, the statute that criminalizes obstruction of criminal investigations, "to be very persuasive." *Id.* The Report of the House Judiciary Committee for that statute, in discussing the scope of Section 1505, had observed: "attempts to obstruct a criminal investigation or inquiry before a proceeding has been initiated are not within the scope of the proscription of [Section 1505]." *Id.* at 455-56 (citing H.R. Rep. No. 658, at 1760 (1967)).

PG&E also cites *United States v. Edgemon*, No. 3-95-cr-43, 1997 U.S. Dist. LEXIS 23820, *11-13 (E.D. Tenn. Aug. 18, 1997), where the Eastern District of Tennessee

6

1    concluded that an investigation by the OIG of the Tennessee Valley Authority was not a

2    Section 1505 "proceeding." Indeed, the *Edgemon* court addressed and dismissed *Kelley*:

> The court's analysis of *Batten* in *Kelley* totally misses the mark. The holding in *Batten* was not based on the unexercised authority of the SEC to issue subpoenas and to administer oaths. Rather, the activities of the SEC in *Batten* were found to constitute a pending proceeding because the SEC actually took procedural steps that demonstrated the existence of a proceeding that was pending before the obstruction occurred.

1997 U.S. Dist. LEXIS 23820, at *18. Applying this distinction, the court noted that the only evidence submitted at trial was that the defendant made a "false statement to OIG agents during [] interviews [that] took place before [the defendant] provided documents to the OIG and before the OIG would have issued a subpoena had one been necessary." *Id.* at 16-17. Because the *Edgemon* court considered the touchstone to be the level of procedural steps taken *before* the obstruction occurred, and because "the government failed to produce one shred of evidence that any procedural step was taken by the OIG *before* the allegedly false statements were made," the court acquitted defendant of the obstruction charge. *Id.* at 15-16, 18 (emphasis in original).

But none of the concerns that motivated the decisions in *Higgins* and *Edgemon* are present in the case now before the Court. The legislative history regarding Section 1505 and criminal investigations, which the court in *Higgins* found "to be very persuasive," does not present an issue where, as here, the relevant agency was not performing a criminal investigation. And unlike the agency in *Edgemon*, the NTSB did take procedural steps *before* the alleged obstruction occurred: the NTSB began its investigation in September 2010, and this investigation included witness interviews, three days of public hearings, and "numerous requests for information and documents," including the data requests that PG&E responded to (in an allegedly obstructive manner) in April 2011. SI ¶ 54, 56, 59.

Moreover, the reasoning in *Kelley* is more consistent with the reasoning other circuit courts have used to find preliminary investigations to be "proceedings." *See, e.g.*, *Rice v. United States*, 356 F.2d 709, 712 (8th Cir. 1996) (observing that " '[p]roceeding' is

7

a comprehensive term meaning the action of proceeding—a particular step or series of steps, adopted for accomplishing something"); *id.* ("Congress clearly intended to punish any obstruction of the administrative process . . . at any stage of the proceedings, be it adjudicative or investigative."); *United States v. Fruchtmen*, 421 F.2d 1019, 1021 (6th Cir. 1970) (finding "no merit in appellant's contention that the word 'proceeding' refers only to those steps before a federal agency which are juridical or administrative in nature," because " 'proceeding' is a term of broad scope, encompassing both the investigative and adjudicative functions of a department or agency").

Given that *Kelley* is the only appellate authority to directly address the issue, that *Kelley* does so in a manner consistent with the reasoning used by other circuit courts, and that the concerns motivating the contrary decisions in *Higgins* and *Edgemon* are not present in the case now before the Court, the Court hereby adopts the reasoning put forth by the D.C. Circuit in *Kelley*.[1]  And under the reasoning in *Kelley*, the NTSB is unquestionably an agency "with the power to enhance [its] investigations through the issuance of subpoenas or warrants." *Kelley*, 36 F.3d at 1127.  Indeed, Congress gave the NTSB broad powers: "The [NTSB] . . . may conduct hearings to carry out this chapter, administer oaths, and require, by subpena [sic] or otherwise, necessary witnesses and evidence."  49 U.S.C. § 1113(a).  Moreover, "[i]f a person disobeys a subpoena, order, or inspection notice of the [NTSB, the NTSB] may bring a civil action in district court of the United States to enforce the subpoena, order, or notice." *Id.* § 1113(a)(4).  Accordingly, the Court hereby finds that the NTSB's Sun Bruno investigation was a "proceeding" within the meaning of Section 1505.

---

[1] Because the Court finds both the plain meaning of Section 1505 and the authority directly addressing Section 1505 to be sufficiently clear, the Court need not look to authority construing other obstruction statutes for guidance in construing Section 1505. *See, e.g.*, *Arthur Andersen LLP v. United States*, 544 U.S. 696, 705-06 (2005) (holding that 18 U.S.C. § 1512, which prohibits "corruptly persuad[ing] another person," requires proof of consciousness of wrongdoing); *United States v. Ermoian*, 752 F.3d 1165, 1172 (9th Cir. 2013) (holding that an FBI investigation does not qualify as an "official proceeding" within the meaning of 18 U.S.C. § 1512).

### c. The Rule of Lenity Does Not Bar Prosecution Under Section 1505

PG&E argues that "[t]he rule of lenity . . . requires that any ambiguity concerning the meaning of 'proceeding' must be resolved in the defendant's favor." Mot. at 15.

The rule of lenity "requires courts to limit the reach of criminal statutes to the clear import of their text and construe any ambiguity against the government." *United States v. Romm*, 455 F.3d 990, 1001 (9th Cir. 2006). The rule of lenity applies "only where 'after seizing every thing from which aid can be derived, the Court is left with an ambiguous statute.'" *United States v. Nader*, 542 F.3d 713, 721 (9th Cir. 2008) (citation omitted). *See also United States v. LeCoe*, 936 F.2d 398, 402 (9th Cir. 1991) ("Despite its lofty ideals, the rule of lenity is not an automatic addendum that accompanies every criminal statute that Congress may choose to enact; rather, it is simply a canon of statutory construction. The rule plays no role in statutory interpretation unless the statute is truly ambiguous.") (citation omitted).

After considering the plain meaning of "proceeding" in Section 1505, and the case law addressing its application to investigations like the one conducted by the NTSB, the Court finds no ambiguity for the rule of lenity to resolve. The reasoning in *Batten* and *Kelley*, and even the distinction offered in *Edgemon*, demonstrate that the NTSB's broad power to enhance its investigations – including through hearings, the administration of oaths, subpoenas, witnesses, evidence, and civil actions (49 U.S.C. § 1113(a)(4)) – direct a finding that the NTSB's San Bruno investigation was plainly a "proceeding" under Section 1505.

Moreover, the court in *Batten* warned that in construing Section 1505, courts should not allow the rule of lenity to defeat Congress' will:

> The Court is not unmindful of the doctrine that a criminal statute should be strictly construed. There is, however, a corollary to that principle, namely, that even a criminal statute should not be interpreted so narrowly as to defeat the purpose and intent of the legislative body that enacted it.

*Batten*, 226 F. Supp. at 493. Here, Congress vested the NTSB with broad powers to enhance its investigations. 49 U.S.C. § 1113(a)(4). The Court therefore declines to

9

1  frustrate Congress' intent that these investigations have significant teeth, including the
2  additional force of the obstruction statute, where the application of that statute to the
3  NTSB is anything but "truly ambiguous."  *LeCoe*, 936 F.2d at 402.

## II. Section 1505 Is Neither Void for Vagueness Nor Unconstitutional as Applied to PG&E's Alleged Conduct

PG&E argues that even if an NTSB investigation is a Section 1505 "proceeding," the term "corruptly" in Section 1505 is unconstitutionally vague, and once the proper narrowing construction of "corruptly" is adopted to resolve the vagueness issue, the Indictment fails to state a crime.  Mot. at 18.

### a. "Corruptly" Is Not Unconstitutionally Vague, and No Narrowing Construction Is Necessary

A criminal law violates Due Process when it is "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement."  *Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015).

In *United States v. Poindexter*, 951 F.2d 369, 378 (D.C. Cir. 1991), the D.C. Circuit held that the term "corruptly" as used in Section 1505 was unconstitutionally vague because "in the absence of some narrowing gloss, people must 'guess at its meaning and differ as to its application.' "  But as PG&E concedes, Congress directly responded to the *Poindexter* decision by amending 18 U.S.C. § 1515(b) ("Section 1515") – the statute that sets forth definitions for use in the obstruction statutes – to define "corruptly" as acting "with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information."

PG&E argues that the amendment to Section 1515 did not resolve the vagueness concerns expressed in *Poindexter*, because Congress clarified "the word 'corruptly' with another word, 'improper,' that the D.C. Circuit specifically held only made the vagueness problem worse."  Mot. at 17; *see also Poindexter*, 951 F.2d at 379 ("Words like

10

'depraved,' 'evil,' 'immoral,' "wicked,' and 'improper' are no more specific—indeed they may be less specific—than 'corrupt.' "). PG&E therefore argues that "the language of [Section] 1505 [remains] not sufficient to put persons of ordinary intelligence on notice that the legal universe has been turned upside down, and that withholding information from a government proceeding is a serious felony even in the absence of any legal duty to provide that information." Mot. at 19.

But a D.C. District court has already heard and rejected this very argument. In *United States v. Kanchanalak*, 37 F. Supp. 2d 1, 4 (D.D.C. 1999), the defendants argued that Section 1515 did not resolve the vagueness concerns in *Poindexter*. The court noted that "[d]efendants may be correct that the phrase 'acting with an improper purpose,' " would alone have been insufficient to alleviate the concerns in *Poindexter*. 37 F. Supp. 2d at 4. But the court went on to hold that the rest of Section 1515 adequately resolved *Poindexter*'s "vagueness" concern because it "list[ed] the kinds of specific conduct proscribed by Section 1505: 'making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information.' " *Id.* (citing Section 1515). The court then concluded that "[s]ince much of the conduct allegedly taken by the defendants in this case falls within that list, defendants are hard-pressed to argue that they were not on notice that the term 'corruptly' as defined by Section 1515(b) extended to the conduct alleged in the Superseding Indictment." *Id.*

PG&E suggests that *Kanchanalak* is distinguishable because the defendant's conduct there – "discarding, hiding, and erasing files that were subject to a grand jury subpoena" – was more egregious than PG&E's alleged conduct here – making false or misleading statements to the NTSB. Reply in Supp. of Def.'s Mot. to Dismiss for Failure to State an Offense: Count One ("Reply") at 13 (Docket No. 179). But the Court finds the analysis in *Kanchanalak* to apply here with equal force: PG&E's argument that "corruptly" is unconstitutionally vague is foreclosed by Congress' amendment to Section 1515, which *directly addressed* this concern. By listing the specific kinds of conduct proscribed by Section 1505, Congress "g[a]ve ordinary people fair notice of the conduct [Section 1505]

11

punishes." *Johnson*, 135 S.Ct. at 2556. PG&E's concern about the *strength* of the Government's evidence in proving that PG&E behaved in a manner proscribed by Section 1505 is an argument better made to a jury. The Court therefore finds that "corruptly" is not unconstitutionally vague, and that no limiting construction is required.

### b. The Indictment Sufficiently Charges Obstruction Under Section 1505

Finally, PG&E argues that "[i]f the Court narrowly construes the word 'corruptly' to avoid unconstitutional vagueness, then the indictment must be dismissed because it does not charge a crime." Mot. at 1. For the reasons set forth above, the Court finds that a narrowing construction is not necessary for the Indictment to comport with Due Process. It is therefore unnecessary for the Court to address the sufficiency of the Indictment under a narrow construction of "corruptly," as no such construction applies.

**CONCLUSION**

For the reasons set forth above, PG&E's motion is DENIED.

**IT IS SO ORDERED.**

Dated:   12/23/15                                   _____
                                                    THELTON E. HENDERSON
                                                    United States District Judge