UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

PACIFIC GAS AND ELECTRIC COMPANY,

Defendant.

Case No. 14-cr-00175-TEH

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR ERRONEOUS LEGAL INSTRUCTIONS**

This matter came before the Court on October 19, 2015 for a hearing on Defendant Pacific Gas & Electric ("PG&E")'s Motion to Dismiss for Erroneous Legal Instructions to the Grand Jury: Counts 2-28 and the Alternative Fines Act Sentencing Allegation.  After carefully considering the parties' written and oral arguments, the Court now DENIES PG&E's motion, for the reasons set forth below.

**BACKGROUND**

On September 9, 2010, a gas line owned and operated by PG&E ruptured, causing a fire that killed 8 people and injured 58 others.  Superseding Indictment ("SI") ¶ 5 (Docket No. 22).  The fire damaged 108 homes, 38 of which were completely destroyed.  *Id.*  On July 30, 2014, a grand jury returned a superseding indictment ("Indictment") charging PG&E with 28 counts, including 27 counts of violating the minimum federal safety standards for the transportation of natural gas by pipeline ("Pipeline Safety Act"), as set forth in 49 C.F.R. § 192 ("Section 192").  SI ¶¶ 62-75.  "Knowing and willful" violations of these standards are criminalized under 49 U.S.C. § 60123 ("Section 60123").  The Government seeks a fine exceeding the statutory maximum for these offenses under 18 U.S.C. § 3571(d) ("Alternative Fines Act").  SI ¶ 76.

//

//

**LEGAL STANDARD**

Under the Fifth Amendment's Grand Jury Clause, the grand jury serves two essential functions: "both the determination whether there is probable cause to believe a crime has been committed and the protection of citizens against unfounded criminal prosecutions." *United States v. Samango*, 607 F.2d 877, 882 (9th Cir. 1979) (quoting *United States v. Calandra*, 414 U.S. 338, 343 (1974)).

"[A]s a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988). Indeed, "dismissal of the indictment is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations.' " *Id.* at 256 (quoting *United States v. Mechanik*, 475 U.S. 66, 78 (1986) (O'Connor, J., concurring)).

Where an error with the grand jury proceedings is "brought to the attention of the trial court before the commencement of the trial," the Supreme Court has held that "dismissal of the indictment is appropriate." *Id.* The Ninth Circuit has confirmed that "if a motion to dismiss is made before the verdict, the district judge should apply the *Bank of Nova Scotia* standard." *United States v. Navarro*, 608 F.3d 529, 539 (9th Cir. 2010).

**DISCUSSION**

PG&E now moves to dismiss all 27 Pipeline Safety Act counts of the Indictment, as well as the Indictment's Alternative Fines Act Sentencing Allegation. Def.'s Mot. to Dismiss for Erroneous Legal Instructions to the Grand Jury: Counts 2-28 and the Alternative Fines Sentencing Allegation ("Mot.") (Docket No. 127). PG&E argues that because the prosecutor gave the grand jury erroneous legal instructions on both the intent requirement for violations of the Section 192 (Counts 2-28) and the Alternative Fines Act, "[o]ne cannot conclude that the grand jury actually found probable cause the defendant committed a crime under the laws of the United States," and the only appropriate remedy

United States District Court
Northern District of California

1    is dismissal.  Mot. at 2.  The Government argues that the prosecutor's collective intent

2    instructions were correct; that PG&E's Alternative Fines Act argument is barred by law of

3    the case; and that, in any event, both of "PG&E's claims fall far short of the high threshold

4    that both the Supreme Court and Ninth Circuit have set for dismissal based on grand jury

5    abuse."  Opp'n to Def.'s Mot. to Dismiss for Erroneous Legal Instructions ("Opp'n") at 1

6    (Docket No. 141).

7

8    **I.    *Bank of Nova Scotia* Sets a High Standard for Dismissal of an Indictment**

9          The Ninth Circuit has held in no uncertain terms that the *Bank of Nova Scotia*

10   standard sets a high bar for dismissal:

11              Only in a flagrant case, and perhaps only where knowing
12              perjury, relating to a material matter, has been presented to
              the grand jury should the trial judge dismiss an otherwise
13              valid indictment returned by an apparently unbiased grand
              jury. To hold otherwise would allow a minitrial as to each
14              presented indictment contrary to the teaching [of the Supreme
15              Court].

16   *United States v. Kennedy*, 564 F.2d 1329, 1338 (9th Cir. 1977) (citing *Costello v. United*

17   *States*, 350 U.S. 359, 363-64 (1956)).  Indeed, in the Ninth Circuit, "a grand jury

18   indictment will not be dismissed unless the record shows that the conduct of the

19   prosecuting attorney was flagrant to the point that the grand jury was 'deceived' in some

20   significant[ way," such that the prosecutor "significantly infringe[d] upon the ability of the

21   grand jury to exercise independent judgment."  *United States v. Wright*, 667 F.2d 793, 796

22   (9th Cir. 1982) (citation omitted).  Even "extensive prosecutorial misconduct" before the

23   grand jury, though it calls for contempt or disciplinary proceedings, may not justify

24   dismissal of an indictment.  *Navarro*, 608 F.3d at 539 (citing *Bank of Nova Scotia*, 487

25   U.S. at 263).

26          Given this high standard, the Ninth Circuit has held that "[e]rroneous grand jury

27   instructions do not automatically invalidate an otherwise proper grand jury indictment."

28   *Wright*, 667 F.2d at 796.  Rather, dismissal for improper instructions is warranted only

United States District Court
Northern District of California

where "the conduct of the prosecutor was so 'flagrant' it deceived the grand jury in a significant way infringing on their ability to exercise independent judgment." *United States v. Larrazolo*, 869 F.2d 1354, 1359 (9th Cir. 1989) (overruled on other grounds by *Midland Asphalt Corp. v. United States*, 489 U.S. 794 (1989)).  The movant "must show that the grand jury's independence was so undermined that it could not make an informed and unbiased determination of probable cause." *Id.*  Moreover, a prosecutor need not even instruct the grand jury on the law in order to secure an indictment. *United States v. Kenny*, 645 F.2d 1323, 1347 (9th Cir. 1981).  In fact, the Ninth Circuit has expressed a concern that "the giving of such instructions portends protracted review of their adequacy and correctness by the trial court during motions to dismiss, not to mention later appellate review." *Id.*

In *Larrazolo*, for example, defendants contended that the definition of conspiracy offered to the grand jury "neglected to include the requirements of criminal intent and knowledge" and therefore "misled the grand jury in [the] explanations of conspiracy law." *Id.*  Specifically, the prosecutor "characterized the acts of [defendants] in loading [] bales of marijuana as [both] the overt act and evidence of the mens rea requirement of conspiracy[,] without finding specific knowledge of the agreement." *Id.*  Defendants argued that "if complete and proper jury instruction had been given, the grand jurors would have found evidence of the mens rea element missing." *Id.*  But the Ninth Circuit held that the erroneous instructions did not require dismissal because defendants had not "shown the erroneous instructions influenced the decision to indict or created a 'grave doubt' that the decision to indict was free from the substantial influence of such a violation." *Id.*

## II.   The Intent Instructions on Counts 2-28 Were Not in Error

PG&E argues that "the government repeatedly told the grand jury that it could charge the defendant [for violations of Section 192] based on a 'collective knowledge' theory of intent," and that such instruction was erroneous because "this theory of criminal liability has never been applied in the Ninth Circuit." Mot. at 1.  Specifically, PG&E

United States District Court
Northern District of California

1    challenges the following instruction from April 1, 2014, the day the grand jury returned the

2    original indictment:

> 3    It's the idea that you are imputing to a company the actions of
> 4    all of its employees to get to the state of showing the
>      company willfully violated the law. . . . The idea being that
> 5    the company, *not any individual*, but the company through the
>      actions of all of its employees, that that – that liability
> 6    imputes to the company.

7    Mot. at 4-5 (citing Decl. of Nicole C. Valco in Supp. of Def.'s Pretrial Mots. ("Valco

8    Decl.") Ex. 13 at 11) (emphasis in original).[1]

9         Section 60123's mens rea requirement has two prongs:  The statute criminalizes

10   violations of Section 192 only if they are both *knowing* and *willful*.  PG&E focuses its

11   argument on the "willful" prong,[2] and for good reason.  There is ample persuasive

12   precedent and widespread acceptance of legal treatises that define a "collective

13   knowledge" theory to prove that a corporate defendant acted "knowingly."  The leading

14   case, out of the First Circuit, is *United States v. Bank of New England*, 821 F.2d 844 (1st

15   Cir. 1987).  There, the court held that "[a] collective knowledge instruction is entirely

16   appropriate in the context of corporate criminal liability."  821 F.2d at 856.  Likewise, the

17   Restatement (Third) of Agency provides that "[o]rganizations are treated as possessing the

18   collective knowledge of their employees and other agents, when that knowledge is material

19   to the agents' duties . . . ."  Restatement (Third) of Agency § 5.03 (Am. Law Inst. 2006).

20   The focus of this motion has therefore rightfully been placed on aggregation of "intent,"

21   i.e. the "willful" prong, and its relationship to the aggregation of "knowledge," i.e. the

22   "knowing" prong.

23        The Ninth Circuit has not addressed the question of whether a "collective intent"

24   theory may be used to prove that a corporate defendant acted "willfully" in violating a

---

[1]     PG&E argues that the prosecutor gave similarly erroneous instructions on three prior dates as well.  Mot. at 4.

[2]     PG&E argues that " '[c]ollective knowledge,' at most, could be used to prove what its name implies—knowledge.  It cannot be used to prove a corporation's specific intent, i.e., the 'willful' prong."  Mot. at 8.

United States District Court
Northern District of California

criminal statute. The closest the Ninth Circuit has come to addressing this issue was in *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448 (9th Cir. 1986). There, the defendant corporation was convicted of violating 26 U.S.C. § 7206(1), which proscribes willfully making and submitting a false income tax return. 785 F.2d at 1451-52. On appeal, the corporation argued that it could not be found guilty because the employee who actually *submitted* the false return did not know that the return was false; rather, the corporation's chief operating officer ("COO") had knowingly provided false information to the employee. *Id.* at 1454. Under the heading of "collective intent," the Ninth Circuit rejected the corporation's argument, holding that the corporation was criminally liable for making and subscribing the false return based on the willful intent of the COO, even if the COO did not sign the return. *Id.* The Ninth Circuit noted its concern that "[i]f [defendant's argument] were accepted by the courts, any tax preparer could escape prosecution . . . by arranging for an innocent employee to complete the proscribed act . . . ." *Id.* PG&E correctly points out, however, that the Ninth Circuit based its decision on the guilty mens rea of at least one agent of the corporate defendant – the COO – leaving unanswered the question of whether courts can truly "collect" intent across employees to meet the requirement that a defendant acted "willfully." Mot. at 10.

To that end, the Government has offered *United States v. T.I.M.E. - D.C., Inc.*, 381 F. Supp. 730 (W.D. Va. 1974), in which the court approved a collective corporate knowledge theory to prove both the knowing *and willful* prongs of a criminal statute. In *T.I.M.E.*, a corporate defendant was charged with violating federal regulations related to interstate motor carriers. A criminal violation of these regulations required the government to prove a "knowing and willful violation of any of the [relevant] regulations." 381 F. Supp. at 733. The court first upheld the government's use of the collective corporate knowledge doctrine to prove the knowing prong: "[K]nowledge acquired by employees within the scope of their employment is imputed to the corporation. . . . [T]he corporation is considered to have acquired the collective knowledge of its employees and is held responsible for their failure to act accordingly." *Id.* at 738. Then, as to the willful

United States District Court
Northern District of California

1    prong, the court explained that the very fact that the corporate defendant had corporate

2    knowledge, but declined to act on that knowledge, was sufficient evidence that the

3    corporation acted "willfully":

4            The Company had an affirmative responsibility not to
             'require or permit' drivers to operate their vehicles while
5            impaired. Cognizant of the situation – for, as previously
             noted, the Company is held responsible for the knowledge
6            acquired by its various employees – it adopted a more or less
             'hands-off' attitude towards compliance with the regulation
7            and, in effect, left adherence almost entirely the responsibility
             of its drivers.
8

9    *Id.* at 741.  Accordingly, the court held "that the Government has established beyond a

10   reasonable doubt that the Company did 'willfully' disregard its duty under" the relevant

11   regulations.  *Id.*

12          PG&E urges this Court to reject *T.I.M.E.* and instead follow what it contends is "[a]

13   long line of courts since *Bank of New England*" that have found that " '[c]ollective

14   knowledge' . . . cannot be used to prove a corporation's specific intent, i.e., the 'willful'

15   prong." Mot. at 8.  *See, e.g.*, *Kern Oil & Refining Co. v. Tenneco Oil Co.*, 792 F.2d 1380,

16   1386-87 (9th Cir. 1986) (holding that as a matter of Texas state law, the knowledge

17   possessed by a corporation's employees would not be imputed to the corporation); *First

18   Equity Corp. v. Standard & Poor's Corp.*, 690 F. Supp. 256, 260 (S.D.N.Y. 1988) ("A

19   corporation can be held to have a particular state of mind only when that state of mind is

20   possessed by a single individual.").  However, the cases PG&E cites are distinguishable.

21   In both cases, the plaintiffs attempted to establish a collective state of mind by piecing

22   together knowledge of individual employees.  In *Kern*, for example, a buyer of crude oil

23   sued to recover from the seller, and the seller counterclaimed for breach of contract.  792

24   F.2d at 1380.  The seller argued that where the buyer's accounting department knew the

25   price that was paid to the seller, and the buyer's legal department knew the contractual

26   ceiling on price, the buyer's employees collectively knew of both facts, which rendered the

27   buyer's overpayment knowing and voluntary.  *Id.* at 1386-87.  In *First Equity Corp.*,

28   investors brought a fraud claim against Standard & Poor's for an incorrect bond

                                              7

United States District Court
Northern District of California

1   description printed in one of the company's publications.  690 F. Supp. at 257.  Plaintiffs

2   attempted to prove the required mens rea – recklessness – "by pointing out alleged

3   inconsistencies in the understandings held by various people at Standard & Poor's," as a

4   demonstration that Standard and Poor's recklessly "had no understanding as to the

5   meaning of the description when it was published."  *Id.* at 259.  Here, by contrast, the

6   prosecutor did not ask the grand jury to aggregate innocent pieces of information from

7   various employees across PG&E to construct a single "knowing and willful" transaction.

8   Instead, the prosecutor invited the grand jury to consider whether PG&E's employees'

9   individual knowledge and disregarding of the company's Section 192 duties rendered the

10   company liable for "knowingly and willfully" violating those duties.

11          The Ninth Circuit recognized a distinction between these two kinds of reasoning in

12   *Kern* itself, citing *T.I.M.E.*:

13              [Seller] also cites [*T.I.M.E.*], in which the court held that a
               corporation could be held criminally responsible for the
14              collective knowledge of its employees.  The corporation
               had a duty to insure that its drivers obeyed a federal
15              regulation.  Various employees had notice of facts that,
               taken together, revealed that the drivers were violating the
16              regulation.  The holding that the corporation was charged
               with knowledge of the violations was thus based on the
17              corporation's legal duty to prevent the violations.  Such a
               duty is not present in this case.
18

19   792 F.2d at 1387.  In so doing, the Ninth Circuit impliedly agreed that where a corporation

20   has a legal duty to prevent violations, and the knowledge of that corporation's employees

21   collectively demonstrates a failure to discharge that duty, the corporation can be said to

22   have "willfully" disregarded that duty.  *See T.I.M.E.*, 381 F. Supp. at 741.

23          In this case, as in *T.I.M.E.*, PG&E is legally obligated to follow safety regulations

24   set forth by the federal government.  This is the closest factual and legal comparison that

25   either party has offered the Court to consider in understanding the mens rea requirement in

26   Section 60123.[3]  Accordingly, the Court adopts the reasoning in *T.I.M.E.*, rendering correct

27

28   _____
     [3]      PG&E attempts to distinguish *T.I.M.E.* by arguing that the criminal statute there had
     a lower "knowing and willful" standard than Section 60123.  Reply in Supp. of Def.'s Mot.

8

United States District Court
Northern District of California

1    the legal instructions PG&E is challenging on Counts 2-28 in this motion.  These legal

2    instructions therefore cannot be the basis for a dismissal under *Bank of Nova Scotia*.

3

4    **III.    The Instruction on the Alternative Fines Act Sentencing Allegation Does Not**

5    **Meet the *Bank of Nova Scotia* Standard**

6    The Alternative Fines Act provides:

7          If any person derives pecuniary gain from the offense, or if
         the offense results in pecuniary loss to a person other than the
8          defendant, the defendant may be fined not more than the
         greater of twice the gross gain or twice the gross loss, unless
9          imposition of a fine under this subsection would unduly
10         complicate or prolong the sentencing process.

11   18 U.S.C. § 3571(d).

12   PG&E argues that the instruction on the Alternative Fines Act provided to the grand

13   jury – "This just required us to specifically allege the amount of gain or loss that we think

14   is appropriate." – was erroneous and therefore warrants dismissal.  Mot. at 5 (citing Valco.

15   Decl. Ex. 14 at 14).  According to PG&E, the instruction was flawed in four respects: first,

16   the prosecutor did not give a causation instruction; second, the prosecutor did not instruct

17   that gain or loss must be limited to the charged counts; third, the prosecutor did not instruct

18   that only pecuniary damages may be counted toward gain or loss; and fourth, the

19   prosecutor inserted personal opinion into the legal instruction by stating that the amount of

20   gain or loss was based on what "we" (meaning either the prosecutors collectively or them

21   together with the grand jurors) "think is appropriate."  Mot. at 12-13.

22   Even assuming that PG&E is correct on all four counts, PG&E has failed to meet

23   the high standard required for dismissal of an indictment.  The Ninth Circuit has found

24

25   to Dismiss for Erroneous Legal Instructions ("Reply") at 6 (Docket No. 182).  When asked
26   at the October 19, 2015 hearing what authority PG&E could cite for the existence of such a
     difference, counsel provided nothing.  But even if PG&E were correct, the Court finds the
27   reasoning in *T.I.M.E.* to apply with equal force to the "higher" standard PG&E advances.
     *See Bryan v. United States*, 524 U.S. 184, 193 (1998) ("[A] person acts willfully if he acts
28   intentionally and purposefully and with the intent to do something the law forbids, that is,
     with the bad purpose to disobey or to disregard the law.").

United States District Court
Northern District of California

1   even "extensive prosecutorial misconduct" before the grand jury to be insufficient for

2   dismissal of an indictment (*Navarro*, 608 F.3d at 539), and the Court does not find that the

3   prosecutor's passing suggestion that his or her opinion is relevant to the Alternative Fines

4   Act is enough to warrant dismissal.  Though the challenged statement may have been ill-

5   advised, it was not "so 'flagrant' [that] it deceived the grand jury in a significant way

6   infringing on their ability to exercise independent judgment."  *Larrazolo*, 869 F.2d at

7   1359.

8   Moreover, the prosecutor need not provide legal instructions to the grand jury at all

9   (*Kenny*, 645 F.2d at 1347), and the Indictment is sound as long as the grand jury

10  discharged its obligation to find probable cause.  The statement challenged by PG&E does

11  not give the Court "grave doubt" that the grand jury's probable cause determination was

12  made with anything other than "independent judgment."  *Bank of Nova Scotia*, 487 U.S. at

13  256.

14  Finally, *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Southern Union v.*

15  *United States*, 132 S. Ct. 2344 (2012), did not alter the role of the grand jury under the

16  Fifth Amendment's Grand Jury Clause.  *Apprendi* requires that "any fact (other than prior

17  conviction) that increases the maximum penalty for a crime must be charged in an

18  indictment, submitted to a jury, and proven beyond a reasonable doubt."  530 U.S. at 476.

19  *Southern Union* applies this rule to the imposition of criminal fines.  132 S. Ct. at 2356.

20  The Court is mindful of the additional constitutional requirements *Apprendi* and *Southern*

21  *Union* placed on criminal penalties, and is carefully considering them to ensure PG&E's

22  Sixth Amendment rights are protected (*see* Order Granting in Part Defendant's Motion to

23  Dismiss the Alternative Fines Act Sentencing Allegations (Docket No. 201)), but neither

24  case increased the grand jury standard to something beyond probable cause.

25  PG&E therefore was not prejudiced as a result of the instructions, or lack thereof,

26  provided to the grand jury on the Alternative Fines Act.  Accordingly, the *Bank of Nova*

27  *Scotia* standard is not met, and dismissal of the Alternative Fines Act allegation would be

28  inappropriate.

**CONCLUSION**

      For the reasons set forth above, PG&E's motion is DENIED.

**IT IS SO ORDERED.**

Dated:   12/23/15

                                    THELTON E. HENDERSON
                                    United States District Judge

United States District Court
Northern District of California