UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Defendant. | Case No. 14-cr-00175-TEH<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR A BILL OF PARTICULARS** |

This matter came before the Court on October 19, 2015 for a hearing on Defendant Pacific Gas & Electric ("PG&E")'s Motion for a Bill of Particulars (Docket No. 128). On December 23, 2015, this Court issued a brief order GRANTING IN PART and DENYING IN PART the motion. Docket No. 214. What follows is a detailed order explaining the Court's December 23, 2015 ruling.

**BACKGROUND**

On September 9, 2010, a gas line owned and operated by PG&E ruptured, causing a fire that killed 8 people and injured 58 others. Superseding Indictment ("SI") ¶ 5 (Docket No. 22). The fire damaged 108 homes, 38 of which were completely destroyed. *Id.* On July 30, 2014, a grand jury returned a superseding indictment ("Indictment") charging PG&E with 27 counts of violating the Pipeline Safety Act and one count of obstructing the National Transportation Safety Board ("NTSB") investigation that followed the explosion. *Id.* ¶¶ 61-75. The Indictment also seeks a fine exceeding the statutory maximum for these offenses under the Alternative Fines Act. *Id.* ¶ 76.

**LEGAL STANDARDS**

Rule 7(f) of the Federal Rules of Criminal Procedure provides that a court may in its discretion require a bill of particulars. A bill of particulars is "intended to supplement

the indictment by providing more detail of the facts upon which the charges are based." *United States v. Inryco, Inc.*, 642 F.2d 290, 295 (9th Cir. 1981). It serves three purposes:

> [T]o inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial, to avoid or minimize the danger of surprise at the time of trial, and to enable him to plead his acquittal or conviction in bar of another prosecution for the same offense when the indictment itself is too vague, and indefinite for such purposes.

*United States v. Ayers*, 924 F.2d 1468, 1483 (9th Cir. 1991) (citation and internal quotation marks omitted).

The Ninth Circuit has clearly stated that complete discovery of the government's evidence is not the purpose of a bill of particulars: "A defendant is not entitled to know all the *evidence* the government intends to produce but only the *theory* of the government's case." *United States v. Ryland*, 806 F.2d 941, 942 (9th Cir. 1986) (emphasis in original). "To the extent that the indictment or information itself provides details of the alleged offense, a bill of particulars is, of course, unnecessary." *United States v. Giese*, 597 F.2d 1170, 1180 (9th Cir. 1979) (quoting 8 Moore's Federal Practice ¶ 7.06(1) at 7-31 n.1 (2d ed. 1978)). In deciding whether to order a bill of particulars, a court should therefore "consider whether the defendant has been advised adequately of the charges through the indictment and all other disclosures made by the government." *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983).

"[D]enial of a motion for a bill of particulars is within the discretion of the district court; its decision will not be disturbed absent an abuse of this discretion." *Giese*, 597 F.2d at 1180.

**DISCUSSION**

PG&E moves for a bill of particulars requiring that the Government disclose specifics on four areas of the Indictment. PG&E argues that courts in this district have ordered bills of particulars in cases similarly complex to the one now before the Court.

Def.'s Mot. for Bill of Particulars ("Mot.") at 3 (Docket No. 128).  For example, in *United States v. Wong*, No. CR 06-428 SI, 2007 WL 404807 (N.D. Cal. Feb. 2, 2007), the court ordered a bill of particulars for a conspiracy charge where the discovery consisted of over 200,000 pages, 111,250 TIFF images, 1,250 photographs, 5,800 minutes of audio recordings, and 900 minutes of video surveillance.  2007 WL 404807, at *2.  There, the court was concerned that "the extremely voluminous and diverse discovery . . . [did not] sufficiently apprise [defendant] of the charge against him . . . ."  *Id.*

There is no doubt that this case is complex.  But the court must individually consider each of PG&E's four requests and determine whether the purposes of a bill of particulars are present as to each.

### I.  PG&E's First Request

First, for Count One – the obstruction count – PG&E seeks the following particulars: which acts allegedly obstructed the NTSB investigation; how the obstructive acts were material to the NTSB investigation; which individuals committed the obstructive acts with the requisite corrupt intent; and either what legal duty PG&E violated or what improper purpose it acted with.  Proposed Order Granting Def.'s Mot. for Bill of Particulars ("Proposed Order") at 1 (Docket No. 128-1).

The factual allegations underpinning Count One are sufficiently clear to apprise PG&E of the charges against it.  The Indictment dedicates nearly two pages to Count One, identifying the specific letter at the heart of the Count, the letter's date, the specific statements contained in the letter that were allegedly false or misleading, and an explanation of why those statements were false or misleading.  SI ¶¶ 53-61.  The Indictment therefore provides details of the alleged offense, rendering a bill of particulars unnecessary.  *Giese*, 597 F.2d at 1180.

PG&E also argues that the Indictment must explain why the false or misleading statements at issue were material to the NTSB's investigation, but PG&E recognizes that this argument is premature.  *See* Def.'s Mot. to Dismiss for Failure to State an Offense:

1  Count One at 1 (Docket No. 125) ("The Court has instructed that we save that challenge
2  for trial."). In any event, that PG&E makes an argument for more information by denying
3  the materiality of the letter only further demonstrates that PG&E is on notice regarding
4  how to prepare a defense to Count One at trial, and has therefore "been advised adequately
5  of the charges through the indictment . . . ." *Long*, 706 F.2d at 1054.
6      Accordingly, PG&E's first request is DENIED.

## II.  PG&E's Second Request

Second, for Counts 2-3 and 6-23 – which charge that PG&E failed to follow various Pipeline Safety Act regulations – PG&E seeks a list of the specific covered segments underlying each charge, by Count and by line. Proposed Order at 1. The Government concedes that the regulations underlying Counts 6-23 relate to particular covered segments, and therefore disclosed a list of the challenged segments, by Count and by line, with its opposition briefing. Opp'n to Def.'s Mot. for Bill of Particulars ("Opp'n") at 8 (Docket No. 142). But the Government argues that the regulation underlying Counts 2-3 – which charge that PG&E failed to "gather and integrate existing data" on certain pipelines – requires action on an entire pipeline, and therefore that the Indictment's reference to a particular pipeline for each Count provides full notice of the charged offense. *Id.*

At the October 19, 2015 hearing, the Court asked the Government if it was capable of specifying the covered segments at issue for each charged pipeline of Counts 2-3, as it did for Counts 6-23. The Government responded: "The answer is yes, we can identify the segments that trigger the duty to gather and integrate data for the pipelines. We do have that information. The duty, however, that is alleged to have been violated does relate to the pipeline itself." Oct. 19, 2015 Tr. at 63. Since the Government concedes that specific segments triggered PG&E's duty to gather and integrate data, and the Government can readily provide a list of these segments to PG&E as it did for Counts 6-23, the Court finds no reason to withhold such information at this stage of the proceedings.

Accordingly, PG&E's second request is GRANTED. The Court already ordered

4

1  that the Government identify all segments for each charged pipeline in Counts 2-3, by
2  Count and by line, no later than December 31, 2015.  Order Granting in Part and Denying
3  in Part Def.'s Mot. for Bill of Particulars (Docket No. 214).  And the Government timely
4  complied.  United States' Bill of Particulars (Docket No. 220).

### III.    PG&E's Third Request

Third, for Counts 15-23 – which charge that PG&E failed to prioritize certain segments as high risk and analyze them accordingly – PG&E seeks the following particulars: the Government's theory as to what a pipeline operator must do to "prioritize" a segment as "high risk"; whether there was a specific time period in which PG&E was required to "prioritize" the charged segments; and the Government's theory as to how PG&E failed to prioritize the charged segments.  Proposed Order at 1-2.

The factual allegations underpinning Counts 15-23 are sufficiently particular.  The Indictment thoroughly details the Government's factual theory: PG&E allegedly wanted "[t]o avoid having to prioritize [certain] pipelines as 'high risk' " (SI ¶ 38) because the pressure tests required of "high risk" lines were expensive and inconvenient (*id.* ¶ 14(1)(ii)).  PG&E therefore developed a system of "planned pressure increases" – intentionally raising the pressure in old, highly-pressurized pipelines to their maximum allowable operating pressures for two hours (*id.* ¶ 34) – and also "chose only to consider a manufacturing threat unstable if the pressure on the pipeline exceeded the 5-year MOP by 10% or more" (*id.* ¶ 38), to avoid the "high risk" label.  And regarding the "specific time period" of the offense, the Indictment alleges a specific date on all nine challenged counts: January 22, 2010.  *Id.* ¶ 71.

Indeed, PG&E recognizes that the Indictment contains this level of detail: "[A]ll the government (and the indictment) offers is what PG&E apparently failed to do *as a result* of not prioritizing certain lines as high risk (a Subpart J pressure test), and what measures it allegedly took *to avoid* having to prioritize those lines as high risk (considering manufacturing threats as unstable only if pressure on a pipeline exceeded MOP+10%)."

5

Reply in Supp. of Def.'s Mot. for Bill of Particulars at 10 (Docket No. 180) (emphasis in original).  It will be up to a jury to determine whether these allegations, and the evidence the Government offers at trial to support them, will be sufficient to prove "conduct [that] amounted to a knowing and willful failure to prioritize certain covered segments as 'high risk' under the charged regulations."  *Id.*

Accordingly, PG&E's third request is DENIED.

### IV.     PG&E's Fourth Request

Fourth, for the Alternative Fines Act Sentencing Allegation – which requires the Government to prove the amount of gross pecuniary gains realized by PG&E or gross pecuniary losses suffered by its victims (18 U.S.C. § 3571(d)) – PG&E seeks the underlying data and causation theories for the Government's $281 million gross gains and $565 million gross losses figures.  Proposed Order at 2.

This requested was mooted by the Court's December 8, 2015 Order Granting in Part Defendant's Motion to Dismiss the Alternative Fines Act Sentencing Allegations.  Docket No. 201.  In that Order, the Court granted PG&E's motion to dismiss the Government's losses-based Alternative Fines Act allegation, and ordered the Government to provide more detail on its gains-based Alternative Fines Act allegation by January 11, 2016.

Accordingly, PG&E's fourth request is DENIED.

**CONCLUSION**

For the reasons set forth above, PG&E's motion is GRANTED IN PART and DENIED IN PART.

**IT IS SO ORDERED.**

Dated:   01/04/16                              _____
                                                            THELTON E. HENDERSON
                                                            United States District Judge

6