1  BRIAN J. STRETCH (CABN 163973)
   Acting United States Attorney
2
   DAVID R. CALLAWAY (CABN 121782)
3  Chief, Criminal Division

4  HALLIE MITCHELL HOFFMAN (CABN 210020)
   OWEN P. MARTIKAN (CABN 177104)
5  HARTLEY M. K. WEST (CABN 191609)
   JEFFREY B. SCHENK (CABN 234355)
6  Assistant United States Attorneys

7      450 Golden Gate Avenue, Box 36055
       San Francisco, California 94102-3495
8      Telephone: (415) 436-7129
       Fax: (415) 436-7234
9      hallie.hoffman@usdoj.gov
       owen.martikan@usdoj.gov
10     hartley.west@usdoj.gov
       jeffrey.b.schenk@usdoj.gov
11
12 Attorneys for United States of America

13                    UNITED STATES DISTRICT COURT

14                   NORTHERN DISTRICT OF CALIFORNIA

15                        SAN FRANCISCO DIVISION

16
17 UNITED STATES OF AMERICA,            ) Case No. CR 14-00175 TEH (MEJ)
                                        )
18         Plaintiff,                   ) UNITED STATES' OPPOSITION TO
                                        ) DEFENDANT'S MOTION IN LIMINE TO
19     v.                               ) EXCLUDE EXPERT WITNESSES
                                        )
20 PACIFIC GAS AND ELECTRIC COMPANY,    )
                                        ) Date: Not Set
21         Defendant.                   ) Court: Hon. Thelton E. Henderson
                                        )
22 ─────────────────────────────────────

USA OPP. TO MIL RE: EXPERTS
CR 14-00175 TEH

**INTRODUCTION**

The Court should deny PG&E's motion to exclude two government expert witnesses because their testimony about highly-technical regulations; about how utilities are structured, compensated, and regulated; about the meaning of PG&E's corporate structure and financial records; and about PG&E's approach to safety; are all well-established proper areas for expert testimony. PG&E's characterization of these experts' proposed testimony as encompassing opinions about PG&E's corporate intent, or conclusions about the law, is not accurate.

The Court should also deny PG&E's motion to exclude the government's summary witness, Margaret Felts. The fact that Felts has previously testified as an expert does not render her an expert in this case, and she will not provide an expert opinion. Instead, Felts will summarize the state of PG&E's pipeline records. All of the underlying records have been produced to PG&E in discovery, and are PG&E's own records.

**ARGUMENT AND AUTHORITIES**

**I.     THE GOVERNMENT'S EXPERT TESTIMONY IS ADMISSIBLE**

   **A.     The Applicable Legal Standard**

The admission of expert witness testimony is governed by Fed. R. Crim. P. 702 ("Rule 702"), which requires that the witness be qualified by knowledge, skill, experience, training, or education. Moreover, the witness's testimony must help the trier of fact understand the evidence or determine a fact in issue, it must be based on sufficient facts or data, it must be the product of reliable principles and methods, and the expert must have reliably applied those principles and methods to the facts of the case. *Id*. Expert testimony is reliable if the expert's knowledge has a basis in the knowledge and experience of the relevant discipline. *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 592 (1993). This is a flexible standard. *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141 (1999).

The Court's task in determining the admissibility of expert testimony is not to "decide whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.,* 738 F.3d 960, 969-70 (9th Cir. 2013). The possibility of impeachment is not a proper basis for exclusion because an expert's opinion is always

subject to cross-examination. *Lovett v. Omni Hotels Mgmt. Corp.*, No. 14-cv-02844 RS, 2016 WL 777781, *4 (N.D. Cal. 2016).

### B.     Howard Lubow's Testimony Is Admissible

*1.     Lubow can testify about the regulation and corporate structure of utilities*

Howard Lubow is a consultant with 40 years of experience in the fields of utility regulation, accounting, finance, and operations. Martikan Decl., Exhibit 1, at 1.  The government anticipates that Lubow will testify about the utility regulation landscape, including rate-making, safety regulation, and general utility operations. *Id*. at 1-2; Lin Decl., Exhibit 1, at 3-4.  Lubow will testify about PG&E's corporate structure, and the financial implications of that structure. Lin Decl., Exhibit 1, at 1.  Lubow will testify about PG&E's financial planning and budgeting, and how these practices affected its commitment to safety.  *Id*. at 1-2, 5-8.  Finally, Lubow will testify about PG&E's cost-cutting measures, and their impact on safety. *Id*. at 9-11.

These are all proper areas of expert testimony.  A district court in this district, in a case involving PG&E, held that a qualified expert witness could "testify as [a] witness knowledgeable about the regulatory and accounting aspects of electrical generation, transmission and marketing." *Pacific Gas Elec. Co. v. Lynch*, 216 F. Supp. 2d 1016, 1026 (N.D. Cal. 2002).  Unlike a typical corporation that would be familiar to a jury, PG&E is a regulated utility with a monopoly in the provision of a necessary service, and one that has a significant impact on public safety.  It would be helpful to a jury to understand how such a company is regulated and structured, and how its financial incentives and planning are different from typical corporations.  In a case involving Title IX, a district judge in this district held that an "average juror is unlikely to be familiar with the contours of Title IX or the intricate regulatory scheme created by the NCAA rules," and allowed expert testimony as a "general resource" on these topics.  *Humphreys v. Regents of the Univ. of Cal.*, No. 04-cv-3808 SI, 2006 WL 1867713, *5 (N.D. Cal. 2006).  In that same case, the district judge held that an expert's testimony about executive compensation and "sweetheart" severance deals was both helpful to the jury and relevant to the plaintiff's claim concerning the university's financial motives.  *Id*. at *4.

In another decision from this district that involved PG&E, a magistrate judge recently held that an expert witness could testify "based on his experience in the industry regarding industry standards and

express an opinion as to whether FWM's systems were consistent with those standards." *Tesoro Refining & Marketing Co. LLC v. Pacific Gas & Elec. Co.,* No. 14-cv-0930 JCS, 2016 WL 158874, *12 (N.D. Cal. 2016); *see also Rountree v. Ching Feng Blinds Indus. Co., Ltd.*, No. 04-cv-112 JWS, 2008 WL 7811565, *2 (D. Alaska 2008) (allowing an expert engineer to "opine as to the adequacy of [defendant's] safety standard based on the documents that he has inspected."). Given PG&E's position, reflected in its proposed jury instructions, that its regulatory compliance should be based on engineering judgment, it cannot now argue that expert testimony about industry standards is not relevant.

      2. *Lubow will not draw conclusions regarding PG&E's corporate intent*

PG&E claims that Lubow will testify as to its "corporate intent." Motion at 2, 4. This is not true; neither Lubow's summary of testimony nor the government's disclosure makes this claim. Lin Decl., Exhibit 1; Martikan Decl., Exhibit 1. PG&E's reference to internal government emails and Lubow's invoices that use the phrase "financial motive" is irrelevant, as they do not determine the bounds of his testimony. Motion at 4. But Lubow may testify about corporate practices and policies, and a jury may use that testimony and other evidence in ascertaining PG&E's intent. *United States v. Finley*, 301 F.3d 1000, 1015 (9th Cir. 2002) (allowing "expert testimony on a defendant's mental state so long as the expert does not draw the ultimate inference or conclusion for the jury"). The jury is free to accept or reject Lubow's testimony, and will reach its own conclusions regarding PG&E's intent. *Id*. at 1016 ("We also observe that a jury is free to reject Dr. Wicks' testimony.").

Indeed, a persuasive discussion of the permissible bounds of an expert's intent-related testimony comes from a Seventh Circuit opinion that PG&E discusses in its motion, *DePaepe v. Gen. Motors Corp.*, 141 F.3d 715, 720 (7th Cir. 1998). In *DePaepe*, the plaintiff introduced expert testimony that General Motors had reduced the padding in a sun visor to save money. *Id*. The Seventh Circuit held that this direct testimony about General Motor's financial motive was improper absent some scientific basis for it, but the expert could testify "as an engineer that reducing the padding saved a particular amount of money," or that "GM's explanation for the decision was not sound (from which the jury might infer that money was the real reason)." *Id*. Lubow's testimony will go no farther than what the Seventh Circuit allowed in *DePaepe*; he will testify regarding PG&E's safety practices and allocation of

financial resources.  Lin Decl., Exhibit 1, 1-3.  The jury can draw its own inferences about PG&E's motives.

### 3. *Lubow can testify about PG&E internal documents and communications*

PG&E also attacks Lubow's reliance on PG&E documents and internal communications, arguing that he "has never worked at PG&E and has no first-hand percipient information for the jury on these topics.").  Motion at 3.  This claim is legally baseless; experts routinely testify on the basis of hearsay information obtained from another party.  Fed. R. Evid. 704 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of . . . .").  The pertinent question is whether experts in the particular field would reasonably rely on that data, not whether the expert has "first-hand percipient information."  *Id*.  Otherwise, only PG&E employees could testify about PG&E corporate practices; the rules of evidence do not intend that outcome.

### 4. *Lubow's testimony will not alter PG&E's standard of care*

PG&E characterizes Lubow's testimony as improperly raising its standard of care from "only mandatory" pipeline maintenance to "safety."  Motion at 5-6.  The risk, PG&E claims, is that the jury may be led to believe "that something other than the specific words of the regulation matter in this regulatory criminal case."  *Id*. at 6.  This is untrue, inconsistent with the regulatory language, and even contradicts PG&E's own interpretation of those regulations as reflected in its proposed jury instructions, which base compliance on the exercise of sound engineering judgment.  The pipeline safety regulations at issue in this case established minimum safety standards for pipeline transportation to protect against risks to life and property.  They require ongoing creation and maintenance of records — and ongoing reference to those records — in order to remain in compliance.  For example, the record-keeping regulations require that PG&E maintain certain repair records for as long as certain pipes remain in service.  49 C.F.R. § 192.709(a).  The identification and treatment of certain pipeline threats depend on historical operating pressure data that PG&E must maintain in order to comply with integrity management regulations.  49 C.F.R. § 192.917(e).

If PG&E has set corporate priorities that allocate money to executive compensation (for example) rather than integrity management, despite knowing of significant defects in recordkeeping and pipeline maintenance, the jury could properly infer that PG&E intentionally disregarded regulatory

duties in its pursuit of other priorities. *See, e.g., DePaepe*, 141 F.3d at 720 (allowing expert testimony that a corporate decision that reduced safety resulted in financial savings, and that its non-financial basis for the decision was unsound).

### 5. Lubow's spending analysis is reliable

PG&E challenges Lubow's proposed testimony that PG&E underspent CPUC authorized expenditures (Lin Decl., Exhibit 1, at 2) as unreliable because it does not agree with Lubow's calculations, which it characterizes as "full of holes." Motion at 6-7. PG&E warns that, if the Court allows this testimony, then "the defendant will have to counter it with its own expert testimony" and "the jury will have to endure a lengthy accounting case" even though the CPUC purportedly "rejected the analysis." *Id*. at 9. None of these attacks are proper *Daubert* challenges. The fact that Lubow's testimony may be subject to impeachment, that it may lead to a battle of the experts (though PG&E has not designated its own expert on this issue), or that it may require lengthy accounting testimony, is irrelevant to the *Daubert* reliability analysis. *Alaska Rent-A-Car*, 738 F.3d at 969 ("Basically, the judge is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable.").

Juries in any corporate case are exposed to expert accounting testimony; this case is no different. PG&E does not claim that Lubow has misapplied basic accounting principles. Rather, PG&E disagrees with his assumptions and conclusions. Motion at 7. This is a proper area for cross-examination, but not exclusion under *Daubert*. In rejecting a similar challenge to an expert's lost-profits calculation, the Ninth Circuit noted in *Alaska Rent-A-Car* that challenges to the expert's assumptions and extrapolations "all go to the weight of the testimony and its credibility, not its admissibility." 738 F.3d at 970.

PG&E also reads a great deal into Lubow's disclosure, and appears to mischaracterize his proposed testimony. For example, Lubow's summary of testimony notes that PG&E "underspent its approved level of expenditures over an extended period of time in both its gas distribution and gas transmission operations." Lin Decl., Exhibit 1, at 2. Lubow will testify about how much money PG&E told the CPUC it required, how much money the CPUC allowed PG&E to collect from rate-payers, and how PG&E used this money. *Id*. PG&E challenges much more specific allocations than Lubow claims to make, such as "spending on specific tasks." Motion at 7. Indeed, in a footnote PG&E acknowledges

that the CPUC approved "forecasts for general categories" but not "specific amounts adopted for certain accounts." Motion at 8 n.4. Thus, PG&E has imbued Lubow's testimony in this area with more specificity than he proposes, merely to attack it as overly speculative. *Id.* at 8-9. If PG&E wishes to impeach Lubow's actual testimony on this point, then the proper vehicle is cross-examination, not exclusion.

### C. Steve Nanney's Testimony is Admissible

The government will call Steve Nanney, a senior engineer at PHMSA, to testify about Pipeline Safety Act regulatory requirements. Martikan Decl., Exhibit 2, at 2. PG&E argues that this testimony would usurp the Court's authority to instruct the jury on the law. Motion at 10. PG&E is incorrect; the Ninth Circuit, other circuit courts, and district courts in this district and throughout the Ninth Circuit have held that experts may properly explain complex and technical regulatory requirements. The Ninth Circuit has held that an expert does not usurp the district court's authority to instruct the jury by explaining the legal requirements in a particular area. *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) ("Caliri's testimony did not improperly usurp the court's role by instructing the jury as to the applicable law"); *see also United States v. Nguyen*, 497 F. App'x 722, 724 (9th Cir. 2012) ("The expert did not testify to legal conclusions, but instead provided permissible background on the regulatory framework.") (citing *Hangarter*, 373 F.3d at 1016-17). The Ninth Circuit found this type of testimony permissible "as a matter of trial management" in cases involving "highly complex and technical matters." *Flores v. Arizona*, 516 F.3d 1140, 1166 (9th Cir. 2008), *reversed on other grounds by Horne v. Flores*, 557 U.S. 433 (2009). The Sixth Circuit upheld expert testimony about medicare requirements for the same reason. *United States v. White*, 492 F.3d 380, 399-404 (6th Cir. 2007) (holding that testimony about Medicare's structure, reimbursement and audit processes, and other Medicare concepts constitutes expert testimony because it relies upon an understanding of the workings of "a complex and intricate regulatory scheme . . . acquired over years of experience . . . as well as [the witnesses'] understanding of various terms").

District courts in this district and others throughout the Ninth Circuit have routinely admitted expert testimony about technical regulatory requirements. In a securities case, a district judge in this district allowed expert testimony "regarding the industry practice and regulatory framework for a mutual

fund's communications with the public, the process by which communications with the public are created, reviewed, and approved" because it "is the proper subject of expert testimony and may be helpful to the jury in understanding the technical regulatory process and industry practice." *S.E.C. v. Daifotis*, No. 11-cv-0137 WHA, 2012 WL 2051193, *3 (N.D. Cal. 2012). And in a case involving Title IX, a district judge in this district held that an expert could be "a general resource on Title IX and [the] NCAA" because "the average juror is unlikely to be familiar with the contours of Title IX or the intricate regulatory scheme created by the NCAA rules." *Humphreys*, 2006 WL 1867713 at *5.

District courts elsewhere in California and the Ninth Circuit have allowed expert testimony about regulatory requirements in various contexts. *Siring v. Oregon St. Bd. Of Higher Ed.*, 927 F. Supp. 2d 1069, 1077 (D. Or. 2013) (regulations governing the Oregon University system); *Staub v. Breg, Inc.*, No. 10-cv-2038 PHX-FJM, 2012 WL 1078335, *2 (D. Ariz. 2012) (FDA regulations for drug approval); *Chandler v. Greenstone, Ltd.*, No. 04-cv-1300 RSL, 2012 WL 882756, *1 (W.D. Wash. 2012) (same); *In re: Zicam Cold Remedy Products Liability Litigation*, No. 09-md-2096 PHX-FJM, 2011 WL 798898, *19 (D. Ariz. 2011) (FDA labeling regulations); *United States v. Eastern Municipal Water Dist.*, No. 04-cv-8182 CBM, 2008 WL 4755425, *2 (C.D. Cal. 2008) (environmental regulations: "[w]here complex administrative processes are at issue, expert testimony can be helpful to explain them to the trier of fact.").

Throughout this case, PG&E has emphasized the complexity and highly technical nature of the Pipeline Safety Act regulations. Indeed, the regulations include many technical terms of art and cross-references to engineering standards. For that reason, Nanney's testimony will help the jury understand the Pipeline Safety Act's regulatory scheme.

### C.   Margaret Felts's Summary Testimony Is Admissible

The government will call Margaret Felts as a summary witness, to summarize PG&E's recordkeeping practices. Martikan Decl., Exhibit 1, at 4. Because the government will not call Felts as an expert witness, PG&E's claim that she "cannot testify as an expert" is irrelevant. Motion at 11-12.

PG&E argues that Felts cannot testify as a summary witness under Fed. R. Evid. 1006 because the government has not produced the underlying documents for her testimony. Motion at 13. This is

1  incorrect.  The documents underlying Felts's summary are PG&E's own documents, which the
2  government has produced to PG&E in discovery.  Martikan Decl., Exhibit 1, at 4.
3  Moreover, PG&E's attempt to exclude Felts's testimony is not ripe.  Her testimony is not
4  governed by the Court's expert disclosure deadline, and Rule 1006 does not provide a deadline for the
5  production of documents underlying a summary witness's testimony.  Indeed, the rule provides that the
6  Court may order these documents to be produced in court.  Fed. R. Evid. 1006.  In any event, PG&E has
7  these records.
8  PG&E's reference to the Ninth Circuit's caution in admitting summary evidence under Fed. R.
9  Evid. 611(a) in *United States v. Baker*, 10 F.3d 1374, 1412 (9th Cir. 1993), does not apply here.  The
10 Ninth Circuit's concern in that case was the use of an expert witness to summarize evidence, because the
11 expert's qualifications might lend undue credibility to the evidence that he summarized.  *Id*.  The Court
12 nevertheless held that the evidence was properly admitted under Rule 611(a).  *Id*.  In this case, Felts will
13 not testify as an expert, and she will testify from PG&E's records, so any supposed credibility that her
14 testimony would lend to those records would favor PG&E, not the government.
15 The Court should not exclude Felts's testimony.

## CONCLUSION

17 The Court should deny PG&E's motion in limine to exclude expert and summary witness
18 testimony.

19 DATED: March 11, 2016                        Respectfully submitted,

                                               BRIAN J. STRETCH
                                               Acting United States Attorney


                                               _____/s/_____
                                               OWEN P. MARTIKAN
                                               Assistant United States Attorney