UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>    Defendant. | Case No.  14-cr-00175-TEH-1   (MEJ)<br><br>**ORDER RE: JOINT DISCOVERY LETTERS**<br><br>Re: Dkt. Nos. 380-85 |

## INTRODUCTION

The Court is in receipt of several joint discovery letters following the parties' in court meet and confer on March 16, 2016.  *See* Dkt. Nos. 380-85; *see also* Dkt. No. 376 (stipulation describing in court meet and confer).  Having considered the parties' positions, the relevant legal authority, and the record in this case, the Court issues the following Order.

## BACKGROUND

Defendant Pacific Gas and Electric Company's ("PG&E") originally filed five discovery letter briefs, all concerning PG&E's requests for discovery from the government.  *See* Dkt. Nos. 331-35; *see also* Dkt. No. 337 (Suppl. Ltr.).  Although the undersigned's Discovery Standing Order requires both parties to include their positions in any discovery letter, the government did not provide its portion of the letters.  *See* Discovery Standing Order ¶ 2.  PG&E attached copies of an email government attorneys sent in response to PG&E's draft letter briefs that indicated the government did not find it appropriate to raise these discovery matters before the undersigned. The presiding judge in this matter, the Honorable Thelton E. Henderson, referred all discovery to the undersigned in December 2015.  *See* Referral Order, Dkt. No. 200.  Accordingly, after reviewing the letters, the government's email, and the related documents, the undersigned ordered the parties to an in-court meet and confer, after which they could re-file their letters if necessary and the government could more fully articulate its position as to why the undersigned should not

hear this dispute. *See* Dkt. No. 354. The parties attended the in-court meet and confer on March 16, 2016 and filed amended discovery letters. Dkt. Nos. 380-85; *see also* Dkt. No. 376.

Following an initial review of these letters, the undersigned issued an Order acknowledging the parties' resolution of the dispute described in the letter at Dkt. No. 380 and that the government would produce documents in accordance with the parties' agreed upon procedures as described in their letter. Dkt. No. 388. The undersigned also ordered supplemental responses concerning (1) the government's production of materials for Mr. Howard Lubow and what relief PG&E may still seek at this point (*see* Dkt. No. 382); and (2) whether the government's March 22 production of additional unredacted Jencks materials resolved the parties' disputes as to these materials (*see* Dkt. No. 383). The parties timely filed responses on March 25. Dkt. Nos. 403, 404.

The parties' letters and the Court's analysis are described below. Additionally, the Court notes that Judge Henderson already considered several of the issues in these discovery letters in a June 29, 2015 Order ("June 29 Order," Dkt. No. 103), in which Judge Henderson granted in part four of PG&E's motions to compel, as well as in a November 12, 2015 Order ("Nov. 12 Order," Dkt. No. 195), where he granted in part PG&E's motion to enforce the June 29 Order. The Court refers to and relies on Judge Henderson's prior rulings thorough this Order.

## LEGAL STANDARDS

### A.      Rule 16 Discovery

In relevant part, Federal Rule of Criminal Procedure 16 requires the government to allow a defendant to "inspect and to copy . . . documents, data, [and other items] . . . if the item is within the government's possession, custody or control and: (i) the item is material to preparing the defense; . . . ." Fed. R. Crim. P. 16(a)(1)(E). "The Advisory Committee's Notes explain that this rule was adopted 'in the view that broad discovery contributes to the fair and efficient administration of criminal justice.'" *United States v. Johnson*, 2015 WL 2125132, at *1 (N.D. Cal. May 6, 2015) (quoting Fed. R. Crim. P. 16 advisory committee's notes (1974 Amendment)).

"A defendant must make a threshold showing of materiality, which requires a presentation of facts which would tend to show that the Government is in possession of information helpful to the defense." *United States v. Santiago*, 46 F.3d 885, 894 (9th Cir. 1995) (quotations omitted).

United States District Court
Northern District of California

This showing requires a defendant to provide "specific facts, beyond allegations" to support a claim of materiality. *Id.* at 894-95. "Neither a general description of the information sought nor conclusory allegations of materiality suffice . . . ." *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990) (citations omitted). Nonetheless, the Ninth Circuit has "behoove[d] the government to interpret the disclosure requirement broadly and turn over whatever evidence it has pertaining to the case." *United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013) (citations omitted). The Court of Appeals has recognized that "[m]ateriality is a low threshold; it is satisfied so long as 'the information . . . would have helped' [to] prepare a defense. Information is material even if it simply causes a defendant to 'completely abandon' a planned defense and 'take an entirely different path.'" *Id.* (quotation omitted). That said, "the Court's Rule 16 inquiry does not end merely because the Government says the requested documents are not material." *Johnson*, 2015 WL 2125132, at *4. "Indeed, the Ninth Circuit instructs that 'the district court should not merely defer to government assertions that discovery would be fruitless.'" *Id.* (quoting *United States v. Budziak*, 697 F.3d 1105, 1112-13 (9th Cir. 2012)).

Moreover, "Rule 16 materials need not be admissible, 'as long as there is a strong indication that . . . the evidence will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.'" *United States v. Johnson*, 2015 WL 3630952, at *1 (N.D. Cal. June 10, 2015) (quoting *United States v. Bergonzi*, 216 F.R.D. 487, 501 (N.D. Cal. 2003)); *see also United States v. Price*, 566 F.3d 900, 913 n.14 (9th Cir. 2009) (evidence is discoverable under Rule 16 "even if the evidence is not admissible so long as it is reasonably likely to lead to admissible evidence." (quotations omitted)). Nonetheless, "the triggering requirement under rule 16(a)(1)(E) is that the papers, documents, and tangible objects be in the actual possession, custody or control of the government." *United States v. Fort*, 472 F.3d 1106, 1118 (9th Cir. 2007) (quotation, internal marks, and footnote omitted).

**B.     *Brady/Giglio* Obligations**

"The rule announced in *Brady v. Maryland*, 373 U.S. 83 [] (1963), 'is not a discovery rule, but a rule of fairness and minimum prosecutorial obligation.'" *United States v. Dejarnette*, 2011

United States District Court
Northern District of California

3

WL 838898, at *2 (N.D. Cal. Mar. 4, 2011) (quoting *United States v. Beasley*, 576 F.2d 626, 630 (5th Cir. 1978)) (additional citation omitted).  The government thus has a separate due process obligation to disclose "evidence favorable to an accused . . . [that] is material either to guilt or to punishment."  *Brady*, 373 U.S. at 87.  Favorable evidence includes that which impeaches a prosecution witness.  *Giglio v. United States*, 405 U.S. 150, 154 (1972).

"The prosecution's duty to reveal favorable, material information extends to information that is not in the possession of the individual prosecutor trying the case."  *Amado v. Gonzalez*, 758 F.3d 1119, 1134 (9th Cir. 2014).  "[B]ecause the prosecution is in a unique position to obtain information known to other agents of the government, it may not be excused from disclosing what it does not know but could have learned."  *Id.* (quotation omitted).  However, the federal government "is not obligated to review state law enforcement files not within its possession or control."  *United States v. Dominguez-Villa*, 954 F.2d 562, 566 (9th Cir. 1992).  Furthermore, the government's *Brady* obligation is a "self-executing responsibility on the part of the prosecutor. . . . [T]here is no need for a court order to require compliance with *Brady*/*Giglio*."  *United States v. Flores*, 2011 WL 1100137, at *1 (N.D. Cal. Mar. 24, 2011); *see also United States v. Jennings*, 960 F.2d 1488, 1491-92 (9th Cir. 1992) (admonishing courts to avoid interfering with executive branch's *Brady* obligations unless there is "a clear basis in law or fact to believe that [interference is] necessary . . . ."); *United States v. Miller*, 722 F.2d 562, 565 (9th Cir. 1983) ("[C]ourts . . . should avoid creating broad rules that limit traditional prosecutorial independence.").  Nonetheless, the Supreme Court has observed that "the prudent prosecutor will err on the side of transparency, resolving doubtful questions in favor of disclosure."  *Cone v. Bell*, 556 U.S. 449, 470 n.15 (2009) (citations omitted).

The *Brady* standard for materiality is "much higher, and its scope much narrower" than under Rule 16.  *Johnson*, 2015 WL 3630952, at *2 (citing *Brady*, 373 U.S. at 87 (*Brady* evidence is exculpatory evidence relating to guilt or punishment) and *United States v. Muniz-Jaquez*, 718 F.3d 1180, 1183 (9th Cir. 2013) ("Rule 16 is thus broader than *Brady*. Information that is not exculpatory or impeaching may still be relevant to developing a possible defense.")).

//

### C.     Federal Rule of Evidence 404(b) Notice

Federal Rule of Evidence 404(b) provides for the admissibility of a "crime, wrong, or other act" for limited purposes.  Fed. R. Evid. 404(b)(1).  "The rule is designed to avoid a danger that the jury will punish the defendant for offenses other than those charged, or at least that it will convict when unsure of guilt, because it is convinced that the defendant is a bad man deserving of punishment."  *United States v. Hill*, 953 F.2d 452, 457 (9th Cir. 1991), *as amended* (Dec. 16, 1991) (quotations omitted).  "On request by a defendant in a criminal case, the prosecutor must: (A) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and (B) do so before trial . . . ."  Fed. R. Evid. 404(b)(2).  What constitutes reasonable notice "will depend largely on the circumstances of each case."  Fed. R. Evid. 404(b) advisory committee's note (1991 Amendment) (citations omitted).

### D.     Jencks Act Disclosures

The Jencks Act, 18 U.S.C. § 3500, provides another discovery mechanism: "it requires that any statement in the government's possession that is made by a government witness, whether exculpatory or not, be produced to the defense after the witness testifies."  *United States v. Yan Juan Zhen*, 2015 WL 727923, at *3 (D. Nev. Feb. 19, 2015); *United States v. Griffin*, 659 F.2d 932, 936 (9th Cir. 1981) (the Jencks Act "prohibits the pre-trial discovery of statements made by prospective government witnesses.  However, after such a witness testifies at trial, the Act requires that the government produce upon demand any available statement made by the witness which relates to the subject matter of such witness's testimony at trial.").  The Act defines "statements" as: (1) writings made by the witness and "signed or otherwise approved or adopted" by him, or (2) accounts which are "a substantially verbatim recital" of the witness's oral statements "recorded contemporaneously with the making of such oral statement."  18 U.S.C. § 3500(e).

### DISCUSSION

### A.     Letter re: Rule 404(b) "Other Act" Allegations (Dkt. No. 381)

The parties dispute whether the government has completed its document production related to its "inextricably intertwined" and Rule 404(b) "other act" allegations.  Dkt. No. 381 at 1.  PG&E explains the government has seven remaining "inextricably intertwined" other act topics,

1    two of which are also Rule 404(b) topics.  *Id.*  On February 12, 2016, PG&E inquired with the

2    government to confirm whether it had completed its document productions on its seven topics but

3    contends the government declined to confirm this.  *Id.*  Accordingly, PG&E now seeks an order

4    compelling the government to complete its production of discovery concerning:

5

6       1.  "2013 [California Public Utilities Commission ("CPUC")] Fines
           PG&E for Record Deficiencies in San Carlos," and the evidence

7           described in the government's Motion in Limine #5. *See* Dkt.
           236 at 7. (The government disclosed this under Rule 404(b)).

8       2.  "PG&E's [Alleged] Failure to Integrate Pipe Data," and the

9           evidence described in the government's Motion in Limine #6.1
           *See id.* at 9. (The government also attempted to disclose this

10          under Rule 404(b).)

11      3.  "PG&E's [Alleged] Failure to Integrate Pipe Data," and the
           evidence described in the government's Motion in Limine #7.1.

12          *See id.* at 12.

13      4.  "[Gas Pipeline Replacement Program] to [Risk Management
           Program]," and evidence described in the government's Motion

14          in Limine #7.2. *See id.*

15      5.  "Planned Pressure Increase Program," and the evidence
           described in the government's Motion in Limine #7.3. *See id.* at

16          13.

17      6.  "Unplanned Pressure Increases," and the evidence described in
           the government's Motion in Limine #7.4. *See id.*

18      7.  "CPUC Imposed Fine Related to San Bruno Explosion," and the

19          evidence described in the government's Motion in Limine #7.5.
           *See id.*

20   Dkt. No. 381 at 1-2 (brackets in original).

21       PG&E asserts that in the June 29 Order, Judge Henderson ordered the government to

22   provide notice of its Rule 404(b) evidence and to produce a host of materials, including Rule 16

23   and *Brady* materials, and that in the Nov. 12 Order, he granted in part PG&E's motion to enforce

24   the June 29 Order.  *Id.* at 1.  PG&E now contends that "[f]or clarity and completeness, consistent

25   with the June 29 and November 12 orders and the government's discovery obligations generally,

26   the government's productions here must include: (i) all *Brady* and Rule 16 materials for all seven

27

28

United States District Court
Northern District of California

topics (including (a) PHMSA and NTSB[1] statements about and interpretations of the various underlying rules and regulations and (b) materials from other operators) and (ii) CPUC information such as evidence related to the 2013 CPUC fine involving Line 147 and the 2015 penalty resulting from the CPUC's Orders Instituting Investigations." *Id.* at 2.

The government believes it has fully complied with its disclosure responsibilities, including all *Brady* and Rule 16 obligations regarding the PHMSA and NTSB. *Id.* at 3. It contends Judge Henderson has ordered that the government's Rule 16 discovery obligations do not extend to the CPUC and that categories (2) through (6), above, misconstrue the government's theory of relevance of this evidence. *Id.* (citing June 29 Order at 10-11). Specifically, the government explains it intends to offer evidence regarding PG&E's actions as to other pipelines to prove PG&E's "willfulness in violating the charged regulations on the lines contained in the superseding indictment[,]" but not to prove the violations of uncharged regulations. *Id.* Consequently, it argues "PHMSA's and the NTSB's interpretations of uncharged regulations, or for that matter other operators' interpretations of other regulations, [are] irrelevant." *Id.* PG&E disagrees that the government's evidentiary theory protects these materials from discovery, arguing that "the act is only relevant—and the proceedings only meaningful—to the extent it involves violating some particular law." *Id.* at 3.

Having considered the parties arguments, the Court finds the government must produce all *Brady* and Rule 16 materials for all seven topics and the CPUC information listed above. The government's objections are limited to the relevance of these requests and the fact that Judge Henderson previously found the government's Rule 16 discovery obligations do not extend to the CPUC. First, as to the relevance of the information sought, even if the government is not "seek[ing] to prove the violations of uncharged regulations" the government is attempting to show PG&E's "actions as to other pipelines" to prove PG&E's "willfulness." *Id.* at 3. The government can use PG&E's so-called "bad acts" with regard to other pipelines to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," *see* Fed. R.

---

[1] The "PHMSA" is the Pipeline and Hazardous Materials Safety Administration, and the "NTSB" is the National Transportation Safety Board.

United States District Court
Northern District of California

1    Evid. 404(b)(2), but in such instances it is material to PG&E's defense to be able to question this

2    evidence and the government's interpretation of it, and to do so, PG&E should have access to the

3    information the government relies on in the seven topics above.  Second, while the government is

4    correct that Judge Henderson's prior ruling held that "documents in the possession of the CPUC,

5    and not in the actual possession of the Government, do not fall within the ambit of Rule 16[,]"

6    June 29 Order at 10-11, he did not rule that PG&E could not obtain materials in the *government*'s

7    possession and control that relate to the CPUC.  To the extent the materials in the seven topics

8    above are in the government's possession, it can be required to turn over such materials.  *See Fort*,

9    472 F.3d at 1118 (state-gathered evidence becomes subject to disclosure when it passes into

10   federal possession).  As the government has provided no other objections to the disclosure of these

11   materials,[2] the Court finds that they should be produced.

12   **B.     Letter re: Expert Discovery Materials (Dkt. No. 382)**

13          The parties dispute whether the government failed to produce certain expert materials.

14   Dkt. No. 382.  Specifically, PG&E contends that the government's expert disclosures and its

15   production of discoverable expert materials are deficient for three witnesses: Howard Lubow,

16   Steven Nanney, and Margaret Felts.  *Id.* at 1.  It asserts that

17               Pursuant to Rule 16(a)(1)(G), "the government must give to the
18               defendant a written summary of any testimony that the government
                 intends to use under [Federal Rules of Evidence] 702, 703, or 705,"
                 including a "descri[ption of] the witness's opinions, [and] the bases
19               and reasons for those opinions." This summary must include "the
                 expected testimony, not a list of topics." *United States v. Duvall*,
20               272 F.3d 825, 828 (7th Cir. 2001); *see also United States v. Peel*,
                 No. 2:14-cr-192, 2014 WL 5473141, at *2 (E.D. Cal. Oct. 23, 2014).
21               In conjunction with a compliant Rule 16(a)(1)(G) summary, the
                 government must produce, or at least specifically identify, materials
22               on which its expert relies. *See United States v. Grace*, 526 F.3d 499,
                 513 (9th Cir. 2008) ("ident[ification of] the documents or
23               information that the expert reviewed" is "a condition well within
                 Rule 16's requirement that expert disclosures describe 'the bases
24               and reasons for those opinions'").

25

26   _____

27   [2] The government mentions that PG&E has "raised the issue of admittance of 404(b) evidence,
     including its allegedly late disclosure, in motions *in limine* before Judge Henderson." Dkt. No.
     381 at 3.  It is not clear whether the government intends this as an additional objection, but in any

28   event, the fact that Judge Henderson may ultimately decide not to admit any such evidence does
     not mean that it should be barred from discovery.

*Id.* The Court considers the parties' arguments about the completeness of the government's production for each of the three witnesses.

       1.   <u>Mr. Lubow</u>

     The government and PG&E have arrived at a resolution of sorts considering the government's production of materials related to Mr. Lubow. *See id.* at 1-2; Dkt. No. 403 (suppl. ltr.). That said, PG&E continues to raise six areas where it believes Court intervention is required:

> 1. Proxies of more than 30 companies on which Mr. Lubow's analysis is in part based. . . .
>
> 2. "Compensation Study Data" identified in and underlying Mr. Lubow's analysis. . . .
>
> 3. Materials used by Mr. Lubow to create a timeline attached to his report. . . .
>
> 4. Documents regarding Mr. Lubow's "reengineering and downsizing program." . . . .
>
> 5. Documents regarding Mr. Lubow's "management incentive program." . . .
>
> 6. Mr. Lubow's prior testimony in regulatory and civil litigation proceedings (over 100). . . .

Dkt. No. 382 at 2; Dkt. No. 403 at 1-2. Having reviewed the parties' latest letter, it appears they have not truly met and conferred on these matters as their positions do not align in many respects. For instance, as to the materials used by Mr. Lubow to create a timeline attached to his report, PG&E notes the government has represented it already produced this information, but PG&E requests the government identify the Bates numbers so that it does not have to sift through millions of pages of documents to locate the specific documents Mr. Lubow chose to support his timeline. Dkt. No. 403 at 2, 4. The government does not say whether it will produce those Bates numbers or whether it objects to doing so. Additionally, as to Mr. Lubow's management incentive program, the government states PG&E has "misstated the government's position" for whether it will produce any documents, which again shows that the parties have not adequately met and conferred on these issues. *Id.* at 4. Finally, much of the disputed information was supposed to be produced by the government this week, which could make many of the issues raised in this letter

1    moot.  *See id.* at 1-4.  Accordingly, the Court will deny without prejudice PG&E's request for

2    discovery as to Mr. Lubow.  If it wishes to re-assert these matters, the parties must again meet and

3    confer so they clearly understand one another's position, and then they may file another letter in

4    compliance with the undersigned's Discovery Standing Order.

5            2.    Mr. Nanney

6            The government disclosed Steven Nanney (General Engineer, PHMSA) as "its expert

7    regarding federal pipeline safety regulations."  Dkt. No. 382 at 2.  Mr. Nanney replaced a

8    previously-disclosed expert witness, Alan Beshore.  *Id.*  PG&E now requests an order compelling

9    the government to produce a proper Rule 16(a)(1)(G) summary (complete with "opinions, [and]

10   the bases and reasons for those opinions") and Mr. Nanney's relied on materials.  *Id.* at 3.

11           a.    *Rule 16(a)(1)(G) Summary*

12           PG&E indicates it has received no written summary from the government as to Mr.

13   Nanney's future testimony at trial or any of his opinions, the bases and reasons for those opinions,

14   or his qualifications as required under Rule 12(a)(1)(G), while the government responds that it

15   "addressed Mr. Nanney's testimony and the bases for his testimony in its response to the

16   defendant's pending motion to exclude government experts. Dkt. 367."  Dkt. No. 382 at 2-3, 5.

17   Rather than the actual document in Dkt. No. 367, the government appears to be referring to the

18   materials it submitted in support of its arguments in opposing PG&E's motion *in limine* to exclude

19   Mr. Nanney.  Specifically, attached to Owen P. Martikan's declaration is a copy of a letter the

20   government sent to PG&E's counsel that provides a "summary of Nanney's Opinions," the "Bases

21   for Nanney's Opinions," and information about his "Expert Compensation."  Dkt. No. 368-2.

22   PG&E does not appear to have seen the government's response or at least was not aware of it for

23   purposes of this discovery dispute.  Again, the parties' arguments are like ships passing in the

24   night, suggesting they have not adequately conferred on these matters before raising them with the

25   Court.  Given this situation, it is not appropriate to rule on these matters at this time.  Accordingly,

26   the Court orders the parties to meet and confer on this matter by April 8, 2016, and if PG&E still

27   contends the government's summary is inadequate and the government otherwise refuses to

28   supplement the summary, PG&E may re-raise the issue with the Court at that time in compliance

United States District Court
Northern District of California

10

1 | with the undersigned's Discovery Standing Order.

2 |  　　　　**b.**　　**Relied on Materials**

3 |  　　　　According to PG&E, the government "has not produced, or even identified, any specific

4 | materials on which Mr. Nanney relies," which it contends are "well within Rule 16's requirement

5 | that expert disclosures describe the bases and reasons for those opinions."  Dkt. No. 382 at 3

6 | (quoting *Grace*, 526 F.3d at 513).  The government again does not respond directly to PG&E's

7 | assertion and does not give any indication about whether it believes it has identified or produced

8 | any documents responsive to PG&E's request.  Instead, the government notes PG&E "highlighted

9 | documents concerning Nanney, which PHMSA has withheld under the deliberative process

10 | privilege for confidential agency material concerning a pending rule-making, that *may* state his

11 | current interpretations of the regulations at issue."  *Id.* at 5.  The government states it "agreed to

12 | look into this issue and has proposed to PHMSA the release of those documents under an attorney-

13 | eyes only protective order."  *Id.*  It provides no other information about whether it has produced or

14 | identified documents.

15 |  　　　　The Court notes it has recently granted the parties' stipulation for a protective order for

16 | certain PHMSA materials.  *See* Dkt. No. 395.  Additionally, having reviewed the letter the

17 | government sent to PG&E's counsel with the "Bases for Nanney's Opinions," it appears some of

18 | the materials Nanney relies on are identified in that document.  Dkt. No. 368-2 at 4.  Nonetheless,

19 | the government's letter is somewhat vague as to specific materials Mr. Nanney relies on, and

20 | without the government's complete response indicating whether it has in fact identified or

21 | produced more relevant materials elsewhere to PG&E, the Court cannot confirm that the

22 | government has met its Rule 16 obligations.  Accordingly, the Court will order the government to

23 | identify and produce to PG&E any non-privileged materials Mr. Nanney relied on by April 8.

24 |  　　　　**3.**　　<u>Ms. Felts</u>

25 |  　　　　There is a dispute between the parties about whether government witness Margaret Felts

26 | will serve as an expert witness at trial.  According to the government, it "has repeatedly told the

27 | defendant . . . that it intends to call Felts only as a summary witness; it will not elicit expert

28 | testimony from her."  Dkt. No. 382 at 5.  As such, it argues Rule 16's expert disclosure

United States District Court
Northern District of California

1   requirements do not pertain to Ms. Felts. *Id.* But PG&E disputes this, noting that "the

2   government disclosed retainer agreements for Ms. Felts that indicate that Ms. Felts is an 'Expert

3   Witness' and in fact is providing 'expert witness services.'" *Id.* at 3. Additionally, it notes "the

4   discovery that the government produced on February 12 and 22, 2016 reveals that Ms. Felts has

5   been involved in the government's investigation since at least 2012." *Id.* PG&E questions how

6   "Ms. Felts will somehow 'summarize' the state of PG&E's record-keeping without giving any

7   opinions." *Id.* (citing Dkt. No. 367 at 7 (describing government's intended use of Ms. Felt's

8   testimony at trial). Consequently, PG&E believes that it is entitled to Rule 16(a)(1)(G) materials

9   related to Ms. Felts, as her proposed "summary" is necessarily "based on opinions and on her

10  previous expert work for the CPUC regarding PG&E." *Id.* In the alternative, PG&E argues that

11  even if Ms. Felts does not testify as an expert, the government should still be required to provide

12  full disclosures of her expert work concerning PG&E's record-keeping because "her prior work

13  for the CPUC and her long history with the prosecution team is relevant to her potential bias." *Id.*

14          PG&E specifically seeks the following:

15              1.  A proper Rule 16(a)(1)(G) summary for Ms. Felts—complete
                    with her "opinions, [and] the bases and reasons for those
16                  opinions." Alternatively, if the government maintains that Ms.
                    Felts will not offer any expert testimony, but only "summarize"
17                  "discovery" in this case, that it provide: a) a proper Rule 1006
                    summary and b) identify all documents Ms. Felts will purport to
18                  "summarize." [citation]

19              2.  Materials on which Ms. Felts relied in reaching her opinions.
                    (See same issue discussed above for Mr. Nanney.)
20
                3.  Ms. Felts' files and records of her work as an expert for the
21                  California Public Utilities Commission (which is her sole basis
                    for any first-hand knowledge about PG&E).
22
                4.  All communications between Ms. Felts and the prosecution team
23                  or related government agents in this matter. *See* Dkt. 103 at 30
                    (ordering the government's production of witness statements);
24                  18 U.S.C. § 3500 (Jencks Act).

25  *Id.* at 3-4 (citation omitted as indicated; other brackets in original). The government rejects

26  production under Rule 16's expert disclosure requirements for defense Requests (1)-(3), asserts

27  Ms. Felts' Jencks statements have already been produced (Request (4)), and contends that all of

28  the documents Ms. Felts will summarize have already been made available consistent with Fed. R.

Evid. 1006 (Request (2)).  *Id.* at 5.

Given the government's assurance that Ms. Felts will not offer expert opinions at trial, the Court will not order the government to produce a Rule 16(a)(1)(G) summary under Request 1 or the materials under Request 2.  That said, under Requests 1 and 3, to the extent the government has not done so already, it must produce the documents Ms. Felts will summarize at trial, as well as inform PG&E about what part of the government's production contains that information, for instance by identifying Bates numbers or other such data.  Additionally, to the extent Ms. Felts intends to use "a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court" under Rule 1006, the government must also produce those documents under that Rule to PG&E in advance of trial.

As to Request 4, the government contends it has already produced the information PG&E seeks, thus Court intervention is unnecessary.  Nonetheless, as PG&E appears to dispute this fact, the Court will order the government to inform PG&E about what part of the government's production contains that information, for instance by identifying Bates numbers or other such data.

## C.    Letter re: Redacted Materials Produced on February 22 (Dkt. No. 383)

The parties dispute whether the Court should compel the government to produce unredacted copies of documents produced on February 22, 2016.  Dkt. No. 383.  In that production, the government turned over hundreds of pages of documents, which it characterizes as "Jencks discovery," including proffer agreements, retainer and billing records, attorney and agent emails with individuals on the government's witness list, and attachments.  *Id.* at 1, 3-4.  According to PG&E, the production was "heavily redacted" (*id.* at 1), which the government explains is due to the fact that "statements other than those of witnesses were redacted[,]" because, in the government's view, "Jencks requires the government to produce the prior statement of a witness—not the document itself."  *Id.* at 4 (citing 18 U.S.C. § 3500(e)(1)).

PG&E seeks "un-redacted versions of all documents originally produced on February 22."  *Id.* at 3.  First, it disputes the government's argument that it need only provide the words a witness actually wrote, contending the government has no authority for this position and also that the redacted portions of the production contain statements the government witnesses "adopted or

approved," citing examples of instances where a witness appears to be agreeing or disagreeing with something in the prior email message. *Id.* at 1-2. As such, PG&E argues "it is impossible to fully ascertain what statements [the witness] adopted or approved[,]" which in turn makes it so PG&E "cannot meaningfully confront" the witness. *Id.* at 2. Second, PG&E contends the materials are discoverable under Rule 16, *Brady*, *Giglio*, and Judge Henderson's prior discovery orders. *Id.* It argues "that visible portions of these documents indicate that the blacked-out portions likewise contain exculpatory evidence"—a fact PG&E believes was confirmed when, after the first discovery letter on this matter was filed, the government went back and produced portions of an email it previously redacted and which PG&E argues is exculpatory under *Brady*. *Id.* at 2; *see also* Suppl. Ltr., Dkt. No. 404 at 1. Third, PG&E notes that the government has not produced a privilege log or argued that any of the redacted information is privileged or otherwise protected. Dkt. No. 383 at 2-3. Fourth, and finally, PG&E argues the information is likely to be required at trial under the Rule of Completeness. *Id.* (citing Fed. R. Evid. 106).

The government primarily sets forth its position on this matter in the supplemental letter, providing a lengthy background of the disclosure requirements associated with Rule 16, the Jencks Act, and *Brady/Giglio*. Dkt. No. 404 at 2-4.[3] It provides one paragraph of conclusory analysis:

> In light of the foregoing law, PG&E's demand for removal of the redactions should be denied. The emails are not subject to discovery under Rule 16(a)(1). Nor does an email necessarily constitute a "statement" under the Jencks Act, where it is not "a recorded recital of past occurrences." [*United States v.*] *Kimoto*, 588 F.3d [464,] 491-92 [7th Cir. 2009]. Even if the emails are Jencks "statements," those of the prospective witnesses have been provided, and well before the Act's post-direct examination deadline. Finally, the United States is aware of the nature of the information that has been redacted, has determined that none of it is exculpatory, and presently sees no impeachment value in it.

---

[3] PG&E recently filed an objection to the government's new arguments in the supplemental letter (Dkt. No. 404), indicating that this was the first time the government presented these arguments to PG&E and that the government's opportunity to present further argument on the matter is prejudicial to PG&E. Dkt. No. 412. As noted in this Order, the government's supplemental arguments are largely a discussion of the applicable law already known or researched by the Court, and its substantive analysis is a mere paragraph of generally conclusory assertions. While the government should have presented these arguments and authorities in earlier briefs, the Court finds nothing unduly prejudicial to PG&E in the government's supplemental response. Accordingly, the Court will not strike the government's response in the supplemental letter on this matter.

United States District Court
Northern District of California

1   *Id.* at 4.

2       Despite the government's cursory analysis in these letters, having considered the parties'

3   arguments, the legal authorities, and the supporting documents, the Court finds no grounds to

4   produce this information at this time under the Jencks Act, Rule 16, or *Brady/Giglio*.

5       First, as to Jencks, although the government claims to have produced these redacted

6   documents as "Jencks discovery," Dkt. No. 383 at 4, it now suggests that (1) the Court should

7   delay production of the complete, unredacted emails until the witness testifies, as required by the

8   Jencks Act, and (2) the emails are not "Jencks statements" in the sense that they are not "recorded

9   recital[s] of past occurrences." Dkt. No. 404 at 3-4. The government notes that Rule 16(c)(2)

10  prevents the discovery or inspection of statements made by prospective government witnesses

11  except as provided in the Jencks Act, and that under the Act, "no statement or report in the

12  possession of the United States which was made by a Government witness or prospective

13  Government witness . . . shall be the subject of subpoena, discovery, or inspection until said

14  witness has testified on direct examination in the trial of the case." *Id.* (quoting 18 U.S.C. §

15  3500(a)). There is an internal contradiction in the government's arguments as it seeks to take

16  advantage of the Jencks Act's requirement that the Court cannot order discovery until the witness

17  has testified, while on the other hand arguing the emails are not Jencks materials at all. In any

18  event, accepting PG&E's arguments that it needs these redacted materials for Jencks' purposes,

19  the Court's hands are tied as it is not permitted to order pretrial Jencks discovery. *United States v.*

20  *Taylor*, 802 F.2d 1108, 1118 (9th Cir.1986) (stating that a discovery order requiring earlier

21  disclosure for Jencks information is "unenforceable"); *United States v. Yan Juan Zhen*, 2015 WL

22  727923, at *3 (D. Nev. Feb. 19, 2015) ("During the pretrial phase, the Jencks Act is not the

23  defendant's sword and cannot be used as a discovery device. . . . Rather, it equips the government

24  with a shield, which functions like a protective order.").

25      Second, as to Rule 16, subsection (a)(2) generally prohibits "discovery or inspection of

26  reports, memoranda, or other internal government documents made by an attorney for the

27  government or other government agent in connection with investigating or prosecuting the case"

28  except as permitted by Rule 16(a)(1)(A)-(D), (F), and (G). Fed. R. Crim. P. 16(a)(2). The

United States District Court
Northern District of California

1    government has not specifically articulated how the emails it redacted fall under Rule 16(a)(2)'s

2    protections, but given the context of the emails submitted to the Court, it appears they were made

3    in connection with the investigation and prosecution of this case.  As such, these materials may

4    only be disclosed if they fall under one of Rule 16(a)(2)'s requirements.  However, PG&E's only

5    articulated need for the materials falls under Rule 16(a)(1)(E), i.e., as being "material to preparing

6    the defense," Dkt. No. 383 at 2, which is not an exception to Rule 16(a)(2)'s protections.  *See*

7    *United States v. Rajaratnam*, 2010 WL 1691745, at *1 n.1 (S.D.N.Y. Apr. 27, 2010) (allowing

8    "limited redactions made for legitimate investigative purposes" and noting "Rule 16(a)(2) would

9    seem to allow the government, subject to other disclosure obligations, to refuse to produce

10   interview notes made by government agents in connection with investigating this case.").  As

11   such, the Court has no basis to order the government to disclose these materials under Rule 16.

12         Third, under *Brady/Giglio*, the Court does not currently have a basis to believe the

13   government is withholding materials that must be disclosed as exculpatory or impeachment

14   evidence.  *Cf.* June 29 Order at 11-12 (Court had a "clear basis in fact and law" for disagreeing

15   with the government's "official position" that "PHMSA documents are categorically immaterial"

16   and for ordering the production of related *Brady* materials, albeit "declin[ing] to specific the

17   procedures" the government "must follow to comply with its *Brady* responsibilities[.]" (citation

18   omitted)); *see id.* at 25 n.3 ("[T]he Court presumes that the Government will comply with its

19   *Brady* obligations and obey the law, absent evidence to the contrary." (citing *In re Hergenroeder*,

20   555 F.2d 686, 686 (9th Cir. 1977) (per curiam) (court should presume that government will obey

21   the law)); *Jennings*, 960 F.2d at 1491-92 (admonishing courts to avoid interfering with executive

22   branch's *Brady* obligations unless there is "a clear basis in law or fact to believe that [interference

23   is] necessary . . . .").  While PG&E may be correct that the newly unredacted portions of these

24   emails should have been disclosed earlier under *Brady/Giglio*, it has not shown why the remaining

25   redaction portions are likely to be exculpatory or useful for impeachment purposes.  Nor has it

26   articulated why there is a clear basis in fact or law to believe that the Court should interfere with

27   how the government has complied with its *Brady/Giglio* obligations, particularly now that the

28   government has again reviewed these documents for *Brady/Giglio* compliance.  *See* Nov. 12 Order

United States District Court
Northern District of California

16

United States District Court
Northern District of California

at 6 (declining "to play referee with respect to the Government's *Brady* obligations."). Accordingly, at this time, the Court does not find a basis under *Brady/Giglio* to order the government to unredact these documents.

Finally, PG&E raises the argument under the Rule of Completeness, codified in Federal Rule of Evidence 106, that redacted portions of these documents should be revealed for completeness, presumably have the full context for the *Brady/Giglio* material in the produced documents. In general, Rule 106 seeks to avoid "the unfairness inherent in '[t]he misleading impression created by taking matters out of context.'" *United States v. Dorrell*, 758 F.2d 427, 434 (9th Cir. 1985) (quoting Fed. R. Evid. 106 advisory committee note (1972 Proposed Rules)). However, that concern typically only arises "[i]f a party *introduces* all or part of a writing or recorded statement" at trial, in which case "an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." Fed. R. Evid. 106 (emphasis added). Thus the concern is more evidentiary and generally becomes ripe at trial. *See Rajaratnam*, 2010 WL 1691745, at *1 n.1 (rejecting request to unredact documents under the Rule 106, noting "an evidentiary argument of this sort is premature" before trial). As noted above, PG&E has not explained what basis the Court has for interfering with the government's *Brady/Giglio* obligations or how this evidentiary rule that is generally reserved for trial requires the government to produce such information at this point. PG&E has presented no authority demonstrating that the Rule of Completeness or Rule 106 requires the production of this information. Nonetheless, the Court admonishes the government to tread carefully and heed the Supreme Court's advice that "the prudent prosecutor will err on the side of transparency, resolving doubtful questions in favor of disclosure." *Cone*, 556 U.S. at 470 n.15 (citations omitted). In any case, without more, the Court does not have a basis to require the government to unredact these materials at this time.

**D.    Letter re: Witness Statements and Grand Jury Materials (Dkt. No. 385)**

This discovery letter contains two disputes: (1) whether the government has complied with the Court's June 29 Order requiring the government to produce all witness statements consistent with its obligations under Rule 16 and *Brady* "as soon as practicable after they are obtained[,]"

17

June 29 Order at 28-29, which PG&E now contends includes witness statements from another grand jury investigation; and (2) whether the government has complied with Rule 6(e)(3)(B) and (E) for each of the grand juries that investigated this case.  Dkt. No. 385 at 1-4.

First, as to the witness statements, Judge Henderson recognized in the June 29 Order that the government had confirmed at the time that it "will continue to produce to the defense any new materials consistent with its obligations under Rule 16 and *Brady*" and the Court ordered it to produce all such materials as soon as practicable after they were obtained.  June 29 Order at 28-29; *id.* at 30 ("The Government shall produce new witness statements as soon as practicable after such statements are obtained.").  The Court thus held the government to its word that it would produce such materials without specifically ruling on what grounds these materials had to be produced.

PG&E now argues that it has no idea whether the government has completed production of those statements and further contends that the government should, under the June 29 Order, produce "all interview reports and agent notes reflecting communications between PG&E employees or contractors and PG&E attorneys," as well as witness statements from the other grand jury investigation.  Dkt. No. 385 at 2.  It has requested these materials from the government, but according to PG&E, the government has told it that it will only produce materials that, in the government's view, are relevant to the upcoming trial of this case.  *Id.*  PG&E asserts that "[t]he June 29 Order does not permit the government to decide unilaterally whether to produce these documents based on its opinion as to what is relevant at trial."  *Id.*  It requests an order compelling the government to confirm that it has produced all witness statements from the other grand jury investigation or to complete its production.  *Id.* at 2-3.

The government "believes it has complied with its discovery obligations" under Rule 16, the Jencks Act, and *Brady/Giglio* and asserts it "will continue to do so to the extent pretrial preparations yield any such additional information."  *Id.* at 4.  It contends that witness statements in a "grand jury investigation are not discoverable if they do not relate to the case proceeding to trial and are not *Jencks*, *Giglio*, or *Brady* [materials]."  *Id.*  It further asserts that PG&E is "not entitled to know who the government calls as witnesses" in another grand jury investigation.  *Id.* (citations omitted).

United States District Court
Northern District of California

As noted above, Judge Henderson has previously declined "to play referee with respect to the Government's *Brady* obligations." Nov. 12 Order at 6.  The government is aware of its obligations under *Brady/Giglio* and absent a "specific reason to suspect that *Brady* material may reside" elsewhere, the Court does not have a "clear basis in law or fact" to believe that its interference is necessary.  *See Jennings*, 960 F.2d at 1491-92; *Miller*, 722 F.2d at 565.  While PG&E has posited that the other grand jury investigation may be related to this case, this is not enough to believe that the witness statements from that investigation are necessarily subject to disclosure under Rule 16, Jencks, or *Brady/Giglio*.  Without more, PG&E has not identified a basis for which the Court must order such materials to be produced.  *See* Fed. R. Crim. P. 6(e)(2)(B) (imposing general rule that certain parties, including attorneys for the government, "must not disclose a matter occurring before the grand jury."); *see also* June 29 Order at 4 ("For non-ministerial grand jury materials, the defendant must show a 'particularized need' for disclosure, such as specific facts constituting prosecutorial misconduct; 'mere speculation' is not enough." (quoting *United States v. Ferreboeuf*, 632 F.2d 832, 835 (9th Cir. 1980); *United States v. Diaz*, 236 F.R.D. 470, 480 (N.D. Cal. 2006)).  That said, the Court finds it reasonable that the government, by April 12, 2016, either (1) submit a declaration confirming it has reviewed the materials and statements from the grand jury as well as the interview reports and agent notes reflecting communications between PG&E employees or contractors and PG&E attorneys for Rule 16 and *Brady/Giglio* materials, or (2) complete production of these materials.

Second, as to the grand jury records, PG&E has asked the government to produce documents that "reflect the government's compliance with Rule 6(e)(3)(B)" for each of the grand juries that have investigated or are investigating this case.  Dkt. No. 385 at 3.  Rule 6(e)(3)(B) provides in relevant part: "An attorney for the government must promptly provide the court that impaneled the grand jury with the names of all persons to whom a disclosure has been made, and must certify that the attorney has advised those persons of their obligation of secrecy under this rule." Fed. R. Crim. P. 6(e)(3)(B).  Although PG&E does not say as much, it seems to believe this information should be disclosed directly to it—rather than the Court—and that by obtaining this data, it will have a better sense of the "precise relationship between [government witnesses] and

1   the prosecution[,]" which it asserts is "material to PG&E's trial preparation and defense."  Dkt.

2   No. 385 at 3.  It does not explain how the relationship is material to PG&E's trial preparation and

3   defense, but generally notes that the government has recently produced documents showing it

4   disclosed grand jury materials to two of the government's trial witnesses.  *Id.*

5           Having reviewed the parties' arguments, authorities, and supporting documents, the Court

6   finds no grounds for ordering this information produced as discovery.  First, PG&E has not shown

7   how the Rule 6(e)(3)(B) "lists" it seeks are relevant or material to its defense in this case.  Second,

8   while Judge Henderson previously held "the public has a limited right of access to the 'ministerial

9   records' of a grand jury," such as the "dates that the relevant grand juries were impaneled and

10  excused, as well as their empaneling instructions," his Order does not suggest that the identities of

11  grand jury witnesses are discoverable.  *See* June 29 Order at 23.  Ministerial records mean "those

12  that 'generally relate to the procedural aspects of the impaneling and operation of the . . . Grand

13  Jury, as opposed to records which relate to the substance of the . . . Grand Jury's investigation.'"

14  *Id.* at 21 (quoting *In re Special Grand Jury (for Anchorage, Alaska)*, 674 F.2d 778, 779 n.1, 780

15  (9th Cir. 1982)).  Judge Henderson followed Ninth Circuit precedent explaining that while "[t]he

16  proceedings before the grand jury are secret, [] the ground rules by which the grand jury conducts

17  those proceedings are not."  *Id.* (alterations in original) (quoting *United States v. Alter*, 482 F.2d

18  1016, 1029 n.21 (9th Cir. 1973)).  The Court thus agrees with the government that the witness lists

19  are not "ground rules" by which the grand jury conducts its proceedings, and disclosure risks

20  revealing substantive information about the grand jury proceedings, which are protected under

21  Rule 6(e)(2)(B) unless PG&E had shown a "particularized need" for disclosure.  As it has not

22  done so, the Court sees no grounds for ordering the government to produce such information.

23  *//*

24  //

25  //

26  //

27  //

28  //

United States District Court
Northern District of California

**CONCLUSION**

Based on the foregoing analysis, the Court **ORDERS** as follows:

(1) The Court **GRANTS** PG&E's discovery request in Dkt. No. 381: **by April 12, 2016**, the government must produce all *Brady* and Rule 16 materials for all seven topics and the CPUC information listed on page 16 of this Order to the extent they are in the government's possession.

(2) The Court **DENIES WITHOUT PREJUDICE** PG&E's request in Dkt. No. 382 for further discovery as to Mr. Lubow given the government's representations that the information PG&E seeks has been produced.  If PG&E wishes to re-assert this request, the parties must again meet and confer, and then they may file another letter in compliance with the undersigned's Discovery Standing Order.  Although discovery has closed, the parties are **GRANTED LEAVE** to file such a letter **by April 12, 2016** as it directly correlates with this Order.  *See* Order Setting Deadlines, Dkt. No. 369 at 3.

(3) Likewise as to Mr. Nanney's Rule 16(a)(1)(G) report discussed in Dkt. No. 382, the Court **ORDERS** the parties to meet and confer **by April 8, 2016** as to the summary report the government already produced, and if PG&E still contends that summary is inadequate and the government otherwise refuses to supplement this summary, PG&E is **GRANTED LEAVE** to re-raise the issue with the Court **by April 12, 2016** in compliance with the undersigned's Discovery Standing Order.  Next, as to Mr. Nanney's relied-on materials, the Court **GRANTS** PG&E's request and **ORDERS** the government to identify and produce to PG&E any non-privileged materials Mr. Nanney relied on **by April 8, 2016**.

(4) As to Ms. Felts, as she will not offer expert opinions at trial, the Court **DENIES** PG&E's request in Dkt. No. 382 for a Rule 16(a)(1)(G) summary or the related materials she would have relied on; however, the Court **GRANTS** PG&E's request that the government produce the documents Ms. Felts will summarize at trial as well as documents she intends to summarize under Rule 1006.  To the extent the governments has already produced that information, it shall identify which part of the government's

United States District Court
Northern District of California

United States District Court
Northern District of California

1    production contains that information, for instance by Bates numbers or other such data.

2    Finally, to the extent the government has already produced communications between

3    Ms. Felts and the prosecution team or related government agents in this matter as it has

4    represented, the government is **ORDERED** to identify for PG&E what part of its prior

5    productions contains that information.  The government must comply with this portion

6    of the Order **by April 12, 2016**.

7    (5) As to Dkt. No. 383, the Court **DENIES** PG&E's request that the government be

8    ordered to further unredact the documents it produced on February 22; that said, the

9    Court admonishes the government to carefully review these documents to ensure that it

10   has fully complied with its *Brady*/*Giglio* obligations and err on the side of

11   transparency.

12   (6) Finally, as to Dkt. No. 385, the Court **GRANTS IN PART** PG&E's request and

13   **ORDERS** the government, **by April 12, 2016**, to either (1) submit a declaration

14   confirming it has reviewed the materials and statements from the grand jury as well as

15   the interview reports and agent notes reflecting communications between PG&E

16   employees or contractors and PG&E attorneys for Rule 16 and *Brady/Giglio* materials,

17   or (2) complete production of these materials.  The Court, however, **DENIES** PG&E's

18   request for the grand jury witness lists under Rule 6(e)(3)(B).

19   **IT IS SO ORDERED.**

20

21   Dated: April 4, 2016

22   _____

23   MARIA-ELENA JAMES
     United States Magistrate Judge

24

25

26

27

28