UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>    Defendant. | Case No. 14-cr-00175-TEH<br><br>**ORDER DENYING APRIL 18, 2016 MOTION FOR RELIEF FROM APRIL 4, 2016 ORDER OF MAGISTRATE JUDGE** |

On April 18, 2016, Defendant Pacific Gas and Electric Company ("PG&E") filed a Motion for Relief from Nondispositive Pretrial Order of Magistrate Judge Maria-Elena James. Dkt. No. 461 ("April 4 Objs."). PG&E objects to portions of Judge James's April 4, 2016 Order Regarding Joint Discovery Letters. Dkt. No. 419 ("April 4 Order"). On May 2, 2016, the Court ordered the Government to respond to this motion pursuant to Federal Rule of Criminal Procedure ("Rule") 59 and Civil L.R. 72-2, Dkt. No. 503, and the Government timely complied, Dkt. No. 515 ("April 4 Opp'n"). The Court also permitted PG&E to reply in support of its motion. Dkt. No. 547 ("April 4 Reply"). Having carefully considered the parties' written arguments, the Court now DENIES PG&E's motion.

**BACKGROUND**

On February 22, 2016, the Government produced a set of documents it referred to as "Jencks" materials (the "February 22 production"), consisting of "mostly emails, including emails between prosecutors and their retained third party experts, as well as their contacts at PHMSA." April 4 Objs. at 1. The February 22 production was heavily redacted; as the Government explains, all "[s]tatements other than those of witnesses were redacted." April 4 Opp'n at 2. On March 3, 2016, the parties submitted a joint discovery letter to Magistrate Judge Maria-Elena James, concerning "whether the Court should compel the government to produce unredacted copies of [the] documents" in the February

22 production. Dkt. No. 335 ("March 3 Letter") at 1. On March 6 and March 22, 2016, the Government voluntarily unredacted "everything conceivably relevant for context," and thereafter contended that the "remaining redactions were [only] non-witness statements in emails that were not discoverable . . . ." April 4 Opp'n at 2.

On April 4, 2016, Judge James issued an order denying PG&E's request to compel further unredactions, holding that there were "no grounds to produce this information at this time under the Jencks Act, Rule 16, or *Brady/Giglio*." April 4 Order at 15. But Judge James "admonishe[d] the government to tread carefully and heed the Supreme Court's advice that 'the prudent prosecutor will err on the side of transparency, resolving doubtful questions in favor of disclosure.'" *Id.* at 17 (quoting *Cone v. Bell*, 556 U.S. 449, 470 n.15 (2009)). On April 8, 2016, the Government responded by producing "a full re-production [of the February 22 production] without redactions." April 4 Objs. at 1. But the Government continues to refuse production of "the attachments to [the February 22] documents, or the documents specifically referenced in them." *Id.* at 2.

PG&E now seeks relief from the April 4 Order. PG&E notes that "[b]ecause the government produced an unredacted set of the February 22 documents on April 8, [it] does not seek an order compelling that production." April 4 Objs. at 1 n.2. Accordingly, the Court does not address Judge James's reasoning in declining such production. In many respects, then, the Court addresses an issue factually distinct from the one Judge James considered; while PG&E sought "unredacted copies of [the February 22] documents" before Judge James, PG&E now seeks "unredacted copies of all *attachments* to the [February 22] documents." March 3 Letter at 1; April 4 Objs. at 1 (emphasis added).

**LEGAL STANDARDS**

I.   **Review of Magistrate Judge's Nondispositive Order**

A party has fourteen days from the date of service to object to a Magistrate Judge's nondispositive order. Fed. R. Crim. P. 59(a). "The district judge must consider timely

objections and modify or set aside any part of the order that is contrary to law or clearly erroneous." *Id*. A party's failure to object in accordance with Rule 59 "waives [the] party's right to review." *Id*.

**II.    Rule 16 Discovery**

In relevant part, Rule 16(a)(1)(E) requires the government to "permit the defendant to inspect and to copy . . . documents, [and other items], . . . if the item is within the government's possession . . . and . . . the item is material to preparing the defense . . . ." "Materiality is a low threshold; it is satisfied so long as 'the information . . . would have helped' . . . . [to] prepare a defense. Information is material even if it simply causes a defendant to 'completely abandon' a planned defense and 'take an entirely different path.'" *United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013) (citation omitted).

However, Rule 16(a)(2) excludes from discovery any "reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." Thus, even materials that are discoverable under Rule 16(a)(1)(E) may nevertheless be exempt from disclosure under Rule 16(a)(2). *See United States v. Fort*, 472 F.3d 1106, 1110 (9th Cir. 2007) (finding that certain documents "are discoverable under Rule 16(a)(1)(E) unless exempted by Rule 16(a)(2)").

**III.    *Brady/Giglio* Obligations**

The Government has a separate due process obligation to disclose "evidence favorable to an accused . . . [that] is material either to guilt or to punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Favorable evidence includes that which impeaches a prosecution witness. *Giglio v. United States*, 405 U.S. 150, 154 (1972). The government's *Brady* obligation is a "self-executing responsibility on the part of the prosecutor. . . . [T]here is no need for a court order to require compliance with *Brady*[]." *United States v. Flores*, No. 08-0730-WHA, 2011 WL 1100137, at *1 (N.D. Cal. Mar. 24, 2011); *see also*

3

*United States v. Jennings*, 960 F.2d 1488, 1491-92 (9th Cir. 1992) (admonishing courts to avoid interfering with executive branch's *Brady* obligations unless there is "a clear basis in law or fact to believe that [interference is] necessary").

The *Brady* standard for materiality is higher than Rule 16's, and its scope narrower. *See United States v. Muniz-Jaquez*, 718 F.3d 1180, 1183 (9th Cir. 2013) ("Rule 16 is thus broader than *Brady*. Information that is not exculpatory or impeaching may still be relevant to developing a possible defense."). The Supreme Court has observed that "the prudent prosecutor will err on the side of transparency, resolving doubtful questions in favor of disclosure." *Bell*, 556 U.S. at 470 n.15.

## IV.    Jencks Act Disclosures

The Jencks Act, 18 U.S.C. § 3500, provides another discovery mechanism: "it requires that any statement in the government's possession that is made by a government witness, whether exculpatory or not, be produced to the defense after the witness testifies." *United States v. Yan Juan Zhen*, No. 2:13-cr-40-APG-VCF, 2015 WL 727923, at *3 (D. Nev. Feb. 19, 2015). However, the Act "prohibits the *pre-trial* discovery of statements made by prospective government witnesses"; it is only "after such a witness testifies [that] the Act requires that the government produce . . . any available statement . . . which relates to the subject matter of such witness's testimony at trial." *United States v. Griffin*, 659 F.2d 932, 936 (9th Cir. 1981) (emphasis added).

The Act defines "statements" as: (1) writings made by the witness and "signed or otherwise approved or adopted" by the witness, or (2) accounts which are "a substantially verbatim recital" of the witness's oral statements "recorded contemporaneously with the making of such oral statement." 18 U.S.C. § 3500(e).

## DISCUSSION

The parties cannot agree upon how many attachments remain undisclosed from the February 22 production. PG&E identified "42 emails that were either missing attachments

4

or the documents referenced in the underlying emails," and submitted a chart listing the Bates number for those emails and a description of each email's missing attachment(s). Dkt. No. 483 at 1; Dkt. No. 462-2 ("PG&E Chart").  But the Government argues that "all attachments to the previously redacted emails [in PG&E's chart] have been produced . . . save three attachments."  April 4 Opp'n at 2.  The Government therefore added a column to PG&E's chart that, for each email, either: (i) lists the Bates number of the previously produced attachment(s) (30 emails); (ii) explains that the email has no attachments (9 emails); or (iii) identifies the withheld attachment(s) (3 emails).  Dkt. No. 516-4 ("Gov't Chart").

PG&E makes two arguments about the insufficiency of the Government's modified chart.  First, PG&E argues that the Government should be required to re-produce the category (i) attachments in "the standard manner."  April 4 Reply at 3.  The Court agrees with PG&E that a benefit of re-production is that "the record will be clear for the Court and jury."  *Id.* at 4.  Accordingly, IT IS HEREBY ORDERED that the Government shall re-produce the attachments to these 30 emails to PG&E by **June 13, 2016**.  Second, PG&E argues that the Government should be required to produce the category (ii) items, which are not attachments but rather external documents or databases referred to in the emails.  *Id.* at 3-4.  The Court addresses this argument in Section V below.

With respect to the three category (iii) attachments that the Government continues to withhold, the Government describes them as follows:

> Attachment #1 is the prosecution memorandum ("pros memo"), which was written by the prosecutor, containing her opinions and analysis, to facilitate the U.S. Attorney's Office's decision whether to charge this case.  It is attached to email chain with the subject "PLEASE DON'T SHARE THIS" (caps in original), between a member of the prosecution team (a DOT-OIG agent) and a PHMSA investigator.  The PHMSA investigator provided his thoughts and opinions concerning the pros memo in the email chain itself, not on the attachment.
>
> Attachment #2 is a draft indictment that is provided by the prosecution team to a retained consultant so that the retained consultant could provide a cost estimate for additional requested assistance on the case.

5

> Attachment #3 is a document created by the same retained consultant for the prosecution team in preparation for trial and contains the consultant's analysis of items in discovery.

April 4 Opp'n at 3. PG&E provided the Court with copies of the three emails underlying each of these attachments. Dkt. Nos. 548-1 ("Email #1"), 548-2 ("Email #2"), 548-3 ("Email #3"). To the Government's description of the three attachments, PG&E adds only that in Email #2, "the government provided not one, but at least two different draft indictments to its paid consultant, as well as a 'summary chart' and 'a listing of facts stated in the indictment.'" April 4 Reply at 1-2. Having reviewed this email, the Court agrees with PG&E's assessment. Accordingly, the Court now finds that there are six total attachments for which PG&E seeks an order compelling production: (1) a memo authored by a prosecutor; (2) two draft indictments, a summary chart, and a list of facts stated in the indictment, all authored by the prosecution team; and (3) a summary analysis authored by a retained consultant – Margaret Felts – at the direction of the prosecution team.

The Government argues that "PG&E has no right to obtain [these] attachments . . . absent the attachments themselves being Jencks or *Brady* material," April 4 Opp'n at 3, and that the attachments all fall within Rule 16(a)(2)'s work product protection, *id.* at 4-5. PG&E argues that: (1) Rule 16(a)(2) does not apply to these attachments, April 4 Objs. at 3; (2) the Government waived any Rule 16(a)(2) protection, April 4 Reply at 1-3; (3) the attachments contain *Brady* material, April 4 Objs. at 3; and (4) the Government's concession that the emails contain Jencks statements necessarily includes the emails' attachments, *id.* at 3-4.[1]

//
//
//

---

[1] PG&E also argues that "[t]he Rule of Completeness . . . merits full production of the attachments." April 4 Objs. at 3 n.4. But PG&E provides absolutely no explanation of why Judge James's holding that this argument "is more evidentiary and generally becomes ripe at trial" is either clearly erroneous or contrary or law. April 4 Order at 17. Accordingly, the Court declines to set this holding aside, and considers PG&E's argument on this ground no further.

6

### I. Rule 16(a)(2)'s work product protection extends to all six attachments.

PG&E argues that Rule 16(a)(2) does not apply to the attachments because "[t]hird party experts and PHMSA personnel do not qualify" for the Rule's protections. April 4 Objs. at 3. The question, then, is whether the authors of the first attachment (a prosecutor), second set of attachments (the "prosecution team"), and third attachment (Ms. Felts) qualify as "attorneys for the government or other government agents" under Rule 16(a)(2).

Rule 16 does not define the phrase "other government agent," and the case law offers little more guidance. In *United States v. Fort*, the Ninth Circuit did consider "who qualifies as an 'agent' of the federal government in the context of the discovery process in a federal criminal prosecution," but the court was concerned with "cooperation among federal, state, and local law enforcement," and specifically, whether Rule 16(a)(2) extends to reports drafted by local law enforcement officers. 472 F.3d at 1111-12. *Fort* is nevertheless instructive. There, the Ninth Circuit concluded that "'government agent' includes non-federal personnel whose work contributes to a federal criminal 'case.'" *Id*. at 1113. And in considering the meaning of "case" under Rule 16(a)(2), the Ninth Circuit noted that Rule 16(a)(2)'s work product protections are distinct from, and broader than, the protections created by Federal Rule of Civil Procedure ("Civil Rule") 26. *See id.* at 1115 ("Rule 16 itself, while encompassing government work product and having its genesis in the idea of work product, draws its boundaries more broadly than those of Civil Rule 26.").[2]

---

[2] PG&E's case citations do not counsel a different understanding of "government agent." April 4 Objs. at 3. Two of the cases concern a very different issue: whether a government attorney can invoke the attorney-client privilege to withhold information from a grand jury. *See In re Witness Before Special Grand Jury 2000-2*, 288 F.3d 289, 290-92 (7th Cir. 2002) (considering "whether a state government lawyer may refuse, on the basis of the attorney-client privilege, to disclose communications with a state officeholder when faced with a grand jury subpoena"); *In re Lindsey*, 158 F.3d 1263, 1278 (D.C. Cir. 1998) ("When government attorneys learn, through communications with their clients, of information related to criminal misconduct, they may not rely on the government attorney-client privilege to shield such information from disclosure to a grand jury."). PG&E's citation to *United States v. Hamilton*, No. CR11-415, 2012 WL 5834893, at *4-5 (W.D. Wash. Oct. 4, 2012) is similarly unavailing; there, the court considered neither Rule 16 nor work product protections more broadly, but whether certain witness statements under the Jencks Act were protected by the deliberative process privilege. Finally, PG&E's citation

7

Attachment #1 − a memorandum for use in making charging decisions, drafted by a government attorney − undoubtedly qualifies for Rule 16(a)(2)'s work product protections, as the document is a precise match with the Rule in terms of both content ("memoranda") and author ("attorney for the government"). The Attachment #2 documents − two draft indictments, a summary chart, and a list of facts stated in the indictment, all drafted by the "prosecution team" − likewise readily qualify for the Rule's protections. Though it is not clear who drafted each of the four documents, the Government asserts that they were "provided by the prosecution team," April 4 Opp'n at 3, they are all documents one would expect to be prepared in connection with the investigation or prosecution of a case, and all individuals who sent or were copied on the emails transmitting the documents qualify as either government attorneys or other government agents under *Fort*.[3] Indeed, PG&E concedes that "prosecution memoranda and draft indictments are typically covered by the work product and deliberative process protections." Dkt. No. 599 at 14.

Attachment #3 − a summary analysis by Ms. Felts, conducted at the direction of the prosecution − is therefore the only document not obviously drafted by a government attorney or other government agent. The Government explains that given the complexity[4] of this particular criminal prosecution, it "retained [Ms. Felts] . . . to gain the benefit of [her] industry knowledge and technical expertise." Dkt. No. 574 at 2. The Government further explains that Email #3, which is actually two emails, is just one example of such technical consultation: the email demonstrates that the prosecution sought (and then

---

to *Jencks v. United States*, 353 U.S. 657, 670 (1957), which led to the passing of the Jencks Act, fails because *Jencks* concerned the production of witness statements post-testimony, not Rule 16 or work product protections more broadly.

[3] This includes a government attorney (Stacey Geis), a detective with the San Bruno Police Department (James Haggarty), and a federal Department of Transportation agent (Lisa Glazzy). Ms. Geis is obviously an attorney for the government, and the prosecution's work with Mr. Haggarty and Ms. Glazzy is precisely the sort of "cooperation among federal, state, and local law enforcement" that the Ninth Circuit considered (and approved of) in *Fort*. 472 F.3d at 1111-13.

[4] The Government is not alone in believing that this prosecution is exceptionally complex; PG&E has consistently maintained that this trial will "be one of the more complex criminal trials ever tried in this district." Dkt. No. 126 at 2.

8

received) "[Ms. Felts's] analysis of items in discovery" "in preparation for trial." April 4 Opp'n at 3; *see also* Email #3 ("Attached is the Admissions Summary you requested related to Record keeping."). Attachment #3 therefore appears to be precisely the sort of "work [that] contributes to a federal criminal 'case'" that the Ninth Circuit held was included within Rule 16(a)(2)'s protections. *Fort*, 472 F.3d at 1113. Moreover, protecting Attachment #3 is consistent with the Ninth Circuit's teaching that "Rule 16 . . . draws its boundaries more broadly than those of Civil Rule 26," *id.* at 1115, as the civil work product doctrine unquestionably covers work done at the behest of an attorney for the purposes of trial preparation. *See United States v. Nobles*, 422 U.S. 225, 238-39 (1975) ("[A]ttorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the [work product] doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself."); *see also* Fed. R. Civ. P. 26(3)(A) ("Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."). Finally, even the narrowest conception of "government agent" offered by the defendants in *Fort* – "those individuals who were employed directly by the federal government or who were *acting at the federal prosecutor's direction at the time that they drafted a report*" – would include Attachment #3. *Fort*, 472 F.3d at 1111 (emphasis added).

Accordingly, the Court now finds that Attachment #3 also falls within Rule 16(a)(2)'s work product protection as a "report . . . made by an . . . other government agent in connection with investigating or prosecuting the case."[5]

//

//

---

[5] The Court's finding that Ms. Felts is an "other government agent" for the purposes of Rule 16(a)(2) in no way impacts the Court's separate consideration of whether the Government violated Rule 6(e) by sharing secret grand jury materials with her. *See* Dkt. No. 577 at 18-25.

**II.     The Government did not waive Rule 16(a)(2)'s work product protections.**

PG&E also argues that the Government waived any Rule 16(a)(2) protection in three ways:[6] first, by sharing the attachments with "paid consultants and investigators who the government contends were not on the prosecution team"; second, by failing to make any privilege argument until this late stage in the prosecution; and third, by sharing the emails underlying the attachments with PG&E.  April 4 Reply at 1-3.

*Fort* is again instructive.  There, the Ninth Circuit "look[ed] for guidance to the general principles of waiver," which define waiver as the "intentional or voluntary relinquishment of a known right."  472 F.3d at 1120 (quoting Black's Law Dictionary 1580 (6th ed. 1990)).[7]  Applying these general principles, the Ninth Circuit held that because the government had "clearly and consistently articulated its intention to preserve [] confidentiality" and "systematically redact[ed] all [protected] information," the government had not waived Rule 16(a)(2)'s protections simply by "permitting Defendants access to the substantive information contained within the [protected] reports."  *Id.* at 1120-21.

None of the three waivers asserted by PG&E amount to an "intentional or voluntary relinquishment of a known right."  First, PG&E's argument about waiver by sharing with "paid consultants and investigators" fails for several reasons: the underlying emails indicate that the attachments were shared for the limited purpose of gaining assistance with this criminal prosecution; the Government shared the attachments only with individuals

---

[6]  Though PG&E actually listed four potential waivers, its second waiver merely asked whether the Government may "begin disclosure but then stop short of making a complete production by later withdrawing persons from its witness list."  April 4 Reply at 2.  It is not clear why PG&E believes such conduct would constitute a work product waiver.  In any event, the February 22 production was a disclosure of Jencks Act materials, which need not be made until after each witness testifies.  *Griffin*, 659 F.2d at 936.  PG&E has offered no explanation of why providing early Jencks Act disclosures should prohibit the Government from removing individuals from its witness list as trial approaches.

[7]  As the Court is applying the Ninth Circuit's teachings from *Fort* – which, like here, considered a criminal defendant's waiver argument against the government in the context of Rule 16(a)(2) – PG&E's alternative citation to *In re Pac. Pictures Corp.*, 679 F.3d 1121 (9th Cir. 2012) – which considered the issue of "selective waiver" in the context of civil litigation – is less on point.  April 4 Objs. at 2.

10

whose work would be covered by Rule 16(a)(2)'s protections (as discussed above); and the Government took steps to ensure the attachments would remain confidential. *See* Email #1 (sharing Attachment #1 with a federal employee assisting the prosecution, through an email titled "PLEASE DON'T SHARE THIS"); Email #2 (sharing the Attachment #2 documents with Ms. Felts in connection with a request that she launch a "project" pertaining to those documents); Email #3 (accepting Attachment #2, which is work product created by Ms. Felts in response to a request by the prosecution team).[8]

Second, PG&E's argument about the lateness of the Government's Rule 16(a)(2) claim fails because the attachments and underlying emails were provided to PG&E as part of an *early* Jencks Act production. The Government could have waited until the relevant witnesses testified to provide the emails, and only then made its Rule 16(a)(2) arguments about withholding the attachments. The Court cannot and will not punish the Government for making its work product argument at the same time it made its early Jencks Act production.

Third, PG&E's argument about waiver by sharing with PG&E fails because, as the Ninth Circuit held in *Fort*, limited disclosure of substantive information to a defendant does not waive all Rule 16(a)(2) protections where the government takes steps to preserve the confidentiality of the withheld information. *Fort*, 472 F.3d at 1120. Here, by continually refusing to share the attachments, the Government likewise "did *not* intentionally or voluntarily relinquish its rights under Rule 16(a)(2) to hold back this information from discovery." *Id.* at 1121 (emphasis in original); *see also United States v. Mann*, 61 F.3d 326, 332 (5th Cir. 1995) (holding that the government did not waive its Rule 16(a)(2) protection by allowing the defendants to have conditional access to the protected documents).

//

---

[8] The Court's finding that the Government did not waive Rule 16(a)(2) protections by sharing certain material with Ms. Felts does not impact the Court's separate consideration of whether the Government violated Rule 6(e) by sharing secret grand jury materials with her. *See* Dkt. No. 577 at 18-25.

11

### III. The attachments are not otherwise discoverable under *Brady*.

Because Rule 16(a)(2) applies to all six attachments, they are exempt from discovery under Rule 16(a)(1)(E) even if they are "material." *Fort*, 472 F.3d at 1110. But PG&E also argues that "there is ample *Brady* material here to require complete production of the withheld attachments." April 4 Objs. at 3. The Government responds that "PG&E has not explained why a prosecutor's internal [] memo and draft indictment, or a retained non-testifying consultant's work product, all involving the analysis of discovery that is already in PG&E's possession, constitutes *Brady* or *Giglio* material." April 4 Opp'n at 4.

Having reviewed the emails through which the sought after attachments were transmitted, the Court agrees with the Government. The Ninth Circuit has explained that the government's work product need not be disclosed under *Brady* where it contains the prosecutor's "strategies, legal theories, or impressions of the evidence":

> The animating purpose of *Brady* is to preserve the fairness of criminal trials. However, fairness does not encompass an obligation on the prosecutor's part to reveal his or her strategies, legal theories, or impressions of the evidence. The *Brady* rule is not meant to displace the adversary system; the prosecutor is not required to deliver his entire file to defense counsel, but only to disclose *evidence* favorable to the accused, that, if suppressed, would deprive the defendant of a fair trial. Extending the *Brady* rule to opinion work product would greatly impair the government's ability to prepare for trials. Thus, in general, a prosecutor's opinions and mental impressions of the case are not discoverable under *Brady* unless they contain underlying exculpatory facts.

*Morris v. Ylst*, 447 F.3d 735, 742 (9th Cir. 2006) (internal quotations marks and citations omitted) (emphasis in original).

In *United States v. Furrow*, for example, the court held that *Brady* did not entitle the defendant to production of the prosecutor's death penalty evaluation form and prosecution memorandum. 100 F. Supp. 2d 1170, 1177-78 (C.D. Cal. 2000). PG&E argues that *Furrow* is inapposite because there, the document "by its terms, did 'neither reach nor affect[] the merits of the defendant's case,'" while here "[the attachments] address the merits of the case." April 4 Reply at 4 (quoting *Furrow*, 100 F. Supp. 2d at 1776). But PG&E seizes upon and misleadingly alters language from a section of *Furrow* that

considered an entirely different question: whether the death penalty authorization process is a critical stage in the proceedings for the purposes of the Sixth Amendment right to counsel. *Furrow*, 100 F. Supp. 2d at 1775-77. Had PG&E instead quoted the proper section of the opinion, which considered the *Brady* value in a prosecution memorandum, it would have been hard-pressed to ignore the following (substantially more relevant) language: "[Defendant's] argument fails to note the distinction between exculpatory material and work product related to that material. *Brady* may entitle defendant to production of the mental health and psychiatric records he refers to, however, *Brady* does not reach the prosecution's analysis of them." *Id.* at 1178.

As in *Ylst* and *Furrow*, the attachments here are likely to contain only the prosecutor's strategies, legal theories, or impressions of the evidence. Attachment #1 (the prosecution memorandum) and the Attachment #2 documents (draft indictments and internal analyses, drafted by the prosecution team) by definition contain the prosecution's evolving understanding of the legal theories and evidence at issue in this case. Attachment #3 (a summary analysis requested by the prosecution) is also likely to reveal the prosecutor's strategy, as it was a "project" requested in the weeks preceding the then-scheduled trial for the purposes of trial preparation. April 4 Opp'n at 3; Email #3.

Nevertheless, out of an abundance of caution, the Court now ORDERS that the Government disclose these attachments to the Court by **June 13, 2016** for an *in camera* review. The Court will review the attachments, and share them with PG&E if and only if they contain "underlying exculpatory facts" that must be disclosed under *Brady*. *Ylst*, 447 F.3d at 742.

**IV.   The attachments are not presently discoverable under the Jencks Act.**

PG&E also argues that the Government's disclosure of Emails #1, #2, and #3 as "Jencks materials" necessarily renders any attached documents Jencks materials. April 4 Objs. at 3-4. This argument is utterly lacking in merit. The Jencks value of a statement is defined by the identity of the speaker and quality of the speech, not the medium for

13

communicating the statement. 18 U.S.C. § 3500(e). Attachment #1 (the prosecution memorandum) was obviously not authored by a Government witness. PG&E has made no argument that the Attachment #2 documents (draft indictments and internal analyses, drafted by the prosecution team) were authored by Government witnesses, and none of the individuals on Email #2 appear on the Government's witness list. Email #2; Dkt. No. 490. Attachment #3 (summary analysis by Ms. Felts) was authored by an individual who once appeared on the Government's witness list, but has since been withdrawn as a Government witness. Dkt. No. 436 at 3. This individual will therefore not be a "witness called by the United States," regardless of whether she is called to testify by PG&E. 18 U.S.C. § 3500(b).

## V.  PG&E is not entitled to production of the category (ii) items.

Finally, PG&E argues that the Government should be required to produce the "missing" items in the nine category (ii) emails, which PG&E concedes are not attachments but rather external documents or databases referred to in the emails. April 4 Reply at 3-4. The Court has reviewed PG&E's description of these items, *see* PG&E Chart, and the Government's response, *see* Gov't Chart, and now finds that PG&E has not provided any basis for their production.

For two of the emails, PG&E's description states only "Missing," and the Government explains that the "missing" attachment is simply the image file from a signature block. For one of the emails, PG&E's description states "Missing email," and the Government responds that there simply is no missing email. For four of the emails, PG&E's description states "Link to Files in 'Dropbox,'" and the Government responds that this is not an attachment. And for two of the emails, PG&E's description states "Refers to indictment," and the Government responds that these are not attachments.

PG&E makes no argument that any of these "materials" are discoverable under Rule 16, *Brady,* or Jencks. This is unsurprising. PG&E's effort to obtain discovery of image files from signature blocks and entire data repositories (used by the Government to

14

prepare for trial) belie any argument that PG&E believes any specific category (ii) item is material to its defense. And the fact that an email refers to the existence of a draft indictment does not suddenly render that draft discoverable, to say nothing of the Rule 16(a)(2) protections that would bar production of the draft (as discussed above). Accordingly, PG&E's request for production of the category (ii) items is DENIED.

**CONCLUSION**

For the reasons set forth above, PG&E's motion is DENIED. Nevertheless, for the sake of a clear evidentiary record and out of an abundance of caution, IT IS HEREBY ORDERED that the Government shall make the following productions:

1. The Government shall re-produce to PG&E the previously produced attachment(s) for the 30 category (i) emails by **June 13, 2016**; and
2. The Government need not disclose the attachment(s) for the three category (iii) emails to PG&E, but must lodge these six attachments with the Court for an *in camera* review by **June 13, 2016**.

**IT IS SO ORDERED.**

Dated: 06/08/16

THELTON E. HENDERSON
United States District Judge