UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Defendant. | Case No. 14-cr-00175-TEH<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SANCTIONS** |

This matter came before the Court on June 13, 2016, on Defendant Pacific Gas and Electric Company ("PG&E")'s motion for sanctions, Dkt. No. 577. For the reasons discussed below, the Court concludes that the Government violated Federal Rule of Criminal Procedure 6(e) but that no sanctions are warranted for that or any other alleged misconduct. PG&E's motion is therefore DENIED.

**DISCUSSION**

**I.    The Government violated Federal Rule of Criminal Procedure 6(e), but no sanctions are warranted.**

Rule 6(e)(2)(B)[1] provides that "a matter occurring before the grand jury" must not be disclosed "[u]nless these rules provide otherwise." One exception to the rule of grand jury secrecy is that disclosure may be made to "any *government personnel* . . . that an attorney for the government considers necessary to assist in performing that attorney's duty to enforce federal criminal law." Fed. R. Crim. P. 6(e)(3)(A)(ii) (emphasis added). If disclosure is made under this provision, "[a]n attorney for the government must promptly provide the court that impaneled the grand jury with the names of all persons to whom a disclosure has been made, and must certify that the attorney has advised those persons of

---

[1] Unless otherwise noted, all references to rules are to the Federal Rules of Criminal Procedure.

their obligation of secrecy under this rule." Fed. R. Crim. P. 6(e)(3)(B). Disclosure may also be made if authorized by a court under Rule 6(e)(3)(E).

The Government contends that, as retained consultants, Mr. David Berger and Ms. Margaret Felts are "government personnel" under Rule 6(e)(3)(A)(ii).[2] The Court disagrees. It is undisputed that both individuals are private consultants who do not work for government or quasi-governmental entities, who were not exclusively working for the government on this case, and whose access to data was not controlled by the government. These facts distinguish this case from those relied on by the Government where courts have found that non-government entities qualify as "government personnel." In *United States v. Lartey*, for example, the retained consultant, Mr. Moran, was "employed exclusively by the government. The records were kept in a secure location in the United States Attorney's office, and Moran did not discuss them with anyone other than Assistant United States Attorney Douglas and agents assisting Douglas in the investigation." 716 F.2d 955, 963 (2d Cir. 1983). Likewise, in *In re Disclosure of Matters Occurring Before a Grand Jury to the Litigation Technology Service Center*, the individuals at issue were employees of a quasi-governmental entity that was created and owned by the federal government; housed in a "secure government-owned building"; whose data was "maintained within a secure Department of Justice information technology infrastructure"; whose employees were "subject to all laws, regulations, and Department of Justice policies that are imposed on U.S. Attorney's Office employees"; and where "the U.S. Attorney's Office and the [Executive Office for United States Attorneys] ultimately control[led] the handling of all case data and documents." Misc. No. 11-00163 JMS/RLP, 2011 WL 3837277, at *3 (D. Haw. Aug. 25, 2011). The circumstances in this case are vastly different.

---

[2] The Government apparently believes that Howard Lubow and his associates at Overland Consulting, a private consulting firm, also qualify as "government personnel," since these individuals were listed in the Government's Rule 6(e)(3)(B) disclosures. This issue was not raised until a footnote in PG&E's reply, but PG&E did not receive the Government's Rule 6(e)(3)(B) disclosures until after it filed its motion. The reasoning in this order applies equally to Mr. Lubow and his associates.

The Government also relies on *United States v. Anderson*, in which the defendants argued that the government violated Rule 6(e) by showing an expert witness "certain promotional materials promulgated to the general public by the defendants, or some of them." 778 F.2d 602, 605 (10th Cir. 1985). This, too, is factually distinguishable, since there is no dispute that Ms. Felts and Mr. Berger considered non-public documents. *See id.* (finding the case similar to *Lartey*, 716 F.2d at 964, which noted that "documents are not cloaked with secrecy merely because they are presented to a grand jury").

In the final case relied on by the Government, the First Circuit held that investigators from the Massachusetts Insurance Fraud Bureau ("IFB") can qualify as "government personnel" because of the quasi-governmental nature of the IFB. *United States v. Pimental*, 380 F.3d 575, 590-96 (1st Cir. 2004). However, the court went on to clarify that, despite the quasi-governmental nature of the IFB, the government cannot designate an IFB employee as "government personnel" without seeking approval from the court:

> We do not know the many factual variations that could be presented by use of IFB personnel on federal criminal investigative teams; we do not hold that all IFB personnel are qualified as a matter of status. Because the interest in the secrecy of grand jury proceedings is intense, this is not an area for categorical approvals tied to labels. The mere fact that a person works for the IFB does not mean that he or she fits the definition for government personnel within Rule 6(e)(3)(A)(ii).
>
> *For this reason, we do not consider that the prosecution has self-executing powers under Rule 6(e)(3)(A)(ii) simply to designate IFB personnel as recipients of grand jury material.* Rather, the prosecutor must seek court authorization where quasi-governmental agencies such as the IFB are involved and make a functional showing that the individual involved is within the Rule. *In the past, the Office of the U.S. Attorney for Massachusetts has chosen to seek court authorization first, on a case-by-case basis whenever it wishes IFB personnel to be involved. It should continue to do so.*

*Id.* at 596 (emphasis added). Thus, even if Mr. Berger and Ms. Felts worked for quasi-governmental entities, which they do not, *Pimental* would not support the Government's actions in this case.

3

1    Unlike the authorities relied on by the Government, *In re Grand Jury Matter*, 607
2 F. Supp. 2d 273 (D. Mass. 2009), a case relied on by PG&E, is directly on point.  In that
3 case, the government argued that "'a private contractor' and 'a consultant,' 'hired by way
4 of . . . a contract'" qualified as "government personnel." *Id.* at 276 (quoting government
5 memorandum in support of its motion).  The court rejected that argument, finding that the
6 contractor was neither an employee of the government nor a quasi-governmental entity,
7 and "disclosure pursuant to section (A)(ii) is improper because the investigator does not
8 qualify as 'government personnel.'" *Id.*[3]  Other cases cited by PG&E also support finding
9 that non-government employees do not qualify as "government personnel" under Rule
10 6(e)(3)(A)(ii).  *See, e.g.*, *In re Nov. 1992 Special Grand Jury for N. Dist. of Indiana*, 836 F.
11 Supp. 615, 617 (N.D. Ind. 1993) ("Congress did not include non-governmental employees
12 when it crafted the sub-section (A)(ii) exceptions to non-disclosure of grand jury
13 materials."); *In re Disclosure of Grand Jury Material*, 645 F. Supp. 76, 79 (N.D. W. Va.
14 1986) ("The drafters of this provision declined to include private persons such as Mr.
15 Bennett, but instead limited the rule to 'government personnel.'").  These courts' reading
16 of the rule follows the Supreme Court's guidance that, "[i]n the absence of a clear
17 indication in a statute or Rule, we must always be reluctant to conclude that a breach of
18 [grand jury] secrecy has been authorized." *United States v. Sells Eng'g, Inc.*, 463 U.S.
19 418, 425 (1983).

20    As the parties both recognize, there is no directly controlling authority that governs
21 the issue before this Court.  In light of the case law discussed above, the Court concludes
22 that only government or quasi-governmental employees may qualify as "government

---

[3] The court also denied the government's request for disclosure under Rule 6(e)(3)(E), finding the record "devoid of evidence of the need to outsource these functions rather than depending on existing government personnel," and concluding "that the government has failed to offer a sufficiently particularized need to outweigh the interests in grand jury secrecy and warrant disclosure of grand jury information to the investigator under section (E)(i)." *Id.* at 277.

4

personnel" under Rule 6(e)(3)(A)(ii). Because Ms. Felts and Mr. Berger fall into neither category, the Government's reliance on this rule was erroneous.

The Government's error as to Mr. Berger is mitigated by its successful application for a court order authorizing disclosure under Rule 6(e)(3)(E).[4] The record is unclear as to why the Government sought such an order only as to Mr. Berger, and PG&E argues that this is evidence of bad faith – i.e., that the Government did not attempt to obtain other disclosure orders because it believed such attempts would be unsuccessful, and that the Government must have been attempting to evade the restrictions of Rule 6(e). As noted, however, there is no controlling precedent on this issue, and the Government might reasonably have determined that no disclosure order was required. While more careful counsel would have sought an order given the uncertainty of the case law, the Court declines to find that the Government intentionally violated Rule 6(e) by requesting a disclosure order only for Mr. Berger. The Court similarly accepts the Government's representation that its late Rule 6(e)(3)(B) notice as to Ms. Felts was inadvertent.

Having found violations of Rule 6(e), the Court must consider what, if any, remedy is appropriate. PG&E argues that this Court would be within its discretion to dismiss the indictment, but it does not argue that this Court *must* dismiss the indictment – only that it has discretion. Even if this were true, the Court would decline to exercise such discretion to impose the extraordinary remedy of dismissing the indictment on the eve of trial based on what the Court concludes are inadvertent violations of Rule 6(e). Dismissal of an indictment based on a grand jury violation "is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such

---

[4] The Court declines PG&E's invitation to second-guess the court's decision to authorize disclosure to Mr. Berger. In any event, while PG&E contends that the application was inaccurate in several respects, it has not argued that it was an abuse of discretion for the court to have granted the Government's request. *See In re Grand Jury Proceedings*, 62 F.3d 1175, 1178 (9th Cir. 1995) ("The district court's resolution of a petition for disclosure of grand jury material under Rule 6(e) is reviewable for abuse of discretion.").

1  violations." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988). The Court is
2  not persuaded that either of these standards is satisfied here, as there is no indication that
3  the grand jury was substantially influenced by the disclosure of grand jury materials to any
4  of the private consultants retained by the government. *Cf. United States v. Griggs*, Case
5  No. 1:08-cr-0365 MSK, Dkt. No. 775 (D. Colo. Dec. 1, 2010) (order denying motion to
6  dismiss indictment in case where non-government investigator was substantially involved
7  in investigation process, including gathering and analyzing information gathered for
8  preparing an indictment and reviewing drafts of the indictment).[5]

9        PG&E's other requested sanction is exclusion of evidence tainted by the
10 involvement of the private consultants. The only authority cited for this proposition is *In*
11 *re Grand Jury Investigation No. 78-184*, 642 F.2d 1184, 1188 (9th Cir. 1981), *aff'd sub*
12 *nom. Sells Eng'g, Inc.*, 463 U.S. 418 (1983). However, that case involved a very different
13 procedural posture. In that case, the Ninth Circuit was considering the disclosure of grand
14 jury materials for use in a civil prosecution and explained that "the availability of a motion
15 to suppress in future civil proceedings provides a remedy for improper disclosures that
16 have already occurred." *Id.* Suppression in that context makes sense: If secret grand jury
17 evidence is improperly obtained, then it should be suppressed. Here, PG&E does not
18 contend that the Government improperly *obtained* secret grand jury evidence; the violation
19 is that the Government improperly *disclosed* it. PG&E has not demonstrated why
20 suppression in this context would be an appropriate remedy, and the Court agrees with the
21 Government that it would be so unrelated to the violation of disclosure as to be improper.

22       The only other remedy proposed by PG&E is contempt sanctions under Rule
23 6(e)(7), which provides that "[a] knowing violation of Rule 6, or of any guidelines jointly

---

[5] PG&E urges this Court to follow an earlier order of the *Griggs* court that allowed the defendant to subpoena from the government evidence of communications with the private investigator in preparation for an evidentiary hearing. Dkt. No. 577 at 24 (citing *Griggs*, 2009 WL 3838022 (D. Colo. Nov. 12, 2009) as presenting "a workable roadmap"). The Court finds an evidentiary hearing to be unnecessary here. The parties do not dispute that Ms. Felts and Mr. Berger were extensively involved in this case, and the *Griggs* court found dismissal to be inappropriate even though the private investigator appears to have been at least as heavily involved, if not more so, than the consultants at issue here.

issued by the Attorney General and the Director of National Intelligence under Rule 6, may be punished as a contempt of court." The Court declines to initiate contempt proceedings based on its conclusion that the violations in this case were inadvertent.

Consequently, although the Court finds that the Government violated Rule 6(e) by incorrectly interpreting the meaning of "government personnel" in Rule 6(e)(3)(A)(ii) and by filing late a Rule 6(e)(3)(B) notice for Ms. Felts, the Court does not find any sanctions to be appropriate. However, the Government shall ensure that all attorneys in its office are aware of this Court's interpretation of "government personnel" so that future controversies can be avoided.

## II. The Court declines to impose sanctions for other concerns raised by PG&E.

Although PG&E's request for sanctions focuses on potential violations of Rule 6, the defendant raises several other issues in its motion. The Court finds none of these to be persuasive bases for imposing sanctions.

PG&E argues, for example, that the Government has resisted discovery. However, while the Government's delays in producing discovery – including, at times, in the face of repeated court orders to do so – have been far from praiseworthy, PG&E has not made the critical next step of demonstrating why these delays require dismissal or evidentiary or other sanctions. Likewise, although PG&E contends, as it has in the past, that the Government made misrepresentations to the grand jury, it does not explain why these alleged misrepresentations, even if true, rise to the level of requiring dismissal under the *Bank of Nova Scotia* standard, which this Court has previously explained "sets a high bar for dismissal" that might not be justified even if there has been "extensive prosecutorial misconduct." Dkt. No. 219 at 3. Nor has PG&E cited any precedent for its request to suppress evidence based on misrepresentations made to the grand jury.

PG&E also argues that the Government inappropriately used Ms. Felts and Peter Katchmar, a Pipeline and Hazardous Materials Safety Administration ("PHMSA") official, to request information from the California Public Utilities Commission ("CPUC"), which

1  was, in turn, expected to request the information from PG&E.  The Court is not persuaded
2  that this was prejudicial.  The Government has, all along, been requesting and obtaining
3  information from the CPUC and, as the Court previously noted, "was met with no
4  resistance" when doing so.  Dkt. No. 103 at 13-14.  It therefore appears that the CPUC
5  would have produced the information to the Government if requested from the CPUC
6  directly, and the Court finds no evidence of any "tricks to deceive defendants into
7  believing that the investigation was exclusively civil in nature."  *United States v. Stringer*,
8  535 F.3d 929, 940 (9th Cir. 2008).

9        As for PG&E's contention that its right to counsel was violated because the
10 Government's consultants made requests for information from PG&E directly, the
11 company cites no instances where Mr. Berger or Ms. Felts did so.  While PG&E asserts
12 that it cannot be expected to identify any specific requests because it has not been granted
13 access to these consultants' files, any requests made to PG&E would already be in
14 PG&E's possession.  PG&E does present evidence that Mr. Katchmar contacted PG&E
15 directly, but the record also establishes that this was not done at the direction of counsel
16 for the Government, who promptly instructed Mr. Katchmar to go through counsel for all
17 future communications.

18       Put simply, although the Government's lawyering in this case has not been ideal,
19 PG&E has not persuaded the Court that the identified concerns warrant dismissal,
20 suppression of evidence, or any other sanction.

22 **III.  The Court will not seal any documents without a motion.**

23       Finally, the Court addresses the Government's contention that PG&E improperly
24 filed in the public record grand jury documents reflecting the Government's compliance
25 with Rules 6(e)(3)(B) and 6(e)(3)(E).  The Court previously ordered these records to be
26 produced to PG&E because they were ministerial in nature and "not subject to the rule of
27 secrecy."  Dkt. No. 589 at 6.  The Government asserts that these documents remain under
28 seal despite having been produced to PG&E, but it has not requested that the documents be

8

locked from public view.[6]  In the Court's experience, the Clerk's Office typically grants such requests whenever a party identifies documents in the public record that it believes should be sealed and indicates an intent to seek an order to have the documents filed under seal.  Thus, if, as the Government contended at oral argument, the proverbial cat is out of the bag, the Government bears some responsibility for allowing these documents to remain filed in the public record.  If the Government wants to seal any or all of these documents, it shall file an appropriate motion, which PG&E may oppose, in accordance with the Local Rules.  It shall also contact the Court's courtroom deputy and request that the documents be locked from public view while the motion to seal is pending.

**CONCLUSION**

For the reasons discussed above, PG&E's motion for sanctions is DENIED.  However, the Government is put on notice that its interpretation of "government personnel" under Rule 6(e)(3)(A)(ii) is incorrect.  The rule does not apply to consultants who do not work for government or quasi-governmental entities.

**IT IS SO ORDERED.**

Dated:   06/14/16

THELTON E. HENDERSON
United States District Judge

---

[6] Had the Court not ordered the filing of a supplemental opposition to PG&E's motion for sanctions, it is unclear when or whether the Government would have made this assertion.