UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　　Plaintiff,<br>　　v.<br>PACIFIC GAS AND ELECTRIC COMPANY,<br>　　　　　Defendant. | Case No. 14-cr-00175-TEH<br><br>**ORDER ON DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE TESTIMONY OF GOVERNMENT EXPERT WITNESS STEVEN NANNEY** |

Defendant Pacific Gas and Electric Company ("PG&E") has moved *in limine* to exclude Government expert witness Steven Nanney. Dkt. No. 339 ("Mot."). Both parties timely opposed and replied in support of this motion. Dkt. Nos. 367 ("Opp'n"), 374 ("Reply"). The Court held a hearing on June 13, 2016 to determine whether Mr. Nanney's expert testimony meets the standards set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). After carefully considering the parties' written and oral arguments, the Court now DENIES PG&E's motion to exclude Mr. Nanney's testimony, as set forth below.

**LEGAL STANDARD**

It is the role of the trial judge to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. Pursuant to Federal Rule of Evidence ("Rule") 702, a witness "who is qualified as an expert by knowledge, skill, experience, training, or education" may offer expert testimony only if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and

1  methods; and (d) the expert has reliably applied the principles and methods to the facts of
2  the case." Fed. R. Evid. 702.

**DISCUSSION**

Mr. Nanney is a senior engineer at the Pipeline and Hazardous Materials Safety Administration ("PHMSA").  Opp'n at 6.  The Government offers him as an expert about the "Pipeline Safety Act regulatory requirements." *Id.*  Though PG&E argues that such testimony is improper because "matters of law are inappropriate subjects for expert testimony," Reply at 7 (quoting *Hooper v. Lockheed Martin Corp.*, 688 F.3d 1037, 1052 (9th Cir. 2012)), the June 6, 2016 *Daubert* hearing focused exclusively on Mr. Nanney's qualifications to provide such testimony.

**I.  Expert testimony about the Pipeline Safety Act is warranted in this complex criminal prosecution.**

Because Mr. Nanney is not being offered to testify about any professional study or particular application of scientific principles, the Court is not tasked with conducting a typical *Daubert* assessment of his methods or technique.  Rather, Mr. Nanny is being offered to testify about the complex regulatory framework that underlies this criminal prosecution.  The Ninth Circuit has held that, though uncommon, such expert testimony is sometimes permissible: "It is true that matters of law are generally inappropriate subjects for expert testimony, but there may be instances in rare, highly complex and technical matters where a trial judge, utilizing limited and controlled mechanisms, and as a matter of trial management, permits some testimony seemingly at variance with the general rule." *Flores v. Arizona*, 516 F.3d 1140, 1166 (9th Cir. 2008) (internal quotation marks and citation omitted), *reversed on other grounds* 557 U.S. 433 (2009).

This prosecution is quite clearly one where, as a matter of trial management, expert testimony on the Pipeline Safety Act is necessary.  PG&E has argued that this will be "one of the more complex criminal trials ever tried in this district."  Dkt. No. 126 at 2.

1    Moreover, one of PG&E's defenses to the regulatory counts in this criminal prosecution is
2    that any alleged regulatory violations cannot have been "knowing and willful," as required
3    by 49 U.S.C. § 60123, because the regulations are "vague or contradictory or confusing or
4    [do] not make sense." Dkt. No. 68 at 6. The jury, like PG&E, will almost certainly find
5    the Pipeline Safety Act's regulatory framework to be complex and confusing. But the jury,
6    unlike PG&E, lacks the benefit of daily interaction with this framework to guide its
7    understanding. Accordingly, expert testimony to help the jury digest this complex
8    regulatory framework is necessary and warranted.

**II.   Mr. Nanney is qualified to testify as an expert on the Pipeline Safety Act regulations.**

It was for good reason, then, that the *Daubert* hearing focused on Mr. Nanney's qualifications to serve as an expert in this capacity. Dkt. No. 651 ("6/13/16 Tr.") at 26-27. PG&E's questions to Mr. Nanney at the hearing suggest that he must have authored the Pipeline Safety Act regulations to be an expert in those regulations. *See id.* at 30-31 ("When you began working for PHMSA in 2004, the regulations . . . that are at issue in this case . . . had already become effective. Is that right?"); *id.* at 31 ("[Y]ou weren't involved in any way with the development of the regulations for PHMSA related to integrity management in 2004. True?"); *id.* ("Your resume says . . . that you were involved in the regulatory development of pipeline integrity management rules. Which rules are those, sir?"). While the author of the charged regulations would certainly be one of the most qualified individuals to discuss them, experts are not required to be the best or only individuals qualified in their fields. Rather, Rule 702 requires that individuals be qualified by "knowledge, skill, experience, training, or education" to provide expert testimony. Fed. R. Evid. 702. And as demonstrated at the *Daubert* hearing on his qualifications, Mr. Nanney possesses all of the above.

As a senior engineer at PHMSA – the federal regulatory agency within the Department of Transportation that issued the Pipeline Safety Act regulations and is

charged with their administration, 49 C.F.R. § 190.303 – Mr. Nanney undoubtedly possesses knowledge of the regulations. Moreover, with over 40 years of experience in the pipeline industry, 6/13/16 Tr. at 28, including decades working within the industry on the "operator" side and over a decade working at PHMSA on the "regulator" or "implementation" side, Mr. Nanney's experience makes him uniquely well-equipped to communicate on the Pipeline Safety Act. This experience is buttressed by both highly relevant training – including internal PHMSA training on the regulations, *id.* at 36, 46-58 – and education – including a Bachelor's of Science in Civil Engineering and a Master's of Science in Petroleum Engineering, *id.* at 58. Counsel for the Government confirmed with Mr. Nanney at the *Daubert* hearing that his training and experience include sufficient exposure to and implementation of the specific Pipeline Safety Act regulations charged in this case. *Id.* at 46-58. Finally, there is little doubt that Mr. Nanney's extensive, knowledge, experience, training, and education will "help the trier of fact to understand the evidence or to determine a fact in issue," Fed. R. Evid. 702(a), as twelve of the thirteen counts to be tried in this case turn on the jury's ability to understand the Pipeline Safety Act regulations.

Accordingly, PG&E's motion to exclude Mr. Nanney's testimony is hereby DENIED.

### III. Mr. Nanney may not offer opinions about whether PG&E violated the Pipeline Safety Act regulations.

Mr. Nanney may not, however, offer any opinions about whether PG&E violated the Pipeline Safety Act. This determination shall remain with the jury. Moreover, the jurors will be instructed that their decisions are to be based on the law as read to them by the Court, not on the law as discussed by Mr. Nanney, and that Mr. Nanney is only there to help them understand the framework for that law.

//
//

**CONCLUSION**

Mr. Nanney may testify as an expert in this matter, as set forth above.

**IT IS SO ORDERED.**

Dated: 06/15/16

_____
THELTON E. HENDERSON
United States District Judge