1                         UNITED STATES DISTRICT COURT

2                    NORTHERN DISTRICT OF CALIFORNIA

3

4 UNITED STATES OF AMERICA,        Case No. 14-cr-00175-TEH

5          Plaintiff,

6       v.                   **ORDER GRANTING IN PART WITNESSES' MOTION TO QUASH; DENYING GOVERNMENT'S**

7 PACIFIC GAS AND ELECTRIC        **MOTION TO QUASH**

8 COMPANY,

         Defendant.

9

10        This matter came before the Court on June 6, 2016 for a hearing on two motions to

11 quash the same third-party subpoenas to trial witnesses Margaret Felts and David Berger,

12 which were separately filed by Felts and Berger (the "witnesses") and the Government.

13 Dkt. Nos. 507 ("Witness Mot."),[1] 574 ("Gov't Mot.").  Defendant Pacific Gas and Electric

14 Company ("PG&E"), who issued the subpoenas, timely opposed both motions.  Dkt. Nos.

15 522 ("Witness Opp'n"), 599 ("Gov't Opp'n").  The movants timely replied in support of

16 their respective motions.  Dkt. Nos. 537 ("Witness Reply"), 609 ("Gov't Reply").  After

17 carefully considering the parties' written and oral arguments, the Court hereby GRANTS

18 IN PART the witnesses' motion and DENIES the Government's motion.

19

20 **BACKGROUND**

21        PG&E served trial subpoenas for documents on two individuals – Felts and Berger

22 – who previously worked with both the Government in this criminal prosecution and the

23 California Public Utilities Commission ("CPUC") in its regulatory investigation of PG&E.

24 According to PG&E, "these experts were working for the CPUC and the prosecutors at the

25 same time, and appear to have been sharing information between the two clients."  Witness

26 Opp'n at 16.  PG&E has confirmed that it intends to call both witnesses at trial.

27 _____

28 [1]    The California Public Utilities Commission joined in the witnesses' motion.  Witness Mot. at 1.

The Felts subpoena calls for the production at trial of the following seven categories of evidence:

A.   All emails, documents, or other correspondence between you (including your consulting business) and any person employed by the DOT, PHMSA, the DOJ, the FBI, the San Mateo District Attorney, the City of San Bruno or the California Attorney General.

B.   All emails, documents, or other correspondence between you (including your consulting business) and any person employed by the California Public Utilities Commission, including the California Safety and Enforcement Division and the Consumer Protection and Safety Division.

C.   All notes, drafts, documents, and files concerning your investigation and testimony in California Public Utilities Commission Order Instituting Investigation (OD) No. 1.11-02-016.

D.   All documents referenced in the attached January 22, 2016 email to James Haggarty (USA-178426) described as "an excel table and a text document . . . prepared for the OII."

E.   All contracts, billing records, invoices, and time entries relating to your work (including the work of your consulting business) concerning PG&E.

F.   Any documents referencing or relating to grand jury secrecy or the requirements of Federal Rule of Criminal Procedure 6(e).

G.   To the extent not provided in response to the above requests, all of your correspondence, documents, and files concerning PG&E.[2]

Dkt. No. 507-1 ("Felts Decl."), Ex. A.  Felts does not challenge Category D.  Witness Mot. at 6 n.1.

The Berger subpoena calls for the production at trial of the following four categories of evidence (which are identical to several of the Felts categories):

A.   All emails, documents, or other correspondence between you (including your consulting business) and any person employed by the DOT, PHMSA, the DOJ, the FBI, the San Mateo District Attorney, the City of San Bruno or the California Attorney General, since September 9, 2010.

---

[2]   PG&E has since agreed to limit all seven requests to the period following the San Bruno explosion, i.e. after September 9, 2010.  Witness Opp'n at 12 n.10.

United States District Court
Northern District of California

B.   Any documents referring or relating to grand jury secrecy or the requirements of Federal Rule of Criminal Procedure 6(e).

C.   All contracts, billing records, invoices, and time entries relating to your work (including the work of your consulting business) concerning PG&E, since September 9, 2010.

D.   To the extent not provided in response to the above requests, all of your correspondence, documents, and files concerning PG&E, since September 9, 2010.

Dkt. No. 507-2 ("Berger Decl."), Ex. A.

**LEGAL STANDARDS**

Under Federal Rule of Criminal Procedure ("Rule") 17(c), a party may subpoena a witness to compel the production of "any books, papers, documents, data, or other objects the subpoena designates." Fed. R. Crim. P. 17(c).  Rule 17(c) also authorizes a federal district court to "quash or modify the subpoena if compliance would be unreasonable or oppressive." *Id.*

In interpreting this "unreasonable or oppressive" standard, the Supreme Court explained that Rule 17(c) is "not intended to provide a means of discovery for criminal cases." *United States v. Nixon*, 418 U.S. 683, 698 (1974).  In *Nixon*, the Supreme Court therefore held that the proponent of a Rule 17(c) pretrial subpoena "must clear three hurdles: (1) relevancy; (2) admissibility; and (3) specificity." *Id.* at 700.[3,4,5]  The first

---

[3]   Under *Nixon*, the proponent must also demonstrate "that [the documents sought] are not otherwise procurable reasonably in advance of trial by exercise of due diligence," "that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial," and "that the application was made in good faith and is not intended as a general 'fishing expedition.'"  418 U.S. at 699-700.

[4]   PG&E argues that "[o]ne court in this district has recognized that the *Nixon* rationale for limiting the scope of discoverable materials does not apply to Rule 17(c) trial subpoenas served by the defense on a third party, as opposed to the government."  Witness Opp'n at 7 (citing *United States v. Nosal*, 291 F.R.D. 403, 407-09 (N.D. Cal. 2013)).  As another court in this district recognized, however, the question whether a lesser standard than *Nixon* applies to certain Rule 17(c) subpoenas issued by defendants has been rejected by the Ninth Circuit.  *See United States v. Reyes*, 239 F.R.D. 591, 597 n.1 (N.D. Cal. 2006) (quoting *United States v. Fields*, 663 F.2d 880, 881 (9th Cir. 1981)) ("[W]e see no basis for using a lesser evidentiary standard merely because production is sought from a third party rather than from the United States.").  Indeed, the district judge in *Nosal* later set aside the order of the magistrate judge that PG&E cites for support.  *See United States v. Nosal*, No. 08-cr-237-EMC, Dkt. No. 352 at 19-20 (N.D. Cal. Mar. 29, 2013) (finding,

3

factor – relevance – "requires the Court to assess whether the documents sought have 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *United States v. Libby*, 432 F. Supp. 2d 26, 31 (D.D.C. 2006) (quoting Fed. R. Evid. 401). The second factor – admissibility – is governed by the Federal Rules of Evidence. *Id.* The final factor – specificity – may be "satisfied if there is a 'sufficient likelihood,' demonstrated through rational inferences, that the documents being sought contain relevant and admissible evidence." *Id.* (quoting *Nixon*, 418 U.S. at 700).

The decision whether to issue or enforce a subpoena is left to the discretion of the district court. *Nixon*, 418 U.S. at 702 ("Enforcement of a pretrial subpoena duces tecum must necessarily be committed to the sound discretion of the trial court since the necessity for the subpoena most often turns upon a determination of factual issues.").

**DISCUSSION**

**I.     Witnesses' Motion to Quash**

The witnesses' motion to quash these subpoenas principally raises two objections to production of the subpoenaed documents: (1) burden on behalf of the witnesses; and (2) work product on behalf of the CPUC. *See* Witness Mot. at 5-6 ("Requiring these two non-parties to produce the documents listed in the subpoenas would be both unduly burdensome and oppressive. Moreover, some of the requests seek information that is protected by the CPUC attorneys' work product doctrine . . . . These subpoenas should be

---

upon requested review of the magistrate judge's prior non-dispositive order, that *Nixon* properly applies to third party subpoenas from defendants in this circuit, under *Fields*).

[5]     PG&E also suggests that "some of the *Nixon* requirements . . . are only required to justify a subpoena for production before trial, which is not at issue here." Witness Opp'n at 7. PG&E's point is well taken with respect to the *Nixon* requirements rooted in pretrial diligence or preparation, but PG&E does not explain why *Nixon*'s requirement that the subpoena be made "in good faith and . . . not intended as a general 'fishing expedition'" should not apply with equal force when the subpoena has a return date during trial. *Nixon*, 418 U.S. at 699-700. Moreover, PG&E separately cites *Nixon* in moving to quash trial subpoenas issued by the Government, Dkt. No. 618, so it cannot (consistently) argue that *Nixon* should not apply to its own trial subpoenas.

United States District Court
Northern District of California

quashed.").  But the witnesses also argue that the subpoenas fail to meet the requirements set forth in *Nixon*.  Witness Mot. at 5, 10.

      **a.**    **Compliance with certain categories of the subpoenas would be oppressive, and the same categories fail *Nixon*'s evidentiary standard.**[6]

Felts declared, under penalty of perjury, that it would take her more than 80 hours to completely gather the requested documents.  Felts Decl. ¶ 22.  Berger likewise declared that he has spent 25 hours collecting the documents already, and anticipates that he would need to spend "many more" to fully comply with the subpoena.  Berger Decl. ¶ 19.  Other than to challenge the veracity of these calculations, Witness Opp'n at 14, PG&E has failed to counter the notion that such efforts would be oppressive for the purposes of Rule 17.  And the witnesses' estimates are entirely consistent with the striking breadth of PG&E's requests.  For example, Felts and Berger categories A both seek "[a]ll emails, documents, or other correspondence" pertaining to "any person employed by" seven different agencies over a period of six years, without any specific content or purpose in mind.  It does not strain credulity that complying with such an expansive request would be burdensome.  The same can be said of Felts category B (seeking "[a]ll emails, documents, or other correspondence" pertaining to "any person employed by the [CPUC]" over a six year period), Felts category C (seeking "[a]ll notes, drafts, documents, and files concerning" all investigation and testimony in a CPUC proceeding over a six year period), and Felts and Berger categories G and D, respectively (seeking "all of your correspondence, documents, and files concerning PG&E" over a six year period).

Moreover, the categories identified above (Felts categories A, B, C, and G; Berger categories A and D) fail to meet *Nixon*'s evidentiary requirements.  The Court could not possibility find that such broad document requests are relevant, admissible, and specific for

---

[6]    Neither PG&E's argument that the challenged subpoenas were issued to "retained experts who were central to the government's investigation," Witness Opp'n at 1-4, nor PG&E's argument that it previously "sought materials relating to the CPUC, Ms. Felts, and Mr. Berger from the government," *id.* at 4-5, change the standard that this Court must apply to the subpoenas.

United States District Court
Northern District of California

the simple reason that the requests are so broad that the Court cannot conduct a meaningful *Nixon* analysis. Though PG&E states that "[i]n many instances, as described above, these documents will contain exculpatory statements," Witness Opp'n at 16, nowhere "above" had PG&E actually "described" the likelihood that any document, or set of documents, would contain exculpatory information. Rather, the expansive requests contained in the identified categories most closely resemble "a general fishing expedition." *Nixon*, 418 U.S. at 700 (internal quotation marks omitted). Indeed, PG&E's argument that "[i]n refusing to provide the evidence as part of its own discovery obligations, the government has encouraged PG&E to obtain CPUC-related documents by subpoena to the CPUC or the witnesses," Witness Opp'n at 5, seems to concede that PG&E is improperly using Rule 17(c) as "a means of discovery," *Nixon*, 418 U.S. at 698.[7]

PG&E has offered no meaningful way to modify the Felts categories identified above.[8] Accordingly, the Court GRANTS the witnesses' motion to quash Felts categories A, B, C, and G. PG&E has likewise offered no meaningful way to modify Berger category D. Accordingly, the Court GRANTS the witnesses' motion to quash Berger category D. PG&E has, however, offered one meaningful way to modify Berger category A, by explaining that it seeks "presentations and consultation for DOT and PHMSA relating to the regulations at issue in this case." Witness Opp'n at 16. This substantially narrowed request is sufficiently likely to contain relevant information; the clarity, or lack thereof, of the charged regulations is directly at issue in this prosecution, so DOT and PHMSA

---

[7]    Rule 17(c) is not the correct vehicle for PG&E to argue that the Government has improperly resisted discovery. Rather, PG&E should have moved to compel discovery. Even if, as PG&E argues, the extent of Felts' and Berger's involvement in this case came to light only after the initial deadline for filing discovery motions, Witness Opp'n at 2 n.1, the proper avenue would have been to request leave to file a motion to compel before the Court set its final deadline on pretrial discovery motions. *See* Dkt. No. 369 at 3 ("IT IS HEREBY ORDERED that the remaining discovery disputes . . . shall be filed no later than March 28, 2016.").

[8]    Agreeing to limit Felts categories B and C "to those [documents] not already provided by or to PG&E during discovery in the CPUC proceeding," Witness Opp'n at 13, is not a meaningful limitation. Setting aside the fact that even this limited request would fail *Nixon*'s specificity requirement (as it only makes the universe of unspecific material smaller), Felts has stated that this limitation would not meaningfully alter the burden of collecting responsive material. Dkt. No. 540 ¶ 5.

United States District Court
Northern District of California

1    presentations on these regulations are highly relevant.  Accordingly, the Court DENIES the

2    witnesses' motion to quash Berger category A, but modifies the Berger category A

3    subpoena to seek only "presentations and consultation for DOT and PHMSA relating to

4    the regulations at issue in this case."

5            **b.    Compliance with Felts category E and Berger category C would not be**

6                    **oppressive, but the categories fail *Nixon*'s evidentiary standard.**

7            PG&E's requests for "[a]ll contracts, billing records, invoices, and time entries

8    relating to your work (including the work of your consulting business) concerning PG&E"

9    – i.e., Felts category E and Berger category C – are not so broad as to be patently

10   oppressive; indeed, the witnesses' concerns with respect to these categories were content-

11   rather than burden-related.  *See* Witness Mot. at 9, 12 (expressing work product and

12   privacy concerns).

13           However, the categories fail to satisfy *Nixon*.  PG&E explains that "getting those

14   billing records . . . is relevant to [the witnesses'] impartiality, their bias."  Dkt. No. 622

15   ("6/6/16 Tr.") at 7-8.  Bias is a form of impeachment evidence.[9]  *See United States v.*

16   *Shanahan*, No. S1–4:07 CR 175 JCH, 2008 WL 619213, at *3 (E.D. Mo. Mar. 3, 2008)

17   ("The term 'impeachment' also refers to the bias or interest of a witness . . . .") (citing

18   *Berry v. Oswalt*,143 F.3d 1127, 1132 (8th Cir. 1998)).  But PG&E's broad requests for this

19   impeachment evidence – seeking four types of documents (contracts, billing records,

20   invoices, and time entries) and spanning six years – does not demonstrate a "sufficient

21

22

23   ———————————————————

24   [9]     While both the Supreme Court and the Ninth Circuit have held that impeachment is
     generally an insufficient basis for production under *Nixon*, the holdings have been limited
25   to pretrial production of materials.  *See Nixon*, 418 U.S. at 701 ("Generally, the need for
     evidence to impeach witnesses is insufficient to require its production *in advance of trial*.")
26   (emphasis added); *United States v. Fields*, 663 F.2d 880, 881 (9th Cir. 1981) ("The only
     evidentiary use that defendants have been able to advance is that the statements and
27   transcribed interviews of witnesses could be used for impeachment purposes.  This use is
     generally insufficient to justify the *pretrial production* of documents.") (citations omitted)
28   (emphasis added).  Because the challenged subpoenas have a return date during trial, these
     cases are distinguishable.

United States District Court
Northern District of California

1  likelihood" that these documents contain impeachment evidence.[10]  *Libby*, 432 F. Supp. 2d

2  at 31.  These categories therefore lack specificity under *Nixon*.

3        Accordingly, the Court GRANTS the witnesses' motion to quash Felts category E

4  and Berger category C.[11]

5        **c.   Compliance with Felts category F and Berger category B would not be**

6        **oppressive, but the categories fail *Nixon*'s evidentiary standard.**

7        PG&E's requests for "[a]ny documents referring or relating to grand jury secrecy or

8  the requirements of Federal Rule of Criminal Procedure 6(e)" – i.e., Felts category F and

9  Berger category B – are not so broad as to be patently oppressive.  Indeed, Felts apparently

10  possesses only one document – "a letter [Felts] received from the prosecutors in advance

11  of her grand jury testimony" – that is responsive to this request.  Witness Opp'n at 14.

12        However, the categories fail to satisfy *Nixon*.  When asked about the relevance of

13  the Felts letter, PG&E explained: "[A]bout the letter [Felts] got, it's hard . . . to comment

14  on it without . . . seeing it. . . .  So I don't know whether . . . the government allowed her to

15  waive any kind of 6(e) stuff with respect to the CPUC.  We just don't know.  So that could

16  be relevant to us."  6/6/16 Tr. at 11.  PG&E's concession that it would be "hard to

17  comment" on the letter's relevance belies any argument that "there is a 'sufficient

18

19  [10]   Moreover, it is unclear what Felts and Berger will testify about, and therefore
20  difficult to confirm the relevance of said impeachment evidence.  Though PG&E recently
   confirmed that it intends to call Felts as a witness, 6/6/16 Tr. at 11, she did not appear on
21  its most recent witness list. Dkt. No. 486.  And though Berger did appear on this list, the
   description of his testimony is exceedingly vague.  *See id.* at 2 ("This witness is likely to
22  testify regarding his work with the CPUC and DOJ, but his testimony will depend upon the
   government's presentation of its case.").
23  [11]   Because the Court has quashed any category that could conceivably implicate the
   witnesses' privacy concerns and the CPUC's work product concerns, *see* Witness Mot. at
24  9, 12, the Court need not address these arguments.  Nevertheless, the Court notes the
   witnesses' privacy concerns seem either unwarranted, *see* Witness Opp'n at 13 (noting
25  "the versions of [billing] records in PG&E's possession do not contain any social security
   numbers"), or readily redressable through redaction.  And with respect to the CPUC's
26  work product concerns, the Court has serious doubts that they would bar production of
   much, if anything.  The CPUC merely asserts – without support and presumably without
27  having reviewed the responsive documents – that "some of the material" requested is
   protected by the work product doctrine.  Witness Mot. at 2-3.  Meanwhile, PG&E makes
28  many compelling arguments against this bare assertion, *see* Witness Opp'n at 9-12, which
   the witnesses failed to even mention in reply.

United States District Court
Northern District of California

1    likelihood' . . . that the [letter] contain[s] relevant and admissible evidence." *Libby*, 432 F.

2    Supp. 2d at 31 (quoting *Nixon*, 418 U.S. at 700).  Moreover, PG&E agreed at the June 6,

3    2016 hearing that its arguments about Rule 6(e) were more properly considered under its

4    motion for sanctions, 6/6/16 Tr. at 10, which the Court has since ruled on, Dkt. No. 653.

5    And PG&E has articulated no other reason why the Felts letter, or any similar documents

6    from Berger, are relevant to its defense in this matter.  These categories therefore lack both

7    relevance and specificity under *Nixon*.

8         Accordingly, the Court GRANTS the witnesses' motion to quash Felts category F

9    and Berger category B.

10

11         **II.    The Government's Motion to Quash**

12         The Government's motion to quash the Felts and Berger subpoenas principally

13    raises two objections to production of the subpoenaed documents: (1) privilege on behalf

14    of the Government; and (2) secrecy on behalf of the grand jury.  *See* Gov't Mot. at 2 ("The

15    subpoenas should be quashed insofar as they call for the production of materials protected

16    from disclosure under the work-product doctrine and deliberative process privilege, and

17    materials protected by the grand jury secrecy provisions of [Rule] 6(e).").

18         **a.    The Government's privilege argument is mooted by the Court's order**

19              **on the witnesses' motion to quash.**

20         The Government objects to four categories of documents on the basis of privilege:

21    (1) Emails between members of the prosecution team and Berger or Felts; (2) Drafts of the

22    prosecution memorandum; (3) Drafts of the indictment; and (4) Memoranda for

23    government attorneys.  Gov't Mot. at 3.  But these items would only be responsive to Felts

24    and Berger categories A, which the Court quashed above.  Accordingly, the Government's

25    concerns have been mooted.[12]

26    _____

27    [12]    The Court nevertheless notes that categories 2, 3, and 4 identified by the Government
      would be protected by the work-product doctrine, as the doctrine extends to consultants

28    like Berger and Felts (who have been hired for the express purpose of assisting the
      prosecution team).  *See United States v. Nobles*, 422 U.S. 225, 238-39 (1975) ("[T]he

United States District Court
Northern District of California

**b.    The Government's secrecy argument is mooted by the Court's order on the witnesses' motion to quash.**

The Government argues that PG&E's attempt to obtain from Berger and Felts "[a]ny documents referring or relating to grand jury secrecy or the requirements of Federal Rule of Criminal Procedure 6(e)" actually invites a violation of this rule.  Gov't Mot. at 9.  As the Court has already quashed Felts category F and Berger category B, which seek the Rule 6(e) documents, the Government's concerns have been mooted.

//

//

//

//

//

//

//

//

//

//

//

//

//

doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system.  One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial.  It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.").  Categories 2 and 3 would likewise be protected by the deliberative process privilege, which the Ninth Circuit has extended to prosecution memoranda.  *United States v. Fernandez*, 231 F.3d 1240, 1247 (9th Cir. 2000); *see also United States v. Furrow*, 100 F. Supp. 2d 1170, 1174 (C.D. Cal. 2000) (same); *Nat'l Sec. Archive v. C.I.A.*, 752 F.3d 460, 463 (D.C. Cir. 2014) (holding that the privilege extends to draft documents, provided they assisted in the development of the entity's final decision).  Though these privileges must yield if the underlying documents contain *Brady* material, the Court has already separately ordered their production to ensure that any *Brady* material is turned over.  Dkt. No. 629 at 12-13.

10

**CONCLUSION**

The witnesses' motion is GRANTED IN PART, as follows:

1.   The witnesses' motion to quash Felts categories A, B, C, E, F, and G is GRANTED;

2.   The witnesses' motion to quash Berger categories B, C, and D is GRANTED; and

3.   The witnesses' motion to quash Berger category A is DENIED, but the subpoena is MODIFIED to seek only "presentations and consultation for DOT and PHMSA relating to the regulations at issue in this case."

The Government's motion is DENIED as moot.

**IT IS SO ORDERED.**

Dated:   06/16/16

THELTON E. HENDERSON
United States District Judge

United States District Court
Northern District of California

11