UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Defendant. | Case No. 14-cr-00175-TEH<br><br>**ORDER DENYING DEFENDANT'S MOTION TO QUASH** |

On June 7, 2016, Defendant Pacific Gas and Electric Company ("PG&E") filed a motion to quash two trial subpoenas served by the Government. Dkt. No. 618 ("Mot."). The Government, who issued the subpoenas, timely opposed the motion on an expedited briefing schedule, Dkt. No. 637 ("Opp'n"), and PG&E timely replied in support thereof. Dkt. No. 650 ("Reply"). After carefully considering the parties' written arguments, the Court hereby DENIES the motion.

**BACKGROUND**

Magistrate Judge Maria-Elena James was the first to consider the subpoenas that PG&E now moves to quash. On February 24, 2016, the Government filed an application for the issuance of a pretrial subpoena duces tecum to PG&E, pursuant to Federal Rule of Criminal Procedure ("Rule") 17(c). Dkt. No. 312. Among other things, the Government's "Request A" sought certain personnel files for numerous current and former PG&E employees who are on the Government's witness list. *Id.* at 2-3. On March 28, 2016, Judge James granted in part the Government's Request A application, holding that a subset of the request – including the witnesses' severance agreements – may be admissible to impeach the credibility of the witnesses, and ordering disclosure of these agreements for *in*

*camera* review. Dkt. No. 408 ("Mar. 28 Order") at 23.[1]

On March 31, 2016, the Government filed a supplemental *ex parte* application for a Rule 17(c) pretrial subpoena, to "offer additional bases for [the] relevance and admissibility" of Request A. Dkt. No. 413 ("Mar. 31 Suppl. Mot.") at 1. PG&E objected that this "supplement" was a procedurally improper motion for reconsideration, but on April 7, 2016, Judge James addressed the merits of the Government's "additional bases" for Request A in a supplemental order. Dkt. No. 427 ("Apr. 7 Order") at 3. On the basis of this supplemental showing, Judge James held that the Government may issue a subpoena for additional information under Request A: "the witnesses' employee offer letters, performance appraisals . . . and incentive plans and compensation data from PG&E." *Id.* at 5.

PG&E subsequently sought relief from both the March 28 and April 7 Orders. Dkt. Nos. 445 ("Mar. 28 Objs."), 446 ("Apr. 7 Objs."). This Court set aside Judge James's March 28 Order that the severance agreements be produced *in camera*, because impeachment is an insufficient basis for pretrial production under Rule 17(c). Dkt. 526 ("May 10 Order") at 3-5. This Court also set aside Judge James's April 7 reconsideration of (and ruling on) the Government's supplemental *ex parte* application for Request A materials, because the application was untimely under this Court's prior scheduling orders. Dkt. No. 584 at 5-7.

On May 24 and May 26, 2016, the Government served PG&E with trial subpoenas seeking the same information previously sought before (and approved by) Judge James. *See* Dkt. No. 619-1, Attach. A ("May 24 Subpoena") (seeking "severance agreements" for 16 witnesses); Dkt. No. 619-2, Attach. A ("May 26 Subpoena") (seeking "employee offer letters, performance appraisals, and incentive plans and compensation data from PG&E" for 30 witnesses). PG&E now moves to quash these subpoenas.

---

[1] The severance agreements are the only Request A item granted in the March 28 Order that the Government again seeks through the challenged subpoenas. *See* Dkt. No. 619-1, Attach. A ("Please provide severance agreements . . . for the following witnesses . . . .").

**LEGAL STANDARDS**

A party may subpoena a witness to compel the production of "any books, papers, documents, data, or other objects the subpoena designates." Fed. R. Crim. P. 17(c). Rule 17(c) also authorizes a federal district court to "quash or modify the subpoena if compliance would be unreasonable or oppressive." *Id.*

In interpreting this "unreasonable or oppressive" standard, the Supreme Court explained that Rule 17(c) is "not intended to provide a means of discovery for criminal cases." *United States v. Nixon*, 418 U.S. 683, 698 (1974). In *Nixon*, the Supreme Court therefore held that the proponent of a Rule 17(c) pretrial subpoena "must clear three hurdles: (1) relevancy; (2) admissibility; and (3) specificity." *Id.* at 700.[2] The first factor – relevance – "requires the Court to assess whether the documents sought have 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *United States v. Libby*, 432 F. Supp. 2d 26, 31 (D.D.C. 2006) (quoting Fed. R. Evid. 401). The second factor – admissibility – is governed by the Federal Rules of Evidence. *Id.* The final factor – specificity – may be "satisfied if there is a 'sufficient likelihood,' demonstrated through rational inferences, that the documents being sought contain relevant and admissible evidence." *Id.* (quoting *Nixon*, 418 U.S. at 700).

The decision whether to issue or enforce a subpoena is left to the discretion of the district court. *Nixon*, 418 U.S. at 702 ("Enforcement of a pretrial subpoena duces tecum must necessarily be committed to the sound discretion of the trial court since the necessity for the subpoena most often turns upon a determination of factual issues.").

//

//

---

[2] Under *Nixon*, the proponent must also demonstrate "that [the documents sought] are not otherwise procurable reasonably in advance of trial by exercise of due diligence," "that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial," and "that the application is made in good faith and is not intended as a general 'fishing expedition.'" 418 U.S. at 699-700.

**DISCUSSION**

Both parties mischaracterize the nature of this Court's prior rulings on the subpoenaed materials. Though PG&E is correct that this Court previously denied the Government's request for *pretrial* production of these materials, Mot. at 3-4, the previous denials were procedural and do not find application with the present *trial* subpoenas. First, though impeachment is an insufficient basis for pretrial production under Rule 17(c), the cases establishing this principle do not extend to production at trial. *See Nixon*, 418 U.S. at 701 ("Generally, the need for evidence to impeach witnesses is insufficient to require its production *in advance of trial*.") (emphasis added); *United States v. Fields*, 663 F.2d 880, 881 (9th Cir. 1981) ("The only evidentiary use that defendants have been able to advance is that the statements and transcribed interviews of witnesses could be used for impeachment purposes. This use is generally insufficient to justify the *pretrial production of documents*.") (citations omitted) (emphasis added). Second, though the March 31 Supplemental Motion violated the Court's deadline for application of Rule 17(c) pretrial subpoenas, Dkt. No. 369 at 3, this deadline did not foreclose the issuance of Rule 17(c) trial subpoenas, which do not require a court order. *See* Crim. L.R. 17-1. Accordingly, the reasons the Court set aside the portions of the March 28 and April 7 Orders that gave rise to the present subpoenas do not apply to quash these subpoenas.

And though the Government is correct that this Court has several times approved of Judge James's application of the *Nixon* factors, Opp'n at 1, the Court has never addressed Judge James's application of those factors to the materials sought in the challenged subpoenas.

Accordingly, the Court now addresses the merits of PG&E's motion to quash the May 24 and May 26 subpoenas. Though Judge James considered the Government's request for the materials sought in these same subpoenas – i.e., (i) severance agreements, and (ii) employee offer letters, performance appraisals, and incentive plans and compensation data – in the context of Rule 17(c) pretrial applications, the same standard applies to the Government's request for these documents in the context of Rule 17(c) trial

1    subpoenas.  *See* Dkt. No. 662 at 4 n.5 (explaining that *Nixon* applies to limit both trial and
2    pretrial subpoenas).  And though the Court is not tasked with reviewing Judge James's
3    order on those subpoenas, Judge James's *Nixon* analysis of the documents sought therein is
4    nevertheless instructive.

**I.   The May 24 subpoena is still proper under *Nixon*.**

With respect to the severance agreements now sought in the May 24 subpoena, Judge James held:

> The only information the government seeks that appears reasonably specific . . . is the severance agreements . . . based on the government's proffer that . . . the severance agreements will show PG&E conditioned payments on the witness not saying anything adverse to PG&E[.] . . . The government's supporting declaration provides some support that the severance agreements . . . actually have some likelihood of containing the information the government seeks[.] . . . Thus, . . . there is a sufficient likelihood the severance agreements . . . will contain the information the government seeks[.]

Mar. 28 Order at 10.  Judge James also agreed with the Government that the "evidentiary purpose for this evidence is to show bias of the witnesses," or in other words, to impeach them.  *Id.* at 11; *see also id.* ("Bias is a form of impeachment evidence.") (citing *Horton v. Mayle*, 408 F.3d 570, 578 (9th Cir. 2005)).

PG&E has not identified any fault with Judge James's analysis here, and the Court finds none.  PG&E's arguments for relief from the March 28 Order focused on the impropriety of *in camera* review of impeachment material for pretrial production.  Mar. 28 Objs. at 3-4.  The Court once found this argument compelling, May 10 Order at 3-5, but the argument no longer finds application because the Government does not seek pretrial production of the severance agreements.  And the present motion's arguments against production of the agreements are similarly unavailing.  *See* Mot. at 3-4 (focusing again on the impeachment issue); *id.* at 5 (suggesting grand jury abuse, an argument the Court has twice rejected, Dkt. No. 584 at 4, Dkt. No. 654 at 3-4); *id.* (highlighting privacy concerns that the Court addresses below); *id.* (suggesting that because the severance agreements of

5

certain PG&E executives exist online it is improper to obtain the agreements for any other witnesses, which ignores the Government's interest in impeachment on a witness-by-witness basis).

Accordingly, the Court adopts Judge James's *Nixon* analysis of the severance agreements.[3] Because this impeachment evidence will become relevant and admissible only once each witness testifies, *Fields*, 663 F.2d at 881, PG&E is instructed to collect the responsive documents and have them ready for production when it becomes apparent that each covered witness will indeed testify.[4]

## II.     The May 26 subpoena is still proper under *Nixon*.

With respect to the employee offer letters, performance appraisals, and incentive plans and compensation data, Judge James held the "government's supporting declaration and proffers provide facts and a good faith basis to find these documents meet *Nixon*'s relevance, specificity, and admissibility requirements." Apr. 7 Order at 4. Judge James described this *Nixon*-worthy proffer as follows:

> First, [the government] contends this evidence is relevant to show employees' incentive to lower PG&E's expenditures, which the government indicates is germane to its argument that "PG&E repeatedly deferred safety (integrity management) improvements to preserve company revenues (and with it, executive bonuses)." Second, it asserts "the evidence is relevant to show that PG&E current and former employees have a financial incentive to testify favorably to PG&E because they own company stock. If PG&E is convicted of crimes based on this trial, it is reasonable to expect that PG&E stock may decline." As to admissibility, the government states the documents it seeks are admissible as statements of a party opponent (PG&E).

*Id.* at 2 (citations omitted). And the supporting declaration Judge James described included the following explanation and information:

---

[3]  The Court refers the reader to Judge James's *Nixon* analysis for a more thorough description of the Government's underlying declarations and proffers. *See* Mar. 28 Order at 2-4, 7-16.

[4]  *See infra* at 9 (discussing the scheme for production of these materials).

6

> The government intends to prove that PG&E tied its employees' compensation directly to company performance, as well as individual performance, through Performance Incentive Plans (PIPs), Short Term Incentive Plans (STIPs), and Long Term Incentive Plans (LTIPs). PG&E emails make this connection explicit. So does PG&E's offer letter to its former Director of Information Management Compliance, Leslie McNiece. The offer letter also shows that McNiece would be awarded stock, the value of which depends on company performance. The performance appraisal of former Senior Vice President of Engineering and Operations, Ed Salas, clarifies that individual performance is assessed in part on meeting PG&E's expense and capital budgets and achieving company revenue targets. Therefore the government has a specific, good faith basis for believing that employee offer letters, performance appraisals, incentive plans, and compensation (including stock and stock options) will demonstrate a nexus between employees' compensation and PG&E's financial performance, including the employees' role in meeting PG&E budgets and revenue targets.

Mar. 31 Suppl. Mot. at 2 (citations omitted).

Most of PG&E's arguments for relief from the April 7 Order's acceptance of this proffer are unavailing for reasons already discussed. *See* Apr. 7 Objs. at 1-2 (grand jury abuse); *id.* at 2-3 (procedural impropriety); *id.* at 3 n.4 (availability of executive information); *id.* at 4 (privacy). PG&E also argued that Judge James erred in adopting the Government's theory of relevance for this information. *See id.* at 4 ("[T]he government makes no showing that anyone was compensated in return for willfully violating regulations."). But PG&E's relevance objection suggests a higher standard for relevance under *Nixon* than actually exists; the relevance factor merely "requires the Court to assess whether the documents sought have 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Libby*, 432 F. Supp. 2d at 31 (quoting Fed. R. Evid. 401). Though evidence that PG&E incentivized employees to lower PG&E's expenditures does not prove a willful violation of any charged regulation, it does make more probable the Government's argument that PG&E prioritized profits over safety (even if only minimally so). Moreover, PG&E ignores the fact that the Government seeks the employee offer letters, performance appraisals, and incentive plans and compensation data not only

7

because "it contends this evidence is relevant to show employees' incentive to lower PG&E's expenditures," but also because "the evidence is relevant to show that PG&E current and former employees have a financial incentive to testify favorably to PG&E." Apr. 7 Order at 2.  And as noted above, evidence showing bias is no longer impermissible under *Nixon*, as the Government no longer seeks it before trial.

The only compelling argument PG&E now makes is that the "definition of 'incentive plans and compensation data' shows that this subpoena also fails under *Nixon*'s specificity prong as it is impermissibly vague and imprecise: it is not clear what the defendant is supposed to produce or for what timeframe." Mot. at 5.  The Court agrees.  Though the May 26 subpoena provided some definition for "incentive plans and compensation data,"[5] the definition is of little help.  The Court therefore modifies the definition of "incentive plans and compensation data" to: all incentive plans the witness was enrolled in – whether it be a PIP, STIP, LTIP, or another plan – during the period covered by the Superseding Indictment and today (if the witness is still employed by PG&E).  In effect, then, the Court also strikes the "compensation data" component of the subpoena.[6]  The remainder of the request – "employee offer letters [and] performance appraisals" – remains untouched.

Accordingly, the Court adopts but modifies Judge James's *Nixon* analysis of the employee offer letters, performance appraisals, and incentive plans and compensation data.[7]  Because the Government seeks this information at least in part for impeachment,

---

[5] The subpoena defines "incentive plans and compensation data" as "(1) the types of incentive plan(s) the witness was enrolled in while he or she worked for PG&E, (2) the nature of those plans (i.e., how an employee could be compensated under the plan), (3) whether the witness ever received payments as a result of an incentive plan, and (4) the witnesses' base salary." May 26 Subpoena.

[6] It appears the Government sought the "compensation data" for evidence of "stock and stock options." Mar. 31 Suppl. Mot. at 2.  But such information also appears to be available through the offers letters, *id.*, and revealing a witness' salary seems an unnecessarily intrusive way to demonstrate that the witness has a "financial incentive to testify favorably to PG&E because they own company stock," Apr. 7 Order at 2.  *See also infra* at 9 (discussing privacy implications).

[7] The Court refers to the reader to Judge James's *Nixon* analysis for a more thorough description of the Government's underlying declarations and proffers. *See* Apr. 28 Order

8

1   PG&E is instructed to collect the responsive documents and have them at the ready for

2   production when it becomes apparent that each covered witness will indeed testify.[8]

### III. Privacy concerns dictate that the materials be produced *in camera*.

Finally, PG&E argues that "permitting the government to access such employment materials would violate the employees' privacy interest in these materials under California law." Mot. at 5. This argument carries substantial weight; as this Court has previously recognized:

> Federal courts have acknowledged a right to privacy in employment files. Moreover, federal courts may apply state privilege laws, such as California's constitutional right to privacy, where they do not conflict with federal law. Under either federal or state law, the Court must balance the party's need for the information against the individual's privacy right in his or her employment files.

*Tierno v. Rite Aid Corp.*, No. C 05-02520 TEH, 2008 WL 2705089, at *5 (N.D. Cal. July 8, 2008) (citation omitted). As of yet, however, it is unclear whether the personnel records sought by the May 24 and May 26 subpoenas contain "inherently personal information" such that production would be "deeply invasive." *Id.* Accordingly, the Court addresses PG&E's privacy concerns in the same manner that Judge James did: "the Court finds that PG&E should submit [the responsive documents] for *in camera* review . . . [to] give the Court an opportunity to consider whether these documents contain privileged information." Mar. 28 Order at 14.

Because the Court must conduct this *in camera* review within the confines of a trial that has now commenced, the Court proposes the following scheme: PG&E must collect all documents responsive to the May 24 and May 26 (as modified) subpoenas; the Government must notify PG&E of when witnesses are to testify in accordance with this Court's prior orders;[9] the day before any witness covered by one (or both) of the

---

at 2-4.
[8] *See infra* at 9 (discussing the scheme for production of these materials).
[9] *See* Dkt. No. 434 at 3.

challenged subpoenas is to testify, PG&E must produce the responsive documents to the Court for an *in camera* review; the Court will review the documents and disclose to the Government only materials that are either (i) not privileged or private, or (ii) privileged or private, but contain information for which the Government's need outweighs the witness' interest in privacy. The Court may redact the documents if necessary to protect the witnesses' privacy while also providing the Government with information that is relevant, admissible, and specific.

**CONCLUSION**

PG&E's motion to quash the May 24 and May 26 subpoenas is DENIED, but the May 26 subpoena is modified to define "incentive plans and compensation data" as: all incentive plans the witness was enrolled in – whether it be a PIP, STIP, LTIP, or another plan – during the period covered by the Superseding Indictment and today (if the witness is still employed by PG&E).[10] PG&E shall collect all documents responsive to the May 24 and May 26 (as modified) subpoenas, and shall be prepared to disclose them in accordance with the scheme outlined above.

**IT IS SO ORDERED.**

Dated: 06/17/16    _____
THELTON E. HENDERSON
United States District Judge

---

[10] As discussed above, this new definition essentially nullifies the "compensation data" component of this phrase, and this phrase alone. The remainder of the request – "employee offer letters [and] performance appraisals" – remains untouched.