LATHAM & WATKINS LLP
　　Steven M. Bauer (Bar No. 135067)
　　　　steven.bauer@lw.com
　　Margaret A. Tough (Bar No. 218056)
　　　　margaret.tough@lw.com
　　Robert E. Sims (Bar No. 116680)
　　　　bob.sims@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California  94111-6538
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095

LATHAM & WATKINS LLP
　　Melissa Arbus Sherry (*pro hac vice*)
　　　　melissa.sherry@lw.com
555 11th Street, NW, Suite 1000
Washington, DC  20004-1304
Telephone: +1.202.637.2200
Facsimile: +1.202.637.2201

CLARENCE DYER & COHEN LLP
　　Kate Dyer (Bar No. 171891)
　　　　kdyer@clarencedyer.com
899 Ellis Street
San Francisco, California  94109-7807
Telephone: +1.415.749.1800
Facsimile: +1.415.749.1694

Attorneys for Defendant
PACIFIC GAS AND ELECTRIC COMPANY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>　　v.<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>　　　　　Defendant. | CASE NO. CR-14-00175-TEH<br><br>**DEFENDANT'S OBJECTIONS TO INTRODUCTORY STATEMENTS TO THE JURY AND REQUEST FOR CURATIVE INSTRUCTIONS** |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEF.'S OBJ. TO INTRODUCTORY
STATEMENTS TO THE JURY
CASE NO. CR-14-00175-TEH

In its initial instructions to the jury, the Court made several statements that departed from the Ninth Circuit's model instructions in important ways and may have caused confusion with the jury on what the law requires.  It also omitted several others that PG&E has previously suggested and believes the law requires.  PG&E hereby objects to the following instructions or omissions, and respectfully requests that the Court issue curative instructions to prevent prejudicing PG&E before the jury.

I.     INTRODUCTORY STATEMENTS TO THE JURY

PG&E objects to three statements and omissions in the Court's introductory statements to the jury:

A.     **Government's Burden of Proof**

In its outline of the trial, the Court departed from the Ninth Circuit's model instructions and suggested that the defendant must present evidence in its defense.  The model instruction on the outline of trial provides:

> First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show. A party is not required to make an opening statement.
>
> The government will then present evidence and counsel for the defendant may cross-examine.  Then, *if the defendant chooses to offer evidence*, counsel for the government may cross-examine.
>
> After the evidence has been presented, [I will instruct you on the law that applies to the case and the attorneys will make closing arguments] [the attorneys will make closing arguments and I will instruct you on the law that applies to the case].

Ninth Circuit Model Instruction 1.11 (emphasis added).  The Court stated instead:

> After the opening statements, the Government will introduce evidence.  At the conclusion of the Government's evidence, the defendant *will* introduce evidence.  The Government *may* then introduce what is called rebuttal evidence; evidence to rebut portions of the defendant's case.

Tr. 496:13-16 (emphasis added).

The implication that the defendant must present evidence is incorrect.  It is the government's burden to prove all essential elements of the charged crimes beyond a reasonable doubt. *See, e.g.*, *In re Winship*, 397 U.S. 358, 364 (1970); *United States v. Orduno-Aguilera*,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEF.'S OBJ. TO INTRODUCTORY
STATEMENTS TO THE JURY
CASE NO. CR-14-00175-TEH

1  183 F.3d 1138, 1140 (9th Cir. 1999).  A jury instruction that purports to relieve the government

2  of that burden violates due process.  *See Carella v. California*, 491 U.S. 263, 265 (1989);

3  *Patterson v. Gomez*, 223 F.3d 959, 962 (9th Cir. 2000).  PG&E respectfully requests that the

4  Court clarify to the jury that the burden of proof rests with the government, at no point will that

5  burden shift to PG&E to prove its innocence, and PG&E is neither expected nor required to

6  present any evidence in its defense.

### B.     Presumption of Innocence

Relatedly, the Court did not instruct the jury on the presumption of innocence.  "The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law."  *Taylor v. Kentucky*, 436 U.S. 478, 483 (1978).  "[I]t long has been recognized that an instruction on the presumption is one way of impressing upon the jury the importance of that right."  *Id.* at 485.  Indeed, the Ninth Circuit has stated that "[t]he defendant in a criminal case has a constitutional right to have the jury adequately instructed on the concepts of the presumption of innocence and proof beyond a reasonable doubt."  *United States v. Rhodes*, 713 F.2d 463, 471 (9th Cir. 1983).  Accordingly, the Ninth Circuit's model instructions offer a clear statement on the presumption intended to be offered by the Court before trial:

> This is a criminal case brought by the United States government. The government charges the defendant with [*specify crime[s] charged*].  The charge[s] against the defendant [is] [are] contained in the indictment.  The indictment simply describes the charge[s] the government brings against the defendant.  The indictment is not evidence and does not prove anything.  *The defendant has pleaded not guilty to the charge[s] and is presumed innocent unless and until the government proves the defendant guilty beyond a reasonable doubt.  In addition, the defendant has the right to remain silent and never has to prove innocence or present any evidence.*  [In order to help you follow the evidence, I will now give you a brief summary of the elements of the crime[s] which the government must prove to make its case: [*supply brief statement of elements of crime[s]*].]

Ninth Circuit Model Instruction 1.2 (emphasis added).

Failure to provide a presumption-of-innocence instruction may independently violate due process—even if an instruction on the government's burden of proof has already been given.  *Id.*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEF.'S OBJ. TO INTRODUCTORY
STATEMENTS TO THE JURY
CASE NO. CR-14-00175-TEH

at 490; *see Taylor*, 436 U.S. at 484 ("While the legal scholar may understand that the presumption of innocence and the prosecution's burden of proof are logically similar, the ordinary citizen well may draw significant additional guidance from an instruction on the presumption of innocence."). Accordingly, PG&E respectfully requests that, in addition to instructions on the government's burden, the Court also instruct the jury of the presumption of innocence and the defendant's plea of the same.

### C. Questions for Witnesses for the Jury

Finally, the Court invited the jurors to submit questions for witnesses during the trial. *See* Tr. 498:21-499:7. We have grave concerns about this approach to trial. "[C]ourts have consistently expressed concern over the dangers of" permitting jurors to question witnesses, *United States v. Hernandez*, 176 F.3d 719, 723 (3d Cir. 1999), and "strongly discourage its use" in a criminal trial, *United States v. Bush*, 47 F.3d 511, 515 (2d Cir. 1995). *See, e.g.*, *United States v. Rawlings*, 522 F.3d 403, 408 (D.C. Cir. 2008); *United States v. Richardson*, 233 F.3d 1285, 1290 (11th Cir. 2000); *United States v. Collins*, 226 F.3d 457, 461 (6th Cir. 2000); *United States v. Feinberg*, 89 F.3d 333, 336 (7th Cir. 1996); *United States v. Sutton*, 970 F.2d 1001, 1005 (1st Cir. 1992); *see also United States v. Ajmal*, 67 F.3d 12, 14 (2d Cir. 1995) ("[T]he courts of appeals are . . . unified in their disapproval of the general practice of juror questioning of witnesses.").

"Allowing jurors to pose questions [of witnesses] during a criminal trial is a procedure fraught with perils." *Sutton*, 970 F.2d at 1005. Most fundamentally, "[w]hen acting as inquisitors, jurors can find themselves removed from their appropriate role as neutral fact-finders." *Ajmal*, 67 F.3d at 14. "At the very least, [it] is a subliminal invitation to launch prematurely into evaluating the evidence." *Bush*, 47 F.3d at 515. Moreover, "a sense of camaraderie among jurors may lead them to attach more significance to questions propounded by fellow jurors than those posed by counsel." *Collins*, 226 F.3d at 462. If attorneys object to such questions, "they risk alienating the jury." *Bush*, 47 F.3d at 515. "On the other hand, foregoing objections will usually constitute a waiver of even the most pernicious errors." *Id.* Finally, the practice tends to "delay[] the pace of trial . . . and runs a risk of undermining litigation

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEF.'S OBJ. TO INTRODUCTORY
STATEMENTS TO THE JURY
CASE NO. CR-14-00175-TEH

1  strategies." *Sutton*, 970 F.2d at 1005.

2  For these reasons, "the practice, while not forbidden, should be employed sparingly and
3  with great circumspection." *Sutton*, 970 F.2d at 1005.  "Balancing the risk that a juror's question
4  may be prejudicial against the benefit of issue-clarification will almost always lead trial courts to
5  disallow juror questioning, in the absence of extraordinary or compelling circumstances."  *Bush*,
6  47 F.3d at 516.  We urge the Court to reconsider its decision to allow such questioning here.

7  If the Court nevertheless believes that juror questioning of witnesses is warranted, over
8  defendant's objection, PG&E respectfully requests that the Court employ several precautions to
9  guard against the dangers these courts have recognized.  First, the Court should require any
10 jurors who wish to ask a question submit that question in writing.  Tr. 498:21-22; *see Collins*,
11 226 F.3d at 464.  Second, any question that is asked should come from the Court, not directly
12 from the juror.  Tr. 499:4-5; *see Hernandez*, 176 F.3d at 726.  Before doing so, however, we
13 would ask the Court to review all questions with counsel, "permitting either party to raise any
14 objection out of the hearing of the jury."  *Hernandez*, 176 F.3d at 726; *see Bush*, 47 F.3d 511,
15 516 (2d Cir. 1995); *Collins*, 226 F.3d at 464.  *But see* Tr. 499:4-6 ("I *might* consult with the
16 attorneys any proposed question . . . ." (emphasis added)).  Third, jurors should be instructed to
17 limit their question "to important points," and to avoid "disclosing the content to other jurors."
18 *Collins*, 226 F.3d at 464.  Fourth, jurors should not be allowed to submit questions until the
19 parties have otherwise completed their examinations of the witness.  *Id.*  Fifth, "after a particular
20 witness has responded to the questions, the court should permit counsel to re-question the
21 witness."  *Rawlings*, 522 F.3d at 408.  Finally, "the court should include a prophylactic
22 instruction in its final charge to the jury," *Collins*, 226 F.3d at 463, reminding the jury not to
23 place undue weight on questions posed by themselves or fellow jurors or to draw any conclusion
24 from the Court's decision not to ask a question proposed.

25 **II.    PRE INSTRUCTIONS ON THE CHARGED CRIMES**

26 PG&E also objects to several pre-instructions on the elements of the charged crimes, and
27 respectfully requests curative instructions to correct any confusion they may have caused.
28 Understanding that the pre-instructions were not intended to be a comprehensive recitation of the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEF.'S OBJ. TO INTRODUCTORY
STATEMENTS TO THE JURY
CASE NO. CR-14-00175-TEH

elements, PG&E limits its objections to four counts.

### A.   Count One

PG&E objects to the Court's instruction on Count One for two reasons.

*First*, the Court referred to this count as "obstruction of justice." Tr. 501:6-10. That phrase is a term of art and one to which the jury may attach undue significance. Although Section 1505 is derived from the traditional obstruction of justice crime, it does not reach and PG&E has not been charged with "obstruction of justice." *See* 18 U.S.C. § 1505 ("Obstruction of proceedings before departments, agencies, and committees."). Indeed, as the Court is aware, the agency proceeding that PG&E has been charged with obstructing was before NTSB, an agency that lacks the authority to administer justice. It is purely an investigative body. *See* Dkt. 218, at 1-2. Accordingly, defendant requests that the jury be instructed that PG&E is charged with obstruction of a proceeding before an agency. 18 U.S.C. § 1505

*Second*, the Court's instruction would not require the jury to determine whether the defendant made a false or misleading statement. *See* Tr. 501:6-19. As explained in PG&E's objections to the government's proposed instructions, that omission is inconsistent with the Court's prior orders. *See* Dkt. 310, at 10-11. The Court denied PG&E's Motion for a Bill of Particulars, Dkt. 128, and its Motion to Dismiss for Failure to State an Offense: Count 1, Dkt. 125, by relying on the government's allegation that PG&E had made a false or misleading statement, and that it would prove that at trial. In its January 4, 2016 order denying PG&E's Motion for a Bill of Particulars, the Court held that the Superseding Indictment "identif[ies] the specific letter at the heart of the Count, the letter's date, the specific statements contained in the letter that were allegedly false or misleading, and an explanation of why those statements were false or misleading." Dkt. 228 at 3. And in its December 23, 2015 Order denying PG&E's motion to dismiss Count 1, the Court concluded that PG&E's vagueness concerns about reading Section 1505 to apply to the withholding of documents that a defendant has no legal duty to provide were misplaced, because "PG&E's alleged conduct here [is] making false or misleading statements to the NTSB." Dkt. 218 at 11. To allow the government to reverse course now, and seek a conviction instead for PG&E's supposed failure to turn over unspecified documents or

1  information that the NTSB never requested and that PG&E had no legal duty to provide, would
2  resurrect the very problems of an insufficiently clear indictment and unconstitutionally vague
3  statute that the Court previously avoided by focusing specifically on the government's allegation
4  of a false or misleading statement.

  **B.** **Counts Three and Four**

  PG&E objects to the Court's instructions on Counts Three and Four because it would not require the jury to find that the pipe remained in service at the time the defendant knowingly and willfully failed to maintain a repair record concerning it. *See* Tr. 502:10-14. The regulation requires repair records to be retained only "for as long as the pipe remains in service." 49 C.F.R. § 192.709(a).

  **C.** **Count Six**

  PG&E objects to the Court's instructions on Count Six for two reasons.

  *First*, the Court's instruction risks misleading the jury into believing that the regulation requires the creation of "annual" baseline assessment plans. *See* Tr. 502:19-24. All that actually is required, however, is a one-time baseline assessment encompassing elements listed in 42 C.F.R. § 192.919. Section 192.911 distinguishes a baseline assessment plan (or "BAP") (§ 192.911(b)) from "a process for continual evaluation and assessments" (§ 192.911(f)), otherwise known as "reassessments." Only the initial assessment must be contained in a baseline assessment plan. "Reassessments" are not "baseline assessments" and are governed by different sections of the regulations (§§192.937 and 192.939). And there is no requirement that reassessments be documented in any particular way, and certainly not that they be folded into the original baseline assessment plan document or annual baseline assessment plans. Indeed, PHMSA recognizes that "full risk assessment[s] annually are not necessary and potentially burdensome . . . and [there is no] prescribed frequency at this time." *See* Dkt. 577, Ex. 63.

  *Second*, the Court's instruction stated that the regulation "requires pipeline operators to . . . to select the most suitable assessment method to assess all potential threats on covered segments." Tr. 502:20-24. It does not. Section 192.919 defines "[w]hat must be in the baseline assessment plan." 49 C.F.R. § 192.919. It requires an operator to document its baseline

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEF.'S OBJ. TO INTRODUCTORY
STATEMENTS TO THE JURY
CASE NO. CR-14-00175-TEH

1  assessment decisions, instructing operators to "include…in its written baseline assessment plan,"
2  among other things, the threats it has already identified under 49 C.F.R. § 192.917 and the
3  methods it has already selected under 49 C.F.R. § 192.21.  *See* 49 C.F.R. § 192.919.  A knowing
4  and willful decision not to select the best method would violate 49 C.F.R. § 192.921(a), not 49
5  C.F.R. § 192.919.  *See* 49 C.F.R. § 192.921(a) ("An operator must select the method or methods
6  best suited to address the threats identified to the covered segment. (*See* § 192.917)").  Here,
7  PG&E is not charged under 921.

## III. CONCLUSION

PG&E respectfully asks the Court to provide curative instructions at the beginning of tomorrow's session.

Dated:  June 20, 2016

Respectfully submitted,

By     /s/
Steven M. Bauer
Margaret A. Tough
Robert E. Sims
LATHAM & WATKINS LLP

Kate Dyer
CLARENCE, DYER & COHEN LLP

*Attorneys for Defendant*
*Pacific Gas and Electric Company*

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEF.'S OBJ. TO INTRODUCTORY
STATEMENTS TO THE JURY
CASE NO. CR-14-00175-TEH