UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>  Plaintiff,<br>v.<br>PACIFIC GAS AND ELECTRIC COMPANY,<br>  Defendant. | Case No. 14-cr-00175-TEH<br><br>**FIRST ORDER REGARDING DEFENDANT'S OBJECTIONS TO MANEGOLD EXHIBITS** |

Yesterday, July 5, 2016, Defendant Pacific Gas and Electric Company ("PG&E") lodged objections to 43 of the 96 exhibits that the Government intends to introduce through Government witness William Manegold. Dkt. No. 717 ("Objs."). The Government filed a written opposition to these objections just before midnight yesterday evening, only hours before Mr. Manegold was set to begin testifying. Dkt. No. 718 ("Opp'n"). As Mr. Manegold is presently testifying, the Court will issue piecemeal orders on PG&E's objections, so that the Government may question Mr. Manegold in as uninterrupted a manner as possible.

The Court now addresses PG&E's global objections to the Manegold exhibits and PG&E's first eight exhibit-specific objections.

**GLOBAL OBJECTIONS**

PG&E makes several global objections to the Manegold exhibits, which the Court will address before making admissibility determinations as to each exhibit. With respect to the rulings on PG&E's exhibit-specific objections, the Court directs the reader to PG&E's Objections themselves for a listing of each objection by exhibit.

//
//
//

### i. Mr. Manegold may *sometimes* lay the foundation for a hearsay exception even if he did not author or receive the document requiring the exception.

PG&E objects to 14 of the Manegold exhibits on the basis that the exhibit lacks foundation because "Manegold [is] not on the email," "not on the document," "not on [the] spreadsheets," or "not on [the] letter."[1] The Court will address these objections on a case-by-case basis, but notes that PG&E is incorrect to suggest that the Government may never use Mr. Manegold to lay the foundation for a hearsay exception simply because he did not author or receive the document requiring the exception.

In the context of PG&E emails, the clearest avenue for the Government to establish that an email is not barred by the rule against hearsay is for the Government to establish that the email is a nonhearsay statement of a party opponent under Federal Rule of Evidence ("Rule") 801(d)(2). Even if Mr. Manegold is not on an email, it is likely that as a long-time employee of PG&E, he will be able to lay the foundation for the application of this Rule. For example, the Government argues for Exhibit 273 (an email) that it "expects Manegold to testify that [the email's author] was a PG&E employee at the time, and that [Manegold] recognizes the budget discussion in the email as being within the scope of [the author's] employment." Opp'n at 3. Provided Mr. Manegold actually so testifies, this would be sufficient testimony to establish that the email in Exhibit 273 is a nonhearsay statement under Rule 801(d)(2),[2] and the same may be true for other PG&E email-exhibits that do not list Manegold as either the sender or a recipient.

In the context of PG&E data responses, spreadsheets, or other documents, for which no author is indicated, it is similarly likely that Mr. Manegold will possess the knowledge to establish either that the document is a nonhearsay statement under Rule 801(d)(2) or that

---

[1] Any authenticity objection, as opposed to admissibility objection, that PG&E may have previously had with respect to these exhibits seems to have been resolved by the parties. *See* Dkt. No. 719, Ex. 1 (reaching a conditional agreement regarding authenticity).

[2] The Government also correctly notes that it is disingenuous, or at least self-serving, for PG&E to suggest otherwise. PG&E previously moved to admit an email, through a witness who was not on the email and had not testified that he had ever seen the email, as a "party admission." Trial Tr., Vol. 7 at 874:13-878:5; 908:12-909:3.

the document meets a hearsay exception under Rule 803.  For example, the Government argues for Exhibit 283 (a chart detailing PG&E's 2008 budgeting metrics and concerns) that it "expects Manegold to testify that he recognizes this form of document as one created by PG&E's budget team in the scope of employment (and thus a nonhearsay statement of party opponent), as well as a business record of PG&E, created and maintained in the ordinary course of business.  His performance appraisals from the time show that he was involved in the PG&E budget process for integrity management, the program that is the subject of the second line in this chart." Opp'n at 3.  Provided Mr. Manegold actually so testifies, this would be sufficient to establish that the chart is either a nonhearsay statement under Rule 801(d)(2) or a business record under Rule 803(6), and the same may be true for other PG&E document-exhibits that do not list Manegold as an author.

### ii. Financial evidence, post-accident evidence, and general relevance or prejudice objections will be handled on a case-by-case basis.

PG&E also makes global objections to "Financial Evidence Not Tied to the Government's Allegations," "Post-Accident Evidence," and "General Relevance/Prejudice."  Objs. at 1-2.  As PG&E concedes, however, it is more appropriate for the Court to "individually consider each of [the] documents" as they pertain to these global objections.  *Id.* at 2.  The Court does so below, and in the order(s) that follow.

Nevertheless, PG&E's global objection to "Financial Evidence Not Tied to the Government's Allegations," which is rooted in the Courts Order on PG&E's Motion *in Limine* Number Four, Dkt. No. 460 ("MIL Order") at 17-19, provides an occasion for the Court to offer a global clarification on that Order.  There, the Court held "that evidence that PG&E's profit motives drove its compliance (or noncompliance) with the charged regulations is not substantially outweighed by the risk of unfair prejudice, as such would be direct evidence of the required mental state for the regulatory counts."  MIL Order at 19.  But the Court noted that "[t]hough this may be true in the abstract, it does not mean all

3

evidence regarding PG&E's financial condition would survive a Rule 403 balancing." *Id.* As an example, the Court noted that the one figure offered by the Government would not survive such a balancing: "the fact that 'PG&E reported its income for the second quarter of 2010 as $333 million,' is a presentation of wealth unnecessary to any argument that PG&E's profit motives drove regulatory violations . . . ." *Id.* (citation omitted). However, this holding was in response to the Government's introduction of that figure only as evidence of PG&E's wealth. *See* Dkt. No. 277 as 12 ("But PG&E is not poor; a month before the San Bruno explosion, PG&E reported its income for the second quarter of 2010 as $333 million."). The Court did not mean to suggest, and did not hold, that the Government may *never* reference a PG&E financial figure in making its case that PG&E knowingly and willfully violated the Pipeline Safety Act regulations. The Court was merely noting that such figures are only relevant to the extent that they are offered to prove the required mental state for the regulatory counts. The parties should heed this clarification as they continue to confer on any objections moving forward.

**GOVERNMENT'S EXHIBIT 192**

This exhibit includes an email and attached summary report regarding the 2005 Performance Incentive Plan ("PIP") for PG&E's CGT Group.

This exhibit is admissible, provided the Government lays the proper foundation for the email being a nonhearsay statement of a party opponent under Rule 801(d)(2) (which, as discussed above, the Court believes it should be able to do through Mr. Manegold). The email and attachment are not the sort of financial evidence prohibited by the Court's order on PG&E's Motion *in Limine* Number Four, MIL Order at 17-19, because the evidence is probative of PG&E's mental state on the charged crimes and not excludable under Rule 403. Specifically, the email and attachment demonstrate that "earnings from operations" and "expense budget management," among many other laudable targets, are factors in employees' PIP bonuses, and also demonstrate the weight of these factors in calculating those bonuses. This information is relevant to the Government's theory that "PG&E's

4

profit motives drove its compliance (or noncompliance) with the charged regulations," *id.* at 19, and the probative value of this information is not substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

**GOVERNMENT'S EXHIBIT 198**

The Government has withdrawn this exhibit. Opp'n at 3.

**GOVERNMENT'S EXHIBIT 222**

This exhibit is an Integrity Management ("IM") Plan for Line 147.

This exhibit is admissible. PG&E concedes that IM Plans for charged lines are relevant and admissible in this prosecution. *See* Trial Tr., Vol. 14 at 12:32 P.M. (page and line forthcoming) (not objecting to admission of Government Exhibits 224 and 225, which are IM Plans for Line 153). Though PG&E objects that evidence regarding Line 147 is irrelevant to the charged conduct, because that line is not charged, this argument fails to recognize that PG&E's IM practices – which are directly at issue in this prosecution – on uncharged lines are part of the same "course of conduct" as those practices on charged lines, and are therefore relevant to the charged conduct. As this Court previously explained:

> PG&E previously and successfully argued that the Pipeline Safety Act criminalizes a "course of conduct," which prevented the Government from charging for violations of the IM regulations on a pipeline-by-pipeline basis. Multiplicity Order at 9-11. PG&E's "criminal transaction" on each charged IM regulation therefore necessarily includes every pipeline for which PG&E violated the regulation during the relevant period. And evidence . . . on uncharged lines does not become "other acts" simply by virtue of not being charged.

MIL Order at 51-52 (citing *United States v. Williams*, 989 F.2d 1061, 1070 (9th Cir. 1993)). And the probative value of this evidence is not substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

5

**GOVERNMENT'S EXHIBIT 273**

This exhibit is an email regarding PG&E's 2008 budget.  (The Government has indicated that it intends to offer only the second to last email from the full email chain, so the Court considers only the admissibility of that email.)

This exhibit is admissible, provided the Government lays the proper foundation for the email being a nonhearsay statement of a party opponent under Rule 801(d)(2) (which, as discussed above, the Court believes it should be able to do through Mr. Manegold).  The email is not the sort of financial evidence prohibited by the Court's order on PG&E's Motion *in Limine* Number Four, MIL Order at 17-19, because the evidence is probative of PG&E's mental state on the charged crimes and not excludable under Rule 403.  Specifically, the email's statement that "the $187 as an estimate of the amount by which we need to under-spend our regulatory funding levels in order to hit the 8% growth target" is relevant to show that PG&E's regulatory compliance may have been informed by a growth target.  This information is relevant to the Government's theory that "PG&E's profit motives drove its compliance (or noncompliance) with the charged regulations." *Id.* at 19.  But because it is unclear which "regulatory funding" the email refers to, and whether it includes funding for compliance with charged regulations, the Court will accept the Government's offer to redact the "$187" and "8%" figures, to minimize the risk of unfair prejudice.  If PG&E would actually prefer that the email not be redacted, or that the entire email chain be introduced to satisfy completeness concerns, then it should so indicate to the Government.  The parties are therefore ordered to meet and confer on these final issues before the admission of this exhibit; they do not need to update the Court as to their final decisions.

**GOVERNMENT'S EXHIBIT 283**

This exhibit is a chart detailing PG&E's 2008 budgeting metrics and concerns.

This exhibit is admissible, provided the Government lays the proper foundation for the email being either a nonhearsay statement of a party opponent under Rule 801(d)(2) or

1   a PG&E business record (which, as discussed above, the Court believes it should be able to
2   do through Mr. Manegold).  The exhibit is not the sort of financial evidence prohibited by
3   the Court's order on PG&E's Motion *in Limine* Number Four, MIL Order at 17-19,
4   because the evidence is probative of PG&E's mental state on the charged crimes and not
5   excludable under Rule 403.  Specifically, the chart contains such statements as "For
6   Integrity Management, low 2008 funding drove many pigging projects (higher cost) to be
7   changed to ECDA projects (at a lower cost)."  Such statements are relevant to the
8   Government's theory that "PG&E's profit motives drove its compliance (or
9   noncompliance) with the charged regulations," *id.* at 19, and the probative value of this
10  information is not substantially outweighed by a danger of unfair prejudice, confusing the
11  issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative
12  evidence.

**GOVERNMENT'S EXHIBIT 284**

15      This exhibit is an email and attachment regarding PG&E's 2008 expense budget.
16      The email from this exhibit is admissible.  The email is not the sort of financial
17  evidence prohibited by the Court's order on PG&E's Motion *in Limine* Number Four, MIL
18  Order at 17-19, because the evidence is probative of PG&E's mental state on the charged
19  crimes and not excludable under Rule 403.  Specifically, the email states that "2008
20  funding is significantly limited," and this is relevant to the Government's theory that
21  "PG&E's profit motives drove its compliance (or noncompliance) with the charged
22  regulations."  *Id.* at 19.  The probative value of this information is not substantially
23  outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury,
24  undue delay, wasting time, or needlessly presenting cumulative evidence.
25      The attachment to this email (the actual budget), however, may not be admissible.
26  The budget is many pages long and the Government has not identified anything from those
27  many pages that furthers the exhibit's relevance beyond what is contained in the email.
28  Meanwhile, the attachment contains some figures which may (without more context) run

7

afoul of the Court's order on PG&E's Motion *in Limine* Number Four.  *See id.* Accordingly, if the Government would like to use one or more sections of the budget with Mr. Manegold, it must first share those sections with PG&E to determine whether PG&E's objection still stands.  PG&E is directed to approach any such conversation with the understanding that its reading of the Court's order on PG&E's Motion *in Limine* Number Four appears (from its objections) to be far too broad (as discussed above).

**GOVERNMENT'S EXHIBIT 308**

This exhibit is an email discussing PG&E's IM assessment methods.

This exhibit is admissible.  The email is relevant evidence of PG&E's processes and mental state with respect to the selection of assessment methods.  For example, the email's author, Mr. Manegold, advises against "a wholesale change over to [Direct Assessment] for the few lines [PG&E has] picked to [conduct In-Line Inspection]."  Though PG&E objects that the email is unrelated to any charged line, this argument fails to recognize that PG&E's selection of assessment methods – which is directly at issue in this prosecution – on uncharged lines is part of the same "course of conduct" as its selection on charged lines, and is therefore relevant to the charged conduct.  *See supra* at 5 (discussing this same concept in connection with Government's Exhibit 222).  And the probative value of this evidence is not substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

**GOVERNMENT'S EXHIBIT 331**

This exhibit is a PowerPoint presentation titled "2008 Utility Offsite Strategy Discussion."

This exhibit is admissible, provided the Government lays the proper foundation for the PowerPoint being a nonhearsay statement of a party opponent under Rule 801(d)(2) (which, as discussed above, the Court believes it should be able to do through Mr.

Manegold). The statement the Government quotes from the PowerPoint – "What is not up for debate? 8% [Earnings per Share] growth." – is not the sort of financial evidence prohibited by the Court's order on PG&E's Motion *in Limine* Number Four, MIL Order at 17-19, because such statements are probative of PG&E's mental state on the charged crimes and not excludable under Rule 403. Such statements (and more broadly, information regarding PG&E's budget strategy) are relevant to the Government's theory that "PG&E's profit motives drove its compliance (or noncompliance) with the charged regulations." *Id.* at 19. And the probative value of this information is not substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

However, because the Court must act quickly in ruling on objections to the Manegold exhibits (as this witness is presently testifying), the Court has not reviewed all 221 pages of Exhibit 331. It is certainly possible that a PowerPoint that contains, among other things, an "Economic Overview" would somewhere contain figures that run afoul of the Court's order on PG&E's Motion *in Limine* Number Four. *See id.* Accordingly, if the Government wants to introduce more than the content it has already identified from the PowerPoint, it must first share that content with PG&E to determine whether PG&E's objection still stands. PG&E is directed to approach any such conversation with the perspective discussed under Government's Exhibit 284.

**CONCLUSION**

PG&E's first eight objections are OVERRULED IN PART and SUSTAINED IN PART, as follows:

1. Government's Exhibit 192 is admissible;
2. Government's Exhibit 198 is withdrawn;
3. Government's Exhibit 222 is admissible;
4. Government's Exhibit 273 is admissible in part (as to the portion identified by the Government), but must be redacted; if PG&E would prefer that the email not

9

be redacted, or that the entire email chain be introduced to satisfy completeness concerns, then it should so indicate to the Government;

5. Government's Exhibit 283 is admissible;
6. Government's Exhibit 284 is admissible as to the email and potentially admissible as to the attachment; if the Government would like to use one or more sections of the attachment (budget) with Mr. Manegold, it must first share those sections with PG&E to determine whether PG&E's objection still stands;
7. Government's Exhibit 308 is admissible; and
8. Government's Exhibit 331 is admissible as to the portion of the PowerPoint identified by the Government; if the Government wants to introduce more than the content it has already identified, it must first share that content with PG&E to determine whether PG&E's objection still stands.

PG&E is, of course, welcome to withdraw any of the remaining 35 objections that now seem improper given these rulings. In the absence of any such withdrawal, the Court will issue rulings on the remaining objections in short order.

**IT IS SO ORDERED.**

Dated: 07/06/16

_____
THELTON E. HENDERSON
United States District Judge

10