UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>　　　　Defendant. | Case No. 14-cr-00175-TEH<br><br>**SECOND ORDER REGARDING DEFENDANT'S OBJECTIONS TO MANEGOLD EXHIBITS** |

Yesterday, July 6, 2016, the Court issued its first set of evidentiary rulings on the 43 exhibits Defendant Pacific Gas and Electric Company ("PG&E") objects to of the 96 exhibits that the Government intends to introduce through witness William Manegold. Dkt. No. 724 ("First Order"). PG&E lodged these objections on the day prior, July 5, 2016. Dkt. No. 717 ("Objs."). The Government filed a written opposition to these objections just before midnight the same day, only hours before Mr. Manegold began testifying. Dkt. No. 718 ("Opp'n"). As Mr. Manegold is presently testifying, the Court continues its issuance of piecemeal orders on PG&E's objections with this Second Order regarding PG&E's next fifteen exhibit-specific objections.

**GOVERNMENT'S EXHIBIT 351**

This exhibit is an email titled "2Q 2008 Earnings Materials" and an attachment of tables containing those materials.

This exhibit is admissible, provided the Government lays the proper foundation for the email being a nonhearsay statement of a party opponent under Federal Rule of Evidence ("Rule") 801(d)(2) (which, as discussed in the First Order, the Court believes it should be able to do through Mr. Manegold). Tables such as Table 1, titled "PG&E Corporation Business Priorities 2008-2011," are not the sort of financial evidence prohibited by the Court's order on PG&E's Motion *in Limine* Number Four, Dkt. No. 460

("MIL Order") at 17-19, because such evidence is probative of PG&E's mental state on the charged crimes and not excludable under Rule 403. Specifically, the Government notes that Table 1 states the number one corporate priority as "Deliver on [Earnings per Share] goals," and that Table 6 shows "Earnings From Operations" comprised 40% of PG&E's "Operational Performance Metrics." Such information is relevant to the Government's theory that "PG&E's profit motives drove its compliance (or noncompliance) with the charged regulations," *id.* at 19, and the probative value of this information is not substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

However, to minimize unfair prejudice and maintain compliance with the Court's order on PG&E's Motion *in Limine* Number Four, the Government has offered to "redact the dollar amounts" from Table 6 (and, presumably, any other Table where such figures appear) "to protect against concerns of untethered financial evidence." Opp'n at 4. The Court accepts this invitation, and the Government is hereby ORDERED to redact the dollar amounts from Table 6. If PG&E would actually prefer that the dollar amounts not be redacted, then it should so indicate to the Government before the admission of this exhibit. The same is true of any redactions ordered below.

Moreover, the Government has offered relevance arguments for only Tables 1 and 6, so the Court holds only that the email and Tables 1 and 6 (as redacted) are admissible. If the Government wants to introduce any other Tables, it must first share those Tables with PG&E to determine whether PG&E's objection still stands. PG&E is directed to approach any such conversation with the understanding that its reading of the Court's order on PG&E's Motion *in Limine* Number Four appears (from its objections) to be far too broad. *See* First Order at 3-4.

**GOVERNMENT'S EXHIBIT 376**

This exhibit is an email exchange regarding "2009 IM forecast – further reductions necessary," including an associated spreadsheet.

This exhibit is admissible. Information that budgetary pressures informed PG&E's Integrity Management ("IM") practices is not the sort of financial evidence prohibited by the Court's order on PG&E's Motion *in Limine* Number Four, MIL Order at 17-19, because such evidence is probative of PG&E's mental state on the charged crimes and not excludable under Rule 403. Specifically, the author of the first email asks whether, given the "very low 2009 budget" for the IM group, "there are any reductions [to the IM projects planned for 2009] that can be made while maintaining compliance," and Mr. Manegold responds, "we can probably knock the leak investigation budget down." Such statements are relevant to the Government's theory that "PG&E's profit motives drove its compliance (or noncompliance) with the charged regulations," *id.* at 19, and the probative value of the statements is not substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

**GOVERNMENT'S EXHIBIT 409**

The parties have reached agreement on the admissibility of this exhibit, provided the Government lays the proper foundation (which PG&E has conceded it likely can through Mr. Manegold). Trial Tr., Vol. 15 at 2286:23-2287:14.

**GOVERNMENT'S EXHIBIT 432**

This exhibit is several email exchanges concerning IM assessments and the associated costs, including an expense spreadsheet.

This exhibit is admissible. Information on PG&E's "Integrity Assessment Strategy," including the impact of budget on that strategy, is not the sort of financial evidence prohibited by the Court's order on PG&E's Motion *in Limine* Number Four, MIL Order at 17-19, because the evidence is probative of PG&E's mental state on the charged crimes and not excludable under Rule 403. Specifically, Mr. Manegold states (among other relevant statements) that "[PG&E is] looking at having to defer some assessments

1  this year in order to meet budget," and therefore asks which "NSEGS have high risk
2  segments." Such statements are relevant to the Government's theory that "PG&E's profit
3  motives drove its compliance (or noncompliance) with the charged regulations," *id.* at 19,
4  and the probative value of the statements is not substantially outweighed by a danger of
5  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or
6  needlessly presenting cumulative evidence.

**GOVERNMENT'S EXHIBIT 470**

This exhibit is an email exchange regarding budget slides.

This exhibit is admissible. Information regarding the interplay between PG&E's budget concerns and IM compliance is not the sort of financial evidence prohibited by the Court's order on PG&E's Motion *in Limine* Number Four, MIL Order at 17-19, because such evidence is probative of PG&E's mental state on the charged crimes and not excludable under Rule 403. Specifically, in one email Mr. Manegold discusses the reason PG&E switched from In-Line Inspection to External Corrosion Direct Assessment, the sort of decision that is directly at issue in this prosecution. Such statements are relevant to the Government's theory that "PG&E's profit motives drove its compliance (or noncompliance) with the charged regulations," *id.* at 19, and the probative value of the statements is not substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. To the extent PG&E believes that any inferences drawn by the Government from this exhibit are incorrect or unwarranted, PG&E will be free to make its case on cross-examination.

**GOVERNMENT'S EXHIBIT 531**

The Government has withdrawn this exhibit. Opp'n at 5.

//
//

**GOVERNMENT'S EXHIBIT 549**

This exhibit is a PG&E memo to file regarding "MOP + 10% Allowance."

This exhibit is admissible, provided the Government lays the proper foundation for the memo being a nonhearsay statement of a party opponent under Rule 801(d)(2) (which, as discussed in the First Order, the Court believes it should be able to do through Mr. Manegold). The memo is highly relevant because it concerns the policy that lies at the heart of Count One, the obstruction count, and PG&E has offered no reason that the probative value of this memo is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

**GOVERNMENT'S EXHIBIT 553**

This exhibit is an email chain transmitting the memo contained in Government's Exhibit 549.

This exhibit is admissible, provided the Government lays the proper foundation for the email being a nonhearsay statement of a party opponent under Rule 801(d)(2) (which, as discussed in the First Order, the Court believes it should be able to do through Mr. Manegold). The exhibit is highly relevant and not excludable under Rule 403, for the same reasons discussed under Government's Exhibit 549.

**GOVERNMENT'S EXHIBIT 615**

This exhibit is an email chain transmitting the Mr. Manegold's revisions to the memo contained in Government's Exhibit 549.

This exhibit is admissible. The exhibit is highly relevant and not excludable under Rule 403, for the same reasons discussed under Government's Exhibit 549. There is no risk that this email will "imply[] regulatory noncompliance led to San Bruno," Objs. at 5, because neither the memo nor the email (which predate the explosion) make any reference to the explosion, and more importantly, the Government is under a continuing Court order

not to argue that PG&E's alleged regulatory malfeasance caused the San Bruno explosion. *See, e.g.*, MIL Order at 11; Trial Tr., Vol. 5 at 663:21-664:9.

**GOVERNMENT'S EXHIBIT 622**

This exhibit is an email regarding "Source Document Verification" for three PG&E pipelines.

This exhibit is admissible. The exhibit is highly relevant and not excludable under Rule 403 because it concerns potential insufficiencies in PG&E's GIS data system, which has been a consistent topic of testimony during this trial and is relevant to PG&E's data gathering and integration practices (as required under 49 C.F.R. § 192.917 (b)). PG&E has offered no reason that the probative value of this email is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. There is no risk that this email will "imply[] regulatory noncompliance led to San Bruno," Objs. at 5, because the email makes no reference to the explosion, and as discussed under Government's Exhibit 615, the Government is under a continuing Court order not to argue that PG&E's alleged regulatory malfeasance caused the San Bruno explosion.

**GOVERNMENT'S EXHIBIT 641**

This exhibit is an email chain regarding maximum operating pressure ("MOP") and specified minimum yield strength ("SMYS") on Line 132 (a charged line).

This exhibit is admissible. The exhibit is highly relevant and not excludable under Rule 403 because MOP and SMYS have been consistent topics of testimony during this trial and are relevant to PG&E's data gathering and integration practices (as required under 49 C.F.R. § 192.917 (b)). There is no risk that this email will "imply[] regulatory noncompliance led to San Bruno," Objs. at 5, because the brief mentions of the San Bruno rupture can be redacted to eliminate the risk of unfair prejudice. Moreover, and as discussed under Government's Exhibit 615, the Government is under a continuing Court

order not to argue that PG&E's alleged regulatory malfeasance caused the San Bruno explosion. Accordingly, the Government may offer this exhibit if it redacts the following phrases: "just downstream of the rupture site" and "segment 181 was isolated from service the night of the accident."

**GOVERNMENT'S EXHIBIT 642**

This exhibit is an email regarding wall thickness decreases on Line 132.

This exhibit is admissible. The exhibit is highly relevant and not excludable under Rule 403 because it concerns wall thickness, which has been a consistent topic of testimony during this trial and is relevant to PG&E's data gathering and integration practices (as required under 49 C.F.R. § 192.917 (b)). PG&E has offered no reason that the probative value of this email is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. There is no risk that this email will "imply[] regulatory noncompliance led to San Bruno," Objs. at 5, because the email makes no reference to the explosion, and as discussed under Government's Exhibit 615, the Government is under a continuing Court order not to argue that PG&E's alleged regulatory malfeasance caused the San Bruno explosion.

**GOVERNMENT'S EXHIBIT 647**

This exhibit is an email exchange relaying (and discussing) a conversation between Mr. Manegold and PG&E President Chris Johns.

This exhibit is admissible. Statements by PG&E employees expressing a concern about PG&E's budgetary priorities are not the sort of financial evidence prohibited by the Court's order on PG&E's Motion *in Limine* Number Four, MIL Order at 17-19, because such statements are probative of PG&E's mental state on the charged crimes. Specifically, Mr. Manegold recounts telling Mr. Johns that PG&E "should spend more to replace" its old pipelines, but that "[w]hat [he] should have said [to Mr. Johns] was . . . don't assume

7

that the people working on this stuff now are a bunch of idiots that should be ignored (as it seems to me has been done)." The recipient of this email, Wayne Ciardella, responds that "this is a deliberate and tragic strategy," citing "cutbacks each year" and "funneling money out for other investments . . . that engineers would have used to add safety margins, replacements etc. over all these years – and yes, maybe not meeting the 'authorized rate of return.'" Such statements are highly relevant to the Government's theory that "PG&E's profit motives drove its compliance (or noncompliance) with the charged regulations." *Id.* at 19. The probative value of the statements is not substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Though these statements are certainly prejudicial to PG&E, PG&E has offered no reason that this prejudice is "unfair." *See United States v. Guzman-Montanez*, 756 F.3d 1, 7 (1st Cir. 2014) ("[T]he law shields a defendant against unfair prejudice, not against all prejudice.") (alteration and citation omitted). However, out of an abundance of caution, the Court orders that the words "and tragic" must be redacted from Mr. Ciardella's response, to avoid any improper inference that this email is offered as evidence that PG&E's alleged regulatory malfeasance caused the San Bruno explosion.

**GOVERNMENT'S EXHIBIT 648**

This exhibit is an email chain regarding PG&E's methods for calculating High Consequence Area ("HCA") mileage and PG&E's understanding of stable versus unstable threats.

This exhibit is admissible. PG&E objects that its "immediate responses to the San Bruno accident and related regulatory events [] should be excluded," and if not, may "necessitate a limiting instruction to ensure that the jury understands that evidence of PHMSA or CPUC scrutiny is not evidence that PG&E engaged in any wrongful practice." Objs. at 2. But this exhibit presents no cause for such concern. None of the emails in this chain mention that PG&E's actions were in response to compulsion by PHMSA or CPUC,

1 so there is no risk that the jury will draw that inference. The exhibit is highly relevant
2 because it mentions RMI-06 and PG&E's alleged "10% or more" policy, which are at the
3 heart of Count One. There is no risk that the emails will "imply[] regulatory
4 noncompliance led to San Bruno," Objs. at 6, because the brief mention of the San Bruno
5 rupture can be redacted to eliminate the risk of unfair prejudice. Moreover, and as
6 discussed under Government's Exhibit 615, the Government is under a continuing Court
7 order not to argue that PG&E's alleged regulatory malfeasance caused the San Bruno
8 explosion. Accordingly, the Government may offer this exhibit if it redacts the following
9 phrase: "I think this should be rethought in light of the San Bruno event."

**GOVERNMENT'S EXHIBIT 649**

This exhibit is an email chain that is simply a subset of the chain considered under Government's Exhibit 648, with the addition that this subset actually attaches RMI-06.

This exhibit is admissible. The exhibit is highly relevant for the reasons discussed under Government's Exhibit 648. But as discussed under Government's Exhibit 648, the chain must be redacted to eliminate unfair prejudice and avoid improper causal inferences regarding PG&E's regulatory compliance and the San Bruno explosion. Accordingly, as with Government's Exhibit 648, the Government may offer this exhibit if it redacts the following phrase: "I think this should be rethought in light of the San Bruno event."

**CONCLUSION**

PG&E's next fifteen objections are OVERRULED IN PART and SUSTAINED IN PART, as follows:

1. Government's Exhibit 351 is admissible as to the email, Table 1, and Table 6 (as redacted, unless PG&E indicates a preference against redaction); if the Government wants to introduce any other Tables, it must first share those Tables with PG&E to determine whether PG&E's objection still stands;

2. Government's Exhibit 376 is admissible;

3.    Government's Exhibit 409 is admissible;

4.    Government's Exhibit 432 is admissible;

5.    Government's Exhibit 470 is admissible;

6.    Government's Exhibit 531 is withdrawn;

7.    Government's Exhibit 549 is admissible;

8.    Government's Exhibit 553 is admissible;

9.    Government's Exhibit 615 is admissible;

10.    Government's Exhibit 622 is admissible;

11.    Government's Exhibit 641 is admissible (as redacted);

12.    Government's Exhibit 642 is admissible;

13.    Government's Exhibit 647 is admissible (as redacted);

14.    Government's Exhibit 648 is admissible (as redacted); and

15.    Government's Exhibit 649 is admissible (as redacted).

PG&E is, of course, welcome to withdraw (while still preserving for the record) any of the remaining twenty objections that now seem improper given the Court's First and Second Orders. In the absence of any such withdrawal, the Court will issue rulings on the remaining objections in short order.

**IT IS SO ORDERED.**

Dated: 07/07/16

_____
THELTON E. HENDERSON
United States District Judge