UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　Plaintiff,<br>　　v.<br>PACIFIC GAS AND ELECTRIC COMPANY,<br>　　　　Defendant. | Case No. 14-cr-00175-TEH<br><br>**THIRD ORDER REGARDING DEFENDANT'S OBJECTIONS TO MANEGOLD EXHIBITS** |

On July 6, 2016, the Court issued its first set of evidentiary rulings on the 43 exhibits Defendant Pacific Gas and Electric Company ("PG&E") objects to of the 96 exhibits that the Government intends to introduce through witness William Manegold, Dkt. No. 724 ("First Order"), and yesterday the Court issued its second set of such rulings, Dkt. No. 725 ("Second Order").  PG&E lodged these objections on July 5, 2016.  Dkt. No. 717 ("Objs.").  The Government filed a written opposition to these objections just before midnight the same day, only hours before Mr. Manegold began testifying.  Dkt. No. 718 ("Opp'n").  As Mr. Manegold is presently testifying, the Court continues its issuance of piecemeal orders on PG&E's objections with this Third Order regarding PG&E's final twenty exhibit-specific objections.

As with the prior Orders, the Court directs the reader to PG&E's Objections themselves for a listing of each objection by exhibit.

**GOVERNMENT'S EXHIBIT 651**

This exhibit is an email chain following on the email chain discussed in Government Exhibits 648 and 649, and includes a copy of Risk Management Instruction-06 ("RMI-06") as well as a PG&E case study.

This exhibit is admissible, provided the Government lays the proper foundation for the email being a nonhearsay statement of a party opponent under Federal Rule of

Evidence ("Rule") 801(d)(2) (which, as discussed in the First Order, the Court believes it should be able to do through Mr. Manegold).[1] The exhibit is highly relevant for the reasons discussed under Government's Exhibits 648 and 649, and PG&E has offered no reason that the probative value of this exhibit is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

**GOVERNMENT'S EXHIBIT 674**

This exhibit is an email exchange regarding instances of Maximum Operating Pressure ("MOP") exceedances.

//

---

[1] On the morning of July 7, 2016, upon admission of similar emails that did not include Mr. Manegold, PG&E asked to note for the record its continuing "Confrontation Clause" objection to such exhibits. Though the Court allowed PG&E to note this objection for the record, it would like to clarify that PG&E never made any such objection in connection with the Manegold exhibits. *See, e.g.*, Trial Tr., Vol. 16 at 2297:15-18.
   PG&E's full text objection to "PG&E Documents for Which Mr. Manegold Cannot Lay Foundation" states as follows: "We object to the admission through Mr. Manegold of PG&E documents and emails that he appears neither to have authored nor received. Mr. Manegold cannot establish through personal knowledge that these records are admissible business records because of his lack of familiarity with them. Not every email, for example, is a business record – some are merely informal discussions – and Mr. Manegold cannot say which is which. Nor can he establish that the records are PG&E admissions if he is unfamiliar with the circumstances under which they were created. This is particularly true of documents with no apparent author." Objs. at 1. Nowhere in PG&E's Objections to the Manegold exhibits do the words "Confrontation Clause" even appear. The Court therefore never considered a Confrontation Clause argument when it ruled that "Mr. Manegold *may sometimes*," i.e. when he does possess the necessary personal knowledge, "lay the foundation for a hearsay exception even if he did not author or receive the document requiring the exception." First Order at 2 (emphasis in original).
   Though PG&E did make a Confrontation Clause objection in connection with the Government's attempt to authenticate and establish admissibility through a non-testifying declarant (Timothy Sullivan), Dkt. No. 706, that argument was tied to the fact that Mr. Sullivan was not testifying. PG&E argued: "reliance on the Sullivan Declaration to authenticate these records under a hearsay exception *rather than through the foundational testimony of a live witness* would violate the defendant's confrontation rights." *Id.* at 5 (emphasis added). In that very different context, the Court actually noted that PG&E's "Confrontation Clause argument [was] well-taken," and therefore forbade the Sullivan Declaration. Trial Tr., Vol. 13 at 1808:14-1809-8. But here, Mr. Manegold *is testifying*, which nullifies the one Confrontation Clause argument PG&E made in connection with the Sullivan Declaration. Moreover, many of the individuals on emails admitted through Mr. Manegold are already on the Government's witness list (and PG&E could call the rest), at which time PG&E could cross-examine them about their (non-hearsay) statements.

This exhibit is admissible. The exhibit is relevant to Count 1, as it discusses the alleged "MOP plus 10%" policy at issue in that count, and PG&E has offered no reason that the probative value of this exhibit is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. There is no risk that these emails will "imply[] regulatory noncompliance led to San Bruno," Objs. at 6, because the emails do not make any reference to the explosion, and more importantly, the Government is under a continuing Court order not to argue that PG&E's alleged regulatory malfeasance caused the San Bruno explosion. *See, e.g.*, Dkt. No. 460 at 11; Trial Tr., Vol. 5 at 663:21-664:9.

**GOVERNMENT'S EXHIBIT 714**

This exhibit is an email regarding Strength Test Pressure Records ("STPRs") and an attached spreadsheet regarding such records.

This exhibit is admissible, provided the Government lays the proper foundation for the email being a nonhearsay statement of a party opponent under Rule 801(d)(2) (which, as discussed in the First Order, the Court believes it should be able to do through Mr. Manegold). PG&E argues that "[t]he segments on the spreadsheet show pre-1970 installation or no installation date at all," and that "[t]his evidence is therefore irrelevant and unduly prejudicial [because there] is no indication that pressure test records were ever required under fed [sic] law." Objs. at 6-7. Given that *some* STPRs are required by a charged regulation (49 C.F.R. § 192.517) and that the spreadsheet includes data on at least one line charged for that regulation (Line 109), the spreadsheet is not irrelevant under the standard set forth in Rule 401. PG&E's argument that none of the segments listed in the spreadsheet actually required pressure tests (presumably a reference to the Grandfather Clause) would not (even if correct) create unfair prejudice because this goes to the weight of the evidence not its admissibility; PG&E will be able to eliminate any perceived unfair prejudice by eliciting testimony that none of the segments listed in the spreadsheet (and, therefore, discussed in the email) required an STPR under federal law.

**GOVERNMENT'S EXHIBIT 717**

This exhibit is an email regarding "lines involved in overpressuration," as well as several attached documents: a PowerPoint containing analysis for "intentional" over pressure events; a chart detailing "Over Pressuring Events"; and spreadsheets detailing MOP and maximum allowable operating pressure ("MAOP") metrics by line.

This exhibit is admissible, provided the Government lays the proper foundation for the email being a nonhearsay statement of a party opponent under Rule 801(d)(2) (which, as discussed in the First Order, the Court believes it should be able to do through Mr. Manegold). The exhibit is relevant, as it discusses overpressurization – a constant source of trial testimony and a topic relevant to the charges brought under 49 C.F.R. § 192.917(e) – and PG&E has offered no reason that the probative value of this exhibit is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

**GOVERNMENT'S EXHIBIT 721**

This exhibit is an email exchange describing overpressurization events and an attached spreadsheet detailing those events.

This exhibit is admissible. The exhibit is relevant, as it discusses overpressurization – a constant source of trial testimony and a topic relevant to the charges brought under 49 C.F.R. § 192.917(e) – on at least one charged line (Line 1816-01). PG&E has offered no reason that the probative value of this discussion is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. There is no risk that the emails will "imply[] regulatory noncompliance led to San Bruno," Objs. at 7, because the emails do not make any reference to the explosion, and as discussed under Government's Exhibit 674, the Government is under a continuing Court order not to argue that PG&E's alleged regulatory malfeasance caused the San Bruno explosion.

**GOVERNMENT'S EXHIBIT 722**

This exhibit is an email exchange regarding intentional and unintentional pressure increases, and attached spreadsheets detailing such increases.

This exhibit is admissible, provided the Government lays the proper foundation for the email being a nonhearsay statement of a party opponent under Rule 801(d)(2) (which, as discussed in the First Order, the Court believes it should be able to do through Mr. Manegold). The exhibit is relevant, as it discusses pressure increases – a constant source of trial testimony and a topic relevant to the charges brought under 49 C.F.R. § 192.917(e) – on at least one charged line (Line 109). PG&E has offered no reason that the probative value of this exhibit is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

**GOVERNMENT'S EXHIBIT 728**

This exhibit is an email chain regarding manufacturing threats and including internal PG&E discussion regarding the requirements of the federal code.

This exhibit is admissible. Internal PG&E discussions regarding the charged regulations are certainly relevant in a criminal prosecution that alleges PG&E knowingly and willfully violated those regulations, and PG&E has offered no reason that the probative value of such discussions is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. There is no risk that the emails will "imply[] regulatory noncompliance led to San Bruno," Objs. at 7, because the emails (which largely predate the explosion) do not make any reference to the explosion, and as discussed under Government's Exhibit 674, the Government is under a continuing Court order not to argue that PG&E's alleged regulatory malfeasance caused the San Bruno explosion.

//

//

**GOVERNMENT'S EXHIBIT 756**

This exhibit is an email chain transmitting Mr. Manegold's work on the memo to file discussed in connection with Government's Exhibits 549 and 615.

This exhibit is admissible. The exhibit is highly relevant and not excludable under Rule 403 for the same reasons discussed under Government's Exhibits 549 and 615. There is no risk that this exhibit will "imply[] regulatory noncompliance led to San Bruno," Objs. at 7, because the exhibit makes no mention of the explosion, and as discussed under Government's Exhibit 674, the Government is under a continuing Court order not to argue that PG&E's alleged regulatory malfeasance caused the San Bruno explosion.

**GOVERNMENT'S EXHIBIT 773**

This exhibit is an email requesting copies of three attachments: a PowerPoint on "Manufacturing Construction Threats"; a document concerning a proposed change to Risk Management Procedure-06 ("RMP-06"); and a copy of RMI-06 Rev 01.

This exhibit is admissible, provided the Government lays the proper foundation for the email being a nonhearsay statement of a party opponent under Rule 801(d)(2) (which, as discussed in the First Order, the Court believes it should be able to do through Mr. Manegold). PG&E communications regarding RMI-06 are relevant to Count 1, as PG&E's conduct regarding RMI-06 lies at the heart of that count. PG&E has offered no reason that the probative value of this exhibit is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

**GOVERNMENT'S EXHIBIT 778**

The Government has withdrawn this exhibit. Trial Tr., Vol. 16 at 2362:5-10.

**GOVERNMENT'S EXHIBIT 781**

The Government has withdrawn this exhibit. *Id.*

**GOVERNMENT'S EXHIBIT 781A**

This exhibit is an email requesting that Mr. Manegold locate any correspondence or notes regarding RMI-06 from the period when that document was developed, and an email in which Mr. Manegold forwards along this request.

This exhibit is admissible. PG&E argues that the exhibit is irrelevant because "[there is] no connection to charged conduct" and "[this is a] generalized discussion of RMI-06," and also that the exhibit is unfairly prejudicial because it "improperly implies unspecified 'pressure increases' are tied to charged conduct." Objs. at 8. To the contrary, the email is highly relevant, as it concerns the document at the heart of Count 1, and the email was sent during the time of the allegedly obstructive conduct underlying that count. To the extent that PG&E is concerned the email creates unfair prejudice *on other counts*, then it can minimize this prejudice by eliciting testimony on cross-examination that the term "pressure increases" does not describe any charged conduct. (But given that this term, or some variant, has already (and appropriately) come up dozens of time during this trial, PG&E's concern about unfair prejudice from its mere mention is not well taken.)

**GOVERNMENT'S EXHIBIT 785**

This exhibit is an email chain concerning RMI-06.

This exhibit is admissible. RMI-06 is the document at the heart of Count 1, rendering relevant all internal PG&E discussions as to its status and revisions, and PG&E has offered no reason that the probative value of this email chain is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

**GOVERNMENT'S EXHIBIT 791**

This exhibit is an email chain containing further responses to the email discussed under Government's Exhibit 781-A.

7

This exhibit is admissible.  PG&E makes the same objections to this exhibit as it did to Government's Exhibit 781-A, and those objections are unavailing for the same reasons discussed under Government's Exhibit 781-A.  The exhibit is relevant and not excludable under Rule 403 for the same reasons discussed under Government's Exhibit 781-A.

**GOVERNMENT'S EXHIBIT 807**

The Government has withdrawn this exhibit.  Trial Tr., Vol. 16 at 2362:5-10.

**GOVERNMENT'S EXHIBIT 809**

The Government has withdrawn this exhibit.  Opp'n at 10.

**GOVERNMENT'S EXHIBIT 813**

This exhibit is an email chain wherein PG&E employees seek information on a 1988 leak on Line 132.

This exhibit is admissible.  This exhibit is relevant to Count 2, as it mentions difficulty gathering data (leak forms) that may have been required by 49 C.F.R § 192.917(b).  PG&E has offered no reason that the probative value of this discussion is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.  To the extent PG&E believes leak forms were not required by a charged regulation on a charged line, it is free to elicit testimony on cross-examination that would support that position.

**GOVERNMENT'S EXHIBIT 910**

This exhibit is a data response sent from PG&E to the California Public Utilities Commission ("CPUC"), concerning leak data.

This exhibit is admissible, provided the Government lays the proper foundation for the data response being either a nonhearsay statement of a party opponent under Rule 801(d)(2) or a PG&E business record under Rule 803(6) (which, as discussed in the First

Order, the Court believes it should be able to do through Mr. Manegold).  The exhibit is relevant to the charge brought under 49 C.F.R § 192.917(b), which concerns data gathering and integration, because it contains PG&E's statement that its leak "records are not fully integrated."  PG&E has offered no reason that the probative value of this statement is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.  To the extent PG&E believes that failure to integrate leak records does not violate 49 C.F.R § 192.917(b), or that its statement does not indicate any such failure, it is free to elicit testimony on cross-examination that would support these positions.

**GOVERNMENT'S EXHIBIT 981**

This exhibit is Mr. Manegold's immunity order before the grand jury.

The Government has indicated that it "does not intend to offer it on direct, if at all." Opp'n at 10.  In the absence of any explanation why Mr. Manegold's immunity order might be relevant to his testimony, the Court agrees with PG&E (for the time being) that the order is irrelevant.  Objs. at 8.  Should the Government desire to use the order with Mr. Manegold on any re-direct examination, then it should be prepared to offer a valid purpose for its admission.

**GOVERNMENT'S EXHIBIT 982**

This exhibit is Mr. Manegold's proffer agreement to meet with the U.S. Attorney's Office.

The Government has indicated that it "does not intend to offer it on direct, if at all." Opp'n at 10.  In the absence of any explanation why Mr. Manegold's proffer agreement might be relevant to his testimony, the Court agrees with PG&E (for the time being) that the agreement is irrelevant.  Objs. at 9.  Should the Government desire to use the agreement with Mr. Manegold on any re-direct examination, then it should be prepared to offer a valid purpose for its admission.

**CONCLUSION**

PG&E's final twenty objections are OVERRULED IN PART and SUSTAINED IN PART, as follows:

1. Government's Exhibit 651 is admissible;
2. Government's Exhibit 674 is admissible;
3. Government's Exhibit 714 is admissible;
4. Government's Exhibit 717 is admissible;
5. Government's Exhibit 721 is admissible;
6. Government's Exhibit 722 is admissible;
7. Government's Exhibit 728 is admissible;
8. Government's Exhibit 756 is admissible;
9. Government's Exhibit 773 is admissible;
10. Government's Exhibit 778 is withdrawn;
11. Government's Exhibit 781 is withdrawn;
12. Government's Exhibit 781A is admissible;
13. Government's Exhibit 785 is admissible;
14. Government's Exhibit 791 is admissible;
15. Government's Exhibit 807 is withdrawn;
16. Government's Exhibit 809 is withdrawn;
17. Government's Exhibit 813 is admissible;
18. Government's Exhibit 910 is admissible;
19. Government's Exhibit 981 is inadmissible until the Government demonstrates a valid purpose for the document; and
20. Government's Exhibit 982 is inadmissible until the Government demonstrates a valid purpose for the document.

**IT IS SO ORDERED.**

Dated: 07/08/16        _____
                       THELTON E. HENDERSON
                       United States District Judge