1   LATHAM & WATKINS LLP
      Steven M. Bauer (Bar No. 135067)
2       steven.bauer@lw.com
      Margaret A. Tough (Bar No. 218056)
3       margaret.tough@lw.com
      Robert E. Sims (Bar No. 116680)
4       bob.sims@lw.com
   505 Montgomery Street, Suite 2000
5   San Francisco, California  94111-6538
   Telephone:  +1.415.391.0600
6   Facsimile:  +1.415.395.8095

7   LATHAM & WATKINS LLP
      Melissa Arbus Sherry (*pro hac vice*)
8       melissa.sherry@lw.com
   555 11th Street, NW, Suite 1000
9   Washington, DC  20004-1304
   Telephone:  +1.202.637.2200
10   Facsimile:  +1.202.637.2201

11   CLARENCE DYER & COHEN LLP
      Kate Dyer (Bar No. 171891)
12       kdyer@clarencedyer.com
   899 Ellis Street
13   San Francisco, California  94109-7807
   Telephone:  +1.415.749.1800
14   Facsimile:  +1.415.749.1694

15   Attorneys for Defendant
   PACIFIC GAS AND ELECTRIC COMPANY

16

17          UNITED STATES DISTRICT COURT
          NORTHERN DISTRICT OF CALIFORNIA
18            SAN FRANCISCO DIVISION

19

20   UNITED STATES OF AMERICA   |   CASE NO. CR-14-00175-TEH

21       v.   |   **DEFENDANT'S MOTION TO STRIKE CERTAIN GOVERNMENT EXHIBITS AND RELATED TESTIMONY**

22   PACIFIC GAS AND ELECTRIC COMPANY,

23          Defendant.   |   **Judge:   Hon.  Thelton E. Henderson**

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEF.'S MOT. TO STRIKE GOV. EXS. AND
RELATED TESTIMONY
CASE NO. CR-14-00175-TEH

1

**NOTICE OF MOTION AND MOTION**

2        PLEASE TAKE NOTICE that on July 11, 2016, Defendant Pacific Gas and Electric

3   Company ("PG&E") will and hereby does move the Court to strike Government Exhibits 192,

4   283, 331, 351, 647, 651, 714, and 715 as well as all related testimony.  Given that the issues

5   raised in this motion affect evidence admissibility in the ongoing trial, the defendant respectfully

6   requests that this motion be heard on an expedited basis.

7        The motion is based on this Notice of Motion, the accompanying Memorandum of Points

8   and Authorities, the files and records of this case, and such other argument and evidence as the

9   Court may consider.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEF.'S MOT. TO STRIKE GOV. EXS. AND
RELATED TESTIMONY
CASE NO. CR-14-00175-TEH

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .......................................................................................................... 1

II.     DISCUSSION ............................................................................................................... 1

    A.      The Witness Lacks Personal Knowledge of Documents He's Never
        Seen .................................................................................................................... 1

    B.      The Witness Cannot Lay a Foundation for Statements from
        Unknown Authors ............................................................................................. 8

    C.      The Government Failed to Establish that An Out-Of-Court
        Witness's Unfairly Prejudicial Statements Concerned a Matter
        Within the Scope of His Employment ............................................................. 9

    D.      The Court Has Wrongly Admitted Unfairly Prejudicial Financial
        Evidence .......................................................................................................... 11

III.    CONCLUSION ............................................................................................................ 13

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

DEF.'S MOT. TO STRIKE GOV. EXS. AND
RELATED TESTIMONY
CASE NO. CR-14-00175-TEH

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aliotta v. National Railroad Passenger Corp.*,
   315 F.3d 756 (7th Cir. 2003) ............................................................................... 10

*Bemis v. Edwards*,
   45 F.3d 1369 (9th Cir. 1995) ................................................................................. 2

*Carden v. Westinghouse Electric Corp.*,
   850 F.2d 996 (3d Cir. 1988)................................................................................... 8

*Cedeck v. Hamiltonian Federal Savings & Loan Association*,
   551 F.2d 1136 (8th Cir. 1977) ............................................................................... 8

*City of Tuscaloosa v. Harcros Chemicals, Inc.*,
   158 F.3d 548 (11th Cir. 1998) ............................................................................. 10

*Lehman v. Maricopa County Community College District*,
   No. CV 11–00579, 2012 WL 3638715 (D. Ariz. Aug. 24, 2012) ........................ 8

*Montoya v. Management Training Corp. (MTC)*,
   2011 WL 5240968 (E.D. Cal. Oct. 31, 2011)........................................................ 2

*Tallarico v. Trans World Airlines, Inc.*,
   881 F.2d 566 (8th Cir. 1989) ............................................................................... 10

*United States v. Bensimon*,
   172 F.3d 1121 (9th Cir. 1999) ............................................................................. 12

*United States v. Bonds*,
   No. CR 07-00732 SI, 2009 WL 416445 (N.D. Cal. Feb. 19, 2009), *aff'd*, 608
   F.3d 495 (9th Cir. 2010) ...................................................................................... 10

*United States v. Brothers Construction Co. of Ohio*,
   219 F.3d 300 (4th Cir. 2000) ................................................................................. 9

*United States v. Chang*,
   207 F.3d 1169 (9th Cir. 2000) ............................................................................ 8, 9

*United States v. Lloyd*,
   807 F.3d 1128 (9th Cir. 2015) ............................................................................... 1

*United States v. Mitchell*,
   172 F.3d 1104 (9th Cir. 1999)..........................................................................11, 12

*United States v. Seong Ug Sin*,
   No. CR 10-5332 JRC, 2010 WL 3195788 (W.D. Wash. Aug. 10, 2010) ........... 10

*Vazquez v. Lopez-Rosario*,
   134 F.3d 28 (1st Cir. 1998)................................................................................. 8, 9

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

DEF.'S MOT. TO STRIKE GOV. EXS. AND
RELATED TESTIMONY
CASE NO. CR-14-00175-TEH

1

**OTHER AUTHORITIES**

2

Fed. R. Evid. 602 advisory committee's note ................................................................. 2

3

**RULES**

4

5
Fed. R. Evid. 103(a) ...................................................................................................... 1

6
Fed. R. Evid. 403 ........................................................................................................ 10

7
Fed. R. Evid. 602 ..................................................................................................... 1, 7

8
Fed. R. Evid. 801(d)(2) ................................................................................................ 1

9
Fed. R. Evid. 801(d)(2)(D) ....................................................................................... 8, 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

DEF.'S MOT. TO STRIKE GOV. EXS. AND
RELATED TESTIMONY
CASE NO. CR-14-00175-TEH

## I.     INTRODUCTION

Pursuant to Federal Rule of Evidence 103, Defendant Pacific Gas and Electric Company ("PG&E") moves to strike Government Exhibits 192, 283, 331, 351, 647, 651, 714, and 715 as well as all related testimony.  *See* Fed. R. Evid. 103(a) (allowing a party to "claim error in a ruling" by timely moving to strike the evidence that has been admitted).  These exhibits and testimony, admitted through the government's direct examination of William Manegold,[1] are inadmissible and should be stricken for the reasons stated below.

## II.    DISCUSSION

### A.     The Witness Lacks Personal Knowledge of Documents He's Never Seen

In a recent series of orders, this Court has allowed the admission of out-of-court statements through a witness who has no personal knowledge of those statements ever having been made.  The Court ruled that any foundational concerns for such documents were likely to be alleviated by Mr. Manegold's presumed ability to establish that the otherwise-hearsay statements were nonhearsay statements of a party opponent under Federal Rule of Evidence 801(d)(2).  Dkt. 724 at 2.  The Court, however, failed to recognize that—regardless of Mr. Manegold's ability to lay a Rule 801(d)(2) foundation—he could not testify to the statements because he has zero firsthand knowledge of them.  This was an abuse of discretion, and the Court should strike the improper evidence and testimony to cure the error.  *See United States v. Lloyd*, 807 F.3d 1128, 1162 (9th Cir. 2015) (finding abuse of discretion where trial court allowed witness to testify about statements beyond her personal knowledge).

Federal Rule of Evidence 602 provides, in part, that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."  The Advisory Committee Notes to Rule 602 further provide:

> This rule does not govern the situation of a witness who testifies to a hearsay statement as such, *if he has personal knowledge of the making of the statement*.  Rules 801 and 805 would be applicable.  This rule would,

---

[1]   At this time, Mr. Manegold's direct examination continues.  By filing this motion now, the defendant in no way waives any future objection it may have to both the exhibits and testimony the government seeks to admit through this witness.

however, prevent him from testifying to the subject matter of the hearsay statement, as he has no personal knowledge of it.

Fed. R. Evid. 602 advisory committee's note (emphasis added).  The Ninth Circuit, citing these advisory notes, has stated that "[a] witness who merely testifies to the fact that a declarant made the statement . . . need only have firsthand knowledge that the statement was made." *Bemis v. Edwards*, 45 F.3d 1369, 1373 n.2 (9th Cir. 1995); *see Montoya v. Mgmt. Training Corp. (MTC)*, 2011 WL 5240968, at *3 n.3 (E.D. Cal. Oct. 31, 2011) (holding that, while statement of plaintiff's supervisor could qualify as a party admission, plaintiff did not have personal knowledge of the statement so his testimony regarding that statement was inadmissible).

As recounted below, the prosecutor confronted Mr. Manegold multiple times with out-of-court statements, each offered for their truth, where he lacked firsthand knowledge that the statements were even made.  Each time the Court admitted the statements, over the defendant's objections:

**Government Exhibit 192** (February 2006 email and attachment from Robert Howard to numerous people, *not* including Manegold):

> Q:  Let's take a look, please -- and the binder that I just handed you has a tab -- should have a tab for Exhibit 192.  Could you please turn to that?
> (Request complied with by the Witness)
> Q:  Do you have that in front of you?
> A:  I do.
> Q:  Okay. And is this an email from a Robert Howard, Page 1 of 192?
> A:  That's what it says.
> Q:  And do you know the name "Robert Howard"?
> A:  I do.
> Q:  Who is that?
> A:  He was the Vice-President of Engineering.
> Q:  And did you know him in –
> A:  Let me correct that.  I think he was Vice-President of Engineering. He could have been Vice-President of Engineering Operations or -- I don't know his exact title, but he was the Vice-President.
> Q:  At PG&E?
> A:  Correct.
> MS. WEST:  The United States offers Exhibit 192.
> MR. BAUER:  Your Honor, may I have my continuing objection to this, on the grounds stated, and on the confrontation clause?
> THE COURT:  You do.

1     MR. BAUER:  Thank you, Your Honor.
2     THE COURT:  It will be admitted.

3   7/7/2016 Trial Tr. at 2296:20-2297:21.

4     **Government Exhibit 283** (a financial document titled "2008 Program Reviews"):

5     Q:  All right. Mr. Manegold, I'm going to ask you if -- to take a look, please, at Exhibit
6     283.  In connection with the financial work, your involvement in finance aspects of
      integrity management at PG&E, have you -- did you ever deal with integrity management
7     expense budgets?
8     A:  For my group I did, and I also helped coordinate the budget work that Frank did with
      -- Frank Maxwell did with, at times, with both Kevin Armato and -- who managed our
9     budget at different times for our DA program, and with Frank Dauby who managed the
      budget for the ILI program.
10    Q:  The ILI program?
      A:  Right.  Not always, but sometimes.
11    Q:  And are you familiar with the integrity management budget being part of the gas
      transmission expense budget?
12    A:  I'm aware that that's true, yes.
13    Q:  I'm going to ask you to look, please, at Exhibit 283.  And if you could tell me,
      flipping through it, if you can tell whether this is a PG&E gas transmission expense
14    program review.  Or I should say, whether this is a PG&E document pertaining to gas
      transmission expense.
15    A:  It appears to be, to me.
      MS. WEST:  The United States offers Exhibit 283.
16    MR. BAUER:  Objection, foundation.
17    THE COURT:  Overruled.  It will be admitted.

18   *Id.* at 2353:14-2354:12.

19        After questions and answers whereby the various statements were read into the record,

20   defense counsel objected again, pointing out "[i]t has not been established that this witness has

21   ever seen or reviewed this document."  *Id.* at 2355:16-18.  While the Court initially appeared to

22   agree with defense counsel, it continued to allow questioning regarding the statements—even

23   though it was clear that the witness had never seen the document before:

24    MR. BAUER:  Objection, Your Honor.  It has not been established that this witness has
      ever seen or reviewed this document.
25    THE COURT:  Let's do that, Counsel.
26    MS. WEST:  This has been admitted as a statement of party opponent, Your Honor.
      THE COURT:  I understand.
27    BY MS. WEST:
      Q:  Have you seen this document?
28    A:  **I don't recognize it.**

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEF.'S MOT. TO STRIKE GOV. EXS. AND
RELATED TESTIMONY
CASE NO. CR-14-00175-TEH

1   MS. WEST:  I think the foundation is still laid for its admission, Your Honor.  It is a
2   statement of party opponent.
    THE COURT:  I agree.
3   MR. BAUER:  I accept –
    THE COURT:  It goes to the weight.  Proceed.
4

5   *Id.* at 2355:16-2356:6 (emphasis added).

6   **Government Exhibit 331** ("2008 Utility Offsite" slides):

7

8   Q:  Let's take a look now at Exhibit 331.  In the next binder, or do you have it?
    A:  Yes.
9   (Document displayed.)
    Q:  All right.  On the first page of Exhibit 331, do you see the PG&E logo?
10  A:  I do.
    Q:  Do you recognize that logo from your work at PG&E?
11  A:  I do.
    Q:  And it says "2008 Utility Offsite Strategy Discussion."  Do you see that?
12  A:  I do.
    Q:  And the utility, as we discussed earlier, refers to PG&E company, correct?
13  A:  For this document, I assume that's what it means.
    Q:  In the course of your work at PG&E, the "utility" was used to refer to the company as
14  opposed to the corporation?
    A:  Correct.
15  MS. WEST:  The united [sic] States offers Exhibit 331.
    MR. BAUER:  Objection, your Honor.  Lack of foundation with this witness and all the
16  other objections that we have for the record, including the confrontation clause.
    THE COURT:  Right.  Those are continuing.  This will be admitted.
17  . . .
    Q:  Let me ask you first:  Do you recall whether you participated in the 2008 utility
18  offsite?
    A:  **No, I did not.**
19

20  *Id.* at 2366:9-2367:7, 2367:18-20 (emphasis added).

21  **Government Exhibit 351** (email from Leonard Anderson to numerous people, *not*

22  including Manegold):

23

24  Q:  Okay, I'm going to direct your attention, please, to a few pages of Exhibit 351, which
    you should have.  Do you have that in the binder?
25  A:  I do.
    Q:  Okay.  And I'm going to do this on the ELMO.  On Page 1, do you have header
26  information?
    A:  Yes, I do.
27

28

4

Q:  Okay.  And are you able to see that this is an email from about halfway down, a Leonard G. Anderson, with an email address of leonard.anderson@pgecorp.com?

A:  Yes.

Q:  Do you recognize the email suffix pgecorp.com?

A:  Um.

Q:  Are you familiar with that being a PG&E Corporation email address?

A:  **I don't think I ever got any emails from these guys**, but I believe -- if you tell me it's the corporation, I believe it.

Q:  Well, that's not the way it works.

A:  Well, I -- I don't know. I mean I –

Q:  You are not sure?

A:  I -- I would be shocked if it wasn't.  **But I don't have any firsthand knowledge of it.**

Q:  Okay.  Let's look at the line below that, to Peter Darbee.  And you testified a little bit ago that you recognize that name?

A:  Correct.

Q:  And who was he?

A:  The CEO of PG&E Corporation.

Q:  And do you see there peter.darbee@pgecorp.com?

A:  Yes.

Q:  And do you know the name Chris Johns?

A:  Yes.

Q:  Who was that?

A:  At this time I believe -- well, what year are we in? 2008?  I don't know what his title was at this time.  He became president of the company -- he could have been president when this was written.  I -- I don't know.

Q:  Do you know whether he was an employee at this time of PG&E Corporation?

A:  Yes, yes.

Q:  Okay. And do you see that the email is to some individuals at -- let me direct your attention to the bottom.  Do you see there's some at pge.com?

A:  Um, yes.

Q:  And do you recognize that suffix in an email?

A:  Yes.

Q:  What is that?

A:  pge.com?

Q:  Yeah.

A:  That's for PG&E Company, PG&E Company.

Q:  Okay. So does it appear from this that this is email from somebody at PG&E Corporation to others at PG&E Corporation, as well as to PG&E Company?

A:  That's what I assume.

Q:  Well, that's what you see in the email address, is that correct?

A:  That's correct.

Q:  And the subject line here is "2Q Earnings Materials," is that right?

A:  Yes.

Q:  And the date, July 31, 2008?

A:  Yes.

Q:  And in your role at PG&E, did you ever -- were you ever involved in any financial aspects?

A:  Yes.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Q:  And do you know what "2Q Earnings" refers to?
A:  I believe that means second quarter earnings.
MS. WEST:  United States offers the redacted version of Exhibit 351.
MR. BAUER:  I would like a continuing objection also under the confrontation clause of the United States Constitution.  Plus, the foundation has been laid for the corporation as opposed to the utility.
THE COURT:  So noted.  But it will be admitted.

*Id.* at 2331:23-2334:21 (emphasis added); *see id.* at 2339:16 (stating during questioning of the attached document that "[s]ome [documents] I have never looked at, **like this one**" (emphasis added)).

**Government Exhibit 651** (email from Sara Peralta to Bob Fassett):

Q:  Let's look at 651.  (Witness complied.)
Q:  Is 651 an email from Sara Peralta to Bob Fassett?
A:  That's what it says.
Q:  And it attaches the RMI-06 Rev-01 that you sent to Sara?
A:  I assume that.  That's what it says.
MS. WEST:  The Government offers Exhibit 651.
THE COURT:  Admitted.

7/8/2016 Trial Tr. at 2533:10-17.

**Government Exhibit 714** (email with attachment from David Harrison to Sumeet Singh and forwarded to Sara Peralta):

Q:  Okay.  Let's take a look at 714, please.  (Witness complied.)
Q:  Is Exhibit 714 an email from Sumeet Singh to Sara Peralta forwarding an email from a David Harrison?
A:  Yes.
Q:  And who is David Harrison?
A:  He was a contract employee that worked for PG&E.
Q:  Did he report to you?
A:  At this time -- he had, but I don't think he was reporting to me at this time.
Q:  At this time he was working for PG&E as a contractor?
A:  As a contractor, yes.
MS. WEST:  Government offers Exhibit 714.
THE COURT:  Admitted.

*Id.* at 2540:14-2541:2.

**Government Exhibit 717** (email with attachments from Steve Whelan to Ed Salas and copying Kirk Johnson):

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEF.'S MOT. TO STRIKE GOV. EXS. AND
RELATED TESTIMONY
CASE NO. CR-14-00175-TEH

1   Q:  Let's look at Exhibit 717.  (Witness complied.)
2   Q:  Is 717 a PG&E email from a Steve Whelan to Ed Salas, who you mentioned?
   A:  Yes.
3   MS. WEST:  Government offers 717.
   THE COURT:  717 is admitted.
4

5  *Id.* at 2542:12-18.

6       Because the government failed to establish that Manegold has personal knowledge of any

7  of these documents, it was an abuse of discretion to admit them through him.  The problem was

8  worsened by the testimony that the government then elicited.  Without a shred of personal

9  knowledge about the out-of-court statements, cross-examination regarding the context of the

10  statement and any surrounding circumstances is well-nigh impossible.[2]  This is precisely what

11  Rule 602 was designed to avoid.  The rule requires the government to admit hearsay statements

12  through a witness who has firsthand knowledge of the statements.  *See* Fed. R. Evid. 602

13  advisory committee's note.

14       Here, the government is seeking to substitute a witness who has *no* personal knowledge

15  of the out-of-court statements or document in place of in-court testimony from a witness who

16  *does* have personal knowledge—and who may be cross-examined.  Indeed, numerous such

17  witnesses (including people who actually appear on the emails) are on the government's witness

18  list.  The suggestion that the defendant can remedy this by calling the witnesses itself, *see* Dkt.

19  728 at 2 n.1, upends the burden of proof and runs headlong into the bedrock principle that a

20  criminal defendant is presumed innocent and need not put on any case at all.[3]  Moreover,

21    [2]  This is in stark contrast to the single PHMSA email attaching multiple PHMSA FAQs that
22  PG&E moved to admit during cross-examination of the government's *designated expert witness*
  on the agency and its interpretation of its regulations (which includes FAQs).  *See* Dkt. 724 at 2
23  n.2. Rule 602's requirement that the witness have personal knowledge, of course, does not apply
  to expert testimony.  ("This rule does not apply to a witness's expert testimony under rule 703.")
24  In any event, the government did not object to its admission.  6/22/16 Transcript at 877:24-878:1
25  ("The email in the chain requires a hearsay exception, so I would just like to hear for the record
  the hearsay exception.").

26    [3]  While the Court initially did not instruct the jury in this regard, it remedied that oversight on
  June 21 when it instructed the jury that "PG&E is presumed to be innocent . . . [and] is neither
27  expected nor required to present any evidence to prove its innocence."  6/21/2016 Trial Tr. at
  709:20-24.  The suggestion that the defendant is free to call witnesses with actual personal
28  knowledge to counter the government's decision to offer such evidence through witnesses
  capable only of reading someone else's statements into the record is contrary to this instruction.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7      DEF.'S MOT. TO STRIKE GOV. EXS. AND
RELATED TESTIMONY
CASE NO. CR-14-00175-TEH

practically speaking, this would mean the defense would be in the position of calling a witness weeks from now, entirely removed from the original "testimony," further preventing effective cross examination.

**B.      The Witness Cannot Lay a Foundation for Statements from Unknown Authors**

This Court has ruled that, for documents with no apparent author, it is "likely" that Mr. Manegold "possess[es] the knowledge" to either establish that it is a party admission or that it falls under a Rule 803 hearsay exception.  Dkt. 724 at 2-3.  During direct examination, the Court admitted (over defense counsel's objections) two author-less documents (Government Exhibits 283 and 331) even though proper foundation had not been laid.  The exhibits and related testimony should be stricken.

"Rule 801(d)(2)(D) requires the proffering party to lay a foundation to show that an otherwise excludable statement relates to a matter within the scope of the agent's agency or employment."  *United States v. Chang*, 207 F.3d 1169, 1176 (9th Cir. 2000) (alterations and internal quotation marks omitted).  Numerous courts have held that an unknown employee's statement does not qualify as nonhearsay under Rule 801(d)(2)(D).  *See, e.g.*, *Carden v. Westinghouse Elec. Corp.*, 850 F.2d 996, 1002 (3d Cir. 1988) ("[B]ecause [the declarants] are unidentified, the record could not, and does not, establish that any matter bearing upon Carden's hiring and firing was within the scope of their employment."); *Cedeck v. Hamiltonian Fed. Sav. & Loan Ass'n*, 551 F.2d 1136, 1138 (8th Cir. 1977) ("That part of Murphy's statement which contains a reiteration of what [some other employee] told him is not admissible as an admission by party-opponent since the author of the statement is unknown."); *Vazquez v. Lopez-Rosario*, 134 F.3d 28, 34 (1st Cir. 1998) (rejecting argument that statement of unknown employee was nonhearsay party admission since it was "impossible" to determine whether the declarant "fits within the party-opponent definition"); *Lehman v. Maricopa Cty. Cmty. Coll. Dist.*, No. CV 11–00579, 2012 WL 3638715, at *4 (D. Ariz. Aug. 24, 2012) (holding that statement "by unidentified [defendant] employees are inadmissible hearsay").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEF.'S MOT. TO STRIKE GOV. EXS. AND
RELATED TESTIMONY
CASE NO. CR-14-00175-TEH

As can be seen above in the transcript excerpts for Exhibits 283 and 331, the government failed even to attempt to establish the statement's author.  At most, the government established that the documents were PG&E documents—though the defendant did not question their authenticity.  Yet the Court nonetheless admitted the hearsay statements, presumably as party admissions, despite the lack of any permissible basis to do so.[4]  *See Vazquez*, 134 F.3d at 34.  The Court should remedy its error and strike Exhibits 283 and 331 and any related testimony.

### C.   The Government Failed to Establish that An Out-Of-Court Witness's Unfairly Prejudicial Statements Concerned a Matter Within the Scope of His Employment

The Court also admitted highly inflammatory statements from a little-known PG&E employee containing his musings about irrelevant aspects of company policy going back three decades.  *See* Gov. Exh. 647.  This employee has never been on any government witness list.  This evidence should be stricken.

As already noted above, Rule 801(d)(2)(D) requires the proffering party to show that an otherwise excludable statement "relates to a matter within the scope of the agent's agency or employment." *Chang*, 207 F.3d at 1176; *see United States v. Bros. Const. Co. of Ohio*, 219 F.3d 300, 311 (4th Cir. 2000) ("[T]he subject of the statement must relate to the employee's area of authority.").  The government failed to lay any such foundation with respect to Wayne Ciardella's statements.  When Mr. Manegold was asked on direct examination who Mr. Ciardella was, the flowing colloquy occurred:

> A: [He was] [a] friend of mine that worked in the Safety, Health and Claims Department. We had been friends. We worked together in the Mechanical and Nuclear Engineering Department back in the 80's and he had worked at Diablo Canyon as well.
>
> Q: A PG&E friend of yours?
>
> A: Yes.

---

[4]   The government did not attempt to lay a foundation for application of the business records exception to the hearsay rule, which would have required it to establish that the documents—which Mr. Manegold had never before seen—were made by someone with knowledge at or near the time the event occurred, that they were kept in the course of a regularly conducted business activity, and that making the documents was a regular practice of that activity.  *See* Fed. R. Evid. 803(6).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEF.'S MOT. TO STRIKE GOV. EXS. AND
RELATED TESTIMONY
CASE NO. CR-14-00175-TEH

1   7/7/2016 Trial Tr. at 2520:16-21.  There was no testimony regarding the Safety, Health and

2   Claims Department or Ciardella's role there.  Because no connection was made between

3   Ciardella and Gas Transmission Integrity Management or indeed any area of the company

4   relevant to this prosecution, the statements should not have been admitted under Rule

5   801(d)(2)(D).  *See United States v. Bonds*, No. CR 07-00732 SI, 2009 WL 416445, at *5 (N.D.

6   Cal. Feb. 19, 2009), *aff'd*, 608 F.3d 495 (9th Cir. 2010) (holding that the defendant's personal

7   trainer's statements identifying blood and urine samples were not admissible under Rule

8   802(d)(2)(D) because the government failed to show, among other things, that "the task of

9   identifying defendant's samples was within the scope of [the trainer's] agency"); *City of*

10  *Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 561-62 (11th Cir. 1998) (finding that, in

11  price-fixing case, that employee's statements regarding the price of chlorine did not fall within

12  Rule 802(d)(2)(D) because employee "was involved in the pricing and sales of other chemicals

13  and was rarely and only ministerially involved in chlorine sales"); *Tallarico v. Trans World*

14  *Airlines, Inc.*, 881 F.2d 566, 572 (8th Cir. 1989) (affirming trial court's determination that

15  "highly inflammatory" statements from airline employees not involved in boarding decisions

16  were not admissible under Rule 802(d)(2)(D) to prove that airline discriminated against

17  passenger by refusing to allow her to board).

18          Despite the lack of a proper foundation, Ciardella's out-of-context, highly prejudicial

19  statements were shown and read to the jury.  *See* Gov. Exh. 647-001.[5]  Even if these statements

20  were admissible as party admissions (they were not), Rule 403 clearly requires their exclusion.

21  *See Aliotta v. Nat'l R.R. Passenger Corp.*, 315 F.3d 756, 763 (7th Cir. 2003) ("Rule 403 clearly

22  applies to admissions, and a trial judge can exclude admission evidence if its probative value is

23  substantially outweighed by the danger of unfair prejudice"); *see also United States v. Seong Ug*

24  *Sin*, No. CR 10-5332 JRC, 2010 WL 3195788, at *2 (W.D. Wash. Aug. 10, 2010) (excluding

25  party admission as to the results of his breathalyzer test where the "limited probative value as an

26

27  [5]   "[O]ut of an abundance of caution," the Court redacted the words "and tragic" from the first

28  sentence of the email to avoid the "improper inference that this email is offered as evidence that
    PG&E's alleged regulatory malfeasance caused the San Bruno explosion."  Dkt. 725 at 8.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

DEF.'S MOT. TO STRIKE GOV. EXS. AND
RELATED TESTIMONY
CASE NO. CR-14-00175-TEH

1   admission" was "far outweighed by the potential for the unfair prejudice of admitting an

2   unreliable test result.").

3          For example, there is no probative value to his statement about "a deliberate [] strategy, a

4   bleeding problem that started with the completion of DCPP and Dick Clarke" since there has

5   been no explanation of who or what this is.  Gov. Ex. 647.  The jury is left to speculate as to

6   what the "deliberate [] strategy" and "bleeding problem" refer.  *Id.*  Ciardella's similarly vague

7   statements regarding "cutbacks," "other investments," "the infrastructure where it should have

8   gone," "replacements etc" give little to no insight into the gas transmission integrity management

9   charges at issue in this prosecution.  *See id.*  And when he does mention "gas," he intermingles

10  his opinions with his thoughts on the electricity side in a way that suggests a lack of familiarity

11  with gas issues.  His statement that "now we see the gas side too" strongly suggests that his

12  opinions flow from his speculation as to the cause of the San Bruno explosion, rather than any

13  firsthand (or even secondhand) knowledge.  *Id.*  Ciardella ends his where-there's-smoke-there's-

14  fire statements with inflammatory accusations about "financial people" that are entirely

15  unhelpful to the jury in determining the issues in this case.  *Id.*

16         The prejudice to the defendant is patent and unfair because the statements have not been

17  shown to relate to the issues in this case.  It is unfair to force PG&E to defend itself against

18  vague accusations from an employee who does not even work in PG&E gas transmission.

19  Presenting this email to the jury has risked allowing it to convict PG&E based not on a finding

20  that PG&E knowingly and willfully violated the charged regulations, but on a perception of it as

21  a bad company that has engaged in alleged misdeeds for 30-some years.

22         Exhibit 647 and any related testimony should be stricken.

23         **D.    The Court Has Wrongly Admitted Unfairly Prejudicial Financial Evidence**

24         Not so long ago, the Court agreed with PG&E (and the Ninth Circuit) that "[p]roof of

25  [greed], without more, is likely to amount to a great deal of unfair prejudice with little probative

26  value."  Dkt. 460 at 18 (quoting *United States v. Mitchell*, 172 F.3d 1104, 1109 (9th Cir. 1999))

27  (Court's alterations).  The Court rightly observed that "something more" must accompany

28  evidence of "greed" in order to be admissible as motive evidence.  *Id.* (quoting *United States v.*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

DEF.'S MOT. TO STRIKE GOV. EXS. AND
RELATED TESTIMONY
CASE NO. CR-14-00175-TEH

1   *Bensimon*, 172 F.3d 1121, 1129 (9th Cir. 1999)).  Otherwise, an impermissible inferential leap is

2   required to connect the presentation of wealth with the alleged crimes.

3         The Court's recent evidentiary orders have gutted its prior ruling and have allowed the

4   government to introduce financial evidence that has little to no probative value but unfairly

5   paints the defendant as a profit-hungry company.  Specifically as to Government Exhibits 331

6   and 351, the Court broadly held that they are probative of "PG&E's mental state on the charged

7   crimes."  Dkt. 724 at 9 (Ex. 331); Dkt. 725 at 2 (Ex. 351).  For Exhibit 331, the government

8   questioned Mr. Manegold about a PowerPoint slide he had never seen, asking "And the first

9   bullet point that is not up for debate is 'Eight percent EPS growth,' correct?"  7/7/2016 Trial Tr.

10   at 2368:5-6.  PG&E's desire to achieve 8% earnings growth for its shareholders is not proof of

11   motive or intent to violate the law; rather, it exactly the type of evidence the Ninth Circuit has

12   found  that—"without more"—is likely to be unfairly prejudicial while offering little probative

13   value.  *Mitchell*, 172 F.3d at 1109.  Because the government presented the defendant's EPS goal

14   "without more," the defendant has been unfairly prejudiced before the jury.

15         The same is true for Exhibit 351.  The government, through Mr. Manegold, read into the

16   record information from this publicly-announced earnings report concerning PG&E's EPS goal

17   and the company's use of earnings as an objective measure of performance.  *See* 7/7/2016 Trial

18   Tr. at 2331-2340.  Once again, the government was able to use this financial evidence—and

19   nothing more—to unfairly suggest that an intent to make a profit is proof of an intent to break the

20   law.  The Ninth Circuit has barred such inferences, recognizing that the connection requires an

21   inferential leap.  *See Mitchell*, 172 F.3d at 1109.  This Court should do the same.

22         To make matters worse, the lack of any meaningful cross-examination compounds the

23   unfair prejudice to the defendant.  As already discussed, Mr. Manegold had never seen Exhibits

24   331 and 335 before he was handed them on the witness stand and the government had him read

25   them to the jury.  Because he cannot place those statements in context, or provide a fuller picture

26   of PG&E's financial goals and measures, the defendant cannot cure the unfair prejudice on

27   cross-examination.  And, as set forth above, the suggestion that the defendant can simply call the

28   witness who actually has the personal knowledge necessary to explain and contextualize the

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

DEF.'S MOT. TO STRIKE GOV. EXS. AND
RELATED TESTIMONY
CASE NO. CR-14-00175-TEH

1  documents—weeks from now—undermines the presumption of innocence and reverses the

2  burden of proof.  Instead, the defendant is placed in the unfair position of potentially having to

3  call its own witnesses—who would not otherwise be called—days or weeks from now to rebut

4  the prejudicial insinuations now infecting this trial.

5       The Court should remedy its error and strike Exhibits 331 and 351 and any related

6  testimony.

7  **III.    CONCLUSION**

8       For the reasons above, PG&E respectfully requests that the Court strike Government

9  Exhibits 192, 283, 331, 351, 647, 651, 714, and 715 as well as all related testimony.

10

11  Dated:  July 11, 2016                    Respectfully submitted,

12                                By  _____/s/_____
                                       Steven M. Bauer
13                                     Margaret A. Tough
                                       Robert E. Sims
14                                     LATHAM & WATKINS LLP

15                                     Kate Dyer
16                                     CLARENCE, DYER & COHEN LLP

17                                     *Attorneys for Defendant*
                                       *Pacific Gas and Electric Company*

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

DEF.'S MOT. TO STRIKE GOV. EXS. AND
RELATED TESTIMONY
CASE NO. CR-14-00175-TEH