1  BRIAN J. STRETCH (CABN 163973)
United States Attorney

2

3  PHILIP A. GUENTERT (CABN 147374)
Acting Chief, Criminal Division

4  HALLIE MITCHELL HOFFMAN (CABN 210020)
HARTLEY M. K. WEST (CABN 191609)

5  JEFFREY B. SCHENK (CABN 234355)
Assistant United States Attorneys

6
        450 Golden Gate Avenue, Box 36055
7       San Francisco, California 94102-3495
        Telephone: (415) 436-7200
8       Facsimile: (415) 436-7027

9  Attorneys for United States of America

10              UNITED STATES DISTRICT COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12              SAN FRANCISCO DIVISION

13  UNITED STATES OF AMERICA,          )   CR 14-00175 TEH
                                        )
14          Plaintiff,                  )   UNITED STATES' RESPONSE TO
                                        )   DEFENDANT'S MOTIONS REGARDING
15      v.                              )   EVIDENCE ADMITTED THROUGH WITNESS
                                        )   MANEGOLD, DOCKETS 733 AND 734
16  PACIFIC GAS AND ELECTRIC COMPANY,  )
                                        )   Judge: Hon. Thelton Henderson
17          Defendant.                  )   Date: July 11, 2016
                                        )   Time: 4:00 p.m.
18  _____    )   Place: Courtroom 2, 17th Floor

19

20                  I.    INTRODUCTION

21          In its two midnight filings, defendant Pacific Gas and Electric Company ("PG&E") asks the

22  Court to revisit prior evidentiary rulings after review of the transcript.  This is exactly what the Court

23  forbade the parties to do.  The Court should strike these unauthorized motions.  Only twenty-two lines of

24  one of the motions (Dkt. 733) addresses the topic on which the Court authorized briefing, but does so in

25  such a cursory way that it does not allow for a detailed response by the government.

26  / / /

27  / / /

28  UNITED STATES' RESPONSE TO DEFENDANT'S MOTIONS REGARDING EVIDENCE
ADMITTED THROUGH WITNESS MANEGOLD, DOCKETS 733 AND 734
CR 14-0175 TEH
                                        1

## II.   ARGUMENT

**A.   The Court Should Strike the Motions As Unauthorized, Except Section C.2 of Docket 733**

The Court carefully reviewed and made evidentiary rulings about the admissibility of exhibits through government witness Manegold.  Dkt. 724, 725, and 728.   The government followed those rulings and accordingly admitted exhibits through Manegold.  Now defendant, in midnight filings, asks the Court to revisit these rulings.  Additionally, the Court made rulings on the admissibility during Manegold's testimony.  Two or three days after the rulings, upon reading the transcripts and additional arguments, PG&E asks the court to revisit those rulings.  These objections should not be considered either because they were already ruled upon by the Court, or because they were not raised at the time evidence was admitted.

The sole issue that PG&E asked to be able to brief involved what PG&E could ask on cross-examination of Manegold:

> I haven't had a chance to talk to my team about this, but as I'm looking at these documents coming in, I think I'd like permission to file a short brief for you to read on Monday, as I -- as I try to be clear on what I can ask and what I can't ask related to San Bruno. I don't want to – I know if I ask a question, the Government is going to say: You've opened the door. And so I don't want to have that fight from a position of weakness.

Trial Tr. Vol. 17 at 2556:15-22.  The Court then held that this "short brief" regarding what the defense "can ask and what [PG&E] can't ask related to San Bruno" should be filed by the end of the day Sunday, so the government may respond in writing, if it chooses, by noon Monday.  Trial Tr. Vol. 17 at 2557:7 – 2558:22.  Instead of filing a short brief regarding what PG&E can and cannot ask relating to San Bruno, PG&E file two motions, an 18-page motion to strike admitted evidence and a 9-page motion for limiting instruction.

This Court has repeatedly stated during trial that it would not revisit prior rulings it had made after the fact.  Beginning on June 21 2016, the Court said, "moving forward, I expect counsel to make their objections to questions or testimony in court, not after a review of the transcript of the day's proceeding in the evening. And I will not entertain such objections hereforth."  Trial Tr. Vol. 6 at 704:15-19.  On June 24, 2016, this Court stated, "I simply cannot permit the parties to take a second bite of evidentiary objections because they do not like the outcome of my rulings…. moving forward you're

UNITED STATES' RESPONSE TO DEFENDANT'S MOTIONS REGARDING EVIDENCE
ADMITTED THROUGH WITNESS MANEGOLD, DOCKETS 733 AND 734
CR 14-0175 TEH

2

on notice that I expect all evidentiary objections to be made at the time I hear objections to that particular exhibit." Trial Tr. Vol. 9 at 704:3-18. On June 28, 2016, the Court stated, "I've previously ruled, as you know, that I will not entertain objections to questions or testimony made after we have a review of the daily trial transcript, and I've every intention of holding the parties to that ruling and enforcing it." Trial Tr. Vol. 10 at 704:19-23. On June 29, 2016, the Court stated, "I am not revisiting. I am so confident of my rulings. You guys want to -- and you're trying to reframe -- not you, both of you are trying to reframe rulings, call it something else. And I'm going to speak to that later. I'm tired of ruling on this." Trial Tr. Vol. 11 at 12-16. Most recently, on July 7, the Court said, "And I will rule on this. We won't pour over the transcript tonight and come up with new. This is it." Trial Tr. Vol. 16 at 2423: 24-25.

PG&E did exactly what the Court forbade: it spent the weekend reviewing the transcript, reframing, and creating new objections. PG&E's unauthorized motions should be denied outright.

**B.     The Court Should Deny Defendant's Motion for Limiting Instruction and Other Relief**

**1.     The Government Has Not Improperly Suggested Causation**

PG&E delineates new objections to government exhibits and direct examination questions as to its longtime employee, William Manegold. All are baseless.

Exhibit 615

Exhibit 615 is an email in which Calvin Lui forwarded Manegold's draft white paper "MOP 10% Allowance" to Manegold, a few days after the NTSB investigation began. The government asked Manegold why Lui was forwarding it. While it did not know the answer Manegold would give – because current and former PG&E employee-witnesses have refused to meet with the government to discuss anticipated testimony, the government has had to ask many questions as to which it does not know the answer – it expected that the answer might relate to the existence of the NTSB investigation. As this Court knows, PG&E's concealment of its 10% allowance in the NTSB investigation is a significant part of the government's evidence for Count One.   Count One alleges that PG&E obstructed the NTSB investigation of the San Bruno explosion and PG&E's Integrity Management program.

1    Exhibit 649

2         Defendant complains that the government "elicited testimony about a number of executives

3    above Mr. Manegold and Ms. Peralta in the organization," and that the "only reason to ask these

4    questions was to imply that PG&E engineers and senior executives must have believed the planned

5    pressure increases were inappropriate."  Mot. at 5.

6         To the contrary, the government sought to – and did – elicit that:

7         (1)    Mangold sent the 10% version of RMI-06 to his boss, Sara Peralta, who as PG&E's

8                Manager of Integrity Management had approval authority over RMI-06 at the time; and

9         (2)    According to the email that Peralta forwarded to Manegold, her boss and PG&E's

10               Director of IM, Bob Fassett, wanted it to discuss with PG&E's Executive Vice President

11               of Engineering and Operations, Ed Salas.

12   The jury can and should reasonably infer that PG&E's upper echelons of management knew that PG&E

13   engaged in the 10% practice that they subsequently disavowed to the NTSB.  This evidence

14   demonstrates respondeat superior liability (as well as corporate collective knowledge culpability).

15   Exhibit 717

16        Defendant complains that Exhibit 717 is a presentation of post-accident evaluations prejudicially

17   suggesting that the procedures caused the explosion.  Not so.  This exhibit is direct proof of the

18   following points, among others:

19        (1)    PG&E used GIS to identify HCA segments with manufacturing threats.  (Exh. 717-004.)

20               PG&E is charged with failing to gather and integrate data.  PG&E has sought to show

21               that GIS was merely a starting point.  This exhibit is relevant to show that PG&E did in

22               fact rely on GIS, which witness and documentary evidence has shown PG&E knew to

23               contain erroneous and incomplete data, to make integrity management decisions.  Further

24               support comes from the exhibit's concession that PG&E could not locate job files or job

25               files could not confirm GIS data.  (Exh. 717-007, n.1.)

26        (2)    PG&E identified HCAs beginning (at latest) in 2003.  (Exh. 717-004.)  PG&E has sought

27               to show that it did not identify HCAs until 2004, for the purpose of arguing that its

28   UNITED STATES' RESPONSE TO DEFENDANT'S MOTIONS REGARDING EVIDENCE
     ADMITTED THROUGH WITNESS MANEGOLD, DOCKETS 733 AND 734
     CR 14-0175 TEH
                                                    4

1    12/2003 overpressure on Line 132, raising the pressure over the MAOP of 400, was not

2    an overpressure and provides a loophole under 49 C.F.R. § 192.917(e).

3        (3)    There were 16 exceedances over 5 year MOP, between 2003 and 2010, on 46.5 HCA

4    miles of pipeline, including on charged lines 107, 109, and 132.  (Exh. 717-005, 018-20.)

5    These occurred during intentional pressure increases.  (Exh. 717-002.)  The evidence will

6    continue to show that there were numerous exceedances during unintentional pressure

7    increases.

8    <u>Exhibit 622</u>

9    Defendant complains that the government improperly suggested that through Exhibit 622 that

10   PG&E's evaluation of GIS was a result of the San Bruno explosion.  But the government just walked

11   Manegold through the email, which states in part that "the timing is key."  The most relevant part of this

12   email is that PG&E is building a "pipeline features list" (PFL), which other exhibits demonstrate

13   identified numerous significant errors in GIS.

14       Q  Okay. And he says that the timing is key?
    A  That's what he says, yes.

15       Q  Okay. And you said that PFL refers to a pipeline features list, which is all the pipe data?
    A  Correct.

16       Q  And they say that they are currently building it, correct?
    A  That's what it says.

17       Q  And are you aware whether the pipeline features list was, in fact, built?
    A  I believe it was.

18       Q  Did you have any involvement in it at all?
    A  I don't believe so.

19       Q  Did you ever look at that pipeline features list?
    A  I looked at some of the work that was going on. They set up a big room to do the work and I

20          looked at some of it, but I don't think I -- I don't know if I saw the completed product or not.
    Q  Are you aware, one way or another, whether that built pipeline features list recognized

21          numerous errors in GIS?
    A  Since I didn't see the final list, I don't know that.

22       Q  You don't know that?
    A  It wouldn't surprise me, but I -- I didn't see the features list, so I can't tell you.

23

24   Trial Tr. Vol. 17 at 2514:17-2515:14.

25   <u>Exhibit 756</u>

26   Defendant complains that the government offered this exhibit to suggest that Manegold's white

27   paper was unlawful and required review by outside counsel.  Wrong.  As the government told the Court

28   UNITED STATES' RESPONSE TO DEFENDANT'S MOTIONS REGARDING EVIDENCE
ADMITTED THROUGH WITNESS MANEGOLD, DOCKETS 733 AND 734
CR 14-0175 TEH

1   in responding to PG&E's multitude of objections to exhibits containing PG&E's own statements: "This

2   is an email from Calvin Lui copying Manegold, forwarding Manegold's May 2010 white paper on the

3   10% allowance, subject 'seam weld threat.'  It is probative of PG&E's cognizance that this 10%

4   allowance was an issue at the time of the NTSB investigation."  Six or seven weeks later, PG&E

5   misleadingly communicates to the NTSB that this 10% allowance was never PG&E's practice.

6           Other Objections

7           PG&E also complains that the government queried PG&E employee-witnesses about certain

8   practices before and after 2010/2011.  But the Court has deemed admissible that PG&E failed to

9   disclose its 10% practice to PHMSA, that hydrotesting occurred after 2011, and that an employee-

10  witness spoke with lawyers about RMI-06 in March 2011.   Trial Tr. Vol. 12 at 1756:13 – 1758:4; Vol.

11  13, 1964:6-14.

12          **2.      The Court Should Deny PG&E's Requested Limiting Instruction**

13          There has been no error, and no basis for the proffered instruction.  Moreover, defendant's

14  proposed instruction, even omitting the first paragraph improperly suggesting government error, is

15  misleading at best.  As this Court has already recognized, the jury may consider evidence after the time

16  of the allegations to the extent it tends to prove facts of consequence during the time of the allegations.

17  For example, the pipeline features list, created after the explosion, proves that there was in fact a large

18  amount of data that was not gathered and integrated into GIS, the utility's primary source for IM

19  decisions.

20          **3.      Defendant May Open the Door**

21          PG&E's 22 lines about the only authorized topic for a motion do not contain detail to allow a

22  substantive response.  PG&E contends that it should be permitted to "present some evidence about its

23  investigations and program reviews following the San Bruno rupture," and that this should not open the

24  door to any additional evidence about the explosion. Dkt. 733 at 8.  It further argues that any evidence it

25  "may need to introduce about the wholesale re-evaluation of integrity management procedures following

26  the San Bruno rupture" should not open the door.  *Id.*

27

28  UNITED STATES' RESPONSE TO DEFENDANT'S MOTIONS REGARDING EVIDENCE
    ADMITTED THROUGH WITNESS MANEGOLD, DOCKETS 733 AND 734
    CR 14-0175 TEH

1    The Court has issued lengthy rulings on the parties' *in limine* motions.  If PG&E goes beyond

2    those rulings, it may indeed open the door.  The Court should decline to give a premature ruling on an

3    incomplete record.  If the government believes that defendant has opened the door, it will timely raise

4    the issue with the Court.

5    **4.    The Court Should Deny PG&E's Untimely Request to Exclude CPUC Data Responses and Strike Related Testimony**

6

7    PG&E made statements in the form of Data Responses to the CPUC, among others.  Many of

8    these statements concede elements of the charged offenses (such as failure to integrate leak data, among

9    many other things).  These are nonhearsay statements of a party opponent.  FRE 801(d)(2).  While they

10   are self-authenticating, given the CPUC's certification that they are publicly filed records, FRE 902(4),

11   they have been admitted through witnesses who recognized them as PG&E Data Responses.  And they

12   are highly relevant to the elements of the charged offenses.  Admission of PG&E's own statements to

13   the CPUC about the elements of the charged offenses does not run afoul of any order of this Court.

14   **C.    The Court Should Deny PG&E's Unauthorized Motion to Strike (Dkt. 734) for Reasons the Government Will Address at Today's Hearing, if the Court Requests**

15

16   The Court has not authorized PG&E to file a motion for reconsideration of the Court's prior

17   evidentiary rulings regarding Manegold's testimony, or to raise untimely objections.  The government

18   does not have adequate time to file a written response to this 18-page motion, in addition to the other

19   unauthorized motion.  If the Court requests a response, the government will give one orally at this

20   afternoon's 4:00 p.m. hearing.

21

22

23

24

25

26

27

28   UNITED STATES' RESPONSE TO DEFENDANT'S MOTIONS REGARDING EVIDENCE
     ADMITTED THROUGH WITNESS MANEGOLD, DOCKETS 733 AND 734
     CR 14-0175 TEH

1

### III.   CONCLUSION

2     For the above reasons, as well as those that the government will present at this afternoon's

3 hearing, should the Court request, the Court should deny PG&E's motions.

4 Dated: July 11, 2016                          Respectfully submitted,

5                                               BRIAN J. STRETCH
                                                United States Attorney
6

7                                               ___/s/_____
                                                Hartley M.K. West
8                                               Assistant United States Attorney

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28 UNITED STATES' RESPONSE TO DEFENDANT'S MOTIONS REGARDING EVIDENCE
ADMITTED THROUGH WITNESS MANEGOLD, DOCKETS 733 AND 734
CR 14-0175 TEH