UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Defendant. | Case No. 14-cr-00175-TEH<br><br>**ORDER DENYING DEFENDANT'S MOTION TO STRIKE ALL TESTIMONY RELATED TO GOVERNMENT'S EXHIBIT 450** |

On July 7, 2016, Defendant Pacific Gas and Electric Company ("PG&E") made an oral motion to strike all testimony related to Government's Exhibit 450. After carefully considering the parties' oral arguments, the Court hereby DENIES the motion.

**BACKGROUND**

On July 7, 2016, the Government introduced Exhibit 450 – an email chain launched by witness William Manegold regarding "segments that were at or above 50% [Specified Minimum Yield Strength ('SMYS')] at [Maximum Operating Pressure ('MOP')]," and an attached spreadsheet detailing this information. Gov't's Ex. 450 at 1. The Government then asked Mr. Manegold a series of questions about the underlying spreadsheet.

At the close of testimony on the same day, PG&E made the following oral motion to strike all testimony related to Exhibit 450:

> So I'd like to make a motion to strike all the testimony that's related to this last spreadsheet in Exhibit 450. It appeared that the thrust of the testimony . . . was that they were listing pipes at percentages higher than SMYS and there is nothing in the indictment that charges us with doing anything greater than SMYS. Apparently, their theory is that there were exceedances over MOP. So I think it's – it's not something that we were prepared to defend ourselves against. I think it's a constructive amendment and so, therefore, I move to strike the testimony.

//

//

Trial Tr., Vol. 16 at 2422:21-2423:10.[1]

**DISCUSSION**

PG&E's argument about constructive amendment is unpersuasive. The Government took steps to tie the challenged SMYS testimony to PG&E's MOP practices, which are directly at issue in this case. For example, the following exchange occurred before the admission of Exhibit 450:

> **Q:** Is there a relationship between the percentage SMYS and the maximum operating pressure for a segment?
> **A:** Um, yes.
> **Q:** If the percentage SMYS is too high, would PG&E need to lower the maximum operating pressure?
> **A:** Yes.

Trial Tr., Vol. 16 at 2353:4-12.

That said, the Government did ask questions in connection with Exhibit 450 that might suggest compliance with SMYS regulations is at issue in this case. For example, the Government asked:

> **Q:** And are you able to tell, assuming that this information in this chart is correct, whether the pipe had been operating over the MOP that would have been required to bring it into SMYS compliance?

*Id.* at 2416:23-2417:1.

However, even if the Court agreed that such questions have completely no place in this prosecution, which it does not, striking all testimony on Exhibit 450 would do more

---

[1] Though PG&E apparently believed it was proper to bring this motion because it "act[ed] immediately" at the close of testimony, Trial Tr., Vol. 16 at 2422:14-15, the proper way to make this objection was to object – on relevance grounds – the moment PG&E believed Mr. Manegold's testimony strayed beyond the indictment. Instead, PG&E made only procedural objections to the testimony: that the questioning on Exhibit 450 "assume[d] facts not in evidence" or was "vague and ambiguous." *Id.* at 2415:22, 2417:2-3, 2418:22. PG&E otherwise sat idly by while the Government proceeded through 34 minutes of testimony to which PG&E apparently had substantive objections. Allowing testimony to proceed only to later move to strike the testimony both wastes time and risks confusing the jury. Moving forward, if PG&E has a substantive objection to a line of questioning, then it should make that objection known at the moment the testimony is being offered.

1  harm than good. Testimony about SMYS has been ubiquitous throughout this trial, so it is
2  highly unlikely the Government's questions about Exhibit 450 left the jury with the
3  impression that the Government was attempting to prove the violation of a heretofore
4  unmentioned Pipeline Safety Act regulation.[2] Asking the jury not to consider this area of
5  testimony would therefore unnecessarily draw attention to it, creating more risk (not less)
6  to PG&E that the jury will focus on SMYS exceedances as evidence of a Pipeline Safety
7  Act violation. Given the lack of benefit to granting PG&E's motion, striking the testimony
8  would also unnecessarily confuse the issues; it would require explaining to the jury (for no
9  discernable purpose) which snippets of highly technical, days old testimony to ignore.

Moreover, the Government assured the Court that it did not elicit testimony on Exhibit 450 for the improper purpose that PG&E suggests. *Id.* at 2423:12-21. Nevertheless, the Government is cautioned to tread carefully when structuring its questions, as to guarantee that they aim only to elicit testimony relevant to violations of the charged regulations.

**CONCLUSION**

For the reasons set forth above, PG&E's motion is DENIED.

**IT IS SO ORDERED.**

Dated: 07/11/16

_____
THELTON E. HENDERSON
United States District Judge

---

[2] The jury is well aware which Pipeline Safety Act regulations PG&E is charged with violating. Given the complexity of this case, the Court took the unusual step of listing and describing the regulations before testimony began. Moreover, both parties have repeatedly read from and referred to the charged regulations throughout testimony, which led to the Court's decision to give the jury a copy of the charged regulations to reference during testimony.

3