UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>　　　　Defendant. | Case No. 14-cr-00175-TEH<br><br>**ORDER GRANTING IN PART DEFENDANT'S MOTION FOR A LIMITING INSTRUCTION AND OTHER RELIEF REGARDING EVIDENCE OF THE SAN BRUNO RUPTURE** |
|---|---|

On July 10, 2016, Defendant Pacific Gas and Electric Company ("PG&E") filed a Motion for a Limiting Instruction and Other Relief Regarding Evidence of the San Bruno Rupture. Dkt. No. 733 ("Mot."). The Government timely opposed the motion, Dkt. No. 735 ("Opp'n"), and the Court held oral argument the following afternoon, Dkt. No. 739. After carefully considering the parties' written and oral arguments, the Court hereby GRANTS IN PART PG&E's motion, for the reasons set forth below

**BACKGROUND**

This Court previously denied PG&E's motion *in limine* to exclude all evidence and argument relating to the September 9, 2010 San Bruno pipeline explosion, but drew careful limitations on how such evidence and argument may be presented to the jury. Dkt. No. 460 ("MIL Order") at 5-12. Since trial began, the Court has issued multiple curative instructions to guarantee the jury understands that it is not tasked with determining what did or did not cause the San Bruno explosion, and that it will hear no evidence about the cause of that explosion. *See, e.g.*, Trial Tr., Vol. 10 at 1343:12-1344:6.

On July 6-8 2016, the Government questioned William Manegold on direct examination regarding his work as a former employee of PG&E. At the close of testimony on Friday, July 8, 2016, PG&E expressed the following concerns: that "the explanation for why people are doing program reviews" – which Mr. Manegold had discussed during his

1  testimony – "is because they were looking at the program [after the San Bruno
2  explosion]"; that the jury would need this context to understand those "program reviews";
3  but that if PG&E "ask[s] a question [related to the San Bruno explosion], the Government
4  is going to say: You've opened the door" to more San Bruno evidence.  Trial Tr., Vol. 17
5  at 2556:20-2557:2.  Counsel for PG&E therefore sought leave to "file a short brief for [the
6  Court] to read . . . to [establish clarity] on what [he] can ask and what [he] can't ask related
7  to San Bruno."  *Id.* at 2556:17-19.  The Court permitted the parties to brief this issue, with
8  a brief due from PG&E by "end of the day" Sunday, July 10, 2016, a reply due from the
9  Government by noon on July 11, 2016, and a hearing to be held at 4:00 P.M. on July 11,
10 2016.

11 The *motion* PG&E actually filed at 11:12 P.M. on Sunday, July 10, 2016 differed in
12 many respects from the *brief* PG&E requested leave to file.  While PG&E had previously
13 sought only clarity on what cross-examination would be permitted without "opening the
14 door" to further San Bruno evidence, PG&E now seeks three remedies: (1) that "the Court
15 should give the jury a cautionary instruction, reaffirming its earlier instruction"; (2) that
16 "the Court should allow defense evidence about activity after San Bruno without concern
17 of inviting more Government evidence beyond that permitted by the *in limine* order"; and
18 (3) that "the Court should exclude the [California Public Utilities Commission ('CPUC')]
19 data responses and strike all related testimony."  Mot. at 6-7.

20

21 **DISCUSSION**
22 Though the Court agrees with the Government that "[o]nly twenty-two lines of
23 [PG&E's Motion] addresses the topic on which the Court authorized briefing," Opp'n at 1,
24 the Court finds good cause to address PG&E's three requests, and does so below.
25

26 **I.   The Court GRANTS PG&E's motion for a limiting instruction.**
27 Though not the topic of PG&E's initially requested briefing, the Court agrees with
28 PG&E that "[i]t is time to be honest with the jury" about the San Bruno explosion, because

"without context, the jury is being improperly led to believe that [CPUC and National Transportation Board ('NTSB')] scrutiny indicates guilt." Mot. at 2. The Court has long been concerned that evidence of CPUC's or NTSB's conclusions about either the San Bruno explosion or PG&E's regulatory compliance "would unfairly encourage the jury to abdicate its critical role as fact-finder," in part because "there is a substantial risk that the jury may assume that if the CPUC, an authoritative government agency, imposed remedial measures on PG&E, then PG&E is deserving of punishment." MIL Order at 17 (internal quotation marks and alterations omitted). This is why the Court carefully constructed its *in limine* Order to exclude CPUC's and NTSB's conclusions about the San Bruno explosion and PG&E's regulatory compliance. *Id*. at 14-17.

But the Court's rationale for excluding CPUC and NTSB *conclusions* does not apply to the *data responses* PG&E provided to CPUC and NTSB in the process, as the responses themselves indicate nothing about either agencies' resulting conclusions or remedial measures. Meanwhile, because many such responses concern the conduct or policy at issue in Count 1 and the regulatory compliance at issue in Counts 2-13, rendering them independently admissible evidence on those counts,[1] it was inevitable that the existence of the CPUC and NTSB investigations would surface. And it is unsurprising that PG&E now seeks to provide context for the responses it provided in those investigations. The Court is therefore pleased that PG&E finally agrees that the best course of action in this criminal trial is to mention the San Bruno explosion to the jury, but to mention it carefully.[2]

---

[1]  *See infra* Section III (holding that PG&E's own statements to the CPUC and NTSB are not excluded, if otherwise relevant, merely because those agencies' conclusions were excluded from this criminal prosecution).

[2]  The Court also takes this opportunity to note its confusion that PG&E "continue[s] to contend that all evidence and argument about the San Bruno rupture should be excluded." Mot. at 7. By the present motion, PG&E seems to concede that it would be improper not to provide the jury with the context (i.e., the explosion) in which to understand PG&E's Integrity Management practices and program reviews post-explosion (a timeframe overlapping with or near enough to the charged conduct to be admissible). In one breath PG&E reiterates that any and all "San Bruno" evidence should be excluded, and in the next it requests that certain, limited evidence be admitted to place post-explosion conduct –

3

1    The Court further agrees with PG&E that "the best way to solve this [context]
2  problem is through a limiting jury instruction, rather than hav[ing] [counsel] flail around
3  trying to figure out what evidence to put on and what not to . . . ."  Trial Tr., Vol. 18 at
4  2564:25-2565:2.  Accordingly, the Court hereby GRANTS PG&E's request for a limiting
5  jury instruction.  The Court will read the jury instruction proposed by PG&E, *see* Mot. at
6  6, with minor modifications, before testimony begins this morning.

**II.    The Court DENIES WITHOUT PREJUDICE PG&E's motion to permit context evidence without concern of inviting more Government evidence.**

10   PG&E's second request – that PG&E "be free to introduce evidence of the massive
11 investigations after the explosion as necessary—without risk of the government arguing or
12 implying that any allegation in this case led to the rupture, or attempting to confuse the
13 record further by seeking to admit still more evidence of any regulatory investigations,"
14 Mot. at 2 – is the only request even arguably contemplated by the originally permitted
15 briefing.  And yet, PG&E's request is different in kind than what the Court anticipated
16 based on PG&E's request for briefing.
17   Though PG&E sought leave to "file a short brief for [the Court] to read . . . to
18 [establish clarity] on what [PG&E] can ask and what [PG&E] can't ask related to San
19 Bruno," Trial Tr., Vol. 17 at 2556:17-19, PG&E now seeks an order that it be permitted to
20 offer San Bruno evidence without any clarity from the Court on the boundaries of such
21 evidence and with a preemptive holding that the Government not be permitted to respond.
22   The Court agrees with the Government that it would be improper "to give [such] a

---

which, as just mentioned, is likely to be independently relevant and admissible in a prosecution based on similar at or near-in-time conduct – into context.  Moreover, PG&E requested and conducted extensive juror voir dire *about the San Bruno explosion*, to protect against juror bias, so it is hard to imagine how PG&E ever believed it would be possible to try this case without any reference to the San Bruno explosion.  Indeed, PG&E moved for a jury questionnaire that was replete with references to San Bruno and explosions *months before* the Court issued its Order denying PG&E's motion *in limine* to exclude such evidence.  *See* Dkt. Nos. 297, 460.  That PG&E continues to deny these realities is at best puzzling and at worst self-serving.

4

premature ruling on an incomplete record." Opp'n at 7. The Court further agrees that a more proper course is for PG&E to offer the San Bruno evidence it believes is necessary for context – within the boundaries set by this Order and the Court's prior *in limine* rulings – and for the Government to raise an "opening the door" concern with the Court if and only if such concern ripens. *Id.* Accordingly, the Court hereby DENIES WITHOUT PREJUDICE PG&E's motion to preemptively prevent the Government from providing any rebuttal evidence that may or may not be warranted by PG&E's as yet unknown context testimony regarding the San Bruno explosion.

**III.    The Court DENIES PG&E's motion to strike all admitted CPUC data responses and exclude any further CPUC data responses.**

Finally, PG&E's third request – "that . . . the Court strike all CPUC data responses that are already in evidence and not permit any more to be introduced," Mot. at 2 – is completely lacking in merit.

PG&E supports this request by parroting the Court's concern that "the CPUC's conclusions . . . would unfairly encourage the jury to abdicate its critical role as factfinder," and that "there is a substantial risk that the jury may assume that if the CPUC, an authoritative government agency, imposed remedial measures on PG&E, then PG&E is deserving of punishment." Mot. at 7 (quoting MIL Order at 17). As discussed above, however, these concerns motivated the Court's decision to exclude evidence of CPUC's and NTSB's conclusions following their post-San Bruno investigations. But, as discussed above, the Court's reasoning in excluding such *conclusions* does not apply to the *data responses* PG&E provided to CPUC and NTSB.

PG&E offers only one other concern with respect to the CPUC data responses: that "the government is making wholesale use of [PG&E] responses in those [CPUC] proceedings, and suggesting that the responses – and the questions themselves – are evidence of regulatory violations." Mot. at 7-8. But this concern is more than adequately addressed by the limiting instruction the Court will provide this morning on such

United States District Court
Northern District of California

responses, which will inform the jury that it may not conclude from the mere fact of the CPUC inquiry that PG&E violated any of the charged regulations, and that it may not speculate about the results of any such inquiry.

Accordingly, PG&E's motion to strike all admitted CPUC data responses and exclude any further CPUC data responses is hereby DENIED.

## CONCLUSION

For the reasons set forth above, PG&E's motion is GRANTED IN PART, as follows:

1. The Court GRANTS PG&E's motion for a limiting instruction;
2. The Court DENIES WITHOUT PREJUDICE PG&E's motion to permit context evidence without concern of inviting more Government evidence; and
3. The Court DENIES PG&E's motion to strike all admitted CPUC data responses and exclude any further CPUC data responses.

**IT IS SO ORDERED.**

Dated: 07/12/16

THELTON E. HENDERSON
United States District Judge