UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Defendant. | Case No. 14-cr-00175-TEH<br><br>**ORDER REGARDING DEFENDANT'S OBJECTIONS TO HOGENSON EXHIBITS** |

Yesterday morning Defendant Pacific Gas and Electric Company ("PG&E") lodged objections to eight of the exhibits the Government intends to introduce through witness Todd Hogenson. The Court now OVERRULES IN PART those objections.

**BACKGROUND**

PG&E makes only two objections to the eight contested exhibits. First, PG&E moves to exclude "Government's Exhibits 96, 150, 459, 462, 463, 478, and 483 [on the basis] that they involve financial matters not tied to any charged conduct" and "under Rules 401 and 403." Trial Tr., Vol. 19 at 2587:23-2588:1. Second, PG&E moves to exclude "Government's proposed Exhibit 594 [on the basis that,] [a]s with that exhibit weeks ago with Mr. Warner, we believe this relates to distribution." *Id.* at 2588:4-6.

The Court provides below some background on these two objections, and then with this background in mind, proceeds to a discussion of the eight contested exhibits.

**I.   Financial matters not tied to any charged conduct.**

PG&E previously made a very similar objection to exhibits offered through Government witness William Manegold. That objection, titled "Financial Evidence Not Tied to the Government's Allegations," stated as follows:

//

> Several exhibits concern financial evidence not specifically tied to the government's allegations that PG&E violated the charged regulations. These should be excluded under the Court's Motion *in Limine* Order concerning such evidence. As this Court held, "proof of greed, without more" is unduly prejudicial. The Court gave, as an example of this, evidence of PG&E's reported income for the second quarter of 2010, which was a "presentation of wealth unnecessary to any argument that PG&E's profit motives drove regulatory violations, and it is therefore inadmissible."
>
> [But t]he Court found the government alleged "something more" – that is, some connection to the charged crimes – because it said it would show that "PG&E knew that updating all of its records and hydrotesting its old pipelines in highly populated areas would have been more expensive" and that PG&E therefore "chose to spend money elsewhere." As the Court noted, at the time of our motion the government had not identified how it would show this. Through Mr. Manegold, the government will seek to offer financial evidence unrelated to PG&E decisions about hydrotesting or updating its records. . . . Other documents concern gas transmission or integrity management budgets, but say nothing about hydrotesting or recordkeeping decisions.

Dkt. No. 717 ("Objs. to Manegold Exs.") at 1-2 (citations omitted).

The "Motion *in Limine* Order" PG&E refers to above is this Court's Order on PG&E's Motion *in Limine* Number Four, which sought to exclude all financial evidence and argument unrelated to the charged conduct. In that Order, this Court held that "[p]roof of [greed], without more, is likely to amount to a great deal of unfair prejudice with little probative value," Dkt. No. 460 ("MIL Order") at 18 (quoting *United States v. Mitchell*, 172 F.3d 1104, 1109 (9th Cir. 1999)), and that "[t]he Ninth Circuit therefore requires that 'something more' accompany evidence of poverty or greed for such evidence to be admissible," *id.* (quoting *United States v. Bensimon*, 172 F.3d 1121, 1129 (9th Cir. 1999)). But the Court went on to hold that financial evidence would be admissible in this criminal prosecution to the extent the Government delivers on its promise to provide that "something more":

> The Government alleges that PG&E's profit motives drove "cost-cutting" decisions that actually meant "safety-cutting" decisions, including that "PG&E knew that updating all of its records and hydrotesting its old pipelines in highly populated areas would have been expensive [and] . . . chose to spend

2

> money elsewhere." Gov't Opp'n at 11. If true, such evidence presents more than "[a] mere interest, unconnected with inclination," *Mitchell*, 172 F.3d at 1109; it suggests that PG&E's inclination to make money actually informed its decision-making in a way that informs its mental state[] on the charged regulatory crimes.

*Id.*

PG&E's continued objections to "financial matters" suggests that it continues to misread this *in limine* ruling, so the Court once again finds occasion to clarify it. *See* Dkt. No. 724 ("First Order on Manegold Objs.") at 3-4 (clarifying the same ruling). By objecting to "[o]ther documents [that] concern [only] gas transmission or integrity management budgets, but say nothing about hydrotesting or recordkeeping decisions," PG&E seems to suggest that only a "smoking gun" – perhaps an email about executives pocketing dollars earmarked for hydrotesting or recordkeeping decisions – would be admissible "financial evidence" in this prosecution. Not so. PG&E wrongfully ignores the possibility that documents concerning "gas transmission or integrity management budgets" would meet the low bar for relevance[1] in a criminal prosecution about those very organizations and programs. When such documents are relevant, the general presumption is that they are admissible unless otherwise prohibited. Fed. R. Evid. 402. And PG&E likewise seems to ignore the meaningful standard set forth by the Rule – Federal Rule of Evidence ("Rule") 403 – that it offers as a bar to the seven exhibits containing "financial matters." Rule 403 allows the court to "exclude relevant evidence if its probative value is *substantially outweighed* by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403 (emphasis added).[2]

---

[1] Evidence is relevant if it "has any tendency to make a fact more or less probable" and "the fact is of consequence in determining the action." Fed. R. Evid. 401.

[2] "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). That is, unfairly prejudicial evidence is evidence having "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Id.* (citation and internal quotation marks omitted).

3

## II. Distribution Evidence

PG&E's allusion to "that exhibit weeks ago with Mr. Warner" is a reference to this Court's prior order excluding (without prejudice) Government's Exhibit 276. That exhibit is an email containing employee discussion about PG&E's regulatory compliance "culture." PG&E argued at the time that the email is inadmissible because it is "an email regarding the distribution system, which is not at issue in this case," Trial Tr., Vol. 5 at 689:17-18, and that such "evidence is a classic example of an 'other act' that is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character" under Rule 404(b)(1), Dkt. No. 688 at 4.

On the morning of June 24, 2016, the Court questioned Mr. Warner outside the presence of the jury about whether the "employees' comments about culture change [in Exhibit 276] concerned PG&E's compliance with the transmission regulations, the distribution regulations, or both," to which Mr. Warner responded that his "recollection was that it was related to the distribution regulations." Trial Tr., Vol. 9 at 1191:3-8. On the basis of this response, the Court excluded Exhibit 276 "because it fails the Ninth Circuit's test for the admission of Rule 404(b) evidence." *Id.* at 1249:19-20.

## GOVERNMENT'S EXHIBIT 96

This exhibit is an email chain and an attached draft "proposed job story," which discuss PG&E's 2004 request for $5.4 million in funding to conduct External Corrosion Direct Assessment ("ECDA") testing.

This exhibit does not contain the sort of financial evidence prohibited by the Court's order on PG&E's Motion *in Limine* Number Four. Though the exhibit contains financial evidence, the exhibit offers "something more" than just evidence of greed. For example, the job story considers the various "alternatives" PG&E may take to achieve compliance with "the new Pipeline Safety Act regulations," i.e. the Integrity Management regulations that lie at the heart of this case, and lists the associated cost of each alternative. This information is relevant to the Government's theory that financial considerations drove

4

1    PG&E's compliance (or noncompliance) with some of those regulations, and is therefore
2    probative of the required mental state for some of the regulatory counts.
3        Meanwhile, this exhibit is not excludable under Rule 403 because its probative
4    value is not substantially outweighed by a danger of unfair prejudice, confusing the issues,
5    misleading the jury, undue delay, wasting time, or needlessly presenting cumulative
6    evidence.  Indeed, it is difficult to imagine how PG&E could argue that the chief financial
7    figure referenced in this exhibit – the request for $5.4 million in ECDA funding – is
8    somehow unfairly prejudicial financial evidence or improper evidence of "greed"; this
9    figure is on par with figures discussed *by PG&E counsel* in the context of money spent on
10   other assessment technologies.  *See, e.g.*, Trial Tr., Vol. 10 at 1373:13-16.
11       The Court therefore OVERRULES PG&E's objection that this exhibit involves
12   irrelevant or unduly prejudicial financial evidence.

**GOVERNMENT'S EXHIBIT 150**

15       This exhibit is an email chain in which several California Gas Transmission
16   ("CGT") employees discuss a recently released report on 2004's "year-end expense and
17   capital budget figures vs. actuals for [Gas System Maintenance and Technical Services
18   ('GSM&TS')]."
19       This exhibit does not contain the sort of financial evidence prohibited by the
20   Court's order on PG&E's Motion *in Limine* Number Four.  Though the exhibit contains
21   financial evidence, the exhibit offers "something more" than just evidence of greed.  For
22   example, the exhibit contains the following comment from one CGT employee: "This
23   [report] makes GSM&TS and Pipeline look better and makes our [Performance Incentive
24   Plan ('PIP')] checks larger."  This Court has already held that evidence pertaining to
25   PG&E's PIP program "is probative of PG&E's mental state on the charged crimes," and
26   the Government has already elicited relevant testimony on this program as a result.  *See*
27   First Order on Manegold Objs. at 4-5; Trial Tr., Vol. 16 at 2298:9-2301:9.  The Court
28   holds again that information like that contained in Exhibit 150 is relevant to the

United States District Court
Northern District of California

1   Government's theory that "PG&E's profit motives drove its compliance (or
2   noncompliance) with the charged regulations," MIL Order at 19, and is therefore probative
3   of the required mental state for the regulatory counts.
4       The only conceivable concern about "unfairly prejudicial" evidence of "greed" is
5   that page 2 of the exhibit contains several substantial dollar figures, but the parties have
6   neither briefed nor argued this issue.  In the interest of time (as Mr. Hogenson is the next
7   witness slated to testify), IT IS HEREBY ORDERED that the parties shall meet and confer
8   on whether PG&E seeks and the Government is willing to again offer "to redact the dollar
9   amounts [in this exhibit] to protect against concerns of untethered financial evidence."
10  Dkt. No. 718 at 4.  The parties shall only update the Court on the issue of redaction if they
11  cannot reach agreement on a specific dollar figure, and require a ruling on whether that
12  specific figure must be redacted under Rule 403.  This ORDER applies to the evidentiary
13  rulings below, where indicated.
14      Potential redactions aside, the Court OVERRULES PG&E's objection that this
15  exhibit involves irrelevant or unduly prejudicial financial evidence.

**GOVERNMENT'S EXHIBIT 459**

This exhibit is an email exchange regarding a request that "each organization complete a walk identifying expense reductions in the amount of 5% of remaining 2009 spend," and an attached spreadsheet detailing the "walk" for the Gas Transmission organization.

This exhibit does not contain the sort of financial evidence prohibited by the Court's order on PG&E's Motion *in Limine* Number Four.  Though the exhibit contains financial evidence, the exhibit offers "something more" than just evidence of greed.  For example, a "Pipeline Integrity Management (MWC II)" line of the attached spreadsheet contains the following statement, under the heading "Risks of Not Funding":

> Deferral would result in significant risk of being in non-compliance with the DOT pipeline inspection requirements and would increase the expense requirements in 2010 to achieve

6

> the required compliance by 2012. Additionally, the cost of this work would increase from $600k to about $725k due to the cost of demobilizing and remobilizing. GT&D has already deferred $1.8 million of work into 2010 from 2009, which is believed to be the maximum amount feasible to avoid significant compliance risk[.]

This statement is relevant to the Government's theory that financial considerations drove PG&E's compliance (or noncompliance) with the charged regulations, and is therefore probative of the required mental state for the regulatory counts. Rather than preemptively address any objection that may (or may not) exist to the various dollar figures referenced in this exhibit, the Court ORDERS the parties to meet and confer on this issue (as discussed above).

Potential redactions aside, the Court OVERRULES PG&E's objection that this exhibit involves irrelevant or unduly prejudicial financial evidence.

**GOVERNMENT'S EXHIBIT 462**

This exhibit is an email concerning the notes taken at a "2010 GT&S Expense Budget Planning Meeting" and an attached spreadsheet summarizing those notes.

This exhibit does not contain the sort of financial evidence prohibited by the Court's order on PG&E's Motion *in Limine* Number Four. Though the exhibit contains financial evidence, the exhibit offers "something more" than just evidence of greed. For example, the email includes an "action item" that states: "Bob Fassett and Sara, I realize you we [sic] unable to attend this weeks [sic] meeting. Please come to the 10/8 meeting prepared with ideas to reduce the 2010 Pipeline Integrity Budget below the request of $19.737 million." This request is relevant to the Government's theory that financial considerations drove PG&E's compliance (or noncompliance) with the charged regulations, and is therefore probative of the required mental state for the regulatory counts. Rather than preemptively address any objection that may (or may not) exist to the various dollar figures referenced in this exhibit, the Court ORDERS the parties to meet and confer on this issue (as discussed above).

Potential redactions aside, the Court OVERRULES PG&E's objection that this exhibit involves irrelevant or unduly prejudicial financial evidence.

**GOVERNMENT'S EXHIBIT 463**

This exhibit is an email regarding ways to further reduce the Gas Transmission group's 2009 expenses.

This exhibit does not contain the sort of financial evidence prohibited by the Court's order on PG&E's Motion *in Limine* Number Four.  Though the exhibit contains financial evidence, the exhibit offers "something more" than just evidence of greed.  For example, the email includes a list of "[o]pportunities for further reduction in 09 planned spend" and seeks "input from anyone on additional reductions or deferrals to reduce 2009 spend."  Such statements are relevant to the Government's theory that financial considerations drove PG&E's compliance (or noncompliance) with the charged regulations, and are therefore probative of the required mental state for the regulatory counts.  Rather than preemptively address any objection that may (or may not) exist to the various dollar figures referenced in this exhibit, the Court ORDERS the parties to meet and confer on this issue (as discussed above).

Potential redactions aside, the Court OVERRULES PG&E's objection that this exhibit involves irrelevant or unduly prejudicial financial evidence.

**GOVERNMENT'S EXHIBIT 478**

This exhibit is an email chain regarding PG&E's "[Integrity Management] 2010 Expense Budget."

This exhibit does not contain the sort of financial evidence prohibited by the Court's order on PG&E's Motion *in Limine* Number Four.  Though the exhibit contains financial evidence, the exhibit offers "something more" than just evidence of greed.  For example, like Exhibit 463, this exhibit discusses "program deferrals" and other reductions as a means of lowering PG&E's Integrity Management expenses, including reductions

1   "due [to] moving some inspections from [In-Line Inspection ('ILI')] to ECDA."  This
2   information is relevant to the Government's theory that financial considerations drove
3   PG&E's compliance (or noncompliance) with the charged regulations, and is therefore
4   probative of the required mental state for the regulatory counts.  Rather than preemptively
5   address any objection that may (or may not) exist to the various dollar figures referenced
6   in this exhibit, the Court ORDERS the parties to meet and confer on this issue (as
7   discussed above).

8   Potential redactions aside, the Court OVERRULES PG&E's objection that this
9   exhibit involves irrelevant or unduly prejudicial financial evidence.

**GOVERNMENT'S EXHIBIT 483**

This exhibit is a PG&E presentation titled, "Gas Transmission Expense Program Review," and dated December 10, 2009.

This exhibit does not contain the sort of financial evidence prohibited by the Court's order on PG&E's Motion *in Limine* Number Four.  Though the exhibit contains financial evidence, the exhibit offers "something more" than just evidence of greed.  For example, under the heading "Integrity Management – Increase in Mileage Goals," one slide states: "Have changed program inspection methods to reduce spend."  Such information is relevant to the Government's theory that financial considerations drove PG&E's compliance (or noncompliance) with the charged regulations, and is therefore probative of the required mental state for the regulatory counts.  Rather than preemptively address any objection that may (or may not) exist to the various dollar figures referenced in this exhibit, the Court ORDERS the parties to meet and confer on this issue (as discussed above).

Potential redactions aside, the Court OVERRULES PG&E's objection that this exhibit involves irrelevant or unduly prejudicial financial evidence.

//
//

**GOVERNMENT'S EXHIBIT 594**

This exhibit is an email chain regarding "[l]eak repairs with no pressure test documentation."

PG&E's only objection to this exhibit is that the email represents unlawful "other act" evidence under Rule 404(b) because the "compliance issue" discussed in the email concerns compliance with federal *distribution* regulations, rather than the federal *transmission* regulations at issue in this prosecution. Even if PG&E is correct that the email chain concerns only distribution, it is not impossible that a distribution compliance issue would be admissible under Rule 404(b) in this prosecution about the transmission regulations. Indeed, much of what the Court previously said in excluding Exhibit 276 applies with equal force here:

> [E]vidence that PG&E employees knowingly prioritized budget over regulatory compliance on the distribution side is material to whether PG&E knowingly prioritized budget over compliance on the transmission side. The conduct is clearly not too remote in time, as Mr. Warner's email was sent during the . . . relevant limitation periods. And I think there is sufficient evidence that it was PG&E conduct at issue in Exhibit 26 (sic). However, I simply can't find that PG&E's compliance with distribution regulations is sufficiently similar to PG&E's compliance with transmission regulations. This ruling is made without prejudice to later admission of the exhibit, if the Government can somehow demonstrate that the distribution regulations underlying the top email of Exhibit 276 are sufficiently similar to the regulations charged in this case.

Trial Tr., Vol. 9 at 1249:22-1250:12; *see also United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012-13 (9th Cir. 1995) (outlining the Ninth Circuit's four-part test to determine whether "other act" evidence is nevertheless admissible under Rule 404(b)).

As with Exhibit 276, then, the Court will question Mr. Hogenson outside the presence of the jury to test PG&E's assertion that the "compliance" discussed in Exhibit 594 was limited to compliance with distribution regulations. If PG&E is correct, then the exhibit will be inadmissible under Rule 404(b) unless "the Government can somehow demonstrate that the distribution regulations underlying [the exhibit] are sufficiently similar to the regulations charged in this case." Trial Tr., Vol. 9 at 1250:9-12.

**CONCLUSION**

PG&E's first eight objections are OVERRULED IN PART, as follows:

1. PG&E's objection to Government's Exhibit 96 is overruled;
2. PG&E's objection to Government's Exhibit 150 is overruled (but the parties are ordered to meet and confer on any redactions);
3. PG&E's objection to Government's Exhibit 459 is overruled (but the parties are ordered to meet and confer on any redactions);
4. PG&E's objection to Government's Exhibit 462 is overruled (but the parties are ordered to meet and confer on any redactions);
5. PG&E's objection to Government's Exhibit 463 is overruled (but the parties are ordered to meet and confer on any redactions);
6. PG&E's objection to Government's Exhibit 478 is overruled (but the parties are ordered to meet and confer on any redactions);
7. PG&E's objection to Government's Exhibit 483 is overruled (but the parties are ordered to meet and confer on any redactions); and
8. The Court withholds ruling on Government's Exhibit 594.

**IT IS SO ORDERED.**

Dated: 07/13/16

_____
THELTON E. HENDERSON
United States District Judge