1     UNITED STATES DISTRICT COURT

2     NORTHERN DISTRICT OF CALIFORNIA

3

4     UNITED STATES OF AMERICA,                Case No. 14-cr-00175-TEH
                Plaintiff,
5                                              **ORDER DENYING DEFENDANT'S
                                               MOTION TO STRIKE CERTAIN
6          v.                                  GOVERNMENT EXHIBITS AND
                                               RELATED TESTIMONY**
7     PACIFIC GAS AND ELECTRIC
      COMPANY,
8                Defendant.

9

10          On July 11, 2016, Defendant Pacific Gas and Electric Company ("PG&E") filed a

11   Motion to Strike Certain Government Exhibits and Related Testimony.  Dkt. No. 734

12   ("Mot.").  The motion was briefed on an expedited schedule.  Dkt. No. 742 ("Opp'n");

13   Dkt. No. 747 ("Reply").  After carefully considering the parties' written arguments, the

14   Court now DENIES PG&E's motion.

15

16   **BACKGROUND**

17          On July 5, 2016, PG&E lodged objections to 43 of the 96 exhibits the Government

18   intended to introduce through witness William Manegold.  Dkt. No. 717 ("Manegold

19   Objs.").  The following day, the Court issued its First Order on the Manegold objections,

20   in which it addressed PG&E's objections "to the admission through Mr. Manegold of

21   PG&E documents and emails that he appears neither to have authored nor received" and to

22   "PG&E data request responses produced to the government by third parties like the

23   [California Public Utilities Commission ('CPUC')] if he did not author or send them to the

24   CPUC."  *Id.* at 1; Dkt. No. 724 ("First Order").  In that First Order, the Court issued an

25   advance ruling that "Mr. Manegold *may sometimes*," i.e. when he possessed the necessary

26   personal knowledge, "lay the foundation for a hearsay exception even if he did not author

27   or receive the document requiring the exception."  First Order at 2 (emphasis in original).

28   The Court then issued piecemeal rulings on PG&E's 43 exhibit-specific objections to the

United States District Court
Northern District of California

Manegold exhibits.  *See id.* at 4-9; Dkt. No. 725 ("Second Order"); Dkt. No. 728 ("Third Order").

On July 6-8 and 12, 2016, the Government questioned Mr. Manegold on direct examination regarding his work as a former employee of PG&E, admitting some of the challenged exhibits (pursuant to the Court's First, Second, and Third Orders) in the process.  PG&E now moves under Federal Rule of Evidence ("Rule") 103 to strike some of these exhibits and Mr. Manegold's related testimony.  Specifically, PG&E moves the Court to strike Government Exhibits 192, 283, 331, 351, 647, 651, 714, and 717[1] as well as all related testimony.  Mot. at 13.[2]

Exhibit 647 is a PG&E email that PG&E moves to strike on the basis that: (i) the Government failed to lay a Rule 801(d)(2) foundation for the email; and (ii) the exhibit is unfairly prejudicial.  *Id.* at 9-11.  Exhibits 192, 351, 651, 714, and 717 are PG&E emails that PG&E moves to strike on the basis that Mr. Manegold, who is not on the emails: (i) lacked the personal knowledge to lay a Rule 801(d)(2) foundation for them; and (ii) lacked the personal knowledge to testify as to their contents under Rule 602.  *Id.* at 1-8.  Exhibits 283 and 331 are PG&E documents (the former a financial document and the latter a slideshow presentation) that PG&E moves to strike on the basis that Mr. Manegold could not possibly have laid a Rule 801(d)(2) foundation for such "author-less" documents.  *Id.* at 8-9.  PG&E also objects to Exhibits 331 and 351 on the basis that they are unfairly prejudicial financial evidence.  *Id.* at 11-13.  PG&E does not contest the authenticity of any of these exhibits, as it has stipulated to the authenticity of all documents that bear PG&E Bates numbers.  *See* Dkt. No. 719; Trial Tr., Vol. 15 at 2136:5-2137:5.

---

[1]    PG&E refers to Exhibit 715 several times throughout its motion, *see* Mot. at 1, 13, but its actual argument pertains to Exhibit 717, *see id.* at 6-7.

[2]    PG&E also filed written objections to four additional Manegold exhibits on July 12, 2016.  Dkt. No. 746.  The Court previously OVERRULED PG&E's objections to all four exhibits.  *See* Trial Tr., Vol. 19 at 2591:15-23 (overruling objections to Government's Exhibit 725); *id.* at 2598:13-15 (same for Government's Exhibit 730); *id.* at 2602:4-11 (same for Government's Exhibit 767); *id.* at 2611:20-22 (same for Government's Exhibit 809).  The rulings contained herein should serve to buttress those prior rulings as well.

United States District Court
Northern District of California

**DISCUSSION**

The Court agrees with the Government that PG&E's motion inappropriately "reconstitutes objections that the Court overruled and raises new ones in hindsight." Opp'n at 1. Moreover, PG&E's motion runs afoul of the Court's prior rulings on the proper timing and form for such arguments. The Court's pretrial Order Setting Trial Rules and Procedures requires that PG&E raise any objections to the Government's case-in-chief exhibits the day prior to their proposed admission, so that the Court can rule on the objection prior to trial the following morning. Dkt. No. 434 at 1. And during trial, the Court has repeatedly reiterated this process, delineated the proper form for any objections, and stated that it will not revisit evidentiary rulings.[3]

Adherence to these prior rulings is necessary to ensure that the Court has a full record of objections before deciding whether to admit or exclude disputed exhibits, and to ensure that the Court need not revisit any evidentiary rulings and delay trial in the process.[4] This is especially important given that this trial – which was thrice delayed as a direct result of gamesmanship and poor preparedness on the part of both parties – is proceeding at an alarmingly slow pace. Indeed, at the time of the Court's rulings on the Manegold objections, the trial was entering its fifth week and Mr. Manegold was only its seventh

---

[3]  *See, e.g.*, Trial Tr., Vol. 6 at 704:15-19 ("[M]oving forward, I expect counsel to make their objections to questions or testimony in court, not after a review of the transcript of the day's proceeding in the evening. And I will not entertain such objections hereforth."); Trial Tr. Vol. 9 at 1189:3-18 ("I simply cannot permit the parties to take a second bite of evidentiary objections because they do not like the outcome of my rulings. . . . [M]oving forward you're on notice that I expect all evidentiary objections to be made at the time I hear objections to that particular exhibit."); Trial Tr., Vol. 10 at 1339:19-23 ("I've previously ruled . . . that I will not entertain objections to questions or testimony made after we have a review of the daily trial transcript, and I've every intention of holding the parties to that ruling and enforcing it."); Trial Tr. Vol. 16 at 2423:24-25 ("I will rule on this. We won't pour over the transcript tonight and come up with new. This is it.").

[4]  Indeed, the present motion demonstrates the problem with failing to fully brief a matter when the opportunity is offered; the motion cites case law that PG&E apparently believes is relevant to the admissibility of the challenged Manegold exhibits, but which PG&E inexplicably failed to provide when it briefed its objections to the Manegold exhibits. Unless PG&E's aim is to sew error into the record, it is hard to imagine why it withheld this potentially relevant case law while the Court was deciding whether to admit these exhibits in the first place. Fortunately, as discussed below, none of the new material cited by PG&E warrants any changes to the Court's prior rulings.

1  witness (of the 44 listed on the Government's witness list).  Dkt. No. 490.

2      And yet, PG&E appears to have largely ignored the Court's prior rulings

3  (evidentiary and procedural alike) in bringing the present motion.  As discussed in more

4  detail below, PG&E's present motion came three or four days after the admission of the

5  challenged exhibits, raised objections never previously made to the Court, and re-raised

6  objections previously made to and rejected by the Court.  Nevertheless, for the sake of a

7  clean record, the Court addresses PG&E's arguments below.

8

9  **I.   The Court DENIES PG&E's motion to strike Exhibit 647 and Mr. Manegold's**

10     **related testimony.**

11     PG&E moves to strike Exhibit 647, an email exchange between Mr. Manegold and

12  another PG&E employee, on two grounds: (i) the Government failed to lay a Rule

13  801(d)(2) foundation for the email; and (ii) the exhibit is unfairly prejudicial under Rule

14  403.  Mot. at 9-11.[5]

15     The former argument, under Rule 801(d)(2), is one PG&E makes for the first time

16  in the present motion.  Indeed, unlike sixteen of the other Manegold exhibits to which

17  PG&E submitted a written objection, PG&E's objection to Exhibit 647 did not include:

18  "Lack of foundation: Manegold not on [email/document/spreadsheet/letter/data response]."

19  Manegold Objs. at 3-8.  Rather, PG&E's written objection to Exhibit 647 listed only the

20  following: "MIL Order at 19 (Financial evidence that is not specifically tied to the charged

21  regulations)"; "FRE 403 probative value is substantially outweighed by a danger of unfair

22  prejudice"; "FRE 401"; and "No connection to knowing and willful act."  *Id.* at 5-6.[6]  And

23  PG&E made absolutely zero oral objection to the admission of Exhibit 647 during trial.[7]

24  _____

25  [5]   The latter argument, about unfair prejudice, is one PG&E previously made and the
    Court previously rejected.  *See* Second Order at 7-8.

26  [6]   Perhaps this is because, unlike those sixteen exhibits, Mr. Manegold was either the
    sender or recipient of both emails underlying Exhibit 647.

27  [7]   PG&E's oral request for a "continuing objection to [the Manegold exhibits] on the
    grounds already stated" did not, for obvious reasons, continue any grounds not already
28  stated.  Trial Tr., Vol. 16 at 2297:16-18.  So though PG&E argues, correctly, that its

*United States District Court*
*Northern District of California*

1    Instead, PG&E waited until three days after Exhibit 647 was admitted to make any

2    objection that the Government had failed to lay a proper foundation for the exhibit under

3    Rule 801(d)(2).  Mot. at 9-11.

4         Rule 103 permits a party to "claim error in a ruling to admit or exclude evidence

5    only if the error affects a substantial right of the party and . . . if the ruling admits

6    evidence, a party, on the record . . . *timely* objects or moves to strike."  Fed. R. Evid.

7    103(a)(1)(A) (emphasis added).  The Ninth Circuit has recognized that trial courts possess

8    "broad discretion" to decide whether such a motion is timely, but has counseled that "[a]n

9    objection is 'timely' if it is made as soon as the opponent knows, or should know, that the

10   objection is applicable."  *Jerden v. Amstutz*, 430 F.3d 1231, 1236-37 (9th Cir. 2005)

11   (citation omitted).

12        Here, PG&E waited until three days after it knew, or should have known, that a

13   Rule 801(d)(2) objection may be applicable to move to strike Exhibit 647.  Doing so

14   rendered the present motion untimely.  Moreover, the Court was not in receipt of PG&E's

15   final briefing on this motion until after Mr. Manegold's testimony completed,[8] which

16   makes PG&E's untimely motion even more difficult to excuse.  *See id.* at 1237 ("[W]e

17   hold here that the court's late exclusion of Dr. Gross's testimony was an abuse of its

18   discretion because the untimely decision," which was in response to a motion made two

19   days after Dr. Gross's testimony concluded, "unfairly prevented Plaintiffs from providing

20   a curative response.").  The tardiness of PG&E's Rule 103 motion to strike Exhibit 647

21   therefore renders the motion contrary to not only this Court's prior orders, but also to

22

23   written objections to the Manegold exhibits were "deemed continuing," Reply at 5, "so
     that [PG&E would not] have to interrupt all the time," Trial Tr., Vol. 16 at 2311:7-8, this
24   did not breathe life into any objections that were not yet in existence.  By permitting
     PG&E's "continuing objections" to the Manegold exhibits on July 7, 2016, *id.*, the Court
25   therefore did not "continue" PG&E's Rule 801(d)(2) objection to Exhibit 647, which
     appeared nowhere until July 11, 2016 (the date of the present motion).

26   [8]     The final six of PG&E's twenty pages of briefing on the present motion were filed just
27   minutes before trial began on June 13, 2016 and only hours before Mr. Manegold
     completed testifying on the same day.  The Court could not have possibly considered this
28   lengthy briefing, and issued a ruling in response, while simultaneously presiding over trial.

United States District Court
Northern District of California

1    Ninth Circuit precedent on the timeliness Rule 103 motions.  Accordingly, the Court

2    DENIES PG&E's motion to strike Exhibit 647 and the related testimony.

3

4    **II.     The Court DENIES PG&E's motion to strike Exhibits 192, 283, 331, 351, 651,**

5    **714, and 717 and Mr. Manegold's related testimony.**

6            PG&E moves to strike Exhibits 192, 351, 651, 714, and 717, which are PG&E

7    emails, on the basis that Mr. Manegold, who was not on the emails: (i) lacked the personal

8    knowledge to lay a foundation for them as statements of a party-opponent under Rule

9    801(d)(2); and (ii) lacked the personal knowledge to testify as to their contents under Rule

10   602.  Mot. at 1-8.  PG&E moves to strike Exhibits 283 and 331, which are PG&E

11   documents, on the basis that Mr. Manegold could not possibly have laid a Rule 801(d)(2)

12   foundation for such "author-less" documents.  *Id.* at 8-9.

13           This time, however, PG&E's foundation argument is not entirely brand new.  The

14   Court's prior ruling that "Mr. Manegold *may sometimes* lay the foundation for a hearsay

15   exception even if he did not author or receive the document requiring the exception," First

16   Order at 2 (emphasis in original), was made in response to the following objection from

17   PG&E (which is quoted in full):

18                    We object to the admission through Mr. Manegold of PG&E
                 documents and emails that he appears neither to have authored
19               nor received.  Mr. Manegold cannot establish through personal
                 knowledge that these records are admissible business records
20               because of his lack of familiarity with them.  Not every email,
                 for example, is a business record – some are merely informal
21               discussions – and Mr. Manegold cannot say which is which.
                 Nor can he establish that the records are PG&E admissions if
22               he is unfamiliar with the circumstances under which they were
                 created.   This is particularly true of documents with no
23               apparent author.   Similarly, Mr. Manegold cannot lay
                 foundation for PG&E data request responses produced to the
24               government by third parties like the CPUC if he did not author
                 or send them to the CPUC.  The proper way to lay foundation
25               for these documents is through a CPUC witness, or PG&E
                 witness with knowledge of the document.
26

27   Manegold Objs. at 1.  The Court disagreed, holding that "[e]ven if Mr. Manegold is not on

28   an email, it is likely that as a long-time employee of PG&E, he will be able to lay the

United States District Court
Northern District of California

6

United States District Court
Northern District of California

foundation for the application of [Rule 801(d)(2)]."  First Order at 2.  The Court reached the same conclusion about PG&E "data responses, spreadsheets, or other documents" for which no author is indicated, but for which Mr. Manegold's experience was similarly likely to render him capable of laying a Rule 801(d)(2) foundation.  *Id.* at 2-3.

The Court stands by that ruling[9] and stands by its statement that PG&E's conduct prior to this written objection rendered the objection "disingenuous, or at least self-serving."  *Id.* at 2 n.2.[10]  But PG&E now raises a slightly different argument than the one

---

[9]    Mr. Manegold's testimony about the challenged exhibits, in connection with the exhibits themselves, was sufficient to establish that each was "made by the party's agent or employee on a matter within the scope of that relationship and while it existed," and therefore admissible as non-hearsay under Rule 801(d)(2)(D).  *See* Trial Tr., Vol. 16 at 2297:1-14 (eliciting testimony that the author of the Exhibit 192 email was "Vice-President of Engineering" or "Engineering-Operations"); *id.* at 2353:14-2354:9 (eliciting testimony that Mr. Manegold "deal[t] with integrity management expense budgets," was "familiar with the integrity management budget being part of the gas transmission expense budget," and recognized Exhibit 283 as "a PG&E gas transmission expense program review"); *id.* at 2366:13-17 (eliciting testimony that Mr. Manegold "recognize[d] that logo [on the face of the Exhibit 331 presentation slides] from [his] work at PG&E"); *id.* at 2332:9-2334:4 (eliciting testimony that Mr. Manegold recognized the email suffix "pge.com" in Exhibit 351 as denoting the email address for employees of PG&E Company, and that he "would be shocked" if the email suffix "pgecorp.com" did not denote the email address for employees of PG&E Corporation); Trial Tr., Vol. 17 at 2533:10-2534:25 (eliciting testimony that Exhibit 651 is an email between two PG&E employees Mr. Manegold had previously identified, and that the email concerned the very document Mr. Manegold had just sent to one of those two employees); *id.* at 2540:16-25 (eliciting testimony that Exhibit 714 is an email between two PG&E employees Mr. Manegold had previously identified); *id.* at 2542:12-2543:12 (same regarding Exhibit 717).  *See also Sea-Land Serv., Inc. v. Lozen Int'l, LLC.*, 285 F.3d 808, 821 (9th Cir. 2002) (holding that emails closing with electronic signature manifesting employment, and forwarded emails manifesting adoption of content, are admissible under Rule 801(d)(2)); *Metro-GoldwynMayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 974 (C.D. Cal. 2006) ("Documents that bear StreamCast's trade names, logos, and trademarks are statements by StreamCast itself, and are admissible as admissions by a party-opponent under Rule 801(d)(2) . . . .  These include, but are not limited to, PowerPoint presentations and business plans.") (citations omitted).

[10]    PG&E previously moved to admit, as a "party admission," Defense Exhibit 64 (an email) through a witness (Steven Nanney) who is not on the email and had not testified that he had ever seen the email.  Trial Tr., Vol. 7 at 874:13-878:5; 908:12-909:3.  PG&E now attempts to distinguish Defense Exhibit 64 because Mr. Nanney gave expert testimony for the Government and "Rule 602's requirement that the witness have personal knowledge, of course, does not apply to expert testimony."  Mot. at 7 n.2.  But Mr. Nanney neither offered expert opinions about Defense Exhibit 64 nor relied on the exhibit in reaching any expert opinions.  The fact remains that PG&E was more than ready to employ Rule 801(d)(2)(D) for the admission of an email through a witness never before privy to that email when it served its own interests, but balked when the Government did the same.

1    the Court previously addressed; PG&E now argues that "regardless of Mr. Manegold's

2    ability to lay a Rule 801(d)(2) foundation[,] he could not testify to the statements because

3    he has zero firsthand knowledge of them." Mot. at 1.  PG&E also reiterates its argument

4    that Mr. Manegold needed to have personal knowledge of the actual drafting of each

5    PG&E email and document (all of which PG&E admits are authentic) to be the witness

6    who lays their foundation under Rule 801(d)(2), but this time PG&E supports this

7    argument with previously uncited authority on the interplay between Rules 801(d)(2) and

8    602. *Id.* at 2, 7.

9         PG&E's written objections to the Manegold exhibits (as quoted above) failed to

10   raise the first argument and failed to offer the case law PG&E now cites in support of the

11   second.  Instead, PG&E waited four days (for Exhibits 192, 283, 331, and 351) or three

12   days (for Exhibits 651, 714, and 717) until after the exhibits' admission to file its Rule 103

13   motion to strike.[11]  For the same reasons discussed under Exhibit 647, PG&E's motion to

14   strike Exhibits 192, 283, 331, 351, 651, 714, and 717 is therefore untimely.  And, as with

15   Exhibit 647, the tardiness of PG&E's motion is reason enough for the Court to deny

16   PG&E's request that it strike the challenged exhibits and testimony.  But, unlike Exhibit

17   647, PG&E did list "Lack of foundation" for each of Exhibits 192, 283, 331, 351, 651,

18   714, and 717 in its written objections to those exhibits.  Manegold Objs. at 3-7.  The Court

19   therefore finds good cause to address the fuller foundational objection PG&E now makes

20   to Exhibits 192, 283, 331, 351, 651, 714, and 717.

21        To that end, PG&E's new objection and new authority lack merit.  Contrary to

22   PG&E's argument, Mr. Manegold did not need firsthand knowledge of the drafting of the

23   challenged PG&E emails and documents to provide testimony satisfying Rule

24   801(d)(2)(D).  The Advisory Committee Notes to Rule 801(d)(2) explain that

25   "[a]dmissions by a party-opponent are excluded from the category of hearsay on the theory

26

27   ───────────────

28   [11]    *See supra* n.7.  PG&E's first oral Rule 602 objection was not made until July 12,
         2016, a full four or five days after the admission of the exhibits PG&E now moves to
         strike.  Trial Tr., Vol. 19 at 2591:21-22.

United States District Court
Northern District of California

United States District Court
Northern District of California

that their admissibility in evidence is the result of the adversary system rather than satisfaction of the conditions of the hearsay rule," and therefore that "[n]o guarantee of trustworthiness is required in the case of an admission."  Fed. R. Evid. 801(d)(2) advisory committee's note.  Party admissions therefore enjoy "freedom . . . from . . . the rule requiring firsthand knowledge," and this freedom "calls for generous treatment of this avenue to admissibility."  *Id.  See also United States v. STABL, Inc.*, 800 F.3d 476, 484 (8th Cir. 2015) ("[T]he only foundation required for 801(d)(2)(B) adoptive admissions is a showing that they were made or adopted by the opposing party or by its agent on a matter within the scope of that agency; there is no personal-knowledge requirement.").

Though PG&E argues that this "freedom from personal knowledge" applies to the *declarant* rather than the *witness*, this argument is unavailing.  Reply at 2-4.  The chief case PG&E cites in support is inapposite, but if considered, actually weakens PG&E's argument.  In *Bemis v. Edwards*, the Ninth Circuit noted, in the context of the Rule 803 hearsay exceptions for present sense impression and excited utterance, that "[a] witness who merely testifies to the fact that a declarant made the statement . . . need only have firsthand knowledge that the statement was made, not of the events described in the statement."  45 F.3d 1369, 1373 n.2 (9th Cir. 1995).  Though this Court is concerned with Rule 801, rather than Rule 803, the Ninth Circuit's comments are actually consistent with the notion that a *testifying witness* need only have personal knowledge as to the requirements to which he or she testifies; in *Bemis*, the conditions of a present sense impression or excited utterance under Rule 803, and here, the identity of the declarant under Rule 801(d)(2).[12]

---

[12]    PG&E also cites *Montoya v. Management Training Corp. (MTC)*, which goes against the weight of the authority and, in any event, was decided under decidedly different circumstances.  There, the district court held that a declaration by a Ms. Dickey that identified a statement, made by Ms. Dickey's supervisors but outside Ms. Dickey's presence (to a colleague who repeated that alleged statement to Ms. Dickey), could not serve as the basis for applying Rule 801(d)(2)(D) to the supervisors' underlying statements because Ms. Dickey lacked personal knowledge as to those statements.  No. 1:10-CV-00451–AWI–MJS, 2011 WL 5240968, at *3 n.3 (E.D. Cal. Oct. 31, 2011).  Here, on the other hand, the Court is considering emails that were manifestly authored by PG&E employees and that PG&E does not challenge on authenticity grounds.

United States District Court
Northern District of California

1    It therefore simply does not matter, for the purposes of *admissibility*, that Mr.

2    Manegold had never seen the challenged exhibits (emails and documents alike) before his

3    testimony was used as the basis for their admission under Rule 801(d)(2)(D).  Mr.

4    Manegold did not need to have previously seen the exhibits to know that, for example, the

5    author of an email was a PG&E employee at the time the statement was made or that the

6    logo on a slideshow presentation belonged to PG&E.  For these reasons, PG&E's

7    argument that "cross-examination regarding the context of the statement and any

8    surrounding circumstances is well-nigh impossible" misses the point entirely.  Mot. at 7.

9    No cross-examination of either the declarant or the testifying witness is necessary *on the*

10   *question of admissibility*, as the exhibits are unquestionably admissible as statements of a

11   party-opponent.  If PG&E *elects* to put on a case-in-chief, then PG&E is of course free to

12   call the declarant of any such statement to question him or her about the content of their

13   non-hearsay (and properly admitted) statement.  But that is, of course, a choice for PG&E

14   to make.[13]

15   And while it may be independently true that Mr. Manegold cannot testify about *the*

16   *content* of an admitted exhibit when he lacks personal knowledge to answer questions

17   about *that content*, Mr. Manegold was never asked to so testify.  *See* Fed. R. Evid. 602

18   advisory committee's note ("This rule does not govern the situation of a witness who

19

20   [13]   The Court previously noted that PG&E is free to call any non-testifying declarant to

21   question him or her about the content of already and properly admitted non-hearsay
     statements.  Third Order at 2 n.1.  PG&E's suggestion that this statement "upends the

22   burden of proof and runs headlong into the bedrock principle that a criminal defendant is
     presumed innocent and need not put on any case at all," Mot. at 7 n.3, is a gross

23   exaggeration of the Court's clear meaning.  By suggesting that PG&E *may* call its own
     witnesses to undercut the weight of properly admitted non-hearsay statements, the Court in

24   no way undermined its prior instruction to the jury that "PG&E is presumed to be innocent
     . . . [and] is neither expected nor required to present any evidence to prove its innocence."

25   Trial Tr., Vol. 6 at 709:20-24.  The Court did not, and would not, suggest that PG&E *must*
     (or is even expected to) call its own witnesses to undermine the Court's application of Rule

26   801(d)(2)(D) to the challenged exhibits; the fact remains that the challenged exhibits were
     properly admitted as non-hearsay, so no further testimony on the issue of admissibility is

27   necessary, and the Court was merely noting that PG&E may call its own witnesses to
     testify about *the content* of these exhibits.  The Court recognizes and respects PG&E's

28   effort to create its record for appeal, but makes this clarifying point to avoid any distortion
     of the actual record in the process.

testifies to a hearsay statement as such, if he has personal knowledge of the making of the statement. . . .  This rule would, however, prevent him from testifying to the subject matter of the hearsay statement, as he has no personal knowledge of it.").  For example, after the Government admitted Exhibit 192 through Mr. Manegold, it asked him questions *based on his own personal knowledge* of the topics discussed therein:

> Q:   And the subject line is "CGT's 2005 PIP."  Do you see that?
> A:   I do.
> Q:   What does "CGT" refer to, please?
> A:   California Gas Transmission.
> Q:   And "PIP," do you know what that refers to?
> A:   I believe it stands for Performance Incentive Plan.
>                                  . . .
> Q:   . . . Mr. Manegold, are you aware of participating in a performance incentive plan at this time?
> A:   As a management employee, yes.

*See* Trial Tr., Vol. 16 at 2298:12-18; *id.* at 2299:11-13.  Though the Exhibit 192 email was the catalyst for these questions, the fact is that Mr. Manegold possessed the personal knowledge to respond; Mr. Manegold did not learn the meaning of the acronym "PIP" by reading the email underlying Exhibit 192, and he did not lack the personal knowledge under Rule 602 to share with the jury that "PIP" stands for Performance Incentive Plan. The same is true of the Government's questions to Mr. Manegold on the remaining challenged exhibits.[14]

Accordingly, after sitting through the challenged testimony and after a thorough review of the record, the Court is satisfied that Exhibits 192, 283, 331, 351, 651, 714, and 717 were properly admitted as non-hearsay statements of a party-opponent.  The Court therefore DENIES PG&E's motion to strike Exhibits 192, 283, 331, 351, 651, 714, and 717 and the related testimony.

But perhaps more importantly, the present motion highlights the Court's growing concern about PG&E's selective interpretation of the Rules.  For example, on July 13, 2016, PG&E admitted an email through Mr. Manegold that Mr. Manegold neither authored

---

[14]   The Government also asked Mr. Manegold to read or confirm that it was correctly reading portions of the properly admitted non-hearsay statements.

United States District Court
Northern District of California

1    nor received.  Trial Tr., Vol. 20 at 2775:24-2776:23.  This was *the same morning* PG&E

2    filed its reply in support of the present motion, in which PG&E reasserted its position that

3    this very practice runs afoul of Rule 602.  PG&E also questioned Mr. Manegold about the

4    content of a document even after Mr. Manegold explained that he had never before seen

5    the document, yet another practice that is apparently only improper when employed by the

6    Government.  *See* Trial Tr., Vol. 19 at 2684:5-7 ("Q: This is a PHMSA Draft Gas Integrity

7    Management Inspection Manual Protocol B.  Have you ever seen this document before?

8    A: I don't think so. . . .  Q: I'd like you to turn to Page 0006, if you would?").   And Mr.

9    Manegold is not the only witness with whom PG&E exercised practices that it roundly

10   criticized by the Government.  *Compare* Trial Tr., Vol. 21 at 2908:11-13 (objecting to the

11   admission of an email chain where Todd Hogenson appeared on the root email but not on

12   the four emails that followed), *with id.* at 2966:5-22 (admitting email chain through Mr.

13   Hogenson even though he did not appear on the base email).

14          The Court does not intend to suggest that PG&E ran afoul of the Rules in any of

15   these examples.  To the contrary, each of these examples is proper for the same reasons

16   discussed above, with respect to the Government's questioning of Mr. Manegold.  Rather,

17   the Court identifies these examples because PG&E's use of the very practices it alleges are

18   improper belies its stated concern that the Court has improperly admitted unreliable

19   hearsay testimony.

20

21   **III.    The Court DENIES PG&E's motion to strike Exhibits 331 and 351 as unfairly**

22          **prejudicial financial evidence.**

23          Finally, PG&E moves to strike Exhibits 331 and 351 on the basis that they are

24   unfairly prejudicial financial evidence.  Mot. at 11-13.  This argument is rejected (yet

25   again) for the same reasons the Court has previously stated.  *See* First Order at 3-4; Dkt.

26   No. 748 at 1-3.

27   //

28   //

**CONCLUSION**

For the reasons set forth above, PG&E's motion is DENIED.

**IT IS SO ORDERED.**

Dated:   07/19/16

_____
THELTON E. HENDERSON
United States District Judge