LATHAM & WATKINS LLP
    Steven M. Bauer (Bar No. 135067)
        steven.bauer@lw.com
    Margaret A. Tough (Bar No. 218056)
        margaret.tough@lw.com
    Robert E. Sims (Bar No. 116680)
        bob.sims@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California  94111-6538
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095

LATHAM & WATKINS LLP
    Melissa Arbus Sherry (*pro hac vice*)
        melissa.sherry@lw.com
555 11th Street, NW, Suite 1000
Washington, DC  20004-1304
Telephone: +1.202.637.2200
Facsimile: +1.202.637.2201

CLARENCE DYER & COHEN LLP
    Kate Dyer (Bar No. 171891)
        kdyer@clarencedyer.com
899 Ellis Street
San Francisco, California  94109-7807
Telephone: +1.415.749.1800
Facsimile: +1.415.749.1694

Attorneys for Defendant
PACIFIC GAS AND ELECTRIC COMPANY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Defendant. | CASE NO. CR-14-00175-TEH<br><br>**DEFENDANT'S RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM**<br><br>**Judge:    Hon. Thelton E. Henderson**<br>**Date:     January 23, 2017**<br>**Time:    2:30 P.M.**<br>**Place:    Courtroom G, 15th Floor** |

## I. DISCUSSION

### A. PG&E Has Made Substantial Progress As a Company

The government's sentencing memorandum focuses on its view of PG&E's conduct during the historical period at issue in the trial, and ignores all of the sweeping and transformational changes that PG&E has made to meaningfully improve its safety culture and operations.

As the law recognizes, a company is its people. And PG&E's leadership has changed substantially since the events described in the superseding indictment. The revised Presentence Report ("PSR") and PG&E's sentencing memorandum describe the Company's extensive gas safety improvements, including its investment of more than $2 billion in shareholder money toward testing, monitoring, and updating its gas transmission system. Dkt. 906 at 2-3; PSR at ¶¶ 120-122. In addition to the complete turnover in gas operations leadership, the Company hired thousands of new and additional employees who brought new voices with extensive experience both in the industry and with safety. At the same time, the Company has implemented process changes, technology updates, and replacements of old infrastructure – and these efforts have been recognized by industry experts and overseen by the California Public Utilities Commission ("CPUC"). Dkt. 906 at 2-5. PG&E also has changed its budgeting practices and compensation structure to place greater emphasis on safety. *Id*. at 5-6.

Moreover, PG&E recognizes and values the critical importance of culture and governance. Its compliance and ethics program includes new policies and checks and balances that impact every employee, from senior management to its representatives in the field. *Id*. at 6-10. And PG&E has substantially expanded its compliance and ethics team, including new leadership from outside the Company. *Id*. at 6-7. In addition, PG&E has been recognized for its positive contributions to community, environmental, and diversity issues. *Id*. at 10-12. The government's sentencing recommendations appear not to consider any of these important factors.

### B. PG&E Does Not Object to Conditions of Probation that Are Consistent with the Law and Support Its Continued Progress As a Company

Both parties agree that the Ninth Circuit's decision in *Mitsubishi* controls here. Dkt. 905 at 7 (citing *United States v. Mitsubishi Int'l Corp.*, 677 F.2d 785, 788 (9th Cir. 1982)). Accordingly, "the statutorily prescribed maximum sentence cannot be increased by the terms of probation." *Mitsubishi*, 677 F.2d at 788. Yet, the government recommends a sentence that runs afoul of this principle. As set forth in its sentencing memorandum, PG&E objects to those aspects of the government's sentencing recommendations that would undermine the Company's safety goals. Dkt. 906 at 14, 16-17.

#### 1. PG&E's Compensation Programs Focus on Safety

The government advocates requiring PG&E to restructure its employee bonus formula as recommended by the PSR. Dkt. 905 at 8-9. Since the time of the accident in San Bruno, the Company has restructured its compensation programs, and as a result safety considerations are by far the most heavily weighted in its bonus program. Dkt. 906 at 3-4. In fact, for several years since the events described in the superseding indictment, PG&E has been an industry leader in this regard.

Even the government's expert, Howard Lubow, has recognized PG&E's leadership in using public safety metrics as part of compensation determinations. In materials he prepared in anticipation of trial, Mr. Lubow wrote:

> The San Bruno explosion prompted PGE to address its lack of attention to detail when it comes to providing safe and reliable service to its customers and the public in general. However as of 2012 it is one of the few companies to allow customer and public safety-related metrics to directly impact the pay of its executive officers.

USA-156242.

As noted in our sentencing memorandum, PG&E's compensation programs are devised in consultation with industry experts based on assessments of peer and other exemplar companies, are overseen by PG&E's primary regulator, the CPUC, and are described in PG&E's public disclosures. Dkt. 906 at 16-17. These programs make safety paramount, both by attracting and retaining the talented and hardworking employees PG&E needs to run its systems,

1  and by being tied to predictive safety measures (*id.*) – rather than lagging indicators, or the
2  "safety record," as described by the government.  Dkt. 905 at 8-9.  Notably, neither the PSR nor
3  the government's sentencing memorandum describe PG&E's current safety-based compensation
4  system or explain why it is lacking in its current form – again, a form implemented after the
5  accident and devised with industry consultants.
6       Removing any tie to responsible fiscal practices from compensation is inconsistent with
7  the long-term safe operation of PG&E's systems, and would undermine its ability to efficiently
8  raise capital, invest in its system, and recruit and keep quality people.  Moreover, the
9  government's assertion that PG&E earns a guaranteed rate of return (Dkt. 905 at 8) is incorrect.
10 Rather, the Company earns rates set by the CPUC, and is expected to operate within the revenue
11 levels contemplated by those rates.
12      Applying blunt force to these carefully crafted and vetted programs could seriously
13 undermine the Company's safety goals.

**2.   The Government's Proposed Advertising Campaign Does Not Further the Goals of Sentencing**

16      The government supports an advertising campaign consistent with that described in the
17 PSR.  Dkt. 905 at 9.  PG&E objects to this for the reasons set forth in its sentencing
18 memorandum.  Dkt. 906 at 18-19.  In addition, the government also recommends several
19 modifications to the PSR's proposed advertising campaign, to which PG&E also objects.
20      The government's proposals are overbroad and unsupported by the law.  *Id*.  The public
21 is well-informed of these events and the conviction, because they have been extensively covered
22 by the media over the course of several years, and because of the Company's widely-published
23 apology.  There are no sentencing goals furthered by the government's recommendations.

**3.   Monitorship / Compliance and Ethics Program**

25      As noted in PG&E's and the government's sentencing memoranda, the parties are
26 working towards agreement on the scope and terms of a monitorship designed to support and
27 ensure a strong safety, compliance, and ethics culture without compromising the role of PG&E's
28 state and federal regulators.  Dkt. 905 at 9-10; Dkt. 906 at 19.  PG&E hopes that agreement on

the monitorship can be reached and a proposal submitted to the Court ahead of sentencing. As to Conditions 5 and 6 proposed by the Probation Office, PG&E objects to these as currently proposed because they do not provide sufficient consideration of the specific gas pipeline transmission safety issues that are the foundation of this matter.

### 4. PG&E Does Not Oppose a Workable Community Service Requirement

As noted in our sentencing memorandum (Dkt. 906 at 20), PG&E does not object to a community service requirement, but asks that it be a practical, workable program given the Company's existing extensive volunteer efforts.

## C. Further Objections to the Government's Sentencing Memorandum[1]

In several places, the government's sentencing memorandum is inconsistent with the trial evidence and the jury's verdict. At times, the government asks the Court to find what the jury expressly did not. Dkt. 905 at 5 (arguing that PG&E violated recordkeeping regulations "notwithstanding the jury's acquittal on Counts 3-4 and 9-12"). While we will not include every instance in which PG&E disagrees with the government's view of the trial evidence or its relevance for sentencing, we note the following.

### 1. There Is No Evidence that the Explosion Was Caused by Conduct Underlying the Convictions

As this Court repeatedly has instructed, "there has been no evidence in this case that any alleged regulatory violation caused the San Bruno explosion." Dkt. 888 (Instr. No. 37). The government's memorandum does not present the sort of "methodically and carefully structured and highly technical proof" necessary to show a causal link. Dkt. 201 at 4. And it would be impossible to do so, because the jury was not required to find any criminal violation with respect to Line 132. Dkt. 884 at 3, 6-9. Accordingly, any suggestion of a connection between the counts of conviction and the accident should be rejected.

---

[1] In addition to these objections, PG&E submits that the government's Guidelines analysis (Dkt. 905 at 6-7) – which essentially mirrors the PSR – is incorrect, for the reasons set forth in PG&E's sentencing memorandum. Dkt. 906 at 21-23. We agree with the government's ultimate conclusion, however, that that the maximum fine is $3 million. Dkt. 905 at 5, 7.

1    The same is true of any notion that PG&E should be punished for decades-old and non-
2 criminal conduct.  The Court's sentence must be sufficient but not greater than necessary to
3 further the goals set forth in 18 U.S.C. § 3553(a)(2).  This is why, where the Sentencing
4 Guidelines apply, courts have recognized that relevant conduct considered in fashioning a
5 sentencing must be criminal.  *United States v. Catchings*, 708 F.3d 710, 712, 720 (6th Cir. 2013);
6 *United States v. Griffith*, 584 F.3d 1004, 1013 (10th Cir. 2009); *United States v. Chube*, 538 F.3d
7 693, 702 (7th Cir. 2008); *United States v. Culverhouse*, 507 F.3d 888, 895 (5th Cir. 2007);
8 *United States v. Dove*, 247 F.3d 152, 155 (4th Cir. 2001); *United States v. Jain*, 93 F.3d 436, 443
9 (8th Cir. 1996); *United States v. Dickler*, 64 F.3d 818, 830-31 (3d Cir. 1995).
10   The Court has held – correctly and repeatedly – that this criminal action is not about the
11 cause of the terrible tragedy that occurred in San Bruno.  That principle holds at sentencing, too.

12              **2.      PG&E Did Not Elicit Perjured Testimony**

13   Without any citation to the record, the government accuses a PG&E engineer – the
14 government's own witness – of lying when he purportedly testified at trial that "no 10% practice
15 existed" at PG&E.  Dkt. 905 at 5.  This is wrong for several reasons.
16   First, the government was aware of how the witness would testify before it called him to
17 the stand because he testified before the grand jury more than two years before trial.[2]  His trial
18 testimony was consistent with what he told the grand jury under questioning by the government,
19 which presumably is what the government expected.  The government did not challenge his
20 testimony at trial, nor did it attempt to impeach him.  Nor did the government contend that his
21 testimony was false during closing argument.  Until now, in fact, this witness's name has not
22 appeared in any of the government's post-trial briefing.  *See* Dkt. 894 at 9-11.
23   The government's conclusion that the jury's "finding of guilt on the obstruction charge
24 implicitly reflects their finding that [the engineer] lied in saying no 10% practice existed" is
25 inconsistent both with the Court's instructions and the government's trial theory.  As the Court

---

[2]  This witness testified about this issue when he was called by the government in its case in chief.  While he also testified, briefly, during the defense case, he addressed other matters.  Dkt. 823 (Trial Tr. Vol. 26) at 4075-4100.

1  knows, under the instructions given to the jury, it was not required to find that the April 6, 2011
2  letter was false in any way, a point the government stressed during its closing argument.  Dkt.
3  888 (Instr. No. 21); Dkt. 839 (Trial Tr. Vol. 28) at 4385:19-25, 4387:13-17; Dkt. 838 (Trial Tr.
4  Vol. 27) at 4145:14-21.  Accordingly, the guilty verdict on this count in no way required a
5  perjury finding, as to this witness or any other.

6      Finally, contrary to the government's assertion, the witness never "denied PG&E's 10%
7  practice" during his testimony.  Rather, he testified that, to his knowledge, the version of RMI-06
8  with the mismatched coversheet submitted to the NTSB was not a formally approved policy.
9  Dkt. 817 (Trial Tr. Vol. 22) at 3185:22-3186:7.  This is consistent with the uncontroverted trial
10 evidence establishing that a duly signed coversheet is what indicates a policy has been approved.
11 *Id*. at 3180:2-17; 3171:4-12; *see also* Dkt. 729 (Trial. Tr. Vol. 14) 2103:21-2104:20; Dkt. 730
12 (Trial Tr. Vol. 15) at 2165:2-7; Dkt. 751 (Trial Tr. Vol. 19) at 2623:9-2624:16, 2653:17-2654:20;
13 D-107; D-129.

14     Without any guarantee of immunity, this witness testified truthfully and candidly and,
15 until now, no one has ever suggested otherwise.   It is both wrong and unnecessary to impugn his
16 character, particularly where there is no dispute that the jury convicted on Count One.

17 **II.    CONCLUSION**

18     PG&E respectfully asks that the Court impose a sentence consistent with the principles
19 discussed here and in its opening sentencing memorandum.

20

21 Dated:  January 13, 2017                    Respectfully submitted,

22                                             By         /s/
                                                Steven M. Bauer
23                                              Margaret A. Tough
                                                Robert E. Sims
24                                              Sean P.J. Coyle
                                                LATHAM & WATKINS LLP
25
                                                Kate Dyer
26                                              CLARENCE, DYER & COHEN LLP

27                                              *Attorneys for Defendant*
                                                *Pacific Gas and Electric Company*
28