AO 245E  (Rev. 12/03) Judgment in a Criminal Case for Organizational Defendants
Sheet 1

# UNITED STATES DISTRICT COURT

Northern  District of  California

UNITED STATES OF AMERICA
V.
PACIFIC GAS AND ELECTRIC COMPANY

**JUDGMENT IN A CRIMINAL CASE**
(For Organizational Defendants)

CASE NUMBER: 0971 3:14CR00175-001 TEH

Defendant Organization's Attorney: Steven Bauer, Sean P.J. Coyle, James Scott, Reid J. Schar, Kate Dyer, Benjamin William Snyder, and Adam Shearer (Retained)

**THE DEFENDANT ORGANIZATION:**

☐ pleaded guilty to count(s)

☐ pleaded nolo contendere to count(s) which was accepted by the court.

☑ was found guilty on count(s)  1, 2, 5, 6, 7, and 8 of the Superseding Indictment.
after a plea of not guilty.

The organizational defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 1505 | Obstruction of a National Transportation Safety Board Investigation | 9/30/2011 | 1 |
| 49 U.S.C. § 60123 | Natural Gas Pipeline Safety Act | 9/9/2010 | 2, 5, 6, 7, 8 |

The defendant organization is sentenced as provided in pages 2 through  18  of this judgment.

☑ The defendant organization has been found not guilty on count(s)  3, 4, and 9-12

☑ Count(s)  13  ☑ is  ☐ are  dismissed on the motion of the United States.

It is ordered that the defendant organization must notify the United States attorney for this district within 30 days of any change of name, principal business address, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant organization must notify the court and United States attorney of material changes in economic circumstances.

Defendant Organization's Federal Employer I.D. No.:  94-0742640

Defendant Organization's Principal Business Address:
77 Beale Street, P.O. Box 770000
San Francisco, CA 94177

1/26/2017
Date of Imposition of Judgment

*/s/ Thelton E. Henderson*
Signature of Judge

The Honorable Thelton E. Henderson   Senior U.S. District Judge
Name of Judge                         Title of Judge

1/31/2017
Date

Defendant Organization's Mailing Address:
77 Beale Street, P.O. Box 770000
San Francisco, CA 94177

DEFENDANT ORGANIZATION: PACIFIC GAS AND ELECTRIC COMPANY
CASE NUMBER: 0971 3:14CR00175-001 TEH

Judgment—Page 2 of 18

# PROBATION

The defendant organization is hereby sentenced to probation for a term of :

Five (5) years. This term consists of five years on each of Counts 1, 2, 5, 6, 7, and 8, all counts to run concurrent.

The defendant organization shall not commit another federal, state or local crime.

If this judgment imposes a fine or a restitution obligation, it is a condition of probation that the defendant organization pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant organization must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page (if indicated below).

## STANDARD CONDITIONS OF SUPERVISION

1) within thirty days from the date of this judgment, the defendant organization shall designate an official of the organization to act as the organizations's representative and to be the primary contact with the probation officer;

2) the defendant organization shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

3) the defendant organization shall notify the probation officer ten days prior to any change in principal business or mailing address;

4) the defendant organization shall permit a probation officer to visit the organization at any of its operating business sites;

5) the defendant organization shall notify the probation officer within seventy-two hours of any criminal prosecution, major civil litigation, or administrative proceeding against the organization;

6) the defendant organization shall not dissolve, change its name, or change the name under which it does business unless this judgment and all criminal monetary penalties imposed by this court are either fully satisfied or are equally enforceable against the defendant's successors or assignees; and

7) the defendant organization shall not waste, nor without permission of the probation officer, sell, assign, or transfer its assets.

AO 245E    (Rev. 12/03) Judgment in a Criminal Case for Organizational Defendants
    Sheet 2B — Probation

---

DEFENDANT ORGANIZATION: PACIFIC GAS AND ELECTRIC COMPANY    Judgment—Page 3 of 18
CASE NUMBER: 0971 3:14CR00175-001 TEH

## SPECIAL CONDITIONS OF SUPERVISION

1. While on probation, PG&E shall not commit another Federal, State, or local crime.

2. PG&E shall comply with the separately entered order concerning a third-party monitor (see attached order on pages 6 through 18 of the judgment).

3. Within six months of the date of the judgment, PG&E shall develop and submit to the Court an effective compliance and ethics program consistent with § 8B2.1 of the Sentencing Guidelines. The submission shall include a schedule for implementation. PG&E shall revise the program and file updates with the Court whenever deemed appropriate by the third-party monitor.

4. Within 60 days of the date of the judgment, PG&E shall place one full-page advertisement in both the Wall Street Journal and San Francisco Chronicle publicizing the nature of the offenses committed, the convictions, the nature of the punishment imposed, and the steps that will be taken to prevent the recurrence of similar offenses.

5. For three months beginning no later than 60 days after sentencing, and to the greatest extent possible replicating the same channels and air times that PG&E used before and/or during trial in this case in 2016, PG&E will air television commercials which publicize the nature of the offenses committed, the convictions, the nature of the punishment imposed, and the steps that will be taken to prevent the recurrence of similar offenses. PG&E will air such commercials up to the cost of $3,000,000 less the cost of the print advertisements referred to in (4) above. The cost of advertising does not constitute a monetary penalty. PG&E estimates that this will result in approximately 12,500 commercials of approximately 60 seconds in duration across broadcast and cable outlets over the three-month period. PG&E will not include language regarding the conviction as part of the company's public service safety announcements, including what actions the public should take in the event of wires down, gas leaks or other emergencies, and which typically run on radio and digitally given time sensitivity, because such information could cause the public to fail to take the needed safety actions in a timely fashion.

6. PG&E shall submit to: (A) a reasonable number of regular or unannounced examinations of its books and records at appropriate business premises by the probation officer or experts engaged by the Court; and (B) interrogation of knowledgeable individuals within the organization. Compensation to and costs of any experts engaged by the Court shall be paid by the organization. The probation officer and any Court-engaged experts shall work with the third-party monitor to minimize duplication of efforts.

7. PG&E shall perform 10,000 hours of community service. At least 2,000 of these hours shall be performed by high-level personnel, as defined in the commentary to § 8A1.2 of the Sentencing Guidelines. PG&E shall provide the prospective community service workers' names and titles to the probation officer to ensure compliance with this condition. The location and type of community service must be preapproved by the probation officer and to every extent possible be in the City of San Bruno. The intent of this condition is to require 10,000 hours of community service that PG&E would not otherwise have done, and the probation officer shall therefore consider as part of the approval process the extent to which the proposed projects can be tied to existing service initiatives by PG&E. The community service shall be geared toward giving back to communities affected by PG&E's negligence, with special emphasis on the City of San Bruno, as directed by the probation officer.

8. PG&E shall notify the probation officer and monitor immediately upon learning of (A) any material adverse change in its business or financial condition or prospects, or (B) the commencement of any bankruptcy proceeding, major civil litigation, criminal prosecution, or administrative proceeding against the organization, or any investigation or formal inquiry by governmental authorities regarding the organization.

9. PG&E shall pay the fine and special assessment in a lump sum within 60 days of the date of this judgment. Any fines and special assessment payment is not to be passed off to the ratepayers.

AO 245E  (Rev. 12/03) Judgment in a Criminal Case for Organizational Defendants
         Sheet 3 — Criminal Monetary Penalties

DEFENDANT ORGANIZATION: PACIFIC GAS AND ELECTRIC COMPANY
CASE NUMBER: 0971 3:14CR00175-001 TEH

Judgment — Page 4 of 18

# CRIMINAL MONETARY PENALTIES

The defendant organization must pay the following total criminal monetary penalties under the schedule of payments on Sheet 4.

|        | **Assessment** | **Fine** | **Restitution** |
|--------|----------------|----------|-----------------|
| TOTALS | $ 2,400.00     | $ 3,000,000.00 | None        |

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☐ The defendant organization shall make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant organization makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---------------|-------------|---------------------|------------------------|
|               |             |                     |                        |
|               |             |                     |                        |
|               |             |                     |                        |
|               |             |                     |                        |
|               |             |                     |                        |
|               |             |                     |                        |
| **TOTALS**    | $ 0.00      | $ 0.00              |                        |

☐ Restitution amount ordered pursuant to plea agreement  $ _____

☐ The defendant organization shall pay interest on restitution or a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 4 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant organization does not have the ability to pay interest, and it is ordered that:

   ☐ the interest requirement is waived for the   ☐ fine   ☐ restitution.

   ☐ the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245E    (Rev. 12/03) Judgment in a Criminal Case for Organizational Defendants
       Sheet 4 — Schedule of Payments

DEFENDANT ORGANIZATION: PACIFIC GAS AND ELECTRIC COMPANY     Judgment — Page 5 of 18
CASE NUMBER: 0971 3:14CR00175-001 TEH

# SCHEDULE OF PAYMENTS

Having assessed the organization's ability to pay, payment of the total criminal monetary penalties are due as follows:

**A** ☑ Lump sum payment of $ 3,002,400.00 due immediately, balance due

    ☐ not later than _____ , or
    ☑ in accordance with ☐ C or ☑ D below; or

**B** ☐ Payment to begin immediately (may be combined with ☐ C or ☐ D below); or

**C** ☐ Payment in _____ (e.g., equal, weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

**D** ☑ Special instructions regarding the payment of criminal monetary penalties:

Any monetary penalties shall be paid within 60 days of this judgment in a lump sum payment. Payments shall be made to the Clerk of U.S. District Court, Attention: Financial Unit, 450 Golden Gate Ave., Box 36060, San Francisco, CA 94102.

All criminal monetary penalties are made to the clerk of the court.

The defendant organization shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐ The defendant organization shall pay the cost of prosecution.

☐ The defendant organization shall pay the following court cost(s):

☐ The defendant organization shall forfeit the defendant organization's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>  Defendant. | Case No.  CR-14-00175-TEH |

ORDER

Pursuant to 18 U.S.C. § 3563(b)(22), IT IS HEREBY ORDERED:

    I.    <u>Goals and Scope of the Monitorship</u>

A. The goal of the Monitorship shall be to prevent the criminal conduct with respect to gas pipeline transmission safety that gave rise to the Superseding Indictment filed in this matter. To that end, and as more directly detailed in Sections I.B. and I.C. below, the Monitor's goal is to help ensure Pacific Gas and Electric Company ("PG&E") takes reasonable and appropriate steps to maintain the safety of the gas transmission pipeline system, performs appropriate assessment testing on gas transmission pipelines, and maintains an effective ethics and compliance program and safety related incentive program.  The Monitor shall seek to assure defendant's compliance with the goals outlined in United States Sentencing Guidelines Section 8B2.1: Effective Compliance and Ethics Program.

B. Since the time of the pipeline explosion in San Bruno, PG&E's gas transmission pipeline safety programs and initiatives have been reviewed by federal and state agencies, and several independent third parties.  As a result of those reviews, PG&E has initiated numerous

1

programs and initiatives designed to improve the safety and effectiveness of its gas transmission pipeline system. Those programs and initiatives are subject to the review of PG&E's primary regulator, California Public Utilities Commission ("CPUC"), which has and continues to conduct its own reviews and direct PG&E to take certain actions. The Monitor does not have authority to supplant the CPUC's authority over, or decisions related to, gas transmission operations or pipeline safety. Nor does the Monitor have authority to take action that would, directly or indirectly, require PG&E to take action contrary to the directives of its regulators. Consistent with the CPUC's primary jurisdiction over PG&E, the Monitor shall focus his or her review on the adequacy of PG&E's completion of and continuing adherence to the following activities and standards:

1) Implementation of policies and procedures sufficient to comply with CPUC Decision 16-09-055 (effective Sept. 30, 2016) relating to the handling of safety citations and timely reporting of self-identified potential violations.

2) Completion of the collection and organization of the necessary pipeline strength test records and pipeline features information for validation of the Maximum Allowable Operating Pressure for PG&E's gas transmission pipeline, consistent with the NTSB's recommendations for maintaining asset records to a "traceable, verifiable, and complete" requirement, and in accordance with CPUC Resolution L-410 (Jan. 13, 2011), Decision 11-06-017, and Decision 12-12-030.

3) Confirmation of satisfactory strength testing of at least 500 miles of gas transmission pipelines in 2017 and 2018.

4) Upgrading and/or retrofitting approximately 300 miles of gas transmission pipelines to accommodate in-line inspection tools in 2017 and 2018.

5) Consistent with CPUC Decision 15-04-024, Appx E at 1 (San Bruno OII Remedy 4), implementation of Integrity Management procedures that ensure where data is missing, direct the Company to use conservative, supportable assumptions as required by ASME B31.8S.

6) Consistent with CPUC Decision 15-04-024, Appx E at 1 (San Bruno OII Remedy 3), completion of records search to include gas transmission pipeline historical leak data into a single database of transmission leak record data.

7) Consistent with CPUC Decision 15-04-024, Appx. E at 1 (San Bruno OII Remedy 2), implementation of Integrity Management procedures sufficient to ensure that

the data gathering processes, the data elements collected and reviewed, and company data sources meet the requirements of 49 CFR Part 192.917(b) and ASME B31.8S.

8) Consistent with NTSB Recommendation P-11-29, implementation of Integrity Management revisions to include (1) a revised risk model, reflecting actual recent data on leaks, failures, and incidents; (2) consideration of defect and leak data for the life of each pipeline; (3) revised risk methodology to ensure assessment methods are selected for each pipeline segment; and (4) improved self-assessment that adequately measures whether the program is effectively assessing and evaluating the integrity of each covered segment.

9) Implementation of policies and procedures that address threats caused by vegetation and structural encroachments on gas transmission pipelines.

10) Implementation of processes and procedures that for each segment of gas transmission line in High-Consequence Areas, enable PG&E to calculate the expected life of the pipe using a fracture control analysis that (1) estimates maximum flaw sizes remaining after inspections and/or strength testing; (2) estimates potential crack growth rate based on the past history of and potential pressure cycles; (3) assesses the remaining life calculations; and (4) determines appropriate methods of reassessment and frequency of reassessment of each such segment.

11) Consistent with CPUC Decision 15-04-024, Appx. E at 2 (San Bruno OII Remedy 6), implementation of policies and procedures such that relevant data is incorporated in threat identification and assessment procedures for both covered and non-covered segments, including but not limited to potential manufacturing and construction threats, and leak data.

12) Consistent with CPUC Decision 15-04-024, Appx. E at 2 (San Bruno OII Remedy 9), implementation of threat identification and assessment procedures such that High-Consequence Areas are prioritized consistent with 49 CFR Part 192.917(e)(3)-(4).

13) Implementation of policies designed to incorporate changed circumstances into assessment methodologies and prioritization, including Risk Management Procedure 16 ("Threat Identification") and TD 4810B-001 ("Changes to Integrity Management Pressure Testing Requirements for Unstable Manufacturing Threats"), consistent with ASME B31.8S.

14) Consistent with CPUC Decision 15-04-024, Appx. E at 2 (San Bruno OII Remedy 8), cessation of regularly increasing pipeline pressure up to a "system MAOP" to eliminate the need to consider manufacturing and construction threats, and analysis of segments that were subjected to the planned pressure increases to determine the risk of failure from manufacturing threats under 49 CRF Part 192.917(e)(3), including review of strength-testing of all segments identified as having an unstable manufacturing threat.

3

      15)    Consistent with CPUC Decision 15-04-024, Appx. E at 2 (San Bruno OII Remedy 10), implementation of threat identification and assessment policies and procedures such that cyclic fatigue and other loading conditions are incorporated into segment-specific threat assessments and risk ranking algorithm, including review of risk management procedures for appropriate treatment of cyclic fatigue and loading.

C. If gas transmission pipeline safety issues arise during the term of the Monitorship, PG&E shall promptly bring those issues to the attention of the Monitor. PG&E and the Monitor shall agree to the types of gas transmission pipeline safety issues that should be brought to the attention of the Monitor, with the United States Attorney's Office for the Northern District of California (the "USAO" or "Government") resolving any disagreements on the scope of such issues. The Monitor will review and report on the adequacy of PG&E's response to any gas transmission pipeline safety issues that arise during his or her term.

II.      <u>Monitor</u>

A. <u>Retention of Monitor</u>:

    1) *Monitor:* PG&E shall retain a monitor who shall be familiar with best practices for corporate codes of conduct, including implementation, training, and enforcement thereof (hereinafter the "Monitor"). The parties shall collaborate to identify a mutually acceptable monitor within 90 calendar days after the Court imposes sentence (the "Effective Date"). In the event the parties are unable to reach agreement on a mutually acceptable monitor, each party shall submit no more than two names to the Court and the Court shall determine the monitor. PG&E shall retain the Monitor as soon as possible, but not later than 60 calendar days after the date the parties agree on a mutually acceptable monitor or the Court determines the monitor. If the Monitor resigns or is otherwise unable to fulfill his or her obligations as set forth herein, a replacement Monitor shall be chosen consistent with the procedures set forth in this paragraph.

B. <u>Monitorship Scheduling and Compensation</u>:

    1) The monitorship shall exist for a period of five years from the date of the Monitor's retention unless terminated pursuant to paragraph D(8)(a) herein.

    2) The Monitor shall be authorized to employ personnel with appropriate professional qualifications, who are reasonably necessary, to assist in the proper discharge of the Monitor's duties, as specified herein. PG&E may offer suggestions on qualified professional personnel to assist the Monitor and the Monitor shall interview any such suggested personnel to assess their qualifications and any potential conflicts of interest. PG&E may perform routine conflict checks on individuals or entities the Monitor proposes to engage, and within two weeks of a proposed engagement, PG&E shall advise the Monitor if any conflict exists. Disputes regarding conflicts shall be brought, in the

5

first instance, to the USAO for resolution. If, after consideration and direction from the USAO, either the Monitor or PG&E believes the conflict issue has not been satisfactorily resolved, either the Monitor or PG&E may request the Court's assistance in resolving the conflict issue.

3) PG&E shall pay reasonable compensation and expenses of the Monitor, and any persons hired by the Monitor pursuant to his/her authority hereunder. The Monitor, and any persons hired by the monitor, shall be compensated in accordance with their hourly rates or a reasonable fee determined by the Monitor based on applicable market rates.

4) The Monitor shall prepare annual budgets for review by PG&E and the USAO. The Monitor, PG&E, and the USAO shall meet at least annually to discuss improvements on the monitorship scope and/or cost. PG&E may raise any concerns or issues regarding the monitorship cost and/or annual budgets either with the Monitor or the USAO, and the Monitor and the USAO shall give reasonable consideration to defendant's concerns or issues. If, after consideration and direction from the USAO, either the Monitor or PG&E believes the monitorship cost and/or annual budget issue has not been satisfactorily resolved, either the Monitor or PG&E may request the Court's assistance in resolving the issue.

C. <u>Powers of the Monitor</u>:

1) The Monitor shall take such reasonable steps as, in the Monitor's view, may be necessary to be fully informed with respect to the Monitor's duties.

2) PG&E shall cooperate with the Monitor to allow the Monitor to fulfill his or her duties under this Order, including providing the Monitor with access to all non-privileged information, documents, records, facilities and/or employees, as reasonably requested by the Monitor.

    3) The Monitor shall maintain as confidential all non-public information, documents, and records it receives from PG&E, subject to the Monitor's reporting requirements herein. The Monitor shall take steps to ensure that any of his/her consultants or employees shall also maintain the confidentiality of all non-public information. Within thirty (30) days after the end of the Monitor's term, the Monitor shall either return anything obtained from PG&E, or certify that such information has been destroyed.

    4) To the extent that the Monitor seeks access to information that is privileged or attorney work product, PG&E shall use its best efforts to provide the Monitor with comparable information without compromising the asserted privilege or protection.

    5) The Monitor may ask the Court to review *in camera* any documents the Monitor believes are necessary for him or her to review, but which PG&E has refused to provide to the Monitor based upon a claim of privilege, such as the attorney-client privilege. The Court shall then determine whether such documents are protected by the attorney-client privilege and/or work product doctrine.

D. <u>Monitor's Reviews and Reports</u>:

    1) The Court may meet with the Monitor to discuss aspects of the monitorship as the Court sees fit.

    2) Initial Review and Report

        a. The Monitor shall conduct an initial review and prepare an initial report. The Monitor's initial review shall commence no later than 120 calendar days from the date of the engagement of the Monitor, unless otherwise agreed among PG&E, the Monitor, and the USAO. After consultation with PG&E and the USAO, the Monitor shall prepare an initial written work plan, which shall be submitted to PG&E and the USAO for review and comment no fewer than 60 calendar days prior to commencing

7

the initial review.  PG&E and the USAO may provide comment no later than 30 calendar days after receipt of the initial written work plan.  The Monitor's work plan for the initial review shall set forth such steps as are reasonably necessary to conduct an effective initial review, and include a proposed budget.  In developing the work plan and in carrying out the review, the Monitor is encouraged to coordinate with PG&E.  Any disputes between PG&E and the Monitor with respect to the work plan shall be brought, in the first instance, to the USAO for resolution.  If, after consideration and direction from the USAO, either the Monitor or PG&E believes the issue has not been satisfactorily resolved, either the Monitor or PG&E may request the Court's assistance in resolving the issue submitted to the USAO for review and consideration.  The Monitor shall issue a written report within 120 calendar days of completing the initial review setting forth the Monitor's assessment and making recommendations consistent with the goals and scope of the monitorship as set forth in Section I above.  The Monitor shall provide the initial written report to PG&E, the Probation Officer, the USAO, and the Board of Directors of PG&E.

3) Semi-Annual Reports

   a. The Monitor shall prepare reports on a semi-annual basis beginning six months after completion of the initial report setting forth the Monitor's continued assessment and making recommendations consistent with the goals and scope of the monitorship as set forth in Section I above.  The Monitor shall consult with PG&E concerning the Monitor's findings and recommendations on an ongoing basis.  The Monitor shall provide the semi-annual written reports to PG&E, the Probation Officer, the USAO and the Board of Directors of PG&E.

4) Final Report for Public Release

   a. At the conclusion of the monitorship, the Monitor shall prepare a final written report for public release setting forth the Monitor's assessment of the monitorship and PG&E's compliance with the goals of the monitorship as set forth in Section I above. The Monitor and PG&E shall work together to ensure the public final written report sufficiently protects PG&E's proprietary and business confidential information and does not otherwise compromise PG&E's business interests or competitive business information. The Monitor may take whatever steps the Monitor deems appropriate to protect the confidentiality of individuals, if any, mentioned in the final written report. If disagreement exists between the Monitor and PG&E concerning which portions of the report may be made public, the Court shall make the determination regarding the content of the final version of the publicly available report.

   b. PG&E shall have the option to file its own final public written report simultaneously with the Monitor's final public written report.

5) Potential Violation of Criminal Law

   a. If the Monitor identifies a potential violation of the criminal law, the Monitor shall promptly report the potential violation to the Probation Office, the USAO and PG&E.

6) Defendant's Adoption of Monitor's Recommendations

   a. To the extent the Monitor's report makes recommendations, PG&E shall begin the process of adopting all recommendations in the report within 120 calendar days after receiving the Monitor's report; provided, however, that within 30 calendar days after receiving the report, PG&E shall notify the Monitor and the USAO in writing of any recommendations that PG&E

9

considers inconsistent with applicable law or regulation or otherwise inadvisable and/or unreasonable. Should the Monitor amend its recommendation after receiving PG&E's notice, the Monitor shall extend the time period for beginning the process of adopting the recommendation. As to any recommendation on which PG&E and the Monitor do not agree, PG&E and the Monitor shall attempt in good faith to reach an agreement within 45 calendar days after PG&E serves the written notice. In the event PG&E and the Monitor are unable to agree on an acceptable alternative proposal, PG&E shall promptly consult with the USAO regarding the dispute. The USAO will submit a written opinion to PG&E and Monitor as to whether PG&E should adopt the Monitor's recommendation or an alternative proposal. If, after receiving the written opinion from the USAO, either the Monitor or PG&E believes the issue has not been satisfactorily resolved, either the Monitor or PG&E may request the Court's assistance in resolving the issue. Pending such determination, PG&E shall not be required to begin adoption of any contested recommendation(s). With respect to any recommendation that the Monitor determines PG&E cannot reasonably begin to adopt within 120 calendar days after receiving the USAO's written opinion or the Court's assistance, the Monitor shall extend the time period for beginning adoption of the recommendation with prior written approval of the USAO or the concurrence of the Court.

7) Extensions or Cancellation of Certain Reviews and Reports

   a. After consultation with PG&E, the Monitor may extend the time period for any review or report for up to 60 calendar days with prior written approval of the USAO. In the event that a deadline is extended, PG&E, the Monitor, and the

    USAO may agree to eliminate the Monitor's obligation to prepare a subsequent semi-annual review and report.

8) Early Termination of Monitorship

   a. If, reasonably promptly after completing three years of the monitorship or at any time thereafter, the Monitor or PG&E believe that PG&E's applicable policies and procedures, and implementation and enforcement thereof, are appropriate, and that further monitoring and review is not warranted, then the Monitor or PG&E may apply to the USAO for permission to forego the remaining reviews and reports. If the USAO approves, then the USAO shall make a recommendation to the Probation Officer and the Court to forego any remaining reviews and reports, and, upon approval by the Court, the engagement of the monitorship shall terminate.

   b. In no event shall the total term of the monitorship exceed the term of Probation.

9) In undertaking the assessments and reviews described in Subsection II.D of this Order, the Monitor shall formulate conclusions based on, among other things: (a) inspection of documents, including PG&E's current policies and procedures regarding compliance with the relevant gas transmission pipeline safety regulations; (b) on-site observations of PG&E's procedures at various locations; (c) meetings with PG&E employees and officers at mutually convenient times and places; (d) analyses, studies, and testing of PG&E's program with respect to gas transmission pipeline safety regulations, including results of CPUC audits; and (e) attendance at leadership governance meetings (i.e., Risk and Compliance meetings), other than during privileged portions of such meetings.

10)    Should the Monitor discover that PG&E or any PG&E employee has not complied with the gas transmission pipeline safety regulations, the Monitor shall promptly report

11

such non-compliances to PG&E's Chief Ethics and Compliance Officer and Senior Vice President, Gas Operations for further action. The Monitor shall address in his or her reports the appropriateness of PG&E's response to all uncured non-compliances, whether previously disclosed to the USAO or not. Further, in the event that PG&E, or any entity or person working directly with PG&E, refuses to provide information necessary for the performance of the Monitor's responsibilities and PG&E refuses to cure the failure to provide the information, the Monitor shall disclose that fact and supporting documentation to the USAO.

### III.   Successors

A. This Order shall be applicable to PG&E during PG&E's supervision by the Monitor.

B. In the event of a sale of the gas pipeline transmission system, assignment or transfer of all of PG&E's stock or assets to an unaffiliated third party pursuant to an arm's-length transaction, the terms of this Order shall continue to apply to PG&E and to any successor of PG&E.

C. The requirements of this Order are in addition to all other applicable requirements of law. This Order does not operate as a permit under federal, state or local regulations, and PG&E remains responsible for complying with all applicable federal, state and local laws, orders, and permits. PG&E may not claim that compliance with this Order is a defense to any action commenced under applicable federal, state, or local law. The government does not warrant that PG&E's compliance with this Order constitutes compliance with other applicable legal requirements including but not limited to CPUC, NTSB, and PHMSA requirements.

D. Within thirty days of this Order, PG&E shall provide written assurance to the USAO that it will not employ, retain, or otherwise be affiliated with the Monitor, or professionals

retained by the Monitor during the monitorship, for a period of at least one year from the date of termination of the monitorship.

SO ORDERED this  26th  day of January, 2017.

_____
UNITED STATES DISTRICT JUDGE

13