XAVIER BECERRA
Attorney General of California
JAMES G. ROOT
Senior Assistant Attorney General
BRETT J. MORRIS
Supervising Deputy Attorney General
NICHOLAS M. FOGG
Deputy Attorney General
State Bar No. 273919
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 210-7745
  Fax: (916) 322-2368
  E-mail: Nick.Fogg@doj.ca.gov
*Attorneys for Amicus Curiae*
*State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                     Plaintiff,<br><br>v.<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>                     Defendant. | 3:14-cr-00175-WHA<br><br>**ATTORNEY GENERAL'S AMICUS BRIEF REGARDING PG&E'S POTENTIAL CRIMINAL LIABILITY** |

This amicus brief responds to the Court's request that the state Attorney General identify California criminal offenses that PG&E[1] might have committed if it were determined that "any recent California wildfire" was "started by reckless operation or maintenance of PG&E power lines." (Amicus Invitation 1, ECF No. 952.) As directed by the Court, this brief assumes that the facts might ultimately show "reckless" conduct by PG&E. In so assuming, this brief does not

---

[1] Under California law, corporations may be held criminally liable just like a natural person. *See Sea Horse Ranch, Inc. v. Superior Court*, 24 Cal. App. 4th 446, 456 (1994).

express or imply any position on any factual question, on the findings of any investigation by any party or authority, or on the actual existence of any possible criminal liability.

It is important to note that in California criminal law the word "reckless" could describe various mental states. These states range from ordinary negligence, which generally will not support a criminal conviction, to malice aforethought, which is the mental state for murder.

Given that range of potential mental states, starting a wildfire by recklessly operating or maintaining power lines could implicate three different categories of California criminal offenses. First, misdemeanor offenses related to vegetation and power lines. Second, felony and misdemeanor offenses for starting a fire. Third, homicide offenses like implied-malice murder and involuntary manslaughter.

## I. FAILING TO CLEAR VEGETATION FROM A POWER LINE OR POLE CONSTITUTES A CRIME IF DONE WITH CRIMINAL NEGLIGENCE

Two misdemeanors in the California Public Resources Code address vegetation around power lines and poles. Section 4292 requires a utility to clear a firebreak around power poles or towers located on forest land. Cal. Pub. Res. Code § 4292. Section 4293 requires a utility to keep vegetation a set number of feet from power lines that run through forest land. Cal. Pub. Res. Code § 4293. The number of feet depends on the voltage of the power line. Cal. Pub. Res. Code § 4293. Section 4293 also requires a utility to remove trees or limbs that may come into contact with the lines. Cal. Pub. Res. Code § 4293. Unlike the other offenses discussed in this brief, a utility need not start a fire to violate sections 4292 or 4293. To satisfy the intent requirement of both misdemeanors, the People must prove willfulness or criminal negligence. Cal. Pub. Res. Code § 4021; *Cf.* Cal. Penal Code § 7(1) (defining "willfully" as "a purpose or willingness to commit [an] act"); *People v. Peabody*, 46 Cal. App. 3d 43, 47 (1975) (requiring criminal negligence).

An act is criminally negligent when a reasonable person "would foresee that the act would cause a high degree of risk of death or great bodily harm." *People v. Rodriguez*, 186 Cal. App. 2d 433, 440 (1960). In other words, criminal negligence entails "such a departure from" the conduct of that reasonable person "as to be incompatible with a proper regard for human life . . . ."

*People v. Penny*, 44 Cal. 2d 861, 879 (1955). Criminal negligence is the same as gross negligence and is a more culpable state than ordinary negligence. *People v. Nicolas*, 8 Cal. App. 5th 1165, 1174 (2017).

California courts have not further elaborated on the other elements of these misdemeanors. *See* Cal. Pub. Res. Code § 4021 (setting offense as misdemeanor).

## II. STARTING A WILDFIRE CONSTITUTES A CRIME IF DONE RECKLESSLY OR WITH CRIMINAL NEGLIGENCE

California law makes it a felony to "recklessly set[] fire to or burn[] or cause[] to be burned" forest land or a structure. Cal. Penal Code § 452; *see* Cal. Penal Code § 450(b) (defining "Forest land" to include "brush covered land" and "grasslands"); CALCRIM No. 1532 (model jury instruction for recklessly causing a fire). California also makes it a misdemeanor to negligently "set fire or cause fire to be set to any forest" without the landowner's permission. Cal. Pub. Res. Code §§ 4021, 4421. Neither the Legislature nor the courts have elaborated on the conduct necessary to violate these statutes.

But they have explained the necessary intent. Recklessness, as required for the felony offense, means the "aware[ness] of and conscious[] disregard[] [of] a substantial and unjustifiable risk" that conduct will cause forest land to burn. Cal. Penal Code § 450(f). This disregard of risk must "constitute[] a gross deviation from the standard of conduct" of a reasonable person in the same situation. Cal. Penal Code § 450(f). The negligence required for the misdemeanor offense is criminal negligence. *E.g.*, *People v. Peabody*, 46 Cal. App. 3d 43, 47 (1975).

In short, both offenses criminalize the burning of forest land, but the felony requires recklessness instead of criminal negligence. Because of this difference, the felony requires a conscious disregard of risk while the misdemeanor does not. In this regard, these offenses mirror the differences between implied-malice murder and involuntary manslaughter.

## III. MURDER AND MANSLAUGHTER REQUIRE PROXIMATELY CAUSING A DEATH AND EITHER MALICE OR CRIMINAL NEGLIGENCE

### A. Involuntary manslaughter requires a killing done with criminal negligence

Involuntary manslaughter is an unlawful killing during the commission of a predicate act that is done with criminal negligence. Cal. Penal Code § 192(b); CALCRIM No. 581 (model jury instruction for involuntary manslaughter). The predicate acts include lawful acts and a variety of unlawful acts. *E.g., People v. Butler*, 187 Cal. App. 4th 998, 1007 (2010). This brief treats the operating and maintaining of power lines as the predicate acts and assumes that they were lawful acts but done recklessly.[2]

To support an involuntary manslaughter conviction, an act must proximately cause a death. *Butler*, 187 Cal. App. 4th at 1009. Proximate causation "requires that the death was a reasonably foreseeable, natural and probable consequence" of the act instead of an "insignificant or theoretical" consequence. *Id.* at 1009-10.

And the actor must perform the lawful act with criminal negligence. *People v. Penny*, 44 Cal. 2d 861, 869 (1955).

### B. Implied-malice murder requires a killing done in conscious disregard for life

Murder is the unlawful killing of a person with malice aforethought. Cal. Penal Code § 187; CALCRIM No. 520 (model jury instruction for murder). To commit murder, the actor must proximately cause the death of another. *E.g., People v. Concha*, 47 Cal. 4th 653, 660 (2009). And the actor must do so with express or implied malice. *Id.* Express malice means that the actor intended to kill. Cal. Penal Code § 188. We do not understand the Court's order to raise any question regarding an actual intent to kill, and thus express malice plays no role here. Implied malice means that the "circumstances" of the killing "show" the actor's "abandoned and malignant heart." Cal. Penal Code § 188.

---

[2] Operating and maintaining power lines in certain ways could violate two misdemeanor provisions discussed earlier in this brief. Cal. Pub. Res. Code §§ 4292, 4293. Treating those misdemeanors as the predicate acts would not change the causation and intent analysis.

4

Courts have interpreted implied malice as having "both a physical and a mental component." *People v. Chun*, 45 Cal. 4th 1172, 1181 (2009) (footnote omitted). The "performance of an act" that is "dangerous to life" fulfills the physical component. *Id.* The actor's knowledge "that his act endangers the life of another" and his decision to "act[] with a conscious disregard for life" fulfills the mental component. *Id.*

Involuntary manslaughter is a lesser included offense of implied-malice murder. *E.g.*, *People v. Thomas*, 53 Cal. 4th 771, 813 (2012). Both offenses require the same conduct, but murder requires a greater showing of intent. Unlike criminal negligence, malice entails "a subjective awareness of a higher degree of risk" and includes "an element of wantonness." *People v. Watson*, 30 Cal. 3d 290, 296 (1981). Wantonness means "consciousness of one's conduct, intent to do or omit the act in question, . . . and reckless disregard of consequences." *People v. Richie*, 28 Cal. App. 4th 1347, 1361 (1994) (citation omitted). Because of these differences, implied-malice murder uses a subjective standard for intent while involuntary-manslaughter uses an objective standard. *Watson*, 30 Cal. 3d at 296.

The California and federal involuntary-manslaughter statutes closely resemble one another. *Compare* Cal. Penal Code § 192(b) *with* 18 U.S.C. § 1112(a). But federal courts have interpreted the federal statute as containing two elements not required under California law. First, the federal definition of criminal negligence includes wantonness. *United States v. Keith*, 605 F.2d 462, 463-64 (9th Cir. 1979). Second, federal law requires the actor to have some subjective knowledge of the risks posed by his actions. *Id.*

## IV. POTENTIAL CRIMINAL LIABILITY TURNS ON CAUSATION AND INTENT

If PG&E "started" a wildfire "by [its] reckless operation or maintenance of [] power lines," its criminal liability, if any, would depend on the degree of its recklessness. (Amicus Invitation 1, ECF No. 952.) As discussed at the beginning of this brief, "recklessness" could include the mental state of multiple offenses. These mental states resemble a sliding scale. As the mental state becomes more culpable, the applicable offense becomes more serious. At ordinary negligence, PG&E would not have committed any of the criminal offenses discussed in this brief. At criminal negligence, PG&E could have committed involuntary manslaughter, starting a fire

5

without permission, and failing to keep its lines and poles clear of vegetation. At recklessness as defined by California Penal Code section 450(f), PG&E could have committed the felony of unlawfully starting a fire. And at malice, PG&E could have committed murder.

    Determining PG&E's potential criminal liability, if any, for recent wildfires would require an investigation into the cause or causes of those fires. If PG&E caused any of the fires, the investigation would have to extend into PG&E's operations, maintenance, and safety practices to determine whether criminal statutes were violated with the requisite mental intent. This brief expresses no position on any such factual questions.

Dated: December 28, 2018

Respectfully submitted,

XAVIER BECERRA
Attorney General of California
BRETT J. MORRIS
Supervising Deputy Attorney General


*/s/ Nicholas M. Fogg*
NICHOLAS M. FOGG
Deputy Attorney General
*Attorneys for Amicus Curiae
State of California*

SA2018801523
33718450 (002).docx

6

Attorney General's Amicus Brief (3:14-cr-00175-WHA)

# CERTIFICATE OF SERVICE

Case Name:  USA v. PGE                    No.  3:14-cr-00175-WHA

I hereby certify that on <u>December 28, 2018,</u> I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**ATTORNEY GENERAL'S AMICUS BRIEF REGARDING PG&E'S POTENTIAL CRIMINAL LIABILITY**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>December 28, 2018,</u> at Sacramento, California.

| J. Valdez | /s/ J. Valdez |
|---|---|
| Declarant | Signature |

SA2016300819
POS.docx