JENNER & BLOCK LLP
    Randy Mehrberg (*pro hac vice*)
    RMehrberg@jenner.com
    Reid J. Schar (*pro hac vice*)
    RSchar@jenner.com
    353 N. Clark Street
    Chicago, IL  60654-3456
Telephone:  +1 312 222 9350
Facsimile:   +1 312 527 0484

CLARENCE DYER & COHEN LLP
    Kate Dyer (Bar No. 171891)
    kdyer@clarencedyer.com
    899 Ellis Street
    San Francisco, CA  94109-7807
Telephone:   +1 415 749 1800
Facsimile:    +1 415 749 1694

Attorneys for Defendant PACIFIC GAS AND ELECTRIC COMPANY

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>    v.<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>                    Defendant. | Case No. 14-CR-00175-WHA<br><br>**RESPONSE TO NOTICE RE CALIFORNIA WILDFIRES**<br><br>Judge:  Hon. William Alsup<br>Date:   December 31, 2018 |

      Defendant Pacific Gas & Electric Company ("PG&E") submits this response to the Court's Notice re California Wildfires dated November 27, 2018:

1.    What requirements of the judgment herein, including the requirement against further federal, state, or local crimes, might be implicated were any wildfire started by reckless operation or

maintenance of PG&E power lines?

Response:

    If it were determined that a wildfire had been started by reckless operation or maintenance of PG&E power lines, that would, if the specific circumstances gave rise to a violation of federal, state, or local statutes, implicate the requirements of Special Condition of Probation #1 of the judgment, which provides that while on probation, PG&E shall not commit another Federal, State, or local crime.

2. What requirements of the judgment herein might be implicated be any inaccurate, slow, or failed reporting of information about any wildfire by PG&E?

Response:

a. If it were determined that PG&E had failed to meet reporting requirements related to wildfires, the particular reporting failure would have to be reviewed for violation of federal, state, or local statutes. If any such criminal statutes were violated, that would implicate the requirements of Special Condition of Probation #1 of the judgment, which provides that while on probation, PG&E shall not commit another Federal, State, or local crime.

b. If it were determined that PG&E had failed to meet its reporting requirements to U.S. Probation in connection with wildfires, depending on the particular reporting failure, that would implicate the following requirements of the judgment:

    i. Condition of Probation #2, which requires PG&E to answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

    ii. Condition of Probation #5, which requires PG&E to notify the probation officer within seventy-two hours of any criminal prosecution, major civil litigation, or administrative proceeding against PG&E;

    iii. Special Condition of Probation #8, which requires PG&E to notify the probation officer immediately upon learning of the commencement of any major civil action, criminal prosecution, or administrative proceeding against PG&E, or any investigation or formal inquiry by governmental authorities regarding the organization.

3. What specific steps has the monitor herein taken to monitor and improve PG&E safety and reporting with respect to power lines and wildfires?

Response:

Following the January 2017 Judgement and Order in this matter, the Court appointed the Honorable Mark Filip (Ret.) to serve as independent federal monitor over certain aspects of PG&E's business.  To meet the goals and the requirements of the Court's Order, in April of 2017 the Monitor and his team began reviewing and monitoring various areas, including: (1) PG&E's safety culture, (2) PG&E's enterprise Compliance and Ethics program, and (3) the specific requirements enumerated in paragraphs I.B.(1)-(15) of the Order.  While much of this work focuses on PG&E's natural gas operations, certain aspects include an enterprise-wide evaluation, including aspects of safety, such as safety culture, risk management, and compliance and ethics.  To conduct this scope of work, the Monitor assembled a team of dozens of lawyers and subject matter experts in varied areas such as integrity management, gas transmission, utility operations, risk evaluation, compliance and ethics, and safety.

In November 2017, as a result of the October 2017 North Bay wildfires, the Monitor, the United States Attorneys' Office and PG&E agreed that the Monitor team would also evaluate certain aspects of PG&E's electric distribution operations, including reviewing the adequacy of PG&E's: (1) vegetation management plan, (2) electric pole and equipment maintenance and inspection programs, and (3) emergency response and restoration practices. Given the multiple independent lawsuits related to the North Bay wildfires, as well as the ongoing regulatory

review by various state and local agencies, the parties further agreed that that the Monitor team would not evaluate or opine on the cause of any of the North Bay fires. Consistent with this supplemental scope, the Monitor onboarded new members to his team, including additional attorneys and industry veterans with expertise in the relevant areas of electric operations.

The Monitor team has undertaken numerous activities focused on PG&E's electric operations, including:

- Meeting with dozens of electric employees, ranging from the most senior leaders to field employees;
- Conducting multiple field visits, including to inspection projects related to electric distribution poles and equipment, base camp established for response and restoration in wildfire affected areas, and PG&E's Emergency Operations Center and Wildfire Safety Operations Center;
- Participating in operational meetings and telephone calls, such as status calls on operational performance and risks related to electric distribution and PG&E's Public Safety Power Shutoff program;
- Receiving real-time emergency response and operational updates during and following the 2017 and 2018 wildfires; and
- Receiving hundreds of files in response to data requests related to various aspects of electric operations, including: distribution maintenance programs, wildfire safety operations, pole and wire inspection and maintenance, vegetation clearance/management and emergency response.

More broadly, from the start of the monitorship, the Monitor team has been and remains engaged with PG&E on a wide range of areas, many of which relate to the company's overall safety and culture. For example, over approximately the last 20 months, the Monitor team has:

- Attended hundreds of meetings at all levels of the company, ranging from Board of

Directors and senior officer meetings to all-employee town halls, operational meetings and field visits;

- Periodically attended Board and Board Committee Meetings, including executive sessions with the Board;

- Traveled throughout PG&E's service territory to attend field projects such as equipment testing and inspection work, and conduct interviews and meetings with over 200 employees;

- Visited operational facilities including stations, natural gas storage fields, training facilities, crew yards, and service centers;

- Conducted panel discussions with dozens of employees, focused primarily on compliance and ethics and safety culture;

- Received thousands of files from PG&E (over 35 gigabytes of data) in response to requests for information;

- Maintained regular communications with PG&E, including participating in standing weekly calls to discuss emerging issues and general updates; and

- Established a Monitor Helpline for PG&E employees to raise concerns directly to the Monitor team, which PG&E has publicized among its workforce.

4. Provide an accurate and complete statement of the role, if any, of PG&E in causing and reporting the recent Camp Fire in Butte County and all other wildfires in California since the judgment herein.

Response:

PG&E's response to Question 4 is structured in three parts, as follows:

In part one, in response to the Court's request for information concerning PG&E's role in "reporting" wildfires, we provide an overview of the various ways in which PG&E has submitted information to its regulator, the California Public Utilities Commission ("CPUC"), as well as to the

California Department of Forestry and Fire Protection ("CAL FIRE"), since the Final Judgment.[1] This includes both routine required regulatory reports and responses to investigatory data, document and information requests. As discussed below, because of the volume of these materials, PG&E has not submitted to the Court all of the reports that PG&E has made to CAL FIRE and the CPUC related to wildfires in its service territory during 2017 and 2018, but will provide them at the Court's request.[2] We do, however, provide examples of these reports for the Court's review.

In part two, we provide a summary of the facts concerning the November 2018 Camp Fire that began in Butte County. CAL FIRE has not released its conclusions about the cause of the Camp Fire, although it has publicly identified two potential incident locations at which PG&E facilities are located. PG&E is actively cooperating with investigations into the Camp Fire by both CAL FIRE and the CPUC. To assist the Court in understanding the facts relevant to the potential cause of the Camp Fire, PG&E has included a factual report that is attached as Exhibit A. A glossary of terms referenced in that report is attached as Exhibit B and a guide to reviewing the information provided in the report is attached as Exhibit C.[3]

In part three, we discuss the wildfires that impacted the North Bay and other parts of Northern California during October 2017. While CAL FIRE has reported that more than 172 wildfires started on October 8 and the following days as strong winds moved through Northern California, the focus of the CPUC, CAL FIRE and civil plaintiffs has been on a subset (21) of those fires (referred to

---

[1] CAL FIRE is generally the lead investigator of all wildfires in the state. In certain instances, depending upon the location of a particular fire, local fire departments may also conduct investigations. Wildfires that occur on Federal property may be investigated by the United States Forest Service. The Safety and Enforcement Division ("SED") of the California Public Utilities Commission ("CPUC") also conducts investigations in connection with wildfires that may have been caused by PG&E's equipment.

[2] PG&E has interpreted Question 4 of the Court's order to refer only to wildfires that have occurred within PG&E's service territory, as fires that originated outside of PG&E's service territory could not have been caused by PG&E equipment.

[3] The guide attached as Exhibit C was previously provided to the CPUC in connection with the submission of fact reports to the CPUC by PG&E concerning the October 2017 North Bay Wildfires. Those reports are discussed further below.

here as the "North Bay Wildfires").

PG&E's investigation into the causes of the North Bay Wildfires is ongoing. Those wildfires are the subject of coordinated civil litigation pending before the Honorable Curtis E.A. Karnow in the Superior Court of California-County of San Francisco. That coordinated litigation involves more than 3,000 individual plaintiffs, dozens of insurance companies and various local and county-level government entities. Discovery is ongoing and there have not been any rulings with respect to cause and origin for any of the North Bay Wildfires. PG&E is still in the process of obtaining documents, data, photographs and eyewitness accounts of issues relevant to the cause and origin of each of the North Bay Wildfires.

PG&E is also awaiting the opportunity to review most of the reports that CAL FIRE has prepared concerning the North Bay Wildfires. In addition, PG&E has not been able to examine in detail any of the potentially relevant evidence that CAL FIRE collected from the various potential origin points. Generally speaking, when a large wildfire occurs, CAL FIRE will cordon off areas of interest and limit access to those locations until after it has completed its initial investigation and collected the evidence that it believes is relevant to the potential cause and origin of a particular fire. CAL FIRE will then take that evidence into its possession and restrict access to it. This is the approach that CAL FIRE took with respect to both the Camp Fire and the North Bay Wildfires and PG&E therefore has not yet had access to the evidence that appears CAL FIRE has identified as relevant.[4] Thus, while CAL FIRE has released at least its high-level conclusions with respect to 18 of the North Bay Wildfires and has, in each instance, determined that the relevant fire was attributable to PG&E's facilities, PG&E has not been able to review the detail behind most of those findings or the evidence related to any of them.

---

[4] PG&E, along with the civil plaintiffs in litigation concerning the North Bay Wildfires, have been working with CAL FIRE, the relevant district attorneys and the office of the Attorney General to arrange for access to the CAL FIRE evidence and reports.

In an effort to provide the Court with current, detailed information concerning the potential cause of each of the North Bay Wildfires, PG&E has included with this submission factual reports concerning the North Bay Wildfires that it previously provided to the CPUC in response to regulatory data requests. For each of those fires, PG&E also created supplemental reports for the Court that include additional information that is available to PG&E, including information that has become available through further investigation and the discovery process. PG&E did not submit factual reports to the CPUC for the Blue Fire, Pressley Fire, or the Highway 37 Fire ("37 Fire"), three of the North Bay Wildfires that did not meet the CPUC's reporting criteria. PG&E has therefore prepared a factual report for those fires for the Court in response to Question 4.[5]

The second and third parts described above, and the corresponding factual reports, provide detailed information concerning the Camp Fire and the 21 North Bay Wildfires that are alleged to have been attributable to PG&E's facilities since the Final Judgment. In responding to the Court's question, however, it is important to note that CAL FIRE has reported approximately 530 wildfires in PG&E's service territory during 2017 and 2018. Most of those wildfires are not alleged to relate to PG&E equipment. For example, one of the largest fires in 2018 in PG&E's service territory was the Carr fire, which CAL FIRE has indicated was caused by mechanical failure of a vehicle. Of the approximately 315 wildfires reported by CAL FIRE in 2017 in PG&E's service territory, approximately 40 of those fires (including the 21 North Bay Wildfires) have been alleged to be attributable to PG&E facilities.

With respect to wildfires that may involve PG&E equipment other than the Camp Fire and the North Bay Wildfires, PG&E has included a report that it submitted to the CPUC for the calendar year 2017. This report, which can be found at Exhibit D, includes information concerning wildfires

---

[5] The reports provided with this submission reference a significant amount of data, documents and testimony collected by PG&E. In light of the volume of these materials, PG&E has not included all of the cited materials with this submission but will provide that information to the Court upon request.

as well as non-wildfire fire events (such as structure fires) in PG&E's service territory, including information about the potential cause of each fire. A similar report for fires that occurred in 2018 will be filed with the CPUC in April 2019, which is when it is due. PG&E has, however, filed 17 electric incident reports ("EIR") with the CPUC in 2018 for incidents that may have been related to wildfires, including the two EIRs submitted concerning incidents that may be related to the Camp Fire. The EIR reports that may be related to the Camp Fire, described in additional detail below, are attached as Exhibits E & F.

I.  PG&E Wildfire Reporting Mechanisms

PG&E routinely submits EIRs to the CPUC when the Commission's reporting criteria are met. The CPUC requires electric utilities such as PG&E to report to the CPUC incidents that are attributable or allegedly attributable to utility-owned facilities and (1) result in a fatality or personal injury rising to the level of in-patient hospitalization; (2) are the subject of significant public attention or media coverage; or (3) involve damage to property of the utility or others estimated to exceed $50,000. (CPUC Decision 06-04-055 Appendix B.) Within 20 business days of a reportable incident, the utility must provide the CPUC with a written account of the incident, including a description of the nature of the incident, its cause and estimated damage, as well as a description of the utility's response to the incident and the measures it took to repair facilities and/or remedy any related problems on the system which may have contributed to the incident (the "20 day report"). An example of each type of report can be found at Exhibits G & H.

PG&E has submitted a total of 131 EIRs from January 1, 2017 to December 20, 2018. Of those 131 EIRs, 86 EIRs could relate to fire incidents. Not all of those fire-related EIRs, however, are potentially related to wildfires. Of the 86 EIRs, 43 EIRs potentially relate to wildfires: 26 EIRs in 2017 and 17 EIRs in 2018.[6]

---

[6] An example of a potentially fire-related EIR that does not relate to a wildfire is attached as Exhibit I. That EIR concerns a structure fire (i.e., house fire) that may have been related to an electrical incident.

In addition, on February 5, 2014, the CPUC adopted a Fire Incident Data Collection Plan, which requires all electric utilities to submit an annual report to the CPUC of all fire-related reportable events that could include PG&E facilities meeting the following conditions: "(a) A self-propagating fire of material other than electrical and/or communication facilities, [where] (b) The resulting fire traveled greater than one linear meter from the ignition point, and (c) The utility has knowledge that the fire occurred". (CPUC Decision 14-02-015.) Fires whose ignition is not associated with utility facilities are excluded from this reporting requirement, (*id.* Appendix C-3 n.4), as the CPUC's objective is the collect data "for all fires started by overhead power-line facilities". (*Id.* at 79.) Pursuant to the Fire Incident Data Collection Plan, PG&E reported to the CPUC 362 reportable fire-related incidents between January 1, 2017 and December 31, 2017. Many of the fires contained in the report are not wildfires. Many of those incidents also involve third-parties (such as, for example, a helicopter or a car contacting PG&E's facilities). A copy of that report is attached as Exhibit D. As noted, the 2018 report will be submitted in April 2019.

In addition to the EIRs and the materials submitted pursuant to the Fire Incident Data Collection Plan, PG&E routinely provides data, documents and information to the CPUC, CAL FIRE and other entities investigating PG&E's potential role in wildfires. By way of example, in connection with the October 2017 North Bay Wildfires (discussed in further detail below), PG&E has responded to more than 400 specific requests for information and documents from the CPUC. In connection with those responses, PG&E has produced to the CPUC more than 6,500 documents totaling more than 23,000 pages. PG&E is continuing to respond to requests from the CPUC regarding the October 2017 North Bay Wildfires.

PG&E has also been actively responding to data and information requests from CAL FIRE in connection with the October 2017 North Bay Wildfires. As of the date of this submission, PG&E has responded to at least 8 CAL FIRE data requests for the 2017 North Bay Wildfires, many of

which contain multiple questions, and produced more than 5,000 files constituting more than 140,000 pages.

PG&E is similarly responding to requests from both CAL FIRE and the CPUC with respect to the more recent Camp Fire.

In certain instances, PG&E will also report the existence of a wildfire to emergency personnel if PG&E is a witness to the initial origin or spread of a wildfire. For example, as discussed in further detail below, a PG&E employee called the PG&E switchboard in the first hour of the Camp Fire (based on CAL FIRE's estimated time of origin) to report the fire, and the switchboard called emergency services.

II.     November 2018 Camp Fire

According to information provided by CAL FIRE, the Camp Fire began at 6:33 a.m. on the morning of November 8, 2018. By the time it was fully contained, the Camp Fire burned a reported 153,336 acres and destroyed a reported total of 18,793 structures. CAL FIRE has reported 86 fatalities from the Camp Fire.

CAL FIRE has publicly identified two potential origin points for the Camp Fire. One location is approximately one mile northwest of the unincorporated town of Pulga near a series of PG&E transmission lines and, in particular, near Tower :27/222 on PG&E's Caribou-Palermo 115 kV Transmission Line (the "Camp 1 incident location"). The other location is off Pulga Road at Camp Creek Road near Jarbo Gap, in the vicinity of a PG&E distribution line (the "Camp 2 incident location").

On November 8, 2018, PG&E filed with the CPUC an EIR (Incident No. 181108-9002) concerning an outage on the Caribou-Palermo 115 kV Transmission Line in Butte County at approximately

6:15 a.m. on November 8, 2018. This EIR concerns the Camp 1 incident location and is attached as Exhibit E.

On November 16, 2018, PG&E filed with the CPUC an EIR (Incident No. 181116-9015) concerning an outage on the Big Bend 1101 12 kV Circuit in Butte County at approximately 6:45 a.m. on November 8, 2018. This EIR concerns the Camp 2 incident location and is attached as Exhibit F.

On December 11, 2018, PG&E filed with the CPUC a 20-Day Supplemental Report providing additional information related to the events described in those EIRs. That report is attached as Exhibit J. As described in the 20-Day Supplemental Report, PG&E observed damage to PG&E equipment at both incident locations during patrols that took place after the onset of the Camp Fire and when it assisted CAL FIRE in collecting evidence at the incident locations.

PG&E additionally submitted a report to the Department of Energy. This report is attached as Exhibit K.

PG&E employees working at nearby facilities were also among the first to observe the Camp Fire. One of those employees called the fire into a PG&E switchboard, which then contacted emergency services. This call included an observation of fire, which was in the vicinity of Tower :27/222.

Exhibit A is a factual report that PG&E has prepared for this submission concerning the potential cause and origin of the Camp Fire.

III.   October 2017 North Bay Wildfires

Beginning on October 8, 2017, multiple wildfires spread through Northern California, including Napa, Sonoma, Butte, Humboldt, Mendocino, Lake, Nevada and Yuba Counties, as well as in the

area surrounding Yuba City. According to the CAL FIRE California Statewide Fire Summary of something that dated October 30, 2017, at the peak of the wildfires, there were 21 major wildfires in Northern California that, in total, burned over 245,000 acres and destroyed an estimated 8,900 structures. The wildfires resulted in a reported 44 fatalities.

As noted above, PG&E previously provided detailed factual reports concerning a number of these fires to the CPUC at its request. PG&E is submitting those detailed reports in response to the Court's request for information concerning PG&E's role in causing any wildfires since the Final Judgment.

Since receiving the Court's November 27, 2018, Order, PG&E has undertaken an effort to collect additional potentially relevant information concerning the North Bay Wildfires for which it previously submitted factual reports to the CPUC. PG&E has also drafted a factual report for the Court related to the Blue Fire, the Pressley Fire and the 37 Fire since they were not reported to the CPUC per the required reporting criteria. In preparing these additional reports, PG&E gathered information from among the following sources: (1) formal third-party witness discovery in the North Bay Wildfires Litigation (including, for example, third-party depositions); (2) information identified within PG&E as part of its ongoing investigations or response to litigation discovery requests; and (3) publicly available information that PG&E has gathered since submitting its initial fact reports.

The factual reports concerning the 2017 North Bay Wildfires are organized as follows:

| Fire Name[7] | Original CPUC Report | Report Prepared in Response to Question 4 |
|---|---|---|
| Abode | Exhibit L | Exhibit EE |

---

[7] This table identifies reports for 23 fires, rather than 21, because: (1) the CPUC requested separate reports for the Potter Valley and Redwood incidents, both of which CAL FIRE has treated together as part of the Redwood/Potter Valley Fire; and (2) we are providing the Court with a report for the Sullivan fire, which the CPUC did not previously request, and which is not one of CAL FIRE's 21 major wildfires, but is part of pending litigation.

| Fire Name[7] | Original CPUC Report | Report Prepared in Response to Question 4 |
|---|---|---|
| Atlas | Exhibit M | Exhibit FF |
| Blue | N/A[8] | Exhibit GG |
| Cascade | Exhibit N | Exhibit HH |
| Cherokee | Exhibit O | Exhibit II |
| Honey | Exhibit P | Exhibit JJ |
| LaPorte | Exhibit Q | Exhibit KK |
| Lobo | Exhibit R | Exhibit LL |
| Maacama | Exhibit S | Exhibit MM |
| McCourtney | Exhibit T | Exhibit NN |
| Norrbom | Exhibit U | Exhibit OO |
| Nuns | Exhibit V | Exhibit PP |
| Oakmont | Exhibit W | Exhibit QQ |
| Partrick | Exhibit X | Exhibit RR |
| Pocket | Exhibit Y | Exhibit SS |
| Point | Exhibit Z | Exhibit TT |
| Potter Valley | Exhibit AA | Exhibit UU |
| Pressley | N/A | Exhibit VV |
| Redwood | Exhibit BB | Exhibit WW |
| Sullivan | N/A | Exhibit XX |
| Sulphur | Exhibit CC | Exhibit YY |
| Tubbs | Exhibit DD | Exhibit ZZ |
| 37 | N/A | Exhibit AAA |

---

[8] N/A applies to situations where the CPUC did not request a factual report (i.e., the Blue, Pressley, Sullivan and 37 Fires).

As noted, the North Bay Wildfires are subject to litigation in a coordinated proceeding before Judge Curtis E.A. Karnow in the Superior Court for the State of California, San Francisco. As part of that litigation, PG&E has produced voluminous data and documents and has had dozens of its employees deposed. PG&E and plaintiffs have also deposed a number of third-party witnesses to certain of the October 2017 North Bay Wildfires. Discovery is ongoing and the parties have not yet begun expert disclosures. PG&E has not included its protected work product as part of this submission.

As noted, the North Bay Wildfires are subject to litigation in a coordinated proceeding before Judge Curtis E.A. Karnow in the Superior Court for the State of California, San Francisco. As part of that litigation, PG&E has produced voluminous data and documents and has had dozens of its employees deposed. PG&E and plaintiffs have also deposed a number of third-party witnesses to some of the October 2017 North Bay Wildfires. Discovery is ongoing and the parties have not yet begun expert disclosures. PG&E has not included its protected work product as part of this submission.

Finally, as additional relevant background to the Court's question, we note that CAL FIRE has issued its determination on the causes of 18 of the North Bay Wildfires.[9] In each instance, CAL FIRE has alleged that the relevant fire was caused by PG&E's equipment. CAL FIRE has also alleged that 11 of the 18 North Bay Wildfires for which it has completed its investigations involved violations of state law. In those instances, CAL FIRE referred the relevant wildfire to the local

---

[9] CAL FIRE has not yet announced its determination of cause for the Tubbs fire, which is the largest of the North Bay Wildfires. The Tubbs fire, located in Napa and Sonoma counties, started the evening of October 8, 2017, and burned a reported total of 36,807 acres and destroyed a reported total of 5,636 structures. There were 21 reported civilian fatalities. Pursuant to the governing accounting requirements, PG&E has disclosed in its filings with the United States Securities & Exchange Commission that PG&E has determined that a loss for claims in connection with 14 of the North Bay Wildfires—La Porte, McCourtney, Lobo, Honey, Redwood, Sulphur, Cherokee, Blue, Pocket and Sonoma/Napa merged fires (which include the Nuns, Norrbom, Adobe, Partrick and Pythian fires)—is probable and estimable.

district attorney's office for review.[10]

While CAL FIRE publicly released its investigative reports for the wildfires for which it did not allege violations of state law, it has yet to release the investigative reports for any of the fires that have been referred to county district attorneys' offices. In addition, PG&E has not been able to examine potentially relevant evidence that CAL FIRE collected from the potential areas of origin of each of the North Bay Wildfires. As a result, PG&E, its counsel and its expert investigators have not yet been able to view the potentially most significant evidence with respect to any of the October 2017 North Bay Wildfires.

For the Court's convenience, PG&E has attached CAL FIRE press releases concerning the results of its investigations into 18 of the 21 North Bay Wildfires as Exhibits BBB through DDD.[11]

---

[10] CAL FIRE forwarded its investigation report related to the Cascade Fire to the local district attorney's office, although it acknowledged in its press release that it found no violations of the Public Resource Code. On the same day that CAL FIRE announced its investigative findings, the Yuba County District Attorney announced that he did not intend to file charges against PG&E concerning the Cascade Fire. CAL FIRE subsequently released its investigation report.

[11] PG&E understands that those North Bay Wildfires that have been referred to local district attorney's offices remain under review by those offices, except for the Honey, LaPorte and Cherokee fires which were resolved through civil settlements.

|   |   |
|---|---|
|   | Respectfully Submitted, |
| Dated: December 31, 2018 | JENNER & BLOCK LLP |

By:  /s/ Reid J. Schar
   Randy Mehrberg (*pro hac vice*)
   Reid J. Schar (*pro hac vice*)

CLARENCE DYER & COHEN LLP
   Kate Dyer (Bar No. 171891)

Attorneys for Defendant PACIFIC GAS AND ELECTRIC COMPANY