ORIGINAL

1  XAVIER BECERRA
   Attorney General of California
2  TRACY L. WINSOR
   Supervising Deputy Attorney General
3  KELLY A. WELCHANS
   Deputy Attorney General
4  State Bar No. 253191
     1300 I Street, Suite 125
5    P.O. Box 944255
     Sacramento, CA 94244-2550
6    Telephone: (916) 210-7804
     Fax: (916) 327-2319
7    E-mail: Kelly.Welchans@doj.ca.gov
   *Attorneys for Non-Party*
8  *Department of Forestry and Fire Protection*

**FILED**

JAN 28 2019

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | 3:14-cr-00175-WHA |
|---|---|
| Plaintiff, | **CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION'S SUBMISSION IN RESPONSE TO COURT'S JANUARY 9, 2019, REQUEST [Dkt. 961]** |
| v. | |
| PACIFIC GAS AND ELECTRIC COMPANY, | |
| Defendant. | |

# CAL FIRE'S INFORMATIONAL RESPONSE TO REQUESTS FOR INFORMATION IN JANUARY 9, 2019, ORDER TO SHOW CAUSE

On January 9, 2019, the Court invited the California Department of Forestry and Fire Protection (CAL FIRE) to submit information to the Court in this matter. Specifically, the Court requested input from CAL FIRE concerning (1) "its investigation into the specifics of wildfires caused by PG&E," and (2) "what operating restrictions going forward might be adopted by the court as a condition of [PG&E's] probation to maximize the safety of California."

CAL FIRE provides this submission in an effort to assist the Court. In making this submission invited by the Court, as a non-party to this proceeding, CAL FIRE intends to preserve and does not waive its, or any other State agency's, Eleventh Amendment immunity. Because the California Constitution creates a structure of divided executive power, each agency of the State acts on behalf of the State within its own statutory and regulatory authority. *See Marine Forests Soc. v. Cal. Coastal Comm'n*, 36 Cal. 4th 1, 31 (2005); *People ex rel Lockyer v. Superior Court*, 122 Cal. App. 4th 1060, 1078-80 (2004). CAL FIRE's submission is, thus, made solely on its own behalf, and this submission reflects the views of CAL FIRE alone and not any other state agency.

## I. CAL FIRE'S INVESTIGATIONS INTO THE SPECIFICS OF WILDFIRES CAUSED BY PG&E

### A. CAL FIRE's Role and Attendant Limitations on the Analysis of PG&E-Caused Wildfires in This Submission

CAL FIRE's mission is to serve and safeguard the people and protect the property and resources of California. It does so through fire suppression activities in State Responsibility Areas (SRAs), assisting local agencies and property owners in fire safe planning, enforcing state fire laws, and managing California's forest resources. When a fire originates in a SRA, CAL FIRE also investigates its origin and cause.

CAL FIRE's origin and cause investigations are largely confined to fires that originate in SRAs. Fire investigations and the conclusions drawn from them may be recorded in a simple two-page origin and cause form report completed by a company officer on a CAL FIRE engine dispatched to a wildland fire. Investigations might also result in a more complex report

completed by one or more specially trained CAL FIRE investigators. The type of fire investigation report prepared depends on the size, complexity, and destructiveness of the wildland fire.

In response to the Court's question regarding the specifics of wildfires caused by PG&E, CAL FIRE reviewed investigation reports from approximately September 2010, the date of the San Bruno incident, through December 31, 2018, in which PG&E was determined to be a responsible party.[1] CAL FIRE limited its review to Northern California origin and cause investigation reports,[2] and therefore this review may not represent an exhaustive analysis of all wildland fires caused by PG&E during that time period.

### B. CAL FIRE's Analysis of PG&E-Caused Wildfires

On average, CAL FIRE addresses approximately 3,000 fires in the SRA each year. While utility-caused fires are not the most common fire cause, these fires can be significantly more destructive than more common types of fires because they often ignite in rural or remote locations with limited fire suppression access that are populated with dry fuels, like grasses and shrubs. Through its review of electrical fires originating in Northern California between September 2010 and December 2018, CAL FIRE determined that the vast majority of PG&E-caused fires in this time period fall into three main categories: vegetation/powerline contact, equipment malfunction, and conductor failures.

Approximately one-third of wildland fires caused by PG&E were the result of vegetation (such as a tree trunk or branch) coming into contact with a powerline. The circumstances that lead to these types of fires would include trees that grow into powerlines, trees that lean into

---

[1] CAL FIRE does not maintain its fire investigation reports organized by responsible party, and as an agency of statewide jurisdiction, its records are voluminous. In order to timely respond to the Court's January 9, invitation, CAL FIRE limited the search of its records for PG&E-caused fires to an approximately eight-year period in Northern California only.

[2] PG&E's reach is not limited to Northern California, but in an effort to efficiently respond to the Court's request, CAL FIRE focused its review in Northern California, where PG&E's presence is more concentrated. Based on its knowledge of powerline-related, and specifically, PG&E-caused fires, CAL FIRE does not believe that a broader review would significantly change the general conclusions presented to the Court regarding the three main sources of PG&E-caused fires.

powerlines, and branches that break off of trees near or overhanging the powerlines.[3] Among other things, the contact between vegetation and the powerline conductors creates hot and burning embers, sparks, or hot molten materials, which can ignite the vegetation on the line or fall into a receptive fuel bed below the line.

Equipment malfunction on a PG&E powerline was the second leading cause of PG&E-caused wildland fires. "Equipment" for these purposes includes any component with a charge, and this category includes failures of insulators, fuses, transformers, switches, cross arms, clamps, or reclosers that drop sparks, molten metal or other hot materials onto vegetation, which ignites a wildland fire.

The third major cause of PG&E-related wildland fires was conductor failures. This includes sagging, swaying, or broken lines, spliced lines, and "line slap." Swaying, sagging, or broken lines and failed powerline splices allow the energized powerline to break or droop and come into contact with flammable material underneath or alongside the powerline. Line slap occurs when the two energized lines either actually touch each other or come close enough to each other to cause an electrical arc. The arcing then causes hot sparks or molten metal to drop to the ground. If the sparks or molten metal land in a receptive fuel bed, they can start a wildland fire.

Other causes of PG&E-related fires included animal activity (e.g., animals nesting on wires or contacting two wires and causing an electrical arc, described above), vehicles (e.g., vehicle strikes a power pole, which causes the pole to fall), and faulty service drops (an overhead electric line between the utility pole and a customer). In some instances, the CAL FIRE investigation report did not pinpoint the precise cause of a PG&E-related fire, leading to an "undetermined" cause conclusion.

---

[3] This mechanism of ignition does not include broken or downed lines that ignite vegetation beneath the lines.

## II. BACKGROUND INFORMATION FOR THE COURT'S CONSIDERATION IN CRAFTING OPERATING RESTRICTIONS THAT COULD BE ADOPTED BY THE COURT AS A CONDITION OF PG&E'S PROBATION

In addition to seeking information about CAL FIRE's conclusions in its investigations of PG&E-related fires, the Court asked CAL FIRE to comment "on what operating restrictions going forward might be adopted by the Court as a condition of probation to maximize the safety of California." In an effort to aid the Court, CAL FIRE below provides a summary overview of current California law regulating the operation of utilities to prevent fires and ongoing, state and regulatory proceedings that impact utilities and seek to mitigate utility-caused wildfires.

California regulates the operation of utilities to prevent fires in numerous ways, including by statute and regulation, as well as by General Orders issued by the California Public Utilities Commission (CPUC).[4] California's Public Resources Code sets out specific clearance requirements in SRAs, specifically in Sections 4292 and 4293. Section 4293 details the clearance requirements for electrical transmission and distribution lines of varying voltages, and describes the distances that must be maintained between "all vegetation and all conductors which are carrying electric current." Cal. Pub. Res. Code § 4293. The specific clearance requirements depend on the voltage of the line. *Id.* Section 4293 also requires that utilities trim or remove all trees (or portions of trees) that are dead, rotting, weakened by decay or disease, or leaning toward the line; and that may contact the line by growing or falling into it. *Id.* Section 4292 sets forth similar clearance requirements for the poles and towers that support electrical transmission and distribution lines and support various types of electrical equipment. *Id.* § 4292.

CAL FIRE's regulations further detail when and where the clearance requirements apply. *See* Cal. Code Regs. tit. 14, §§ 1250-58. These regulations provide additional detail regarding how to comply with the clearance requirements of Sections 4292 and 4293. *See id.* §§ 1254-57. They also specifically point to the Power Line Fire Prevention Field Guide, a publication that

---

[4] CAL FIRE focuses this part of its response on statutes, regulations, and orders that specifically bear on operation of utilities, and does not address generally applicable statutes intended to prevent the start and spread of wildfires. *See, e.g.,* Cal. Health & Safety Code § 13001 (prohibiting placement of any substance which may cause a fire into a place where it could start a fire); Cal. Pub. Res. Code § 4421 (a person shall not set fire to the land of another without permission).

contains additional guidance for utility fire prevention,.[5] The Power Line Fire Prevention Field Guide describes various conditions warranting special attention including "hazard trees" and the condition of roots, trunks and limbs of nearby trees. Similarly, CAL FIRE regularly participates in updates to guidance documents that identify wildfire risk priorities, including California's Strategic Fire Plan[6] and the 2018 State Hazard Mitigation Plan.[7]

The CPUC has authority under the Public Utilities Code to regulate public utilities, including requiring them to construct, maintain, and operate their facilities and equipment in a safe and reasonable manner. Cal. Pub. Util. Code §§ 451, 701, 768, 8386; *see also* Cal. Const. art. XII. It issued General Order 95 (GO 95) to provide uniform requirements for construction, operation, and use of overhead electrical transmission and distribution lines. Rule 35 of GO 95 indicates that GO 95 requires that utilities conduct vegetation management activities to ensure the clearance required under the law. GO 95 describes additional limitations on utility practices and details additional fire prevention and mitigation measures that utilities can take.

CAL FIRE has historically worked in collaboration with the CPUC in a number of processes that relate to wildfire mitigation. In recent years, fires have become increasingly destructive due to myriad factors, including climate change and increased development in wildland areas. To address this increased risk and facilitate close collaboration, CAL FIRE entered into a Memorandum of Understanding (MOU) with the CPUC to enhance cooperation between CAL FIRE and the CPUC to develop consistent approaches to forest management, wildfire prevention, public safety, and energy programs. An area in which CAL FIRE and the CPUC have collaborated is the creation and use of state-wide fire maps that identify areas of significant fire hazards based on fuels, terrain, weather, and other relevant factors, including

---

[5] The Power Line Fire Prevention Guide is available online at http://cdfdata.fire.ca.gov/pub/fireplan/fpupload/fppguidepdf126.pdf.

[6] The 2018 Strategic Fire Plan (updated August 22, 2018) identifies priorities for CAL FIRE including evaluating wildfire risk, working with property owners and local governments to plan for and mitigate those risks, and determining resource needs to respond to fire outbreaks. It is available online at http://cdfdata.fire.ca.gov/pub/fireplan/fpupload/fpppdf1614.pdf.

[7] Chapter 8 of the Office of Emergency Services' (Cal OES) 2018 State Hazard Mitigation Plan addresses fire hazard risk assessment and mitigation, including a description of the various mitigation efforts developed in recent years as well as progress in implementation. It is available online at https://www.caloes.ca.gov/HazardMitigationSite/Documents/011-2018%20SHMP_FINAL_Ch%208.pdf.

historical powerline-caused fires. CAL FIRE updates the underlying maps annually to provide more accurate map zone designations, based on new data, science, and technology, which allows for implementation of enhanced mitigation strategies in high-risk areas. The CPUC, in turn, used CAL FIRE's maps to support regulations that require additional maintenance by utilities in the high-fire-threat zones, including clearance requirements, and enhanced vegetation management and patrols.

Beginning in 2017, utilities were required to prepare and submit wildfire mitigation plans, and requirements for those plans were made more rigorous through legislation signed into law last year. On October 25, 2018, the CPUC initiated a proceeding to review the initial plans submitted by utilities, and to develop standards for future plans to ensure the plans reduce the risk of wildfires. The CPUC invited all affected stakeholders, including local governments, landowners, and others, to participate in this process.[8]

CAL FIRE has committed to providing long-term substantive input to the CPUC in that process, including review of the utility-submitted wildfire mitigation plans, and assistance with developing criteria and standards for utility wildfire mitigation plans and best practices of design and operation for the purposes of fire mitigation. This input will be consistent with CAL FIRE's work to implement Governor Newsom's Executive Order N-05-19, which directs CAL FIRE to work with other agencies to develop recommendations for administrative, regulatory and policy changes to prevent and mitigate future wildfires. These recommendations will include a methodology to assess communities that are at greatest risk of wildfires, including consideration of socioeconomic factors and vulnerable populations, and projects that would reduce this risk.

The CPUC adopted guidelines in July 2018 that govern utility power shut-off, or de-energization, events, including enhanced customer notification requirements and engagement with local communities to define programs for de-energization events, and is conducting

---

[8] On January 17, 2019, the template wildfire mitigation plan was adopted, and ten California utilities, including PG&E, will, by February 6, 2019, submit their wildfire mitigation plans based on the recently approved template. These plans will be reviewed by CAL FIRE and CPUC staff and likely approved by CPUC by early in the 2019 fire season.

1  workshops to examine potential impacts of de-energization events. Consistent with the purpose
2  of these guidelines, CAL FIRE, the CPUC, and Cal OES recently partnered to communicate their
3  expectations of utilities in the event of preemptive power shut-offs in an October 2018 letter to
4  the State's three major utilities.[9] These expectations include provision of specific information
5  from the State's major utilities before, during, and after shut-off events, as well as information
6  relevant to critical impacted customers, such as hospitals, fire stations, police stations,
7  water/irrigation districts, waste water treatment plants, telecommunication facilities, and schools.
8  Provision of such information by PG&E, consistent with the foregoing, is important to public
9  safety.

## CONCLUSION

As reflected above, the causes and contributors to fires are varied and complex, and prevention requires cooperation of multiple actors. Processes are currently underway in various state forums to evaluate the alignment of prevention resources and priorities, particularly those involving utilities. CAL FIRE will continue to provide its expertise and assistance in those state forums, and appreciates the Court's invitation to provide information to assist the Court's evaluation of the issues presented in this matter.

Dated:  January 25, 2019

Respectfully Submitted,

XAVIER BECERRA
Attorney General of California
TRACY L. WINSOR
Supervising Deputy Attorney General

KELLY A. WELCHANS
Deputy Attorney General
*Attorneys for Department of Forestry and Fire Protection*

SA2019300114
33752409.docx

---

[9] A copy of the October 26, 2018, joint letter is available online at http://www.cpuc.ca.gov/uploadedFiles/CPUC_Public_Website/Content/About_Us/10.26.18%20-%20Joint%20Letter%20to%20Utilities%20re%20Public%20Safety%20Power%20Shut-off.pdf.

# CERTIFICATE OF SERVICE

| | | | |
|---|---|---|---|
| Case Name: | *United States of America v. Pacific Gas and Electric Company* | No. | United States District Court, Northern District No. 3:14-CR-00175-WHA |

I hereby certify that on January 25, 2019, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION'S SUBMISSION IN RESPONSE TO COURT'S JANUARY 9, 2019, REQUEST [Dkt. 961]**

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

I further certify that some of the participants in the case are not registered CM/ECF users. On January 25, 2019, I have caused to be mailed in the Office of the Attorney General's internal mail system, the foregoing document(s) by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within three (3) calendar days to the following non-CM/ECF participants:

Honorable District Judge William H. Alsup  
Phillip Burton Federal Building  
& United States Courthouse  
450 Golden Gate Avenue  
San Francisco, CA 94102

*Courtesy Copy for Judge Alsup*

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on January 25, 2019, at Sacramento, California.

| Rochelle Uda-Quillen | /s/ Rochelle UdaQuillen |
|---|---|
| Declarant | Signature |

SA2019300114  
33758103.docx