# EXHIBIT 15

Date of Issuance
June 16, 2014

## PUBLIC UTILITIES COMMISSION OF THE STATE OF CALIFORNIA

**SAFETY AND ENFORCEMENT DIVISION**          **RESOLUTION ESRB-4**
June 12, 2014

### R E S O L U T I O N

RESOLUTION ESRB-4.  Directs Investor Owned Electric Utilities to take remedial measures to reduce the likelihood of fires started by or threatening utility facilities.

PROPOSED OUTCOME:  This Resolution will cause Investor Owned Electric Utilities to take remedial measures to reduce the likelihood of fires associated with or threatening their facilities during the current drought.

SAFETY CONSIDERATIONS:  This Resolution directs Investor Owned Electric Utilities to take measures to reduce the likelihood of fires associated with or threatening their facilities, which will increase the safety to the general public in both forested areas and at urban–rural interfaces.

ESTIMATED COST:  Unknown.

---

## SUMMARY

On January 17, 2014, Governor Edmund G. Brown, Jr. proclaimed a State of Emergency and directed state officials to take actions to mitigate against conditions that could result from a drought.[1]  In conjunction with his Emergency Proclamation, the Governor stated in his press release:  "We can't make it rain, but we can be much better prepared for the terrible consequences that California's drought now threatens, including dramatically less water for our farms and communities and increased fires in both urban and rural areas."[2]

On May 6, 2014, President Obama issued a press release, entitled: "Fact Sheet: What Climate Change Means for Regions across America and Major Sectors of the

---

[1] http://gov.ca.gov/news.php?id=18368.

[2] Id.

96415169                                                  1

Resolution ESRB-4                                    June 12, 2014

Economy."[3]  The press release was accompanied by the third U.S. National Climate
Assessment (NCA), the most comprehensive scientific assessment ever generated of
climate change and its impacts across every region of America and major sectors of the
U.S. economy.[4]  In President Obama's press release, he made clear that Climate Change
is already having severe impacts.  Thus, he stated that we must build a "sustainable future
for our kids and grandkids," and we must further act "to reduce the greenhouse-gas
pollution that is driving climate change … to cope with changes in climate that are
already underway."[5]  In an overview of the NCA, President Obama referred to Southwest
region of the United States as the hottest and driest region in the United States, which is
already a parched region that is expected to get hotter and, in the southern half,
significantly drier.  "Drought and increased warming foster wildfires and increased
competition for the scarce water resources for people in ecosystems."[6]

On May 14, 2014, Governor Edmund G. Brown, Jr. proclaimed a State of Emergency in
San Diego County.  The proclamation cited major wildfires which were "difficult to
contain" in part due to "extremely dry conditions."  The proclamation also noted that "the
fires have damaged and continue to threaten critical infrastructure, including power
lines."[7]

In this context, where Climate Change has facilitated and exacerbated numerous
wildfires, which have damaged and could continue to threaten the critical infrastructure
of the utilities, the Commission finds that an emergency exists.  Therefore, the instant
Resolution directs Investor Owned Electric Utilities - i.e., Pacific Gas and Electric

---

[3] http://www.whitehouse.gov/the-press-office/2014/05/06/fact-sheet-what-climate-change-means-regions-across-america-and-major-se.

[4] http://nca2014.globalchange.gov/.

[5] http://www.whitehouse.gov/the-press-office/2014/05/06/fact-sheet-what-climate-change-means-regions-across-america-and-major-se.

[6] Id.

[7] http://gov.ca.gov/news.php?id=18527.  Under Rule 13.9 of our Rules of Practice and Procedure, the
Commission may take official notice of matters that may be judicially noticed by the courts pursuant to
Cal. Evid. Code §§ 450, et seq.  Pursuant to Cal. Evid. Code § 452(c), judicial notice may be taken of
official acts of the executive department of the United States or of any state of the United States.  Clearly,
as the heads of the executive branches of the United States and of the State of California, respectively,
President Obama's press releases and his release of official reports, as well as the Emergency
Proclamations of Governor Jerry Brown, Jr., constitute official acts.  In addition, in light of the
overwhelming evidence presented by the scientific community, we find that the effects of greenhouse gas
emissions on Climate Change, and the extremely dry conditions, droughts and large number of wildfires,
which have resulted from the greenhouse gas emissions and which California is currently experiencing,
are not matters reasonably subject to dispute.  Therefore, these factual matters may be judicially noticed
pursuant to Cal. Evid. Code § 452(h).  We therefore have provided the websites of these official acts and
undisputable facts.

Resolution ESRB-4                                    June 12, 2014

Company (PG&E), Southern California Edison Company (SCE); San Diego Gas and
Electric Company (SDG&E); PacifiCorp; Liberty Utilities, and Bear Valley Electrical
Service (hereinafter, the "IOUs") - to take additional remedial measures to reduce the
likelihood of fires associated with or threatening their facilities during the current
drought.

## BACKGROUND

### Climate Change

We have long recognized that Climate Change would have adverse impacts in the
State of California. In Decision (D.) 07-01-039, the Commission implemented
Senate Bill (SB) 1368 by adopting greenhouse gas (GHG) emission performance
standards (EPS). The purpose of the EPS was to significantly limit the GHG
emissions allowed from the California IOUs' future procurement contracts for
electric power. In D.07-01-039, we stated:

> "As the Legislature found in SB 1368, global warming will have
> devastating impacts on the economy, health and environment of the
> State of California."[8]

More specifically, we stated:

> "GHG emissions contribute to climate change. By increasing the
> number of extremely hot days, and the 'frequency, duration, and
> intensity of conditions conducive to air pollution formation,
> oppressive heat, and wildfires,' the public health of Californians
> could be dramatically affected."[9]

Thereafter, in a series of Commission decisions aimed at reducing GHG emissions
through our jurisdiction over the California IOUs, the Commission has tried to
significantly reduce the GHG emissions caused by the IOUs' own generation power
plants or their procurement of electric power.[10] The Governor, Legislature, the
Commission, the California Air Resources Board (CARB) and virtually every other state

---

[8] D.07-01-039, *mimeo.*, at 262, Finding of Fact 218.

[9] D.07-01-039, *mimeo.*, at 214. (Internal citations omitted.)

[10] *See, e.g.,* D.12-12-032, D.12-11-015, D.11-12-036, D.10-12-036, and D.09-09-047 (funding and
promoting energy efficiency programs to reduce the demand for electricity); D.11-12-019, D.11-07-031,
and D.10-09-046 (promoting the California Solar Initiative); and D.09-12-047 (self-generation incentive
program).

Resolution ESRB-4                                        June 12, 2014

agency have taken significant actions to reduce GHG emissions and to attempt to slow down the effects of Climate Change.[11]

**The Firestorms in 2007**

After a disastrous series of wildfires in October of 2007, some of which were reportedly caused by the electric power lines of California IOUs, the Commission in 2008 issued an Order Instituting Rulemaking (R.) 08-11-005 designed to adopt new regulations to reduce the risk of further fire hazards (hereinafter "the Fire Safety OIR").  As the Commission explained in D.14-02-015, *mimeo.*, at 3 - 4:

> In October 2007, strong Santa Ana winds swept across Southern California and caused dozens of wildfires. The resulting conflagration burned more than 780 square miles, killed 17 people, and destroyed thousands of homes and buildings. Hundreds of thousands of people were evacuated at the height of the fire siege. Transportation was disrupted over a large area for several days, including many road closures. Portions of the electric power network, public communication systems, and community water sources were destroyed.
>
> Several of the worst wildfires were reportedly ignited by power lines. These included the Grass Valley Fire (1,247 acres), the Malibu Canyon Fire (4,521 acres), the Rice Fire (9,472 acres), the Sedgewick Fire (710 acres), and the Witch Fire (197,990 acres). The total area burned by these five power-line fires was more than 334 square miles.
>
> In response to the widespread devastation, the Commission issued Order Instituting Rulemaking (R.) 08-11-005 to consider and adopt regulations to reduce the fire hazards associated with overhead power lines and aerial communication facilities in close proximity to power lines. Most of the Commission's regulations regarding the construction, operation, and maintenance of overhead utility facilities are in General Order (GO) 95 and GO 165. A major goal of these GOs is to minimize public safety hazards, including fire hazards, associated with overhead utility facilities.

---

[11] In Assembly Bill (AB) 32, CARB was made the lead agency to oversee these efforts.  However, the Commission, like other agencies, was required to assist and coordinate with CARB in order to reduce GHG emissions from sources under the Commission's jurisdiction, such as the IOUs. Cal. Health and Safety Code §§ 38501(g), 38561(a) and 38562(b).

4

Resolution ESRB-4                                                June 12, 2014

> R.08-11-005 was initially divided into two phases. Phase 1 focused
> on fire-prevention measures that could be implemented in time for
> the 2009 autumn fire season in Southern California. Phase 1
> concluded with the issuance of Decision (D.) 09-08-029. Phase 2
> addressed matters that required more time to consider and
> implement. Phase 2 concluded with the issuance of D.12-01-032.

**The Pace of Climate Change Is Increasing**

Although the Commission has known that GHG emissions contribute to Climate Change,
the catastrophic consequences of Climate Change have now become a reality and the
drought conditions threaten California with more frequent and extensive wildfires. The
purpose of President Obama's May 6, 2014 press release, accompanied by the third NCA,
was "*to underscore the need for urgent action to combat threats from climate change,
protect American citizens and communities today,* and build a sustainable future …
[President Obama's Climate Action] Plan acknowledges that even as we act to reduce the
greenhouse-gas pollution that is driving climate change, we must empower the Nation's
communities, businesses, and individual citizens with the information *they need to cope
with changes in climate that are already underway.*" (Emphasis added).

The Governor's Emergency Proclamations on January 17, 2014 on the drought conditions
throughout California and on May 14, 2014 concerning the San Diego Fires and their
threat to power lines are consistent with President Obama's message that Climate Change
is increasingly occurring and we need further efforts to protect the public from its adverse
effects today. We had previously found that the "fire season" in Southern California has
been regularly occurring in the Fall each year. That was why the Commission had
expedited procedures in its Phase 1 of its Fire Safety OIR, so that the additional fire
safety rules could be in place by the 2009 Fall fire season.[12]

In light of these climate changes, which increase the wildfire threats to the IOUs' critical
infrastructure much earlier than in previous years and more significantly throughout the
year, the Commission has good cause to find that waiting 30 days for comments could
cause significant harm to the public. Under Rule 14(c)(9) of the Commission's Rules of
Practice and Procedure, the Commission reaffirms that public necessity supports a
shortened notice period for one-time comments instead of waiting the full 30 days for
comments. Therefore, the Commission shortened the time for comments on the Draft
Resolution, such that comments were due by June 9, 2014.

---

[12] D.09-08-029, *mimeo.*, at 2.

Resolution ESRB-4                                          June 12, 2014

## DISCUSSION

**It Is Vital to Implement Mitigation Measures Against the Increased Wildfire Risk Caused by the Current Drought and Climate Change**

On January 17, 2014, Governor Edmund G. Brown Jr. proclaimed a State of Emergency and directed state officials to take actions to mitigate against conditions that could result from a drought.[13]  In conjunction with his Emergency Proclamation, the Governor stated in his press release, "we can be much better prepared for the terrible consequences that California's drought now threatens, including dramatically less water for our farms and communities and increased fires in both urban and rural areas."[14]

**Commission's Response to State of Emergency**

In response to the Governor's directive, on February 18, 2014, Denise Tyrrell, Acting Director of the Safety and Enforcement Division (SED), sent a letter to the IOUs.  The first directive that Acting Director Tyrrell instructed the IOUs to comply with was to take practicable measures necessary to reduce the likelihood of fires.  Specifically, Acting Director Tyrrell's letter states:

> Due to the increased chance of large and devastating fires in California, I hereby direct you and your company to take all practicable measures necessary to reduce the likelihood of fires started by your facilities.  This may include, but is not limited to the following actions:
>
> - Increased inspections in fire threat areas
> - Re-prioritization of corrective action items
> - Modification to protective schemes.[15]

The Commission generally supports these directives.  More specifically, the IOUs should do the following: increase vegetation inspections and remove hazardous, dead and sick trees and other vegetation near the IOUs' electric power lines and poles; share resources with the California Department of Forestry and Fire Protection (CalFire) to staff lookouts adjacent to the IOUs' property; and clear access roads under  power lines for fire truck access.

---

[13] http://gov.ca.gov/news.php?id=18368.

[14] Id.

[15] See, e.g., Attachment 1, Letter dated February 18, 2014, from Denise Tyrrell, Acting Director of the Safety and Enforcement Division to Patrick M. Hogan, PG&E's Vice President Asset Management, Electric Operations.

Resolution ESRB-4                                                June 12, 2014

Acting Director Tyrrell's letter also offered the Safety and Enforcement Division's assistance to IOUs for reducing the likelihood of wildfires, if, for example, an IOU discovers a Safety Hazard, as defined by General Order 95, Rule 18-B and a third party is restricting the IOU's access to remedy the situation.[16]

We fully support the above directive, and by this Resolution, order the IOUs to comply. We note that nothing in this Resolution expands or restricts any requirements that are currently applied to utilities, including General Order 95. We further require that IOUs confer with Acting Director Tyrrell as to her designations of the appropriate SED staff to receive such notifications.

**Subsequent Events Support Acting Director Tyrrell's February 18, 2014 Directive**

On March 26, 2014, George Gentry, Executive Officer of the California Board of Forestry and Fire Protection, sent a letter to the Commission stating, in part:

> [T]he Board unanimously directed me to send a letter that not only endorses the action of the CPUC, but strongly encourages the CPUC to support funding the Utilities at the appropriate levels to conduct this important electric vegetation management work.
> …
> The Utilities can perform significant work that helps to ensure public safety. Given the appropriate resources, a significant public private partnership could be forged. We support timely completion of that work in the face of the extreme conditions presented by this drought.[17]

On May 14, 2014, Governor Edmund G. Brown Jr. proclaimed a State of Emergency in San Diego County, which cited major wildfires which were "difficult to contain" in part due to "extremely dry conditions" and which further noted that "the fires have damaged and continue to threaten critical infrastructure, including power lines."[18]

Furthermore, CalFire posts fire statistical data on their website[19] for fires to which CalFire has responded. This data shows that CalFire has responded to over 200 more

---

[16] See, e.g., Attachment 1, Letter dated February 18, 2014, from Denise Tyrrell, Acting Director of the Safety and Enforcement Division to Patrick M. Hogan, PG&E's Vice President Asset Management, Electric Operations.

[17] See Attachment 2, Letter dated March 26, 2014 from George Gentry to the Commission.

[18] http://gov.ca.gov/news.php?id=18527.

[19] See http://cdfdata.fire.ca.gov/incidents/incidents_statsevents.

Resolution ESRB-4                                                     June 12, 2014

fires in 2014 as compared to 2013, during the same time period (i.e., January 1, 2014 through May 24, 2014), and over 500 more fires have occurred when compared to the five-year average for the same interval.  Moreover, this period analyzed above is well before the Fall, when the fire season in Southern California has historically occurred as a result of even drier vegetation and stronger gusts of wind (i.e., the Santa Ana winds).[20]

**The Vicious Cycle of Wildfires**

The problem with wildfires is not limited to the destruction they could cause to the utilities' infrastructure (which threatens the safety and reliability of these services), let alone the threat the wildfires pose to the lives of people, the homes and businesses in the vicinity of the wildfires.  The large or fast-spreading wildfires further threaten to destroy significant acres of forests, which otherwise are one of the major offsetting remedies to GHG emissions.

In D.06-12-032, the Commission recognized the importance of forests in combatting Climate Change, when PG&E proposed its pilot Climate Protection Tariff (CPT) to provide offsets in advance of CARB's implementation of cap and trade pursuant to AB 32.  The Commission further stated in D.06-12-032, *mimeo.,* at 39 – 40:

> We are satisfied that forestry is an adequate sector on which to focus initial CPT program efforts, given that the California Climate Action Registry (CCAR) has already developed a protocol for forest-based projects. Moreover, no party objects to PG&E contracting for GHG reductions in the forestry sector. . . .
> [W]e agree with PG&E and other parties that conserving forests has positive environmental benefits beyond GHG emissions reductions, in the areas of water quality, habitat conservation, and prevention of stream erosion. Thus, we accept forestry as the first focus of PG&E's CPT project.

The President's Climate Action Report of June 2013 provides further guidance for the current climate situation.[21]  At page 15, the Report identifies efforts to "reduce wildfire risk by removing extra brush and other flammable vegetation around

---

[20] As stated, above, in the Fire Safety OIR, the Commission adopted different phases, so that by the end of Phase 1, the Commission could implement additional fire reduction standards before fire season began in the Fall season of 2009. *See* D.09-08-029, *mimeo.,* at 2.

[21] http://www.whitehouse.gov/sites/default/files/image/president27sclimateactionplan.pdf.

Resolution ESRB-4                                          June 12, 2014

critical areas such as water reservoirs."[22]  Moreover, recognizing that forests play
a significant role in the mitigation of Climate Change, at page 11 the Report states:

> "America's forests play a critical role in addressing carbon pollution,
> removing nearly 12 percent of total U.S. greenhouse gas emissions each
> year.  In the face of a changing climate and increased risk of wildfire,
> drought, and pests, the capacity of our forests to absorb carbon is
> diminishing.  Pressures to develop forest lands for urban or agricultural
> uses also contribute to the decline of forest carbon sequestration.
> Conservation and sustainable management can help to ensure our forests
> continue to remove carbon from the atmosphere while also improving soil
> and water quality, reducing wildfire risk, and otherwise managing forests to
> be more resilient in the fact of climate change.  The Administration is
> working to identify new approaches to protect and restore our forests, as
> well as other critical landscapes including grasslands and wetlands, in the
> face of a changing climate."[23]

Consequently, California is currently in a vicious cycle, wherein due, in part, to Climate
Change, it is losing large acres of forests from the wildfires, and less and less acres are
available to remove the GHG emissions, thereby contributing to Climate Change.  This is
part of the reason that the Commission finds that California is currently facing an
emergency situation.

It is cognate and germane to our regulation of the utilities to require them to further
protect their electric power lines and poles, as discussed herein, in order to prevent their
facilities from causing wildfires and to protect their transmission and distribution
facilities, which are threatened by wildfires.  This is essential, so that the people of the
State of California can continue to rely upon the IOUs' critical electric infrastructure, for
the provision of safe and reliable electric service.  In addition,  the utilities can help
reduce the risk of wildfires by coordinating with CalFire and engaging in certain forest
management efforts.  The Commission's Resolution is consistent with our obligations
under AB 32 to help ensure that the IOUs under our jurisdiction reduce GHG emissions.
We also find it noteworthy that in 2012, the California Legislature passed SB 1122.
SB 1122 amended Cal. Pub. Util. Code § 399.20(f) by adding, among other things, a new
subpart (2)(A)(iii), which directs the electrical corporations to procure at least
250 megawatts (MW) from developers of new bioenergy projects, including 50 MW
from forest biomass facilities (i.e., "bioenergy using byproducts of sustainable forest
management").  This subpart further clarifies that these bioenergy projects must be from

----

[22] Id. at 15.

[23] Id. at 11.

Resolution ESRB-4                                              June 12, 2014

sustainable forest management in "fire threat treatment areas," as designated by CalFire.[24]

**Ratepayer Protections**

The discussion above indicates the exigent need for action on the part of IOUs to ensure public safety and reliable service from the wildfire threats. We are aware of multiple mechanisms that are already available for utilities to recover such costs. For example, in the Fire Safety OIR, we established the Fire Hazard Prevention Memorandum Accounts (FHPMAs) as a mechanism that could be used to seek recovery of costs.[25] Also, IOUs have funding in their General Rate Cases (GRCs), including, specifically authorized vegetation management costs with a one-way balancing account.[26]

To the extent that additional funding is reasonable to address the wildfire threats, beyond such accounts, cost recovery through the Catastrophic Event Memorandum Accounts (CEMAs) may be sought. However, the Commission may analyze such costs to determine if they are truly incremental, and meet the other requirements of CEMA.[27] Consistent with Commission practice, double collection of costs is strictly prohibited. In addition, only costs incurred after the effective date of SED's Acting Director Denise Tyrrell's February 18, 2014 letter, which are not recoverable in another utility account, shall be eligible for CEMA treatment.

Further, to ensure accountability, we shall select independent auditors for the costs associated with this Resolution and to review the IOUs' other accounts to ensure that there is no double recovery and that the costs therein are reasonable. The utilities must keep records to justify the reasonableness of their costs. IOUs shall reimburse the Commission of the audit costs through ratepayer-funding. Of course, if and when an IOU submits its CEMA filing, any interested party may protest the filing.

**COMMENTS**

California Public Utilities Code § 311(g)(1) provides that this Resolution be served on all parties and subject to at least 30 days public review and comment prior to a vote of the Commission. California Public Utilities Code § 311(g)(3) provides that this 30-day

---

[24] The Commission's implementation of SB 1122 is pending in another proceeding. Our point is that this legislation similarly is requiring the IOUs to coordinate with CalFire in sustainable forest management techniques on the procurement side of their business, as well.

[25] "We will verify and assess the reasonableness of recorded costs in application proceedings." D.14-02-015, *mimeo.*, at 86.

[26] See, e.g., D.13-05-010, *mimeo.*, at 147-156.

[27] D.07-07-041, *mimeo.*, at 3-6.

Resolution ESRB-4                                          June 12, 2014

period may be reduced or waived pursuant to a Commission adopted regulation. In light of Climate Change, which has created a drought, expanded fire seasons and increased the threat of wildfires to the IOUs' critical infrastructure much earlier than in previous years and more significantly throughout the year, the Commission reaffirms that the public necessity supports a reduction on the 30-day comment period. Pursuant to Rule 14.6(c)(9) of the Commission's Rules of Practice and Procedures, notice requirements were therefore shortened for comments on this Draft Resolution, such that one-time comments were due on Monday, June 9, 2014. Comments were submitted by: Liberty Utilities (Liberty), Mussey Grade Road Alliance (MGRA), Pacific Gas & Electric Company (PG&E), PacifiCorp, San Diego Gas & Electric Company (SDG&E), Southern California Edison Company (SCE), and The Utility Reform Network (TURN).

Most of these comments were generally supportive of this Resolution, though some modifications were urged. Liberty and PacifiCorp both argue against denying recovery for incremental expenses that those utilities incurred in reliance on SED's February 18, 2014 letter, from Acting Director Denise Tyrrell, for the time period between her letter and the June 12, 2014 effective date of this Resolution. The Commission agrees that it was justifiable for utilities to rely on SED's Letter, particularly because Governor Brown had already issued his Emergency Proclamation concerning drought conditions in January of 2014. Such costs would still be subject to review for ratepayer protections as described above.

MGRA generally supports the Commission taking reasonable steps to address climate change and the need to mitigate risks caused by the drought and wildfires. MGRA argues that this Resolution should specify how its orders exceed current regulations and should prevent interference with existing regulations and ongoing proceedings. It is clear that this Resolution does not interfere with existing regulations and ongoing proceedings, but is rather a response to an emergency situation due in part to the drought conditions described by Governor Brown in his Emergency Proclamation. The Resolution requires the utilities to go above and beyond normal operating requirements, and provides for their recovery of incremental costs to address these emergency conditions. This is part of the utilities' requirement that they must keep their facilities safe and reliable based upon their obligations under California Public Utilities Code section 451.

PG&E and SDG&E fully support the prompt adoption of this Draft Resolution. PG&E further supports the necessity of reducing the 30-day comment period so that the Commission may address the ongoing statewide drought conditions. PG&E provides updated facts concerning fires, burn acreage, and other severe conditions caused by the ongoing drought.

PacifiCorp and SCE also support the Resolution, but they express concerns about Ordering Paragraph 2. Sharing resources with CalFire is seen as problematic because it relies, in part, on CalFire's actions, and the requirement to clear access roads is also

Resolution ESRB-4                                        June 12, 2014

potentially problematic due to ownership concerns. Yet, both PacifiCorp and SCE state that they already cooperate with CalFire. We remind the utilities that Ordering Paragraph 2 requires them to take "practicable" steps. Therefore, the expectation is that when such impediments are not present, utilities should be able to promptly comply with the Ordering Paragraph. Should impediments arise, utilities should take practicable steps to comply.

TURN generally supports the Commission taking reasonable steps to address climate change and the need to mitigate risks of wildfires. However, TURN critiques the Draft Resolution for compounding what it views as an "already unduly fractured approach to addressing wildfire-related issues regarding utility facilities." It further critiques SED's diligence in assessing the issues, and offers TURN's view of regulatory accounting mechanisms. TURN would have the Commission designate a single forum for dealing with the issues raised in the Resolution. However, TURN fails to address the fact that the State of California is currently in an emergency situation. Thus, we do not have the time to start a new proceeding to analyze these issues, while Californians are put at risk. TURN also does not fully recognize the ratepayer protections contained within the Resolution. For example, we have prohibited the utilities from double recovery in the various mechanisms, and have provided for independent auditors, chosen by the Commission, to review the costs. TURN, the Office of Ratepayer Advocates, and other intervenors, may challenge the reasonableness of utility actions and incurred costs, if and when utilities seek recovery under CEMA.

## FINDINGS OF FACT

1. On January 17, 2014, Governor Edmund G. Brown, Jr. proclaimed a State of Emergency and directed state officials to take actions to mitigate against conditions that could result from a drought.

2. On February 18, 2014, Denise Tyrrell, Acting Director of the Safety and Enforcement Division (SED) sent a letter to all Investor Owned Electric Utilities (IOUs) that in part directed them to take all practicable measures necessary to reduce the likelihood of fires by their facilities.

3. On March 26, 2014, George Gentry, Executive Officer of the California Board of Forestry and Fire Protection, sent a letter to the Commission in support of the goals of Denise Tyrrell's letter.

4. On May 6, 2014, President Obama issued a press release, entitled: "Fact Sheet: What Climate Change Means for Regions across America and Major Sectors of the Economy," in conjunction with his release of the third U.S. National Climate Assessment (NCA), the most comprehensive scientific assessment ever generated of climate change and its impacts across every region of America and major sectors of the U.S. economy.

Resolution ESRB-4                                                      June 12, 2014

5. The purpose of President Obama's May 6, 2014 press release was *"to underscore the need for urgent action to combat threats from climate change, protect American citizens and communities today*, and build a sustainable future … [and to provide the Nation] with the information they need *to cope with changes in climate that are already underway."* (Emphasis added.)

6. The NCA referred to Southwest region of the United States as the hottest and driest region in the United States, which will become significantly drier, resulting in drought and wildfires.

7. On May 14, 2014, Governor Edmund G. Brown, Jr. proclaimed a State of Emergency in San Diego County citing major wildfires which were "difficult to contain" in part due to "extremely dry conditions" and noting that "the fires have damaged and continue to threaten critical infrastructure, including power lines."

8. Statistical data from CalFire indicates an increased number of wildfires from previous years during the first five months of this year.

9. Wildfires threaten the utilities' critical infrastructure, and, therefore the reliability of their vital services.

10. Utility-linked wildfires have had devastating impacts in California.

11. In addition to all of their other devastating impacts, wildfires perpetuate the Climate Changes by destroying numerous acres of forests, which would otherwise reduce the amount of greenhouse gas emissions responsible for much of the Climate Changes.

12. The current drought and recent fires occur as examples establishing the severity of the impacts of Climate Change on Californians.

13. There is an increased chance of large and devastating wildfires occurring this year.

14. There are multiple mechanisms that are already available for utilities to recover costs for mitigation or prevention of wildfires. For example, in the Fire Safety OIR, we established the Fire Hazard Prevention Memorandum Accounts (FHPMAs) as a mechanism that could be used to seek recovery of costs. Also, IOUs have funding in their General Rate Cases (GRCs), including, specifically authorized vegetation management costs with a one-way balancing account.

## CONCLUSIONS OF LAW

1. The state of emergency that has emerged, as demonstrated by the Governor's two Emergency Proclamations and President Obama's statements in conjunction with his release of the third U.S. National Climate Assessment, necessitates immediate action.

2. The Commission may take official notice of official acts of the President of the United States and the Governor of the State of California under Rule 13.9 of our Rules of Practice and Procedure and Cal. Evid. Code § 452(c).

3. The Commission may take official notice of factual matters not reasonably subject to dispute pursuant to Cal. Evid. Code § 452(h). In light of the overwhelming evidence

Resolution ESRB-4                                      June 12, 2014

presented by the scientific community, we find that the effects of greenhouse gas emissions on Climate Change, and the extremely dry conditions, droughts and large number of wildfires, which have resulted from the greenhouse gas emissions and which California is currently experiencing, are factual matters not reasonably subject to dispute.

4.  Pursuant to Rule 14.6(c)(9) of the Commission's Rules of Practice and Procedure and California Public Utilities Code § 311(g)(3), the Commission has found that public necessity requires that the Commission reduce the comment period on the Draft Resolution such that one-time comments must be filed by on Monday, June 9, 2014. Notice of this Draft Resolution and the shortening of time for comments to June 9, 2014 was provided by serving the link to the Draft Resolution by e-mail on the official service list in R.08-011-005 (i.e., the Fire Safety OIR) and by web publication pursuant to the Notice for Daily Calendar.

**ORDER:**

1.  The Executive Director shall serve this Resolution on the Investor Owned Electric Utilities: PG&E; SCE; SDG&E; PacifiCorp; Liberty Utilities, and Bear Valley Electrical Service.

2.  Investor Owned Electric Utilities must take practicable measures necessary to reduce the likelihood of fires associated with their facilities. These measures include: increasing vegetation inspections and removing hazardous, dead and sick trees and other vegetation near the IOUs' electric power lines and poles; sharing resources with the California Department of Forestry and Fire Protection (CalFire) to staff lookouts adjacent to the IOUs' property; and clearing access roads under power lines for fire truck access.

3.  Additionally, Investor Owned Electric Utilities should examine and create public-private partnerships during the state of emergency that they find necessary to reduce the likelihood of fires associated with their facilities or to mitigate the impact of fires on their facilities.

4.  To the extent that additional funding is reasonable, and not already included or recoverable in the Investor Owned Electric Utilities' accounts, incremental cost recovery through the Catastrophic Event Memorandum Accounts (CEMAs) may be sought by the IOUs after the February 18, 2014 letter from SED. However, the Commission may analyze such costs to determine if they are truly incremental, and meet the other requirements of CEMA. Consistent with Commission practice, double collection of costs is strictly prohibited.

5.  The Commission shall select independent auditors for the costs associated with this Resolution and to review the IOUs' other accounts to ensure that there is no double recovery and that the costs therein are reasonable. The utilities must keep records to justify the reasonableness of their costs. IOUs shall reimburse the Commission of the

Resolution ESRB-4                                          June 12, 2014

audit costs through ratepayer-funding.  When an IOU submits its CEMA filing, any interested party may protest the filing.

6.  Notice requirements were shortened for the purposes of this Resolution due to the public necessity of issuing this Resolution as soon as possible.

7.  This Resolution is effective today.

I certify that the foregoing resolution was duly introduced, passed and adopted at a conference of the Public Utilities Commission of the State of California held on June 12, 2014; the following Commissioners voting favorably thereon:


                              /s/      PAUL CLANON
                                       PAUL CLANON
                                       Executive Director


                              MICHAEL R. PEEVEY
                                       President
                              MICHEL PETER FLORIO
                              CATHERINE J.K. SANDOVAL
                              CARLA J. PETERMAN
                              MICHAEL PICKER
                                       Commissioners

# ATTACHMENT 1

STATE OF CALIFORNIA                                    EDMUND G. BROWN JR., *Governor*

**PUBLIC UTILITIES COMMISSION**
505 VAN NESS AVENUE
SAN FRANCISCO, CA 94102-3298



February 18, 2014

Mr. Patrick M. Hogan
Vice President Asset Management, Electric Operations
245 Market Street, #1064 (N10A)
San Francisco, CA 94105

Re:   Increased Fire Hazards Due to Drought

Mr. Hogan:

On January 17, 2014, Governor Edmund G. Brown Jr. proclaimed a State of
Emergency and directed state officials to take all necessary actions to
prepare for conditions that could result from the drought. Specifically, the
Governor stated:

> We can't make it rain, but we can be much better prepared for
> the terrible consequences that California's drought now
> threatens, including dramatically less water for our farms and
> communities **and increased fires in both urban and rural
> areas** [Emphasis added]

Due to the increased chance of large and devastating fires in California, I
hereby direct you and your company to take all practicable measures
necessary to reduce the likelihood of fires started by your facilities.  This
may include, but is not limited to the following actions:

- Increased inspections in fire threat areas
- Re-prioritization of corrective action items
- Modification to protective schemes

Furthermore, if your company discovers a Safety Hazard, as defined by
General Order 95, Rule 18-B and a third party is restricting your company's
access to remedy the situation, notify Raymond Fugere of my office
immediately, in order that we can work with your company to help resolve
the Safety Hazard.

Lastly, the Commission, FERC and CalFire all have established various vegetation requirements and these requirements must be followed at all times.  During the State of Emergency the Commission finds it imperative that corrective actions associated with these requirements not be deferred. Notify Mr. Fugere quarterly, of any and all violations of Commission, FERC and/or CalFire vegetation requirements, all notifications must including at least the following:

- Location
- Applicable rule
- Brief description of issue
- Date discovered
- Date corrected
- Actions taken

The above reporting requirements shall stay in effect until the State of Emergency is revoked by the Governor.

It is imperative that your company be aggressive to help reduce the risk of fires during drought conditions.  Should you have any questions, please feel free to contact Raymond Fugere at (213) 576-7015, or raymond.fugere@cpuc.ca.gov

Sincerely,

Denise Tyrrell
Acting Director
Safety and Enforcement Division
California Public Utilities Commission

Cc:   Edward Randolph, CPUC, Director Energy Division
      Elizaveta Malashenko, CPUC, Deputy Director Safety and Enforcement Division
      Raymond Fugere, CPUC, Safety and Enforcement Division
      Eric Back, PG&E, Director

# ATTACHMENT 2

STATE OF CALIFORNIA—THE NATURAL RESOURCES AGENCY                                    Edmund G. Brown, Jr., *Governor*

## BOARD OF FORESTRY AND FIRE PROTECTION

P.O. Box 944246
SACRAMENTO, CA 94244-2460
Website: www.bof.fire.ca.gov
(916) 653-8007



March 26, 2014

Public Utilities Commission
505 Van Ness Avenue
San Francisco, CA 94102-3298

President Peavey & Commissioners:

The Board of Forestry & Fire Protection is responsible for wild land fire policy in the
State of California.  Commensurate with that responsibility, the Board has been
evaluating appropriate steps in light of the Governor's Drought Emergency
declaration to reduce the extreme fire risk associated with it.

As part of this evaluation, the Board noted that the Commission has sent a letter to
utility companies directing them to take all necessary measures to reduce the risk
of fire during the drought emergency, including compliance with the rules and
regulations of the Board and CAL FIRE.

At its March meeting, the Board unanimously directed me to send a letter that not
only endorses the action of the CPUC, but strongly encourages the CPUC to
support funding the Utilities at the appropriate levels to conduct this important
electric vegetation management work.  This may be in the form of pending rate
cases, or in supplemental funding as deemed appropriate by the CPUC.

The Utilities can perform significant work that helps to ensure public safety.  Given
the appropriate resources, a significant public private partnership could be forged.
We support timely completion of that work in the face of the extreme conditions
presented by this drought.

Sincerely,

George D. Gentry
Executive Officer

*The Board's mission is to lead California in developing policies and programs that serve the public interest in environmentally, economically,
and socially sustainable management of forest and rangelands, and a fire protection system that protects and serves the people of the state.*