DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE MITCHELL HOFFMAN (CABN 210020)
Chief, Criminal Division

HALLIE MITCHELL HOFFMAN (CABN 210020)
PHILIP KOPCZYNSKI (NYBN 4627741)
JEFF SCHENK (CABN 234355)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    Fax: (415) 436-7234
    Hallie.hoffman@usdoj.gov
    Philip.kopczynski@usdoj.gov
    Jeffrey.b.schenk@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>    Defendant. | CR-14-00175-WHA<br><br>UNITED STATES'S RESPONSE TO COURT'S REQUEST FOR BRIEFING FOLLOWING APRIL 2, 2019 HEARING |

The United States, through Assistant United States Attorneys Hallie Mitchell Hoffman, Philip Kopczynski, and Jeff Schenk, responds to the Court's request for briefing on two questions: (1) Can the Court extend PG&E's probation beyond five years; and (2) should the Monitor Reports be made public?

**I.     The Court Should Not Extend PG&E's Term of Probation At This Time.**

The Court's original sentence for PG&E included a five-year term of probation. Dkt. 922 at 2. That term was the maximum authorized by law. 18 U.S.C § 3561(c). Earlier this year, the Court found that PG&E violated a condition of its probation. Dkt. 1000. With an eye toward sentencing on that

RESPONSE TO COURT'S REQUEST FOR BRIEFING
CR-14-00175 WHA

violation, the Court has asked whether it may extend PG&E's probation beyond the current five-year term. The answer is not immediately clear.

Section 3565 of Title 18 provides that when a defendant violates a condition of probation, "the court may, after a hearing pursuant to Rule 32.1 of the Federal Rules of Criminal Procedure, and after considering the factors set forth in section 3553(a) to the extent that they are applicable—(1) continue him on probation, with or without extending the term or modifying or enlarging the conditions; or (2) revoke the sentence of probation and resentence the defendant under subchapter A." 18 U.S.C. § 3565(a); *see also* USSG § 8F1.1 ("Upon a finding of a violation of a condition of probation, the court may extend the term of probation, impose more restrictive conditions of probation, or revoke probation and resentence the organization."). Section 3565 offers two avenues by which the Court might extend PG&E's probation.

First, the Court has authority under Section 3565 to "extend[] the term." 18 U.S.C. § 3565(a)(1). On its own, this provision might be read as giving the Court open-ended authority to extend a term of probation by any length of time. A related statutory provision, however, provides that the Court "may, after a hearing, extend a term of probation, *if less than the maximum authorized term was previously imposed*." 18 U.S.C. § 3564(d) (emphasis added). This provision does not expressly refer to extensions that occur after a violation, but it appears to limit extensions in any context to the statutory maximum. At least one district court decision, and an unpublished circuit court decision, interpret this provision in that manner. *United States v. Meyer*, 485 F. Supp. 2d 1001, 1012 (N.D. Iowa 2006); *United States v. Jones*, 182 F.3d 901 (2d Cir. 1999) (unpublished).

Second, the Court has authority to "revoke the sentence of probation and resentence the defendant under subchapter A."[1] 18 U.S.C. § 3565(a)(2). At a resentencing under this provision, the Court can impose a new term of probation. *United States v. Plunkett*, 94 F.3d 517, 519 (9th Cir. 1996) (Section 3565(a) "give[s] the trial court discretion to sentence a probation violator to the range of sentences available at the time of the original sentencing"); *United States v. Behnezhad*, 907 F.2d 896, 899 (9th Cir. 1990) ("when a court revokes probation, it has the flexibility to structure a new sentence

---

[1] Subchapter A refers to Sections 3551 through 3559 of Title 18.

that may include probation, incarceration, fines and supervised release"), overruled on other grounds by *Johnson v. United States*, 529 U.S. 694 (2000). But it appears to be an open question whether the Court can impose a new probation term that—combined with the length of the prior term—exceeds five years.

There was greater clarity in the case law when earlier versions of the relevant statutes were in effect. For example, in *United States v. Tham*, 884 F.2d 1262 (9th Cir. 1989), the Ninth Circuit, relying on Section 3561 as it existed before the Sentencing Reform Act of 1984, held that the combined length of multiple terms of probation could not exceed the statutory maximum. *See id.* at 1264. The operative language from Section 3561 provided that "[t]he period of probation, together with any extension thereof, shall not exceed five years." *Id*. Relying on that and other statutory language, other courts at the time reached similar results. *See United States v. Urdaneta*, 771 F. Supp. 28, 33 (E.D.N.Y. 1991) (collecting cases).

But the relevant statutes have been amended since *Tham* and similar cases were decided. The particular language in Section 3561 relied on by the Ninth Circuit in *Tham* no longer exists. In addition, Section 3565 used to provide that the district court could, upon finding a probation violation, "impose any other sentence that was available under subchapter A at the time of the initial sentencing." *United States v. Tschebaum*, 306 F.3d 540, 543 (8th Cir. 2002). But Section 3565 now provides that the district court may "revoke the sentence of probation and resentence the defendant under subchapter A." 18 U.S.C. § 3565(a)(2). A House Report discussing the amended language that eventually became law stated that it was "intended to allow the court after revoking probation to sentence the defendant to any statutorily permitted sentence and not be bound to only that sentence that was available at the initial sentencing." H.R. Rep. 102-242, 189 (1991). By the same token, courts have found that the amended version of Section 3565 "plainly permits a district court to begin the sentencing process anew and to impose any sentence appropriate under the provisions of subchapter A, *i.e.*, one that satisfies statutory and guideline requirements." *United States v. Schaefer*, 120 F.3d 505, 507 (4th Cir. 1997); *see United States v. Vixamar*, 679 F.3d 22, 32 (1st Cir. 2012) ("the probation violation puts in play the penalty provisions of the original charge, meaning the judge can impose any sentence he might originally have imposed" (internal quotation marks and citations omitted)); *United States v. Hudson*, 207 F.3d 852, 853 (6th Cir. 2000) (holding that, after amendment to Section 3565, "the penalty for a probation violation . . .

is not restricted to the range applicable at the time of the initial sentencing"); *Tschebaum*, 306 F.3d at 543 (same); *United States v. Cook*, 291 F.3d 1297, 1300 (11th Cir. 2002) (same).

Thus, the Court may have the authority to revoke PG&E's probation and impose a new probation term of up to five years,[2] but there appears to be no binding authority on point.[3]  In light of this uncertainty, the government believes that, as a sentence for the present violation, the Court should not impose a sentence that results in a combined term of probation of more than five years.  The Court can revisit this issue if PG&E violates the conditions of its probation again.

**II.      The Court Should Not Make the Monitor's Reports Public.**

Senior District Judge Thelton Henderson, as part of the sentencing Judgment in this case, signed the Monitorship Order.  Dkt. 922.  The Monitorship Order contemplated three types of written Monitor Reports: an initial review and report, semi-annual reports, and a final report.  *Id*. at 22-24.  The Monitorship Order addressed the issue of public release of the Monitor Reports, and treated the three types of Monitor Reports differently.  For the initial review and report and for the semi-annual reports, Judge Henderson ordered that, "The Monitor shall provide the initial written report to PG&E, the Probation Officer, the USAO, and the Board of Directors of PG&E."  *Id*. at 13.  However, for the final report, Judge Henderson ordered that,

> At the conclusion of the monitorship, the Monitor shall prepare a final written report for public release setting forth the Monitor's assessment of the monitorship and PG&E's compliance with the goals of the monitorship as set forth in Section I above. . . .  The Monitor may take whatever steps the Monitor deems appropriate to protect the confidentiality of individuals, if any, mentioned in the final written report.

*Id.* at 14.

Through these different disclosure requirements, Judge Henderson recognized the need to

---

[2] Lending further support to this interpretation of the probation statutes is that fact that, in the context of supervised release, the district court can revoke a defendant on supervised release and impose imprisonment together with a new term of supervised release.  The court has this authority even if the defendant's total time in prison or on supervision exceeds that which the court could have imposed for the underlying crime.  *See* 18 U.S.C. § 3583(h); *United States v. Purvis*, 940 F.2d 1276, 1279 (9th Cir. 1991).

[3] In one unpublished case, a district court revoked the defendant's probation partway through a four-year term and imposed a new five-year term of probation.  *United States v. Brogdon*, 73 F. App'x 134, 135 (6th Cir. 2003).  The Eighth Circuit affirmed the sentence as "proper[]" without specifically addressing any issue around the maximum permissible term of probation.  *Id.*

balance public access to the Monitor's findings with the Monitor's ability to perform his safety and compliance oversight responsibilities, including through forthright and candid PG&E employee interviews.  At the sentencing hearing, Judge Henderson began by reminding those present that he sought to reduce the risk of future catastrophic natural gas pipeline explosions.  Judge Henderson stated, "So while I do not conclude that the criminal conduct at issue in this case caused the San Bruno explosion, or any other particular accident, I do find that the conduct makes such incidents more likely.  That potential risk to the public weighs heavily in my mind as I consider a necessary and appropriate sentence." Tr. 1/23/2017 at 7.  Later in the hearing, Judge Henderson made it clear that he saw the Monitorship as a means to ensure that PG&E prioritizes safety: "Finally, and the most significantly for purposes of sentencing, it appears that the other terms of probation, such as the compliance and ethics program, as well as the monitorship plan, are sufficient, or will be sufficient, to ensure that PG&E prioritizes safety over finances." *Id.* at 36-37.

One goal of those seeking public release of the Monitor Reports is to focus on past conduct and generate evidence or leads for pending or future litigation.  While the government sympathizes with the desire to find answers through the reports, the effect of doing so would be to sacrifice the Monitor's ability to have candid and fulsome conversations with, and receive complete information from, the defendant and its employees.  The success of the Monitorship in effectively preventing future harm depends on that candor.  That is exactly what Judge Henderson ordered as the goal of this Monitorship – to prevent the criminal conduct with respect to gas pipeline transmission safety that gave rise to the Superseding Indictment.  Dkt. 922 at 6.  In addition to Judge Henderson, the United States Sentencing Guidelines also emphasize the need to deter and punish organizational criminal misconduct through effective compliance and ethics programs.  *See* USSG § 8B2.1.  The Monitorship should remain a tool to prevent future corporate misconduct.

There is a real risk that public release of Monitor Reports will chill the Monitor's ability to obtain honest statements from employees. This, in turn, may threaten the Monitor's ability to discover unsafe practices by the defendant. Therefore, this Court should not disturb the thoughtful approach Judge Henderson ordered regarding the treatment of initial, semi-annual, and final monitor reports.

DATED: April 16, 2019

Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

/s/
HALLIE MITCHELL HOFFMAN
PHILIP KOPCZYNSKI
JEFF SCHENK
Assistant United States Attorneys