JENNER & BLOCK LLP
    Reid J. Schar (*pro hac vice*)
    RSchar@jenner.com
    353 N. Clark Street
    Chicago, IL 60654-3456
Telephone: +1 312 222 9350
Facsimile: +1 312 527 0484

CLARENCE DYER & COHEN LLP
    Kate Dyer (Bar No. 171891)
    kdyer@clarencedyer.com
    899 Ellis Street
    San Francisco, CA 94109-7807
Telephone: +1 415 749 1800
Facsimile: +1 415 749 1694

CRAVATH, SWAINE & MOORE LLP
    Kevin J. Orsini (*pro hac vice*)
    korsini@cravath.com
    825 8th Avenue
    New York, NY 10019
Telephone: +1 212 474 1000
Facsimile: +1 212 474 3700

Attorneys for Defendant PACIFIC GAS AND ELECTRIC COMPANY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>    v.<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>                Defendant. | Case No. 14-CR-00175-WHA<br><br>**MEMORANDUM RE SECOND AMENDMENT TO PACIFIC GAS AND ELECTRIC COMPANY'S (U 39 E) WILDFIRE MITIGATION PLAN** |

Defendant Pacific Gas and Electric Company ("PG&E") respectfully submits this memorandum to notify the Court of its filing of a Second Amendment to its Wildfire Safety Plan (the "Second Amendment"), originally filed February 6, 2019, corrected February 12, 2019, and amended February 14, 2019 (the "Plan"). PG&E's Second Amendment, which was filed with the California Public Utilities Commission ("CPUC") today, seeks to amend certain targets whose completion dates are at risk due to external factors beyond PG&E's control; modify certain targets to allow for improvements to the original Plan based on lessons learned; and clarify certain descriptions of programs in the Plan to avoid misinterpretation of meaning and scope. In addition, PG&E is notifying the CPUC of expected cost increases in certain programs and correcting minor errors in Attachment E to the Plan. Attached as Exhibit A to this filing is a chart summarizing PG&E's proposed changes to the Plan targets. Attached as Exhibit B to this filing is PG&E's Second Amendment, filed with the CPUC on April 25, 2019, which describes each proposed change in detail along with the basis for each change.

PG&E's Plan provides considerable detail about what PG&E proposes to do in 2019 in advance of the wildfire season, during the wildfire season, and in subsequent years to continue to reduce the risk of wildfires. To accomplish this objective, PG&E proposed in its Plan specific targets that were tangible, quantifiable, and auditable, reflecting substantial increases of work over prior years. In developing the Plan, PG&E recognized that there were significant execution risks, arising from sources both external and internal to PG&E, to accomplishing the expanded and accelerated scope of planned work. These challenges, outlined in Table 9 of the Plan, include inclement weather, the availability of equipment, materials, and qualified personnel, and legal/regulatory issues (e.g., objections from property owners or governmental agencies, and environmental permitting requirements), which could impact the timing and scope of the programs proposed in the Plan.

As PG&E implements these goals, challenges persist. For example, both the Wildfire Safety Inspection Program ("WSIP") inspections and Enhanced Vegetation Management ("EVM") program apply heightened criteria compared to historical routine work. As a result, PG&E is identifying

1

greater numbers of necessary actions, which require additional resources.  PG&E has hired and will continue to hire the qualified resources necessary to complete this work safely and with a high standard of quality, and PG&E will continue to assess the needs of these new programs as PG&E learns through executing the Plan.  Despite PG&E's best efforts, several external execution risks over which PG&E has no control threaten PG&E's ability to strictly comply with certain of its original targets.  These external factors, the delays associated with them, and PG&E's proposed amendments to account for the delays include:

> (1) The unusually long federal shutdown, which according to the FAA will delay issuance of certifications for fire suppression helicopters that PG&E applied for in 2018 to approximately six weeks past the Plan's May 2019 target date, at the earliest.  PG&E proposes to amend the date by which it will put these fire suppression helicopters into operation to be "as soon as feasible after receipt of the necessary FAA certification".  (*See* Second Amendment to Pacific Gas and Electric Company's (U 39 E) Wildfire Mitigation Plan, dated April 25, 2019 ("CPUC Submission"), attached hereto as Exhibit B, at 8.)

> (2) Unusually wet weather over the 2018-2019 winter, which has made certain transmission and distribution structures inaccessible and hindered drone inspections that are a part of PG&E's WSIP.  A number of WSIP transmission and distribution inspections also have been delayed due to property owner objections and governmental permitting or environmental requirements.  Notwithstanding these access limitations, PG&E will strive to perform at least one of the following types of inspections by May 1, 2019 on each of the structures that are inaccessible, as conditions permit:  visual ground, visual climbing, drone imagery or helicopter imagery.  However, PG&E proposes to amend its targets to provide that for specific locations where these external factors do not permit completion of inspections by the target date, they may be completed "as soon thereafter as is feasible in light of weather conditions and other external factors".  (*Id.* at 9-12.)

> (3) Similarly, completing all of the priority "B" WSIP repair work PG&E targeted for completion by May 31, 2019 (transmission and substation) and June 30, 2019 (distribution) may be delayed beyond the current completion dates due to inspections that were delayed because of external factors described above, property owner objections, governmental permit requirements or environmental regulations including local tree protection ordinances and other

environmental regulations.[1]  Although local land use restrictions do not apply to CPUC-regulated work by investor-owned utilities, private citizens nonetheless frequently protest the work.  PG&E proposes to amend its targets to provide that for specific locations where these external factors do not permit completion of corrective actions by the target date, they may be completed "as soon thereafter as is feasible in light of weather conditions and other external factors".  (*Id.* at 13-15.)

(4)  The same weather-related conditions and government permit requirements impeding WSIP inspections are hindering PG&E crews from accessing and SCADA enabling approximately five line reclosers.  PG&E proposes to amend its targets to provide that for specific locations where these external factors do not permit PG&E crews to SCADA-enable line reclosers, this may be done "as soon thereafter as is feasible in light of weather conditions and other external factors".  (*Id.* at 15-16.)

PG&E is working diligently to overcome these external challenges to avoid delays.  PG&E's land and environmental management, external affairs, and customer care teams are working closely with PG&E's work execution teams to reduce potential delays caused by property owners, governmental agencies, and environmental permitting requirements.  PG&E will also seek assistance from the Federal Monitor to address these challenges, where necessary.  PG&E is nevertheless seeking to amend the targets before the CPUC approves a final version of the Plan in recognition that external factors may prevent full completion by the original target dates despite PG&E's best efforts.

In addition to these changes, PG&E proposes to modify the Plan to accommodate improvements to certain of the enhanced wildfire mitigation measures included in the Plan.  *First*, after beginning construction of its first pilot Resilience Zone—an area that can be energized by an alternative power supply during a Public Safety Power Shutoff ("PSPS")—PG&E made improvements to the design to maximize risk reduction.  These design changes require PG&E to obtain additional land rights, which may delay the completion of construction of the Resilience Zone.  (*Id.* at 16-17.)  *Second*, PG&E found that certain subjective criteria in its EVM program made

---

[1] PG&E expects to complete all priority "A" (highest priority) tags on the timeline outlined in the current Plan.

3

MEMORANDUM RE SECOND AMENDMENT TO PACIFIC GAS AND ELECTRIC COMPANY'S (U 39 E) WILDFIRE MITIGATION PLAN
**Case No**. 14-CR-00175-WHA

Quality Assurance ("QA") audits difficult where professional judgments differ. PG&E has modified the EVM program to apply objective criteria to eliminate these differences and proposes to modify the Plan's QA audit target to focus on the existing requirement of performing QA audits of 100% of the EVM work and reworking of any trees that were missed or incorrectly worked. (*Id.* at 17-19.)

PG&E also seeks to clarify certain targets to avoid misinterpretation of the scope or meaning of the language in the Plan. *First*, PG&E proposes to amend the description of its vegetation management patrols to avoid implying that it will document its inspection of each of the more than 100 million trees with a potential strike path to an overhead line. While all trees that require work will be documented, memorializing the inspection of each tree would significantly and unnecessarily delay the inspection process. (*Id.* at 19.) *Second*, PG&E proposes to amend its description of its re-energization of lines following a PSPS to clarify that PG&E will patrol all lines in areas identified as meeting the PSPS de-energization criteria. PG&E will exercise operational judgment consistent with standard utility industry practices to determine whether safety requires patrolling lines in areas not affected by the extreme weather and fire danger conditions necessitating de-energization, but were shut off only because of the interconnected nature of the grid. (*Id.* at 20-21.) Finally, PG&E is notifying the CPUC of expected cost increases in two programs and correcting minor errors in Attachment E to the Plan, which provides cost estimates for the programs in the Plan. (*Id.* at 21-22.)

|   |   |   |
|---|---|---|
|   | Respectfully Submitted, |   |
| Dated:  April 25, 2019 | JENNER & BLOCK LLP |   |

By:   /s/ Reid J. Schar
      Reid J. Schar (*pro hac vice*)

CRAVATH, SWAINE & MOORE LLP

By:   /s/ Kevin J. Orsini
      Kevin J. Orsini (*pro hac vice*)

CLARENCE DYER & COHEN LLP

By:   /s/ Kate Dyer
      Kate Dyer (Bar No. 171891)

Attorneys for Defendant PACIFIC GAS AND ELECTRIC COMPANY