JENNER & BLOCK LLP
    Reid J. Schar (*pro hac vice*)
    RSchar@jenner.com
    353 N. Clark Street
    Chicago, IL  60654-3456
Telephone:    +1 312 222 9350
Facsimile:    +1 312 527 0484

CLARENCE DYER & COHEN LLP
    Kate Dyer (Bar No. 171891)
    kdyer@clarencedyer.com
    899 Ellis Street
    San Francisco, CA 94109-7807
Telephone:    +1 415 749 1800
Facsimile:    +1 415 749 1694

CRAVATH , SWAINE & MOORE LLP
    Kevin J. Orsini (*pro hac vice*)
    korsini@cravath.com
    825 8th Avenue
    New York, NY 10019
Telephone:    +1 212 474 1000
Facsimile:    +1 212 474 3700

Attorneys for Defendant PACIFIC GAS AND ELECTRIC COMPANY

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>         v.<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>                              Defendant. | Case No. 14-CR-00175-WHA<br><br>**RESPONSE TO REQUEST FOR PG&E TO SUPPLY INFORMATION**<br><br>Judge:   Hon. William Alsup<br>Date:    July 31, 2019 |

Defendant Pacific Gas and Electric Company ("PG&E") respectfully submits this response to the

Court's July 10, 2019 Request for Offender PG&E to Supply Information, Question 2. Pursuant to the Court's instruction, PG&E files this response to the Court's Question 2 separately from its response to the Court's Question 1.

## I.     Response to Question 2(a).

The Court asks PG&E to "set forth the full amount of campaign contributions and to whom such contributions were made to by PG&E since January 1, 2017." Request ¶ 2(a).

Between January 1, 2017 and December 31, 2018, PG&E used corporate funds[1] to make contributions to political candidates, political parties, political action committees (PACs), and ballot measure committees totaling $5.3 million. PG&E has not made any such contributions in 2019 to date, though may do so in the coming months. Although the Court's specific question is directed at campaign contributions, PG&E's corporate-funded contributions to political parties, PACs, and ballot measure committees are also included here as such organizations may support campaigns.[2] Details regarding these contributions are set forth in Exhibit A, which lists the date, amount and recipient of each donation and contains links to PG&E's contribution reports publicly filed with the California Secretary of State.

PG&E understands the Court's request to seek information regarding the use of corporate funds to make political contributions. In addition to corporate-funded donations, and pursuant to California Government Code Section 81000 *et seq.*, PG&E sponsors a California employee PAC—the "Pacific Gas and Electric Company State and Local PAC"—which contributes to California state and local candidates using an account funded solely by employee contributions. Similarly, pursuant to 52 U.S.C. § 30118(a), PG&E also sponsors a federal employee PAC—the "PG&E Corporation Employees Energy PAC"—which makes federal contributions using funds provided by employees and shareholders. Because donations from these two PACs do not come from corporate funds, they are not included in Exhibit A.

---

[1] All PG&E political contributions are paid for by shareholders. Some PG&E employees also contribute their personal funds to political action committees. PG&E does not use any customer funds for political contributions. As used in this response, "corporate funds" refers to contributions paid for by PG&E shareholders.

[2] PG&E lobbying expenses, which are publicly reported, are not campaign contributions and not included here.

PG&E, the PG&E Company State and Local PAC, and the PG&E Corporation Employees Energy PAC all regularly publish their campaign contributions in public, searchable reports filed with the Federal Election Commission and the California Secretary of State.  In addition, PG&E posts details of these corporate and PAC contributions on its website at http://www.pgecorp.com/corp/about-us/corporate-governance/corporation-policies/political-engagement.page?.[3]

PG&E does not believe the contributions described above were more important than utility operations, including equipment maintenance or vegetation management.  PG&E's political engagement policies, programs, and practices are overseen by the boards of directors of both the corporation and the utility.  PG&E engages in the political process at the federal, state, and local levels of government to ensure that the concerns of customers, shareholders, and employees are adequately represented before lawmakers and regulators.  Policy decisions made by lawmakers and regulators at all levels significantly affect the environment in which PG&E operates, especially because its core utility business is highly regulated.

## II.     Response to Question 2(b).

The Court has asked: "PG&E has distributed almost five billion dollars in dividends prior to seeking the protection of the Bankruptcy Court.  Please also explain why so much was paid out in dividends at a time when PG&E was aware of the problems named in the Wall Street Journal report and knew of its hazard tree backlog."  Request ¶ 2(b).

As noted in prior filings with the Court, the revenue PG&E receives from customer rates is not by itself sufficient to support all of PG&E's operations and investments in infrastructure.  In order to finance investments, including those to enhance the safety and reliability of its gas and electric systems, PG&E

---

[3] The Center for Public Accountability, in conjunction with the Zicklin Center for Business Ethics Research at the University of Pennsylvania's Wharton School, ranks electoral spending transparency and accountability among the country's largest public corporations in its annual "Index of Corporate Political Disclosure and Accountability."  PG&E has been recognized as a top-tier company on this index since 2013 and was the second highest ranking utility in 2018, with a score of 97.1 out of 100 (the average score was less than 50 for other S&P 500 companies).  *See* Ctr. for Pol. Accountability, *How Companies Rank in the CPA-Zicklin Index*, TrackYourCompany.com, https://www.trackyourcompany.org/cpa-zicklin-index.html#Utilities.

must raise significant amounts of capital. PG&E has typically turned to equity markets to raise capital for these investments, as a matter of both necessity and regulatory compliance.[4] PG&E cannot fully finance its investments with debt alone due to limitations on its debt capacity.[5] In addition, the CPUC requires PG&E to maintain a capital structure balanced between debt and equity.[6] Accordingly, PG&E has historically raised significant equity capital each year to support capital expenditures.[7]

Dividends reflect the portion of earnings per share (or profits) that are paid to shareholders now, rather than retained by the enterprise. Dividends and infrastructure investments are not a zero sum game. Rather, dividends facilitate investment in infrastructure, because the steady payment of dividends is essential to raising new capital from investors. PG&E competes in the capital markets with other utilities to raise equity from investors. Traditional income-oriented investors will invest only if they can anticipate payment of a dividend, and certain institutional investors cannot or will not invest in equity without a dividend. Moreover, dividend payments are particularly important to attract investors to utility stocks, which typically enjoy relatively limited growth.[8] The expectation of a stable dividend is one of

---

[4] *See* Pacific Gas And Electric Company, FY2016 Annual Report (Form 10-K), at 55 (Feb. 16, 2017) ("FY2016 10-K"), http://investor.pgecorp.com/financials/sec-filings/sec-filings-details/default.aspx?FilingId=11864978.

[5] *See id.* at 11.

[6] *See id*; *In re Application of S. Cal. Edison et al.*, D. 12-12-034, 2012 WL 6759981 (Cal. P.U.C. Dec. 12, 2012), *as modified by* D. 17-07-05, 2017 WL 3234357 (Cal. P.U.C. July 13, 2017) (setting current capital structure requirement for major California energy utilities, including PG&E); *In re Pac. Gas & Elec. Co.*, D. 96-11-017, 69 CPUC 2d 167 (Nov. 6, 1996) (PG&E must seek a waiver from the CPUC in order to deviate from its approved capital structure). Regulating investor-owned utilities' debt and equity balance, including PG&E's, is a part of the CPUC's ratemaking function. *See Ponderosa Tel. Co. v. Pub. Utils. Comm.*, 197 Cal. App. 4th 48, 51-52 (2011) (In determining a utility's "authorized rate of return," the CPUC first "adopts a reasonable capital structure, i.e., the proportion of debt to equity that a utility company should use to finance its capital needs.").

[7] *See, e.g.*, FY2016 10-K at 50.

[8] *See* Jeff Reeves, *7 Great Utility Stocks with Big Dividends*, U.S. News & World Rep. (Dec. 6, 2018), https://money.usnews.com/investing/dividends/slideshows/7-great-utility-stocks-with-big-dividends (noting that "utility stocks pass on a decent portion of their profits to shareholders through stable dividends" but that "there's not much growth").

the top reasons that investors purchase utility stocks.[9] Utility stocks are therefore often ranked by analysts based on the dividends they provide, and the demand for a stock can be negatively affected if investors are uncertain whether dividends will be cut or eliminated.[10] For example, when PG&E suspended its dividend in the fourth quarter of 2017 in order to conserve cash due to potential wildfire liabilities, its stock value immediately fell precipitously.[11] At least part of the stock drop was likely attributable to suspension of the dividend. Accordingly, utilities regularly pay shareholder dividends except in extremely unusual circumstances.

When deciding upon the level of dividends to issue, PG&E has traditionally considered three objectives in the exercise of its business judgment:

- Comparability: Pay a dividend competitive with the securities of comparable companies based on payout ratio (the proportion of earnings paid out as dividends) and, with respect to PG&E Corporation, yield (i.e., dividend divided by share price).

- Flexibility: Allow sufficient cash to pay a dividend and to fund investments while avoiding the necessity to issue new equity unless PG&E Corporation's or the Utility's capital expenditure requirements are growing rapidly and PG&E Corporation or the Utility can issue equity at reasonable cost and terms; and

- Sustainability: Avoid reduction or suspension of the dividend despite fluctuations in financial performance except in extreme and unforeseen circumstances.

---

[9] *See, e.g.*, Gourav Kanti Bagch, *Market Jitters Refuse to Die Down*, NASDAQ (Oct. 12, 2018), https://www.nasdaq.com/article/market-jitters-refuse-to-die-down-5-utilities-picks-cm1036442 ("One of the most-popular, safe-haven sectors is utilities. This sector comprises companies that provide telephone, gas, water and electricity services. In this context, equity-focused investors looking for stable dividend and interest income can invest in utilities.").

[10] *See, e.g.*, Reeves, *supra* note 5 (listing "seven utilities that offer powerful dividends"); Will Ashworth, *10 Top Utility Stocks to Buy for Safety and Dividends*, Kiplinger (Oct. 23, 2018), https://www.kiplinger.com/slideshow/investing/T052-S001-best-utility-stocks-to-buy-safety-and-dividends/index.html (listing the "10 Top Utility Stocks for Safety and Dividends"); Matthew DiLallo, *Which Utility Is the Best Dividend Stock?* Motley Fool (Jan. 16, 2018), https://www.fool.com/investing/2018/01/16/which-utility-is-the-best-dividend-stock.aspx (noting the utility with the fastest growing dividend).

[11] The day after PG&E's December 20, 2017 announcement that it was suspending payment of dividends, PG&E's stock dropped over 15 percent. *See* Tracey Lien, *PG&E's stock dives after it suspends dividend, citing potential wildfire liabilities*, L.A. Times (Dec. 21, 2017), https://www.latimes.com/business/technology/la-fi-pge-dividend-stock-20171221-story.html ("PG&E's stock was trading at $43.19 about 8:40 a.m. Pacific Time. That was down 15.5% on the day and down 37.3% from its closing price Oct. 6, the last trading day before the fires began.").

Achieving these objectives has facilitated PG&E's continued ability to attract new equity investment to fund its operations and capital investments, including investments in safety.

Between 2012 and 2017, PG&E paid about $5.1 billion in dividends, but shareholders contributed $6.5 billion of new capital and reinvested earnings into the business for infrastructure investments—which included investments in safety—during this same period, resulting in a net contribution by shareholders of $1.4 billion. PG&E's net gain in capitalization in the 2012-2017 time period demonstrates the importance of continuous and stable dividend payments to building the resources necessary to make new capital investments, including investments in safety.

During this same time period, however, PG&E increased its dividend payment only once, in 2016, by approximately 6 percent. Until 2016, the dividend had not been increased since 2010. As PG&E's annual reports for 2011 through 2013 explained: "As the Utility focuses on improving the safety and reliability of its natural gas and electric operations, and subject to the outcome of the matters described under 'Natural Gas Matters' below, PG&E Corporation expects that its Board of Directors will maintain" its dividend.[12] By contrast, between 2011 and 2015, PG&E's peers had increased their dividends by an average of 5 percent per year, or roughly 20 percent in total.

Moreover, PG&E's payout ratio—the portion of earnings paid out as dividends—has likewise been at the lower end of its competitors in the capital markets. During the period of 2012-2015, PG&E's peer utilities targeted an adjusted dividend payout ratio range of 50-70 percent of earnings.[13] In other words, for every dollar of earnings, utility peers would seek to pay investors up to 70 cents in dividends,

---

[12] Pacific Gas And Electric Company, FY2011 Annual Report (Form 10-K), at 19 (Feb. 16, 2012), http://d1lge852tjjqow.cloudfront.net/CIK-0001004980/941b457c-b8fc-4741-b5b3-1297ccfd358e.pdf ("FY2011 10-K"); *see also* Pacific Gas And Electric Company, FY2012 Annual Report (Form 10-K), at 18 (Feb. 21, 2013), http://d1lge852tjjqow.cloudfront.net/CIK-0001004980/3e92b26b-f20a-46ce-b6cf-c2f8d8486cd3.pdf; Pacific Gas And Electric Company, FY2013 Annual Report (Form 10-K), at 13 (Feb. 11, 2014), http://d1lge852tjjqow.cloudfront.net/CIK-0001004980/079caa0f-e405-44bc-ad45-bd75566cae1e.pdf.

[13] An "adjusted" payout range is one that irons out non-recurring or unforeseen expenses that may take place in any given year. Such expenses reduce earnings per share, and if dividends are held constant, would increase the dividend payout ratio: if the total amount of earnings is smaller, but dividends remain the same, the ratio of dividends to earnings will be higher.

and retain only 30 to 50 cents in the business. PG&E targeted a similar adjusted payout ratio range (which it modified to 55-65 percent in 2016), retaining 35 percent to 45 percent of earnings in the business. Despite this target, as PG&E explained in its 2011 annual report, it expected dividends to remain at the lower end of that range so that equity funding was readily available to support capital investment needs.[14] Over the 2012-2017 time period, the adjusted dividend payout ratio for fifteen comparable U.S. utilities averaged about 63 percent, while PG&E's average adjusted dividend payout ratio over that same period was 54 percent.

As the Court is aware, in late 2017 following the North Bay wildfires, PG&E suspended payment of dividends. As a result of this decision and the reasons underlying it, PG&E has not raised any new equity in the market[15] and has instead raised new debt, including debtor-in-possession financing. A critical element of the plan of reorganization to emerge from bankruptcy will be to establish conditions that will enable PG&E to raise new equity capital. That, in turn, will require payment of a dividend that will allow PG&E to compete successfully with other utilities to attract equity investment.

In sum, the payment of dividends and the performance of work on all aspects of PG&E's system are not an "either/or" calculus. On the contrary, they are mutually reinforcing, as dividend payments are essential to PG&E's ability to continue to attract the capital needed to make required investments in safety and other aspects of PG&E's operations.

---

[14] FY2011 10-K at 18.

[15] PG&E did issue some new equity in 2018 through its matching contribution to its 401(k) plan.

|  |  |
|---|---|
|  | Respectfully Submitted, |
| Dated: July 31, 2019 | JENNER & BLOCK LLP |
|  | By: /s/ Reid J. Schar |
|  | Reid J. Schar (*pro hac vice*) |
|  | CRAVATH, SWAINE & MOORE LLP |
|  | By: /s/ Kevin J. Orsini |
|  | Kevin J. Orsini (*pro hac vice*) |
|  | CLARENCE DYER & COHEN LLP |
|  | By: /s/ Kate Dyer |
|  | Kate Dyer (Bar No. 171891) |
|  | Attorneys for Defendant PACIFIC GAS AND ELECTRIC COMPANY |