JENNER & BLOCK LLP
    Reid J. Schar (*pro hac vice*)
    RSchar@jenner.com
    353 N. Clark Street
    Chicago, IL 60654-3456
Telephone: +1 312 222 9350
Facsimile: +1 312 527 0484

CLARENCE DYER & COHEN LLP
    Kate Dyer (Bar No. 171891)
    kdyer@clarencedyer.com
    899 Ellis Street
    San Francisco, CA 94109-7807
Telephone: +1 415 749 1800
Facsimile: +1 415 749 1694

CRAVATH, SWAINE & MOORE LLP
    Kevin J. Orsini (*pro hac vice*)
    korsini@cravath.com
    825 Eighth Avenue
    New York, NY 10019
Telephone: +1 212 474 1000
Facsimile: +1 212 474 3700

Attorneys for Defendant PACIFIC GAS AND ELECTRIC COMPANY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                       Plaintiff,<br><br>     v.<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>                       Defendant. | Case No. 14-CR-00175-WHA<br><br>**REPORT ON MARCH 19, 2020 COLLECTION OF EVIDENCE FROM CRESTA-RIO OSO LINE**<br><br>Judge:  Hon. William Alsup |

1  Defendant Pacific Gas and Electric Company ("PG&E") respectfully submits this
2  report on PG&E's March 19, 2020 collection of equipment from the Cresta-Rio Oso 230 kV
3  Transmission Line (the "Cresta-Rio Oso Line").  At the February 19, 2020 hearing, PG&E and
4  the Court discussed hooks and hanger plates supporting the lower transposition jumper on
5  Tower 009/081 on the Cresta-Rio Oso Line that had been brought to PG&E's and the Court's
6  attention by the Official Committee of Tort Claimants (the "TCC").  As PG&E explained, PG&E
7  scheduled replacement of those hooks and hanger plates for mid-March.  PG&E expedited
8  replacement of the equipment even though the climbing inspection of Tower 009/081 that PG&E
9  performed on January 31, 2020 did not reveal any imminent risk to public safety and resulted in
10 Priority Code E work orders, which PG&E has 12 months to address in the ordinary course.

11 On the morning of March 19, 2020, PG&E removed and replaced the insulator
12 strings, C-hooks and hanger plates on the transposition runner arms of Tower 009/081.[1]  TCC
13 representatives were in attendance to observe the evidence collection, and PG&E's third-party
14 evidence collection vendor took custody of the equipment.

15 At this time, PG&E has not performed a physical inspection of the removed
16 equipment due to shelter-in-place orders currently in effect in California to address the
17 COVID-19 pandemic.  Any such inspection would require multiple individuals (including
18 representatives of the TCC, who PG&E understands intend to participate) to travel to and
19 congregate at the storage facilities of PG&E's third-party evidence collection vendor.  However,
20 PG&E engineers and consultants from Exponent, Inc. ("Exponent") have estimated the
21 remaining life of the C-hook and hanger plate removed from the right-phase transposition runner
22 arm on Tower 009/081 by examining photographs of the equipment taken post-removal by
23 PG&E's evidence collection vendor.[2]  Attached as Exhibit A are photographs of both hook and

---

[1] PG&E intends to replace additional equipment on Tower 009/081 as called for by the work orders resulting from the January 31, 2020 inspection, including other insulator strings and associated attachment hardware, at a later time.

[2] PG&E was not able to perform such analysis on the C-hook and hanger plate removed from the left-phase transposition runner arm because the still-interlocked C-hook and hanger

plate assemblies supporting the lower transposition jumper taken by PG&E's evidence collection vendor post-removal.  Based on their analysis and the assumptions provided below, PG&E engineers and Exponent estimate (i) that the C-hook removed from the right-phase transposition arm, had it remained in service, would not have been at imminent risk of falling below the CPUC-required safety factor for over 150 years or approximately 30 years, based on assumed installation dates of 1928 and June 2002, respectively; and (ii) that the hanger plate removed from the right-phase transposition arm, had it remained in service, would not have been at imminent risk of falling below the CPUC-required safety factor for over 70 years.

As noted above, due to the COVID-19 pandemic, PG&E has not been able to perform any physical inspection of the equipment, nor has it been able to perform any other type of testing or analysis that requires physical access to the components.  Should PG&E or Exponent later conduct any such testing or analyses, their estimates with respect to the remaining life of the equipment may change.

Given the available information, PG&E engineers and Exponent based their remaining life analysis on the following assumptions:

*First*, that the extent of material loss on the C-hook and hanger plate removed from the right-phase transposition runner arm of Tower 009/081 is approximately 33 percent and 50 percent, respectively.  To approximate the extent of wear on the C-hook and hanger plate removed from the right-phase transposition runner arm of Tower 009/081, PG&E engineers and Exponent referenced (i) photographs of the C-hook and hanger plate removed from the right-phase transposition runner arm of Tower 009/081, provided in Exhibit A; (ii) C-hook and hanger plate dimensions identified in PG&E drawings; and (iii) the known dimensions of similar C-hooks and hanger plates.

*Second*, that the equipment wears at a linear rate over time (*i.e.*, that the rate of wear remains constant from the time of installation through removal of the equipment and would

---

plate were zip-tied together for evidence transportation.  As a result, the hook and plate contact surfaces are not visible in the photographs taken by the evidence collection vendor.

have stayed constant had the equipment remained on the tower).

*Third*, that the specific hook and hanger plate assembly on the right-phase transposition runner arm of Tower 009/081 would be at imminent risk of falling below a safety factor of 1.33, or two-thirds of the CPUC-prescribed safety factor of 2 for this type of equipment, as it reaches 90 percent material loss. The safety factor for a given piece of equipment is calculated by dividing the maximum load the equipment is capable of supporting by the load the equipment is required to support. Here, PG&E's estimate of the maximum load the C-hook and hanger plate on the right-phase transposition runner arm of Tower 009/081 would experience in service is approximately 375 pounds. Based on this estimated loading condition, PG&E has calculated that the C-hook and hanger plate assembly on the right-phase transposition runner arm of Tower 009/081 would not reach a safety factor of 1.33 until it had 93 percent material loss. As explained in PG&E's March 2, 2020 submission, CPUC General Order 95 provides that equipment must be "replaced or reinforced" before being reduced to less than two-thirds of its prescribed safety factor, and C-hooks and hanger plates are types of "pole line hardware" subject to a safety factor of 2. (Dkt. 1177 at 11-12.)

*Fourth*, that the hanger plate was installed in approximately 1928. Based on currently available information, PG&E believes this may be the installation date because the Cresta-Rio Oso Line was placed into service in approximately 1928. At this time, PG&E is not aware of any information in PG&E records indicating that the hanger plate was replaced in subsequent years.

*Fifth*, that the C-hook at issue was installed in either 1928 or June 2002. Based on its records, PG&E understands that the insulator string on the right-phase transposition runner arm was found to have been replaced in June 2002. PG&E cannot determine conclusively from the records associated with that work whether the C-hook was replaced together with the insulator string. As a result, PG&E engineers and Exponent performed remaining life calculations of the C-hook assuming alternative installation dates of approximately 1928 and June 2002, which represent the earliest and latest potential installation dates for the C-hook.

1   PG&E's current standards provide that C-hooks and hanger plates that have material loss of 30 to 50 percent are to be assigned Priority Code E, a designation that requires they be replaced within 12 months (or 6 months if the structure is located in a Tier 3 High Fire-Threat District area).  As noted above, based on the photographs taken during the evidence collection, PG&E believes that the percentage of wear on the C-hook and hanger plate removed from the right-phase transposition arm of Tower 009/081 is approximately 33 percent and approximately 50 percent, respectively.  Accordingly, PG&E has not altered its assessment following the January 31, 2020 inspection that the degree of wear on that equipment constituted Priority Code E conditions under its current standards.

| | |
|---|---|
| Dated: April 2, 2020 | Respectfully Submitted, |
| | JENNER & BLOCK LLP |
| | |
| | By:   /s/ Reid J. Schar |
| |       Reid J. Schar (*pro hac vice*) |
| | |
| | CRAVATH, SWAINE & MOORE LLP |
| | |
| | By:   /s/ Kevin J. Orsini |
| |       Kevin J. Orsini (*pro hac vice*) |
| | |
| | CLARENCE DYER & COHEN LLP |
| | |
| | By:   /s/ Kate Dyer |
| |       Kate Dyer (Bar No. 171891) |
| | |
| | Attorneys for Defendant PACIFIC GAS AND ELECTRIC COMPANY |