DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

JEFF SCHENK (CABN 234355)
PHILIP KOPCZYNSKI (NYBN 4627741)
NOAH STERN (CABN 297476)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    Jeffrey.b.schenk@usdoj.gov
    Philip.kopczynski@usdoj.gov
    Noah.stern@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR-14-00175-WHA |
| Plaintiff, | UNITED STATES'S RESPONSE TO PG&E'S MOTION TO RECONSIDER ORDER MODIFYING CONDITIONS OF PROBATION [Dkt. 1187-1] |
| v. | |
| PACIFIC GAS AND ELECTRIC COMPANY, | |
| Defendant. | |

The United States, through Assistant United States Attorneys Jeff Schenk, Philip Kopczynski, and Noah Stern, responds to PG&E's motion for reconsideration of the Court's April 29, 2020 order modifying the conditions of its probation.

Now that the Court has granted PG&E a hearing for further consideration of the new conditions, PG&E's procedural arguments are moot. The procedural requirements of Rule 32 of the Federal Rules of Criminal Procedure will be satisfied after the hearing on PG&E's motion for reconsideration.

With respect to the substance of the conditions, the government shares the Court's interest in

UNITED STATES'S RESPONSE TO
PG&E'S MOTION FOR RECONSIDERATION    1
CR-14-00175-WHA

imposing conditions of probation aimed at protecting the public from further death and destruction caused by wildfires ignited by PG&E equipment.  However, on this record, the United States is not in a position to address whether the new conditions ordered by the Court can be feasibly implemented, will protect the public, and are consistent with regulations imposed on PG&E by the California Public Utilities Commission ("CPUC") and other regulators.  Because of the complexity of developing successful processes for ensuring the safety of electric transmission and distribution lines and the related regulatory scheme, the government recommends that the Court extend the stay of its order imposing new probation conditions and supplement the record on the question of whether the *specific conditions* ordered by the Court are no broader than reasonably necessary to achieve the goals of 3553(a) and harmonize with state regulation.  The Court could do so by soliciting input from the CPUC and Cal Fire, and requesting the Federal Monitor to obtain opinions from its experts.

Alternatively, the government notes that the Court invited PG&E to meet with the CPUC and the federal monitor to devise ways to carry out the new conditions and stated that "the Court will be flexible in approving any protocols that achieve the essence of the foregoing new conditions if all such parties so recommend." Dkt. 1186 at 12.  The government believes that this is a reasonable process for ensuring that the conditions are reasonably necessary and do not conflict with the state regulation of PG&E.  The Court could stay the new conditions until PG&E submits proposed protocols.

**I.    The Court Has the Power to Entertain PG&E's Motion for Reconsideration and PG&E's Notice of Appeal is Ineffective and Did Not Divest the Court of Jurisdiction**

District courts have "inherent power" to entertain motions for reconsideration in criminal cases.  *United States v. Lopez-Cruz*, 730 F.3d 803, 811 (9th Cir. 2013).  "No precise 'rule' governs" this authority to reconsider a prior ruling; it "is within [the Court's] sound judicial discretion." *Id.* at 811.  A motion for reconsideration is considered timely if it is "filed within the original period for review." *United States v. Villapudua-Perada*, 896 F.2d 1154, 1156 (9th Cir. 1990) (quotation marks omitted).  When a timely motion for reconsideration is filed, it "renders an otherwise final decision of a district court not final until it decides" the motion. *United States v. Ibarra*, 502 U.S. 1, 6-7 (1991) (per curiam); *see also United States v. Dieter*, 429 U.S. 6, 8 (1976) ("[T]he consistent practice in civil and

criminal cases alike has been to treat timely petitions for rehearing as rendering the original judgment nonfinal for purposes of appeal as long as the petition is pending."); *United States v. Healy*, 376 U.S. 75, 77-78 (1964) (same).

PG&E's notice of appeal in this case is ineffective and does not deprive this Court from exercising its inherent authority to further modify its order. *See United States v. Figueroa*, No. 2:08-cr-273 JCM, 2010 WL 5314359, at *1 (D. Nev. Dec. 20, 2010) ("Although . . . motion for reconsideration is not one of the enumerated motions under Rule 4(b)(3)(A) . . . . [it] 'renders an otherwise final decision of a district court not final until it decides the petition for rehearing.'" (quoting *Ibarra*, 502 U.S. at 6)). That is especially true, as PG&E correctly points out (Dkt. No. 1187 at 2 n.2), because 18 U.S.C. § 3563(c) specifically authorizes this Court to modify probation conditions "at any time." Moreover, the Supreme Court and Ninth Circuit have specifically encouraged district courts to reconsider their own orders in similar circumstances. "[P]lenary consideration of an issue by an appellate court ordinarily requires more time than is required for disposition by a trial court of a petition for rehearing." *Dieter*, 429 U.S. at 9. District courts are therefore given broad authority to "reconsider their own orders" to avoid "the time-consuming, costly process of appeal." *United States v. Martin*, 226 F.3d 1042, 1049 (9th Cir. 2000); *see also United States v. Jones*, 608 F.2d 386, 390 n.2 (9th Cir. 1979) (permitting district courts to reconsider their own order "furthers the policy favoring judicial economy"). PG&E's protective notice of appeal does not divest this Court of that authority.

## II.    PG&E's Procedural Arguments are Now Moot

PG&E argues that the Court imposed the new conditions without notice or a hearing. Dkt. No. 1187-1 ("Mot.") at 4. On May 14, 2020, the Court issued an order staying the imposition of the conditions and setting a briefing schedule and hearing on PG&E's motion. Dkt. No. 1190. The Court's order moots PG&E's procedural arguments because, after the hearing is held, the requirements will be met.

While a defendant is serving a term of probation, "[t]he court may modify, reduce, or enlarge the conditions . . . at any time . . . , pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the

conditions of probation." 18 U.S.C. § 3563(c); *see also United States v. Bainbridge*, 746 F.3d 943, 946-50 (9th Cir. 2014) (holding that district court may modify conditions of probation without any "change in circumstances"). The Federal Rules of Criminal Procedure provide that "[b]efore modifying the conditions of probation . . . , the court must hold a hearing, at which the person has a right to counsel and an opportunity to make a statement and present any information in mitigation." Fed. R. Crim. P. 32.1(c)(1).

On January 16, 2020, the Court issued an order to show cause why a new condition of probation should not be imposed "requiring PG&E to hire and train, as part of its own workforce, sufficient crews, and equipment to inspect and to trim and remove all vegetation" to come into compliance with California law and PG&E's wildfire mitigation plan. Dkt. No. 1133. The Court scheduled a hearing and PG&E submitted briefing on the issue. In the meantime, the Court issued numerous orders requesting information from PG&E relating to transmission line inspection issues, including ordering PG&E to address the evidence presented by an expert that a potentially dangerous condition on a transmission line was missed by PG&E's inspectors. Dkt. Nos. 1111, 1122, 1125, 1127, 1136, 1138. On February 19, 2020, the Court held a hearing on the proposed new condition and the transmission line issue. Dkt. No. 1159. On April 29, 2020, the Court issued its order imposing four new conditions of probation, which are the subject of PG&E's motion. Dkt. No. 1186. PG&E requested leave to file a motion for reconsideration along with its motion and over 1,500 pages of supporting documents, including expert declarations. Dkt. No. 1187. The Court set a briefing schedule and scheduled a hearing on PG&E's motion for May 28, 2020. Dkt. No. 1190. The government believes that this process satisfies the procedures outlined in Federal Rule of Criminal Procedure 32.1(c)(1).

### III. The United States Recommends the Court Extend the Stay of Its Order to Supplement the Record on Whether the New Conditions are Reasonably Necessary

#### A. Applicable Law

Section 3565 of Title 18 provides that when a defendant violates a condition of probation, "the court may, after a hearing pursuant to Rule 32.1 of the Federal Rules of Criminal Procedure, and after considering the factors set forth in section 3553(a) to the extent that they are applicable—(1) continue

him on probation, with or without extending the term or modifying or enlarging the conditions; or (2) revoke the sentence of probation and resentence the defendant under subchapter A." 18 U.S.C. § 3565(a); *see also* U.S.S.G. § 8F1.1 ("Upon a finding of a violation of a condition of probation, the court may extend the term of probation, impose more restrictive conditions of probation, or revoke probation and resentence the organization.").

When setting the terms of probation for an organizational defendant, just as for an individual defendant, the court may impose any condition that is "reasonably related to the factors set forth in [18 U.S.C. §] 3553(a)(1) and (a)(2)," so long as the condition "involve[s] only such deprivations of liberty or property as are reasonably necessary for the purposes indicated in section 3553(a)(2)." 18 U.S.C. § 3563(b)(22). The factors set forth in Section 3553(a)(1) and (2) include, among others, "the nature and circumstances of the offense and the history and characteristics of the defendant," and the "need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; . . . to afford adequate deterrence of criminal conduct; . . . [and] to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1)-(2).

The United States Sentencing Guidelines ("Guidelines") also address probation for organizational defendants. The Guidelines state that probation is appropriate for organizational defendants in many circumstances, including when "necessary to ensure that changes are made within the organization to reduce the likelihood of future criminal conduct," and when "necessary to accomplish one or more of the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2)." U.S.S.G. § 8D1.1(a)(6), (8). Mirroring the language in the statute, the Guidelines provide that courts may impose conditions "that (1) are reasonably related to the nature and circumstances of the offense or the history and characteristics of the organization; and (2) involve only such deprivations of liberty or property as are necessary to effect the purposes of sentencing." U.S.S.G. §8D1.3(c). The Guidelines further state that "[i]n determining the conditions to be imposed . . . , the court should consider the views of any governmental regulatory body that oversees conduct of the organization relating to the instant offense." U.S.S.G. § 8D1.4 cmt. 1.

Consistent with these provisions, the Ninth Circuit has long held that, within certain limitations,

UNITED STATES'S RESPONSE TO
PG&E'S MOTION FOR RECONSIDERATION                5
CR-14-00175-WHA

"the trial judge has very broad discretion in fixing the terms and conditions of probation." *United States v. Consuelo-Gonzalez*, 521 F.2d 259, 262 (9th Cir. 1975) (en banc). The Ninth Circuit reviews a district court's modification of conditions of probation for abuse of discretion. *United States v. Nixon*, 839 F.3d 885, 887 (9th Cir. 2016). A condition of probation "need not relate to the offense of conviction, as long as it satisfies one of the . . . goals" set forth in Section 3553(a)(1) and (2). *United States v. Weber*, 451 F.3d 552, 558 (9th Cir. 2006); *accord United States v. Stoterau*, 524 F.3d 988, 1008 (9th Cir. 2008).[1] Moreover, the statutory requirement that a condition of probation be reasonably related to the Section 3553(a) factors is "a very flexible standard." *United States v. Gementera*, 379 F.3d 596, 603 (9th Cir. 2004) (internal quotation marks and citations omitted). "[E]ven very broad conditions are reasonable if they are intended to promote the probationer's rehabilitation and to protect the public." *United States v. Bee*, 162 F.3d 1232, 1236 (9th Cir. 1988). In addition, a condition may have a proper rehabilitative purpose even if it is aimed at conduct that does not rise to the level of a criminal offense. *See United States v. LaCoste*, 821 F.3d 1187, 1192 (9th Cir. 2016). The Ninth Circuit has affirmed conditions of probation that restrict or interfere with the probationer's vocation so long as the condition is reasonably necessary to achieve a proper purpose, such as protection of the public. *See United States v. Clark*, 195 F.3d 446, 452 (9th Cir. 1999); *United States v. Nu-Triumph, Inc.*, 500 F.2d 594, 596 (9th Cir. 1974).

Specific to organizational defendants, the Ninth Circuit "has recognized that special problems are inherent in the criminal punishment of corporations." *United States v. Blue Mountain Bottling Co. of Walla Walla*, 929 F.2d 526, 528 (9th Cir. 1991). One such problem is that "because corporations cannot be sentenced to prison time, sentences between corporate and individual defendants may be disparate." *Id.* According to the Ninth Circuit, "'creative terms of probation' may be required to rectify this disparity while seeing that the punishment of criminals is effected." *Id.* (quoting *United States v. Mitsubishi Int'l Corp.*, 677 F.2d 785, 787 (9th Cir. 1982)).

While regularly reaffirming that district courts "enjoy broad discretion in fashioning the

---

[1] *Weber* and *Stoterau* concerned supervised release but the analysis of probation and supervised release is largely the same. *Compare* 18 U.S.C. § 3563 *with* 18 U.S.C. § 3583; *see also, e.g.*, *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973); *United States v. Kincade*, 379 F.3d 813, 817 n.2 (9th Cir. 2004) (en banc).

conditions needed for successful supervision of a defendant," and that district courts' choices will receive 'substantial deference," the Ninth Circuit has insisted that conditions of supervision find support in the record, and that the conditions be no broader than reasonably necessary. *See LaCoste*, 821 F.3d at 1190-93. The Ninth Circuit has also recognized federalism concerns when a condition of supervision "qualifies as federal intervention into a 'traditional area of state concern.'" *United States v. Lakatos*, 241 F.3d 690, 695 (9th Cir. 2001) (quoting *H.C. v. Koppel*, 203 F.3d 610, 613 (9th Cir. 2000)).

In *Lakatos*, the Ninth Circuit held that a supervised release condition requiring the defendant to pay child support on a schedule inconsistent with a preexisting California Superior Court order was inconsistent with the statutory limitations implicit in 18 U.S.C. § 3563(b)(2), which authorizes the sentencing court to impose a condition of probation requiring the defendant to comply with state child support orders. *Id*. at 694. The court reasoned that the "statutory limitation reflects a federalism concern with ensuring that federal courts respect state court orders generally and the states' preeminent role in matters of child support particularly." *Id*. In invalidating the condition, the court found that it would "clearly nullify" the preexisting state order. *Id.* at 695. The court found support for its holding in the Second Circuit's statement in *United States v. A-Abras Inc.* that, "where a state has in place a comprehensive procedure for resolution of the condition probation imposes, it makes good sense to defer to that established procedure." *Lakatos*, 241 F.3d at 694 (quoting *United States v. A-Abras Inc.*, 185 F.3d 26, 34 (2d Cir. 1999)). In *A-Abras*, the Second Circuit upheld a supervised release condition requiring the defendant to pay a city fine at a rate not specified by the city, in part, because the city had specified no rate for payment and, if a subsequent conflict emerged, the defendant could seek modification of the condition. 185 F.3d at 35. Read together, these cases suggest that sentencing courts should be mindful of federalism concerns when imposing probation conditions that implicate areas of state regulation.

### B. The United States's View on the New Conditions of Probation

PG&E seeks reconsideration of the Court's April 29, 2020 order adding four new conditions to its probation. The Court's order added the following four conditions: First, PG&E must employ a sufficient number of inspectors on its own payroll to manage its outsourced tree-trimming work. Dkt.

No. 1186 at 6-7. Second, PG&E must keep records identifying the age of every item of equipment on every transmission tower and line. *Id.* at 11. Third, PG&E must design a new inspection system for assessing every item of equipment on all transmission towers, to include precise forms and videos of every inspection. *Id.* at 11-12. Fourth, PG&E must require all contactors performing transmission tower inspections to carry insurance sufficient to cover losses suffered by the public caused by deficient inspections. *Id.* at 12. In its order, the Court invited PG&E to meet with the CPUC and the federal monitor to devise ways to carry out the new conditions and stated that "the Court will be flexible in approving any protocols that achieve the essence of the foregoing new conditions if all such parties so recommend." *Id.* The Court ordered PG&E to submit a plan for compliance by May 28, 2020. *Id.*

PG&E first argues that the probation conditions are unlawful because they impermissibly interfere with California's regulatory authority. Mot. at 11-15. In support of its argument, PG&E points to the CPUC's broad authority to regulate PG&E's inspection and safety programs, recent California legislation on the issue which, among other things, charges the Wildfire Safety Division ("WSD") with overseeing electrical corporations' compliance with wildfire safety, and the fact that PG&E's inspection program is reviewed and approved by the WSD on an annual basis. *Id.*

As a general matter, the United States believes the Court has the authority to impose probation conditions requiring an organizational defendant to modify their internal operations in support of protecting the public, even if the defendant is an organization within a highly regulated field. The United States recognizes, however, that probation conditions that directly conflict with, or undermine, state regulations give rise to important federalism concerns. *See Lakatos*, 241 F.3d at 694-95. Although none of the examples cited by PG&E appear to present a clear conflict with state regulations,[2] given the complexity of PG&E's regulatory environment, the United States believes that the Court and the parties would benefit from receiving input from the CPUC on the issue. If the conditions do, in fact, impede on

---

[2] For example, PG&E argues that the application of the transmission record-keeping and inspection conditions to all transmission towers conflicts with a draft WSD resolution directing PG&E to engage in "strategic prioritization of initiatives geographically and by ignition driver to target the highest risk elements of PG&E's grid . . . ." Mot. at 14-15. But PG&E does not explain how strategic prioritization is inconsistent with the new probation conditions, especially in light of the Court's statement that it will be flexible in approving protocols that achieve the essence of the conditions.

UNITED STATES'S RESPONSE TO
PG&E'S MOTION FOR RECONSIDERATION           8
CR-14-00175-WHA

the CPUC's ability to regulate PG&E or undermine the WSD's review and approval of its inspection program, the CPUC can so inform the Court. Soliciting input from the CPUC would also be consistent with the Guidelines application note stating that "the court should consider the views of any governmental regulatory body that oversees conduct of the organization" in imposing probation conditions. U.S.S.G. § 8D1.4 cmt. 1.

PG&E's second argument is that the conditions are counterproductive, impractical, dangerous, or impossible to satisfy. Mot. at 15-25. PG&E submitted over 1,500 pages of documents in support of its arguments, including expert declarations. Although the United States shares the Court's interest in imposing more restrictive conditions on PG&E to protect the public, on this record, the United States is not in a position to address the feasibility of implementing the conditions, the likelihood of their success, or PG&E's arguments against them. For example, with respect to the condition requiring contractors to obtain insurance, PG&E submitted a declaration from its Senior Director of Strategic Sourcing stating that PG&E's contractors would not be able to obtain insurance in the amounts contemplated by the Court. Dkt. 1187-5. PG&E further argues that "California has recognized that traditional insurance is no longer a viable solution for insuring wildfire liability" and has provided for a different method of compensating wildfire victims. Mot. at 25. The United States is unaware of any other evidence in the record on the issue.

Because of the complexity of these issues, the United States recommends that the Court supplement the record on the efficacy of its proposed new conditions. For instance, the Court could ask its Federal Monitor to obtain opinions from its experts on the new conditions and/or propose modifications to them.[3] While the record is replete with facts to support more restrictive probation conditions with respect to PG&E's inspections, the record is comparably thin on evidence to show that the *specific conditions* ordered by the Court are reasonably necessary to improve PG&E's inspections and thereby protect the public. Receiving input from experts and regulators will develop that record more fully.

---

[3] If the Monitor does not currently have experts qualified to evaluate the conditions, it could retain additional experts, as necessary.

UNITED STATES'S RESPONSE TO
PG&E'S MOTION FOR RECONSIDERATION          9
CR-14-00175-WHA

In sum, the United States recommends that the Court extend the stay of its order imposing new probation conditions, and supplement the record on the question of whether the *specific conditions* ordered by the Court are no broader than reasonably necessary to achieve the goals of 3553(a).

DATED:     May 21, 2020                          Respectfully submitted,

                                                 DAVID L. ANDERSON
                                                 United States Attorney


                                                 ___/s/_____
                                                 JEFF SCHENK
                                                 PHILIP KOPCZYNSKI
                                                 NOAH STERN
                                                 Assistant United States Attorneys

UNITED STATES'S RESPONSE TO
PG&E'S MOTION FOR RECONSIDERATION          10
CR-14-00175-WHA