UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>    Defendant. | No. CR 14-00175 WHA<br><br>**ORDER APPROVING AND ADOPTING PROPOSED CONDITIONS OF PROBATION** |

In 2010, an underground gas pipeline operated by Pacific Gas & Electric exploded in San Bruno, which injured or killed over 60 people and burned over 100 homes. In August 2016, a federal jury accordingly convicted PG&E on six federal felony counts. District Judge Thelton Henderson imposed five years of probation on PG&E, and appointed an independent monitor to oversee and report on PG&E's rehabilitation.

While on probation in October 2017, PG&E ignited at least 17 wildfires in Wine Country causing death and destruction. PG&E also pled guilty to igniting the Camp Fire in Butte County while still on probation in November 2018 — the deadliest wildfire in California's history, killing 85 people and burning over 18,000 structures. Recently, CAL FIRE also determined a PG&E jumper cable started the Kincade Fire in October 2019.

In response to this devastation, this Court initiated a number of probation hearings in 2019 and ultimately modified probation conditions to include the following (Dkt. No. 140):

    1.    PG&E must fully comply with all applicable laws

       concerning vegetation management and clearance requirements, including Sections 4292 and 4293 of the California Public Resources Code, CPUC General Order 95, and FERC FAC-003-4.

2. PG&E must fully comply with the specific targets and metrics set forth in its wildfire mitigation plan, including with respect to enhanced vegetation management. Compliance with these targets and metrics, however, will not excuse any failure to fully comply with the vegetation laws as required in paragraph 1.

3. The monitor shall assess PG&E's wildfire mitigation and wildfire safety work, including through regular, unannounced inspections of PG&E's vegetation management efforts and equipment inspection, enhancement, and repair efforts. The inspections will include both inspections of segments of power lines where PG&E has conducted its enhanced vegetation management efforts pursuant to its wildfire mitigation plan, as well as areas where enhanced vegetation management has yet to occur. The inspections will further include field interviews and questioning of PG&E employees and contractors.

4. PG&E shall maintain traceable, verifiable, accurate, and complete records of its vegetation management efforts. PG&E shall report to the monitor on the first business day of every month on its vegetation management status and progress, and make available for inspection all related records at the monitor's request.

5. PG&E shall ensure that sufficient resources, financial and personnel, including contractors and employees, are allocated to achieve the foregoing. If PG&E cannot find enough contractors, then PG&E must hire and train its own crews to trim and remove trees. To ensure that sufficient financial resources are available for this purpose, PG&E may not issue any dividends until it is in compliance with all applicable vegetation management requirements as set forth above.

In the past year, however, a number of developments have occurred, which have made it necessary to impose new conditions of probation. *First,* regardless of its justifications, PG&E has admitted that it is not in full compliance with its wildfire mitigation plan, falling behind in various metrics. Reports from the monitor have confirmed flaws in PG&E's wildfire mitigation plan leading to, among other things, missed hazard trees. *Second,* state regulators have reported that the Butte County fire started when a PG&E C-hook, so gouged from decades of friction from swaying, fell off, causing the attached power line to fall onto the metal

tower and spew sparks onto the wind-blown dry grass below.  PG&E apparently had this hook inspected for wear multiple times prior to the fire.

This Court held a hearing in February 2020 regarding the imposition of new probation conditions and ultimately imposed four new conditions in April 2020.  These new conditions require PG&E to, among other things, hire in-house pre- and post- inspectors, set clear tagging guidelines, keep records regarding the age of transmission towers and lines, design a new inspection system for transmission towers, and require contractors to carry insurance for wildfire losses.

PG&E moved for reconsideration on all of these conditions.  A hearing occurred on the motion in May.  Following the hearing, CPUC and amici (Alex Cannara and Gene Nelson) submitted supplemental briefing (Dkt. Nos. 1217, 1228).  PG&E, the United States government, and the federal monitor submitted three proposed new conditions of probation aimed at addressing some of the concerns expressed in the Court's April 2020 order.  CPUC and amici provided additional comments on these proposed new conditions of probation (Dkt. Nos. 1236, 1237).

After reviewing the supplemental briefing, the comments, the proposed new conditions of probation, and the parties' clarifications (Dkt. Nos. 1227, 1241), this order **GRANTS**, to the following extent, the motion for reconsideration.  The additional conditions from the April order are hereby withdrawn.  This order instead **ACCEPTS AND ADOPTS** the additional conditions of probation proposed by PG&E, the government, and the federal monitor, effective immediately.  These are the additional conditions:

> 6. **Vegetation Condition**: PG&E shall, by September 1, 2020, staff an in-house vegetation management inspection manager to oversee a number of workforce resources who will provide in-field oversight of all stages of the vegetation management process, including the enhanced vegetation management program work, to be deployed throughout PG&E's territory, including High Fire-Threat Districts. By the end of September 2020, PG&E will extend offers to 10 in-house field supervisors and/or inspectors, an additional 10 inspectors by the end of November, and the remaining approximately 10 inspectors by the end of January 2021. The inspectors shall conduct in-field oversight of PG&E contractors while the work is being

3

performed, verifying and correcting any deviation from applicable scopes of work pursuant to PG&E policies and legal requirements. The inspectors shall also oversee pre-inspectors to help ensure they are clearly marking and designating trees for trimming and removal, and that tree-trimming contractors are appropriately performing their duties. Deviations from applicable scopes of work shall also be accurately recorded and reported to PG&E and the Monitor team to be used for, among other things, ongoing training of PG&E's contract workforce.

7. **Asset Age Condition**: For certain critical transmission tower components in High Fire-Threat Districts, the failure of which may result in an ignition, PG&E shall conduct a reasonable search and, where available, record the age and date of installation of those components. For all other such critical transmission components and where asset age records are not reasonably available, PG&E shall make conservative assumptions of such ages and dates of installation. PG&E shall also implement a program to determine the expected useful life of critical components factoring in field conditions and incorporate that information into its risk-based asset management programs. PG&E shall begin this effort (or supplement any existing or planned initiatives) immediately and provide monthly progress reports to the Monitor team.

8. **Transmission Inspection Program Condition:** PG&E shall, by the end of 2020, supplement its transmission asset inspections program to include the following measures: (1) hire a crew of in-house and/or contract inspectors, independent from inspectors conducting transmission inspections, to oversee in the field transmission inspections while they are being conducted; (2) going forward, and subject to CAISO clearances and/or other external dependencies, revise the material loss threshold for the replacement of cold-end hardware (including C-hooks and hanger plates) in High Fire-Threat Districts to create a 90-day replacement requirement for such hardware with an observed material loss approaching 50%; and (3) make the prior two years of inspection reports available to transmission post-inspection review teams starting in 2021, and one year of inspection reports available in 2020.

With regard to the "approaching 50%" criteria in the Transmission Inspection Program Condition, the Court regards this as a *minimum* standard of performance. This order recognizes that there will be circumstances where safety is in danger even when cold-end hardware has not yet approached 50% material loss. Under no circumstances shall PG&E contend that the Court has blessed "approaching 50%" as an acceptable benchmark for

4

replacement of cold-end hardware.  Safety requires replacement on a case-by-case basis, not just when certain cold-end hardware approaches 50% material loss.

**IT IS SO ORDERED.**

Dated:  August 7, 2020.



WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE