JENNER & BLOCK LLP
   Reid J. Schar (*pro hac vice*)
   RSchar@jenner.com
   353 N. Clark Street
   Chicago, IL 60654-3456
Telephone: +1 312 222 9350
Facsimile: +1 312 527 0484

CLARENCE DYER & COHEN LLP
   Kate Dyer (Bar No. 171891)
   kdyer@clarencedyer.com
   899 Ellis Street
   San Francisco, CA 94109-7807
Telephone: +1 415 749 1800
Facsimile: +1 415 749 1694

CRAVATH, SWAINE & MOORE LLP
   Kevin J. Orsini (*pro hac vice*)
   korsini@cravath.com
   825 Eighth Avenue
   New York, NY 10019
Telephone: +1 212 474 1000
Facsimile: +1 212 474 3700

Attorneys for Defendant PACIFIC GAS AND ELECTRIC COMPANY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                            Plaintiff,<br><br>         v.<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>                            Defendant. | Case No. 14-CR-00175-WHA<br><br>**RESPONSE TO ORDER REQUESTING INFORMATION RE ZOGG FIRE AND ORDER FOR FURTHER INFORMATION RE ZOGG FIRE**<br><br>Judge:  Hon. William Alsup |

Defendant Pacific Gas and Electric Company ("PG&E") respectfully submits this response to the Court's October 12 and October 21, 2020 orders requesting information regarding the Zogg Fire.  (Dkt. 1246; Dkt. 1248.)

PG&E recognizes the devastation caused by the Zogg Fire, which resulted in the loss of four lives and destroyed many homes.  Like the Court, PG&E is actively seeking to understand the cause of the fire and the role, if any, of PG&E's facilities.  PG&E provides the following information by the October 26 deadline set by the Court, based on information currently known to PG&E and the records PG&E has been able to collect and preliminarily analyze in the time provided.  PG&E's investigation into the cause of the Zogg Fire is continuing.  PG&E will supplement these responses to provide the further information specified below that it is in the process of collecting and reviewing.

**Question 1:**  PG&E shall please explain its role in the ignition of the Zogg Fire.

**PG&E Response:**

PG&E has not determined what role, if any, its equipment may have had in the ignition of the Zogg Fire.  CAL FIRE has not reported a determination as to the cause of the fire and, as described below, PG&E has not had access to the evidence collected by CAL FIRE in connection with its ongoing investigation, with which PG&E is cooperating.

According to CAL FIRE's website, the Zogg Fire began on September 27, 2020 at 4:03 p.m. in the area of Zogg Mine Road and Jenny Bird Lane, north of Igo in Shasta County.  The properties on Zogg Mine Road are served by a distribution circuit, the Girvan 1101 12 kV Distribution Circuit ("Girvan Circuit").  According to data currently available to PG&E, at approximately 2:40 p.m., a SmartMeter recording power usage at a property on Zogg Mine Road near the intersection of Zogg Mine Road and Jenny Bird Lane reported a drop in voltage to a level below that required for its continued operation (known as a "last gasp" event).  Also at approximately 2:40 p.m., a Line Recloser on the Girvan Circuit, LR 323094, reported a temporary reduction of voltage on the line.  LR 323094 is the line recloser physically closest to the intersection of Zogg Mine Road and Jenny Bird Lane, but does not protect the branch of the

1  Girvan Circuit (known as a "tap line") that supplies the area near that intersection.  Attached as
2  Exhibit A is a map showing the location of LR 323094, the intersection of Zogg Mine Road and
3  Jenny Bird Lane, and the other protective devices on the Girvan Circuit that are referenced in
4  this response.

5  At approximately 2:41 p.m., two other Line Reclosers (LR 1330 and LR 1636)
6  recorded current levels in excess of their Minimum To Trip ("MTT") that were not long enough
7  in duration to open the Line Reclosers and de-energize the line.  LR 1330 and LR 1636, which
8  are upstream and to the southeast of the intersection of Zogg Mine Road and Jenny Bird Lane,
9  serve as the protective devices for line segments that supply power to that area.  LR 1636 is the
10 protective device nearest the Girvan Circuit's power source, and LR 1330 is a protective device
11 further downstream.  MTT is a threshold setting on line reclosers.  Exceeding the MTT threshold
12 for a prescribed amount of time will cause a line recloser to open or "trip", resulting in
13 de-energization of the line it protects.  The prescribed amount of time will vary depending on,
14 among other factors, the level of current recorded, with the prescribed time being shorter for
15 higher current.[1]

16 LR 1636 and LR 1330 both have a feature enabled for detecting high-impedance
17 faults, known as the "Sensitive Ground Fault" ("SGF") setting.  A high-impedance fault is a
18 situation where a line-to-ground fault has occurred, but it draws less fault current because the
19 energized phase's contact to earth has high resistance.  The SGF feature uses a lower MTT
20 threshold for tripping the recloser (20 amps for LR 1330 and 25 amps for LR 1636).  The
21 recloser will not open unless that current threshold is continuously exceeded for a prescribed
22 amount of time (20 seconds for LR 1330 and 25 seconds for LR 1636).  The delay avoids the
23 operation of the protective devices in response to transient conditions, such as normal changes in
24 loads on the line.  The current levels recorded by LR 1330 and LR 1636 at approximately

---

[1] For example, based on their settings at the time of the Zogg Fire, LR 1330 and LR 1636 would have tripped in approximately 0.3 seconds and approximately 0.57 seconds, respectively, had they detected a 1,000-amp line-to-ground fault.

1  2:41 p.m. did not exceed their MTT thresholds of 20 and 25 amps, respectively, for a long
2  enough duration to cause these reclosers to open and de-energize the line.
3  　　　　Also at approximately 2:41 p.m., Circuit Breaker 1101 at the Girvan Substation
4  approximately 10 miles from the intersection of Zogg Mine Road and Jenny Bird Lane recorded
5  current exceeding its MTT, although not for a period long enough to cause it to trip and
6  de-energize the line.
7  　　　　At approximately 2:42 p.m., LR 1330 again reported current in excess of its MTT
8  threshold of 20 amps.  As with the current reported on LR 1330 and LR 1636 one minute earlier,
9  the current associated with this event did not exceed the MTT threshold for a long enough period
10 to cause LR 1330 to open and de-energize the line.
11 　　　　Also at approximately 2:42 p.m., smoke that may be associated with the Zogg
12 Fire appears to become visible in footage recorded by a firewatch camera operated by the
13 University of Nevada Reno and located approximately three miles east of the intersection of
14 Zogg Mine Road and Jenny Bird Lane.
15 　　　　At approximately 2:43 p.m., three SmartMeters recording power usage at
16 properties served by the Girvan Circuit upstream and to the southeast of the intersection of Zogg
17 Mine Road and Jenny Bird Lane reported a loss of voltage on one of the phase conductors.
18 Approximately one minute later, one of the meters reported a drop in voltage to a level below
19 that required for its continued operation.
20 　　　　Also at approximately 2:43 p.m., GOES-17, a geostationary weather satellite
21 operated by the National Oceanic and Atmospheric Administration ("NOAA"), detected a heat
22 signature in the area north of Igo and Ono that did not register at that time as a fire.
23 　　　　Between approximately 2:44 and 2:47 p.m., LR 1636 and LR 1330 each reported
24 current levels in excess of their MTT thresholds, although not for a long enough period for them
25 to open and de-energize the line.

1    At approximately 2:46 p.m., GOES-17 detected a fire in the area north of Igo and
2 Ono.  At approximately the same time, GOES-16, another geostationary weather satellite
3 operated by NOAA, also detected a fire in the area north of Igo and Ono.
4    At approximately 3:00 p.m., a PG&E troubleman responding to reports of voltage
5 loss on the Girvan Circuit's SmartMeters observed fire from his location on Knighton Road in
6 Redding and reported it to PG&E's Distribution Control Center.
7    At approximately 3:06 and 3:07 p.m., respectively, LR 1330 and LR 1636 again
8 reported that they had exceeded their MTT thresholds.  The current recorded by LR 1330
9 exceeded the MTT threshold for a long enough period to cause it to open, de-energizing the line
10 downstream of LR 1330.  LR 1636 did not open because LR 1330, which is downstream of
11 LR 1636, had already de-energized the affected portion of the circuit downstream of LR 1330.
12 Because automatic reclosing had been disabled on LR 1330 during fire season, it did not attempt
13 to automatically reclose and re-energize the line.
14    Between the start of the fire on September 27, 2020 and October 9, 2020, CAL
15 FIRE restricted public access to the entirety of Zogg Mine Road, starting about three miles south
16 of the intersection of Zogg Mine Road and Jenny Bird Lane.  On October 9, 2020, CAL FIRE
17 informed PG&E that it had taken possession of certain PG&E equipment near that area and
18 allowed access to the area.  CAL FIRE has since provided to PG&E a report (attached as
19 Exhibit B) of PG&E property collected by CAL FIRE as evidence.[2]
20    PG&E first gained access to the area near the intersection of Zogg Mine Road and
21 Jenny Bird Lane on October 10, 2020, following CAL FIRE's collection of evidence.  At that
22 time, PG&E observed that CAL FIRE had collected evidence from three spans of the Girvan
23 Circuit about a quarter mile southeast of the intersection of Jenny Bird Lane and Zogg Mine
24 Road.  Attached as Exhibit C is a map showing these three spans, as well as the pole numbers for

---

[2] The property report attached as Exhibit B states that CAL FIRE collected a SmartMeter associated with badge number 1009791938.  PG&E understands from CAL FIRE that the correct badge number for the SmartMeter collected by CAL FIRE is 1009791983.

the poles supporting them. Those three spans—between pole 103320099 and pole 101457898—are referred to herein as the "area of interest".

By the time PG&E was permitted access, the area of interest had been significantly modified as a result of CAL FIRE's investigative process. In particular, PG&E observed signs of heavy equipment and vegetation work in the area. It appeared to PG&E that CAL FIRE had collected, in addition to the PG&E equipment detailed in Exhibit B, sections of a Gray Pine tree that had been rooted north of the line and pole 101457905, in the span between pole 101457905 and pole 101457903. The Gray Pine appeared to have been cut at the base, and CAL FIRE had collected the root collar and stump of the tree, as well as one trunk section (which PG&E estimates may have been roughly eight feet long) and branches from higher up on the tree. Based on post-fire field measurements, the Gray Pine appears to have been rooted approximately 60 feet from PG&E's line. Some parts of the root system beneath the soil surface, most of the tree trunk and several branches were left behind. PG&E did not observe the area of interest before CAL FIRE's evidence collection. CAL FIRE did not request PG&E's assistance in collecting any evidence, and CAL FIRE has declined at this time to provide PG&E access to any of the evidence collected by CAL FIRE (with the exception of the three SmartMeters collected by CAL FIRE for which PG&E retrieved data stored on the devices for CAL FIRE).

PG&E is in the process of collecting and preserving, among other things, its equipment left behind by CAL FIRE in the area of interest and the remainder of the Gray Pine tree from which CAL FIRE appears to have collected sections. Although CAL FIRE has not indicated why it collected sections of this tree, PG&E is preserving the remainder in an abundance of caution pending the outcome of CAL FIRE's investigation. Because of the terrain in the area, the dimensions of the remaining sections of the Gray Pine, and the need to extract the root system of the Gray Pine, collection of this vegetation will require use of a helicopter and specialized equipment.

1 **Question 2:** PG&E shall also describe the PG&E equipment removed by CAL
2 FIRE and the location of the equipment when it was in use.
3 **PG&E Response:**
4 As noted above, CAL FIRE collected the PG&E equipment described in
5 Exhibit B. As shown in that property report, CAL FIRE collected three SmartMeters that
6 recorded electricity usage at three properties on Zogg Mine Road, each served by the Girvan
7 Circuit; conductor from pole 103320099 to a point midspan between pole 101457903 and
8 101457898; two shattered insulators; one piece of crossarm hardware; and a burned crossarm.
9 The CAL FIRE property report provided to PG&E does not specify the pole or poles from which
10 these pieces of equipment were collected. However, on gaining access to the site after CAL
11 FIRE's evidence collection, PG&E observed that pole number 101457905 was missing its
12 crossarm, insulators and crossarm hardware. The location of the equipment collected by CAL
13 FIRE while it was in use is shown in Exhibit C.

14 **Question 3:** PG&E shall additionally describe the extent of trimmed and
15 untrimmed vegetation in the area near where CAL FIRE took possession of
16 PG&E's equipment.
17 **PG&E Response:**
18 The Girvan Circuit, including the portion that runs through the area of interest, is
19 located in forested terrain, as shown in Exhibit C, and traverses an elevated (Tier 2) fire-threat
20 area on the California Public Utility Commission's ("CPUC") Fire Threat Map. Along with this
21 submission, PG&E is providing the Court with a flash drive that contains 77 photographs of the
22 area of interest taken by air during a Light Detection and Ranging ("LiDAR") survey of the
23 Girvan Circuit in July 2019. The photographs are organized by pole number. The Gray Pine
24 from which CAL FIRE collected sections was located nearest to pole 101457905. As examples
25 of the broader set being provided to the Court, PG&E is attaching as Exhibit D three photographs
26 of the area near pole 101457905. The photographs show the vegetation in the area of interest as
27 of the time they were taken in July 2019. PG&E is providing below a summary of vegetation
28

management inspections and associated tree work in the area of interest both since and prior to the photographs taken in July 2019.

## I.     Vegetation Management Since July 2019

Based on PG&E records identified to date, the area of interest was subject to one routine vegetation management patrol following the photographs taken in July 2019.[3] Specifically, the area of interest was subject to a routine vegetation management patrol from March to April 2020, which was performed for PG&E by CN Utility Consulting ("CNUC"), a vegetation management contractor that is a subsidiary of Wright Service Corp. Based on a review of its records, PG&E has not identified at this time any trees in the area of interest for which tree work had been prescribed but was incomplete at the time of the Zogg Fire.

As a result of the routine patrol from March to April 2020, work was prescribed by CNUC for a Black Oak, four Canyon Live Oaks and a Gray Pine near the three spans comprising the area of interest, and PG&E records indicate that the work was completed by a vegetation management contractor (Wright Tree Service of the West) in April 2020. In total, according to PG&E records, the routine patrol of the Girvan Circuit in 2020 resulted in more than 2,000 trees being identified for work (trimming or removal), including more than 600 trees in the area of Zogg Mine Road.

## II.    Vegetation Management Prior to July 2019

In April 2019, the area of interest was subject to a routine vegetation management patrol. As a result of the April 2019 routine patrol, work was prescribed for four Gray Pines, two Live Oaks, a Black Oak, two Ponderosa Pines and a Knobcone Pine in the area of interest, and PG&E records indicate that the work was completed from May to June 2019.

In October 2018, the area of interest was subject to a routine vegetation management patrol. As a result of the October 2018 routine patrol, work was prescribed for two

---

[3] During a routine vegetation management patrol, pre-inspectors identify and prescribe work necessary to maintain compliance with California Public Resources Code § 4293.

Gray Pines, one Knobcone Pine and one Live Oak in the area of interest, and PG&E records indicate that the work was completed in February 2019.

From July to August 2018, the Carr Fire burned over 200,000 acres in Shasta and Trinity Counties. PG&E believes the area of interest experienced fire activity as a result of the Carr Fire. Following large fires, vegetation management work is performed to address the effects of fire on vegetation. PG&E is in the process of retrieving records associated with the vegetation management work performed after the Carr Fire, but has not been able to collect or analyze these records, which are stored separately by a third party, in the time provided. PG&E will update the Court once it has collected and analyzed these records.[4]

In April 2018, the area of interest was subject to a separate Catastrophic Event Memorandum Account ("CEMA") patrol (*i.e.*, an inspection for dead, dying or diseased trees performed in addition to PG&E's routine patrol, which also inspects for dead, dying or diseased trees). As a result of the April 2018 CEMA patrol, work was prescribed for a Gray Pine in the area of interest, and PG&E records indicate the work was completed in May 2018.

Based on the records PG&E has reviewed to date, the area of interest was not subject in 2019 to a separate CEMA patrol. While records exist suggesting a CEMA patrol occurred that year, they appear to refer to the routine vegetation management patrol that occurred in April 2019. One of the targets in PG&E's Wildfire Mitigation Plan for 2019 was the completion by year end of 100% of separate CEMA patrols for circuits within the CEMA program's scope. As PG&E disclosed to the Court and in reports to the CPUC on PG&E's compliance with the 2019 Wildfire Mitigation Plan, PG&E did not meet this target in 2019. This

---

[4] On July 31, 2018, in connection with post-Carr Fire restoration work, PG&E generated a work order for a hazardous tree that had been burned at the base near pole 103320099, the northernmost pole in the area of interest. On August 12, PG&E canceled the work order based on its determination that the work would be completed under PG&E's routine vegetation management program. Based on field inspection and a diagram attached to the work order that shows the location of the hazardous tree relative to pole 103320099, PG&E believes that the tree referenced in the work order, which was adjacent to a different span than the one nearest the Gray Pine collected by CAL FIRE, was removed prior to the Zogg Fire.

1  was due to a variety of factors, including scheduling and operational issues arising from PG&E's
2  efforts to reschedule routine vegetation management patrols on a risk-prioritized basis so that the
3  routine patrols on higher-risk circuits would be performed before fire season.  The Girvan Circuit
4  was one of the circuits that, starting in 2019, had its schedule adjusted so that the routine patrol
5  and associated tree work would be done before fire season.  PG&E is investigating why the
6  relevant portion of the Girvan Circuit specifically was not subject to a separate CEMA patrol in
7  2019.  PG&E will provide an updated response to the Court once its investigation into this issue
8  is complete.  As noted above, the Girvan Circuit was subject to a routine patrol from March to
9  April this year that resulted in extensive tree work being prescribed and completed, including for
10 the area along Zogg Mine Road.  In 2020, a separate CEMA patrol of the Girvan Circuit was
11 scheduled for October 2020, but was delayed by fire activity associated with the Zogg Fire,
12 which ignited on September 27.  The patrol has since started.

As the Court is aware, PG&E has augmented its routine vegetation management work through its Enhanced Vegetation Management ("EVM") program, which from 2019 to the end of this year will subject over 4,000 line miles to enhanced trimming and tree removal.  The Girvan Circuit was not among the 4,000 miles subject to EVM in 2019 or this year.  The area of the Girvan Circuit from which CAL FIRE collected evidence is not in an extreme fire-threat (Tier 3) area according to the CPUC's Fire Threat Map.

> **Question 4:**  PG&E shall also explain whether the equipment taken by CAL FIRE was transmission line equipment, distribution line equipment, or substation equipment.

**PG&E Response:**

The PG&E equipment taken by CAL FIRE was distribution line equipment.

> **Supplemental Question 1:**  PG&E shall supply to the Court all documents, emails, text messages, reports, voicemails and any other materials, in paper or

electronic form, leading up to and concerning the decision to leave energized the line or circuit in question that possibly led to the Zogg Fire.

**PG&E Response:**

On October 21, 2020, the Court inquired about PG&E's de-energization decisions concerning the Girvan Circuit and requested a response by October 26. In providing the answers below, PG&E notes that relevant PG&E personnel who may have otherwise provided input on this submission have been intensely engaged during this five-day window in managing multiple Public Safety Power Shutoff ("PSPS") events, where PG&E shuts off power to customers during extreme weather to prevent wildfires. One de-energization event is currently in progress. During this event, which has the highest winds and driest conditions of any PSPS event thus far this season, PG&E has taken the difficult step of turning off power to approximately 361,000 customer accounts across 36 counties and 17 tribal communities. To the extent PG&E needs to amend any of the answers below based on additional information or clarification provided by personnel engaged in those efforts, it will file such amendments with the Court.

Electricity is a service that PG&E provides to customers in its service area in a continuous manner. In advance of a PSPS event, PG&E identifies specific geographic areas for potential de-energization based on models that forecast weather conditions and fire risk across its service territory, described in further detail below. PG&E relies on, among other things, the network of over 900 weather stations that PG&E has built out over its service territory in the past few years.

Circuits not identified for inclusion in the scope of a potential PSPS event remain energized and are not subject to any decision during the event to leave the circuit energized. The models that PG&E employs to determine the PSPS scope did not identify the Girvan Circuit for potential de-energization on September 27, 2020. Accordingly, there was no "decision to leave energized the line". The Girvan Circuit was energized because PG&E's PSPS models, developed well before the Zogg Fire, did not identify that circuit for potential de-energization based on the facts and weather predictions available for the September 27, 2020 PSPS event.

The scope of a PSPS event is determined by a risk model developed by PG&E's expert meteorologists, called the Large Fire Probability ("LFP") model. For distribution lines, the LFP model combines two key inputs: PG&E's Outage Producing Winds ("OPW") model and its Utility Fire Potential Index ("Utility FPI"). The OPW and Utility FPI models are used together to analyze what conditions existed during the worst fires in California history to forecast when ignitions are most likely to become more extreme. PG&E works with several agencies to develop fire risk weather modeling, including CAL FIRE, external fire agencies, the National Weather Service, the Northern and Southern California units of the Geographic Area Coordination Centers, and the U.S. Forest Service Research Lab.

The OPW model is based on an analysis of windspeeds for every unplanned outage that occurred over the last decade and forecasts the probability of unplanned outages associated with wind events occurring in PG&E's service area. The OPW model is driven by PG&E's high-resolution weather modeling output at both 2 km and 3 km resolution. Outage-producing winds vary across PG&E's system based on differences in topography, vegetation and climatological weather exposure in different parts of PG&E's service territory. The output of the OPW model is a measure of the probability of an outage in specific parts of PG&E's service territory based on forecasted weather conditions.

The second component of PG&E's LFP model for distribution is its Utility FPI model. The Utility FPI model predicts the probability of observing a large fire, defined for these purposes as a fire of 1,000 acres or more, in a given geographic location based on three decades of meteorological data (including weather, fuel moisture and climatology data) and 26 years of historical wildfire data in PG&E's service territory. The Utility FPI model combines several data points including the Fosberg Fire Weather Index (a fire weather index created to measure the potential influence of weather on a wildfire based on model output of temperature, wind and relative humidity); fuel moisture data (10-hour dead fuel moisture and live fuel moistures); and landcover type (grass, shrub/brush, or forest). The Utility FPI model is also based on PG&E's

high-resolution climatological, forecast weather and fuel moisture models and produces output at both 3 km and 2 km resolution.

These models are combined to form PG&E's LFP model, which is updated four times daily and forecasts for each of the next 84 hours the concurrence of outage-producing winds and the potential for large fires both spatially and temporally. The output of the LFP model is used to determine the meteorological footprint of PSPS events. PG&E then identifies the distribution and transmission lines and other assets within that footprint. For distribution lines, the PG&E team determines which circuits are impacted and evaluates the ability to sectionalize circuits to limit the de-energization scope and resulting customer impact.[5]

Based on these inputs, the LFP model did not identify the area encompassing the Girvan Circuit as within the meteorological footprint for de-energization and it was not, therefore, considered for de-energization as part of the September 27, 2020 PSPS event.

While no single factor determines the scope of a PSPS event, generally the windspeed threshold for de-energization is sustained winds above 25 mph and wind gusts in excess of approximately 45 mph. PG&E notes that, at the start of the Zogg Fire, the two nearest PG&E weather stations in PG&E's network recorded sustained winds of less than 15 mph and wind gusts of between 23 to 28 mph. Those two stations are located approximately 3.6 and 4.7 miles from the area of interest. PG&E also monitored weather data recorded by the U.S. Forest Service's Remote Automatic Weather Station ("RAWS") MMOC1, located approximately 4.2 miles from the area of interest and at higher elevation than that area. That weather station recorded sustained winds of 15 mph in the hour before the Zogg Fire and wind gusts of 32 mph

---

[5] In addition to these models, PG&E evaluates multiple forecasts from external weather agencies, including Red Flag Warnings from the National Weather Service, High Risk forecasts of Significant Fire Potential from the Geographic Area Coordination Center, and fire weather outlooks from the Storm Prediction Center, which is part of the National Weather Service within the NOAA. PG&E also considers information received from other weather agencies on interagency conference calls during high-risk periods; external forecasting services, including the European Center for Medium-Range Weather Forecasts and the Global Forecast System; field observer information; and data from PG&E's more than 900 weather stations.

at the start of the fire. The readings from all three stations were below PG&E's general de-energization thresholds. They also were below the general de-energization thresholds in place during the 2019 fire season.

By contrast, for those circuits that are determined by the LFP model to be within the meteorological footprint for a PSPS event, PG&E initiates a multi-step process to determine whether and for how long to proceed with de-energization of circuits in that area. PG&E is attaching as Exhibit E the report for the September 27, 2020 proactive de-energization event that PG&E submitted to the CPUC, as required by Resolution ESRB-8 and in accordance with Ordering Paragraph 1 of CPUC Decision 19-05-042. Among other things, the report explains PG&E's decision to de-energize the areas that ultimately were de-energized and the time, place and duration of the de-energizations that occurred in PG&E's service territory from September 27 to September 29, 2020.

**Supplemental Question 2:** PG&E shall identify (by name, position and house address, the latter may be under seal) the officer or other employee who made the decision to leave the line energized.

**PG&E Response:**

As explained above in response to Supplemental Question 1, there was no "decision to leave the line energized" on September 27, 2020 because the Girvan Circuit was not identified as in scope for a potential de-energization by PG&E's Large Fire Probability model.

PG&E notes that, for the circuits potentially in scope for a PSPS event, PG&E's de-energization process involves multiple formal decisions, including the initial decision to open the Emergency Operations Center ("EOC") in response to forecasted weather conditions and authorization for customer notifications, before the final event scope is approved and there is a decision to de-energize. The Officer-in-Charge ("OIC") who approved the final event scope for this event was Michael Lewis, the Interim President of Pacific Gas and Electric Company who oversees Electric Operations. The individuals who advised the OIC in connection with the approval of the final event scope are identified in Exhibit F, which PG&E is filing under seal.

**Supplemental Question 3:** PG&E shall identify (by name, position and house address, the latter may be under seal) all others with any role in the decision or recommendation to leave the power on in the line in question.

**PG&E Response:**

PG&E refers to its response to Supplemental Question 2.

**Supplemental Question 4:** PG&E shall state in detail and in chronological order the sequence of all events that possibly relate to PG&E's involvement in the ignition of the Zogg Fire. Please also supply photographs or videos of the scene in question.

**PG&E Response:**

PG&E refers to its response to Question 1 for a detailed, chronologically ordered sequence of events potentially related to the Zogg Fire based on the facts currently known to PG&E.

Contemporaneously with this submission, PG&E is submitting to the Court a flash drive containing (1) photographs of the area of interest taken during the April 2019 WSIP inspection of the Girvan Circuit; (2) photographs of the area of interest taken during the LiDAR survey of the Girvan Circuit in July 2019; and (3) hundreds of photographs of the area of interest taken after the Zogg Fire by PG&E's evidence collection vendor in connection with evidence collection operations in October 2020.[6]

---

[6] Additional photographs and videos of the area of interest may be generated after the date of this submission as PG&E's evidence collection vendor continues to document the collection of evidence. PG&E also has in its possession photographs or videos taken at the direction of counsel by PG&E's consultants, claims investigators or Electric Incident Investigations group, which constitute attorney work product.

15

RESPONSE TO ORDER REQUESTING INFORMATION RE ZOGG FIRE
AND ORDER FOR FURTHER INFORMATION RE ZOGG FIRE
Case No. 14-CR-00175-WHA

Dated: October 26, 2020

Respectfully Submitted,

JENNER & BLOCK LLP

By: /s/ Reid J. Schar
Reid J. Schar (*pro hac vice*)

CRAVATH, SWAINE & MOORE LLP

By: /s/ Kevin J. Orsini
Kevin J. Orsini (*pro hac vice*)

CLARENCE DYER & COHEN LLP

By: /s/ Kate Dyer
Kate Dyer (Bar No. 171891)

Attorneys for Defendant PACIFIC GAS AND ELECTRIC COMPANY