UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. CR 14-00175 WHA |
| v. | |
| PACIFIC GAS AND ELECTRIC COMPANY, | **ORDER REQUESTING ADDITIONAL INFORMATION FOLLOWING PG&E'S NOVEMBER 18 BRIEFING** |
| Defendant. | |

The Court has read PG&E's submission dated November 18, 2020, and acknowledges the efforts of PG&E and its counsel. By **DECEMBER 16, 2020 AT NOON**, PG&E shall please answer these additional questions:

1. State the full extent to which PG&E itself (as opposed to its contractors and/or subcontractors) maintains records with respect to individual distribution lines in Tier 2 and Tier 3 areas:

    a. Setting forth the reports of inspections identifying trees or limbs for removal and the data thereof;

      b. Setting forth the full extent to which the work identified in such inspections was accomplished and dates accomplished;

      c. Setting forth the full extent to which the work identified in such inspections has NOT been performed.

2. In its response dated November 3, 2020, PG&E stated on page two its intention to improve contractor fidelity to the EVM program and stated that mid-2019 improvements "included 100% work verification, increased contractor training, contractor competency tests, and numerous changes to improve EVM recordkeeping." State in plain terms what each of these changes are, the date of their implementation, and contractor compliance since that implementation.

3. Explain each type of consequence that PG&E considers when evaluating a region for the Black Swan criteria. Also explain the source of the information informing each consequence. (For example, if potential loss of life is a "consequence" factored in, explain how the estimated potential loss of life is calculated and from what source the underlying population figures are derived).

4. Please provide a real-life example of calculations using the equations described in footnote seven of PG&E's November 18 response. In responding, please re-state the equations, identify an *example* from the real world of values associated with each variable, and perform the calculation while "showing your work."

5. Explain the ArcGIS and Collector App systems in detail. Specifically:

      a. Explain how the ArcGIS records operate with respect to the "TC_Worked" field. When and how is the TC_Worked field generated? Do any alternative field(s) account for tree(s) or portions of line that were inspected but where inspectors did not identify any hazard trees/limbs?

      b. Explain whether these system(s) allow and/or require workers to upload evidence of tree removal or trimming along with an indication that work was completed. Explain how the ArcGIS and Collector App systems communicate, if at all, with PG&E's PMD system, including the degree to

   which the PSPS decision-makers including the meteorology team have access to tree inspection and removal/trimming data from the ArcGIS and Collector App systems.

6. Is the gray pine now in PG&E's possession, a portion of which was removed by CalFire, marked by any spray paint?

   a. PG&E shall ask CalFire and/or the Shasta County District Attorney's office to answer, *first*, whether the portions of the gray pine that CalFire removed show any spray paint and, *second*, whether the portion of tree that it removed contained burn marks that could obscure such paint.

7. The declaration dated November 18, 2020, attached to the response as Exhibit A states at paragraph 23:

   [A]t times in 2019, PG&E's vegetation management team gave guidance not to perform separate CEMA inspection and to close the CEMA project in PG&E's PMD following the commencement of the routine patrol in situations where, as a result of risk-based prioritization changes to the routine patrol schedule, the CEMA patrol (the scope of which is subsumed in a routine patrol) had been scheduled close in time to the routine patrol.

   How many CEMA inspections, required by the 2019 Wildlife Mitigation Plan, were NOT conducted as a result of these schedule changes during PG&E's pre-inspection annual calendar, November 16, 2019, to November 15, 2020?

8. Update PG&E's response to this question based on any new information, investigation, or conclusions reached since the filing of the November 18 response: "Is there specific evidence that the particular gray pine [removed by CalFire] was trimmed or removed prior to the Zogg fire? Was this tree identified for work by any patrol?"

9. In its response dated November 3, 2020, PG&E states that it utilizes a risk model to select areas to be worked for EVM. Why can't the system for determining whether a distribution line will be de-energized in a PSPS event operate on a risk model, which takes into account the extent to which the relevant distribution lines are in compliance

with Public Resource Code Sections 4292 and 4293 and PG&E's own Wildfire Mitigation Plan?

Please respond by **DECEMBER 16, 2020, AT NOON**.

**IT IS SO ORDERED.**

Dated: November 24, 2020.



WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

4