# EXHIBIT B

1   JENNER & BLOCK LLP
        Reid J. Schar (*pro hac vice*)
2       RSchar@jenner.com
        353 N. Clark Street
3       Chicago, IL 60654-3456
    Telephone: +1 312 222 9350
4   Facsimile: +1 312 527 0484

5   CLARENCE DYER & COHEN LLP
        Kate Dyer (Bar No. 171891)
6       kdyer@clarencedyer.com
        899 Ellis Street
7       San Francisco, CA 94109-7807
    Telephone: +1 415 749 1800
8   Facsimile: +1 415 749 1694

9   CRAVATH, SWAINE & MOORE LLP
10      Kevin J. Orsini (*pro hac vice*)
        korsini@cravath.com
11      825 Eighth Avenue
        New York, NY 10019
12  Telephone: +1 212 474 1000
    Facsimile: +1 212 474 3700
13

14  Attorneys for Defendant PACIFIC GAS AND ELECTRIC
15  COMPANY

16              UNITED STATES DISTRICT COURT
17            NORTHERN DISTRICT OF CALIFORNIA
                 SAN FRANCISCO DIVISION
18

19
    UNITED STATES OF AMERICA,          Case No. 14-CR-00175-WHA
20
                       Plaintiff,      **DECLARATION OF** ▮▮▮▮
21                                     ▮▮▮▮ **IN SUPPORT OF**
                                       **PG&E'S RESPONSE TO ORDER**
22         v.                          **REQUESTING ADDITIONAL**
                                       **INFORMATION FOLLOWING**
23  PACIFIC GAS AND ELECTRIC COMPANY,  **PG&E'S NOVEMBER 18**
                                       **BRIEFING**
24                     Defendant.
25                                     Judge:  Hon. William Alsup
26

27

28

___

DECLARATION OF ▮▮▮▮▮▮ IN SUPPORT OF PG&E'S RESPONSE TO ORDER REQUESTING
ADDITIONAL INFORMATION FOLLOWING PG&E'S NOVEMBER 18 BRIEFING
Case No. 14-CR-00175-WHA

I, ████████ declare as follows:

1.      I am the Director of Vegetation Management Execution at Pacific Gas and Electric Company ("PG&E").  In this role, I am responsible for overseeing the execution of all of PG&E's vegetation management programs.  I have held this position since July 2019.  While I was not the Director of Vegetation Management Execution during the post-Carr Fire restoration effort in 2018 and therefore do not have personal knowledge of the events described below, I understand the following based on my review of relevant records.

2.      Following the Carr Fire in July 2018, PG&E engaged a number of contractors to perform vegetation management work in the Carr Fire footprint, which included the section of the Girvan 1101 12 kV Distribution Circuit (the "Girvan 1101 Circuit") that runs through the Zogg Mine Road area.

3.      As used herein, the "area of interest" refers to the area from which CAL FIRE has collected evidence, specifically, the area surrounding the three spans of the Girvan 1101 Circuit between pole 103320099 and pole 101457898 about a quarter mile southeast of the intersection of Jenny Bird Lane and Zogg Mine Road.

4.      Following the Carr Fire in July 2018, PG&E engaged Mountain G Enterprises, Inc. ("Mountain G"), to conduct and manage vegetation management work in the Carr Fire footprint.

5.      As part of the post-Carr Fire restoration effort, Mountain G maintained a database of information generated during the post-Carr Fire vegetation management work.  The database maintained by Mountain G is known as "ArcGIS".

6.      During the post-Carr Fire restoration effort, vegetation management personnel, including pre-inspectors and Quality Control ("QC") inspectors, were instructed to upload information to the ArcGIS database using a smartphone and computer tablet app called "Collector".

7.     I have reviewed reports from the ArcGIS database used to store data generated during the post-Carr Fire restoration work, as well as other Mountain G records. These records indicate the following:

    a.  Pre-inspectors and QC inspectors would identify trees requiring work through the Collector app.

    b.  Pre-inspectors would input information about the tree, including any additional location information, the tree species and the removal class of the tree based on its size.

    c.  Mountain G would subsequently assign the work to a tree removal contractor, which included contractors associated with a Mountain G affiliate (Mountain F Enterprises, Inc. ("Mountain F")) or one of Mountain F's subcontractors, as well as other tree crew contractors.

    d.  Tree work was assigned to tree crew contractors directly through Collector or through paper work orders generated by Mountain G.

    e.  Tree removal contractors had access to the Collector app and could note when work was completed on a given tree.

    f.  Tree removal contractors do not appear to have been consistent in recording completed tree work in the Collector app during the post-Carr Fire project.

    g.  California Forestry and Vegetation Management, Inc. ("CFVM"), was asked to perform QC inspections of certain areas within the Carr Fire footprint.

    h.  The area of interest was one of the areas subject to such a QC inspection in August 2018.

    i.  The CFVM inspector who performed the QC inspection of the area of interest in August 2018 used the Collector app to identify for removal two Gray Pine trees that have a location consistent with the location of the

DECLARATION OF ███████████ IN SUPPORT OF PG&E'S RESPONSE TO ORDER REQUESTING ADDITIONAL INFORMATION FOLLOWING PG&E'S NOVEMBER 18 BRIEFING
Case No. 14-CR-00175-WHA

Gray Pine from which CAL FIRE appears to have collected sections after the Zogg Fire.

j.   Following the CFVM QC inspector's identification of these trees for removal, Mountain G subsequently generated a work order that included the two Gray Pines identified by the CFVM QC inspector.

k.   The "TC_WORKED" field associated with these two trees have "No" values in the ArcGIS database extract provided by Mountain G to PG&E.

l.   Four trees in the area of interest were removed following post-Carr Fire vegetation management efforts, including one Ponderosa Pine, one Valley Oak, one California Oak and one Gray Pine.

m.   Nine other trees in the area of interest were identified during post-Carr Fire pre-inspections or the August 2018 QC inspection, but have a value of "delisted" in the "TC_WORKED" field associated with database entries for them.

n.   By November 8, 2018, the day the Camp Fire started, the vast majority of trees identified for work as part of the Carr Fire response had been completed.

o.   By November 15, 2018, some trees that had been identified by pre-inspectors for removal or trimming during the post-Carr Fire restoration effort were blank or had a value of "No" in the "TC_WORKED" field on Collector.

8.   The July 2019 photographs of the area of interest that PG&E previously submitted to the Court do not appear to show any Gray Pines that had been felled in the immediate area of the Gray Pine from which CAL FIRE collected sections.

9.   I have also reviewed records maintained by PG&E and its employees. The records indicate the following:

a.  During the post-Carr Fire restoration effort, pre-inspectors were asked to spray paint trees identified for removal so that the specific trees marked for work could be located by tree work crews.

b.  During the post-Carr Fire restoration work, tree removal work in the area of interest was interrupted at least twice by a resident opposed to tree work on Zogg Mine Road.

c.  In September 2018, contractors working on the post-Carr Fire response effort asked the contractor-employed arborist who had performed or participated in the routine inspection of the Zogg Mine Road area on PG&E's behalf since 2015 to speak with the resident to secure her agreement to allow workers to resume work without being threatened.

d.  Following that conversation in late September 2018, the arborist reported that tree crews could resume tree work.

e.  A second work interruption occurred on October 8, 2018.  During that incident, workers reported that the resident of Zogg Mine Road had covered the paint used to mark a tree for work with black paint and told the contractors that no tree crew would touch the tree she blacked out. This tree was not on the resident's property.

f.  According to the report from the contractors, this resident would brandish her firearm again if they touched the tree.

g.  Inquiries were subsequently made in October 2018 about attempting to secure help from law enforcement to stand by and protect tree crews against the resident that had brandished a firearm.

h.  On October 9, 2018, a supervisor for the contractor who handled routine patrols on the Girvan 1101 Circuit stated to one of the individuals managing the post-Carr Fire response work that he would coordinate to have an arborist perform a routine vegetation management patrol of the

5

Zogg Mine Road area in order to minimize the impact to residents, and that the routine patrol arborist with experience working the Zogg Mine Road area would reach out to coordinate working with the Zogg Mine Road resident that was threatening to brandish her firearm at tree crews and interrupting work.

i.  On October 10, 2018, the arborist who had previously performed routine patrols on Zogg Mine Road began his routine inspection of Zogg Mine Road for 2018.

j.  The October 2018 routine patrol occurred between October 10 and October 26, 2018.

k.  During the routine patrol, when the arborist identified a tree that required work, he would record the tree in PG&E's Vegetation Management Database ("VMD").

l.  During the October 2018 routine patrol, the arborist marked several Gray Pines for work, but did not mark any Gray Pines for work during the routine patrol in October 2018 with locations consistent with the location of the Gray Pine from which CAL FIRE appears to have collected sections after the Zogg Fire.

m. In addition to the trees that had already been worked as part of the Carr Fire response, the arborist marked approximately 250 additional trees for work during his routine patrol in October 2018, and those trees were subsequently worked.

n.  In the area of interest, during the routine patrol that occurred after the Carr Fire in October 2018, the arborist marked four trees for removal and one tree for trimming.  This work was subsequently performed.

o.  In September 2018, members of the post-Carr Fire team began to transition from the fire restoration effort to support the Accelerated

6

Wildfire Risk Reduction ("AWRR") program (a precursor to PG&E's Enhanced Vegetation Management program) in the Paradise and Magalia areas.

p. When the Camp Fire started on November 8, 2018 additional resources that had been supporting the post-Carr Fire effort were allocated to the Paradise area to support the post-Camp Fire restoration work.

DECLARATION OF ███████████ IN SUPPORT OF PG&E'S RESPONSE TO ORDER REQUESTING
ADDITIONAL INFORMATION FOLLOWING PG&E'S NOVEMBER 18 BRIEFING
Case No. 14-CR-00175-WHA

1        I declare under the penalty of perjury that the foregoing is true and correct and

2  that I executed this declaration on December 15, 2020 in San Ramon, California

3



4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8

DECLARATION OF ███████ IN SUPPORT OF PG&E'S RESPONSE TO ORDER REQUESTING
ADDITIONAL INFORMATION FOLLOWING PG&E'S NOVEMBER 18 BRIEFING
Case No. 14-CR-00175-WHA