JENNER & BLOCK LLP
   Reid J. Schar (*pro hac vice*)
   RSchar@jenner.com
   353 N. Clark Street
   Chicago, IL 60654-3456
Telephone: +1 312 222 9350
Facsimile: +1 312 527 0484

CLARENCE DYER & COHEN LLP
   Kate Dyer (Bar No. 171891)
   kdyer@clarencedyer.com
   899 Ellis Street
   San Francisco, CA 94109-7807
Telephone: +1 415 749 1800
Facsimile: +1 415 749 1694

CRAVATH, SWAINE & MOORE LLP
   Kevin J. Orsini (*pro hac vice*)
   korsini@cravath.com
   825 Eighth Avenue
   New York, NY 10019
Telephone: +1 212 474 1000
Facsimile: +1 212 474 3700

Attorneys for Defendant PACIFIC GAS AND ELECTRIC COMPANY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>    v.<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>                    Defendant. | Case No. 14-CR-00175-WHA<br><br>**RESPONSE TO ORDER TO SHOW CAUSE RE CONDITIONS OF PROBATION**<br><br>Judge: Hon. William Alsup |

Defendant Pacific Gas and Electric Company ("PG&E") respectfully submits this response to the Court's December 29, 2020 order to show cause as to why further conditions of probation should not be added that require PG&E, in deciding which distribution circuits to de-energize during Public Safety Power Shutoff ("PSPS") events, to take into account the extent to which power lines have been cleared of hazardous trees and limbs. (Dkt. 1277.)

In this submission, PG&E proposes supplemental language to clarify and specify how it will implement the new conditions proposed by the Court. If this supplemental language is acceptable to the Court, PG&E agrees with the Proposed Conditions and will move expeditiously to implement them in advance of the 2021 fire season.[1]

PG&E first developed its PSPS program in response to the October 2017 North Bay Wildfires. (Dkt. 976 at 29.) Through large expenditures and the efforts of many PG&E employees, PG&E has evolved it into a sophisticated and demonstrably effective program that includes, among many other things, advanced models and analytics developed alongside third-party experts and informed by deep datasets, a wildfire safety operations center, one thousand weather stations and over three hundred high-definition cameras, a multitude of new switches and sectionalizers, and training for the hundreds of employees that execute PSPS events. The program remains the subject of ongoing refinements in light of developments and experience. PG&E welcomes input from the Court, the community and its regulators as part of that ongoing evolution.

The Proposed Conditions will increase the scope of PG&E's PSPS events because they add a new trigger for de-energizing lines. In other words, under the Proposed Conditions, there will be larger de-energization events than would have otherwise occurred under PG&E's current standards. Residents and businesses of Northern California will therefore be subjected to

---

[1] PG&E disagrees with a number of the statements in the Court's preamble to the Proposed Conditions. PG&E also shares the Court's goal of accounting for known, outstanding hazard trees. Because the Court's statements do not relate to the operational specificity that PG&E seeks in the Proposed Conditions and because PG&E believes the most important thing to do is work with the Court and the public to reduce wildfire risk, PG&E does not further address those statements in this filing.

1  more blackouts and the safety risks and disruptions that come with blackouts.  As a result, PG&E
2  believes it is critical to be transparent with its regulators and its customers about how these
3  de-energization events will be implemented, as well as to provide the men and women who must
4  carry out the events the operational clarity needed to adhere to the probation conditions and
5  square them with the extensive state regulations governing PSPS events.[2]  With those
6  considerations in mind, PG&E sets forth below the additional requested specificity for each of
7  the Proposed Conditions.

**1. Proposed Condition 11**

PG&E constructed its existing PSPS program based on the recognition that all trees near PG&E's power lines—including perfectly healthy and compliant trees—can pose a safety risk under certain conditions.  PG&E's existing PSPS program requires the de-energization of distribution lines regardless of the absence (or presence) of hazard trees when the fire and wind conditions exceed certain parameters.  As PG&E has described extensively in its prior submissions, the current PSPS models and the relevant de-energization thresholds produce PSPS footprints based on detailed analyses of climate conditions including a focus on off-shore wind profiles, historical fire patterns and consequences, even in the absence of hazard

---

[2] To accord with the Due Process Clause of the Fourteenth Amendment, a probation condition must not be "so vague that it 'fail[s] to give a person of ordinary intelligence fair notice that it would apply to the conduct contemplated'".  *United States v. Ochoa*, 932 F.3d 866, 869 (9th Cir. 2019) (alteration in original) (citation omitted).  We believe that without PG&E's additions to the Proposed Conditions, the conditions fail that standard.

PG&E further believes that the Proposed Conditions are objectionable for several other reasons set forth in past filings, including that there is no reasonable relation between PG&E's original offenses and the Proposed Conditions relating to its electric distribution businesses, *see United States v. Lorenzini*, 71 F.3d 1489, 1493 (9th Cir. 1995); the Probation Conditions interfere with California's authority to regulate PSPS events, *see United States v. Lakatos*, 241 F.3d 690, 695 (9th Cir. 2001); and the Proposed Conditions are not reasonably necessary to accomplish the purposes of the sentencing, *see Lorenzini*, 71 F.3d at 1492.  (*See also, e.g.*, Dkt. 1195 at 3-6; Dkt. 1187 at 12-17; Dkt. 976 at 13-50.)  PG&E would accept the Proposed Conditions as supplemented herein, but reserves all rights relating to such arguments to the extent the Proposed Conditions are not supplemented.

1  trees.  Those models, subject to otherwise-ongoing maturation efforts and refinements, will
2  remain in place even after the Proposed Conditions are implemented.
3       In expanding the scope of PSPS for the 2021 fire season to account for hazard
4  trees *outside* the footprint determined by the existing PSPS models, PG&E will need to identify
5  those categories of trees or limbs that are subject to pending work that will be taken into account.
6  PG&E's additional proposed language for Proposed Condition 11 is intended to prescribe with
7  specificity the categories of trees and limbs that fit this definition so that the Court, the public
8  and PG&E personnel have a clear and common understanding that the additional PSPS blackouts
9  likely to result from the Proposed Conditions will be based on the presence of trees or limbs that
10 present an elevated safety risk substantially above that posed by healthy trees.  PG&E therefore
11 proposes the following additional language (in bold) for Proposed Condition 11:

> Proposed Condition 11:  In determining which distribution lines in Tier 2 or Tier 3 to de-energize during a PSPS, PG&E must take into account all information in its possession and in the possession of its contractors and subcontractors concerning the extent to which trees and/or limbs bordering those lines remain in violation of Public Resources Code Section 4293, GO 95, FERC FAC-003-4, and/or its own wildfire mitigation plan.  **In determining which distribution lines to de-energize during a PSPS event, PG&E will implement this condition by July 1, 2021 by considering the existence of all outstanding vegetation management work tagged "Priority 1" or "Priority 2" within PG&E's service territory that is subject to potential de-energizations.**

20       By way of background, as part of its various vegetation management programs,
21 PG&E identifies vegetation for work for a variety of reasons, and in many instances these
22 identifications do not reflect a violation of applicable regulations or a current safety hazard.  For
23 example, PG&E tags numerous trees for subsequent work that do not encroach upon the
24 regulatory clearance zones at the time of an inspection but that could do so prior to the next
25 vegetation management inspection.  As another example, as part of its Enhanced Vegetation
26 Management ("EVM") program, PG&E identifies for mitigation trees that are outside the
27 clearance zones and healthy, but that PG&E intends to mitigate because they overhang the line

(*outside* the state-mandated clearance zone) or because of their overall attributes, including species, height, lean and so on.

Because of the diverse nature of the work that is being identified through the inspection process, PG&E uses two tags—Priority 1 and Priority 2—for priority work where trained vegetation inspectors identify trees or limbs that currently present elevated risk and must be worked on an expedited basis.  Inspectors use Priority 1 tags for vegetation (i) in contact or showing signs of previous contact with a primary conductor; (ii) actively failing or at immediate risk of failing and which could strike PG&E's facilities; or (iii) presenting an immediate risk to PG&E's facilities.  Inspectors use Priority 2 tags for vegetation that does not rise to the level of Priority 1 vegetation, but has encroached within the PG&E minimum clearance requirements or has an identifiable potential safety issue requiring expedited work.  For example, during PG&E's patrols, inspectors flag for removal trees that show signs of mortality.  A declining tree can last for years before it passes and can remain sturdy for years.  In high fire threat areas (*i.e.*, HFTD Tier 2 and Tier 3 areas), distribution lines are inspected approximately every six months for dying trees.  Under a policy PG&E is in the process of implementing for the 2021 fire season, trees identified as dying will be removed within six months, absent access issues.  But if an inspector identifies signs that the tree has the potential to strike PG&E's facilities and demonstrates a substantially increased risk of failing within six months, then the inspector would tag such a tree for removal on at least a Priority 2 basis.

PG&E's policy calls for all Priority 1 trees to be worked within 24 hours. PG&E's policy calls for Priority 2 trees to be addressed within 30 days, absent access issues. Any trees that have not been identified by the inspector as presenting an enhanced safety risk (*i.e.*, any trees or limbs that are marked for work but not designated as Priority 1 or Priority 2) will be worked based on PG&E's policies for non-priority vegetation management.  For example, as noted above, PG&E's policies will call for non-priority trees in high fire threat areas with strike potential that are flagged for removal because they show signs of mortality to be addressed within six months, absent access issues.

1    At any given time, PG&E's system will typically not have a significant number of outstanding Priority 1 trees.  PG&E will typically have several thousand outstanding Priority 2 trees in high fire threat areas as a result of the number of such trees and the 30-day time limit to work those trees after they are identified.  Each of these Priority 1 and Priority 2 trees will be within the scope of the Proposed Condition 11, as well as Proposed Condition 12, discussed in more detail below.  While PG&E's current infrastructure does not provide a means by which outstanding Priority 1 and Priority 2 trees are readily incorporated into the PSPS-scoping process, PG&E will build the systems and tools needed to streamline the availability of Priority 1 and Priority 2 tree data to the team that is scoping PSPS events in a manner that can be integrated with the meteorological and other tools used to scope PSPS events.

**2.  Proposed Condition 12**

Decisions about PSPS scope need to be made in a time-compressed manner, based on quickly changing and dynamic information, applied over a very large service territory, sometimes by different shifts of personnel.  The Proposed Conditions cannot be reasonably implemented without a framework to analyze and define what is a "safety hazard in the event of a windstorm" and what is a "safety issue" that warrants de-energization.  Accordingly, PG&E proposes the following additional text (in bold) for Proposed Condition 12:

> Proposed Condition 12:  To the extent that such information shows that such trees and limbs present a safety hazard in the event of a windstorm, PG&E must make a specific determination with respect to that distribution line and it must de-energize it unless PG&E finds in writing that there are specific reasons to believe that no safety issue exists.  **PG&E will implement this condition by July 1, 2021 by developing a methodology to de-energize line segments in areas subject to potential de-energizations that have outstanding Priority 1 or Priority 2 vegetation management work when forecast conditions are above specified fire-risk thresholds, absent a documented determination that de-energization is not warranted.**

This proposed language specifies that PG&E will, in addition to the areas identified for de-energization under other scoping criteria for a PSPS event, develop a

RESPONSE TO ORDER TO SHOW CAUSE RE CONDITIONS OF PROBATION
Case No. 14-CR-00175-WHA

1  methodology to identify areas not otherwise slated for de-energization that have outstanding

2  Priority 1 or Priority 2 tags and de-energize those areas if the forecast conditions in those areas

3  are above specified fire-risk thresholds.  Because these thresholds will serve as an additional

4  trigger for de-energizations of residences and businesses, the precise mechanics of calculating

5  and setting those thresholds will be based on expert analyses over the coming months.  Given the

6  potential public safety risks posed by larger de-energizations, these analyses will need to

7  consider how many customers may lose power in potential events and how long they may remain

8  without power.  PG&E will share those finalized thresholds and the methods for implementing

9  them with the Court and the Monitor in the next three months.

10                                                *          *          *

11           To reiterate, PG&E shares the Court's goal of taking account of known,

12  outstanding hazard trees.  PG&E has no objection to the Court adopting the Proposed Conditions

13  as supplemented above to clarify how those conditions are to be implemented.

14           PG&E looks forward to answering any questions the Court may have at the

15  upcoming hearing.

| | |
|---|---|
| Dated: January 20, 2021 | Respectfully Submitted, |
| | JENNER & BLOCK LLP |
| | By:   /s/ Reid J. Schar |
| |       Reid J. Schar (*pro hac vice*) |
| | CRAVATH, SWAINE & MOORE LLP |
| | By:   /s/ Kevin J. Orsini |
| |       Kevin J. Orsini (*pro hac vice*) |
| | CLARENCE DYER & COHEN LLP |
| | By:   /s/ Kate Dyer |
| |       Kate Dyer (Bar No. 171891) |
| | Attorneys for Defendant PACIFIC GAS AND ELECTRIC COMPANY |