1

JENNER & BLOCK LLP
    Reid J. Schar (*pro hac vice*)
    RSchar@jenner.com
    353 N. Clark Street
    Chicago, IL 60654-3456
Telephone: +1 312 222 9350
Facsimile: +1 312 527 0484

CLARENCE DYER & COHEN LLP
    Kate Dyer (Bar No. 171891)
    kdyer@clarencedyer.com
    899 Ellis Street
    San Francisco, CA 94109-7807
Telephone: +1 415 749 1800
Facsimile: +1 415 749 1694

CRAVATH, SWAINE & MOORE LLP
    Kevin J. Orsini (*pro hac vice*)
    korsini@cravath.com
    825 Eighth Avenue
    New York, NY 10019
Telephone: +1 212 474 1000
Facsimile: +1 212 474 3700

Attorneys for Defendant PACIFIC GAS AND ELECTRIC
COMPANY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                   Plaintiff,<br><br>      v.<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>                  Defendant. | Case No. 14-CR-00175-WHA<br><br>**PG&E'S RESPONSE TO BRIEFS IN RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE RE CONDITIONS OF PROBATION**<br><br>Judge: Hon. William Alsup |

PG&E respectfully submits this response to the Government's January 25, 2021 submission regarding the Court's order to show cause proposing new conditions of probation (Dkt. 1282) and to Alex Cannara and Gene A. Nelson's January 27, 2021 amicus curiae brief (Dkt. 1283).

The Court's order to show cause came after the Court requested and received extensive submissions from PG&E about the nature of PG&E's processes for determining which distribution circuits to de-energize during Public Safety Power Shutoff ("PSPS") events.  (*See* Dkts. 1250; 1265; 1271.)  The issue posed by the Court's December 29, 2020 order to show cause was whether further conditions of probation should be imposed requiring PG&E, in deciding which distribution circuits to de-energize during PSPS events, to take into account known hazard trees and limbs.  (Dkt. 1277.)

As set forth in PG&E's January 20, 2021 submission, PG&E agreed to take into account known hazard trees and limbs in making de-energization decisions during PSPS events, and proposed specific supplemental language to ensure that it would be clear how a PSPS event would be implemented with the use of the new, additional criteria.  (Dkt. 1279.)  In the Government's January 25, 2021 filing, the Government proposed, for clarity's sake, language modifying PG&E's supplemented Proposed Conditions (Dkt. 1282)—language with which PG&E agrees.  Thus, the Court and the Parties are in agreement on the issue that has been the focus of the filings before the Court for the past several months:  PG&E taking known hazard trees and limbs into account when making de-energization decisions during PSPS events.

After the Court's order to show cause concerning whether it should order additional conditions of probation on that issue, and after the Parties reached agreement on supplementing and clarifying the Proposed Conditions, amici filed a brief on January 27, 2021. (Dkt. 1283.)  The brief does not seek to provide the Court with additional information or analysis that may help the Court decide whether to adopt the Proposed Conditions, but rather the bulk of the submission tries to graft onto the Court's order to show cause four *new* proposed conditions that bear no meaningful relation to the Proposed Conditions or the Parties' briefing.  Amici's

submission comes without having built a record with respect to any of their proposals and without giving any acknowledgement to the disruption that the proposals, if adopted, would cause to existing safety efforts PG&E is carrying out in coordination with the Federal Monitor, the Wildfire Safety Division, the CPUC and the California Governor's Office Operational Observer.

Amici's proposals should be rejected.

**1. PG&E Agrees with the Government's Reformulation of PG&E's and the Court's Proposed Conditions**

In the Government's January 25 filing, it explained that it had no objection to the supplemental language proposed by PG&E for the Proposed Conditions, stating that "PG&E's filings make clear that the models used to determine whether to engage PSPS are complex, and the competing considerations are weighty given the safety risks and other ill effects of shutting off the power". (Dkt. 1282 at 2.) The Government also stated that "PG&E's proposal to use experts to develop thresholds over the coming months and share them with the Court and the Monitor is reasonable". (*Id.*)

For Proposed Condition 11, the Government suggested an alternative formulation so that the condition would "be more clearly worded" than PG&E's formulation. (*Id.*) PG&E accepts the Government's clarifying proposal and has no objection to the Court adopting the Proposed Conditions as supplemented by PG&E in its January 20 filing and clarified by the Government.[1]

Accordingly, the Parties to this proceeding agree on proposed probation conditions as set forth in Appendix A hereto, and they may be entered by the Court on an agreed basis.

---

[1] As previously noted, PG&E reserves all of its rights relating to such arguments to the extent the Proposed Conditions are not adopted as supplemented. (*See* Dkt. 1279 at 3 n.2.)

PG&E'S RESPONSE TO BRIEFS RE ORDER TO SHOW CAUSE RE CONDITIONS OF PROBATION
Case No. 14-CR-00175-WHA

## 2. __Amici's Proposals Lack Merit__

Amici argue that the supplemented and clarified Proposed Conditions acceptable to both PG&E and the Government should be cast aside, and that the Court should retain its original formulations, subject to vague and unclear modifications proposed by amici themselves.[2]  Amici's arguments lack merit.

*First*, amici argue that the Court should not supplement Proposed Condition 11 to specify that the expansion of PSPS events beyond their existing footprints will be based on vegetation that is found to require remediation on a Priority 1 or Priority 2 basis.  But the focus on Priority 1 and Priority 2 vegetation is fundamental to PG&E's agreement to the Proposed Conditions to ensure that the conditions are tailored to effectively mitigate wildfire risk in light of the safety risks and disruptions that come with wider-scale blackouts.  As explained in PG&E's response to the order to show cause, PG&E's existing PSPS protocols—which resulted in seven separate de-energization events in the fourth quarter of 2020—aim to de-energize areas that pose sufficient risk of a catastrophic fire even when vegetation is healthy and compliant with all applicable regulations.  The issue here is whether those blackouts should be *expanded* to account for areas that pose less weather risk on the basis of hazard trees.  It is critical that the public, PG&E's expert regulators, and the men and women implementing PSPS events have a shared and common understanding of the triggers for these larger and longer blackouts and that those triggers be based on the presence of trees or limbs that present an elevated safety risk substantially above that posed by healthy trees.  (*See* Dkt. 1279.)

---

[2] Amici contend that the Court should expand the Proposed Conditions beyond the language the Court originally proposed by adding the following bolded language for vegetation that PG&E must take into account when conducting PSPS events:  "trees and/or limbs bordering those lines remain in violation of Public Resources Code Section 4293, GO 95, **the California Public Utilities Code, the CPUC's Orders, Decisions, or rules,** FERC FAC-003-4, and/or its own wildfire mitigation plan **as approved by the CPUC**".  (Dkt. 1283 at 2.)  Amici do not explain why these additional provisions should be added to the Proposed Conditions or what additional trees or limbs it would apply to.  Indeed, there is no clear articulation as to why these additions are necessary or appropriate, or how they would further public safety, leaving PG&E unable to further respond.

1    Nothing in amici's brief suggests that PG&E is drawing the line in the wrong

2   place.  Amici present no analysis or evidence that trees identified for work on a non-priority

3   basis present a substantially elevated safety risk in a windstorm compared to other trees, nor do

4   amici consider that greatly expanding and prolonging PSPS events on the basis of such trees

5   would inflict serious safety risks, economic costs and other hardships on the residents and

6   businesses of Northern California.  While amici contend that it is unclear when each of Priority 1

7   and Priority 2 designations is called for, PG&E provided the definitions of Priority 1 and

8   Priority 2 tags in its January 20 filing.  (Dkt. 1279 at 5.)

9    *Second*, amici contend that PG&E proposes to exclude from the PSPS decision-

10   making set forth in the Proposed Conditions any outstanding vegetation management work for

11   which there is an "access issue".  (Dkt. 1283 at 26-28.)  That is not PG&E's proposal.  Rather,

12   access issues were noted in PG&E's January 20 filing only in the context of explaining the time

13   table set by PG&E's policies for completing vegetation management work and, in that context,

14   PG&E noted that access issues—such as a customer refusal or governmental permissions—are a

15   reason that the general time tables may not apply to a given tree.  (Dkt. 1279 at 5.)  To be clear,

16   PG&E's supplemented Proposed Conditions would not exclude Priority 1 and Priority 2 trees

17   from being taken into account for PSPS events based on whether access issues had delayed

18   PG&E from completing the work.

19    *Third*, amici object to the July 1, 2021 effective date contained in PG&E's

20   Proposed Conditions.  (Dkt. 1283 at 24.)  Amici appear to assert that, because PG&E is required

21   to "maintain records and an auditable maintenance program", PG&E must be able to implement

22   the conditions "immediately".  (*Id.*)  But simply having records of outstanding Priority 1 and

23   Priority 2 trees—which PG&E does—does not allow PG&E to readily incorporate the Proposed

24   Conditions into the PSPS-scoping process in the limited timeframes available for PSPS decision-

25   making.  (*See* Dkt. 1265 at 15-16.)  Rather, PG&E must build, test and optimize the tools and

26   procedures needed to make Priority 1 and Priority 2 tree data available in a manner that can be

27

28

PG&E'S RESPONSE TO BRIEFS RE ORDER TO SHOW CAUSE RE CONDITIONS OF PROBATION
Case No. 14-CR-00175-WHA

1   integrated with the meteorological and other tools used to scope PSPS events on a near real-time

2   basis.

3   Moreover, as explained in PG&E's January 20 filing, PG&E will need to perform

4   expert analyses to establish a data informed fire-risk threshold for triggering potential

5   de-energizations based on the presence of Priority 1 or Priority 2 trees.  (Dkt. 1279 at 7.)  PG&E

6   has proposed sharing those thresholds with the Monitor and the Court within three months.  The

7   proposed date of July 1, 2021 makes clear that the necessary work should be completed and in

8   place before this year's peak fire season.

9   *Fourth*, seeking to supplant the role of the Court, the Monitor and the

10   Government, amici's brief goes well beyond the Proposed Conditions raised by the Court and

11   discussed by the Parties to propose amici's own probation conditions.  These proposals would

12   disrupt and interfere with PG&E's existing safety initiatives on the covered issues, which are

13   done in coordination with engaged and informed third parties, including the Monitor, the CPUC,

14   the Wildfire Safety Division, and the California Governor's Office Operational Observer.  The

15   record is bereft of evidence supporting the new third-party proposed probations conditions.  If

16   either the Court or the Government had proposed the new conditions, such evidence would be

17   required to even begin to entertain the conditions because, as the law makes clear, PG&E has the

18   right to demonstrate that the conditions are unnecessary and counterproductive.  (*See, e.g.*,

19   Dkt. 1187-1 at 3-4.)  But neither the Court nor the Government have proposed these conditions.

20   And, if either were to do so, then there should be full and informed consideration thereafter.

21   However, PG&E submits that, rather than litigate amici's proposals, its time and attention is

22   better directed at working with the Federal Monitor, the Wildfire Safety Division, the CPUC and

23   the Operational Observer to continue to improve PG&E's wildfire risk mitigation.

24   *       *       *

25   The Proposed Conditions should be supplemented and clarified as agreed to by

26   PG&E and the Government, and the Court should reject the proposals made by amici.

27

28

1   Dated:  February 1, 2021                              Respectfully Submitted,

2                                                         JENNER & BLOCK LLP

3

4                                                         By:   /s/ Reid J. Schar
                                                                Reid J. Schar (*pro hac vice*)
5
                                                          CRAVATH, SWAINE & MOORE LLP
6

7                                                         By:   /s/ Kevin J. Orsini
8                                                               Kevin J. Orsini (*pro hac vice*)

9                                                         CLARENCE DYER & COHEN LLP

10

11                                                        By:   /s/ Kate Dyer
                                                                Kate Dyer (Bar No. 171891)
12

13                                                        Attorneys for Defendant PACIFIC
14                                                        GAS AND ELECTRIC COMPANY

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>Appendix A</u>**

<u>Proposed Condition 11</u>:  In determining which distribution lines in Tier 2 or Tier 3 to de-energize during a PSPS event, PG&E must take into account all information in its possession and in the possession of its contractors and subcontractors concerning all outstanding vegetation management work tagged "Priority 1" or "Priority 2" within PG&E's service territory that is subject to potential de-energizations.  PG&E will implement this condition by July 1, 2021.

<u>Proposed Condition 12</u>:  To the extent that such information shows that such trees and limbs present a safety hazard in the event of a windstorm, PG&E must make a specific determination with respect to that distribution line and it must de-energize it unless PG&E finds in writing that there are specific reasons to believe that no safety issue exists.  PG&E will implement this condition by July 1, 2021 by developing a methodology to de-energize line segments in areas subject to potential de-energizations that have outstanding Priority 1 or Priority 2 vegetation management work when forecast conditions are above specified fire-risk thresholds, absent a documented determination that de-energization is not warranted.