Michael J. Aguirre, Esq., SBN 060402
maguirre@amslawyers.com
Maria C. Severson, Esq., SBN 173967
mseverson@amslawyers.com
**AGUIRRE & SEVERSON, LLP**
501 West Broadway, Suite 1050
San Diego, CA 92101
Telephone: (619) 876-5364
Facsimile: (619) 876-5368

Catherine Janet Kissee-Sandoval
Csandoval@scu.edu
Santa Clara University School of Law
500 El Camino Real
Santa Clara, CA 95053-0421
Telephone: (408) 551-1902
Facsimile: (408) 554-4426

Attorneys for *Amici* Alex Cannara
and Gene A. Nelson

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 14-0175 WHA |
| Plaintiff, | **MOTION FOR LEAVE TO FILE *AMICI* BRIEF IN RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE RE CONDITIONS OF PROBATION [DOCUMENT NO. 1277]** |
| v. | |
| PACIFIC GAS AND ELECTRIC COMPANY, | |
| Defendant. | Judge: Hon. William Alsup |
| | Hearing Date: February 3, 2021 |
| | Time: 8:00 a.m. |
| | Location: by Zoom (if not in person) |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

*Amici* Alex Cannara and Gene A. Nelson, previous Court-approved *amici* in the matter, respectfully move this Court for leave to file an *amici curiae* brief in response to the Court's order to show cause (OSC) dated December 29, 2020. (Document No. 1277)

1

# INTRODUCTION

*Amici* Alex Cannara and Gene A. Nelson, two PG&E utility customers living in PG&E's service territory, respectfully move this Court for leave to file an *amici curiae* brief in response to the Court's order to show cause (OSC, Document No. 1277) which proposes further conditions of probation to require the convicted utility, in deciding which power lines to de-energize during windstorms, to take into account the extent to which power lines have or have not been cleared of hazardous trees and limbs as required by California law and the Offender's own Wildfire Mitigation Plan (WMP).

The Court's OSC issued on December 29, 2020, follows PG&E's August 2016 conviction on five felony counts of knowingly and willfully violating Natural Gas Pipeline Safety Act safety standards and one felony count of obstructing the NTSB's investigation arising out of the San Bruno explosion. In addition to the fine and probation ordered in PG&E's sentencing, one of the probation conditions prohibited the Offender from committing another federal, state, or local crime. Among other requirements, the felony judgment provided for an independent monitor to oversee safety aspects of PG&E's operations (Dkt. Nos. 884, 922).

As the Court's OSC points out, "[s]ince the commencement of the Offender's probation alone, PG&E has ignited 20 or more wildfires in California, killing at least 111 individuals, destroying at least 22,627 structures, and burning half a million acres." (OSC p. 2). Following the wildfire PG&E ignited during its federal criminal probation, this Court modified PG&E's conditions of probation to protect public safety and reduce the risk that PG&E will reoffend. Those conditions included vegetation management requirements and an order for PG&E to make a reasonable search for records. (OSC p. 9-10, Dkt. No. 1243).

*Amici* respectfully request the opportunity to file a brief in response to the OSC to inform the Court about the importance of ordering PG&E to improve its information management and data operations as part of the OSC. *Amici* would like to

2

respectfully suggest a modification to the OSC to ensure that complete and accurate information informs decisions about power shutoffs, and that PG&E promptly and properly initiates and completes work to protect public safety.

## LEGAL AUTHORITY

Federal district courts possess the inherent authority to accept amicus briefs. *See In re Bayshore Ford Truck Sales, Inc.*, 471 F.3d 1233, 1249 n.34 (11th Cir. 2006) ("[D]istrict courts possess the inherent authority to appoint 'friends of the court' to assist in their proceedings."); *Jin v. Ministry of State Sec.*, 557 F. Supp. 2d 131, 136 (D.D.C. 2008).

The role of an amicus is to assist the court "'in cases of general public interest by making suggestions to the court, by providing supplementary assistance to existing counsel, and by insuring a complete and plenary presentation of difficult issues so that the court may reach a proper decision.'" *Newark Branch, N.A.A.C.P. v Town of Harrison, N.J.*, 940 F. 2d 792, 808 (3d Cir. 1991). Courts permit briefing from an amicus when (1) a party is not represented competently; (2) the amicus has an interest that may be affected by the decision but does not entitle the amicus to intervene; or (3) the amicus has unique information or a new perspective that can help the court beyond what the parties can provide. *Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1064 (7th Cir. 1997).

Here, *amici* Alex Cannara and Gene Nelson wish to assist the Court as PG&E's conditions of probation bear directly on their safety and the safety of the general public that live within PG&E's territory. *Amici* herein are making suggestions to this Court to insure a complete and plenary presentation of the issues so that the Court may reach a proper decision.

Here, it is especially appropriate when the deficiencies in PG&E's recordkeeping, data management, and data operations undermine the effectiveness of the proposed OSC. Even if PG&E were not to oppose the order, PG&E's data management failures are a thread that run through its criminal activity that led to the

3

4

San Bruno explosion in 2010 and to many of the fires its natural gas and electric lines ignited. PG&E's *information management and record-keeping failures* are fundamentally *management failures* that predicate fires, explosions, and other hazards. Including provisions in the OSC to improve PG&E's information management practices will provide the data necessary to prevent PG&E from putting the public in danger through its reckless management.

Many of the comments of the California Public Utilities Commission (CPUC) before this Court have largely focused on asking the Court not to interfere with CPUC jurisdiction. While *amici* respect the CPUC's jurisdiction, they would like to bring to this Court's attention facts and arguments that highlight PG&E's failure to ensure that PG&E, its employees, contractors, and subcontractors, develop and maintain accurate records. While the CPUC has sanctioned PG&E for violations of its rules, it has not systematically addressed the linkage between PG&E's poor record-keeping and data operations failures, and PG&E's criminal violations including the San Bruno explosion and fires PG&E's management and facilities started. Neither has the U.S. Department of Justice addressed this linkage in its comments before this Court.

PG&E's practices such as its lack of recordkeeping and data integrity resulted in its employees, contractors, and subcontractors failing to maintain records, skipping data input into information fields, poor design of record management systems, and allowing the "scheduling" of inspections in the past. (*See e.g.* OSC, p. 2, 12). Data management techniques commonly practiced for widely available Apps do not allow users to skip input of critical information (such as a zip code or location), or to book appointments in the past (such as a plane flight or hotel reservation).

Despite PG&E's decades of operational experience, substantial personnel, capitalization, and assets, and despite the orders of this Court and the CPUC, PG&E has not managed its data integrity process and personnel to prevent common data errors that fuel its reckless and criminal conduct.

///

1  Neither has PG&E linked information to action, including information about
2  PG&E's own work. As a result, PG&E missed work it earlier identified as important,
3  such as failing to remove trees marked as a danger to powerlines -- an omission that
4  appears to have contributed to the 2020 deadly Zogg Fire.
5  PG&E's practice of using spray paint to mark trees to be trimmed compounds
6  the danger of relying on incomplete or inaccurate data entry and information
7  management methods. *Amici* respectfully recommend this Court's proposed
8  modification of probation, as detailed in the OSC, be modified to include orders to
9  improve the information created, maintained, and used at PG&E to inform decision-
10 making about work deployment, vegetation management, electric and gas operation,
11 safety and reliability conditions and issues, and power shutoffs.
12     *Amici* respectfully request the opportunity to provide briefing and oral
13 argument on the OSC because the citizens within PG&E's territory most affected by
14 its past and future actions are not otherwise represented in this proceeding. *Amici* have
15 an interest that will be affected by the decision; whether PG&E operates safely or
16 shuts off power has a direct bearing on their safety. Finally, *amici* have unique
17 perspective on the linkage between PG&E's information management failures and its
18 criminal conduct.
19     This Court has the power to expeditiously improve public safety by modifying
20 PG&E's criminal probation conditions to address the gap in PG&E's information
21 management and operation. *Amici* would respectfully like to assist this Court by
22 providing comments through a brief to be submitted on January 25, 2021, and
23 speaking briefly at the oral argument on the OSC on February 3, 2021.
24 ///
25 ///
26 ///
27 ///
28

5

In closing, *amici* ask to be heard so that the Court can consider facts and a perspective otherwise absent from the record before this Court.

Respectfully submitted,

AGUIRRE & SEVERSON, LLP

Dated: January 15, 2021

*/s/Maria C. Severson*
Maria C. Severson, Esq.,
Attorneys for *Amici* Petitioners
Alex Cannara and Gene A.Nelson