1    DAVID L. ANDERSON (CABN 149604)
     United States Attorney
2
     HALLIE HOFFMAN (CABN 210020)
3    Chief, Criminal Division

4    JEFFREY B. SCHENK (CABN 234355)
     PHILIP KOPCZYNSKI (NYBN 4627741)
5    NOAH STERN (CABN 297476)
     Assistant United States Attorneys
6
           450 Golden Gate Avenue, Box 36055
7          San Francisco, California 94102-3495
           Telephone: (415) 436-7200
8          FAX: (415) 436-7234
           Jeffrey.b.schenk@usdoj.gov
9          Philip.kopczynski@usdoj.gov
           Noah.stern@usdoj.gov
10
     Attorneys for United States of America
11
                          UNITED STATES DISTRICT COURT
12
                       NORTHERN DISTRICT OF CALIFORNIA
13
                            SAN FRANCISCO DIVISION
14

15   UNITED STATES OF AMERICA,          )   No. CR-14-00175-WHA
                                        )
16         Plaintiff,                   )   UNITED STATES' PROPOSED QUESTIONS
                                        )
17      v.                              )
                                        )
18   PACIFIC GAS AND ELECTRIC COMPANY,  )
                                        )
19         Defendant.                   )
     _____)
20

21         The United States, through Assistant United States Attorneys Jeffrey Schenk, Philip Kopczynski,

22   and Noah Stern, hereby submits the below draft questions for consideration by the Court to propound to

23   PG&E, in response to the Court's order dated February 15, 2021.  *See* Dkt. 1302.  The United States

24   focuses its questions on PG&E's current inspection practices, its analysis (if any) of whether healthy

25   trees with the potential to strike power lines should be documented and/or worked in some

26   circumstances, and whether it has addressed these issues with its regulators.  In proposing these

27   questions, the United States does *not* assume that the gray pine suspected to start the Zogg Fire was

28

1  healthy, but acknowledges that a final answer to that question may not be available until Cal-Fire

2  completes its investigation.  Further, the questions are not intended to express a viewpoint on the

3  appropriate course of action; rather, the United States seeks to supplement the record on the issues

4  currently before the Court regarding PG&E's probation terms.  The United States' proposed questions

5  are as follows:

6      1.  According to PG&E's 2021 wildfire mitigation plan, PG&E began using its tree

7          assessment tool ("TAT") in March 2020 as part of its Enhanced Vegetation Management

8          patrols to assess all trees that have the potential to strike its power lines.  Are all trees

9          assessed with the TAT documented regardless of the outcome (*i.e.*, is a record of the

10         result of the TAT created even if no work was needed)?  Does PG&E currently use (or

11         plan in the near future to use) its TAT during routine vegetation management patrols or

12         CEMA patrols?  If the gray pine that is suspected to have caused the Zogg Fire still stood,

13         would it have been assessed with the TAT in 2021?  If not, can PG&E estimate when it

14         would have been assessed with the TAT?

15     2.  For the 2021 fire season, has PG&E made any changes to the processes it uses to identify

16         dead, diseased, or dying trees with the potential to strike power lines during *routine*

17         vegetation management patrols?  For the 2021 fire season, has PG&E made any changes

18         to the substantive standards it uses to determine whether a tree should be worked or

19         removed because it is a dead, diseased, or dying tree with the potential to strike a power

20         line?  If so, identify the changes.

21     3.  Had the gray pine suspected to have caused the Zogg Fire been found to be dead,

22         diseased, or dying during the routine vegetation management patrol in 2020 but was not

23         yet worked by the time of the wind event during which the Zogg Fire sparked, would it

24         have been considered under the PSPS process proposed in Condition 11 had Condition 11

25         been implemented by the time of the wind event?  In other words, if the gray pine was

26         found to be dead, diseased, or dying, would it have been classified as a Priority 1 or

27         Priority 2 tree, or is it possible the inspector could have classified it Priority 3 or some

28

other category not addressed by Proposed Condition 11?

4. Has PG&E analyzed whether there are circumstances in which trees that have the potential to strike power lines but are healthy and not in violation of minimum clearances required by California Public Resources Code Section 4293, California Public Utilities Commission General Order 95, and Federal Energy Regulatory Commission FAC-003-4 should be worked or removed?  If so, what conclusions did PG&E reach?  Has this issue been the subject of any regulatory process or analysis?

5. Does PG&E have the authority to remove potential strike trees other than those that are dead, diseased, dying, or identified by PG&E's TAT as "abate"?

6. Has PG&E analyzed whether all trees that have the potential to strike its power lines should be documented regardless of their health and/or whether they need to be worked? If so, what conclusions did PG&E reach?  Has this been the subject of any regulatory process or analysis?

7. In its filing, ECF 1300, PG&E stated that "[c]onsistent with industry practice, PG&E . . . does not require pre-inspectors on routine vegetation management patrols to generate records for trees that they do *not* identify for work."  Is PG&E aware of any utilities that generate records for trees that are not identified for work during routine patrols?  If so, what trees are identified?  Does PG&E require inspectors to document any trees that are *not* identified for work during CEMA or EVM patrols?

//
//
//
//
//
//
//
//

8. Has PG&E analyzed how many fires have been started in the past by trees falling on power lines that would not have been subject to work or removal under current VM or EVM standards?  If so, what proportion of total fires sparked by PG&E equipment were sparked by healthy trees falling on power lines?

DATED:      February 17, 2021                    Respectfully submitted,

DAVID L. ANDERSON
United States Attorney


_____/s/_____
JEFFREY B. SCHENK
PHILIP KOPCZYNSKI
NOAH STERN
Assistant United States Attorneys