JENNER & BLOCK LLP
  Reid J. Schar (*pro hac vice*)
  RSchar@jenner.com
  353 N. Clark Street
  Chicago, IL 60654-3456
Telephone: +1 312 222 9350
Facsimile: +1 312 527 0484

CLARENCE DYER & COHEN LLP
  Kate Dyer (Bar No. 171891)
  kdyer@clarencedyer.com
  899 Ellis Street
  San Francisco, CA 94109-7807
Telephone: +1 415 749 1800
Facsimile: +1 415 749 1694

CRAVATH, SWAINE & MOORE LLP
  Kevin J. Orsini (*pro hac vice*)
  korsini@cravath.com
  825 Eighth Avenue
  New York, NY 10019
Telephone: +1 212 474 1000
Facsimile: +1 212 474 3700

Attorneys for Defendant PACIFIC GAS AND ELECTRIC COMPANY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>       v.<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>              Defendant. | Case No. 14-CR-00175-WHA<br><br>**PG&E'S RESPONSE TO ORDER REQUESTING FURTHER INPUT ON PROPOSED CONDITIONS**<br><br>Judge: Hon. William Alsup |

PG&E respectfully submits this response to the Court's February 4, 2021 order requesting further input on the Court's modified Proposed Conditions regarding PSPS. (Dkt. 1294.)

PG&E has no objection to the Court's modified Proposed Conditions 11 and 12. PG&E's operations teams are working to operationalize the implementation of the Proposed Conditions.

Specifically, in addition to accounting for outstanding Priority 1 and Priority 2 vegetation management tags, PG&E will revise its PSPS protocols to more expressly account for "the approximate number of trees tall enough to fall on the line irrespective of the health of the tree and irrespective of whether the tree stands outside or inside prescribed clearances".  To do so, one of the things PG&E intends to leverage is remote sensing capabilities, such as aerial-based light detection and ranging ("LiDAR") technology, which uses pulsed laser light to generate digital 3-D object maps.  The precise mechanics of how to effectively leverage these capabilities in the time available prior to fire season to fulfill the letter and spirit of the Court's condition is being worked on by PG&E's operations teams.

Consistent with the approach laid out in PG&E's January 20, 2021 submission to the Court, PG&E will implement the Proposed Conditions by using expert analysis to set fire-risk thresholds to determine when conditions warrant de-energization.  Those thresholds will seek to substantially reduce the risk of catastrophic wildfires, while recognizing that shutting off electricity creates its own safety risks and severely disrupts affected communities.  Whenever PG&E's weather models predict an area will exceed the specified thresholds for de-energization, the relevant distribution lines will be de-energized absent a documented determination that de-energization is not warranted under the circumstances.

\*   \*   \*

In accepting the Court's Proposed Conditions 11 and 12, PG&E recognizes that, even with the significant potential expansion to PSPS that they entail, de-energization is not a panacea for addressing the wildfire risk facing California.  The Court's Proposed Conditions

focus on vegetation striking distribution lines.  In addition to the PSPS program and the modifications discussed with the Court, PG&E is in the midst of implementing numerous additional actions to reduce the risk from the trees that surround PG&E's power lines.  PG&E has been updating the Monitor team on its efforts and highlights a few here.

<u>Enhanced vegetation management ("EVM")</u>:  As outlined in prior filings with the Court, over the last two years, PG&E has launched from scratch an EVM program that goes beyond compliance with state law to reduce wildfire risk.  Over the last two years, PG&E has completed over 4,300 miles of EVM and removed or trimmed over 340,000 trees as part of this program alone.  PG&E plans to conduct EVM on an additional 1,800 miles in 2021.  This year, PG&E intends to perform at least 80% of its EVM work on distribution circuits in the top 20% of risk in high-fire threat areas or in areas recently impacted by fires, to drive down risk faster.

<u>Routine vegetation management</u>:  This year, PG&E has a significant focus on improving its routine vegetation management program in high-fire threat areas.

*First*, PG&E has in 2021 stood up its Vegetation Management Inspector or VMI Program, as it has previously committed to the Court.  In addition to PG&E-employed supervisors and management, 95 VMIs (including 30 employed by PG&E) will be in the field by the end of 2021.  One of several areas of focus for the VMIs will include spending time accompanying routine vegetation management inspectors in the field during their patrols, providing hands-on, in-the-field coaching and oversight of their work.  Over time, PG&E expects that this significant investment in coaching routine inspectors will result in higher quality, more consistent routine vegetation management patrols.

*Second*, in addition to the VMI program, PG&E is moving this year to a 100% work verification model in its routine vegetation management program for high-fire threat areas, similar to what has been done for the EVM program in the past.  This means that once a line has been pre-inspected by a vegetation management contractor, and that contractor's tree crews have completed the work prescribed on the line, an inspector from a different contractor will walk the line and perform a second, independent patrol to assess whether the line is fully

compliant with state law. If any further work is deemed needed by this second, independent set of eyes, it will be prescribed. Given the scope of PG&E's routine vegetation program, this move to 100% work verification requires a big investment in hiring additional inspectors, and PG&E is in the process of adding 200 additional inspectors to its work verification program to perform this work.

In 2021, between the routine vegetation management patrol, the 100% work verification patrol and the mid-year CEMA patrol, each distribution line in a high-fire threat area in PG&E's service territory will be scheduled for at least three patrols to examine the line to confirm the line is in compliance.

*Third*, PG&E will roll out during the course of 2021 the use of vehicle-based LiDAR technology as yet a further check on the quality of its vegetation management patrols. Specifically, vehicle-based LiDAR scans following a routine inspection and its associated tree work will help objectively confirm that the required clearance around the conductors has been achieved. Following pilot testing in 2019 and 2020, PG&E is in the process of hiring a contractor to use this technology more broadly in 2021 across high-fire threat areas that are accessible by road.

While each of these new investments is important in its own right, the combined effect of these efforts—expanded PSPS scoping criteria that account for open priority vegetation tags and vegetation density; enhanced vegetation management in the highest 20% risk circuits; 95 new VMI program inspectors that will provide in-field coaching of inspectors; 200 new work verification inspectors to provide 100% work verification; and ground-based LiDAR scanning—represents an unprecedented effort in 2021 to more aggressively address the risk of ignitions from vegetation strikes.

Dated: February 19, 2021

Respectfully Submitted,

JENNER & BLOCK LLP

By:   /s/ Reid J. Schar
      Reid J. Schar (*pro hac vice*)

CRAVATH, SWAINE & MOORE LLP

By:   /s/ Kevin J. Orsini
      Kevin J. Orsini (*pro hac vice*)

CLARENCE DYER & COHEN LLP

By:   /s/ Kate Dyer
      Kate Dyer (Bar No. 171891)

Attorneys for Defendant PACIFIC GAS AND ELECTRIC COMPANY