ALEXANDER JASON PAL, Chief Counsel (SBN 266479)
DAISY LIU, Counsel (SBN 311375)
California Governor's Office of Emergency Services
3650 Schriever Avenue
Mather, CA  95655
Tel:  (916) 845-8973
Fax:  (916) 845-8511
e-mail: Daisy.Liu@caloes.ca.gov

Attorneys for Mark Ghilarducci, Director and
California Governor's Office of Emergency Services

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                 Plaintiff,<br><br>v.<br><br>PACIFIC GAS AND ELECTRIC COMPANY;<br><br>                 Defendants, | Case No. 14-cr-00175-WHA<br><br>**CALIFORNIA GOVERNOR'S OFFICE OF EMERGENCY SERVICES MOTION FOR LEAVE TO FILE AMICUS LETTER**<br><br>Hearing Date: 03/09/21<br>Time:            8:00 am<br>Courtroom:  12, 19th Floor<br>Judge:          The Hon. William H. Alsup |

The California Governor's Office of Emergency Services ("Cal OES") hereby seeks leave of the Court to file an *Amicus* letter regarding the new proposed terms of probation for defendant Pacific Gas and Electric Company ("PG&E"). Federal courts have inherent authority to entertain Amicus briefs. *In re Bayshore Ford Truck Sales, Inc.,* 471 F.3d 1233, 1249 n.34 (11th Cir, 2006).

Cal OES's proposed letter is attached hereto as **Exhibit 1.**

February 19, 2021         Respectfully submitted,

          /s/ Daisy Liu
          DAISY LIU
          Counsel, Cal OES

          Attorneys for Mark Ghilarducci, Director and
          California Governor's Office of Emergency Services

# EXHIBIT 1

GAVIN NEWSOM  
GOVERNOR



MARK S. GHILARDUCCI  
DIRECTOR

February 19, 2021

Honorable William H. Alsup  
United States District Court  
Northern District of California  
Courtroom 12 - 19th Floor  
450 Golden Gate Avenue  
San Francisco, CA 94102

Subject:  Case No. 14-CR-00175-WHA

To the Honorable William H. Alsup:

I am the Director of the California Governor's Office of Emergency Services (Cal OES). I am writing in response to the Court's February 4, 2021 Order Requesting Further Input on Proposed Conditions (11 and 12) relative to case number 14-CR-00175-WHA. Although Cal OES is not a party to this action, it is my hope that the Court will benefit from my perspective as the State's leader in emergency management.

For the past nearly two and a half years, Cal OES has been working closely with utility providers, CALFIRE, and the California Public Utilities Commission, as well as other state and local partners, to ensure that utilities execute PSPS events in as safe and coordinated a manner as possible and to limit the scope of PSPS events to minimize public safety impacts.  Cal OES recognizes that the preemptive de-energization of power lines, as a measure of last resort, may reduce fire risk during certain weather conditions. However, the decision is not without consequence, as mitigating one risk may create another perilous situation.  When a utility de-energizes power lines in a community, it must take into account significant cascading adverse impacts that may result.  As a result, de-energization must be regulated and implemented in close coordination with state and local governments, first responders, and potentially impacted communities.



3650 SCHRIEVER AVENUE, MATHER, CA 95655  
(916) 845-8506 TELEPHONE (916) 845-8511 FAX  
www.CalOES.ca.gov

Hon. William H. Alsup
February 19, 2021
Page 2

From an emergency management perspective, there are immense challenges that result from a utility's decision to de-energize power lines. Power outages impair the ability for law enforcement to send and community members to receive emergency alerts and warnings. Most alerting authorities disseminate alerts through cell phone signals. Cell phone towers, however, have limited battery backup and eventually may become nonoperational during prolonged power outages. Additionally, without power in homes, individuals will have no ability to charge their mobile devices, eventually rendering them incapable of receive alerts and warnings in this manner. Some emergency officials have even had to resort to door-to-door evacuations warnings within communities.

Additionally, challenges increase based upon the location and duration of the outage, the number of customers impacted, the impacts to critical infrastructure. For instance, a prolonged power outage could impede firefighters' ability to pump water during a fire, which could prove very problematic for a wildfire in a remote area that is experiencing a PSPS. As other critical infrastructure facilities lose power, the more complex and difficult is to manage these events and to ensure public health and safety.

Perhaps most notably, prolonged power outages have significant impacts to vulnerable populations and facilities. This includes individuals who are medically dependent upon electricity and hospitals and other critical healthcare facilities that rely upon power for healthcare needs. Prolonged power outages could pose significant challenges and could have dire consequences to these individuals and facilities. The broader the scope and the longer the duration of a power outage, the more complex these challenges become.

Even with close coordination with the utilities and state partners, my office has observed significant challenges with PSPS events. Just this year, we dealt with extremely complex and prolonged PSPS events in the midst of the COVID-19 pandemic. During this summer's PSPS events, thousands of vulnerable and elderly Californians, sheltering at home during the pandemic were unable to keep cool during extremely high temperatures. We also experienced PSPS events during cold temperatures, where Californians were unable to heat their homes.

We continue to work with the utilities, state and local government agencies, first responders and communities to address these challenges, and to mitigate impacts from PSPS events as much as possible. For instance, utilities have implemented protocols for ensuring medical baseline customers receive notifications of anticipated power outages with ample time to take action to mitigate the impacts of the outage.  Additionally, we have worked closely with

Hon. William H. Alsup
February 19, 2021
Page 3

impacted industries, such as hospitals and communications providers, to plan for adequate back-up generation. Concurrent with these efforts, coordinated actions are ongoing to address technical improvements in an effort to reduce the scope and duration of power outages and ensure that power lines are carefully inspected for potential hazards.[1]

The Court's Proposed Conditions 11 and 12, may require PG&E to drastically expand the scope and duration of PSPS events, impacting many more Californians. Again, PSPS should be used as tool of last resort given the cascading public safety impacts that may result from such actions. Utilities should focus on all mitigation efforts to buy down the risk of wildfires, versus simply further expanding the scope and duration of PSPS events. I urge the Court to reconsider issuing this Order.

I thank you for time and consideration of my comments on this complex and challenging matter.

Sincerely,

MARK S. GHILARDUCCI
Director

---

[1] "California Power Line Fire Prevention Field Guide"
https://osfm.fire.ca.gov/media/3vqj2sft/2021-power-line-fire-prevention-field-guide-ada-final_jf_20210125.pdf