1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JENNER & BLOCK LLP
    Reid J. Schar (*pro hac vice*)
    RSchar@jenner.com
    353 N. Clark Street
    Chicago, IL 60654-3456
Telephone: +1 312 222 9350
Facsimile: +1 312 527 0484

CLARENCE DYER & COHEN LLP
    Kate Dyer (Bar No. 171891)
    kdyer@clarencedyer.com
    899 Ellis Street
    San Francisco, CA 94109-7807
Telephone: +1 415 749 1800
Facsimile: +1 415 749 1694

CRAVATH, SWAINE & MOORE LLP
    Kevin J. Orsini (*pro hac vice*)
    korsini@cravath.com
    825 Eighth Avenue
    New York, NY 10019
Telephone: +1 212 474 1000
Facsimile: +1 212 474 3700

Attorneys for Defendant PACIFIC GAS AND ELECTRIC
COMPANY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 14-CR-00175-WHA |
| Plaintiff, | **RESPONSE TO QUESTIONS FOR FOLLOW-UP** |
| v. | Judge:  Hon. William Alsup |
| PACIFIC GAS AND ELECTRIC COMPANY, | |
| Defendant. | |

1    Defendant Pacific Gas and Electric Company ("PG&E") respectfully submits this

2  response to Questions 1 through 6 contained in the Court's February 18, 2021 order.  (Dkt. 1307.)

3    The following responses reflect PG&E's present understanding; PG&E's

4  investigation is ongoing.  With respect to the Court's order to provide declarations, PG&E contacted

5  individuals (either directly or through counsel) who PG&E currently believes are responsive to the

6  Court's requests.

7    **Question 1:**

8    At the February 3 hearing, counsel for the offender, Attorney Kevin Orsini, stated
     with respect to the Gray Pine in question:

9

10    > [A]s we sit here right now, what we know is there were three
      > different sets of qualified foresters who went out there, who

11    > examined the area in their professional judgment, designated a
      > thousand trees in that area to come down.  Used the tools that

12    > PG&E has in place, that include assessment of lean and
      > species, and made a determination that they were not going to

13    > mark that tree for removal.

14

15    This led to questions propounded in an order dated February 5, 2021.  PG&E's
      answers now show that Mountain G Enterprises, a PG&E contractor, marked the

16    Gray Pine in question for work in 2018 but that work was never done. Attorney
      Orsini shall please explain (under oath) why he stated the above to the Court without

17    also stating that MGE had marked the Gray Pine for work.  He shall also please state
      who the third set of "qualified foresters" were that "made a determination that they

18    were not going to mark that tree for removal."  PG&E identified only two
      "determinations" (although those declarants had no memory of any determination).

19    Please supply the same information requested before as to the third set of foresters
      and their "determination."

20

21  **PG&E Response:**

22    The declaration requested by Question 1 is provided as Exhibit A.

23    **Question 2:**

24    Declarant A states that, after the Carr Fire in July and August 2018, Mountain G
      Enterprises, Inc., performed post-fire clean-up under contract with PG&E.  During

25    that engagement, MGE marked the Gray Pine in question for work, he believes, but
      the work was not done.  Provide declarations from every MGE and PG&E personnel

26    who made the 2018 determination to mark the Gray Pine for work and append all
      records regarding the determination.  Said declarations should detail how and why

27

28

that determination was made and identify all persons who knew or should have known about it.  Provide declarations from every MGE and PG&E personnel who made the subsequent determination not to work the Gray Pine (or to postpone the work).  Those declarations should detail how and why that determination was made and identify all persons who knew or should have known that the Gray Pine had not been worked (or postponed).  Append all MGE and PG&E reports, memos, notes or other communications related to the determination not to do the work.  Provide declarations that explain the "Collector Application" and identify all PG&E personnel who had access to it during the time between the Carr and Zogg Fires.  Please resubmit any prior response(s) describing the Collector Application.  Provide declarations identifying the full extent to which PG&E personnel were aware prior to the Zogg Fire that trees marked for work along the Girvan Line had, in fact, not been worked.

**PG&E Response:**

> *Provide declarations from every MGE and PG&E personnel who made the 2018 determination to mark the Gray Pine for work and append all records regarding the determination.  Said declarations should detail how and why that determination was made and identify all persons who knew or should have known about it.*

During post-Carr Fire restoration work in 2018, PG&E engaged California Forestry and Vegetation Management ("CFVM") to perform Quality Control ("QC") inspections of certain areas within the Carr Fire footprint.  Records reflect that the area of interest[1] was one of the areas subject to such a QC inspection on August 23, 2018 after a Mountain G Enterprises, Inc. ("Mountain G") Task Force Lead identified concerns with the initial pre-inspection of the area.  The area of interest was patrolled again after the QC inspection, as discussed in the response to Question 3 below.  As noted in PG&E's November 18, 2020 submission (Dkt. 1265), based on PG&E's review of records maintained by Mountain G in connection with the post-Carr Fire restoration work, the CFVM inspector who performed the QC inspection of the area of interest in August 2018 used the Collector app to identify two Gray Pines that the QC inspector determined fell

---

[1] When PG&E refers to the "area of interest", it is referring specifically to the vicinity of the three specific spans of line from which CAL FIRE collected evidence, not the entire Girvan 1101 12 kV Distribution Circuit ("Girvan Circuit") (which spans approximately 117 line miles).  The area of interest is depicted in Exhibit C to PG&E's October 26, 2020 submission.

RESPONSE TO QUESTIONS FOR FOLLOW-UP
Case No. 14-CR-00175-WHA

within the scope of the post-Carr Fire tree work standard (the two "Identified Gray Pines").  (*See* Exhibit B.)  The Identified Gray Pines have locations consistent with the location of the Gray Pine from which CAL FIRE appears to have collected sections after the Zogg Fire (the "Gray Pine of interest" or the "Subject Tree").

One of those Gray Pines identified by the CVFM inspector may have been the Subject Tree.  However, because there are three other Gray Pines in the immediate vicinity of the Subject Tree, PG&E has not yet been able to confirm whether the Subject Tree was in fact one of the two Identified Gray Pines.

A declaration provided by the CFVM QC inspector who identified the two Identified Gray Pines, and entered data for them using the Collector app, is attached as Exhibit B.  Based on the declaration and records provided by Mountain G, PG&E has not identified any other individual who was involved in making the 2018 determination to mark the two Identified Gray Pines.

In response to the Court's request, records generated by the CFVM QC inspector regarding his determination to identify the two Gray Pines are attached as Exhibit H, including emails about his inspection results, a work order dated August 25, 2018 that lists the two Identified Gray Pines, and versions[2] of a document titled "Carr Fire Daily Report", which PG&E understands

---

[2] PG&E is producing at Exhibit H-5.1 the "Carr Fire Daily Report" that PG&E's records indicate was circulated on August 24, 2018, the day after the CFVM QC inspector made the Collector data entries for the two Gray Pines described above.  The two Identified Gray Pines are on the "PI" tab at rows 6274 and 6275.

Data for the two Gray Pines also was included in subsequent "Carr Fire Daily Reports" circulated by Mountain G's data management specialist throughout the remainder of the post-Carr Fire response.  PG&E is producing at Exhibit H-6.1 what it has presently identified as the last version of the "Carr Fire Daily Report" emailed to PG&E personnel on November 8, 2018.  The two Identified Gray Pines are on the "Tree Data" tab at rows 12158 and 12159.  Additionally, PG&E is producing at Exhibit H-7 what appears to be the last-in-time "Carr Fire Daily Report" prepared by Mountain G, titled "Report20181115.xlsx", that was recently obtained from Mountain G.  The two Identified Gray Pines are on the "Tree Data" tab at rows 12158 and 12159.  Upon request, PG&E can produce all available versions of the "Carr Fire Daily Reports" circulated to the Court.

contained data from Mountain G's ArcGIS database that Mountain G employees periodically emailed to personnel working on the post-Carr Fire response work.  That spreadsheet included tabs with tree-level data.  For context regarding the CFVM inspector's QC patrol, PG&E is also attaching in Exhibit I certain documents relating to the scheduling of that patrol.

As to the Court's request to identify all persons who knew or should have known about the CFVM QC inspector's marking of the two Gray Pines discussed above, PG&E has produced in Exhibit H emails that the QC inspector wrote to others that include results of the patrol. Furthermore, PG&E understands that once the CFVM QC inspector entered the data for the two Gray Pines described above into Collector, any individual with access to the Collector app or the ArcGIS database, or exports generated therefrom, could have potentially accessed that data.  PG&E has not identified records that list every individual that accessed the Collector app to view the data concerning the two Gray Pines described above or received a data export from ArcGIS that included that data.  PG&E has, however, identified individuals that received "Carr Fire Daily Reports" by email between August and November 2018 that included, in the spreadsheet tabs with tree-level data, data concerning the two Gray Pines described above.  Those individuals are identified in the declaration attached as Exhibit D.

> *Provide declarations from every MGE and PG&E personnel who*
> *made the subsequent determination not to work the Gray Pine (or to*
> *postpone the work).  Those declarations should detail how and why*
> *that determination was made and identify all persons who knew or*
> *should have known that the Gray Pine had not been worked (or*

---

Further, Mountain G has provided PG&E with the native files extracted from its ArcGIS database that require specialized software to view.  PG&E will provide the native files to the Court upon request.

Because certain Excel files referenced in this filing, including those discussed in this footnote, and the exhibits thereto are not formatted for printing on regular-sized paper, PG&E filed slipsheets in lieu of such files and has provided such files on a thumb drive that PG&E has delivered to the Court.  PG&E is in the process of identifying confidential information from these Excel files and will provide redacted versions under a separate Motion to Seal at a later date.

1
2
*postponed).  Append all MGE and PG&E reports, memos, notes or*
*other communications related to the determination not to do the work.*

3 As previously stated to the Court, PG&E's review of the ArcGIS records maintained

4 by Mountain G indicates that the two Identified Gray Pines marked by the CFVM inspector may not

5 have been worked despite being identified by the CFVM inspector as being within the scope of the

6 post-Carr Fire tree work standard.  Specifically, the "TC_WORKED" field—which PG&E

7 understands stands for "Tree Crew Worked"—associated with these trees have "No" values in the

8 last-in-time ArcGIS database extract that has been identified.[3]  Further, the July 2019 photographs of

9 the area of interest that PG&E previously submitted to the Court do not appear to show any Gray

10 Pines that had been felled in the immediate area of the Gray Pine of interest.

11 PG&E is aware that post-Carr Fire work in the Zogg Mine Road area was interrupted

12 in late September and October 2018 due to interactions with an armed resident who believed that

13 PG&E crews were marking trees for work unnecessarily.  (*See* Exhibits C, J.)  Records indicate that

14 post-Carr Fire work on Zogg Mine Road was stopped in October 2018 so that security support could

15 be obtained.  PG&E also understands based on records that inquiries were made in October 2018

16 about attempting to secure help from law enforcement to protect tree crews against the resident that

17 had brandished a firearm.  (*See* Exhibits C, K.)

18 A PG&E vegetation management regional manager recalls at some point making a

19 decision to rely on PG&E's routine vegetation management patrols of the area for any remaining

20 work on Zogg Mine Road from the post-Carr Fire effort.  A declaration provided by the PG&E

21 vegetation management regional manager is attached as Exhibit C.

22 PG&E currently understands that in November 2018, the post-Carr Fire response

23 effort formally concluded, and any remaining personnel working on that effort were re-assigned.  By

24
25
26
27
[3] Please refer to Exhibit H-7 for what appears to be the last in time "Carr Fire Daily Report" prepared by Mountain G, titled "Report20181115.xlsx".  This report shows the "No" entries in the "TC_WORKED" field for the two Gray Pines identified for removal by the CFVM QC inspector, on the "Tree Data" tab at rows 12158 and 12159.
28

1   then, records indicate that most trees identified for work on Zogg Mine Road as part of the Carr Fire

2   response had "TC_WORKED" values of "Yes" or "Delisted", but some trees had "TC_WORKED"

3   values of "No" or were blank.[4]   As noted above, the two Identified Gray Pines with locations

4   consistent with the Subject Tree had "TC_WORKED" values of "No".   PG&E is continuing to

5   investigate why the two Identified Gray Pines in the area where the Gray Pine of interest was located

6   do not appear to have been worked, including who entered "No" in the "TC_WORKED" field for

7   the two Gray Pines and why.   PG&E has identified communications, attached as Exhibit L,

8   discussing trees being addressed during routine patrols.

9           In response to the Court's request, PG&E is not presently aware of any reports,

10   memos, notes or other communications that discuss a specific determination not to work the

11   two Identified Gray Pines, other than the documents described above and documents confirming that

12   the two Identified Gray Pines were not marked for work during the routine vegetation management

13   patrols of the Girvan Circuit in 2018, 2019 and 2020.   PG&E submitted declarations from the

14   inspectors who performed those three routine patrols, as well as relevant records from those patrols,

15   to the Court on February 12, 2021.   (*See* Dkt. 1300.)

16           *Provide declarations that explain the "Collector Application" and*
17           *identify all PG&E personnel who had access to it during the time*
18           *between the Carr and Zogg Fires.  Please resubmit any prior*
         *response(s) describing the Collector Application.*

19           A declaration explaining PG&E's current understanding of the Mountain G Collector

20   application, and describing PG&E personnel that PG&E has been able to identify from its records as

21   having received reports from the Mountain G Collector application, is attached as Exhibit D.

22           PG&E is resubmitting its prior responses describing the Collector app, attached as

23   Exhibit N.   These responses include:  (i) PG&E's November 18, 2020 Response to Request for

24   Follow Up by PG&E Concerning Its October 26 Submission (Dkt. 1265); (ii) PG&E's December 16,

25   2020 Response to Request for Additional Information Following PG&E's November 18 Briefing

26

27   _____
    [4] *See* Exhibit H-7.

28

1   (Dkt. 1271); and (iii) a declaration attached as Exhibit B to its December 16, 2020 response.

2   (Dkt. 1271-2.)

3

4   > *Provide declarations identifying the full extent to which PG&E*
    > *personnel were aware prior to the Zogg Fire that trees marked for*
5   > *work along the Girvan Line had, in fact, not been worked.*

6   As noted above, a PG&E vegetation management regional manager recalls at some

7   point making a decision to rely on PG&E's routine vegetation management patrols of the area for

8   any remaining work on Zogg Mine Road from the post-Carr Fire effort.  As further noted above,

9   PG&E currently understands that in November 2018, the post-Carr Fire response effort concluded.

10  By then, records indicate that most trees identified on Zogg Mine Road as part of the post-Carr Fire

11  response had "TC_WORKED" values of "Yes" or "Delisted",[5] but some trees had TC_WORKED

12  values of "No" or were blank.  The two Identified Gray Pines with locations consistent with the

13  Subject Tree (one of which may have been the Subject Tree) have "TC_WORKED" values of "No".

14  PG&E is not aware of records that show all PG&E personnel that were aware of this

15  fact, but, as noted above, during the post-Carr Fire work in the summer and early fall of 2018,

16  certain PG&E personnel received "Carr Fire Daily Reports" sent by Mountain G that contained

17  "TC_WORKED" data in the tab of the spreadsheet with tree-level data.  The last version of the

18  "Carr Fire Daily Report" that records show was emailed to PG&E personnel was sent on

19  November 8, 2018.  PG&E is providing a declaration at Exhibit D describing who received the "Carr

20  Fire Daily Report" over time.

21  The Gray Pine of interest was not identified for removal or trimming as a result of the

22  routine vegetation management patrols of the Girvan Circuit that took place in October 2018, April

23  2019 and March 2020.

24  **Question 3:**

25  Declarant A and Declarant B had zero memory of any "determination not to work"
    the tree — zero.  All they could say is that, in their opinion now, they "would have"
26

27  [5] *See* Exhibit H-7.

28

1    done the right thing, therefore, they surely did the right thing.  Please interview all
2    others who might have been involved with the viewing of the Gray Pine and supply
     their declarations and append all relevant documents.

3  **PG&E Response:**

4          In preparing its response to this question, PG&E has reviewed available records from

5  (1) Mountain G's ArcGIS database to identify any other inspectors that marked vegetation for work

6  in the area of interest during the post-Carr Fire work and (2) PG&E's PMD database to identify any

7  inspectors that patrolled the area of interest as part of routine vegetation management patrols after

8  the Carr Fire.[6]

9          Post-Carr Fire Work:  Following the QC inspection of the area of interest in August

10 2018 that resulted in the identification of the two Identified Gray Pines, two inspectors performed

11 another patrol in the area of interest and marked additional trees for work as part of the post-Carr

12 Fire effort.  While some of those trees are in the area of interest, none are in the immediate vicinity

13 of the Subject Tree.  Declarations provided by those two pre-inspectors are attached as Exhibits E

14 and F.  Information entered by those inspectors in Collector during their patrol is reflected in the

15 Carr Fire Daily Reports that are being submitted to the Court with this submission.  (*See, e.g.*,

16 Exhibit M-1.1.)

17         2018, 2019 and 2020 Routine Patrols:  PG&E submitted declarations from the

18 inspectors who performed the routine vegetation management patrols in October 2018, April 2019

19 and March 2020 and records from those patrols to the Court on February 12, 2021.  (*See* Dkt. 1300.)

20         **Question 4:**

21         Paragraph 22 of Declarant B refers to "a black base from being burned," referring to
22         burn on the Gray Pine in question.  This was observed by Declarant B in a

23    [6] PG&E understands the Court to be asking about individuals who evaluated the Subject Tree
   for work after the CFVM QC inspector's August 2018 patrol described above.  There were patrols of
24 the Girvan Circuit that predated the CFVM QC inspector's August 2018 patrol, including a patrol as
   part of the post-Carr Fire work, CEMA patrols and routine patrols in prior years.  The records of past
25 patrols reviewed by PG&E during its investigation do not appear to identify any Gray Pines
   consistent with the Subject Tree and we therefore did not understand those patrols to be in the scope
26 of the Court's request.  We have not, therefore, obtained declarations concerning those earlier
27 patrols.

28

RESPONSE TO QUESTIONS FOR FOLLOW-UP
Case No. 14-CR-00175-WHA

1

2

photograph in Docket No. 1250-4.  Please submit the image viewed by the declarant and circle the "black base from being burned," as referenced by Declarant B.

3   **PG&E Response:**

4

5

In response to the Court's question, an additional declaration from Declarant B is attached as Exhibit G.

6

**Question 5:**

7

8

9

10

How accurate and reliable are the latitude/longitude data used by PG&E and its contractors.  Aren't the data supposed to be precise enough for subsequent crews to find the precise tree to remove?  Yet, Declarant A, using that very data, visited the Zogg Road site and could only say, "in my view, the odds are" that the Gray Pine was among the trees marked for work.  Is this system accurate enough for crews to locate exactly the right trees noted for removal?

11   **PG&E Response:**

12

13

14

15

16

17

18

19

GPS alone is not necessarily sufficient in for subsequent crews to find a precise tree to remove, especially if an area is densely forested.  Latitude and longitude data is generated by utilizing GPS.  GPS accuracy depends on various factors, including satellite geometry, signal blockage, atmospheric conditions, and receiver design.  For example, according to one estimate, some GPS-enabled smartphones are "typically accurate to within a 4.9 m (16 ft.) radius", but "accuracy worsens" near, among other things, trees.[7]  Further, the GPS coordinates recorded as part of vegetation management efforts are typically the coordinates where the pre-inspector is standing when entering the data, not the exact location of the tree.

20

21

22

23

In part because of these features of GPS coordinates, the industry standard is for trees to be marked with spray paint (or a flag in certain circumstances).  Pre-inspectors also are asked to input additional information about each tree point, including additional location information and certain descriptors about the tree.  GPS coordinates can direct an individual to the vicinity of an

24

25

26

27

[7] *GPS Accuracy*, GPS.gov, https://www.gps.gov/systems/gps/performance/accuracy/ (last accessed Mar. 1, 2021).

28

RESPONSE TO QUESTIONS FOR FOLLOW-UP
Case No. 14-CR-00175-WHA

  
identified tree; spray paint, a flag and/or notes about the characteristics of that tree can be used to specifically locate it.

### Question 6:

Under what circumstances, if any, would General Order 95, Rule 35, or Section 4293 have required that a gray pine in the position of the Gray Pine in question be removed?  For example, if it was known that the Gray Pine had been burned badly at the base in a previous fire, that it was leaning more than twenty degrees from vertical on a downhill slope looming over the power lines such that, if it fell downhill, it would fall on the power lines, and that high winds were eventually expected, how much more would be needed before PG&E would be obligated by General Order 95, Rule 35 or Section 4293 to remove it?

**PG&E Response:**

As to the first question, according to CAL FIRE, "[w]hether a healthy tree or limb that may contact the line from the side or fall on the line, and thus whether the tree or limb is a hazard, depends on the factual circumstances specific to that tree or limb".  (CAL FIRE Supp. Response at 1 (Dkt. 1012).)  To determine whether a tree constitutes a hazard that must be abated, state law requires inspectors to "use their professional judgment" based on the "specific circumstances, on a case-by-case basis".  (*Id.* at 12.)  There are many factors that an inspector may use to assess trees on a case-by-case basis, and inspectors do not examine trees based on isolated characteristics.  Such factors can include broken or loosened roots, discolored needles, abnormal crown conditions, open wounds and leaning.

With respect to the example set forth by the Court, PG&E interprets "burned badly" to mean that, in the judgment of an inspector, the burn caused immediate damage that visibly compromised the tree's structural integrity or disrupted the tree's ability to effectively take nutrients through its roots and distribute them to the canopy, which would cause the tree to show visible signs of death or decline during a subsequent inspection.  If it were known that the subject Gray Pine had been burned badly in such a manner, that it was leaning more than 20 degrees from vertical on a downhill slope looming over the power lines such that, if it fell downhill, it would fall on the power

lines, and that high winds were eventually expected, PG&E would expect that such a tree would be marked for work and removed.

PG&E has reviewed the 2019 photographs of the Gray Pine removed by CAL FIRE and such portions of the tree that were left by CAL FIRE.  PG&E has not had an opportunity to view the portions of the tree removed by CAL FIRE after the Zogg Fire.  PG&E provided the Court with declarations from the two inspectors who conducted the routine patrols in 2018, 2019 and 2020 on February 12, 2021, in which those inspectors discuss their impression of the subject Gray Pine based on the 2019 photograph.  (Dkt. 1300-1; Dkt. 1300-2.)

RESPONSE TO QUESTIONS FOR FOLLOW-UP
Case No. 14-CR-00175-WHA

1  Dated:  March 3, 2021                                    Respectfully Submitted,

2                                                           JENNER & BLOCK LLP

3

4                                                           By:   /s/ Reid J. Schar
                                                                  Reid J. Schar (*pro hac vice*)
5
                                                            CRAVATH, SWAINE & MOORE LLP
6

7                                                           By:   /s/ Kevin J. Orsini
8                                                                 Kevin J. Orsini (*pro hac vice*)

9                                                           CLARENCE DYER & COHEN LLP

10

11                                                          By:   /s/ Kate Dyer
                                                                  Kate Dyer (Bar No. 171891)
12

13                                                          Attorneys for Defendant PACIFIC GAS
14                                                          AND ELECTRIC COMPANY

15

16

17

18

19

20

21

22

23

24

25

26

27

28