# EXHIBIT A

JENNER & BLOCK LLP
    Reid J. Schar (*pro hac vice*)
    RSchar@jenner.com
    353 N. Clark Street
    Chicago, IL 60654-3456
Telephone: +1 312 222 9350
Facsimile: +1 312 527 0484

CLARENCE DYER & COHEN LLP
    Kate Dyer (Bar No. 171891)
    kdyer@clarencedyer.com
    899 Ellis Street
    San Francisco, CA 94109-7807
Telephone: +1 415 749 1800
Facsimile: +1 415 749 1694

CRAVATH, SWAINE & MOORE LLP
    Kevin J. Orsini (*pro hac vice*)
    korsini@cravath.com
    825 Eighth Avenue
    New York, NY 10019
Telephone: +1 212 474 1000
Facsimile: +1 212 474 3700

Attorneys for Defendant PACIFIC GAS AND ELECTRIC COMPANY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>     v.<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>                    Defendant. | Case No. 14-CR-00175-WHA<br><br>**DECLARATION OF KEVIN J. ORSINI**<br><br>Judge:  Hon. William Alsup |

I, Kevin J. Orsini, declare as follows:

1. On February 18, 2021, the Court entered an order titled "Questions for Follow-Up". (Dkt. 1307.) That order posed 24 enumerated questions to PG&E. The order directed me to submit a declaration in response to the first question. The order stated:

> At the February 3 hearing, counsel for the offender, Attorney Kevin Orsini, stated with respect to the Gray Pine in question:
>
>> [A]s we sit here right now, what we know is there were three different sets of qualified foresters who went out there, who examined the area in their professional judgment, designated a thousand trees in that area to come down. Used the tools that PG&E has in place, that include assessment of lean and species, and made a determination that they were not going to mark that tree for removal.
>
> This led to questions propounded in an order dated February 5, 2021. PG&E's answers now show that Mountain G Enterprises, a PG&E contractor, marked the Gray Pine in question for work in 2018 but that work was never done. Attorney Orsini shall please explain (under oath) why he stated the above to the Court without also stating that MGE had marked the Gray Pine for work. He shall also please state who the third set of "qualified foresters" were that "made a determination that they were not going to mark that tree for removal." PG&E identified only two "determinations" (although those declarants had no memory of any determination). Please supply the same information requested before as to the third set of foresters and their "determination."

I submit this declaration in response to the Court's order.

2. First, I will address the Court's question regarding why I made the statement quoted in the Court's order at page 24 of the transcript "without also stating that MGE had marked the Gray Pine for work" in August 2018 as part of the post-Carr Fire restoration effort.

3. As set forth below, in the submissions that preceded the February 3 hearing and at the February 3 hearing itself, PG&E and I stated: (a) that the Gray Pine of interest may have been marked for work, but not worked, as part of efforts following the Carr Fire in 2018; and (b) that there were three subsequent routine vegetation management patrols during which that tree was not designated for work. I begin with the pre-hearing submissions. I then address the comments I made at the February 3 hearing.

4.      On November 18, 2020, we told the Court on behalf of PG&E that "the Gray Pine of interest may have been identified for removal (but not removed) during restoration efforts following the Carr Fire in 2018, based on certain records recently reviewed by PG&E concerning that restoration work".  (Dkt. 1265 at 22.)

5.      In that same submission, we further stated:

> In addition to pre-inspectors who performed patrols of the Girvan Circuit, PG&E also engaged another contractor, California Forestry and Vegetation Management ("CFVM"), to perform QC inspections of sample areas within the Carr Fire footprint.  The area of interest was one of the areas subject to such a QC inspection in August 2018. Based on PG&E's review of records maintained by Mountain G in connection with the post-Carr Fire restoration work, the CFVM inspector who performed the QC inspection of the area of interest in August 2018 used the Collector app to *identify for removal two Gray Pine trees that have a location consistent with the location of the Gray Pine from which CAL FIRE appears to have collected sections after the Zogg Fire*.  Due to the fact that there were three other Gray Pines near the Gray Pine collected by CAL FIRE, PG&E has been unable at this time to confirm whether either of the two Gray Pines identified for removal were the Gray Pine from which CAL FIRE appears to have collected portions after the Zogg Fire.

(Dkt. 1265 at 24 (emphasis added).)

6.      In that same submission, we also stated:

> PG&E's review of the ArcGIS records maintained by Mountain G indicates that these two trees, together with certain other trees in the area of interest, may not have been worked despite being identified for work by the CFVM QC inspector.

(Dkt. 1265 at 24.)

7.      Finally, in that same submission, we stated that "PG&E does not believe that the Gray Pine of interest was identified for removal or trimming as a result of any of the routine or CEMA vegetation management patrols of the Girvan Circuit that took place in the years preceding or following the Carr Fire".  (Dkt. 1265 at 26.)

8.      After PG&E submitted this information to the Court in November, the Court ordered PG&E to ask CAL FIRE "to answer, *first*, whether the portions of the gray pine that CalFire

removed show any spray paint and, *second*, whether the portion of tree that it removed contained burn marks that could obscure such paint". (Dkt. 1267 at 3.) PG&E submitted these questions to CAL FIRE and provided the Court with CAL FIRE's letter in response. For the reasons set forth in CAL FIRE's letter, CAL FIRE declined to provide answers to PG&E to the questions posed by the Court. (Dkt. 1271-1.) The presence of spray paint on the portion of the Gray Pine that was removed would provide important evidence helping to establish whether that tree was in fact one of the two Gray Pines previously marked for work.

9. At the February 3 hearing, I acknowledged (as PG&E had stated in its written submissions) that the Gray Pine of interest may have been marked for work during the post-Carr Fire work.

10. Specifically, during that hearing, I first discussed the Gray Pines at the Zogg Fire area of interest on pages 12 and 13 of the transcript:

> There are -- as Your Honor knows, during the 2018 work that was done after the Carr Fire, which burned through this area, there was work undertaken to identify trees that had been impacted by that fire that needed to be removed. There were two trees, two gray pines in the vicinity of the tree that I know Your Honor is talking about, that as part of that process were identified for work.
>
> As the Court knows from our submissions, many of the trees that were identified as part of this post-fire restoration work were, in fact, worked.
>
> As we were getting towards the end of that process in September and October of 2018, there remained some trees, including these two, that had not yet been worked because of reasons we have set forth in the submission, issues with, you know, the brandishment of firearms and safety reasons.
>
> And because we knew in 2018 when this was happening that the routine patrol was going to follow right after, the decision was made to allow the routine patrol and rely on the routine patrol to come through and do another check and see what trees had to be removed. And that patrol, as well as two subsequent patrols, did not identify any of those trees as requiring work.

11. In response to a follow-up question from the Court, I explained on the following page of the transcript (page 14):

> So — so first of all, we don't — we don't know specifically whether the two trees that were originally identified were, in fact, either of the tree that fell. The investigation is underway.

> But more significantly, as we sit here right now, based on the facts that we know, you're right, Your Honor. Even with this additional set of conditions, it would not have led to de-energization of the Girvan 1101 circuit in the area where the Zogg Fire tragically started. But that's because based upon the decisions made by three sets of qualified foresters, there was no identification that that tree needed to be worked.
>
> Now we don't know the exact condition of that tree because we've not had access to the portion that was removed by Cal Fire. Not a criticism of them, just a fact.
>
> So the investigation could develop based upon the facts that will shed light on what the condition of that tree was, Your Honor.
>
> But the fact is, we had three sets of routine patrols after the Carr Fire that we know were identifying trees for work. It's not like they were going out there and not doing work.

12. My subsequent statement quoted by the Court at page 24 of the transcript was intended to reference the three routine patrols that occurred after the Carr Fire work and after the Gray Pine of interest may have been marked for work but not worked, as explained earlier in the hearing and in pre-hearing submissions, as described above.

13. To date, PG&E has not been able to conclusively determine whether the Gray Pine of interest that was collected by CAL FIRE was in fact one of the two Gray Pines in the area of interest that were marked for work following the Carr Fire. I am aware that the inspector who performed the 2018 routine vegetation management patrol submitted a declaration following the hearing saying that in his opinion the "odds are" that it was. (Dkt. 1300-1 at ¶ 48.)

14. I now turn to the second part of the Court's question, directing me to "please state who the third set of 'qualified foresters' were that 'made a determination that they were not going to mark that tree for removal.' PG&E identified only two 'determinations' (although those declarants had no memory of any determination). Please supply the same information requested before as to the third set of foresters and their 'determination.'" (Dkt. 1307 at 1-2.)

15. At the February 3, 2021 hearing, I was referring to the three separate routine vegetation management patrols that were conducted in 2018, 2019 and 2020. I understood, and the subsequent declarations confirm, that there were three different inspectors who were involved in routine patrols of at least portions of Zogg Mine Road during those years. After the February 3,

5
DECLARATION OF KEVIN J. ORSINI
Case No. 14-CR-00175-WHA

1  2021 hearing, we obtained and submitted to the Court declarations from each of those three
2  inspectors: the inspector who conducted the 2018 patrol (Declarant A), the inspector who conducted
3  both the 2019 and 2020 patrols (Declarant B), and a third inspector (Declarant C) who assisted
4  Declarant B on portions of the 2019 and 2020 patrols of the Girvan 1101 Circuit. I am not aware of
5  any additional individuals who may have participated in routine vegetation management patrols of
6  the specific area of interest following the Carr Fire in 2018, 2019 or 2020.

7  16.  According to the three declarations we submitted, it is likely that the three
8  separate routine patrols of the specific area of interest during 2018, 2019 and 2020 were conducted
9  by two (not three) different inspectors. Specifically, Declarant B stated that he believes, based on
10 reviewing a photograph, that he personally patrolled the specific area of interest in 2019 and 2020.
11 (Dkt. 1300-2 at ¶19.) Declarant C stated that although he assisted Declarant B in parts of the patrol
12 of Zogg Mine Road in 2019 and 2020, he believes based on reviewing a photograph that it was
13 unlikely he assisted Declarant B in patrolling the specific area of interest. (Dkt. 1300-3 at ¶¶ 17-18.)
14 I sincerely regret any confusion that my statements may have caused on this issue.

I declare under the penalty of perjury that the foregoing is true and correct and that I executed this declaration on March 2, 2021 in New York, New York.

_____
Kevin J. Orsini