JENNER & BLOCK LLP
   Reid J. Schar (*pro hac vice*)
   RSchar@jenner.com
   353 N. Clark Street
   Chicago, IL 60654-3456
Telephone: +1 312 222 9350
Facsimile: +1 312 527 0484

CLARENCE DYER & COHEN LLP
   Kate Dyer (Bar No. 171891)
   kdyer@clarencedyer.com
   899 Ellis Street
   San Francisco, CA 94109-7807
Telephone: +1 415 749 1800
Facsimile: +1 415 749 1694

CRAVATH, SWAINE & MOORE LLP
   Kevin J. Orsini (*pro hac vice*)
   korsini@cravath.com
   825 Eighth Avenue
   New York, NY 10019
Telephone: +1 212 474 1000
Facsimile: +1 212 474 3700

Attorneys for Defendant PACIFIC GAS AND ELECTRIC COMPANY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                 Plaintiff,<br><br>    v.<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>               Defendant. | Case No. 14-CR-00175-WHA<br><br>**PG&E'S RESPONSE TO ORDER TO SHOW CAUSE WHY FURTHER CONDITION OF PROBATION SHOULD NOT BE IMPOSED**<br><br>Judge: Hon. William Alsup |

Defendant Pacific Gas and Electric Company ("PG&E") respectfully submits this response to the Court's February 18, 2021 order to show cause as to why Probation Condition 1 should not be amended.  (Dkt. 1308.)

On the understanding that the Court is proposing to amend Probation Condition 1 to require PG&E to comply with CAL FIRE's interpretation of California Public Resources Code section 4293 as set forth in CAL FIRE's February 6, 2019 submission to the Court, PG&E does not object to the new proposed probation condition.  (Dkt. 1012.)  Probation Condition 1 states that "the Court accepts CAL FIRE's interpretation of Section 4293 as set forth in its February 6 submission (Dkt. No. 1012)".  (Dkt. 1040 at 1.)  We understand CAL FIRE's February 6 submission to mean that not all trees subject to section 4293 that lean towards the line constitute hazard trees that need to be abated.  We further understand CAL FIRE's submission to mean that, in determining whether a tree constitutes a hazard requiring removal for purposes of section 4293, "inspectors must use their professional judgment" based on the "specific circumstances, on a case-by-case basis".  (Dkt. 1012 at 1.)

PG&E agrees that a healthy tree may be a hazard tree based on the factual circumstances specific to each tree.  PG&E agrees to confirm to its vegetation management personnel that healthy trees may be hazard trees and to ensure that its vegetation management personnel are provided with and instructed to follow the guidance available from CAL FIRE for applying section 4293, including CAL FIRE's February 6 submission to this Court cited in Probation Condition 1 and CAL FIRE's field guide.

With respect to the specific issue of leaning trees, PG&E shares the Court's desire to find a practicable solution that, assuming that the Zogg Fire was caused by the subject Gray Pine, would have prevented the Zogg Fire.  With that goal in mind, PG&E proposes the following bright-line approach that would go beyond what is required under state law:  as long as CAL FIRE and the CPUC do not object, PG&E will institute a program to abate all Gray Pines tall enough to fall into a distribution line in a Tier 2 or Tier 3 HFTD that lean more than 20 degrees towards the line in four regions (Bay Area, Central Valley, North Valley and Sierra)

and abate all Tanoaks tall enough to fall into a distribution line in a Tier 2 or Tier 3 HFTD that lean more than 20 degrees towards the line in three regions (Bay Area, Central Coast and North Coast).  These trees will be targeted, regardless of health, because data shows that these particular species may present higher risk of falling into the line in these particular regions.  The pace of the program would depend on the number of trees that need to be felled, but PG&E would attempt to get crews in the field doing this work as soon as practicable.  As to other tree species, PG&E would continue with its broader enhanced vegetation management ("EVM") effort, which addresses trees of all species in high-fire threat areas and goes beyond what is required by state law to reduce wildfire risk.

Under EVM, PG&E is assessing every tree capable of striking the line using criteria developed by certified arborists to determine which trees present a sufficiently elevated risk such that they should be removed under the EVM program, regardless of health.  As part of that program, the lean of each tree is assessed and used in the determination.  Under current EVM standards, if a tree leans more than 25 degrees toward the line and is tall enough to fall into the line, it is abated under EVM.  Trees with a smaller lean are evaluated for potential abatement.  Given that EVM goes beyond the historical scope of routine vegetation management work, given the *many millions* of trees that surround PG&E's lines, and given that cutting trees with power tools close to bare, energized conductors is specialized and dangerous work, we continue to expect that the EVM program will continue to address about at least 1,800 miles per year.  By the end of this year, PG&E expects to have completed EVM—*i.e.*, patrolled, worked and 100% work verified—for over 6,000 HFTD line miles, at a program cost of more than $1.4 billion.

PG&E will also move forward on the other initiatives it is implementing this year to more aggressively address the potential for vegetation to strike its power lines in high-fire threat areas, which were described to the Court on February 19, 2021.  (Dkt. 1310.)  This includes expanding PSPS scoping criteria to account for open priority vegetation tags and vegetation density; focusing enhanced vegetation management in the highest 20% risk circuits;

deploying 95 new VMI program inspectors that will provide in-field coaching of inspectors; deploying approximately 200 new work verification inspectors to provide 100% work verification of routine vegetation management patrols in high-fire threat areas; and the use of vehicle-based LiDAR scanning to check vegetation clearances in high-fire threat areas.

PG&E proposes the additional program to address leaning Gray Pines and Tanoaks knowing that launching such a program while it is also implementing all of the other in-progress vegetation management programs is likely to produce operational challenges that will have to be overcome, particularly in identifying and managing capable foresters and tree crew resources that can perform the needed work safely and with high quality.  PG&E has proposed this additional program for consideration by the Court, CAL FIRE and the CPUC because, weighing the considerations, it believes this would be an appropriate way to address the Court's concern with leaning trees.

PG&E looks forward to discussing the additional vegetation management proposal regarding Gray Pines and Tanoaks with the Court and the other interested parties.

Dated:  March 4, 2021                          Respectfully Submitted,

                                                   JENNER & BLOCK LLP

                                                   By:   /s/ Reid J. Schar
                                                             Reid J. Schar (*pro hac vice*)

                                                   CRAVATH, SWAINE & MOORE LLP

                                                   By:   /s/ Kevin J. Orsini
                                                             Kevin J. Orsini (*pro hac vice*)

                                                   CLARENCE DYER & COHEN LLP

                                                   By:   /s/ Kate Dyer
                                                             Kate Dyer (Bar No. 171891)


                                                   Attorneys for Defendant PACIFIC
                                                   GAS AND ELECTRIC COMPANY