AROCLES AGUILAR, SBN 94753
CHRISTINE JUN HAMMOND, SBN 206768
CHRISTOFER C. NOLAN, SBN 229542
California Public Utilities Commission
505 Van Ness Avenue
San Francisco, CA 94102
Telephone: (415) 696-7303
Facsimile: (415) 703-4592
Christofer.Nolan@cpuc.ca.gov

Attorneys for the California Public Utilities Commission and
Marybel Batjer, Martha Guzman Aceves, Clifford Rechtschaffen,
Genevieve Shiroma, and Darcie Houck in their official capacities as
Commissioners of the California Public Utilities Commission

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Defendant. | Case No. 14-cr-00175-WHA<br><br>**CPUC MOTION FOR LEAVE TO FILE AMICUS LETTER**<br><br>Hearing Date: 03/23/2021<br>Time:  8:00 am<br>Courtroom: 12, 19th Floor<br>Judge:  Hon. William H. Alsup |

1  The California Public Utilities Commission ("CPUC") hereby seeks leave of the
2  Court to file an *Amicus* letter regarding the new proposed terms of probation for defendant
3  Pacific Gas and Electric Company ("PG&E"). Federal courts have inherent authority to
4  entertain Amicus briefs. *In re Bayshore Ford Truck Sales, Inc.*, 471 F.3d 1233, 1249, n.34
5  (11th Cir. 2006).
6  The CPUC's proposed letter is attached hereto as **Exhibit 1**.

Respectfully submitted,

March 19, 2021

By: /s/     *Christofer C. Nolam*
AROCLES AGUILAR
CHRISTINE JUN HAMMOND
CHRISTOFER C. NOLAN

Attorneys for the CALIFORNIA PUBLIC
UTILITIES COMMISSION

**CPUC MOTION FOR LEAVE TO FILE AMICUS LETTER**
Case No. 14-CR-00175-WHA

2

# EXHIBIT 1

STATE OF CALIFORNIA GAVIN NEWSOM *Governor*

PUBLIC UTILITIES COMMISSION
505 VAN NESS AVENUE
SAN FRANCISCO, CA  94102-3298



March 19, 2021

**VIA ELECTRONIC MAIL**

Honorable William H. Alsup
United States District Court
Northern District of California
Courtroom 12 - 19th Floor
450 Golden Gate Avenue
San Francisco, California 94102

    Re:  *Proposed Probation Conditions 11 and 12 in Case No. 14-cr-00175-WHA*

Dear Judge Alsup,

The California Public Utilities Commission ("CPUC") requests leave of the Court to offer additional comments out of time with the Court's schedule.  See ECF No. 1294.

Given the overriding importance of the issues that the Court is currently considering, the CPUC wishes to further inform the Court of public safety consequences in connection with the Court's consideration of imposing modified Proposed Conditions of Probation Nos. 11 and 12 on defendant Pacific Gas and Electric Company ("PG&E").  See id.  In summary, the potential doubling of Public Safety Power Shutoff ("PSPS") events in PG&E's service territory under these modified Proposed Conditions could translate into a corresponding or even greater increase in the public safety perils flowing directly from the use of PSPS.  There has been no critical analysis of PG&E's expected use of the number of trees in its PSPS decision-making model. There has further been no critical analysis of whether the wildfire risk mitigation that may be accomplished by the modified Proposed Conditions is commensurate with the corresponding increased risk to public safety that will be brought about by more frequent PSPS events impacting millions of Californians.

As the California Governor's Office of Emergency Services emphasized to the Court this month, "[disaster] prevention and mitigation require careful deployment of a broad array of measures that must be evaluated for their efficacy at risk reduction or mitigation, but also the broader impacts to the community of implementing those measures."  ECF No. 1319 at 3-4.  The CPUC again submits that PG&E's implementation of PSPS as a wildfire mitigation tool of last resort would best serve the public if it is considered in one of the pending CPUC proceedings, where local and tribal representatives and state and local public service and first responder entities can speak to and be heard on their personal and local public safety priorities.

Hon. William H. Alsup
March 19, 2021
Page 2

On February 4, 2021, the Court modified Proposed Condition Nos. 11 and 12 relating to criteria for consideration in PSPS events. ECF No. 1294. PG&E responded on February 19, indicating that it accepts the modified Proposed Conditions and that its acceptance will lead to "the significant potential expansion [of] PSPS." ECF No. 1310 at 2:25-26. On March 17, PG&E stated that it is "continuing to move forward on operationalizing changes to its PSPS program" pursuant to the modified Proposed Conditions and further elaborated:

> Those changes, which will significantly increase the customer impacts of PSPS events, are subject to ongoing refinement and engagement with regulators. But PG&E currently anticipates that the changes to its PSPS program as described for the Court in the context of Proposed Conditions 11 and 12 will reduce wildfire risk and, if the fire conditions that prevailed in the run-up to the Zogg Fire were to occur in 2021, would lead to the de-energization of the Girvan Circuit in the area of interest. (*See* Dkt. 1310.)

ECF No. 1344 at 3:13-20.

PG&E's characterization of a "significant potential" expansion of PSPS events as a consequence of implementing modified Proposed Condition Nos. 11 and 12 does not appear to fairly capture PG&E's anticipated impact on their customers, the broader public, and on state, local, and tribal public and emergency resources.

In the course of recent communications between PG&E and CPUC staff, CPUC staff asked PG&E to assess how its plan for implementing the modified Proposed Condition Nos. 11 and 12 would affect the size, scope, and frequency of PSPS events in its service territory. PG&E provided CPUC staff with estimates, based on historic weather data from 2010 – 2019. PG&E's estimates show that, had PG&E conducted PSPS over that time period,[1] adding the revised Probation Conditions Nos. 11 and 12 as triggers to execute a PSPS event would have more than doubled the total number of PSPS events conducted in PG&E's service territory.

Additionally, the average event would have impacted a greater number of customers, including access and functional needs, economically disadvantaged, and limited English proficiency households.

The CPUC staff further learned that PG&E estimates the average event duration would have increased from 23 to 28 hours if the modified Proposed Conditions had been implemented as part of PG&E's PSPS protocols, an average increase from approximately 78 million to approximately 118 million customer hours.

Under such circumstances, the extensive public input the CPUC has received in numerous public forums about PSPS events make clear that local and tribal governments and first responders would suffer an impaired ability to serve their communities. See ECF No. 987 at 21-23, 25; and ECF No. 1314 at 17-21.

---

[1] PG&E only began conducting PSPS events in October 2018.

Hon. William H. Alsup
March 19, 2021
Page 3

Because PSPS requires inspection of lines prior to re-energization,[2] expansion of PSPS events over a greater footprint could cause longer-duration outages. And longer-duration outages can magnify public safety impacts.

For example, customers in remote locations lacking wireless connectivity rely on their wireline connections for 911 service, emergency text messages, and other communications. Wireline service depends on connection to telecommunications central offices that require electric power. In Tier 2 and Tier 3 High Fire Threat Districts ("HFTDs"), only 14% of central offices have backup generation to support communications for more than 24 hours.[3] Until last July, when the CPUC mandated at least 72 hours of backup power for both wireline and wireless communications providers in Tier 2 and Tier 3 HFTDs, the Federal Communications Commission required only 24 hours of emergency backup power at wireless cell sites.[4] Such CPUC orders should help mitigate the risk of public safety impacts associated with PSPS events, but communications service providers/carriers have 18 months from July 2020 in which to comply with the CPUC's July 2020 order for at least 72 hours of backup power – which means many facilities in Tier 2 and Tier 3 HFTDs will not have 72 hours of backup capability for most of the upcoming wildfire season. As PG&E's PSPS outages have generally lasted more than 24 hours, and have repeatedly lasted as long as five to six days, longer PSPS outages would directly impact public safety.

The CPUC is very concerned about PG&E's lack of public transparency and regulatory oversight regarding its plan for implementing modified Proposed Conditions of Probation Nos. 11 and 12. PG&E states that it will implement the modified Proposed Conditions of Probation Nos. 11 and 12 "by using expert analysis to set fire-risk thresholds to determine when conditions warrant de-energization." ECF No. 1310 at 2:17-18. PG&E does not explain to the Court what specific data PG&E's experts will use to establish these fire-risk thresholds, such as the number of trees and their proximity to electrical equipment. CPUC staff understands that PG&E has utilized LiDAR-generated maps to develop a list of areas it would de-energize during a PSPS event. But PG&E has not described this methodology publicly, it has not (to the CPUC's knowledge) communicated this methodology and its anticipated impacts to potentially impacted customers, communities, and first responders, it has not produced details to the CPUC staff, nor has it allowed for or proposed a method for validating the analysis it used to translate "tree density" into a risk model to inform PSPS decision-making.

PSPS is a tool that should be used responsibly and judiciously. PG&E has made it known that it is proceeding with operationalizing modified Proposed Conditions 11 and 12, even as the Court has not yet

---

[2] See, e.g., CPUC Decision 20-05-051, Appendix A at 6-7 ("Restoration of power service upon conclusion of public safety need for de-energization") (accessible at
https://docs.cpuc.ca.gov/PublishedDocs/Published/G000/M339/K524/339524880.PDF); and PG&E's 2021 Wildfire Mitigation Plan at 690-92 (Section 7.3.6.4 Protocols for Public Safety Power Shutoff (PSPS) Re-Energization), 854-857, and 887-91 (Section 8.2.3 Re-Energization Strategy) (accessible at
https://www.pge.com/pge_global/common/pdfs/safety/emergency-preparedness/natural-disaster/wildfires/wildfire-mitigation-plan/2021-Wildfire-Safety-Plan.pdf).
[3] See CPUC Decision 21-02-029 at 50, Table 1 (Availability of Backup Power Using Batteries for Wireline Service Providers' Facilities in Tier 2 and 3 High Fire Threat Districts) (accessible at
https://docs.cpuc.ca.gov/PublishedDocs/Published/G000/M366/K625/366625041.PDF).
[4] See CPUC Decision 20-05-051 at 10.

Hon. William H. Alsup
March 19, 2021
Page 4

adopted the conditions of probation. See ECF No. 1344 at 3:13-14. The CPUC has also come to learn, based on recent communications between PG&E and CPUC staff, that PG&E has used LiDAR-generated data collected in 2019 and early 2020 to develop its approach to operationalize Probation Condition Nos. 11 and 12. Yet PG&E has not described how it has or will account for Enhanced Vegetation Management completed in 2020-2021 – or going forward including if PG&E implements its Proposed Condition No. 1 – which should in turn reduce the need for PSPS events.

Such a lack of careful and holistic consideration could result in wider, broader, and longer PSPS outages – and accompanying public safety risks – than would be necessary. Other vitally important considerations will inevitably emerge as PG&E implements its Wildfire Mitigation Plan and continues to redesign and harden its electric utility system.

The CPUC has previously urged that considerations affecting PSPS events should be thoroughly vetted in a public proceeding informed by public comments and expert opinions on PG&E's modeling, technology integration, and expert input. See ECF No. 1314. Having briefed the Court on the public safety consequences flowing from PSPS events and the need to make targeted and restrained use of PSPS as a tool of last resort, the CPUC is alarmed to have learned that implementation of the modified Proposed Conditions would have increased the impact of any one of its most aggressive PSPS events by almost 25,000 additional households in California.

The CPUC again respectfully submits that these kinds of operationalizing decisions that impact PG&E's use of PSPS should be subject to a thorough vetting by the CPUC's Safety and Enforcement Division and Wildfire Safety Division, other experts, local residents and their representatives, tribal governments, and public service and first responder agencies, so that PG&E utilizes PSPS events optimally and only as a measure of last resort.

Sincerely,

/s/    *Christine Jun Hammond*
AROCLES AGUILAR
CHRISTINE JUN HAMMOND
CHRISTOFER NOLAN

Attorneys for the
CALIFORNIA PUBLIC UTILITIES COMMISSION