JENNER & BLOCK LLP
    Reid J. Schar (*pro hac vice*)
    RSchar@jenner.com
    353 N. Clark Street
    Chicago, IL 60654-3456
Telephone: +1 312 222 9350
Facsimile: +1 312 527 0484

CLARENCE DYER & COHEN LLP
    Kate Dyer (Bar No. 171891)
    kdyer@clarencedyer.com
    899 Ellis Street
    San Francisco, CA 94109-7807
Telephone: +1 415 749 1800
Facsimile: +1 415 749 1694

CRAVATH, SWAINE & MOORE LLP
    Kevin J. Orsini (*pro hac vice*)
    korsini@cravath.com
    825 Eighth Avenue
    New York, NY 10019
Telephone: +1 212 474 1000
Facsimile: +1 212 474 3700

Attorneys for Defendant PACIFIC GAS AND ELECTRIC
COMPANY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>  v.<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>       Defendant. | Case No. 14-CR-00175-WHA<br><br>**PG&E'S FURTHER RESPONSE IN ADVANCE OF MARCH 23, 2021 HEARING**<br><br>Judge: Hon. William Alsup |

1    Defendant Pacific Gas and Electric Company ("PG&E") respectfully submits this

2  further response concerning the various orders scheduled for discussion at the hearing dated

3  March 23, 2021.  In Section I of this submission, PG&E provides a further response to the

4  Court's February 4, 2021 order concerning Proposed Conditions 11 and 12 (Dkt. 1294) as a

5  result of the CPUC's filing dated March 19, 2021 (Dkt. 1349).  In Section II of this submission,

6  PG&E provides supplemental information to the Court concerning vegetation management work

7  on the Girvan 1101 12 kV Distribution Circuit ("Girvan Circuit").

8  **I.   Further Response Concerning Proposed Conditions 11 and 12**

9    In the Court's December 29, 2020 order to show cause, the Court set forth

10  Proposed Conditions 11 and 12 under which PG&E would have been required, when deciding

11  which distribution lines in Tier 2 or Tier 3 HFTDs to de-energize during a PSPS event, to take

12  into account outstanding vegetation management work prescribed pursuant to Public Resources

13  Code section 4293, General Order 95, FERC FAC-003-4 or PG&E's Wildfire Mitigation Plan.

14  (Dkt. 1277 at 16.)  In PG&E's January 20, 2021 submission, PG&E proposed an approach under

15  which it would take into account, when deciding which distribution lines in Tier 2 or Tier 3

16  HFTDs to de-energize during a PSPS event, the existence of outstanding vegetation management

17  work tagged Priority 1 or Priority 2.  (Dkt. 1279 at 4.)  In the Government's January 25, 2021

18  filing, the Government proposed, for clarity's sake, language modifying PG&E's supplemented

19  Proposed Conditions.  (Dkt. 1282 at 2.)  PG&E agreed with the Government's suggestion

20  (Dkt. 1285 at 2), and the CPUC stated that it did not object (Dkt. 1288 at 4).  PG&E continues to

21  believe that the portions of Proposed Conditions 11 and 12 that relate to outstanding Priority 1

22  and Priority 2 vegetation management work can and should be implemented, as all parties to

23  these proceedings agree to that language and PG&E's regulator has confirmed it does not object.

24    Following the February 3, 2021 hearing on that proposed language, the Court

25  proposed supplemental language for Conditions 11 and 12 that would also require PG&E to

26  consider the approximate number of trees tall enough to fall into the line when making

27  de-energization decisions.  (Dkt. 1294 at 2.)  On February 19, PG&E explained that it had no

28

1   objection to this additional proposed language, and that the "precise mechanics of how to . . .

2   fulfill the letter and spirit of the Court's condition is being worked on by PG&E's operations

3   teams". (Dkt. 1310 at 2.)  PG&E also explained in that response that it would implement the

4   Proposed Conditions "by using expert analysis to set fire-risk thresholds to determine when

5   conditions warrant de-energization.  Those thresholds will seek to substantially reduce the risk of

6   catastrophic wildfires, while recognizing that shutting off electricity creates its own safety risks

7   and severely disrupts affected communities." (*Id.*)

8           On February 19, the CPUC expressed the opinion that Proposed Conditions 11

9   and 12, as modified by the Court in its February 4 order, "may unduly broaden PG&E's PSPS

10  events beyond the scope that has been vetted by safety experts and parties in ongoing CPUC

11  proceedings". (Dkt. 1314 at 4.)[1]  After that filing by PG&E's regulator, and as part of PG&E's

12  process of analyzing and setting fire-risk thresholds to determine when conditions warrant

13  de-energization as part of Proposed Conditions 11 and 12, PG&E shared with the CPUC the fire-

14  risk thresholds that it has been considering to address the issue of tall trees in proximity to

15  PG&E's lines.  As PG&E explained to the CPUC, it developed those thresholds specifically to

16  ensure that—if they had been in place in September 2020—PG&E would have de-energized the

17  Girvan Circuit in the area of interest on the day the Zogg Fire ignited.  PG&E also explained to

18  the CPUC, as it has previously stated to the Court, that these new thresholds, if adopted, will lead

19  to significant additional de-energizations.

20          On March 19, the CPUC expressed to the Court its opposition to PG&E's

21  implementation of Proposed Conditions 11 and 12.  (Dkt. 1349.)  The CPUC stated that "these

22  kinds of operationalizing decisions that impact PG&E's use of PSPS should be subject to a

23  thorough vetting by the CPUC's Safety and Enforcement Division and Wildfire Safety Division,

24

25

26          [1] On that same day, the United States noted that PG&E had previously told the Court on
    February 12 that PG&E was analyzing the Proposed Conditions with the goal of accepting and
27  implementing them, and the United States stated that it had no specific objections or proposed
    modifications.  (Dkt. 1309 at 1-2; *see* Dkt. 1300 at 4.)
28

PG&E'S FURTHER RESPONSE IN ADVANCE OF MARCH 23, 2021 HEARING
Case No. 14-CR-00175-WHA

1    other experts, local residents and their representatives, tribal governments, and public service and

2    first responder agencies". (*Id.* at 7.)

3         PG&E continues to believe that implementing changes to its PSPS protocols to

4    account for the density of trees tall enough to fall into a line (*i.e.*, potential strike trees), as

5    contemplated by Proposed Conditions 11 and 12, is a reasonable approach that will further

6    reduce wildfire risk.  At the same time, PG&E recognizes that the CPUC and Cal OES are

7    concerned that there are complex considerations involved that require the input of the state

8    regulatory process given the significant customer impacts that would result from the changes

9    contemplated by PG&E in response to the Court's proposal to account for strike-tree density.

10   (Dkts. 1311, 1349.)  Because the state regulator that oversees the administration of PSPS events

11   by California utilities has objected to PG&E complying with the Proposed Conditions, PG&E

12   respectfully submits that the strike-tree density requirement must be removed from the Proposed

13   Conditions.[2]

14         However, PG&E stresses to the Court that it continues to agree with the Court

15   that accounting for strike-tree density in PSPS decision-making is reasonable, appropriate and

16   would further reduce the risk of a catastrophic wildfire this year.  Accordingly, PG&E commits

17   to the Court to pursue the CPUC's approval to incorporate strike-tree exposure in scoping

18   distribution lines for PSPS events.  PG&E will consult with the CPUC on an appropriate

19

20   [2] The Ninth Circuit has explained that "where a state has in place a comprehensive
     procedure for resolution of the condition probation imposes, it makes good sense to defer to that
21   established procedure." *United States v. Lakatos*, 241 F.3d 690, 695 (9th Cir. 2001) (citation
     omitted); *see United States v. Snyder*, 852 F.2d 471, 474 (9th Cir. 1988) ("[T]he federal
22   government has no constitutional authority to interfere with a state's exercise of its police power
     except to the extent the state's action intrudes on any of the spheres in which the federal
23   government itself enjoys the power to regulate."); *Sable Commc'ns of Cal. Inc. v. Pac. Tel. &
     Tel. Co.*, 890 F.2d 184, 189 n.9 (9th Cir. 1989) ("California's police power over public utilities
24   has been vested in [the CPUC]."); *see also United States v. Sterber*, 846 F.2d 842, 844 (2d Cir.
     1988) ("We question whether a federal district judge, unguided by Congress except in the most
25   general terms, can require a defendant to give up a state-granted professional license, particularly
     where the state provides a comprehensive regulatory system to handle the professional
26   misconduct of those it licenses."); *United States v. Abushaar*, 761 F.2d 954, 960 (3d Cir. 1985)
     ("A condition of probation may not circumvent another statutory scheme.").  (*See also, e.g.*,
27   Dkt. 1195 at 3-6; Dkt. 1187-1 at 12-17; Dkt. 976 at 13-50.)

28

expedited procedural vehicle and proposes that it keep the Court apprised of how that regulatory process proceeds.

**II. Supplemental Submission Concerning Vegetation Management Work on Girvan 1101**

As part of PG&E's responses to questions posed by the Court concerning the Zogg Fire, PG&E has provided the Court with information regarding the routine vegetation patrols, CEMA patrols and post-Carr Fire response efforts that covered the area of interest between September 2015 and September 2020. As the Court is aware, the Girvan Circuit is approximately 117 miles long, and the area of interest comprises a small portion of the Girvan Circuit. In connection with PG&E's ongoing investigation, we have discovered records of other vegetation management work that was conducted during that time period on the Girvan Circuit, but not in the area of interest, as set forth below.

Based on these records, PG&E believes that certain discrete portions of the Girvan Circuit outside the area of interest were subject to six vegetation management patrols as part of a PG&E public safety and reliability program that targeted line segments that had a history of vegetation-related interruptions for additional vegetation management work. These records show that one patrol, conducted in May 2016, covered a portion of line along Zogg Mine Road, outside the area of interest. The other five patrols covered areas of the Girvan Circuit other than Zogg Mine Road. PG&E is producing inspection records and work requests associated with the May 2016 patrol along a part of Zogg Mine Road as Exhibit A and certain guidance documents regarding the public safety and reliability program as Exhibit B.

PG&E also has identified records of other vegetation management work on the Girvan Circuit between September 2015 and September 2020 outside the area of interest. While PG&E has not investigated the specific circumstances surrounding this vegetation management work outside the area of interest, general reasons why such work may have occurred include one-off tree work flagged by a customer or another third party, or as part of other initiatives such as a fuel reduction program. PG&E is producing records of the subset of this work that it has identified as occurring along Zogg Mine Road (but outside the area of interest) as Exhibit C.

1

Dated:  March 22, 2021

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully Submitted,

JENNER & BLOCK LLP


By:   /s/ Reid J. Schar
          Reid J. Schar (*pro hac vice*)

CRAVATH, SWAINE & MOORE LLP


By:   /s/ Kevin J. Orsini
          Kevin J. Orsini (*pro hac vice*)

CLARENCE DYER & COHEN LLP


By:   /s/ Kate Dyer
          Kate Dyer (Bar No. 171891)


Attorneys for Defendant PACIFIC
GAS AND ELECTRIC COMPANY