Michael J. Aguirre, Esq., SBN 060402
maguirre@amslawyers.com
Maria C. Severson, Esq., SBN 173967
mseverson@amslawyers.com
AGUIRRE & SEVERSON, LLP
501 West Broadway, Suite 1050
San Diego, CA 92101
Telephone: (619) 876-5364

Catherine Janet Kissee-Sandoval, SBN 153839
Csandoval@scu.edu
Santa Clara University School of Law
Director, Center of Insurance Law & Regulation
500 El Camino Real
Santa Clara, CA 95053-0421
Telephone: (408) 551-1902

Attorneys for *Amici* Alex Cannara
and Gene A. Nelson

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Defendant. | Case No. CR 14 -0175 WHA<br><br>*AMICI'S* REQUEST TO FILE BRIEF SUGGESTING THE COURT ORDER:<br>(1) PG&E PUBLICLY PRODUCE Dkt. 1323-8, Exhibits H-5.1, H-6.1, and H-7;<br>(2) PG&E DISCLOSE THE BASIS FOR ITS ESTIMATES TO THE CPUC THAT PROBATION CONDITIONS 11 AND 12 WOULD DOUBLE ITS PSPS;<br>(3) REJECTING PG&E PROPOSED MODIFICATION RE PROBATION CONDITION 1<br><br>Judge: Hon. William Aslup<br>Hearing Date: March 23, 2021<br>Time: 8:00 a.m. |

*Amici,* Alex Cannara and Gene A. Nelson, respectfully seek leave of the Court to file the Amicus brief attached hereto as Exhibit 1. The attached Amicus brief suggests that the Court order PG&E's Dkt. 1323-8, Exhibits H-5, H-6.1, and H-7 to be filed publicly in this docket to provide information to all parties about any data underlying PG&E's response to Question 16 about its identification and work of the Gray Pine of interest in the decade prior to the Zogg fire. PG&E's Dkt. 1323-8, Exhibits H-5, H-6.1, and H-7 state "Native Excel File Provided to the Court on a Hard Drive."

*Amici* also respectfully recommends this Court order PG&E to provide, under oath in a manner publicly available through this docket, the basis for its statements to the CPUC that implementation of probation conditions 11 and 12 would result in a doubling of PG&E's deenergizations, also known as Public Safety Power Shutoffs (PSPS).

*Amici* also request leave to file the attached brief regarding the Court's OSC Dkt. 1308 proposing amendment of Probation Condition 1 so as to clarify misimpressions of the law reflected in the comments filed by PG&E and what may appear to be misapprehensions of the United States regarding California law relevant to probation condition 1.[1]

---

[1] Please note that Professor Catherine Sandoval is appearing in this matter in her individual capacity as a law professor and as Director of the Center of Insurance Law and Regulation @ Santa Clara University School of Law.

# EXHIBIT 1

**I. AMICI RECOMMENDS THIS COURT ORDER PG&E TO PUBLICLY FILE DKT. 1323-8, EXHIBITS H-5, H-6.1, AND H-7 UNDERLYING PG&E's RESPONSE TO QUESTION 16 ABOUT ITS IDENTIFICATION AND WORK ON THE GRAY PINE OF INTEREST PRIOR TO THE ZOGG FIRE.**

PG&E's responses have been unclear about whether it identified the Gray Pine of interest in the Zogg fire for removal or other hazard abatement work prior to the 2020 Zogg fire. In response to Question 16 about PG&E's identification, documentation, and work orders regarding the Gray Pine of interest in the Zogg fire, in PG&E Dkt. 1337 filed on March 12 and PG&E Dkt. 1323 filed on March 23, 2021,PG&E submitted documents in H-5, H-6.1, and H-7 listed as "Native Excel File Provided to the Court on a Hard Drive."

PG&E 1323 n. 2 states: "Upon request, PG&E can produce all available versions of the "Carr Fire Daily Reports" circulated to the Court."

> **A. Amici respectfully recommend this Court require PG&E to produce PG&E' Dkt. 1323-8, Exhibits H-5, H-6.1, and H-7 to the public through this docket, and provide to the parties, including Amici.**

Amici respectfully recommends this Court determine whether redactions of employee and contractor names are even appropriate for those Exhibits and require expeditious production of those documents to the public. PG&E contends those Exhibits provide information about what PG&E knew about the tree of concern prior to the Zogg fire, and its public filing is a matter of urgent concern to public safety in this criminal probation proceeding.

In response to PG&E Question 16, in PG&E Dkt. 1327, p. 11, lines 5-17, PG&E stated: PG&E has stated (on November 18) that the Gray Pine of interest

may have been identified for removal (but not removed) during restoration efforts following the Carr Fire in 2018, based "on certain records" recently reviewed by PG&E concerning that restoration work. *Please provide copies of those "certain records" and summarize them in a cover sheet.*

**PG&E Response:**

PG&E refers to its March 3, 2021 submission (Dkt. 1323), including Exhibit H of that submission, which attaches records responsive to the Court's request. Exhibit H includes records generated by the CFVM QC inspector regarding his determination to identify the two Gray Pines, including emails about his inspection results, a work order dated August 25, 2018 that lists the two Identified Gray Pines, and versions of a document titled "Carr Fire Daily Report", which PG&E understands to contain data from Mountain G's ArcGIS database, including data concerning the two Identified Gray Pines. (*See, e.g.*, Dkt. 1323-8, Exhibit H-7, "Tree Data" tab, rows 12158, 12159.)

PG&E Dkt. 1323-8, Exhibit H-7 states "Native Excel File Provided to the Court on a Hard Drive."

*Amici respectfully recommends that this Court require PG&E to file in this docket, in a manner available to all, any data underlying PG&E's response to Question 16 about its identification and work of the Gray Pine of interest in the decade prior to the Zogg fire.*

PG&E Dkt. 1323, p. 3-4, filed on March 3, 2020, highlights the importance of Exhibits H-5, H-6.1, and H-7 to analyzing probation conditions appropriate to protect public safety and rehabilitate PG&E, consistent with federal criminal probation standards. PG&E Dkt. 1323, p. 3-4, stated:

> "…the CFVM inspector who performed the QC inspection of the area of interest in August 2018 used the Collector app to identify two Gray Pines that the QC inspector determined fell within the scope of the post-Carr Fire tree work standard (the two "Identified Gray Pines"). (*See* Exhibit B.) The Identified Gray Pines have locations consistent with the location of the Gray

3

Pine from which CAL FIRE appears to have collected sections after the Zogg Fire (the "Gray Pine of interest" or the "Subject Tree").
One of those Gray Pines identified by the CVFM inspector may have been the Subject Tree. However, because there are three other Gray Pines in the immediate vicinity of the Subject Tree, PG&E has not yet been able to confirm whether the Subject Tree was in fact one of the two Identified Gray Pines.

PG&E effectively admits it does not know whether the tree(s) identified in Dkt. 1323, Exhibits H-5, H-6.1, and H-7, are the tree(s) of concern in the Zogg fire.

After almost five months of this Court's inquiry into what PG&E knew and did about the tree of concern prior to the Zogg fire, PG&E's effective admission that it cannot identify the tree of concern and any work it did regarding that tree prior to the Zogg fire underscore the urgent need to order PG&E to improve its record-keeping and information management as suggested by Amici in proposed probation conditions 13-16.

PG&E's manner of submitting these crucial exhibits leaves the parties and the public unable to assess the basis for PG&E's statements, analyze its compliance with this Court's probation conditions, and respond to proposals to protect public safety and rehabilitate PG&E. The prompt public filing of PG&E Dkt. 1323, Exhibits H-5, H-6.1, and H-7 is thus critical to public safety and to achieving the goals of federal criminal probation.

In response to this Court's Question 25, in PG&E Dkt. 1327, pgs. 20-21, PG&E stated the documents in Dkt. No. 1300-1, Exhibit 1, including the discussion of Tree Number 4 or Tree Number 5, do not refer to the tree of concern in the Zogg fire:

> PG&E does not believe that either Tree Number 4 or Tree Number 5 [in PG&E's response at Dkt. No. 1300-1, Exhibit 1] refers to the Gray Pine of interest because, based on the tree location comments provided at Dkt. 1300-1, Exhibit 1, Tree Numbers 4 and 5 are identified as being approximately one-half span to the east of the location of the Gray Pine of interest.

Yet, the documents Dkt. 1323, Exhibits H-5, H-6.1, and H-7, which PG&E states it believes contain information regarding the tree of concern in the Zogg fire, were submitted as a "Native Excel File Provided to the Court on a Hard Drive" and not disclosed publicly as was information about Trees Dkt. 1300-1, Exhibit 1, Tree Numbers 4 and 5.

*Amici respectfully recommends this Court require PG&E to promptly publicly produce Dkt. 1323, Exhibits H-5, H-6.1, and H-7 to all parties including Amici to facilitate analysis of PG&E's compliance with probation conditions and deliberations about whether additional probation conditions are appropriate to protect public safety and rehabilitate PG&E.*

II. *AMICI* RECOMMEND THIS COURT ORDER PG&E TO PROVIDE IN THIS DOCKET, PUBLICLY AND UNDER OATH, ANY ANALYSIS AND DATA IT USED TO ARGUE TO THE CPUC THAT PROPOSED PROBATION CONDITIONS 11 AND 12 WOULD RESULT IN "DOUBLING" PUBLIC SAFETY POWER SHUTOFFS (PSPS)

In the CPUC's March 19, 2021, letter filed as Exhibit 1 to the CPUC's motion to file an Amicus brief, the CPUC stated on pg. 2 that PG&E revealed in conversations with CPUC staff the implementation of proposed probation conditions 1 and 2 would result in "doubling" PSPS.

*Amici respectfully recommend this Court order PG&E to provide any basis for that analysis under oath in a manner publicly available through this docket.*

The CPUC's March 19 letter filed as Exhibit 1, p. 2 to the CPUC's motion to file an Amicus brief stated:

> In the course of recent communications between PG&E and CPUC staff, CPUC staff asked PG&E to assess how its plan for implementing the modified Proposed Condition Nos. 11 and 12 would affect the size, scope, and frequency of PSPS events in its service territory. PG&E provided CPUC staff with estimates, based on historic weather data

5

from 2010 – 2019. PG&E's estimates show that, had PG&E conducted PSPS over that time period, adding the revised Probation Conditions Nos. 11 and 12 as triggers to execute a PSPS event would have more than doubled the total number of PSPS events conducted in PG&E's service territory. [note 1 in that paragraph states: "PG&E only began conducting PSPS events in October 2018."]

PG&E has failed to provide to this Court under oath any analysis of the basis for its estimates of the operational consequences of proposed probation conditions 11 and 12. ***Amici respectfully recommend this Court require PG&E to provide, under oath, in a manner publicly accessible to all, the basis for PG&E's analysis.***

As reported in the CPUC's March 19, 2021, letter filed as Exhibit 1, p. 2, PG&E stated to the CPUC that it estimates a "doubling" of PSPS if probation conditions 11 and 12 were adopted by this Court in PG&E's federal criminal probation. This recounting of PG&E's statement to the CPUC omits any analysis of the underlying cause of such an increase.

- Is PG&E's record-keeping and information management so deficient that PG&E would double PSPS if it took the status of vegetation management into account because it is unable to ascertain the status of its vegetation management compliance?
- Is PG&E's vegetation management so poor that PSPS would double if PG&E took compliance with federal and state vegetation management rules into account?
- Is there another cause or violation(s) of state or federal law that would drive this asserted doubling in PSPS if the status of PG&E's vegetation management were considered?
- What are the barriers to PG&E's compliance with its vegetation management obligations that would reduce the increase from considering this factor?

Focus on the *outcome* of consideration of PG&E's vegetation management on PSPS as contemplated by probation conditions 11 and 12 overlooks PG&E's *conduct* that it believes would *cause* that outcome. It is imperative to public safety and to rehabilitation of PG&E that PG&E disclose the basis for its analysis under oath, and subject that analysis to public scrutiny in this federal criminal probation.

The CPUC's March 19 letter filed as Exhibit 1, p. 4, urges this Court to defer to CPUC and Wildfire Safety jurisdiction to determine when PSPS should be triggered, stating:

> The CPUC again respectfully submits that these kinds of operationalizing decisions that impact PG&E's use of PSPS should be subject to a thorough vetting by the CPUC's Safety and Enforcement Division and Wildfire Safety Division, other experts, local residents and their representatives, tribal governments, and public service and first responder agencies, so that PG&E utilizes PSPS events optimally and only as a measure of last resort.

The CPUC's position does not give adequate deference to the fact that PG&E is a convicted felon subject to federal criminal probation due to its multiple crimes, and repeated violations of its conditions of federal criminal probation. The CPUC, like all parties before this Court, must respect this Court's jurisdiction, authority and power to oversee PG&E's federal criminal probation.

This federal criminal probation process has been critical to creating public access to information about PG&E's conduct that poses safety risks, even after the adoption of PSPS in 2018. PG&E lost the right to rely on civil regulation to address its operations when it was convicted of multiple federal crimes in 2016. Moreover, PG&E has repeatedly violated its probation conditions resulting in the death of at least 84 people while on criminal probation, in widespread property destruction, and in damage to the health of people for hundreds of miles due to wildfire smoke.

***Amici respectfully recommend this Court enter into the record formal findings of PG&E's multiple probation condition violations.***

*Amici* respectfully suggests that this Court require PG&E to provide evidence, under oath, about its conduct that is driving its analysis that PSPS would be doubled if vegetation management were considered. To protect public safety and rehabilitate recidivist felon PG&E, this Court should adopt probation conditions that address the *causes* of PG&E's risks of death and destruction to the community, as well as its consequences. ***Amici* respectfully suggest this Court order PG&E to provide information under oath about its analysis regarding any probation conditions, rather than relying on PG&E's reports to the CPUC unsupported by any analysis, testimony under oath, or documentation.**

### III. PUBLIC RESOURCES CODE 4293 MUST BE ANALYZED WITHIN THE CONTEXT OF CALIFORNIA PUBLIC UTILITIES CODE 451 AND GENERAL ORDER 95

*Amici* respectfully submit this brief regarding this Court's Order to Show Cause Why Further Conditions of Probations Should Not be Imposed (Docket No. 1308) to correct what appear to be misapprehensions of the law relevant to proposed probation condition 1. *Amici* believe this brief will help the Court assess the filings of PG&E, the United States, CPUC and CalFire regarding the proposal to amend Probation No. 1 in Docket No. 1308.

OSC Docket No. 1308 ordered PG&E to show cause why the further Condition of Probation No. 1 should not be amended to add the following (Dkt. No. 1040):

> PG&E shall identify and remove any tree or portion thereof leaning toward any distribution line if it may contact the line from the side or fall on the line and must do so *regardless of the health of the tree*. PG&E shall so affirmatively instruct in writing all its personnel and contractors and incorporate the same in its training and instruction materials.

The Court proposed the amendment to Probation Condition 1 in OSC 1308 to address the Court's suspicion "that PG&E has been narrowly interpreting Section 4293 of the California Public Resources Code to exclude any healthy tree from Section 4293's scope on hazard trees."

California Resources Code 4293 must be analyzed within the context of other applicable laws including California Public Utilities Code (CA PU Code) 451 and California Public Utilities Commission (CPUC) General Order (GO) 95. CPUC GO 95, Guidelines to Rule 35, address in part the relationship between that order and Resources Code 4293:

> The following are guidelines to Rule 35.
>
> The radial clearances shown below are recommended minimum clearances that should be established, at time of trimming, between the vegetation and the energized conductors and associated live parts where practicable. Reasonable vegetation management practices may make it advantageous for the purposes of public safety or service reliability to obtain greater clearances than those listed below to ensure compliance until the next scheduled maintenance. Each utility may determine and apply additional appropriate clearances beyond clearances listed below, which take into consideration various factors, including: line operating voltage, length of span, line sag, planned maintenance cycles, location of vegetation within the span, species type, experience with particular species, vegetation growth rate and characteristics, vegetation management standards and best practices, local climate, elevation, fire risk, and vegetation trimming requirements that are applicable to State Responsibility Area lands pursuant to Public Resources Code Sections 4102 and 4293.[2]

GO 95 emphasizes that it contains *recommended minimum clearance*s between the vegetation, energized conductors, and associated live parts of electric

---

[2] CPUC, General Order 95, Appendix E, p. E-2 (May 2018), https://www.cpuc.ca.gov/gos/GO95/go_95_appendix_e-guidlines.html

9

facilities. (GO 95, Appendix E, at E-2, *emphasis added*). The guidelines recognize that "*Reasonable vegetation management* practices may make it advantageous for the purposes of *public safety*" to obtain greater clearances than the minimum or take other characteristics into account in vegetation management. (*Id.*, emphasis added).

GO 95 describes factors to be considered including, but not limited to "location of vegetation within the span, species type, experience with particular species, vegetation growth rate and characteristics, vegetation management standards and best practices, local climate, elevation, fire risk" consistent with Public Resources Code Sections 4102 and 4293. (*Id.*) Considering tree lean, species, height, and likelihood that the tree will fall on an energized conductor or other facilities are factors squarely within GO 95, Rule 35, Appendix E, consistent with Public Resources Code Sections 4102 and 4293.

Section 4293 of the Public Resources Code governs "any electrical transmission or distribution line upon any mountainous land, or in forest-covered land, brush-covered land, or grass-covered land." Public Resources Code Section 4283 applies to "State responsibility areas" as described in Section 4102 of the Public Resources Code to mean "areas of the state in which the financial responsibility of preventing and suppressing fires has been determined by the board pursuant to Section 4125, to be primarily the responsibility of the state."

Section 4293 of the Public Resources Code requires electric utilities to conduct vegetation management in state responsibility areas including:

> Dead trees, old decadent or rotten trees, trees weakened by decay or disease and trees or portions thereof that are leaning toward the line which may contact the line from the side or may fall on the line shall be felled, cut, or trimmed so as to remove such hazard.

This code specifically addresses "trees or portions thereof that are leaning toward the line which may contact the line.

Public Resources Code 4293 uses the conjunctive *and* to distinguish the requirement to fell, cut, or trim leaning trees from those requirements as applied to dead, old decadent or rotten trees, and trees weakened by decay or disease. This requirement regarding leaning trees follows the sections of Public Resources Code 4293 that prescribe minimum distances for clearance between vegetation, conductors, and electric facilities. The organization of this statue indicates that Public Resources Code 4293's mandate to trim diseased, dead or leaning trees is not limited by, but in addition to, minimum clearance provisions listed earlier.

CalFire determined that PG&E violated Public Resources Code 4293, for the McCourtney, Lobo, Honey fires, part of the 2017 Wildfire siege in California's Wine County. CalFire noted that Public Resources Code 4293 "requires adequate clearance between trees and power lines," and referred the investigation into McCourtney, Lobo, Honey fires to county District Attorney's offices for review.[3] CalFire's referral focused on the requirement for "adequate clearance between trees and power lines," without reference to whether the trees were dead, diseased or in a state of delay.

The Public Resources Code complements, but does not displace or supersede, the California Public Utilities Code. CA PU Code 451 and GO 95 apply to *all* of PG&E's lines, facilities, and operations, including those in areas subject to Public Resources Code 4293. GO 95, Rule 12, describes the Applicability of Rules, as applying "to all overhead electrical supply and communication facilities that come within the jurisdiction of this Commission, located outside of buildings." GO 95, Rule 35, states that this rule's "requirements apply to all overhead electrical supply

---

[3] CAL FIRE, *CAL FIRE Investigators Determine Cause of Four Wildfires in Butte and Nevada Counties*, May 25, 2018, https://www.wildfirevictims.com/wp-content/uploads/2018/06/CAL-FIRE-Investigators-Determine-Cause-for-Four-Wildfires.pdf

and communication facilities that are covered by this General Order, including facilities on lands owned and maintained by California state and local agencies. Thus, even in areas where Public Resources Code 4293 applies, GO 95 and the California Public Utilities Code still apply. This Court and utilities such as PG&E must keep an eye on the requirements that apply to electric utilities under CA PU Code 451 and GO 95 in interpretating the utility's responsibility under Public Resources Code 4293.

GO 95, Rule 13, adds regarding the Scope of Rules "(t)hese rules are not intended as complete construction specifications, but embody only the requirements which are most important from the standpoint of safety and service. Construction shall be according to accepted good practice for the given local conditions in all particulars not specified in the rules."

GO 95 is a particularization of a utility's duties under the California law, including the California Public Utilities Code. The Saving Clause, GO 95, Rule 16 specifies that "(c)ompliance with these rules is not intended to relieve a utility from other statutory requirements not specifically covered by these rules." Thus, a utility can comply with the rules of GO 95, but still be in violation of the standards under California law including California Public Utilities Code 451.

Both GO 95 and CA PU Code 451 use safety as the anchor for utility operational requirements. GO 95, Rule 31.1 provides that:

> A supply or communications company is in compliance with this rule if it designs, constructs, and maintains a facility in accordance with the particulars specified in General Order 95, except that if an intended use or known local conditions require a higher standard than the particulars specified in General Order 95 to enable the furnishing of safe, proper, and adequate service, the company shall follow the higher standard.

GO 95, Rule 11, Purpose of Rules, states that its purpose "is to formulate, for the State of California, requirements for overhead line design, construction, and maintenance, the application of which will ensure adequate service and secure safety

to persons engaged in the construction, maintenance, operation or use of overhead lines and to the public in general."

Likewise, GO 95, Rule 35 provides that "(w)here overhead conductors traverse trees and vegetation, safety and reliability of service demand that certain vegetation management activities be performed in order to establish necessary and reasonable clearances, the minimum clearances set forth in Table 1, Cases 13 and 14, measured between line conductors and vegetation under normal conditions shall be maintained. (Also see Appendix E for tree trimming guidelines.) Safe, proper, and adequate service that protects the public is the standard to which utilities must adhere.

California Pub. Util. Code § 451 makes safety of the public, and a utility's customers and employees a requirement of every utility operating in California under CPUC jurisdiction. California Pub. Util. Code § 451 requires every public utility "to furnish and maintain such adequate, efficient, just, and reasonable service, instrumentalities, equipment, and facilities … as are necessary to promote the safety, health, comfort, and convenience of its patrons, employees, and the public."

In the CPUC Decision regarding the Wine Country Fires, CPUC Decision 20-05-019, May 7, 2020, the CPUC emphasized its findings of multiple violations of CA PU Code 451 in addition to GO 95 violations. For the 2017 Wine Country Fires and the 2018 Camp Fire, violations found included CA Pub. Util. Code § 451 – "Failure to maintain an effective inspection and maintenance program to identify and correct hazardous conditions on its transmission lines in order to furnish and maintain service and facilities, as are necessary to promote the safety and health of its patrons and the public." (CPUC Decision 20-05-019, at 13). CPUC Decision 20-05-019 Findings of Fact No. 4 notes that "(w)ith respect to the 2018 Camp Fire, SED found 12 violations of GOs 95 and 165, Resolution E-4184, and Public Utilities Code § 451." Failure to meet the safety standards of CA PU Code 451 violate CPUC rules, independent of whether a utility also violated GO 95. Thus,

analysis of PG&E's duties to comply with California law including Public Resources Code 4293 must be analyzed within the context of PG&E's safety duties under CA PU Code 451 and GO 95.

### IV. PG&E'S BRIGHT-LINE PROPOSALS DO NOT EXCEED THE REQUIREMENTS OF CALIFORNIA LAW, AND FAIL TO RECOGNIZE THE PRIMACY OF AN ELECTRIC UTILITY'S DUTY TO OPERATE SAFELY

The United States Attorney's Office expressed its concern about the amendment to proposed probation condition 1 stating:

> On the one hand, if the proposed amendment simply restated established California law, it would be unnecessary. Condition No. 1 already requires PG&E to comply with all California vegetation management laws and regulations, including section 4293. On the other hand, if the proposed amendment exceeds the requirements of California law, it would implicate numerous public policy considerations that have not been fully explored on the record, including but not limited to (1) balancing the risks of wildfires with potential environmental concerns associated with cutting large amounts of trees, (2) choosing between costs and benefits associated with various wildfire risk management options such as vegetation management, public safety power shutoffs, and other infrastructure improvements such as undergrounding or insulating lines, and (3) prioritizing mitigation plans based on assessments of risk.

Respectfully, the concern of the U.S. Attorney's Office that amendments to proposed probation condition 1 may *exceed* California law do not adequately reflect the statutory requirement for public utilities to act safely. Likewise, PG&E's proposal to limit probation condition 1 to bright-line rules is inconsistent with the safety requirements enshrined in California law and CPUC rules, decisions, and orders.

/ / /

/ / /

/ / /

/ / /

### V. PUBLIC RESOURCES CODE 4293 MUST BE INTERPRETED CONSISTENT WITH THE SAFETY REQUIREMENTS APPLIED TO ELECTRIC UTILITIES

In response to OSC 1330, PG&E proposed a bright-line approach to compliance with Resources Code 4283. PG&E characterized this proposal as one "that would go beyond what is required under state law," proposing:

> PG&E will institute a program to abate all Gray Pines tall enough to fall into a distribution line in a Tier 2 or Tier 3 HFTD that lean more than 20 degrees towards the line in four regions (Bay Area, Central Valley, North Valley and Sierra) and abate all Tanoaks tall enough to fall into a distribution line in a Tier 2 or Tier 3 HFTD that lean more than 20 degrees towards the line in three regions (Bay Area, Central Coast and North Coast). These trees will be targeted, regardless of health, because data shows that these particular species may present higher risk of falling into the line in these particular regions.
> (PG&E 1330, at 2-3).

PG&E's attempt the characterize its proposal as going beyond what is required under California law is inaccurate. California law requires that PG&E operate in a manner which is safe, consistent with CA PU Code 451 and General Order 95, and to remove hazards to its electric lines under Resources Code 4283.

PG&E's response refers to data it used to develop this proposal, but does not attach that information. PG&E contemplates that Gray Pines and TanOaks "will be targeted, regardless of health, because data shows that these particular species may present higher risk of falling into the line in these particular regions." (*Id. at 3*).

***Amici respectfully recommend this Court require PG&E to submit the data underlying its assessment of this proposal. In addition, consistent with Amici's prior recommendations, Amici respectfully recommend that the Court order PG&E to assess the species and types of trees that have posed hazards to its lines and submit that analysis to this Court.***

Regarding the proposal to Amend Probation Condition 1, the United States notes that "PG&E then proposes, as long as the CPUC or CAL FIRE do not object, that it implement the amended condition with a "bright-line approach" that would abate all Gray Pines and/or Tanoaks in certain high fire threat regions that lean more than 20 degrees towards a line and are tall enough to fall on the line." (Dkt. 1334, at 2 (citing PG&E Dkt. 1330 at 2)). The CPUC and the California Department of Forestry and Fire Protection ("CAL FIRE") respectfully urge the Court to retain Condition of Probation No. 1 "unchanged and avoid adopting bright-line vegetation management rules such as the one PG&E has proposed." (CPUC and CalFire, Dkt. 1335, at 5).

*Amici* share the CPUC and CalFire's concerns that the bright line rule PG&E proposes limits PG&E's duties without sufficient attention to the primacy of its responsibility to operate in a manner that protects public safety. The California Public Utilities Code and the California Resources Code both make safety and removing hazards to electric lines the bedrock standards which governs over any "bright line rules."

CALFIRE and the CPUC also argued that "effective wildfire risk reduction will be best achieved by considering changes to PG&E's EVM [Enhanced Vegetation Management] program as part of the Wildfire Mitigation Process." (*Id.*) *Amici* have previously expressed that this Court is not required to defer to the CPUC's Wildfire Mitigation Process. (*Amici* Brief, Dkt No. 1333, at 7-8). The CPUC's evaluation of PG&E's 2021 Wildfire Mitigation Plan will likely not be completed until mid-summer 2021. That process may be complicated by transmogrification of the CPUC's Wildfire Safety Division into the Office of Energy Infrastructure Safety, to be located in the California Natural Resources Agency, effective July 2021. With PG&E's probation scheduled to end in January 2022, waiting for CPUC and decision-making by the CPUC or Office of Energy

Infrastructure Safety about the Wildfire Mitigation Plan will leave little time to prepare for the 2021 wildfire season.

## VI.     CONCLUSION

*Amici* respectfully recommend this Court require PG&E to file in this docket, in a manner available to all, any data underlying PG&E's response to Question 16 about its identification and work of the Gray Pine of interest in the decade prior to the Zogg fire including PG&E' Dkt. 1323-8, Exhibits H-5, H-6.1, and H-7.

*Amici* also respectfully recommend this Court order PG&E to provide, under oath in a manner publicly available through this docket, the basis for its statements to the CPUC that implementation of probation conditions 11 and 12 would result in a doubling of PG&E's deenergizations or PSPS. Focus on the asserted and unsupported likely outcome of consideration of PG&E's vegetation management on PSPS as contemplated by probation conditions 11 and 12 overlooks PG&E's *conduct* that it believes would *cause* that outcome. This Court should not allow PG&E to mask its unsafe conduct through statements to the CPUC not made under oath to this Court in public. Such evidence is necessary to assess whether current probation conditions are appropriate or should be modified to protect public safety from recidivist felon PG&E, and to rehabilitate PG&E, consistent with the goals of federal criminal probation.

*Amici* recommend this Court reject PG&E's "bright-line" proposal regarding Probation Condition 1. PG&E's proposal appears to unlawfully attempt to limit PG&E's responsibilities to comply with the safety and hazard abatement standards of CA PU Code 451, General Order 95, and California Resources Code 4283.

Respectfully submitted,

CATHERINE J. KISSEE-SANDOVAL
Associate Professor
Santa Clara University School of Law

Dated:  March 22, 2021                    */s/Catherine J.K. Sandoval*, Esq.,

17

|  |  |
|---|---|
|  | AGUIRRE & SEVERSON, LLP |
| Dated:  March 22, 2021 | */s/Maria C. Severson* |
|  | Maria C. Severson, Esq., |
|  | Attorneys for *Amici* Petitioners |
|  | Alex Cannara and Gene A. Nelson |