Michael J. Aguirre, SBN 060402, maguirre@amslawyers.com
Maria C. Severson, Esq., SBN 173967, mseverson@amslawyers.com
**AGUIRRE & SEVERSON, LLP**,
501 West Broadway, Ste. 1050, San Diego, CA 92101 (619) 876-5364

Catherine Janet Kissee-Sandoval, SBN 153839, Csandoval@scu.edu
**Director, Institute for Insurance Law, Santa Clara University School of Law**
500 El Camino Real, Santa Clara, CA 95053-0421 (408) 551-1902

(Attorneys for *Amici* Alex Cannara and Gene A. Nelson)

April 26, 2021

The Honorable William Alsup
United States District Court Judge, USDC for the Northern District of California

    Re: Proposed Probation Conditions 11 and 12

Dear Honorable Judge Alsup:

    *Amici* Alex Cannara and Gene Nelson, PG&E customers concerned about PG&E's poor public safety record, submit this letter concerning proposed Probation Conditions 11 and 12 (PC 11 and 12), which includes a response to some of PG&E's comments at the California Public Utilities Commission (CPUC) PG&E Tree Overstrike Workshop Proposed Implementation of PC 11 and 12 held on April 20, 2021. The CPUC filed comments with this Court on PC 11 and 12 following its workshop, nearly a week in advance of receiving public comments it invited on the workshop. PG&E's workshop comments were neither sworn testimony nor subject to cross-examination. If given the opportunity to ask questions, *Amici* would have asked PG&E about the methodology of its revised study applying its tree overstrike model to the past eleven years.

    *Amici* herein respectfully recommend questions this Court should ask PG&E regarding its tree overstrike analysis and methodology:

    1) When did PG&E first analyze tree overstrike risk on a system-wide basis?
    2) Prior to consideration of PC 11 and 12 in this docket, has PG&E analyzed or addressed tree overstrike risk in a systemic fashion? If so please describe. If no, why not?
    3) Of the overstrike trees PG&E's LiDAR and aerial trees identified, how many are leaning over the line or likely to strike PG&E facilities? How many are of tree types PG&E has identified as likely hazards such as Grey Pines, Tan Oaks, or Eucalyptus?
    4) PG&E stated at the CPUC April 20, 2021, workshop that it has learned from prior PSPS and tree strike incidents. Has PG&E published this analysis? The Court should order PG&E to submit this analysis to the Court and make it available to all parties, and direct PG&E to write a report of this analysis if PG&E has not already done so.

5) The Court should order PG&E to describe the methodology for its 11-year analysis in Dkt. 1380 applying PC 11 and 12 to prior years. What factors did PG&E construct as variables or constants in that analysis? PG&E stated at the CPUC April 20, 2021, workshop that it considered eleven years of meteorology data in that analysis. Did PG&E apply past meteorology conditions to past or current vegetation management practices? Does PG&E's analysis treat vegetation management conditions as a variable or a constant, and if a constant, measured by which year? Which PG&E analysis of PC 11 and 12 best predicts the likely results of the application of those conditions to the 2021 fire season? Is PG&E's 2020 analysis, its 2019 analysis, or its model of any prior year or years the best predictor of the application of PC 11 and 12 to 2021?

*Amici* recommend this Court reject PG&E and the CPUC's proposed edits adding a CPUC role in PC 11 regarding PG&E's consideration of P1 and P2 trees. The CPUC stated in Dkt. 1380 it has not adopted any orders or guidelines regarding the factors utilities should consider in determining whether to initiate PSPS, as "the CPUC has not, to date, "approved" specific models, methodologies, criteria or assumptions to be used in PSPS decision-making. These matters are the responsibility of utility operators who must, by law, operate their electric systems safely and reliably, subject to the CPUC's regulatory oversight and enforcement."

PG&E's proposal in Dkt. 1369,"[s]ubject to the approval of the California Public Utilities Commission," concerning PG&E's consideration of "the existence of all outstanding vegetation management work tagged 'Priority 1' or 'Priority 2' within PG&E's service territory that is subject to potential de-energizations and which is forecast to satisfy PG&E's minimum fire potential conditions," is inconsistent with the CPUC's role in PSPS. As the CPUC's comments in Dkt. 1380 stated, the CPUC has left the factors considered by utilities in deenergization decisions up to utilities such as PG&E. The CPUC's proposal in Dkt. 1380 that such decisions should be "[s]ubject to the **approval oversight, and direction if needed,** of the California Public Utilities Commission," is likewise inconsistent with the CPUC's observation in Dkt. 1380 that it has not issued guidelines on PSPS criteria. Neither does the CPUC exercise oversight approval, nor does it provide direction, if needed, about factors utilities should consider in PSPS. The CPUC offers no explanation as to why it proposes to play this role solely for PC 11 and for consideration of P1 and P2 trees and overstrike trees.

In Dkt. 1313, pp. 30-31, *Amici* suggested adding to PC 11 a reference to state and federal legal standards and rules, ordering PG&E to consider "the existence of all outstanding vegetation management work tagged 'Priority 1' or Priority 2' *and work that would be classified under CPUC General Order 95, Rule 18 as Level 1 or Level 2 that require correction within 12 months*, as well as compliance with CA PU Codes 451, 8386(a), Public Resources Code Section 4293, GO 95, FERC FAC-003-4, within PG&E's service territory that is subject to potential de-energizations." This proposal underscores PG&E's duties to comply with applicable laws in making deenergization decisions without creating a novel role for CPUC oversight inconsistent with CPUC practice, and the lack of CPUC guidelines for PSPS considerations.

The CPUC's standards, including General Order 451 and Pub. Util. Code § 8389, codify requirements for utilities to operate safely. Utilities must comply with those standards and duties, consistent with their franchise to operate electric service, regardless of whether the CPUC adopts

a specific rule in General Order 95 or any other decision requiring such action to operate safely. Accordingly, trimming vegetation to the minimum clearance rules under GO 95 does not indicate that a utility has complied with its duties to operate safely under the California Public Utilities Code. Proposed PC 11 and 12 *particularize* the safety requirements California and federal law impose on PG&E. Those proposals, as modified by *Amici's* suggestions in Dkt. 1313, are appropriate to protect public safety and rehabilitate PG&E through federal criminal probation.

*Amici* reiterate their suggestions about PC 11 and 12 in Dkt. 1313, as well as their recommendations to adopt proposed PC 13-16. *Amici* recommend that PG&E be ordered to consider tree species and characteristics of vegetation that may contact its lines or facilities in its analysis of potential tree overstrike and safety hazards. PG&E has previously identified specifies associated with line and facility strikes such as Grey Pine trees and Tan Oaks and should use this data in its vegetation management and PSPS decisions. Likewise, PG&E should deploy its ground crew line survey data to complement its aerial and LiDAR analysis to determine whether vegetation near lines, including leaning or overstrike trees, pose a safety hazard.

To address the CPUC's concerns about the need to mitigate the consequences of PSPS to vulnerable populations, *Amici* suggest this Court add to PC 11 and 12:

> **(1)** By June 1, PG&E shall publish to the public a list of the counties where it anticipates application of probation conditions 11 and 12 may trigger additional power shutoffs. PG&E shall analyze which circuits are most vulnerable to tree overstrike potential and submit that circuit list with map locations to this Court, *Amici*, the Monitor, and the U.S. DOJ, and provide that list to the CPUC, CalFire, local, and tribal governments to support planning for potential power shutoffs as PG&E continues its vegetation management, system hardening, and other work.
> **(2)** PG&E shall coordinate with the CPUC, CalFire, CalOES, local and tribal governments, and the Monitor to determine what resources, including but not limited to, power backup, transportation, and other resources, may be needed during PSPS PG&E decides to trigger under probation conditions 11 and 12. PG&E shall pay for these mitigation resources when it triggers power shutoffs under probation conditions 11 and 12 for the duration of PG&E's federal criminal probation.

*Amici* respectfully recommend this Court promptly adopt PC 11 and 12 with the additions and edits suggested herein and in Dkt. 1313. *Amici* thank the Court for considering these suggestions offered to protect public safety from recidivist felon PG&E, for the purpose of rehabilitating PG&E and ensuring the utility prioritizes public safety. As the 2021 California fire season quickly approaches in a projected substantial drought year, these proposed conditions, PG&E's poor safety record, and extensive criminal history underscore the urgency of ordering PG&E to consider the factors elaborated in PC 11 and 12, as amended by *Amici*'s comments.

> With respect,
> /s/ *Catherine Sandoval,* /s/ *Michael J. Aguirre and* /s/ *Maria C. Severson*
> Attorneys for *Amici*, Alex Cannara and Gene Nelson