UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff,

v.

PACIFIC GAS AND ELECTRIC COMPANY,

        Defendant.

No. CR 14-00175 WHA

**FURTHER REQUEST FOR RESPONSES RE DIXIE FIRE**

    PG&E shall please answer the following further questions concerning the Dixie Fire by **NOON ON AUGUST 31**.

    20. Another thing that does not add up is that the line disruption was recorded at 6:48 a.m. on July 13 but, ten hours later, when the troubleman saw the fire (after 4:40 p.m.), the fire was only 600 or 800 square feet in size. If the fire had begun at or about when the disruption occurred, the fire would have grown many times larger and faster than that. What accounts for this delay?

    21. What time did the troubleman, evidently using his binoculars, first see the blown fuse hanging down? Where exactly was he?

22. No one saw any fire at all until after the troubleman arrived at the site. What, if anything, did the troubleman do upon his arrival at the site that might have accidentally caused the fire?

23. What other sources of ignition were in the area? Could the blown fuse itself have sparked the fire? What evidence or observations would so indicate?

24. Your July 28 submission states that the troubleman went to the pole to replace the blown fuse, but is vague as to whether he did, in fact, replace it. Did the troubleman replace the blown fuse or try to, even temporarily? If he did, wouldn't that have allowed power to flow in that line (since the circuit was reported as otherwise having a "good load") and pose a risk of arcing where the tree pushed the lines together?

25. Precisely when in the sequence did the troubleman see the tree on the line? Wasn't it dangerous to replace the blown fuse while the tree was still leaning on the line (and the circuit still had a "good load")? Did he inspect the line (and the leaning tree) before working on the fuses?

26. Did the troubleman hear any arcing on the line?

27. When the troubleman replaced the blown fuse (if he did), how did it react upon being installed? Blow again? Did it emit a smell? Crackle? All fuses from the site should be preserved as evidence.

28. Identify by pole number the pole that corresponded with fuse 17733. From the blown fuse, how far away was the tree in question and how far away was the oval-shaped fire? Couldn't the downed tree be seen from the ground standing by the pole?

29. How close to the distribution line and downed tree was the oval-shaped fire when the troubleman first saw it, and what relationship did it have to them?

30. Did the PG&E sensors record any surge or return of power, even momentarily, on any of the lines in question on July 13 other than the 6:48 a.m. event? If so, set forth the details of any return of power or surges, regardless of how brief.

31. When the troubleman was fighting the fire, to what extent, by his observation, had the flames gotten into the brush, into the trees, versus remaining in the grass?

32. Was there any burned area other than the oval-shaped fire that the troubleman saw? For example, was there any burned area leading from under the tree on the line to the area then actively burning, indicating a path of fire?

33. What were the wind conditions at the site in question during that day?

34. Provide a sketch map of the site, approximately to scale, that shows the relevant span(s), the poles (with identification numbers), the blown fuse, the downed tree, the oval-shaped fire of about 600 to 800 square feet, the road, and any other item of relevance. Show true north. Show approximate distances, such as the length of the span.

35. Provide all recordings, statements, emails, and reports by the troubleman or anyone else setting forth his recollection that have not already been provided.

36. Finally, at what date and time did the drone interfere with the Dixie Fire suppression efforts?

PG&E shall produce the troubleman in Court in person on **September 13 at 2 p.m.** for examination by counsel and the judge.

**IT IS SO ORDERED.**

Dated: August 18, 2021.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

3