JENNER & BLOCK LLP
   Reid J. Schar (*pro hac vice*)
   RSchar@jenner.com
   353 N. Clark Street
   Chicago, IL 60654-3456
Telephone: +1 312 222 9350
Facsimile: +1 312 527 0484

CLARENCE DYER & COHEN LLP
   Kate Dyer (Bar No. 171891)
   kdyer@clarencedyer.com
   899 Ellis Street
   San Francisco, CA 94109-7807
Telephone: +1 415 749 1800
Facsimile: +1 415 749 1694

CRAVATH, SWAINE & MOORE LLP
   Kevin J. Orsini (*pro hac vice*)
   korsini@cravath.com
   825 Eighth Avenue
   New York, NY 10019
Telephone: +1 212 474 1000
Facsimile: +1 212 474 3700

Attorneys for Defendant PACIFIC GAS AND ELECTRIC
COMPANY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 14-CR-00175-WHA |
| Plaintiff, | **PG&E'S 28-DAY REPORT FOR AUGUST 17-19, 2021 PSPS EVENT** |
| v. | Judge:  Hon. William Alsup |
| PACIFIC GAS AND ELECTRIC COMPANY, | |
| Defendant. | |

Defendant Pacific Gas and Electric Company ("PG&E") respectfully submits this 28-day report for the August 17-19, 2021 Public Safety Power Shutoff ("PSPS") event (the "PSPS Event") pursuant to the Court's April 29, 2021 order.  (Dkt. 1386.)

The information provided in this report is based on PG&E records reviewed as of the date of this filing.  The information is preliminary and subject to change and further validation.

*1.  How many circuits were turned off in the PSPS.*

PG&E pre-emptively de-energized 96 distribution circuits as part of the PSPS Event.[1]

*2.  How many of such circuits had limbs and/or trees blown or fallen onto the lines (as determined in the post-storm inspection).*

As part of PG&E's post-event patrols prior to re-energizing distribution circuits, PG&E identifies damage to PG&E's assets that require repair or replacement and classifies those conditions as an instance of "damage".  PG&E's records reflect that, during the post-event patrols of the 96 de-energized distribution circuits, conducted following the PSPS Event, such patrols identified two instances of damages attributable to vegetation.[2]

PG&E's post-event patrols also identify conditions that, in the judgment of the personnel conducting the patrol, might have posed an electrical arcing risk or a risk of ignition had the circuit been energized even though there was no damage to PG&E equipment necessitating repair, and classifies those conditions as "hazards".  PG&E's records reflect that, during the post-

---

[1] Because PG&E understands the scope of the Court's April 29, 2021 order to be focused on distribution circuits, the information in this report relates only to distribution circuits.  PG&E notes that there were also three transmission circuits de-energized related to the August 17-19, 2021 PSPS event.  No damages or hazards were recorded during post-event patrols on these transmission circuits.  Of the transmission circuits in an HFTD which were not pre-emptively de-energized as part of the PSPS Event, PG&E's records reflect that one outage and no ignitions attributable to vegetation occurred between the start of the PSPS event of 1700 PDT on August 17 and the final weather "all clear" of 0517 PDT on August 19.

[2] PG&E's records reflect that the post-event patrols identified four non-vegetation-related damages.

[[DMS:5707960v9:09/15/2021--11:27 PM]]

event patrols of the 96 de-energized distribution circuits, conducted following the PSPS Event, such

patrols identified three instances of hazards that were attributable to vegetation.[3]

> 3.  *How many of such strikes would, in the judgment of PG&E, have*
> *started a fire (regardless of size) had the circuit been energized at the*
> *time of the strike.*

While PG&E is unable to definitively determine whether any of the conditions

identified in response to Question 2 would have started a fire, PG&E's post-event reporting patrols

make determinations with respect to whether a given condition posed a potential risk of electrical

arcing or ignition.  PG&E's records reflect that, of the five instances of damages and hazards

identified in response to Question 2, four such instances may have posed a risk of electrical arcing or

ignition had PG&E not de-energized the circuit as part of the PSPS event.

> 4.  *How many circuits left energized had limbs and/or trees blown or*
> *fallen onto the lines by the storm without causing a fire.*

Of the circuits in an HFTD which were not pre-emptively de-energized as part of the

PSPS Event, PG&E's ordinary course records reflect six sustained outages attributable to vegetation

on six distribution circuits during the time period between the start of the PSPS event of 1700 PDT

on August 17 and the final weather "all clear" of 0517 PDT on August 19 that were not associated

with an ignition.[4]

> 5.  *How many circuits left energized with strikes that in fact resulted in*
> *fires (regardless of size).*

Of the circuits in an HFTD which were not pre-emptively de-energized as part of the

PSPS Event because they were not forecast to meet PG&E's PSPS criteria, PG&E's ordinary course

records reflect that zero ignitions were attributable to vegetation making contact with an energized

---

[3] PG&E's records reflect that the post-event patrols identified one non-vegetation-related hazard.

[4] PG&E's response here does not include outages occurring below the distribution level, *i.e.*, on secondary lines or service drops which service as few as one customer.  PG&E does not in the usual course identify whether each such outage is attributable to vegetation, as opposed to contact with other foreign objects.

[[DMS:5707960v9:09/15/2021--11:27 PM]]

Case 3:14-cr-00175-WHA   Document 1473   Filed 09/16/21   Page 4 of 10

distribution circuit during the time period between the start of the PSPS event of 1700 PDT on August 17 and the final weather "all clear" of 0517 PDT on August 19.

> *The above five categories should each be further broken down by those circuits that were in substantial compliance with section 4293 as well as PG&E's Wildfire Mitigation Plan.*

To maintain compliance with Section 4293 and other regulatory requirements, all of PG&E's distribution circuits in HFTDs are scheduled for routine vegetation management and CEMA patrols (and, as necessary, post-fire restoration patrols). Those patrols generate orders or tags for work that are then worked according to their prescribed timelines, which depend on the priority of tree work identified by the inspector. In Appendix A and Appendix B, PG&E provides the information responsive to Questions 1-5 on a circuit-by-circuit basis, and for each listed circuit, includes the number of vegetation management tags that PG&E's records indicate had been created prior to August 17, 2021 as part of PG&E's routine vegetation management program, CEMA program or post-fire restoration program, and not marked as complete by August 17, 2021.[5]

---

[5] Vegetation work that was outstanding at this time related to other programs, such as EVM, system hardening and reliability patrols, have been excluded from Appendices A and B. Vegetation work called for by those programs is either not aimed at section 4293 compliance or goes beyond what is required for section 4293 compliance.

4

PG&E'S 28-DAY REPORT FOR AUGUST 17-19, 2021 PSPS EVENT
Case No. 14-CR-00175-WHA
[[DMS:5707960v9:09/15/2021--11:27 PM]]

1   Dated:  September 16, 2021

2                                                          Respectfully Submitted,

3                                                          JENNER & BLOCK LLP

4                                                          By:    /s/ Reid J. Schar
                                                                  Reid J. Schar (*pro hac vice*)

5

6                                                          CRAVATH, SWAINE & MOORE LLP

7                                                          By:    /s/ Kevin J. Orsini
                                                                  Kevin J. Orsini (*pro hac vice*)

8

9                                                          CLARENCE DYER & COHEN LLP

10

11                                                         By:    /s/ Kate Dyer
                                                                  Kate Dyer (Bar No. 171891)

12

13                                                         Attorneys for Defendant PACIFIC GAS AND
                                                           ELECTRIC COMPANY

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[[DMS:5707960v9:09/15/2021--11:27 PM]]

**Appendix A[6]**

Distribution Circuits De-Energized as Part of the August 17-19, 2021 PSPS Event

| Circuit | Circuit Miles[7] | Number of Vegetation-Related | | | Number of Outstanding Vegetation Tags | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | Damages | Hazards | Damages and Hazards with Ignition Potential | Priority 1[8] | Priority 2[9] | Other[10] |
| ANDERSON 1101 | 54 | 1 | - | 1 | - | 3 | 122 |
| ANDERSON 1103 | 57 | - | - | - | - | - | 17 |
| ANTLER 1101 | 90 | - | - | - | - | - | 104 |
| ARBUCKLE 1101 | 59 | - | - | - | - | - | - |
| ARBUCKLE 1104 | 138 | - | - | - | - | - | - |
| BIG BEND 1101 | 77 | - | - | - | - | - | 304 |
| BUCKS CREEK 1103 | 36 | - | - | - | - | - | 147 |
| BURNEY 1101 | 118 | - | - | - | - | 2 | 1,046 |
| BUTTE 1105 | 70 | - | - | - | - | 4 | 488 |
| CALISTOGA 1101 | 202 | - | - | - | - | 28 | 414 |
| CALISTOGA 1102 | 112 | - | - | - | - | 5 | 96 |
| CALPINE 1144 | 32 | - | - | - | - | - | - |
| CALPINE 1146 | 6 | - | - | - | - | - | - |
| CEDAR CREEK 1101 | 142 | - | - | - | - | 4 | 226 |
| CLARK ROAD 1102 | 197 | - | - | - | - | - | 91 |
| CLOVERDALE 1102 | 198 | - | - | - | - | 1 | 18 |
| CORNING 1101 | 243 | - | - | - | - | 1 | 21 |
| CORNING 1102 | 280 | - | - | - | - | - | 41 |

---

[6] Please refer to the body of this filing for an explanation of the values included herein.

[7] The circuit miles are the total miles for the circuit listed.

[8] Priority 1 tags are used to identify vegetation that is (1) in contact or showing signs of previous contact with a primary conductor; (2) actively failing or at immediate risk of failing and could strike PG&E's facilities; or (3) presenting an immediate risk to PG&E's facilities.

[9] Priority 2 tags are used to identify vegetation that (1) has encroached within the PG&E minimum clearance requirements and is not in contact with a conductor or (2) has an identifiable integrity issue that does not rise to the level of a Priority 1 condition but is likely to strike facilities and may manifest into a risk before the next scheduled inspection.

[10] "Other" includes non-priority tags created as a part of PG&E's routine vegetation management program, CEMA program or post-fire restoration program.

[[DMS:5707960v9:09/15/2021--11:27 PM]]

| Circuit | Circuit Miles[7] | Number of Vegetation-Related | | | Number of Outstanding Vegetation Tags | | |
|---|---|---|---|---|---|---|---|
| | | Damages | Hazards | Damages and Hazards with Ignition Potential | Priority 1[8] | Priority 2[9] | Other[10] |
| CORTINA 1101 | 90 | - | - | - | - | - | - |
| COTTONWOOD 1101 | 159 | - | - | - | - | - | 43 |
| COTTONWOOD 1102 | 138 | - | - | - | - | - | 14 |
| COTTONWOOD 1103 | 253 | - | - | - | - | 1 | 227 |
| CRESCENT MILLS 2101 | 122 | - | - | - | - | - | 40 |
| CRESTA 1101 | 5 | - | - | - | - | - | - |
| DESCHUTES 1101 | 195 | - | - | - | - | - | 113 |
| DESCHUTES 1104 | 217 | - | - | - | - | - | 32 |
| DUNBAR 1101 | 141 | - | - | - | - | - | 47 |
| DUNBAR 1102 | 144 | - | - | - | - | 2 | 91 |
| DUNBAR 1103 | 118 | - | - | - | - | 1 | 124 |
| ELK CREEK 1101 | 207 | - | - | - | - | - | 7 |
| GEYSERVILLE 1101 | 233 | - | - | - | - | 8 | 135 |
| GEYSERVILLE 1102 | 201 | - | - | - | - | - | 56 |
| GIRVAN 1101 | 154 | - | - | - | - | - | 46 |
| GIRVAN 1102 | 126 | - | - | - | - | - | 38 |
| GLENN 1101 | 182 | - | - | - | - | 6 | 186 |
| HIGHLANDS 1102 | 169 | - | - | - | - | - | 1 |
| HIGHLANDS 1103 | 235 | - | - | - | - | - | 50 |
| JAMESON 1102 | 67 | - | - | - | - | - | 7 |
| JAMESON 1105 | 125 | - | - | - | - | - | - |
| JESSUP 1101 | 149 | - | - | - | - | - | 40 |
| JESSUP 1102 | 166 | - | - | - | - | - | 2 |
| JESSUP 1103 | 77 | - | - | - | - | 3 | 34 |
| KESWICK 1101 | 73 | - | - | - | - | - | 2 |
| KONOCTI 1108 | 102 | - | - | - | - | - | - |
| LAKEVILLE 1102 | 96 | - | - | - | - | - | 22 |
| LOGAN CREEK 2102 | 278 | - | - | - | - | - | - |
| MADISON 1105 | 108 | - | - | - | - | - | - |
| MADISON 2101 | 258 | - | - | - | - | 5 | 77 |
| MAXWELL 1105 | 112 | - | - | - | - | - | - |
| MC ARTHUR 1101 | 224 | - | - | - | - | - | 26 |
| MIDDLETOWN 1101 | 196 | - | 1 | - | - | - | 105 |
| MIDDLETOWN 1102 | 158 | - | - | - | - | - | 4 |
| MONTICELLO 1101 | 196 | - | - | - | - | - | 7 |

PG&E'S 28-DAY REPORT FOR AUGUST 17-19, 2021 PSPS EVENT
Case No. 14-CR-00175-WHA

[[DMS:5707960v9:09/15/2021--11:27 PM]]

| Circuit | Circuit Miles[7] | Number of Vegetation-Related | | | Number of Outstanding Vegetation Tags | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | Damages | Hazards | Damages and Hazards with Ignition Potential | Priority 1[8] | Priority 2[9] | Other[10] |
| NAPA 1112 | 130 | - | - | - | - | - | - |
| OREGON TRAIL 1102 | 80 | - | - | - | - | - | 4 |
| OREGON TRAIL 1103 | 184 | - | - | - | - | 3 | 47 |
| OREGON TRAIL 1104 | 89 | - | - | - | - | 1 | 26 |
| ORO FINO 1101 | 144 | - | - | - | - | - | 93 |
| ORO FINO 1102 | 205 | - | - | - | - | - | 239 |
| PANORAMA 1101 | 66 | - | - | - | - | 38 | 10 |
| PANORAMA 1102 | 159 | - | - | - | - | 2 | 841 |
| PARADISE 1104 | 174 | - | - | - | - | - | 68 |
| PARADISE 1105 | 144 | - | - | - | - | - | 32 |
| PARADISE 1106 | 58 | - | - | - | - | - | 90 |
| PHILO 1101 | 144 | - | - | - | - | - | 37 |
| PIT NO 7 1101 | 3 | - | - | - | - | - | 14 |
| PUEBLO 1104 | 112 | - | - | - | - | 4 | 359 |
| PUEBLO 1105 | 146 | - | - | - | - | 3 | 2 |
| PUEBLO 2102 | 191 | - | - | - | - | - | 20 |
| PUEBLO 2103 | 193 | - | 2 | 2 | - | 8 | 25 |
| PUTAH CREEK 1102 | 81 | - | - | - | - | - | 21 |
| PUTAH CREEK 1103 | 78 | - | - | - | - | - | 1 |
| PUTAH CREEK 1105 | 114 | - | - | - | - | - | - |
| RED BLUFF 1101 | 124 | - | - | - | - | 4 | 88 |
| RED BLUFF 1103 | 97 | - | - | - | - | - | - |
| RED BLUFF 1104 | 143 | - | - | - | - | 1 | 21 |
| RED BLUFF 1105 | 80 | - | - | - | - | - | - |
| REDBUD 1101 | 157 | - | - | - | - | - | 885 |
| REDBUD 1102 | 176 | - | - | - | - | - | 10 |
| RINCON 1101 | 104 | - | - | - | - | - | 23 |
| RINCON 1103 | 107 | - | - | - | - | 5 | 249 |
| SILVERADO 2102 | 197 | - | - | - | - | - | - |
| SILVERADO 2103 | 79 | - | - | - | - | 2 | 79 |
| SILVERADO 2104 | 274 | - | - | - | - | 12 | 693 |
| SONOMA 1103 | 78 | - | - | - | - | - | 9 |
| SONOMA 1104 | 157 | - | - | - | - | - | 33 |
| STILLWATER 1101 | 57 | - | - | - | - | - | 83 |
| STILLWATER 1102 | 127 | 1 | - | 1 | - | - | 47 |

[[DMS:5707960v9:09/15/2021--11:27 PM]]

| Circuit | Circuit Miles[7] | Number of Vegetation-Related | | | Number of Outstanding Vegetation Tags | | |
|---|---|---|---|---|---|---|---|
| | | Damages | Hazards | Damages and Hazards with Ignition Potential | Priority 1[8] | Priority 2[9] | Other[10] |
| TYLER 1105 | 168 | - | - | - | - | - | 10 |
| VACA DIXON 1105 | 160 | - | - | - | - | - | - |
| VACAVILLE 1104 | 44 | - | - | - | - | - | 1,052 |
| VACAVILLE 1108 | 109 | - | - | - | - | - | 5 |
| VOLTA 1101 | 220 | - | - | - | - | 2 | 1,067 |
| VOLTA 1102 | 211 | - | - | - | - | 1 | 1,215 |
| WHITMORE 1101 | 120 | - | - | - | - | 6 | 2,081 |
| WILDWOOD 1101 | 37 | - | - | - | - | - | 78 |

[[DMS:5707960v9:09/15/2021--11:27 PM]]

**Appendix B[11]**

Circuits Identified in PG&E's Response to Question 4[12]

| Circuit | Circuit Miles[13] | HFTD Tier[14] | Number of Vegetation-Related | | Number of Outstanding Vegetation Tags | | |
|---|---|---|---|---|---|---|---|
| | | | Outages | Ignitions | Priority 1[15] | Priority 2[16] | Other[17] |
| BRUNSWICK 1106 | 360 | Tier 3 | 1 | - | - | 83* | 1,534 |
| NOTRE DAME 1104 | 67 | Tier 3 | 1 | - | - | 2* | 953 |
| SILVERADO 2102 | 197 | Tier 3 | 1 | - | - | - | - |
| WEIMAR 1101 | 134 | Tier 2 | 1 | - | - | 1* | 38 |
| WEST POINT 1102 | 367 | Tier 3 | 1 | - | - | 1* | 137 |
| WILLOW CREEK 1103 | 111 | Tier 2 | 1 | - | - | - | - |

\* The presence of an outstanding Priority 2 tree tag on this circuit did not trigger inclusion in the initial scope for de-energization because the portion of the circuit associated with the Priority 2 tree work was not forecast to meet PG&E's minimum fire potential conditions.

[11] Please refer to the body of this filing for an explanation of the values included herein.

[12] In its response to Question 4, PG&E identified circuits in an HFTDs which were not pre-emptively de-energized as part of the PSPS Event and that sustained outages that PG&E's records attribute to vegetation during the time period between the start of the PSPS event of 1700 PDT on August 17 and the final weather "all clear" of 0517 PDT on August 19. These vegetation-related outages were not associated with an ignition.

[13] The circuit miles listed are the total miles for the circuit.

[14] The HFTD listed represents the HFTD Tier of the operating device that was used to isolate the outage.

[15] Priority 1 tags are used to identify vegetation that is (1) in contact or showing signs of previous contact with a primary conductor; (2) actively failing or at immediate risk of failing and could strike PG&E's facilities; or (3) presenting an immediate risk to PG&E's facilities.

[16] Priority 2 tags are used to identify vegetation that (1) has encroached within the PG&E minimum clearance requirements and is not in contact with a conductor or (2) has an identifiable integrity issue that does not rise to the level of a Priority 1 condition but is likely to strike facilities and may manifest into a risk before the next scheduled inspection.

[17] "Other" includes non-priority tags created as a part of PG&E's routine vegetation management program, CEMA program or post-fire restoration program.

[[DMS:5707960v9:09/15/2021--11:27 PM]]