Pages 1 - 21

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Alsup, Judge

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | NO. CR 14-00175 WHA |
| | ) | |
| PACIFIC GAS AND ELECTRIC COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

San Francisco, California
Monday, January 3, 2022

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:
                        STEPHANIE M. HINDS
                        ACTING UNITED STATES ATTORNEY
                        1301 Clay Street, Suite 340S
                        Oakland, California 94612-5224
                   BY:  **NOAH F. STERN**
                        **ASSISTANT UNITED STATES ATTORNEY**

For Defendant:
                        JENNER & BLOCK LLP
                        353 North Clark Street
                        Chicago, Illinois 60654
                   BY:  **REID J. SCHAR, ATTORNEY AT LAW**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

REPORTED BY:  Ana Dub, RMR, RDR, CRR, CCRR, CRG, CCG
              CSR No. 7445, Federal Official Court Reporter

```
 1   APPEARANCES:   (CONTINUED)

 2   For Defendant:
                            CRAVATH, SWAINE & MOORE LLP
 3                          Worldwide Plaza
                            825 Eighth Avenue
 4                          New York, New York 10019-7475
                     BY:   KEVIN J. ORSINI, ATTORNEY AT LAW
 5
                            CLARENCE, DYER & COHEN LLP
 6                          899 Ellis Street
                            San Francisco, California 94109
 7                   BY:   KATHLEEN "KATE" T. DYER, ATTORNEY AT LAW

 8

 9   Also Present:          Jennifer Hutchings, U.S. Probation

10                          William B. Abrams
                            1519 Branch Owl Place
11                          Santa Rosa, California 95409

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

<u>**Monday - January 3, 2022**</u>                                    <u>**9:01 a.m.**</u>

<u>**P R O C E E D I N G S**</u>

---o0o---

**THE CLERK:**  Calling Criminal Action 14-175, United States of America versus Pacific Gas and Electric Company.

Counsel, please approach the podium and state your appearances for the record, beginning with counsel for the Government.

**MR. STERN:**  Good morning, Your Honor.  Noah Stern on behalf of the United States.

**THE COURT:**  Welcome.

**MR. SCHAR:**  Good morning, Your Honor.  Reid Schar on behalf of PG&E, and I'm joined at the table by Kevin Orsini and Kate Dyer.

**THE COURT:**  Welcome to you.

**MS. HUTCHINGS:**  Good morning, Your Honor.  Jennifer Hutchings on behalf of Federal Probation.

**THE COURT:**  Ms. Hutchings, welcome to you.  Thank you.

Okay.  We're here for the arraignment on a Form 12 that arises out of the Zogg Fire and the felony complaint in Shasta County.

So the first step is to read the Form 12 amended petition, unless PG&E is willing to waive that.

Are you?

**MR. SCHAR:**  Yes, Your Honor, we will waive.

1          **THE COURT:**  So you waive arraignment; is that correct?

2      **MR. SCHAR:**  Yes, we're waiving the formal reading of the

3  arraignment.

4          **THE COURT:**  All right.  So to be very clear, we're talking

5  about the Form 12 that was filed on November 10 of last year;

6  correct?

7      **MR. SCHAR:**  Correct.

8      **THE COURT:**  Okay.  And that involves the -- all right.  It

9  actually covers both the Sonoma County case as well as the

10  Shasta case.  Is that understood?

11      **MR. SCHAR:**  Yes, Your Honor.

12      **THE COURT:**  All right.  All right.  So is there anything

13  more that needs to be done on that front, Mr. Stern?

14      **MR. STERN:**  No, Your Honor.

15      **THE COURT:**  Okay.  All right.  So now we need to address

16  whether or not the Government is able to go forward on proving

17  this before January 21.

18      **MR. STERN:**  Your Honor, the Government is willing and able

19  to go forward with proving the violations.

20          Because the Court may modify the conditions of probation

21  without any formal findings of a violation and because

22  the Government's understanding is probation is ending at the

23  end of the month, the Government believes it would be

24  appropriate to take judicial notice of the violations and allow

25  for the process to play out in state courts in Sonoma and

1   Shasta counties.

2        However, the Government is willing and able to prove the

3   violations.  When the Government would be ready to do that,

4   I think, would depend on what a hearing would look like.  As

5   you know, there are many charges in the two state cases; and my

6   understanding is that at least in the Sonoma County case,

7   there's a preliminary hearing scheduled for the beginning of

8   February that I believe is scheduled to take place over

9   15 days.

10        So there is a fair amount of evidence to prove -- to prove

11   that PG&E violated state law.  I think this case could be pared

12   down a little bit and could go forward over a shorter amount of

13   time, but the Government would want to hear guidance from

14   the Court about that.

15        **THE COURT:**  What's the status of the case in

16   Shasta County?

17        **MR. STERN:**  Your Honor, I don't know.  I spoke with an

18   assistant D.A. there, just generally, because we -- we,

19   you know, still, I guess -- I believe PG&E -- I don't -- we

20   weren't totally sure whether PG&E is going to admit or deny the

21   allegations.  So we did some initial assessment in speaking

22   with the D.A.'s Office to kind of understand the scope of those

23   cases and see how we might be able to present it.

24        I don't think -- given the fact that we don't know yet

25   whether there will be an evidentiary hearing, we haven't fully

1    planned out when witnesses would be available, that sort of

2    thing.  But if PG&E were to deny the allegations, then that is

3    something we could do in short order and provide Your Honor

4    with additional information about the timing that

5    the Government would need.

6            THE COURT:  All right.  Well, let me ask PG&E.

7            Does PG&E admit any part of any of the Form 12?

8        MR. SCHAR:  We do not, Your Honor.  But I would like the

9    opportunity to explain and perhaps elaborate a little bit more

10   on --

11           THE COURT:  Please go ahead.

12       MR. SCHAR:  Sure.  Thank you, Your Honor.

13           You know, as I'm sure Your Honor is unquestionably aware,

14   for both the Kincaid and the Zogg fires, so the one in Sonoma

15   and the one in Shasta, there are separate ongoing criminal

16   proceedings in state court, though it remains unclear,

17   ultimately, what the final charges against the company will be

18   in relation to both matters.

19           Specific to Kincaid, Your Honor, there is no actual

20   pending indictment.  It's still proceeding on a criminal

21   complaint.  And as Mr. Stern has alluded to, there is a

22   preliminary hearing set in that matter for February 8th where

23   the state has requested 15 court days to establish probable

24   cause on the charges.

25           PG&E intends to defend that case.  Obviously, it's very

1   difficult to meaningfully do so before the Government has

2   offered their evidence of probable cause.

3       The Zogg Fire case, the one occurring in relation to

4   Shasta, isn't even that far along at this point.  There's no

5   indictment.  Again, only a criminal complaint.  The preliminary

6   hearing has not been set yet.  And while the company has been

7   provided some initial discovery, it is not clear at this point

8   why they decided to proceed criminally rather than civilly or

9   what the ultimate evidence would be.

10      Just to give you one sense of that, Your Honor, obviously,

11  we've been in front of Your Honor on this issue.  The big issue

12  in that, in part, will be the actual tree that fell into the

13  lines, the gray pine that's received a fair amount of

14  attention.  We've not -- we, PG&E, have not been provided

15  access to that.  That's supposed to happen in February.  But at

16  this point we actually have not been provided access to the

17  tree that we believe caused the fire.

18      So we do deny the Form 12 as it stands right now and those

19  charges.  But we also agree, I think, with Mr. Stern,

20  Your Honor, that an evidentiary hearing ultimately is not

21  necessary or appropriate at this -- at this stage.

22      These cases will play out fully in the state proceedings,

23  both in Sonoma and Shasta.  They're being prosecuted by very

24  competent district attorneys there, and due process will

25  provide the company ultimately with the information it needs to

1    defend itself in each of those proceedings.

2        And given that probation is near an end here and, of

3    course, as Your Honor knows, you can implement whatever

4    additional conditions, if you so chose, between now and the end

5    of probation, trying to proceed here under these circumstances

6    with an evidentiary hearing, given where the state cases are,

7    we do not -- we do not feel is necessary at this time.

8        **THE COURT:**  It seems to me that in the Zogg Fire, when we

9    were having our hearings on that one back in 2020, that there

10   had been a declaration that ordered you to find and submit in

11   which one of your many contractors had said that he had marked

12   that tree.  He was a quality control guy named Larry somebody.

13   And he had marked that very tree for removal and sent an e-mail

14   to another of your contractors saying "Please do it," and then

15   it never happened; it never got removed.  There were some vague

16   statements about a woman with a gun, but there was never any

17   proof that it was on her property or that was the tree in

18   question.  It was just other trees that had to be worked in

19   that area.  And it looked to me like there was a serious

20   question whether PG&E just dropped the ball.

21       And then that guy went back on the day that Cal Fire was

22   there collecting the tree and said that was the -- either he

23   said it was the very tree that he had marked or the coordinates

24   were the same.  It was something like that.

25       And I do know that Cal Fire -- it seems to me I have it

```
 1   right here somewhere.  Cal Fire said that, quote (reading):
 2                "After meticulous and thorough investigation,
 3        Cal Fire has determined that the Zogg Fire was caused
 4        by a pine tree contacting electrical distribution
 5        lines owned and operated by Pacific Gas and
 6        Electric."
 7        So one of the things that we hope for when we have
 8   criminals like PG&E that are on probation is that over the
 9   course of probation, they come to accept responsibility.  I've
10   learned in this job that's the first big step for any criminal
11   to turn themselves around is to accept responsibility.
12        And in five years, you've never done that.  You've never
13   accepted responsibility for any of these fires until it's
14   convenient to do so or you're just up against the wall and have
15   to plead guilty.
16        You've had plenty of time to investigate the Zogg thing.
17   You know good and well that you started the fire.  And yet you
18   stand here and come up with good lawyerlike reasons why you
19   can't accept responsibility.  It's a very big disappointment to
20   the Court.  Five years of my life and your life and a lot of
21   the public's life, the U.S. Attorney's life down the drain
22   because you will not accept responsibility.  I wish I could be
23   able to say that PG&E has learned something from this
24   probation.  It has not.  It is still as recalcitrant as ever.
25        All right.  Since I've launched into you, I'll give you a
```

1   chance to respond.  So go ahead, if you wish.

2      **MR. SCHAR:**  Your Honor, you know, I understand the

3   position and the words that you're saying.

4      I think I, on behalf of the company, fundamentally

5   disagree that the company hasn't learned.  I think it's become

6   a safer company.  We've talked about it.  We've had so many

7   hearings in front of Your Honor in so many different ways.  But

8   I don't think -- and I think the record is what it is.  And I

9   don't think, you know, rehashing it is necessarily going to

10  change your view.  But I do disagree with some of the

11  statements that you've made.

12     And, you know, the ultimate question, again, it is for any

13  probationer, but for any person who's put in a situation where

14  they've been charged with something, is a full and fair

15  opportunity to face those charges in the Court in which the

16  charges are brought.

17     There may not ultimately be a significant dispute about

18  the underlying facts.  But there's a big difference,

19  Your Honor, between being asked to admit to a series of facts

20  without being provided the full evidence and, more

21  fundamentally, from a due process perspective, being asked to

22  admit to a criminal state of mind when there are unknown

23  aspects of the case that are still pending.

24     **THE COURT:**  What's unknown?

25     **MR. SCHAR:**  We don't have the full evidence.  We don't

 1   have the statements --

 2        **THE COURT:**  You have enough evidence to know that that

 3   tree is the one that caused the Zogg Fire.  It's quite clear.

 4   And you should have cut it down and you let it slide.  And one

 5   of the reports got backdated.

 6        And then your colleague, Mr. Orsini, stood up here and

 7   told me that there were three arborists who did not mark it,

 8   and failed to point out that there was an earlier one that had,

 9   indeed, marked it and that it, for some reason, did not get

10   cut.

11        You know the facts, and you can size them up and accept

12   responsibility.

13        I've had plenty of people on the criminal side on a

14   Form 12 come in on the very first day and say, "We admit it.

15   We did it."  They go into drug rehab treatment, or they've got

16   some reason for why they did it, and we try to work with them.

17   But at least they accept responsibility.

18        PG&E is recalcitrant.  It only accepts responsibility when

19   it's convenient to do so or when its back is up against the

20   wall and it has no choice.  That's my view.  I'm sorry to say

21   that, but it's been the whole history of PG&E from -- in this

22   case, the original trial, everything.

23        All right.  What does -- let me ask the Government.

24        They deny everything.  They don't admit a single thing,

25   not a single aspect of the Form 12.  What do you want to do?

1    **MR. STERN:**  Your Honor, the Government agrees with you and
2    shares our frustration in that.

3       I think that a lot of this comes down to what remedies are
4    available here in proving the violation.  And based on my
5    understanding of Your Honor's prior statements, I believe I
6    heard Your Honor say that it was not available to you to extend
7    PG&E's term of probation.  The Government has put forth its
8    position on that issue.

9       **THE COURT:**  Well, you put forth a brief that seemed to say
10   that it's an open question whether the law would allow that.

11      **MR. STERN:**  Yes --

12      **THE COURT:**  Is that true?

13      **MR. STERN:**  -- Your Honor.

14      **THE COURT:**  And at the time that I made those statements,
15   I did not realize that it was an open question.  I thought it
16   was foreclosed by Ninth Circuit authority.

17      So if you, for example, made a motion to extend probation,
18   I would give that serious consideration.  I'm not saying I
19   would grant it.  I'm just saying that I did not realize it was
20   an open question.  And I'm not saying that it's the right thing
21   to do or the wrong thing to do.

22      I believe I have been a total failure in this job with
23   respect to PG&E.  PG&E is just as recalcitrant, has learned
24   nothing in this process; that is, it's killing people
25   every year with wildfires.  And I would have thought in

1    five years I could bring it under control, but I have failed.

2    I'm not sure extending -- that I'm the one that ought to be in

3    charge if there's going to be any extension.

4         And I will say this.  If PG&E is convicted in the state

5    case or either of the state cases, I beg those prosecutors and

6    judges not to give up on probation like they did in

7    Butte County.  PG&E needs to be under the probation of

8    somebody.  PG&E should go to trial and have to face probation

9    for however long the state court will keep them under.  And

10   some judge like me up in Shasta County will be riding herd on

11   them, or Sonoma County.  That's what needs to be done in order

12   to -- if we're ever going to bring PG&E under control.

13        So if you were to bring a motion to extend probation, I

14   would give it serious consideration; but it would have to be

15   all done before, I think it's January 21.  And whether I would

16   even do it or not, I'm not sure that's the right answer.

17        But I was unaware that it was an open question.

18        **MR. STERN:**  Understood, Your Honor.

19        **THE COURT:**  And I understand now the argument for why it's

20   open, and that's because Congress changed the underlying

21   statute.  I was unaware of that.

22        But it doesn't mean the Ninth Circuit would change its

23   ultimate view.  It might be that the Ninth Circuit would still

24   say it's five years and five years max, end of story.

25        I hate to end probation feeling as if PG&E is continuing

```
 1  to be a menace to society, but it's true.

 2      Every year you're killing people; you're burning up

 3  thousands of acres of land.  And it's true that some

 4  improvements have been made in the system.  But why does it

 5  continue?  That is, to me -- and why is it that PG&E is

 6  unwilling to admit error, unwilling to accept responsibility

 7  for what it's done?

 8      Okay.  I'm going to leave it in the hands of

 9  the Government.  I'm willing to hold a hearing, even if it

10  means that on January 21 we're right in the middle of a hearing

11  and it's pointless.  But if the Government wants to proceed

12  with a Form 12, I will give you the hearing date.  But I feel I

13  can't say more than that.

14      So it's up to you to decide if you want to try to prove it

15  up.

16      MR. STERN:  Understood, Your Honor.  Would the Court be

17  willing to let us file a status statement --

18      THE COURT:  Sure.  Yes.

19      MR. STERN:  -- in the next couple of days?

20      THE COURT:  In the next couple of days, yes.

21      Are there any members of the press out there?  If so,

22  raise your hand.  I'd like to say something to you.

23                      (No response.)

24      THE COURT:  I guess there's no member of the press out

25  there.  Possibly on the phone.
```

1           Well, I say this to the members of the press.

2           No, you're not a member of the press, are you?

3       **MR. ABRAMS:**  No, I'm not.

4       **THE COURT:**  All right.  Then please be seated.

5           I think the press should ask this question.  Here's how

6   this is going to play out.  It's going to play out like it did

7   in Butte County.  PG&E will pay millions of dollars to these

8   two counties and walk away as a convicted criminal, but it will

9   not accept probation, and the counties will acquiesce in that.

10          And I ask the members of the press to watch that carefully

11  and to hold the D.A.'s accountable to putting this company on

12  continued probation at least somewhere.

13          Okay.  Did you want to say something, sir?

14      **MR. ABRAMS:**  Please, Your Honor.

15      **THE COURT:**  Tell me what it's about.

16      **MR. ABRAMS:**  Sure.  My name is Will Abrams.  I'm a PG&E

17  victim, and I'm here today to give a little voice to the

18  victims.

19      **THE COURT:**  No.  I'm not going to -- I'll give you

20  one minute to say whatever you want to say, but this is not the

21  occasion for more piling on PG&E.  All right?  So you come up

22  here and say your peace for one minute.

23      **MR. ABRAMS:**  Thank you, Your Honor.

24      **THE COURT:**  I've read all of your statements to me, and I

25  have given you all the relief that I plan to give you.  But go

1    ahead; make your statement.

2        **MR. ABRAMS:**  Thank you, Your Honor.  And I apologize.  I

3    am pro se, and I'm trying to do the best I can to follow the

4    procedures.

5        **THE COURT:**  One minute.  Please get to the point.

6        **MR. ABRAMS:**  Thank you, Your Honor.

7        I do think that one of the things that we should be

8    considering is a victim restitution hearing.  There are victims

9    that have been harmed by these probation violations, and

10   I think that that should be something that the Government

11   considers and Your Honor considers in terms of how we move

12   forward.  There are also ways, as I submitted in my brief, to

13   strengthen the conditions of probation.

14       Believe me, I really appreciate all the work that

15   the Court has done, and I agree with every word that you said

16   coming into this.

17       I think there's substantial evidence that there should be

18   resentencing, that PG&E should be held accountable.  And as a

19   victim, I certainly don't want --

20       **THE COURT:**  Which fire were you a victim of?

21       **MR. ABRAMS:**  The Tubbs Fire, Your Honor.

22       **THE COURT:**  Well, isn't that the one that's still under

23   dispute?

24       **MR. ABRAMS:**  It's not under dispute, Your Honor, no.  This

25   is one that was handled through the bankruptcy court.  And

1  unfortunately, there are many victims like me that are still

2  reliant, given that our settlement was based on 50 percent of

3  PG&E's stock.  Every time they cause a fire, we suffer.  And

4  we've been waiting for compensation.

5      **THE COURT:**  Well, why did your lawyers agree to a deal

6  where it was based on the stock?

7      **MR. ABRAMS:**  Well, Your Honor, unfortunately, the PG&E

8  investors had something to say about that.  And it wasn't as

9  straightforward of a decision as we had thought, and there were

10  influences associated with that hearing.

11      But --

12      **THE COURT:**  Well, you accepted a deal where it rode with

13  the stock.  And, okay.  Look, every time there's a new fire,

14  the stock value goes down and the value of your settlement goes

15  down.  And I had nothing to do with that bankruptcy.  I take

16  blame for a lot of things here, including the failure to

17  rehabilitate PG&E in probation, but I am not responsible for

18  what goes on in the bankruptcy court.

19      **MR. ABRAMS:**  Absolutely.

20      **THE COURT:**  All right.  So don't blame that one on me.

21      **MR. ABRAMS:**  I'm not.

22      **THE COURT:**  And I cannot just reach out like God and say:

23  Bankruptcy court, change this.

24      I'm sorry that you got a raw deal.  You did get a raw

25  deal.  But I'm not the remedy.

 1          **MR. ABRAMS:**  Understood, Your Honor.  And that's why

 2    I think restitution is different than what they did in

 3    bankruptcy.  Anyway, that's what I think would be appropriate

 4    in this case because there are harms above and beyond whatever

 5    the bankruptcy court did that PG&E has done towards victims,

 6    and they deserve to have a hearing to understand those harms so

 7    that the Court can consider it before the 21st.

 8          If that includes resentencing, if that includes

 9    strengthening a condition of probation, whatever that remedy

10    might be.  But I think that having that come forward --

11          **THE COURT:**  All right.

12          **MR. ABRAMS:**  -- would be a --

13          **THE COURT:**  All right.  Thank you.  I've heard you out.

14          I give you this one word.  You should talk to the

15    U.S. Attorney and see if you can convince the United States

16    Attorney to try to extend probation.  I'm not saying I would

17    grant it or not.  I don't know.  But I'm not going to -- if the

18    United States Attorney doesn't move for it, then I'm not going

19    to do it, period.

20          **MR. ABRAMS:**  Understood.  Thank you, Your Honor.

21          **THE COURT:**  So it would have to be a -- and even then, I

22    might not grant it.  We'd have to have a whole hearing and so

23    forth.  But maybe Mr. Stern will hear you out.

24          I will say this.  The victims have gotten a raw deal.

25    They're living in tiny, little huts, waiting to be paid while

```
 1   the former judge who's running that thing is being paid a

 2   thousand dollars an hour and nobody -- none of the victims are

 3   getting any money.  It's a raw deal.  But that's the deal that

 4   you victims accepted through your lawyer and the bankruptcy

 5   court.  I'm sorry.  I don't like it either, but I can't solve

 6   every problem.  All right?

 7        MR. ABRAMS:  Thank you, Your Honor.

 8        MR. STERN:  Your Honor, if I just may say something for

 9   the record.

10        Your Honor, based on -- just for one, to respond to

11   Mr. Abram's comments, just based on the PSR, I don't believe

12   restitution would be available through these proceedings.

13        But I also just wanted to say that the Government

14   respectfully disagrees with your assessment that this probation

15   has been a total waste.  It's true that PG&E stands here and

16   denies the allegations right now, but I think the Monitor's

17   report show that PG&E has made significant progress in some

18   respects.

19        And this case was about gas pipelines, a gas pipeline

20   explosion in San Bruno.  And according to the Monitor, PG&E has

21   made substantial progress --

22        THE COURT:  I agree with what you just said.

23        MR. STERN:  -- on that issue.

24        THE COURT:  I agree with that.

25        MR. STERN:  And so --
```

1      **THE COURT:**  I overstated it.  You're correct.

2      **MR. STERN:**  And with respect to the fire aspect and fire

3   safety, which came into this case much later, PG&E has also

4   made progress on that.  The Monitor has reported numerous

5   occasions where without things that got put into place because

6   of this Court's oversight of PG&E through the probation, that

7   fires would have been started, whether that be a PSPS or

8   something else.  There have been things that have flowed out of

9   this probation that has made the public safer.

10      And so I just wanted to state for the record that I think

11   that this probation has been effective in making progress.  I

12   agree that PG&E has not become an offender who is just,

13   you know, willing to take full responsibility for things.  And

14   it seems, based on the record in this proceeding, that -- it

15   seems very likely that, you know, they did commit a crime and

16   they could admit to that, and it's frustrating that they

17   didn't.  But I don't think that this probation has been a total

18   waste.

19      And at Your Honor's suggestion, we will consider --

20   consider your comments and let you know.

21      **THE COURT:**  All right.  "Total waste" is an overstatement

22   by my.  I agree with you.  But the amount of progress that we

23   have made is not something to congratulate ourselves over when

24   fires of the size of the fire up in Butte County and

25   Plumas County continue; they just continue.  Entire towns get

1   burned down.  And you would have thought in five years that

2   could have been brought under control, but it hasn't been.

3        All right.  So I'm going to wait for the Government to

4   decide what it wants to do.  And this could be our last

5   hearing.  Maybe not.  It's up to the Government.

6        Thank you.  Unless there's more, we'll adjourn.

7        Anything more?

8        **MR. SCHAR:**  No, Your Honor.

9        **THE COURT:**  All right.  Thank you.

10        **MR. STERN:**  Thank you, Your Honor.

11        **MS. HUTCHINGS:**  Thank you, Your Honor.

12        **THE CLERK:**  Court is adjourned.

13                 (Proceedings adjourned at 9:30 a.m.)

14                         ---o0o---

15

16                 **CERTIFICATE OF REPORTER**

17        I certify that the foregoing is a correct transcript

18   from the record of proceedings in the above-entitled matter.

19

20   DATE:  Monday, January 3, 2022

21

22                    _Ana Dub_

23   _____

24        Ana Dub, CSR No. 7445, RDR, RMR, CRR, CCRR, CRG, CCG
                Official United States Reporter

25